IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

Plaintiff,

No. 1:18-CR-02945-WJ

vs.

JANY LEVEILLE,
SIRAJ IBN WAHHAJ,
HUJRAH WAHHAJ,
SUBHANAH WAHHAJ, and
LUCAS MORTON,

Defendants.

**JOINT OPPOSED MOTION OF ALL DEFENDANTS TO STRIKE SURPLUSAGE FROM INDICTMENT[1]**

Defendants Jany Leveille, Siraj Wahhaj, Hujrah Wahhaj, Subhanah Wahhaj, and Lucas Morton, through undersigned counsel, pursuant to Federal Rule of Criminal Procedure 7(d) and the due process clause of the Fifth Amendment, respectfully request that the Court strike surplusage from the indictment. The only charges in the indictment are possession of firearms by a non-citizen without status that permits firearms possession and conspiracy to commit that offense. (Indictment, Doc. 25, 9.11.18.) These charges are narrow and simple. However, the indictment includes allegations that purport to make this case far broader and more complex. The indictment goes far beyond the essential elements of the charged offenses. The government has chosen to include unnecessary and extraordinarily inflammatory and prejudicial allegations of terrorism and mistreatment of children. The Court should strike those allegations to avoid an unfair trial in which the jury is focused on inflammatory claims that go well beyond the actual charges.

[1] Assistant U.S. Attorney George Kraehe has informed defense counsel that the government opposes this motion.

## THE INDICTMENT

The indictment charges Jany Leveille with possession of firearms by a non-citizen without status that permits firearms possession. (Indictment, Doc. 25, 9.11.18.) It also charges Ms. Leveille, Siraj Wahhaj, Hujrah Wahhaj, Subhanah Wahhaj, and Lucas Morton with conspiracy to provide Ms. Leveille with a firearm. (*Id.*) As part of the manner and means of the conspiracy, the indictment alleges that Siraj and Hujrah "gathered firearms and ammunition" and "transported firearms and ammunition from the State of Georgia to the State of New Mexico." (*Id.* ¶¶ 2, 4.) The alleged overt acts in the indictment include that all of the defendants "traveled over state lines with firearms and ammunition" and that Siraj, Hujrah, Subhanah, and Lucas "provided Jany Leveille possession of firearms" and "ammunition[.]" (*Id.* ¶¶ 6, 12.)

Although the government has not charged any defendant with any terrorism offense, the government added the following allegations to the indictment:

- "Jany Leveille and Siraj Ibn Wahhaj, and others known and unknown to the grand jury, sought to recruit and train persons, including minor children, to be prepared to engage in jihad and train an army of jihad and to die as martyrs as part of the common plan to prepare for violent attacks on government, military, educational, and financial institutions in fulfillment of Jany Leveille's religious prophecies." (*Id.* ¶ 11; *see also* ¶ 5.)

- Defendants had a "common plan to prepare for violent attacks on government, military, educational, and financial institutions in fulfillment of Jany Leveille's religious prophecies." (*Id.* ¶ 10.)

- Defendants "established a training camp and firing range" at which defendants "and minor children engaged in firearms and tactical training as part of their common plan to prepare for violent attacks on government, military, educational, and financial institutions in fulfillment of Jany Leveille's religious prophecies." (*Id.* ¶ 9; *see also* ¶ 5.)

- Defendants "possessed and discharged firearms as part of their common plan to prepare for violent attacks on government, military, educational, and financial institutions in fulfillment of Jany Leveille's religious prophecies." (*Id.* ¶ 8; *see also* ¶ 7 (established a residence under Jany's leadership "in accordance with her religious prophecies".)

Similarly, although the government did not charge any of the defendants with kidnapping or conspiracy to commit kidnapping, the government chose to include an allegation that all of the defendants "transported across state lines minor children in fulfillment of Jany Leveille's religious prophecies."[2] (*Id.* ¶ 3.)

