IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,                                          No. 1:18-CR-02945-WJ

      vs.

JANY LEVEILLE,
SIRAJ IBN WAHHAJ,
HUJRAH WAHHAJ,
SUBHANAH WAHHAJ, and
LUCAS MORTON,

        Defendants.

**JOINT REPLY IN SUPPORT OF MOTION
TO STRIKE SURPLUSAGE FROM INDICTMENT**

In response to the joint motion to strike (Doc. 69), the government strains to find some way around the commonsense, legally correct proposition that it is not necessary to include allegations suggesting terrorism and kidnapping in an indictment that charges only illegal possession of firearms and conspiracy to commit that crime. Unable to dispute that the terrorism and kidnapping allegations are inflammatory and prejudicial, the government relies on two propositions. The first is that if the disputed allegations satisfy the definition of relevance under the Federal Rules of Evidence, then they are not surplusage under Rule 7(d). The second is that the motion to strike is premature because the government has *threatened* to obtain a superseding indictment at some unidentified time and because that hypothetical indictment *might* include terrorism and kidnapping charges, which *might* make the allegations in question essential to the superseding indictment. Both propositions are wrong, as we explain below. The Court should promptly strike all unnecessary, inflammatory, prejudicial allegations from the indictment.

**I.       The kidnapping and terrorism allegations are not relevant under Rule 7(d).**

**A.       Relevant means essential to the charges for the purpose of Rule 7(d).**

The government invites the Court to analyze the motion to strike certain allegations in the indictment as if it was a motion in limine or a relevance objection challenging the admissibility of particular pieces of evidence at trial.[1] This conflates two different issues that the Court should decide under different standards at different times. As we explained in our motion, the definition of "relevant" is narrower under Rule 7(d) than it is under Federal Rule of Evidence 401. (Joint Motion Of All Defendants To Strike Surplusage From Indictment (Motion), Doc. 59, at 5-6.) The question under Rule 7(d) is whether the allegation that a defendant seeks to strike is an essential element of a charged crime. If the allegation is not an element—if it is not necessary for a prima facie violation of the statute—then the allegation is not relevant for the purpose of Rule 7(d).

We cited numerous cases that support this proposition, including Tenth Circuit precedent suggesting that the narrow definition is correct. Surplusage means "allegations which are both independent of and unnecessary to the offense on which a conviction ultimately rests." *United States v. Brooks*, 438 F.3d 1231, 1237 (10th Cir. 2006). Stated differently, the question is "whether the language" that the defense seeks to strike "is an essential element of the alleged crimes." *United States v. Zabawa*, 39 F.3d 279, 285 (10th Cir. 1994). The Tenth Circuit has consistently described

---

[1] The government also leans on the unhelpful generalization that motions to strike are rarely granted. (Response at 2, 3, 6.) This tells the Court nothing about whether *these* defendants' motion to strike the *particular* allegations in *this* indictment should be granted. Rule 7(d) calls for a fact-specific inquiry. The outcome depends on the elements of the charged offenses as well as the particular language the defense seeks to strike. General statements do not assist the Court in this analysis. In any event, the Tenth Circuit has never adopted the generalization the government relies on, perhaps because the court has recognized it does not advance the analysis. Nor has the Tenth Circuit or any other court that we are aware of stated that the Rule 7(d) standard is more permissive in conspiracy cases. Contrary to the government's suggestion, the defense need not pass a "doubly" exacting standard simply because the government has alleged a conspiracy. (Response at 6.) Whether an allegation is relevant under Rule 7(d) always depends on the elements of the charged offenses, even when conspiracy is one of them.

the Rule 7(d) relevance question as whether the disputed allegations are essential to the charges. *See United States v. Collins*, 920 F.2d 619, 631 (10th Cir. 1990) ("[L]anguage . . . describing the essential elements of the crime[s] alleged is not surplusage and cannot be stricken under Rule 7(d)."); Wright & Leipold, *Federal Practice and Procedure: Criminal 4th* § 128 at 642 ("Words describing what is legally essential to the charge in the indictment cannot be stricken as surplusage.").

The Tenth Circuit has never articulated the test as whether the allegation is "relevant" as that term is used in Rule 401. Nor has the Tenth Circuit's analysis of a Rule 7(d) question resembled a Rule 401 analysis. The court has never asked whether an allegation that a defendant sought to strike "has any tendency to make a fact more or less probable than it would be without the evidence" or if "the fact is of consequence in determining the action." Fed. R. Evid. 401.

