IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                      No. 1:18-CR-02945-WJ

JANY LEVEILLE, et al.,

        Defendants.

## DEFENDANTS' JOINT MOTION TO VACATE TRIAL AND THE AMENDED SCHEDULING ORDER AND IMPOSE A SECOND SCHEDULING ORDER

Defendant Subhanah Wahhaj, joined by all Defendants, through counsel, move this Court for an order vacating the April 13, 2020 trial setting and the Amended Scheduling Order [Doc. 95] and to set a scheduling conference to determine a new trial date and impose a second scheduling order.

### BACKGROUND

On September 11, 2018, a grand jury returned an Indictment, charging Defendants with possession of firearms by a non-citizen without status that permits firearms possession and conspiracy to commit that offense. *See* Indictment [Doc. 25]. On October 3, 2018, this Court entered an Order declaring the case complex. *See* Order [Doc. 49]. Several months later, on March 13, 2019, a Superseding Indictment was returned, adding counts related to alleged terrorism and kidnapping conspiracies, including (Count 1) Conspiracy to Provide Material Support to Terrorists, in violation of 18 U.S.C. § 2339A, (Count 2) Providing Material Support to Terrorists, in violation of 18 U.S.C. §§ 2339A & 2, (Count 3) Conspiracy to Murder an Officer or Employee of the United States, in violation 18 U.S.C. § 1117, (Count 4) Conspiracy to Commit an Offense Against the United States, in violation of 18 U.S.C. § 371, (Count 6) Conspiracy to Commit Kidnapping, in violation of 18 U.S.C. § 1201(c), and (Count 7) Kidnapping, in violation of 18

U.S.C. §§ 1201(a) & 2. *See* Superseding Indictment [Doc. 85].  If convicted of these offenses, Defendants face potential life sentences.

On April 5, 2019, recognizing that "[a]dditional time [was] needed to complete investigation of this matter, to declassify discoverable materials, and to complete discovery" following the Superseding Indictment, the Court entered an Amended Scheduling Order. *See* First Amended Scheduling Order [Doc. 95]. Pursuant to the Amended Scheduling Order trial in this matter is currently set for April 13, 2020, with a corresponding time for the acceptance of plea agreements, exchange of trial materials, including exhibit and witness lists, as well deadlines for the Defendants to file motions related to pretrial discovery litigation (October 11, 2019), expert disclosures (September 13, 2019), and *Daubert* Motions, responses and replies (October 11, October 25, and November 1). *See Id*.  Pursuant to the Amended Scheduling Order, the United States' discovery, including all expert disclosures, was due on July 12, 2019.  *Id.* at 2.  While a large amount of discovery was prodced on July 12, not all of it was produced, and some remains outstanding.  Moreover, expert disclosures were not completed July 12 and some remain outstanding.

On July 12, the government produced approximately 1.27 terabytes of data.  This includes 5,172 files of documents, audio and video recordings and the like.  The documents total 24,064 pages.  On October 3, the government produced an additional 2237 pages of discovery.  On October 24 an additional 128 pages were produced.  A review of this discovery to date reveals a number of items missing.  For instance, paper discovery produced reveals that some of the defendants were under surveillance for as long as three years.  Included in this surveillance was pole camera video footage.  While some reports of this footage were produced, the video itself was

not. In total, 11 separate categories of discovery were identified and requested to be produced in letter sent by Defendants on November 1. To date no response has been received.

Over the last several months, the defense has reviewed the physical discovery in the government's possession. Included in that discovery are numerous notebooks and journals, copies of which were not produced in discovery. Accordingly, the defense has photographed each page so all defense teams and defense experts can review them. This has resulted in thousands of photographs that must be reviewed to determine the relevance of any of the writings in these journals and notebooks. To be sure, the government is relying on other notebooks and journals to support its case and therefore these previously undisclosed notebooks and journals must be reviewed.

On July 9, 2019, the United States filed its Notice of Intention to Offer Expert Testimony. *See* Notice [Doc. 127]. This Notice identified five experts the government intends to call. *See Id.*, ¶¶ 1-5. The Notice states the government will provide to the defense the qualifications of the experts, their opinions and bases for the opinions "once the experts have had an opportunity to review completed discovery and have rendered their opinions in writing." *Id.* ¶ 6. Nearly two months after this Notice was filed, the government still had not produced this information. Accordingly, the defense inquired about this and on August 30, 2019, the United States informed that it would be disclosing full expert reports within the next 3-4 weeks, along with the materials the experts relied upon. Based upon this Defendants sought and received from the Court a 60-day extension of various deadlines, including Defendants' expert and discovery disclosure deadlines, and deadline to file *Daubert* Motions. *See* Order [Doc. 147].

