IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,                        No. 1:18-CR-02945-WJ

    vs.

JANY LEVEILLE,
SIRAJ IBN WAHHAJ,
HUJRAH WAHHAJ,
SUBHANAH WAHHAJ, and
LUCAS MORTON,

       Defendants.

**MOTION FOR COURT-ORDERED DEPOSITION OF WITNESS DUE TO
OBSTRUCTION OF WITNESS COMMUNICATION BY THE UNITED STATES**

       Defendant Subhanah Wahhaj, through counsel, Ryan J. Villa and Justine Fox-Young, joined by all co-Defendants, through their respective counsel, moves this Court to issue an Order to permit the deposition of Taos County Sheriff Jerry Hogrefe as a sanction for the United States' interference with the defense's ability to interview witnesses. In support of this motion, counsel asserts as follows:

1. On October 4, 2019, Ryan J. Villa and licensed, private investigator Gary Ainsworth, attempted to interview a crucial witness, Sheriff Jerry Hogrefe, who refused to speak with them, as in his own words, he was under "direct orders" from the government. These orders constitute an impermissible interference with the Defendants' constitutional right to interview witnesses in preparation for trial.

2. Defendants therefore respectfully request that the Court find these to be "exceptional circumstances" that warrant an order permitting the taking of Sheriff Hogrefe's deposition.

1

3.  Alternatively, Defendants request an evidentiary hearing to determine exactly what the government instructed Sheriff Hogrefe to do and whether government agents in fact improperly instructed him to decline interviews with the defense.

## BACKGROUND

On September 11, 2018, a grand jury returned an Indictment, charging Defendants with possession of firearms by a non-citizen without status that permits firearms possession and conspiracy to commit that offense. *See* Indictment [Doc. 25].  Several months later, on March 13, 2019, a Superseding  Indictment was  returned, adding counts related  to  alleged terrorism  and kidnapping  conspiracies, including  (Count  1) Conspiracy to  Provide  Material  Support  to Terrorists, in violation of 18 U.S.C. § 2339A, (Count 2) Providing Material Support to Terrorists, in violation of 18 U.S.C. §§ 2339A & 2, (Count 3) Conspiracy to Murder an Officer or Employee of the United States, in violation 18 U.S.C. § 1117, (Count 4) Conspiracy to Commit an Offense Against  the  United  States,  in  violation  of  18  U.S.C.  §  371,  (Count  6) Conspiracy  to  Commit Kidnapping, in violation of 18 U.S.C. § 1201(c), and (Count 7) Kidnapping, in violation of 18 U.S.C.  §§  1201(a)  &  2. *See*  Superseding  Indictment.  If  convicted  of  these offenses, Defendants face a potential life sentence and a mandatory life sentence on Count 7 if the jury determines the kidnapping resulted in a death.

In December of 2017, Sheriff Jerry Hogrefe and the Taos County Sheriff's Office began conducting an investigation into the Defendants who were believed to have relocated from Georgia to Amalia, New Mexico. It was alleged that Defendants took Siraj Wahhaj's minor son AG with them, without permission of his mother, who lived in Georgia. The Federal Bureau of Investigation ("FBI") eventually became involved in this investigation; however, it is unclear precisely when the FBI's involvement began.

In September 2018, FBI Agent Taylor testified at a Detention Hearing that the FBI only became involved in the investigation on June 17, 2018 at the request of the Taos County Sheriff's Office. *See* Exhibit 1 ("Transcript of September 2018 Hearing") at 22. This assertion is contradicted by a number of documents which indicate that the FBI was aware of this case as early as December 2017, six months before the date Agent Taylor identified. Indeed, long before Defendants allegedly left Georgia, FBI and other federal agents began surveilling Defendants Siraj Wahhaj and Jany Leveille, and even installed a pole camera outside their home in Georgia in December, 2016.

Correspondence from the FBI Supervisory Special Agent in Atlanta reveals that an FBI agent spoke with AG's mother, on December 12, 2017, mere weeks after she notified police her son was missing. *See* Exhibit 2 ("March 5, 2018 Letter from FBI Atlanta Division). A report written by Taos County Deputy Rael states that on June 6, 2018 he and an FBI agent conducted surveillance on the Amalia property occupied by Defendants. *See* Exhibit 3 ("Excerpt of Deputy Rael's Report"). Rael recalled learning "the FBI had already been flying the drone for some time before [he] was made aware of the operation." *Id.* Documents produced in discovery indicate not only that the FBI was involved in the investigation in December, but that the Bureau was conducting a long-running investigation separate from and not at the request of the Taos County Sheriff's Office. Sheriff Hogrefe is the best person to provide pertinent, relevant and potentially exculpatory information as to when and why the FBI became involved.

