IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

                Plaintiff,

vs.

                                      CR 18-2945 WJ

JANY LEVEILLE, *et al.*,

                Defendants.

## DEFENDANTS' MOTION TO EXCLUDE GOVERNMENT EXPERT WITNESS TESTIMONY

Defendant Subhanah Wahhaj, by counsel Ryan J. Villa and Justine Fox-Young, joined by all Defendants through their counsel, respectfully moves this Court to exclude the government's expert witness, Dr. John Phillips, from testifying regarding the cause of death of A.G. Wahhaj. Defendant submits that as a matter of law pursuant to Fed. R. Evid. 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), this Court must prohibit the government's expert witness from testifying on this subject. All Defendants join in this Motion.

### I. BACKGROUND

On September 11, 2018, a grand jury returned an Indictment, charging Defendants with possession of firearms by a non-citizen without status that permits firearms possession and conspiracy to commit that offense. *See* Indictment [Doc. 25]. Several months later, on March 13, 2019, a Superseding Indictment was returned, adding counts related to alleged terrorism and kidnapping conspiracies, including (Count 1) Conspiracy to Provide Material Support to Terrorists, in violation of 18 U.S.C. § 2339A, (Count 2) Providing Material Support to Terrorists, in violation of 18 U.S.C. §§ 2339A & 2, (Count 3) Conspiracy to Murder an Officer or Employee of the United States, in violation 18 U.S.C. § 1117, (Count 4) Conspiracy to Commit an Offense

Against the United States, in violation of 18 U.S.C. § 371, (Count 6) Conspiracy to Commit Kidnapping, in violation of 18 U.S.C. § 1201(c), and (Count 7) Kidnapping, in violation of 18 U.S.C. §§ 1201(a) & 2. *See* Superseding Indictment [Doc. 85].  If convicted of these offenses, Defendants face potential life sentences.

On July 9, 2019, the United States filed its Notice of Intention to Offer Expert Testimony [Doc. 127].  This Notice identified five experts the government intends to call. *See* Notice, ¶¶ 1-5. One of the experts is neurologist Dr. John Phillips. The government provided a copy of Dr. Phillips' expert report to the defense. *See* Exhibit 1 ("Phillips Report").  In this report, Dr. Phillips reviews certain medical records of A.G. Wahhaj, recites information he received by an Assistant United States Attorney in this case regarding the circumstances of A.G.'s death, and based upon this information, goes on to opine on his cause of death.

Dr. Phillips' theory on the cause of death is not reliable, is based on woefully insufficient facts and data, and is at odds with the cause of death determined by the Office of the Medical Investigator. Dr. Phillips is board certified in pediatrics and neurology, but he is not trained in forensic pathology. As such, Dr. Phillips lacks the qualifications needed to adequately determine the cause of death of A.G. and his opinions in this area do not meet the standard of "specialized knowledge" articulated in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). While Dr. Phillips may have adequate qualifications to testify regarding A.G.'s medical conditions prior to his death, he cannot speculate about the cause of the child's death.

Forensic Pathologist Dr. Hannah Kastenbaum of the Office of the Medical Investigator ("OMI"), who performed A.G.'s autopsy, concluded that the cause of death was undetermined. *See* Exhibit 2, OMI Report at 1 ("Due to limitations of the autopsy, histology, and toxicology in

decomposed remains, however, a cause of death could not be determined… As such, the manner of death is undetermined.").

The government's witness, Dr. Phillips, comes to an entirely different conclusion, first recounting that "after speaking with [AUSA] George Kraehe by phone, I understand that Abdul was abducted from his home and taken to the Taos area on approximately December 1 where he lived for several weeks before dying in some sort of prayer ritual." Ex. 1, Phillips Rep. at 4-5. Phillips goes on to suggest that A.G. could have died from "a generalized seizure occurring during the prayer ritual…" or from "airway obstruction… leading to respiratory arrest… and as time passed without breathing there would be cardiac arrest and death." Ex. 1, Phillips Rep. at 8-9. Dr. Phillips bases his opinion of A.G.'s cause of death on the autopsy report, available medical information, and interview transcripts of the other children living with A.G. In the report, Dr. Phillips states "the transcripts indicate that he likely died during one of the many prayer rituals he was subjected to." *Id.* at 8. This is an unsupported and speculative theory that is not backed by data or science.