## ARGUMENT

The allegations regarding terrorism, including training children to participate in terrorist acts, and the allegations suggesting defendants conspired to kidnap children do not address the essential elements of the charged offenses and are highly inflammatory and prejudicial. As such, they are surplusage under Rule 7(d), and the Court should strike them.

### I. The Tenth Circuit's test for surplusage under Rule 7(d).

Rule 7(c) provides, in pertinent part, that "[t]he indictment . . . must be a *plain, concise, and definite written statement of the essential facts* constituting the offense charged[.]" (Emphasis added.) When an indictment includes allegations outside the scope of Rule 7(c), a district court may prune the surplus language from the indictment. Rule 7(d) provides, "Upon the defendant's motion, the court may strike surplusage from the indictment or information."

Our Circuit's test for what constitutes "surplusage" is unclear. The Tenth Circuit has described the test in two very different ways. In 1990, it held that "a district court may strike as surplusage allegations not relevant to the charge at issue *and* inflammatory *and* prejudicial to the defendant." *United States v. Collins*, 920 F.2d 619, 631 (10th Cir. 1990) (emphasis added). Four

---

[2] Every one of these "minor children" was the biological child of at least one defendant. Under the federal kidnapping statute, it is not possible for a parent to kidnap his or her own child. *See* 18 U.S.C. § 1201(a) (exception for "a minor by the parent thereof"). This exception applies to people in the position of parents, including but not limited to stepparents. *See United States v. Floyd*, 81 F.3d 1517, 1519, 15 (10th Cir. 1996) (holding that "ordinary meaning of the word 'parent' includes a stepparent, or any person who voluntarily assumes a biological parent's responsibility to rear a child"); *accord United States v. Beers*, 189 F.3d 1297, 1300 (10th Cir. 1999).

years later, rather than stating the test in the conjunctive, it recited a disjunctive test. The Court held that "[u]se of Rule 7(d) is appropriate when the allegation is not relevant, *or* is inflammatory *or* prejudicial." *United States v. Zabawa*, 39 F.3d 279, 285 (10th Cir. 1994) (emphasis added). Then, twelve years later, in *United States v. Schuler*, 458 F.3d 1148, 1153 (10th Cir. 2006), it again stated the test in the conjunctive, quoting from *Collins*. *Schuler* did not acknowledge that *Zabawa* employed a disjunctive test. Predictably, because *Zabawa* remains binding precedent, the disjunctive standard remains part of Rule 7(d) jurisprudence in this Circuit after *Schuler*. *See United States v. Beasley*, Case No. 13-10112-01, 03, 04, 05, 06, 07, 08, 10, 11, 12-JTM, 2016 U.S. Dist. LEXIS 15099, * 57 (D. Kan. Feb. 8, 2016) (citing *Zabawa* for proposition that "the court may strike portions of an indictment which are irrelevant or prejudicial"); *United States v. De Oca-Ramirez*, No. CR-11-188-D, 2011 U.S. Dist. LEXIS 116208, * 2 (W.D. Okla. Oct. 7, 2011) (stating it is appropriate to strike language that "is not relevant to prove the elements of the offense charged, or is inflammatory or prejudicial").

Because all of the language that defendants seek to strike satisfies the more demanding conjunctive test, the Court need not decide whether the conjunctive or disjunctive test controls in the Tenth Circuit. However, if the Court decides that any of the language at issue does not meet one of the requirements of the conjunctive test, the Court will need to determine whether the disjunctive test applies and if so, whether each of the statements at issue satisfies that test.

**II. The allegations pertaining to terrorism and kidnapping are surplusage.**

The Court should strike the allegations pertaining to terrorism and kidnapping from the indictment. *See* Exhibit A (indictment with surplusage struck). Those allegations do not address the essential elements of the actual charges against the defendants, and they are extremely inflammatory and prejudicial.