The Tenth Circuit's articulation of the definition is consistent with the current version of the treatise that the government cites and with several cases we cited. (Motion, Doc. 59, at 5-6.) The government relies on *Federal Practice and Procedure* in describing the legal standard for a motion to strike. According to *Federal Practice and Procedure*,

> [T]he alleged surplusage is to be stricken only if the information in question is both irrelevant and prejudicial. This does not necessarily mean that any evidence that would be admissible at trial is therefore appropriate in an indictment; the question, as one court has said, is "whether the material is 'unnecessary' in making out a prima facie pleading of the violation."[2]

Wright & Leipold, *Federal Practice and Procedure: Criminal 4th* (2008) § 128 at 646-47 (quoting *United States v. Cooper*, 384 F. Supp. 2d 958, 960 (W.D. Va. 2005)). As the Court explained in *Cooper*, which we cited in our motion, Rule 7(c) "does not contemplate the inclusion of every piece of evidence that ultimately may be relevant to building a case against the defendant." 384 F. Supp. 2d at 960; *accord United States v. Afsharjavan*, 1:15-CR-144 (JCC), 2015 U.S. Dist. LEXIS

---

[2] The government cited the second edition of this treatise, published in 1982. (Response at 2.)

113376 * 8 (E.D. Va. Aug. 25, 2015) ("In determining whether the information is relevant [for purposes of Rule 7(d)], the question is not whether the allegations are legally relevant, i.e., would be admissible at trial."); *see*, *e.g., United States v. Presgraves*, 658 F. Supp. 2d 770, 783-84 (W.D. Va. 2009) (using narrow definition); *United States v. Sawyer*, Case No. 08-40045-JAR, 2008 U.S. Dist. LEXIS 70674, *3 (D. Kan. Sept. 12, 2008) (using narrow definition); *United States v. Jardine*, Criminal Action No. 04-219, 2004 U.S. Dist. LEXIS 20414, * 14 (E.D. Pa. Oct. 12, 2004) (using narrow definition); *United States v. Mutchler*, 333 F. Supp. 2d 828, 832 (S.D. Iowa 2004) (using narrow definition). The narrow definition precludes the government from going beyond the scope of Rule 7(c)—which calls for "a plain, concise, and definite written statement of the essential facts"—by including in the indictment any alleged facts the government believes it can prove at trial. The broad definition of relevance would allow the government to "use an indictment to thoroughly present its case to the jury before the trial even began, at a time when the defendant would not be entitled to defend himself." *Cooper*, 384 F. Supp. 2d at 960.

    For similar reasons, the broad definition cannot be reconciled with the conjunctive version of the Rule 7(d) test, which the government urges the court to adopt. (Response at 3, n. 1.) The broad definition coupled with a conjunctive test would not afford defendants protection from *unnecessary* prejudice. If the definition is broad and the test is conjunctive, then government can use an indictment to publish to the public, the press, and the jury prejudicial and inflammatory allegations even if they are not essential to the charges, as long as those allegations are relevant under Rule 401. This would allow and even encourage the government to plead the alleged facts it believes are the most damaging to the accused, even if pleading those facts is not essential to the charges. In other words, the government could use an indictment to unnecessarily present the alleged facts it *hopes* its most damaging evidence would establish (1) to the public and the press

4

well before trial begins and (2) to the jury at a time when the accused have not had a chance to defend, *Cooper*, 384 F. Supp. 2d at 960. Rule 7(d) must prohibit this to serve its purpose.

The government has not explained why this Court should expand the definition of relevance beyond the plain language of Tenth Circuit precedent and reject the narrow definition that various courts have correctly used and that achieves the purpose of Rule 7(d). Instead, the government cites non-binding decisions that simply apply the broad definition from the Rules of Evidence without explaining any rationale for using that definition in the context of Rule 7(d). These non-binding opinions do not even include any suggestion that the courts ever considered whether the narrow or broad definition is correct. *See United States v. Berroa*, 856 F.3d 141, 157 (1st Cir. 2017) (declining to strike allegations pertaining to motive because it had "probative value" and was "appropriate information for the jury to consider in finding that [defendant] turned to illicit means"); *United States v. Mulder*, 273 F.3d 91, 100 (2d Cir. 2001) ("Because the six challenged paragraphs, which generally described the tactics and purposes of labor coalitions, discussed background evidence that was properly admissible and relevant, the district court did not err by refusing to strike these paragraphs from the indictment."); *United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993) (finding no abuse of discretion in denial of motion to strike allegation regarding solicitation of bribery because evidence of solicitation was properly admitted into evidence at trial); *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990) ("If evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken."); *United States v. Hill*, 799 F. Supp. 86, 88-89 (D. Kan. 1992) (applying broad relevance standard).[3] There is no indication in these decisions that the question of whether