On September 12, 2019, having still not produced the expert reports and other information that was due with the Expert Notice on July 12, the government indicated that it would produce

Dr. John P. Phillip's expert report on September 13, 2019, with the production of Mr. Randy Watt's expert report to occur the following week.  Dr. Phillip's report, however, was not disclosed until October 3.  While Mr. Watt's CV was disclosed on October 3, to date, no report from Mr. Watt has been produced.[1]  In addition, reports had not been produced for the first witness listed on the Expert Notice, ATF agent James Barlow by the July 12 deadline.  His reports were not produced until October 24, 2019. The third expert witness identified is Gloria Smirkle, a nurse practicioner.  While the Expert Notice indicates she will testify about the medical treatment she provided to the alleged victim (A.G.), including his medical treatment, diagnosis and the risks of A.G. not receiving his medication, the government has not produced a report or any treatment records.

Defendants have engaged multiple experts to examine the proposed expert testimony of the government's experts as well as other experts regarding various aspects of the case.  Defense counsel has diligently supplied these experts with discovery as it has been produced, but these experts need time to review this material.  Further, the defense experts cannot form their opinions or prepare their own reports until the government has provided all discovery and has completed its expert disclosure.

In addition, as the Court is aware, co-Defendant Leveille has been found incompetent to stand trial and has been ordered to the custody of the Attorney General to determine if she can be treated to competency.  *See* Order [Doc. 159].  Due to her condition, counsel for Defendant Leveille have not had sufficient time to review the case with her and prepare for trial.  Even if she can be restored to competency in the shortest time possible under this Court's Order—4 months— and the government produces complete discovery and expert disclosures, it would be impossible for counsel to be prepared for trial in what would be approximately two months time.  Moreover,

---

[1] The CV that was produced by the government is likely not Mr. Watt's most recent as it is 3 years old.

because Defendants are all joined in a single indictment, counsel for the remaining co-Defendants are unable to prepare a joint defense with counsel for Ms. Leveille while she remains incompetent to stand trial and unable to assist in preparation of this joint defense.

## ARGUMENT

**I. The April 2020 trial date should be vacated and rescheduled to allow time for Defendants to review new discovery, obtain experts to rebut the United States' proposed experts, to determine the competency of Defendant Leveille, and to allow time to prepare for trial.**

Counsel for Defendants have acted with due diligence. However, the enormity and complexity of the case in addition to the United States late disclosure of discovery and expert material, and outstanding discovery that has yet to be produced, has made the discovery review and investigative process difficult. It is simply untenable for Defendants to be prepared for trial in less than six months in a case of this magnitude while complete discovery and expert disclosures remain outstanding. Even if the government produced all of this information immediately, it would be unlikely counsel could be prepared for trial in April. The government and its agents have had since 2015 to investigate this case. Defendants and their counsel do not even have full discovery from this investigation. Even once all discovery is received, counsel need time to review it, review it with Defendants, conduct an investigation surrounding the facts revealed from that discovery and be prepared for trial.

As for experts, the current deadline for disclosure of defense experts is November 12, 2019. Assuming the government had completed its expert disclosure, which it has not, counsel would still need time to locate the appropriate experts and those experts need time to review the voluminous discovery (some of which has yet to be received) and determine their opinions before Defendants' counsel could disclose experts. Discovery motions are currently due December 10 and *Daubert* Motions are currently due December 9. Because the government just produced a

large amount of discovery in July and then in October, and defense counsel was just able to write to counsel for the government to seek to resolve discovery disputes in good-faith, more time is needed before motions to compel discovery are ripe.  Similarly, because the government has not completed its expert disclosures, counsel cannot adqueately raise any *Daubert* issues.

All of these issues need to be litigated prior to trial in order to provide effective assistance of counsel at trial and preserve Defendants' rights.  Given the massive amount of discovery, the outstanding discovery, the journals and notebooks in evidence that have not been produced until the evidence view, and the government's failure to timely produce discovery, more time is needed before these deadlines can be met and accordingly trial should also be moved.

Given the above-stated needs, Counsel for all Defendants believe a continuance of the trial is warranted.   Counsel submits that, pursuant to the requirements of 18 U.S.C. § 3161(h)(7)(B), and consistent with the holding in *United States v. Toombs*, 574 F.3d 1262 (10th Cir. 2009), good grounds exist for the continuance as explained herein.  Pursuant to § 3161(h)(7)(A), the ends of justice are served by granting the continuance and imposing a new scheduling order.  In considering whether to grant a continuance pursuant to subparagraph (h)(7)(A), the Court must consider are identified in § 3161(h)(7)(B).  Those factors are:

> **(i)** Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.
>
> **(ii)** Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
>
> **(iii)** Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex.