On October 4, 2019, undersigned counsel, Ryan J. Villa, and investigator Gary Ainsworth attempted to interview Sheriff Hogrefe at his office.  Sheriff Hogrefe invited the two into his office and as they were walking there, Mr. Villa explained why they were there and who he represented. Once Sheriff Hogrefe confirmed which case they were there to talk to him about, he said "I'm not

going to talk to you" and indicated none of his employees would either. He said he wouldn't talk on "direct orders from 'them.'" Mr. Villa responded that as Sheriff, Mr. Hogrefe was his "own boss" and did not "have to follow 'their' orders." Sheriff Hogrefe said he understood but still refused to speak with Mr. Villa and Mr. Ainsworth. After Mr. Villa and Mr. Ainsworth left the building, they went to Mr. Ainsworth's vehicle. Sheriff Hogrefe came out of the building and approached Mr. Ainsworth's vehicle on the driver's side. He gave Mr. Ainsworth his card and stated that he would speak to him only if he was given permission.[1]

Subsequently, Mr. Villa sent multiple emails to Assistant United States Attorney George Kraehe informing him of this exchange and requesting that Mr. Kraehe inform the Sheriff that he has permission to speak with defense counsel. *See* Exhibit 4 ("Selected Emails between Villa and Kraehe"). Despite the early exchange wherein Sheriff Hogrefe stated that he would speak to Mr. Villa and Mr. Ainsworth if given permission, Mr. Kraehe later responded that Sheriff Hogrefe had made his own decision not to speak to the defense. *See id.*

## ARGUMENT

A witness in a criminal prosecution does not belong to either the government or the defense. *United States v. Carrigan*, 804 F.2d 599, 603 (10th Cir. 1986). Both sides have an equal right to interview a witness in preparation for trial. *Id*. The Tenth Circuit has held that the defense has a right to be free from any impermissible interference with a witness's decision to be interviewed. *See United States v. Gonzales*, 164 F.3d 1285, 1292 (10th Cir. 1999). While a witness has the right to refuse to be interviewed, the prosecution may not hinder the witness's choice to do so. *United States v. Pinto,* 755 F.2d 150, 152 (10th Cir. 1985). Furthermore, if the government advises a

---

[1] Defendants intend to offer testimony and other evidence regarding this exchange should the Court grant an evidentiary hearing on this matter.

prospective witness to decline to give the defense information, this constitutes "unprofessional conduct" and is a violation of Rule 3.4(f) of the Model Rules of Professional Conduct. *Carrigan*, 804 F.2d at 603.

A suggestion to decline an interview with the defense does not have to be explicit in order to qualify as an impermissible interference. In *United States v. Carrigan*, the Tenth Circuit held that the government can interfere with a witness's decision "by words, implications or non-verbal conduct . . . . either intended or unintended." 804 F.2d at 604. The court further held that the government's actions, which "substantially chilled" the witness's prior willingness to speak with defense, created "extraordinary circumstances" that justified an order for the deposition of the adverse witness. *Id*. Here, the Sherriff was initially more than happy to meet with Mr. Villa and Mr. Ainsworth, with the full knowledge that they were there to discuss some matter being investigated by his office.  Only after learning the specific matter to be discussed did he decline the conversation.  Sheriff Hogrefe further underscored the sole reason for his change of heart when he indicated he had a "direct order" not to speak to the defense, but then again expressed a willingness to if he was only given permission. When counsel sought the government's permission, the story changed, and the government responded on behalf of Sheriff Hogrefe that he did not want to be interviewed. These inconsistent responses strongly indicate improper governmental interference with a witness, which warrants an order permitting a deposition of Sheriff Hogrefe by the defense.  At a minimum, the responses suggest that the government's actions have substantially chilled Sheriff Hogrefe's willingness to be interviewed.

The district court may exercise discretion when determining whether a deposition should be taken under particular circumstances. *See United States. v. Fuentes-Galindo* 929 F.2d 1507, 1509 (10th Cir. 1991). The Tenth Circuit has held that a district court has authority to order the

deposition of the adverse witness when the government has substantially interfered with the defendant's access to that witness. *Carrigan*, 804 F.2d at 604 ("[a]n order merely to cease such interference, after the fact, might be insufficient because the witness's free choice might have been already perverted and the witnesses likely to refuse voluntary interviews."). The district court may order a deposition "at least in unusual circumstances," based on its "inherent power to control and supervise its own proceedings." *Id.* at 603.

Defendants therefore respectfully request that the Court find the present circumstances to be "unusual" and an inexcusable interference into the Defendants' rights to question a witness. Accordingly, Defendants request that the Court authorize the taking of Sheriff Hogrefe's deposition. In the alternative, Defendants respectfully request that the Court conduct an evidentiary hearing to permit the defense to question Sheriff Hogrefe under oath about what he was told by the government with respect to engaging in a defense interview.

Respectfully submitted,

/s/ *Ryan J. Villa*
Ryan J. Villa
The Law Office of Ryan J. Villa
5501 Eagle Rock Ave. NE, Suite C2
Albuquerque, NM 87113
(505) 639-5709
ryan@rjvlawfirm.com

&

/s/ *Justine Fox-Young*
Justine Fox-Young
5501 Eagle Rock Ave. NE, Suite C2
Albuquerque, NM 87113
(505) 796-8268
justine@foxyounglaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on, October 17, 2022, a copy of the foregoing document was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/ Ryan J. Villa*
Ryan J. Villa