The pathologist at the OMI, Dr. Kastenbaum, found no evidence in the autopsy that suggests A.G. died from either a seizure or due to a restricted airway. When asked about a seizure being the potential cause of death, Dr. Kastenbaum stated that "there's no way, postmortem in a deceased person, to diagnosis whether or not they had a seizure immediately before they died." *See* Exhibit 3 (Transcript of Interview of Dr. Hannah Kastenbaum) at 29: 14-16. Additionally, Dr. Kastenbaum stated that she found no evidence of an airway obstruction or asphyxial death. *Id.* at 39: 10-15. In fact, when asked about her ability to consider investigative information and statements from witnesses to make determinations in the autopsy report, Dr. Kastenbaum correctly stated that she can "review and consider information like that, but it's not going to be a medical or

pathologic assessment." *See* Ex. 3 at 20: 16-23, 37: 3-15. In contrast, Dr. Phillips' opinion on A.G.'s cause of death is purely guesswork.

Dr. Phillips relies on a number of other poorly documented or otherwise unreliable assertions in making his cause of death determination. For instance, Dr. Phillips claims that "[i]t seems likely Abdul's anticonvulsant medication was not given," yet, the OMI report finds differently. *Compare* Ex. 1, Phillips Rep. at 8 *with* Ex. 2, OMI Rep. at 1. The toxicologist from NMS Labs did not detect any medications in the sample from A.G. but noted that this finding could reflect an absence of medication "or the presence of the substances below the lower limit of detection," adding, "[t]here is no way to differentiate these two situations." *See* Exhibit 2 at 1. Dr. Kastenbaum explained that "they were testing liver tissue, because A.G.'s remains were in such a state that blood no longer exists and had decomposed," *see* Ex. 3 at 26: 18-20, and that the lower limit of detection in tissues opposed to blood is greater, *Id.* at 27: 17-19, and for these reasons she could not be certain that that A.G. didn't have these drugs in his system. *Id.* at 27-28: 24-25, 1-3. Regardless, Dr. Kastenbaum also explained in her deposition that even with information indicating whether or not A.G. was given his medication, she still would not be able to use that to give an opinion on cause of death because "there are a number of different ways in which the brain gets irritated and responds with seizures." *Id.* at 28: 7-18.

Additionally, Dr. Phillips offers the opinion that A.G. was "likely in poor nutritional status" and "[i]f forced down during the prayer rituals in the supine position, crying against his will, eventually he would tire and airway obstruction likely would occur." Ex. 1 at 9. These are highly subjective and unsubstantiated claims, deduced based upon interview testimony and entirely unsupported by scientific evidence. Critically, Phillips' findings totally contradict the OMI report which, based on scientific evidence and reasoning, stopped short of asserting any conclusive

findings as to the cause of death. Dr. Kastenbaum notes in her report, and throughout her interview, that there are many limitations to determining factors surrounding the cause of death because of the decomposed state of the remains. *See* Ex. 2 at 1; Ex. 3 at 22: 16-19, 26: 18-20, 37:13-15, 43: 17-20. As such, any opinions Dr. Phillips has offered as to the cause of death are mere speculation and should be excluded.

## I. ARGUMENT

### A. <u>Dr. Phillips is not qualified to opine on the cause of death of A.G.</u>

Federal Rule of Evidence 702 governs admissibility of expert testimony. It states in relevant part:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "The proponent of the expert bears the burden by a preponderance of the evidence to establish that the requirements for admissibility have been met." *Array Tech., Inc. v. Mitchell*, Civ. No. 17-087 JCH/LF, 2020 WL 1514621, at *1 (D.N.M. Mar. 30, 2020) (citation omitted).

Fed. R. Evid. 702 provides that the trial court must "determine whether the expert is proposing to testify to (1) scientific, technical, or other specialized knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *United States v. Muldrow*, 19 F.3d 1332, 1337 (10th Cir. 1994). Additionally, the court must consider potential expert testimony under the frameworks articulated in "a trilogy of Supreme Court cases" *Daubert*, *Kumho Tire Co.*, and *Joiner*, that "clarify the district court's gatekeeper role under Federal Rule of Evidence 702."

*United States v. Rodriguez-Felix,* 450 F. 3d 1117, 1122 (10th Cir. 2006). The trial court "'generally must first determine whether the expert is qualified.'" *United States v. Avitia-Guillen*, 680 F.3d 1253, 1256 (10th Cir. 2012) (quoting *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (*en banc*)). "[T]he gatekeeping inquiry must be tied to the facts of a particular case." *Kumho Tire,* 526 U.S. at 150 (citations and quotations omitted). "Despite the flexibility granted to district courts, the text of Rule 702 requires that they ensure that proffered expert testimony be 'based on sufficient facts or data' and 'the product of reliable principles and methods.'" *United States v. Medina-Copete*, 757 F.3d 1092, 1103 (10th Cir. 2014)(quoting Fed.R.Evid. 702(b) & (c)).