**A. The terrorism and kidnapping allegations are unnecessary to the charges.**

Because the allegations regarding terrorism and kidnapping do not describe the essential elements of the charged firearms offenses, those allegations are surplusage. Rule 7(d) gives the Court discretion to "strike as surplusage allegations not relevant to the charge at issue." *United States v. Brooks*, 438 F.3d 1231, 1237 (10th Cir. 2006). The term "relevant" has a particular meaning in the Rule 7(d) context. The definition of "relevant" under Rule 7(d) is narrower than the definition under the Federal Rules of Evidence. For purposes of Rule 7(d), "relevant" means "allegations which are both independent of and unnecessary to the offense on which a conviction ultimately rests." *Id.* In other words, the question is "whether the language" that the defense seeks to strike "is an essential element of the alleged crimes." *Zabawa*, 39 F.3d 279 at 285. If it is not an essential element, it is not relevant for purposes of Rule 7(d). However, "language . . . describing the essential elements of the crime[s] alleged is not surplusage and cannot be stricken under Rule 7(d)." *Collins*, 920 F.2d at 631.

The District Court for the Western District of Virginia helpfully discussed the meaning of "relevant" under Rule 7(d) in *United States v. Cooper*, 384 F. Supp. 2d 958 (W.D. Va. 2005). In *Cooper*, the government charged the defendant with environmental crimes. It included in the indictment a description of defendant's interactions with environmental agencies, including his compliance difficulties. The court granted defendant's Rule 7(d) motion to strike the description. *Id.* at 960. The court held that the relevance test is whether the language is "necessary to the indictment." *Id.; see also United States v. Presgraves*, 658 F. Supp. 2d 770, 783-84 (W.D. Va. 2009) (rejecting government's argument that relevance has same meaning as in Federal Rules of Evidence and granting motion to strike certain allegations that "do not form the basis of, and are not necessary to prove, any of the twenty-two counts charged in the first indictment"); *United*

*States v. Sawyer*, Case No. 08-40045-JAR, 2008 U.S. Dist. LEXIS 70674, *3 (D. Kan. Sept. 12, 2008) (striking allegations and citing *Cooper* for proposition that test is whether allegations are "essential in making out a *prima facie* pleading of violation"); *United States v. Jardine*, Criminal Action No. 04-219, 2004 U.S. Dist. LEXIS 20414, * 14 (E.D. Pa. Oct. 12, 2004) (applying relevance test based on whether language is "essential to the offense charged" and striking "the number of persons defrauded and the amount of losses sustained" because they were "not elements of the underlying crimes"); *United States v. Mutchler*, 333 F. Supp. 2d 828, 832 (S.D. Iowa 2004) (granting motion to strike because "aggravating factors are not criminal conduct defined by Congress and, as such, have no place within the charging documents").

The *Cooper* court reasoned:

> Rule 7(c) of the Federal Rules of Criminal Procedure provides that "the indictment . . . must be a *plain, concise, and definite* written statement of the *essential* facts constituting the offense charged." Fed. R. Crim. P. 7(c) (emphasis added). This provision contemplates an indictment that merely pleads each of the factual elements of the offense charged. It does not contemplate the inclusion of every piece of evidence that ultimately may be relevant to building a case against the defendant.

*Id.* The court recognized that this harmonious reading of Rule 7(c) and Rule 7(d) prevents the government from using an indictment in an unfairly prejudicial way. If the government could go beyond essential allegations in an indictment, it could "use an indictment to thoroughly present its case to the jury before the trial even began, at a time when the defendant would not be entitled to defend himself." *Id.*

Applying this narrow definition of relevant, the *Cooper* court acknowledged the possibility that the history of defendant's interactions with environmental agencies *might* "be legally relevant at trial in demonstrating his mens rea," but the court held that "it is certainly not essential in making out a prima facie pleading of a violation." *Id.* Because "the only *essential* allegation regarding

mens rea is that [the defendant] acted knowingly," the court concluded that the "history is not *necessary* to the charges at issue." *Id.* (emphasis added).