---

[3] The government states that *Hill*, a District of Kansas case from 1992, used the broad relevance definition and applied the Tenth Circuit's decision in *Collins*. However, the *Hill* court's use of the broad definition did not rest on *Collins*. (Response at 4.) The only authority the *Hill* court cited in support of the broad definition was a 1979 case from a district court in the Seventh Circuit. It did not cite any Tenth Circuit authority for that definition. More recent precedent from the District

to employ a narrow or broad definition of relevance was even presented to these courts. Had that question been before them, they surely would have acknowledged the question, decided it, and explained why they were choosing the broad definition. They did not. They merely recited the relevance standard that courts are in the habit of using under the Federal Rules of Evidence. Persuasive authority is only as persuasive as its reasoning. Without any reasoning, these cases are unpersuasive. Because the reasoning supporting the narrower definition is sound and consistent with Tenth Circuit precedent, the Court should reject the broad definition of relevance and accept the narrow one.

### B. The terrorism and kidnapping allegations are not essential to the charges.

Under the correct Rule 7(d) definition, the terrorism and kidnapping allegations are not relevant, as we explained in our motion.[4] (Motion at 7-8.) Neither kidnapping nor terrorism is an element of the charged § 922(g) offense or of conspiracy to violate § 922(g). The government has not claimed that its indictment would be legally insufficient—that it would lack an essential element of one of the charged crimes—without the kidnapping and terrorism allegations. Nor could the government make any such claim. The indictment without the surplusage allegations would be adequate to allege the charged offenses. (Exhibit A to Motion, Doc. 59-1, Indictment without surplusage.) The indictment would sufficiently plead the firearms and conspiracy charges without the allegations that defendants discussed jihad or martyrdom, without the allegations that they transported children across state lines to train them for violent attacks, and without the

---

of Kansas supports the narrow definition. In *Sawyer*, 2008 U.S. Dist. LEXIS 70674 at *3, the court cited *Cooper* for the proposition that the test is whether allegations are "essential in making out a *prima facie* pleading of violation."

[4] Nor do the allegations fit the broader definition of relevance under Federal Rule of Evidence 401. However, that question is not before the court at this juncture. In motions in limine and at trial, defendants will object under the Federal Rules of Evidence to any government evidence of uncharged acts involving kidnapping and terrorism.

allegations that their motive was to fulfill Ms. Leveille's religious prophecies. Not one of those allegations is essential. All are irrelevant under Rule 7(d).

Relying on an overly-broad definition of relevance, the government urges the Court to permit it to unnecessarily complicate this case by using a "complex and far-reaching" indictment to bring straightforward § 922(g) and conspiracy charges. (Response at 7.) This is a gun case. It should be simple. The government merely needs to allege that Ms. Leveille illegally possessed firearms and that the defendants were involved in a conspiracy to provide her with those firearms. Those narrow allegations should be the gravamens of the indictment. But they are not. The government's indictment instead focuses on the defendants' alleged religious beliefs, their alleged preparation for violent attacks, and their alleged involvement of children in that preparation. These allegations do not describe the objective of a gun possession conspiracy: illegal possession of guns. Nor do the terrorism and kidnapping allegations describe overt acts that defendants committed in order to provide Ms. Leveille with firearms. A person can commit the charged crimes without particular religious beliefs, without planning violent attacks, and without transporting children across state lines. The terrorism and kidnapping allegations are extraneous because they are not essential elements of the crimes charged.