**(iv)** Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

Here, those factors dictate granting Defendants' request given the specific circumstances of this case. The Superseding Indictment alleges three discrete conspiracies. The discovery in total, including discovery produced before July 12, consists of almost five terabytes of data, which includes tens of thousands of pages of paper discovery, hundreds of audio and video recordings, and other material. There are also dozens of potential witnesses who need to be interviewed, but full and complete interviews cannot be done until all discovery is produced. Moreover, all Defendants except Siraj Wahhaj face mandatory life sentences if convicted of kidnapping resulting in death. With a guideline cross-reference, Mr. Wahhaj may face a life sentence as well. It exceeds the bounds of reason for Defendants' counsel to be prepared for trial in six months given the massive amount of discovery recently disclosed, a number of items of outstanding discovery pending, incomplete expert disclosures, the need for pretrial litigation on experts and other issues which cannot occur until discovery is concluded, and one of the co-defendants undergoing treatment for competency.

Accordingly, a continuance of the trial is warranted and the Court should vacate the trial and impose a second scheduling order. *See United States v. Banks*, 761 F.3d 1163, 1177 (10th Cir. 2014) (holding continuance was warranted in large complex conspiracy with vast discovery); *United States v. Spring*, 80 F.3d 1450, 1458 (10th Cir. 1996) (holding an open-ended continuance was not error where defendant had to obtain new counsel in a complex, eleven-count indictment, which exposed defendant to substantial prison time). Defendants would surely be denied effective

assistance of counsel and due process if they were required to proceed under the current scheduling order. On the other hand, the government will not suffer any prejudice by extending the deadlines in the scheduling order and rescheduling trial.

The extension is necessary to allow time to review the supplemental expert disclosures that have not yet been produced, consult with appropriate defense experts regarding the disclosure, and prepare and file any *Daubert* Motions. In addition, Defendants require additional time to review and analyze the 1.27 terabytes of additional discovery provided in July, and independently investigate the bases for the underlying charges, which arose from a several years-long multi-state and multi-jurisdictional investigation of Defendants. Further, Defendants complex religious ideology also requires that Counsel conduct additional research regarding Islam and its various Haitian and Caribbean offshoots, in order to properly communicate with Defendants and anticipate potential defenses. Efforts to review and analyze discovery, conduct an independent investigation regarding the seven-count Superseding Indictment, and consult with various experts, are currently underway but are not yet complete.

Counsel submits that there is good cause to vacate trial and extend the pretrial deadlines, given the complex nature of the case, the amount of discovery involved, the multi-jurisdictional nature of the charges, and the amount of time Defendants face if convicted. The extensions requested are reasonable for counsel for the Defendants to provide well-informed advice regarding any potential plea offers or in the alternative to properly prepared for trial.

Speedy trial issues do not necessitate requiring trial be held in April. First, this is a complex case pursuant to Section 3161(h)(7)(B)(ii) and thus the time-periods in the Speedy Trial Act do not apply. Moreover, this case is unusually complex in that involves terrorism charges as well as charges of kidnapping resulting in death. Either charge standing alone would render this case

complex, but together make it unusually complex. Further, "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant" is excluded under § 3161(h)(1)(A) and "[w]here, as is the case at bar, multiple defendants are charged together and no severance has been granted, one speedy trial clock governs." *United States v. Cope*, 312 F.3d 757, 776 (6th Cir. 2002). Thus, short of severance being granted for which no motion has been filed, all Defendants are on the same speedy trial clock.

## CONCLUSION

For the reasons stated above, Defendants ask the Court to enter an order vacating the April trial date and the First Amended Scheduling Order, and convene a new scheduling conference wherein the parties can determine when they will be prepared to meet the outstanding deadlines identified above and be prepared for trial.

Respectfully submitted,

/s/ *Ryan J. Villa*
Ryan J. Villa
The Law Office of Ryan J. Villa
2501 Rio Grande Blvd NW Ste. A
Albuquerque, NM 87104
(505) 639-5709
ryan@rjvlawfirm.com

/s/ *Billy R. Blackburn*
Billy R. Blackburn
1011 Lomas Blvd. NW
Albuquerque, New Mexico 87102
(505) 242-1600
billy@bblackburnlaw.com

## CERTIFICATE OF CONFERENCE

I certify that I conferred with counsel for all parties. All counsel for Defednants join in this Motion. The United States, through its counsel, Assistant United States Attorney George Kraehe opposes this Motion.

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing document electronically through the CM/ECF system. Such filing is the equivalent of service on parties of record.

/s/ *Ryan J. Villa*
Ryan J. Villa