The trial court may qualify a witness as an expert if they possess "knowledge, skill, experience, training, or education" on the subject. Fed. R. Evid. 702. When the expert's testimony is called into question the trial judge must look to whether the expert has "a reliable basis in the knowledge and experience of [the relevant] discipline" *Daubert*, 509 U.S. at 592. The Tenth Circuit has held that an expert is "required to possess such skill, experience or knowledge in that *particular field* as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (emphasis added). It is not enough for an expert to have general expertise in the field; they must have "sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case." *Kumho*, 526 U.S. at 156.

Dr. Phillips is board certified in pediatrics and neurology, not pathology. As such, he does not have the "knowledge and experience" in pathology to accurately testify to the cause of death of A.G. Dr. Phillips' opinion will not assist the trier of fact in their search for truth as it "represents an 'unfounded extrapolation' from the data," in contravention of Rule 702(b), which is precisely why it is contradicted by Dr. Kastenbaum. *Medina-Copete*, 757 F.3d at 1103. Dr. Phillips' opinion

on cause of death is not based on his knowledge in the relevant field, but on his highly subjective analysis of interviews and autopsy findings. Dr. Phillips does not have experience in making cause of death determinations; therefore, his opinion does not rest on a "substantial foundation" of knowledge regarding cause of death. Only a board-certified pathologist should be permitted to testify to the cause of death of A.G., especially given the substantial limitations of the facts and data available in this case and because Dr. Phillips' opinion on cause of death differs greatly from the cause of death determined by the board-certified pathologist at the OMI.

### B. <u>The proffered expert testimony is not based upon sufficient facts or data nor the product of reliable principles and methods.</u>

The trial court's inquiry into the proffered expert does not stop at their qualifications. Under Fed. R. Evid. 702, the district court has an obligation to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589.  When making this determination, the district court assesses "whether the reasoning or methodology underlying the testimony is scientifically valid . . . ." and applicable to the facts at issue in the case. *Id.* at 592-93. The Supreme Court has held that "where [expert] testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co*., 526 U.S. 137 (quoting *Daubert,* 509 U.S. at 592). While absolute certainty is not required, expert opinions "must be based on facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation…" *Dodge v. Cotter Corp*., 328 F.3d 1212, 1222 (10th Cir. 2003) (quoting *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir.1995)).

In *United States v. McCluskey*, this Court found that a forensic pathologist's cause-of-death determination did not rest on reliable principles. *United States v. McCluskey,* No. 10-2734 JCH,

2013 WL 12330062 (D.N.M. June 21, 2013). In *McCluskey*, a forensic pathologist conducted an autopsy on incinerated human remains and determined the cause of death to be "violent homicide." *Id.* at *1. Similar to Dr. Phillips, the pathologist based her cause of death determination on external investigative materials, because there was no way to determine the anatomical cause of death from the burned remains. *Id.* at *6. The court held that the pathologist's conclusions on cause and manner of death were "insufficiently supported under Daubert/Rule 702..." *Id.* at *7. The court further held, "notwithstanding Dr. Aurelius' solid credentials and sound methodology, she was unable to generate sufficient clinical data to form a conclusion on an anatomical cause of death because of the dearth of testable remains presented to her." *Id.* at *7.

Similarly, Dr. Phillips' cause-of-death determination is not based on reliable data and facts because there was not enough data to make an accurate cause-of-death determination. Because of the mummified state of the body, the OMI found insufficient data to make a cause of death determination, and the OMI pathologist explicitly noted the "limitations of the autopsy, histology, and toxicology in decomposed remains" when finding that the cause of death was undetermined. Ex. 2, OMI Report at 1. Dr. Phillips' cause-of-death determination is not based on "scientifically valid" data because he did not base his opinion on the autopsy, histology, and toxicology results, but instead disregarded them. Dr. Phillips' reliance on interview transcripts does not allow him "to express a reasonably accurate conclusion as opposed to conjecture or speculation." *Id.* In fact, even Dr. Phillips notes the unreliability of the interviews with the children, writing, "[t]he actual death is not well described; the interviewee describes a prayer ritual that he heard but didn't see..." Ex. 1 at 5.