Similarly, in the case at bar, the allegations regarding terrorism and kidnapping—offenses with which defendants are not charged—are not essential to the firearms and conspiracy charges against the defendants. The essential elements of the firearm charge against Ms. Leveille (count 2) are that (1) she knowingly possessed a firearm; (2) she was a non-citizen without status that allows firearms possession at the time she possessed the firearm; and (3) the firearm moved in interstate commerce at some time before she possessed it. 18 U.S.C. § 922(g)(5); *cf.* Tenth Circuit Pattern Jury Instruction 2.44 (essential elements of possession of firearm by convicted felon). The essential elements of the conspiracy charge (count 1) are that (1) "the defendant agreed with at least one other person to violate the law"; (2) "one of the conspirators engaged in at least one overt act furthering the conspiracy's objective"; (3) "the defendant knew the essential objective of the conspiracy"; (4) "the defendant knowingly and voluntarily participated"; and (5) "there was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged." Tenth Circuit Pattern Jury Instruction 2.19; *see also* 18 U.S.C. § 371.

The allegations regarding terrorism and kidnapping are not necessary to any of the elements of these crimes. To state a prima facie case of illegal firearms possession and conspiracy, the government need not allege, for example, that defendants "sought to recruit and train persons, including minor children, to be prepared to engage in jihad and train an army of jihad and to die as martyrs," that defendants had "a common plan to prepare for violent attacks on government, military, educational, and financial institutions in fulfillment of Jany Leveille's religious prophecies," and that defendants moved minor children across state lines for these purposes.

(Indictment, Doc. 25, 9.11.18, ¶¶ 3, 11.) Also unnecessary are the government's allegations that defendants were preparing for such attacks based on religious motives. *See* Exhibit A, ¶¶ 3, 5, 7, 8, 9, 10. Such allegations are not necessary for a prima facie case because, "[m]otive, unlike mens rea, is not an essential element of a criminal offense." *United States v. Santistevan*, 39 F.3d 250, 255 n.7 (10th Cir. 1994). The allegations defendants seek to strike go far beyond the essential elements of the firearms and conspiracy offenses. It follows that they are surplusage.

**B. The terrorism and kidnapping allegations are inflammatory.**

It is difficult to imagine allegations more inflammatory than the unnecessary ones the government has chosen to include in the indictment. It is natural for a person's emotions to flare when he or she hears that the United States of America has formally accused the defendants of preparing for religiously-motivated violent attacks and of transporting, housing, and training children to carry out such attacks. People generally associate the terms "jihad" and "martyr"—both of which appear gratuitously in the indictment—with deadly attacks by Muslim extremists, including the attacks that occurred in New York, Washington DC, and Pennsylvania on September 11, 2001, in San Bernardino in 2015, and in Orlando in 2016.[3] These associations trigger powerful emotional reactions. The inflammatory nature of the surplusage allegations at issue is self-evident and should be beyond dispute.

Case law confirms what common sense tells us. In *United States v. Groos*, 616 F. Supp. 2d 777, 789 (N.D. Ill. 2008), the defendant, charged with violating a trade embargo, moved to strike language that included terms such as "national emergency" and "support for international terrorism." Recognizing the inflammatory nature of references to terrorism, the Court granted the

[3] The meanings of the terms "martyr" and "jihad" are, in fact, not so straightforward. They can be used with a variety of meanings, some of which do not involve terrorism or violence.

motion. "References to national security and terrorism are likely to inflame passions that could cause jurors to judge the facts more harshly than they would if presented with an indictment strictly discussing violations of a trade embargo." *Id.* at 790. The government's references to jihad, martyrdom, and violent attacks motivated by religious beliefs are more inflammatory than the generic references to terrorism and national security in *Groos*.