**II.     The mere possibility of a superseding indictment that might change the Rule 7(d) analysis does not render the motion to strike premature.**

The government's argument that the motion is premature is not based on any legal authority. It is based exclusively on two layers of speculation: (1) that a grand jury will at some unknown point in time return a superseding indictment and (2) that this hypothetical superseding indictment will include charges that make the terrorism and kidnapping allegations relevant for purposes of Rule 7(d). But the question under Rule 7(d) is whether the *current* indictment contains surplusage, not whether a superseding indictment that the government imagines obtaining will ultimately remedy what ails the current indictment. The government does not cite any rule, statute,

7

case, or other legal authority to support its theory that the court should deny a motion to strike or delay ruling on such a motion based on a hypothetical superseding indictment. Defendants are not aware of any such authority.[5] The Court should reject the government's argument on that basis rather than speculating about whether a grand jury will find probable cause for additional charges, what any such charges might be, and whether those charges might yield a different Rule 7(d) analysis.

Even if there was some legal basis for denying a motion to strike or delaying a ruling based on the possibility of a hypothetical superseding indictment that could theoretically fix the problems with the actual indictment, such an approach is not appropriate in this case. That is because it would not prevent the prejudice that the surplusage is currently generating. As we explained in our motion, the defendants are suffering prejudice *now* and will continue to suffer prejudice until the Court strikes the inflammatory and misleading terrorism and kidnapping allegations. The government does not dispute that the terrorism and kidnapping allegations are inflammatory and prejudicial. As long as the indictment in this high-profile case continues to include those allegations, the press and the public will remain under the very damaging false impression that the defendants are charged with terrorism and kidnapping. They are not. It is extremely prejudicial for the government to suggest otherwise through the official charging document, onto which the press has firmly latched. The public's mistaken impression of the charges becomes more deeply entrenched with each passing day, and the risk of additional misleading media reports about the indictment remains. The Court should act immediately to stem the tide. A prompt order reducing the indictment to its essential allegations is necessary to address ongoing prejudice and to ensure that the defendants receive the fair trial the due process clause guarantees.

---

[5] Nor does the government provide any practical justification for declaring the motion premature. Ruling now would not prejudice the government. It would not render the indictment invalid. And it would not preclude the government from presenting a superseding indictment to a grand jury.

**CONCLUSION**

For these reasons and the reasons in the joint motion, the Court should strike the unnecessary, inflammatory, prejudicial language from the indictment.

Respectfully submitted,

/s/ Zachary A. Ives
Zachary A. Ives
ZACH IVES LAW
PO Box 27469
Albuquerque, NM 87125
505.257.3787
zach@zachiveslaw.com

*Counsel for Siraj Wahhaj*


FEDERAL PUBLIC DEFENDER
111 Lomas Blvd. NW, Suite 501
Albuquerque, NM 87102
505.346.2489

/s/ Kari Converse
Kari Converse

*Counsel for Jany Leveille*


Law Office of Amy Sirignano, PC

/s/ *electronically filed*
Amy Sirignano, Esq.
5901J Wyoming Blvd. NE #250
Albuquerque, New Mexico 87109
(505) 242-2770
(505) 242-2774 facsimile
amy@abqnmlaw.com

/s/ Marc Lowry
Marc Lowry
ROTHSTEIN DONATELLI
500 4th Street NW, Suite 400
Albuquerque, NM 87102
505.243.1443
mlowry@rothsteinlaw.com

9

*Counsel for Lucas Morton*


/s/ Billy R. Blackburn
BILLY R. BLACKBURN
1011 Lomas Blvd. NW
Albuquerque, New Mexico 87102

THE LAW OFFICE OF RYAN J. VILLA

/s/ Ryan J. Villa
Ryan J. Villa
2501 Rio Grande Blvd. NW Ste. A
Albuquerque, NM 87104
(505) 639-5709
(505) 433-5812 facsimile
ryan@rjvlawfirm.com

*Counsel for Subhanah Wahhaj*


/s/ Carey Bhalla
Carey Bhalla
Law Office of Carey C. Bhalla LLC
925 Luna Circle NW
Albuquerque, NM 87102
(505) 508-5589
carey@bhallalaw.com

Theresa M. Duncan
DUNCAN EARNEST
515 Granite NW
Albuquerque, NM 87102
505.842.5196
teri@duncanearnest.com

*Counsel for Hujrah Wahhaj*

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 28, 2018, I filed the foregoing document electronically through the CM/ECF system, which caused all counsel of record to be served by electronic means, as more fully reflected in the Notice of Electronic Filing.

s/ Zachary A. Ives
Zachary A. Ives