Additionally, Dr. Phillips opines that A.G. was not given his medication, which contributed to his death. This theory is not supported by the data and findings of the OMI. In the OMI report,

toxicologist William Anderson writes: "with this type of sample, it is always possible that the drugs were not recoverable or they may have deteriorated over time. I would be reluctant to say there was not any at the time of death." Ex. 2 at 58. Dr. Phillips himself notes that "[t]he half-life of levetiracetam is ~ 6-8 hours, thus it would be effectively "out of his system" … within several days." Ex. 1 at 7. The only available data on whether or not A.G. was receiving medication is the data from the toxicologist. Because the toxicologist found that there was not enough data in the sample to conclusively support the theory that A.G. was not receiving his medication, the complete absence of evidence renders as unbridled speculation Dr. Phillips' opinion that A.G. was not given any medication and that this contributed to his death.

Expert testimony must additionally be "the product of reliable principles and methods." Fed. R. Evid. 702. To be reliable under *Daubert*, an expert's testimony must be based on scientific knowledge, which "implies a grounding in the methods and procedures of science" based on actual knowledge, not "subjective belief or unsupported speculation." *Id.* at 590. *Daubert* further states: "an inference or assertion must be derived by the scientific method ... [and] must be supported by appropriate validation—i.e. 'good grounds,' based on what is known." *Id.* In *United States v. Foghorn*, the court prohibited an expert, a medical doctor, from testifying to the manner and time of death of the victim because the method she used to make the determination was "not sound in reliable scientific methodology." *United States v. Foghorn*, No. CR 03–2365 JB, 2005 WL 6136334 at *4 (D.N.M. June 15, 2005). The court found that, "[b]ecause of the lack of scientific support for these conclusions, the Court is left with what constitutes [the doctor's] subjective belief and supported speculation as to the events leading up to [the victim's] death." *Id.* at *7.

Here, Dr. Phillips does not base his conclusions on "good grounds" because much is unknown. The histology and toxicology tests yielded no results; therefore, there is no data on

which to base any scientific inference. "An expert must do more than simply constructing a factual narrative based upon record evidence or 'address[ ] 'lay matters which a jury is capable of understanding and deciding without the expert's help.'" *Wells v. Allergan*, Inc., No. CIV-12-973-C, 2013 WL 7208221, at *2 (W.D. Okla. Feb. 4, 2013) (Internal quotations and citation omitted). Dr. Phillips did not use the standard methodology adhered to by pathologists in arriving at his conclusions. To reliably make a cause-of-death determination, a pathologist performs an autopsy. Dr. Phillips did not perform the autopsy of A.G. Had he used methods and procedures of a reliable pathologist, he would have come to the same conclusions as the OMI, and he would have found the cause of death to be unknown.

**C. Dr. Phillip's cause of death determination is more prejudicial than probative and would invade the province of the jury.**

Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. The Tenth Circuit has held that in the context of Fed.R.Evid. 403, "[e]vidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *United States v. Rodriguez*, 192 F.3d 946, 951 (10th Cir.1999). The introduction of Dr. Phillip's testimony would unfairly prejudice the Defendants by risking conviction based on the belief that they were to blame for the death of A.G. Dr. Phillips' unsubstantiated claims that A.G. was deprived of his medication and likely died seizing while "forced down during the prayer rituals in the supine position, crying against his will" (Ex. 1 at 9) would surely provoke an emotional response from the jury. Because these claims do not have a solid scientific basis, they are far more prejudicial than probative.

Dr. Phillips' proffered opinion on the cause of A.G.'s death would also invade the province of the jury because the jury must make its own determination as to the cause of death. In *United States v. McCluskey*, this Court found that a cause of death determination based on only external investigation and not medical findings would "be unfairly prejudicial as well as usurp the province of the jury." *McCluskey*, 2013 WL 12330062 at *7. The court held that "the jury itself will hear testimony pertaining to the investigation and circumstances surrounding the victims' deaths and will reach its own conclusions." *Id*. Here, the status of A.G.'s remains rendered it impossible to make a medically accurate cause of death determination. Therefore, "to cloak such a determination in the authority of the medical examiner's expert conclusion" will invade the province of the jury. *Id.*

### III. CONCLUSION

For all of the foregoing reasons, Defendants respectfully requests this Court conduct a *Daubert* hearing and enter an order excluding the government's proposed expert witness testimony regarding cause of death under *Daubert* and the additional authorities discussed herein.

Respectfully submitted,

/s/ *Ryan J. Villa*
Ryan J. Villa
The Law Office of Ryan J. Villa
5501 Eagle Rock Ave NE Ste. C2
Albuquerque, NM 87113
(505) 639-5709
ryan@rjvlawfirm.com

/s/ *Justine Fox-Young*
Justine Fox-Young, P.C.
5501 Eagle Rock Ave NE Ste C2
Albuquerque, NM 87113
(505) 796-8268

justine@foxyounglaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on, October 17, 2022, a copy of the foregoing document was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/*Ryan J. Villa*__
RYAN J. VILLA