In addition, courts have held that language that was far less emotionally charged than the terrorism and kidnapping language at issue here was inflammatory for purposes of Rule 7(d). *See United States v. Rainey*, 946 F. Supp. 2d 518, 545 (E.D. La. 2013) (granting motion to strike references to the number of people killed and number of gallons of oil experts determined were discharged into the Gulf of Mexico because that language could "only serve to inflame passions"); *Cooper*, 384 F. Supp. 2d at 960 (granting motion to strike description of defendant's history with environmental agencies based on finding that it was inflammatory); *United States v. Torres-Gonzalez*, 526 F. Supp. 2d 210, 212 (D.P.R. 2007) (granting motion to strike description of prior conviction for violating a weapons law and five-year sentence for that offense because those descriptions were "inflammatory and prejudicial" and "if presented to the jury could color the jury's perception of Defendants' character"). The allegations the courts found inflammatory in the cited cases pale in comparison to those in the indictment in the case at bar. Allegations regarding the harm that an oil spill caused, a defendant's history of dealings with environmental agencies, and a defendant's prior conviction for a firearms offense are far less inflammatory than the allegations that the defendants in the case at bar wanted to create "an army of jihad" that included minor children they had transported across state lines, that they trained themselves and the children engage in "jihad" because they wished to die as "martyrs," and that they were planning religiously-

motivated violent attacks on "government, military, educational, and financial institutions." (Indictment, Doc. 25, ¶ 11; *see also* ¶ 5). These inflammatory allegations are surplusage.

**C. The terrorism and kidnapping allegations are prejudicial.**

The government's allegations pertaining to terrorism and kidnapping are prejudicial. "The inclusion of clearly unnecessary language in an indictment that could serve only to inflame the jury, confuse the issues, and blur the elements necessary for conviction under the separate counts involved surely can be prejudicial." *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971); *accord United States v. Scheur*, Criminal Docket No. 07-169 SECTION "L", 2008 U.S. Dist. LEXIS 12490, at *7 (E.D. La. Feb. 20, 2008). The allegations at issue are prejudicial for all of these reasons. First, even before this case gets to trial, the allegations are likely to taint the jury pool, which will be exposed to additional media coverage of the case emphasizing the inflammatory allegations. Second, exposing the jury to these allegations at the time of trial will produce juror bias against defendants, depriving them of a fair trial in violation of due process, and give the government an unfair advantage. Third, the allegations are likely to confuse the jury about what the government must prove to obtain convictions. We discuss each type of prejudice in turn.

**1. Granting the motion will decrease the risk of a tainted jury pool.**

The intense media interest in and coverage of the allegations against the defendants during the state court proceedings and in these federal proceedings threatens to taint the jury pool. That threat is even greater because of the highly inflammatory terrorism and kidnapping allegations in the indictment.

The actual federal firearms and conspiracy charges against the defendants have thus far generated much less press and public interest than the highly-charged allegations regarding

terrorism and kidnapping. The media has mentioned the actual firearms and conspiracy charges in passing, while focusing on allegations regarding terrorism and mistreatment of children. For example, the day after the detention hearing in this Court, the *Albuquerque Journal* published a story paraphrasing one of the prosecutors and mirroring the inflammatory language in the indictment: "one of the children volunteered to an FBI agent that they were being trained for jihad." Exhibit B, Judge Denies Release for Suspects in Compound Case, *Albuquerque Journal*, 9.12.18. The story goes on to mention "jihad" two more times, in addition to various references to terrorism and attacks, but only mentions the actual charged offenses once. The same story also mentions the alleged "kidnapping" of Mr. Wahhaj's son twice, even though it is legally impossible under the federal statute for a parent or stepparent to kidnap his or her own child. *Id.* The media coverage of the indictment also emphasizes the government's unnecessary and inflammatory allegations. The *Albuquerque Journal* stated:

> The indictment alleges that the defendants established a training camp and firing range to prepare for violent attacks on government, military, educational, and financial institutions. Authorities say that some of the 11 children taken into custody at the compound told officers they were being trained to attack targets which would be identified by a dead boy whose body was found at the compound.

Exhibit C, *Albuquerque Journal*, Compound Residents Indicted, Headed Back To Court, 9.11.18.

National media coverage has been similar. Parroting the inflammatory allegations in the indictment, NBC News reported, "[f]ederal prosecutors say in court documents that the five charged established a training camp and firing range to prepare for attacks, and that Leveille and Siraj Wahhaj sought to train people, including children, to 'be prepared to engage in jihad' and 'die as martyrs.'" Exhibit D, *NBC News*, Grand Jury Indicts 5 On Federal Charges In New Mexico Compound Case, 9.12.18. Like the *Albuquerque Journal*, NBC News also reported that Mr. Wahhaj was "accused of kidnapping" his own son, despite the kidnapping statute's clear bar

against prosecuting parents. *Id.* Fox News quoted from the government's press release, which in turn quoted some of the provocative language indictment: "'The indictment further alleges that . . . the defendants established a training camp and firing range in Taos County, where they stored firearms and ammunition and engaged in firearms and tactical training as part of their common plan to prepare for violent attacks on government, military, educational, and financial institutions[.]'" Exhibit E, *Fox News*, New Mexico Compound Suspects Indicted On Firearms, Conspiracy Charges, Official Say, 9.11.18.

This prejudicial coverage will continue if the Court permits these inflammatory allegations remain in the indictment. Because the most inflammatory information always receives the most attention in the media, allegations of terrorism and kidnapping will dominate the press coverage as long as those allegations remain in the indictment. This will dramatically increase the risk of tainting the jury pool. Exposing potential jurors to repeated coverage that the indictment charges the defendants with planning terrorist attacks with the help of kidnapped minor children is likely to render potential jurors incapable of deciding the case impartially and holding the government to its burden of proving the firearms and conspiracy charges beyond a reasonable doubt. Stripping the unnecessary terrorism and kidnapping language from the indictment is the only way to make clear to the press and, therefore, prospective jurors that defendants do not stand accused of terrorism and kidnapping and place the focus where it should be: on the *actual* charges against the defendants.

**2. Granting the motion will decrease the risk that the jury's exposure to the indictment will cause the jury to be biased against the defendants.**

The superfluous allegations pertaining to uncharged terrorism and kidnapping offenses are highly inflammatory for the reasons described above. A jury that is exposed to the indictment—with its references to "jihad," religiously-motivated "violent attacks," including by children, and

"martyrdom"—will not be immune from strong emotional reactions. Those reactions will make it impossible for the jury to decide whether the defendants are guilty of the actual crimes they stand accused of based on a rational analysis of the applicable law and admissible evidence.

In *United States v. Quinn*, 401 F. Supp. 2d 80, 97-100 (D.C. 2005), the court recognized how dangerous it is to expose a jury to suggestions of terrorism. In *Quinn*, the court granted a defense motion to strike references to terrorism in an indictment in which defendants had not been charged with any terrorism offenses. The court recognized that "[t]he potential for prejudice . . . is substantial because of the seriousness with which the government and the public treat the present war on terrorism." *Id.* at 99; *see also Groos*, 616 F. Supp. 2d at 790 (recognizing that "[r]eferences to national security and terrorism are likely to . . . cause jurors to judge the facts more harshly"). The court feared the "real risk that jurors, if shown the indictment, would give improper weight to its references to terrorism, even if the Court instructs them that the indictment does not constitute evidence. The jury might, therefore, decline to give defendants the benefit of reasonable doubt." *Quinn*, 401 F. Supp. 2d at 99. The court also noted that "prejudices that are promoted to the entire [jury] panel in a government-endorsed document available when jurors retire to consider a verdict" have significant "potential to introduce extrinsic considerations into the deliberative process." *Id.*

This logic applies with even greater force in the case at bar. In this case, the government has not merely made vague generic references to terrorism. It has loaded the indictment with specific and wholly unnecessary allegations that, for example, the defendants were planning for "jihad," were training an "army of jihad" that included minor children, and were prepared to die as "martyrs." Courts have struck allegations of far less inflammatory uncharged conduct. *See, e.g., United States v. Marlinga*, Case No: 04-80372, 2005 U.S. Dist. LEXIS 3188, * 13-14 (E.D. Mich. Mar. 2, 2005) (striking language suggesting a coverup and obstruction of justice because defendant

was not charged with those offenses and inclusion of language "may lead jurors improperly infer that [defendant] engaged in uncharged offenses"). Exposing the jury to an indictment that includes these allegations at the outset of the trial and in the deliberation room poses an unacceptably high risk of causing the jury to reach a decision based on passion and bias, rather than law and facts.

**3. Striking the challenged language will decrease the risk of jury confusion.**

Exposing the jury to allegations regarding terrorism, jihad, martyrdom, and kidnapping in this firearms case is also likely to confuse the issues. The charges in this case are simple and straightforward. They involve an alleged conspiracy to provide firearms to a non-citizen without status that allows firearms possession. The essential elements of the charged offenses have absolutely nothing to do with terrorism. But if Court allows the jury to consider all of the language in the current indictment, the jury is likely to confuse the issues. The jury could easily conclude, for example, that if it finds that the defendants were preparing for violent attacks, as alleged in the indictment, they should be found guilty, regardless of whether the government has proven beyond a reasonable doubt that the defendants committed the firearm and conspiracy crimes. The only way to ensure that the jury remains focused on the essential elements of the actual crimes charged is to prevent the jury from being exposed to provocative allegations that extend beyond the elements of the firearms and conspiracy charges. *See Jardine*, 2004 U.S. Dist. LEXIS 20414, *15 (striking language regarding number of alleged victims and amount of financial loss because it "could confuse the jury by including information and allegations not based on the statutory language of the offenses charged" which would have burdened the jury "with unnecessary complexity" and risked the jury being "influenced by" the challenged language "as opposed to focusing on the elements of the alleged crimes themselves"). The Court should strike the government's unnecessary and confusing allegations.

**CONCLUSION**

To ensure that defendants receive a fair trial, as due process requires, the Court should strike the unnecessary, inflammatory, prejudicial language from the indictment.

Respectfully submitted,

/s/ Zachary A. Ives
Zachary A. Ives
ZACH IVES LAW
PO Box 27469
Albuquerque, NM 87125
505.257.3787
zach@zachiveslaw.com

*Counsel for Siraj Wahhaj*

FEDERAL PUBLIC DEFENDER
111 Lomas Blvd. NW, Suite 501
Albuquerque, NM 87102
505.346.2489

/s/ Kari Converse
Kari Converse

*Counsel for Jany Leveille*

Law Office of Amy Sirignano, PC

/s/ *electronically filed*
Amy Sirignano, Esq.
5901J Wyoming Blvd. NE #250
Albuquerque, New Mexico 87109
(505) 242-2770
(505) 242-2774 facsimile
amy@abqnmlaw.com

/s/ Marc Lowry
Marc Lowry
ROTHSTEIN DONATELLI
500 4th Street NW, Suite 400
Albuquerque, NM 87102
505.243.1443

mlowry@rothsteinlaw.com

*Counsel for Lucas Morton*

/s/ Billy R. Blackburn
BILLY R. BLACKBURN
1011 Lomas Blvd. NW
Albuquerque, New Mexico 87102

THE LAW OFFICE OF RYAN J. VILLA

/s/ Ryan J. Villa
Ryan J. Villa
2501 Rio Grande Blvd. NW Ste. A
Albuquerque, NM 87104
(505) 639-5709
(505) 433-5812 facsimile
ryan@rjvlawfirm.com

*Counsel for Subhanah Wahhaj*

/s/ Carey Bhalla
Carey Bhalla
Law Office of Carey C. Bhalla LLC
925 Luna Circle NW
Albuquerque, NM 87102
(505) 508-5589
carey@bhallalaw.com

*Counsel for Hujrah Wahhaj*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2018, I filed the foregoing document electronically through the CM/ECF system, which caused all counsel of record to be served by electronic means, as more fully reflected in the Notice of Electronic Filing.

s/ Zachary A. Ives
Zachary A. Ives