IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

        Plaintiff,

    v.                           No. 18-CR-2945 WJ

JANY LEVEILLE et. al.,

        Defendants.

### DEFENDANTS' MOTION TO SUPPRESS EVIDENCE DERIVED AS A RESULT OF A SEARCH WARRANT FOR UNIT 2, LOT 28 IN COSTILLA MEADOWS, TAOS COUNTY, NEW MEXICO AND MEMORANDUM IN SUPPORT THEREOF

COME NOW, Defendants by and through their counsel of record, pursuant to the U.S. Const. amend. IV, Federal Rule of Criminal Procedure 12(b)(3)(C), and *Franks v. Delaware*, 438 U.S. 154 (1978), respectfully move this court to file an Order suppressing all evidence derived from the illegal search of the Defendants' property.  In support thereof, Defendants submit the following:

### INTRODUCTION

The Fourth Amendment of the United States Constitution forbids government officials from conducting unreasonable searches and seizures of persons, houses, papers, and effects. The Fourth Amendment's basic purpose "'is to safeguard the privacy and security of individuals against arbitrary invasions by government officials.' " *Carpenter v. United States*, 138 S.Ct. 2206, 2213 (2018) (quoting *Camara v. Municipal Court City and County of San Francisco*, 387 U.S. 523, 528 (1967)). Individuals are protected against arbitrary government invasions, by the Fourth Amendment's Warrant Clause, which mandates that absent limited exceptions, "police obtain a warrant from a neutral and disinterested [judge] before embarking upon a search." *See Franks v. Delaware*, 438 U.S. 154, 164 (1978).

Based on the Warrants Clause, in *Franks*, the United States Supreme Court held that defendants have a constitutional right to attack a search warrant's veracity. 438 U.S. 154, 165 (1978). Indeed, the

Court reasoned "it would be an unthinkable imposition… if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond impeachment." *Franks v. Delaware*, 438 U.S. 154, 164 (1978). The Court recognized a defendant's right to challenge a search warrant for containing deliberate and reckless false statements. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). Following *Franks*, the Tenth Circuit recognized, that in addition to challenging search warrants for containing false statements, defendants also have a constitutional right to challenge warrants based on "[material] omissions, as well as affirmative misstatements" *DeLoach v. Bevers*, 992 F.2d 618, 622 (10th Cir. 1990) (citing *Stewart v. Donges*, 915. F.2d 572, 582 n. 13, 583 (10th Cir. 1990)).

## FACTUAL BACKGROUND

On August 2, 2018, Taos County Sheriff Jerry Hogrefe (the "Affiant"), submitted a search warrant affidavit (the "Affidavit") to New Mexico District Court Judge Sarah Backus. (Exhibit A, BN 23619). The Affidavit requested authorization to search Unit 2 Lot 28 (the "Subject Property"), a 10-acre parcel of Costilla Meadows subdivision in Taos County, New Mexico. (Exhibit A, BN 23616) The Affiant alleged probable cause existed that (1) "Siraj Wahhaj and others are likely on the property described above and that both an arrest order and child pickup order exist" and (2) "there is now information that the children are being neglected of food and/or basic needs and the totality of what is presented in this affidavit rises to the need for law enforcement to enter and search the property for the missing child, the wanted felon, and to check the welfare of any persons/children that may be present." (Exh. A, BN 23618).

The Affidavit's factual basis contained various false statements and material omissions. Specifically, the Affiant averred that on about May 15, 2018, he became aware of a missing child bulletin from Clayton County, Georgia and that Siraj Ibn Wahhaj (Mr. "Wahhaj") and his son, Abdul-Ghani Wahhaj ("AG"), may be residing in New Mexico ("N.M."). (Exhibit A, BN 23617).

The Affiant, however, was aware much earlier than May 15 that Mr. Wahhaj and his son may be in New Mexico. Indeed, on January 2, 2018, the Affiant sent Taos County Sheriff's Office ("TCSO") Sergeant Jason Rael an email indicating Mr. Wahhaj and AG may be residing in Costilla, N.M. (Exhibit B, BN 23790).

Further, the Affiant represented that the bulletin stated Mr. Wahhaj may have abducted his son, AG, who suffers from Hypoxic Ischemic Encephalopathy (HIE), and it was unknown if his son had been receiving his medication. (Exhibit A, BN 23617). Affiant also averred that the child is described as having a "limp," but the Affiant knew AG could not walk. (Exhibit A, BN 23617). Ironically, the Affiant attached two documents to his Affidavit that contradict his statement regarding a "limp" as both documents indicate that AG's mother stated AG "cannot walk." (Exhibit A, BN 23621, 23623).

The Affidavit goes on to describe law enforcement's purported investigation, noting that during the investigation, TCSO officers Flores and Rael received information, on an unknown date, that the father, child, and others may be residing at a property in Costilla, N.M. (Exhibit A, BN 23617). Affiant wrote that officers traveled to Costilla, N.M. where area residents told the officers that persons who "resemble" Mr. Wahhaj and his son occupy a property on Juniper Road. (Exhibit A, BN 23617). However, neither officer Flores or Rael's report makes any mention that any area residents told them persons who "resemble" Mr. Wahhaj and his son occupy a property on Juniper Road. (Exhibit C, BN 2689-92; Exhibit B, BN 23786-23799).

Affiant further attested law enforcement determined the legal description of the property and contacted the registered owner, Jason Badger. (Exhibit A, BN 23617). According to the Affiant, Badger told investigators that while he and his wife (the Badgers) owned the Subject Property, Mr. Wahhaj, Lucas Morton[sic], and others occupied it. (Exhibit A, BN 23617). Badger

explained that Mr. Morton owned the adjacent property and had accidentally built the living residence on the Badgers' property, but they were in negotiations to exchange properties. (Exhibit A, BN 23617). However, the Affiant omitted from the Affidavit that on May 14, 2018, Mr. Badger admitted he had actually only seen Mr. Wahhaj "once," (Exhibit D, Axon Video 22:00-22:30), and had not seen him or AG "in a long time." (Exhibit B, BN 23793).

Affiant continued by attesting that FBI aerial surveillance documented adult males, females, and children present on the Subject Property. (Exhibit A, BN 23618). However, the FBI surveillance provided did not depict more than one adult male. (Exhibit E, surveillance video). Additionally, the Affiant indicated that the FBI aerial surveillance depicted one child walking with a "limp." (Exhibit A, 23617). Surprisingly, the Affiant materially omitted that the child walking with the "limp" was not AG. Law enforcement showed AG's mother the photos, and she told them the child was NOT her son well before the Affidavit was made. (Exhibit B, BN 23794; Exhibit F, BN 772).

The Affiant also indicated that in December 2017, Siraj Wahhaj had been involved in an accident somewhere and that officers had observed guns and body armor. (Exhibit A, BN 23618). However, the Affiant failed to note that Mr. Wahhaj was not prohibited from possessing firearms. Additionally, the Affiant labels Mr. Wahhaj as a "wanted felon," however, Mr. Wahhaj was not and is not a felon. (Exhibit A, BN 23618).

Finally, the Affiant wrote that on August 2, 2018, Detective Porter stated he was provided with photographs of messages from one of the females asking for help, stating the family was starving and needed money for food. (Exhibit A, BN 23618). However, the female sent messages that she needed money because *she* was starving. (Exhibit G, BN 21262-21268). Mr. Hogrefe falsely mentioned that the messages said the family was starving.

Ultimately, the Affiant included a multitude of false statements and made material omissions in ann effort to persuade Judge Backus that probable cause existed. Unaware of such false statements and omissions, Judge Backus construed the Affidavit as establishing probable cause and signed the warrant. (Exhibit A, BN 23619, 23625). Following Judge Backus's authorization, law enforcement searched the premises. (Exhibit A, BN 23626).  The Defendants and eleven children were found on the Subject Property. (Exhibit A, BN 23626). Law enforcement arrested Mr. Wahhaj and Mr. Morton. (Exhibit A, BN 23626). Additionally, law enforcement seized several weapons from the Subject Residence. (Exhibit A, BN 23626). Following the search, law enforcement used information obtained in the search to obtain additional search warrants.

In this case, law enforcement violated the Defendants' Fourth Amendment rights when they executed a search warrant containing a multitude of misleading information, which falsely created the impression of probable cause. The warrant Affidavit contained various intentionally and recklessly made false statements and material omissions which purposefully misled Judge Backus into concluding that the search warrant affidavit established probable cause, when it did not. After excising such false statements and including the omissions, the facts in the Affidavit clearly does not give rise to probable cause. Therefore, the evidence derived from the illegal search and seizure of the Subject Property described in the search warrant must be suppressed. The evidence obtained in the searches following the first search must also be suppressed, as evidentiary fruits of the first search. Defendants respectfully request this Court suppress all evidence seized as a result of the illegal search including any and all evidentiary fruits obtained thereafter.

## ARGUMENT

**I.    The Search Warrant Failed to Establish Probable Cause Because the Affidavit Did Not Establish A Nexus Between the Property to Be Searched and the Individuals to Be Seized.**

The Affidavit supporting the search warrant is *exceptionally* deficient in establishing probable cause in that it fails to put forth sufficient facts to establish directly or by reasonable inference a nexus between the property to be searched and the individuals identified in the warrant to be seized.

### *Fourth Amendment*

The Fourth Amendment protects individuals from "unreasonable searches and seizures," mandating that "no Warrants shall issue, but upon probable cause, supported by Oath or Affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV.  Absent specific "exigencies of the situation," a search warrant is required to search a person's home or person. *See Mincey v. Arizona*, 437 U.S. 385, 393–94, (1978) (warrantless searches are allowed when "exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment").

### *Role of Judges*

The Fourth Amendment requires that a warrant be issued by a "neutral and disinterested" judge, *Franks v. Delaware*, 438 U.S. 154, 163 (1978), charged with the task of determining whether the affidavit establishes a probable cause that there is "a 'fair probability' that contraband or other evidence [of a crime] will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *accord United States v. Biglow*, 562 F.3d 1272, 1280–81 (10th Cir. 2009). A judge's issuance of a warrant "cannot be a mere ratification of the bare conclusions of others." *United States v. Cooper*, 654 F.3d 1104, 1124 (10th Cir. 2011)(*citing Gates,* 462 U.S. at 239). The probable

cause supporting the warrant must be "more than mere suspicion but less evidence than is necessary to convict." *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000) (quotation and citation omitted).

### *Probable cause*

Probable cause is a necessary element of a valid search warrant. U.S. Const. amend IV. "Probable cause to search a person's residence does not arise based solely upon probable cause that the person is guilty of a crime. Instead, there must be additional evidence linking the person's home to the suspected criminal activity." *United States v. Rowland*, 145 F.3d 1194, 1204 (10th Cir. 1998). The Tenth Circuit has identified three "non-exclusive considerations" that help guide an inquiry into probable cause: "(1) the reliability of the informer, (2) the timeliness of the informer's allegations, and (3) *the nexus between the item to be seized and the place to be searched.*" *United States v. Knox*, 883 F.3d 1262, 1275 (10th Cir. 2018)(citations omitted, emphasis added).

### *Nexus*

It is well-settled that for probable cause to exist there must be a nexus between the items to be seized or suspected criminal activity and the place to be searched. *See United States v. Dutton*, 509 Fed. Appx. 815, 817 (10th Cir. 2013) (*citing United States v. Gonzales,* 399 F.3d 1225, 1228 (10th Cir. 2005)). Courts will uphold a warrant if the issuing judge had a substantial basis for concluding that officers would find the items or individuals to be seized during the search. *Poolaw v. Marcantel*, 565 F.3d 721, 728-29 (10th Cir. 2009)).

When an informant has not played a role in the circumstances of the warrant, as in the instant case, the relevant inquiry for probable cause to search a particular premises is whether the warrant and affidavit have established a nexus between the place to be searched and the evidence sought. *See United States v. Montoya*, 2011 WL 13150561, at *3 (D.N.M. May 6, 2011) (citing

*Biglow*, 562 F.3d at 1278–79); *see also United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010). Agents must show "that the specific 'things' to be searched for and seized are located on the property to which entry is sought," *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)) (emphasis added), and in doing so, "may not employ 'stale' information." *Brooks*, 594 F.3d at 493.

### A. Insufficient Factual Support is Presented for the Existence of a Nexus Between the Persons to be Seized and the Property to be Searched.

The Affidavit fails to establish a link or nexus between the Subject Property and the persons to be seized (Mr. Wahhaj and AG) to support probable cause or a reasonable belief that the Subject Property contained the individuals to be seized. Without such nexus establishing probable cause, the search warrant is invalid, and the search violated Defendants' Fourth Amendment protection against unreasonable searches and seizures.

The law enforcement officer seeking the search warrant must establish the nexus evidencing probable cause by providing sufficient connecting facts to establish a reasonable belief that the evidence sought in the warrant will be found at the location authorized to be searched in the warrant. *Rowland*, 145 F.3d at 1201. "An affidavit devoid of factual support is one that merely states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. Wiggins*, 2018 WL 1773119, at *5.

"This nexus exists when the affidavit describes circumstances which would warrant a person of reasonable caution in the belief that the articles sought are in a particular place." *Knox*, 883 F.3d at 1277 (quotations and citations omitted). The affidavit "must contain facts sufficient to lead a prudent person to believe that a search would uncover contraband or evidence of criminal activity." *Danhauer*, 229 F.3d at 1006; *see United States v. Nolan*, 199 F.3d 1180, 1183 (10th Cir.

8

1999) ("[t]he test is whether the facts presented in the affidavit would 'warrant a man of reasonable caution' to believe that evidence of a crime will be found at the place to be searched" (*quoting Texas v. Brown*, 460 U.S. 730, 742 (1983)).  In other words, there must be "a nexus between the place to be searched and the items to be seized." *Id.*; *see also Rowland*, 145 F.3d at 1204 (same). A mere suspicion of a crime is simply insufficient to establish probable cause.  *Brinegar v. United States*, 338 U.S. 160 (1949).

The search warrant affidavit in this case *provides no evidence* establishing a nexus between the place to be searched and the individuals to be seized described in the affidavit. *See supra Knox*, 883 F.3d at 1277; *Danhauer*, 229 F.3d at 1006; *Nolan*, 199 F.3d at 1183; *Rowland*, 145 F.3d at 1204.  The Affidavit at issue here fails to provide *any evidence* that Siraj Wahhaj and/or his son, AG, were at the Subject Property on August 2, 2018. The Affidavit fails to connect Mr. Wahhaj or AG to the Subject Property and the inferences in the warrant that may lead the reader to believe AG and/or Siraj Wahhaj would be found at the place to be searched in August 2018, are either misrepresentations or suffer from material omissions. Removing the misrepresentations and including the material omissions, the Affidavit provides no evidence of any investigation into whether on August 2, 2018, Mr. Wahhaj or AG would be at the property to be searched and does not provide enough information to make even a "minimal nexus" to the property.

In *United States v. Chambers*, 882 F.3d 1305, 1313 (10th Cir. 2018), *cert. denied, Chambers v. United States*, 138 S. Ct. 2695 (2018), the court used the "minimal nexus" standard established in an affidavit in *United States v. Roach*, 582 F.3d 1192 (10th Cir. 2009).  In *Roach*, the court determined that the affidavit had *not* established an indicia of probable cause, because the affidavit listed *several possible* investigation methods from which it had obtained verification of the defendant's connection to the residence to be searched, rather than identifying exactly which

method it had used. *Roach*, 582 F.3d at 1203.  The court determined that the affidavit would have satisfied the minimal nexus requirement establishing an indicia of probable cause if it had specifically identified *any one* of the following (successful) investigative techniques to determine that the defendant lived at the address to be searched. *See Roach*, 582 F.3d at 1198).

Here, the officers did not reference even one method of investigation to provide a minimal nexus connecting the Mr. Wahhaj to the address. *See* 582 F.3d at 1203. The affidavit simply makes no credible effort to establish that Mr. Wahhaj and/or AG would be found at the place to be searched.

In rejecting the validity of a search warrant as well as denying the applicability of the good faith exception to the exclusionary rule, the Tenth Circuit in *Dutton* determined that the search warrant's "fatal flaw" was that the supporting affidavit *did not connect* the place to be searched to the defendant. 509 Fed. Appx. 815, 817 (10th Cir. 2013).  There, the place to be searched was a storage unit.  The court noted, "[w]e have no quarrel with the concept that Defendant could reasonably be expected to keep explosives-related materials in his storage unit. What is missing, however, is any evidence that the storage unit to be searched was Defendant's." *Id.*  Similarly, the affidavit here lacks any connection between Mr. Wahhaj and the place to be searched.  The *Dutton* Court also points out that no storage unit was mentioned until the end of the affidavit, and the reference to "his storage unit" "provided no reason to believe either that Defendant had a storage unit or that the unit described in the warrant was the one he owned." *Id.* at 817-818. The affidavit here is similarly deficient in neglecting to show a connection between Mr. Wahhaj, AG, and the place to be searched.

The *Dutton* Court thus concluded, as the court must here, that for the search warrant to be valid,

> there needed to be '*some* factual basis connecting the place to be searched to the defendant or suspected criminal activity.' Because such a factual basis was missing, there was not a 'minimal nexus between the place to be searched and the suspected criminal activity.' The evidence seized from the storage unit should have been suppressed.

*Id.* (*citing Gonzales*, 399 F.3d at 1231 (emphasis in original).  Like the *Dutton* court, the Court here *must* find that the affidavit did not provide enough factual support explaining a nexus between the property to be searched and the described individuals to be seized.  Without probable cause, the search warrant is invalid, the search was illegal, and any items subsequently seized as a result of the August 3, 2018, search of the property must be suppressed.

**B.  The Inferences Relied Upon to Establish a Nexus for Probable Cause Are Unreasonable as they are Either Stale, Misrepresentations or Suffer from Material Omissions**

The Tenth Circuit Court of Appeals has determined that a search warrant is invalid if the inferences relied upon to establish the nexus are not reasonably based on the facts presented in the affidavit. *Biglow*, 562 F.3d at 1279-80.  A mere suspicion simply does not constitute probable cause.  *Brinegar*, 338 U.S. at 176. Additionally, an affidavit in support of a search warrant "cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." *United States v. Mathis*, 357 F.3d 1200, 1206-07 (10th Cir. 2004); *United States v. Snow*, 919 F.3d 1458, 1459-60 (10th Cir. 1990). "Probable cause existing at some time in the past will not suffice unless circumstances exist from which it may be inferred" that the conduct is continuing to the time the affidavit is presented or, under the particular facts of the case, within a reasonable time before that. *United States v. Neal*, 500 F.2d 35, 39 (10th Cir. 1974). "[P]robable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." *Roach*, 582 F.3d at 1201.

As set forth below, the search warrant affidavit in this case suffers from numerous misrepresentations and material omissions, vitiating probable cause. Additionally, if there ever existed probable cause for the place to be searched, it was stale, and new evidence vitiated any probable cause.

> **C.   The Affiant Made Intentional and Reckless False Statements and Material Omissions in the Search Warrant Affidavit, Vitiating Probable Cause, Thereby Requiring Suppression of All Evidence and Fruits Obtained from the Search.**

In *Franks v. Delaware*, the United States Supreme Court held that "[t]he requirement that a warrant not issue but upon probable cause, supported by Oath or affirmation, would be reduced to a nullity if a police officer was able to use deliberately falsified allegations to demonstrate probable cause." 438 U.S. 154, 168 (1978) (citations and quotations omitted). Probable cause depends on "reasonably trustworthy information," *Beck v. Ohio*, 379 U.S. 89, 91 (1964), and to deter wrongful law enforcement conduct, the Court created the right of a Defendant to "challenge a warrant's veracity." *Franks v. Delaware*, 438 U.S. 154, 164 (1978).

The Tenth Circuit extended *Franks* to allow a Defendant to contest not only false statements made by affiants but also "material omissions, as well as affirmative falsehoods" *Stewart v. Donges*, 915 F.2d 572 (10th Cir. 1990); *see also United States v. Stanert*, 762 F.2d 775, 780-81 (9th Cir.), *as amended*, 769 F.2d 1410 (9th Cir. 1985) ("The use of deliberately falsified information is not the only way by which police officers can mislead a magistrate when making a probable cause determination.  By reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw. To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all meaning."). Indeed, the Tenth Circuit has held that a search warrant must be voided and its fruits suppressed when (1) a search warrant affidavit contains false statements or misleading omissions, (2) the false statements and material omissions

were intentionally or recklessly made, and (3) the affidavit cannot support a finding of probable cause without the allegedly false or misleading omissions. *United States v. Garcia-Zambrano*, 530 F.3d 1249, 1254 (10th Cir. 2008) (citing *Franks v. Delaware,* 438 U.S. 154, 155-56 (1978)).

To flesh out the nature and extent of an affidavit's deficiencies, a defendant is entitled to a *Franks* hearing upon a substantial preliminary showing that (1) the affiant intentionally and recklessly included false statements and material omissions in the search warrant affidavit and (2) the affidavit does not establish probable cause without the allegedly false or misleading omissions. *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997). Yet, regardless of whether there is a substantial preliminary showing, a district court may nonetheless exercise its discretion and hold a *Franks* hearing. *See United States v. Herrera*, 782 F.3d 571, 573 (10th Cir. 2015) (holding that a district court does not err when it grants a *Franks* hearing without a substantial showing).

The affidavit at issue here included many intentional and reckless false statements and material omissions that were critical to the determination of probable cause. Affiant's false statements and material omissions are contradicted by indisputable evidence from other Taos County Sheriff deputies and even the affidavit's own attachments. After excising such false statements and considering such material omissions, the warrant is void of probable cause and the evidence obtained therefrom must be suppressed. Defendants respectfully request a *Franks* hearing to prove the intentional and reckless false statements and material omissions lacking in the Affidavit.

### *A Franks Hearing*

To obtain a *Franks* hearing to flesh out the nature and extent of an affidavit's deficiencies, a defendant need only make a substantial preliminary showing that an affidavit (1) contains intentionally or recklessly made false statements or misleading omissions and (2) cannot support

a finding of probable cause without the allegedly false or misleading omissions. *Stewart v. Donges*, 915 F.2d 572, 581-82 (10th Cir. 1990); *see also United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000). To mandate an evidentiary hearing, a defendant's attack requires more than conclusions and must be accompanied by an offer of proof. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). However, at such a preliminary stage, clear proof of deliberateness or recklessness is unnecessary. *See United States v. Gonzales, Inc.*, 412 F.3d 1102, 1111 (9th Cir. 2005) (holding that clear proof of deliberate or reckless omissions or misrepresentations is not necessary to mandate a hearing, rather, all that is required is a substantial showing that supports a finding of intent or recklessness).

False statements and material omissions must be made "knowingly and intentionally[] or with reckless disregard for the truth" to warrant a hearing. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). "Reckless disregard for the truth" occurs "when the affiant… entertained serious doubts as to the truth of his allegations..." *DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir. 1990) (alterations and internal quotation marks omitted). Recklessness may also be inferred from "omissions" that are "'clearly critical'" in determining probable cause. *DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir. 1990) (quoting *Hale v. Fish*, 899 F.2d 390, 400 (5th Cir. 1990)); *accord United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986)). Further, a deliberate or reckless omission must be "material" to invalidate a warrant. *United States v. Kennedy*, 131 F.3d 1371, 1377 (10th Cir. 1997). Similar to the determination of recklessness, an omission is "material" if it helps negate probable cause. *Stewart v. Donges*, 915 F.2d 572, 582 n.13 (10th Cir. 1990).

*Misrepresentations and Material Omissions*

1.     **The Affiant knowingly and with reckless disregard for the truth falsely stated that around May 15, 2018 he became aware that Siraj Wahhaj and his son may be residing in N.M.**

The Affiant subscribed and swore that "[o]n about May 15th, 2018 [he] became aware of a missing child bulletin from Clayton County Georgia and that the child may be residing in N.M. with his father." (Exhibit A, p.2, BN 23617). However, the Affiant, Sheriff Hogrefe, "became aware" that Mr. Wahhaj and his son may be residing in N.M. no later than January 2, 2018. The Affiant's averment in the warrant that he did not become aware of these facts until May 2018, is false.

Critically, by January 2, 2018, Affiant Sheriff Hogrefe was aware that Mr. Wahhaj and his son may be residing in New Mexico. On January 2, 2018, the affiant emailed TCSO Sergeant Rael. (Exhibit B, BN 23790). The email included information that Mr. Wahhaj and AG may be residing in Costilla, N.M. or Carson, N.M. (Exhibit B, BN 23790). The email even included two attachments: a flyer from the National Center for Missing and Exploited Children (NCMEC) and a pick-up order from Georgia, both about Mr. Wahhaj and AG. (Exhibit B, BN 23790). Additionally, by February 6, 2018, TCSO had the exact GPS location for the property owned by Mr. Morton, which was adjacent to the Subject Residence. (Exhibit H, BN 2758). Considering all the evidence, the affiant's representation that he did not become aware that Mr. Wahhaj and his son were in New Mexico until May 15, 2018, is false.

The affiant deliberately, and with reckless disregard for the truth, falsely stated that he only became aware of the missing child on "May 15, 2018," even though his own emails and TCSO Sergeant Rael's report contradict the statement. *See Salmon v. Schwarz*, 948 F.2d 1131, 1140 (10th Cir. 1991) (holding that "reckless disregard for the truth can be inferred where the circumstances

provide obvious reasons for doubting the truthfulness of the allegations."). The affiant knew he became aware of Mr. Wahhaj and his son well before May, and his misrepresentation is the type of misdeed intended to be cured by *Franks*. This Court must excise from the affidavit the false statement that "on about May 15th, 2018, affiant became aware. . ." Excising the May 15, 2018 date and inserting the correct date of January 2, 2018 highlights the search warrant's staleness, as seven months had elapsed from the time the affiant learned of the missing child and his possible whereabouts. *See United States v. Mathis*, 357 F.3d 1200, 1206-07 (10th Cir. 2004); *United States v. Snow*, 919 F.3d 1458, 1459-60 (10th Cir. 1990)

> **2.      The affiant knowingly and with reckless disregard for the truth falsely stated that area residents, other than the Badgers, told TCSO officers Rael and Flores that the Property is occupied by persons that resemble Mr. Wahhaj and his son, and such statement must be excised from the affidavit.**

The affiant averred that,

> Flores[sic] and Sergeant Jason Rael traveled to Costilla, NM and spoke with area residents learning the property, while not uniquely addressed, is located on Juniper Rd near the Monte Vista road intersection and is occupied by persons that resemble the Wahhaj adult and child and further described they occasionally drive a white box van.

(Exhibit 1, BN 23617). Then, in the same paragraph, the affiant alleged that "additional[]" to that information, Jason Badger informed the officers that he and his wife own the Property but that Wahhaj and Morton are mistakenly occupying it. (Exhibit 1, BN 23617). Altogether, the paragraph reads as though area residents, besides the Badgers, told the officers persons who "resemble" Mr. Wahhaj and his son occupy a property on Juniper Road. The affiant's statements that area residents, besides the Badgers, indicated that persons who "resembled" Mr. Wahhaj and his son occupied a property on Juniper Rd are patently false and misleading and were made with reckless disregard for the truth.

Neither TCSO Deputy Flores nor Rael notes in his report that anyone, besides the Badgers, said persons that "resemble" Mr. Wahhaj and his son occupied the property on Juniper Road. (Exhibit C, BN 2689-92; Exhibit B, BN 23786-23799). The affiant's statement in the warrant is wholly inconsistent with investigating officers' statements, and this inconsistency demonstrates that the affiant was deliberately reckless in drafting the warrant with these false statements. *See Garcia-Zambrano*, 530 F.3d 1249, 1257-58 (10th Cir. 2008) (holding that the district court did not commit clear error when it found the officers acted with reckless disregard for the truth in preparing the affidavit, when in part, there were inconsistent statements between the affidavit and an officer's report). Additionally, even if another officer told the affiant such deliberate and reckless statements, the statements are still excisable pursuant to *Franks*. 438 U.S at 163, n. 6 (holding that "police [can]not insulate one officer's deliberate misstatements merely by relating it through an officer/affiant personally ignorant of its falsity."); *see also United States v. Kennedy*, 131 F.3d 1371 (10th Cir. 1997) (holding that the government is accountable for "statements made not only by the affiant but also for statements made by other government employees which were deliberately or recklessly false or misleading…"). Accordingly, the Court must excise the statement that other area resident informed the officers that persons who resemble Mr. Wahhaj and his son occupy the property on Juniper Road.

3. **The affiant recklessly omitted from his affidavit the fact that on May 14, 2018, Mr. Badger told officer Rael that he had not seen Mr. Wahhaj "in a long time" and had actually only seen him "that one time."**

The affiant further noted:

> BADGER told Sgt. Rael he and his wife do legally own the property described in the affidavit but other person(s), Siraj[sic] Wahhaj and his immediate family member Lucas Morton[sic], and others occupy it and in fact own the adjacent property and recently (around the first part of 2018) had mistakenly built their "compound" on their (BADGER's) property…

(Exhibit A, 23617). The affiant recklessly omitted that on May 14, 2018, Mr. Badger told Sergeant Rael he had not seen Mr. Wahhaj and AG "in a long time," (Exhibit B, BN 23793), and had actually only seen him "that one time." (Exhibit D; Axon Badger Home Interview 22:10-22:20). Further, the omission was material as it tended to negate probable cause by decreasing the probability of Mr. Wahhaj being at the Subject Property in August 2018, further rendering the warrant stale.

The affiant recklessly omitted that Badger told Rael that (1) as of May 14, 2018 he had not seen Mr. Wahhaj and his son "in a long time" and (2) had actually only seen them "that one time." This information is imputed to the affiant. *Whiteley*, 401 U.S. at 568. The statement is reckless and material as it is "critical" to "negate probable cause." *Stewart v. Donges*, 915 F.2d 572, 582 n.13 (10th Cir. 1990).  The affidavit implies that Mr. Badger had seen Mr. Wahhaj and his son close to the date of August 2, 2018. However, if the omissions were included, the affidavit would read that Mr. Badger only saw Mr. Wahhaj once and as of May 14, 2018, had actually not seen him "in a long time." The lack of consistent observation of Mr. Wahhaj by the Badgers negates the possibility that Mr. Wahhaj or his son was still at the Subject Residence and therefore, vitiates probable cause. Accordingly, this Court must include the averment that as of May 14, 2018, the Badgers had only seen Mr. Wahhaj once and had not seen him "in a long time."  The inclusion of this material omission further renders the warrant stale.

4. **The affiant falsely and with reckless disregard for the truth stated that multiple "adult males" were documented in the FBI's aerial surveillance.**

The affiant alleged that aerial surveillance of the Subject Property conducted by the FBI had "documented adult males, females, and children." (Exhibit A, BN 23618). None of the FBI aerial surveillance photographs and videos disclosed depict that multiple "adult males" were documented on the aerial surveillance. (Exhibit E, surveillance video). The photographs and videos fail to show more than one adult male, thus the affiant's statement is false.

The affiant stated, with reckless disregard for the truth, that the FBI aerial surveillance documented more than one "adult male" when the actual surveillance failed to depict more than one adult. Even if the affiant was personally ignorant of the falsity of the statement, he cannot insulate himself from the recklessness of the officer who saw the surveillance and told him about it. *Franks*, 438 at 163, n. 6. Given the affiant's recklessness in making the false statement, this Court must excise the statement that FBI aerial surveillance documented "adult males."

### 5. The affiant knowingly and with reckless disregard for the truth, falsely described AG as having a "limp."

The affiant subscribed and swore that AG "is described as having a 'limp.'" (Exhibit A, BN 23617). The affiant deliberately and with reckless disregard for the truth included this misrepresentation in his affidavit when he knew AG's mother had told law enforcement AG "cannot walk." (Exhibit A, BN 23621, 23623). Ironically, the affiant's deliberateness and recklessness can be deduced from his own affidavit. (Exhibit A, BN 23621, 23623). In addition to his own documents, other documents also detail the affiant's recklessness.

The affiant deliberately and recklessly misrepresented that AG is "described as having a limp," when he knew AG could not walk. In his affidavit, the affiant attached the Adult Warrant for Mr. Wahhaj and the Pick Up Order for his son, both from Georgia. (Exhibit A, BN 23621, 23623). In both documents, a statement from AG's mother is included, which states that AG "cannot walk… and requires constant attention." (Exhibit A, BN 23621, 23623). The affiant deliberately and recklessly ignored both of these documents that he attached. Additionally, Sergeant Rael in his report pointed to a Clayton County Police Department report that stated that AG "could not walk." (Exhibit B, 23794-23795).

The affiant was aware that AG could not walk and required constant attention and yet he deliberately ignored the evidence instead fabricating his own facts, including that AG is described

as having a limp, knowingly and with reckless disregard for the truth. The affiant also cannot credibly assert that he heard the statements from another government employee. *See United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997); *see also United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir. 1992) (holding that "[t]he deliberate or reckless omission by a government official who is not the affiant can be the basis for a *Franks* suppression."). Therefore, this Court must excise from the affidavit the false statement: "[t]he child is described as having a 'limp.'"

**6. Along with falsely describing AG as having a "limp," the affiant knowingly and with reckless disregard for the truth materially omitted that AG's mother told law enforcement that the photographed child with a limp was NOT AG.**

In his affidavit, the affiant averred that the aerial surveillance photos from the Subject Property documented one child walking with a "limp." (Exhibit A, 23617). In addition to falsely stating that AG walked with a "limp," the affiant conveniently omitted that AG's mother informed law enforcement the child depicted in the video/photo as walking with a "limp" was NOT her son. (Exhibit B, BN 23794; Exhibit F, BN 772). Further, this omission was material and recklessly made as it strongly negates the finding of probable cause that law enforcement would find AG on the property.

On June 11, 2018, Federal Bureau of Investigation (FBI) Task Force Officer Wesley Cox emailed both TCSO Undersheriff Miera and Sergeant Rael informing them AG's mother confirmed that the child with the limp was "NOT her son." (Exhibit F, BN 772). Further, Sergeant Rael wrote in his report:

> [a]fter some thought and careful consideration it was decided to have FBI show the mother Hakim Ramzi the images of the small boy to confirm it was her son (Abdul-Ghani Wahhaj). On June 11, 2018, I received correspondence from NMSP St. Cox. The email read in part the mother (Hakima) had reviewed the images and stated the boy in the video was NOT her son. FBI was going to check if they could find better video taken and go from there. I will note the information from Captain Stubs, Clayton County Police Department report number 17064975 stated in the narrative the missing child *could not walk*…

(Exhibit B; BN 23794-23795) (emphasis added).

Considering that both undersheriff Miera and officer Rael knew that the child "with the limp" depicted on the image was not AG, affiant was imputed with the knowledge that AG's mother had told law enforcement the child was NOT her son. Arguing that affiant was not aware of the information is of no consequence as he was working with and communicating with the officers who possessed information from AG's mother and their knowledge is imputed to affiant. *See Whiteley v. Warden, Wyoming State Penitentiary,* 401 U.S. 560, 568, 91 S.Ct. 1031 (1971) (where law enforcement authorities are cooperating in an investigation . . ., the knowledge of one is presumed shared by all). The Tenth Circuit has held the Government "accountable 'for statements made not only by the affiant but also for statements made by other government employees which were deliberately or recklessly false or misleading insofar as such statements were relied upon by the affiant in making the affidavit.'" *United States v. Garcia-Zambrano*, 530 F.3d 1249, 1258 n. 6 (10th Cir. 2008) (quoting *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997)).

The affiant intentionally and knowingly made the material omission to draw the false inference that the child documented by law enforcement during aerial surveillance as walking with a "limp" could have been AG. The omission's recklessness can further be inferred by considering that such omission was "clearly critical" in determining probable cause. *See DeLoach v. Bevers*, 922 F. 2d 618, 622 (10th Cir. 1990) (holding that "recklessness" may be inferred from omissions that are clearly critical to the determination of probable cause).

Further, the omission is "material" because it tends to negate probable cause. *See also Stewart v. Donges*, 915 F.2d 572, 582 n.13 (10th Cir. 1990) (holding that omissions are material if they help negate probable cause). With the omission, the affidavit reads as though the child with

the "limp" could be AG. However, with the inclusion of the omitted information, the affidavit clearly indicates that the child with the "limp" is not AG. Knowing that the child with the "limp" is not AG negates probable cause that officers would find AG on the Subject Property.

**7.   The affiant knowingly or recklessly misrepresented that one of the females stated the family was starving and needed money and food.**

The affiant alleged that "Detective Porter stated he was provided photographs of what appeared to be text or instant messages regarding one of the females asking for help, stating the family was starving and needed money and food." (Exhibit A, BN 23618). The affiant blatantly misrepresented the messages. The text messages indicated that one of the females said she needed $400 to save *herself*--not the family--from starvation. (Exhibit G, BN 21262-21268). The messages do not evince that the female stated the family was starving, thus this statement is false.

Further, the affiant made the statement knowingly or with reckless disregard for the truth when the text messages themselves contradict his statement. Indeed, TCSO Detective Marvin Armijo even read these messages and provided such information to the affiant. (Exhibit H, BN 2758-59). A plain reading of the messages indicate that the woman only asserted that she was starving. *DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir. 1990) (alterations and internal quotation marks omitted). Whether or not affiant read the messages is of no moment. Other officers' recklessness is imputed to the affiant. Therefore, this Court must excise the statement that the family was starving and needed money and food.

**8.   The affiant recklessly materially omitted that he drafted the search warrant after being notified that AG's mother was traveling to N.M. because she believed authorities were not doing enough to help her.**

The affiant noted in his affidavit that on August 2, 2018, Detective Porter received photographs of messages from "one of the females asking for help, stating the family was starving and needed money and food." (Exhibit A, BN 23618) Critically, the affiant failed to mention in

that he also received word that AG's mother was traveling to New Mexico because she felt law enforcement was unhelpful. The affiant knew this and yet recklessly omitted it from the affidavit. The information is also material as it helps negate probable cause by offering an explanation of why affiant actually sought the search warrant.

On August 2, 2018, Detective Porter informed Officer Rael about some messages sent by one woman at the Subject Property. (Exhibit B; BN 23796). Porter also informed Rael that AG's mother was going to New Mexico because she felt law enforcement was not helping her. (Exhibit B; BN 23796). After the affiant learned of the conversation between Rael and Porter, which included information that AG's mother was going to travel to New Mexico, he immediately drafted the affidavit. (Exhibit B; BN 23796).

The affiant's omission that AG's mother travelling to New Mexico was reckless and material. This omission was critical in determining why law enforcement indeed sought authorization to search the Subject Property. The affiant and law enforcement likely feared that AG's mother's presence could embarrass them, since as of January of 2018, the officers had not done much to investigate the whereabouts of AG and Siraj Wahhaj. This omission was critical and would have strongly negated probable cause, and thus was both recklessly made and material.

**9. The affiant knowingly and with reckless disregard for the truth falsely stated Mr. Wahhaj was a felon.**

The affiant alleged in his affidavit that "the totality of what is presented in this affidavit rises to the need for law enforcement to enter and search the property for… the wanted felon." (Exhibit A, BN 23618). Mr. Wahhaj was not and is not a felon. The affiant's statement is patently false and was made knowingly and with reckless disregard for the truth.

There is no evidence that Mr. Wahhaj is a felon. Considering the affiant had known about Mr. Wahhaj for seven months before the affidavit was made, he knew or should have known that

Mr. Wahhaj was not a felon. Considering the false statement was made knowingly and recklessly, the statement must be excised from the affidavit.

### D. After excising affiant's false statements and including his material omissions into the affidavit, the affidavit fails to establish probable cause.

When dealing with intentional and reckless falsehoods and material omissions, a Court must "delete false or misleading statements and insert the omitted truths" in the warrant. *Stewart v. Donges*, 915 F.2d 572, 583 n. 13 (10th Cir. 1990). If after doing this, the warrant fails to establish probable cause, any and all evidence obtained from such warrant must be suppressed. *Franks v. Delaware*, 438 U.S. 154, 156 (1978). In this case, after excising the intentional and reckless false statements and material omissions, the affidavit failed to provide probable cause for the search.

In this case, the affidavit suffers from several intentionally and recklessly made false statements and material omissions. There are six false statements that must be excised. First, the false statement that on May 15, 2018, the affiant "became aware" that Mr. Wahhaj and his son may be residing in N.M. Second, the false statement concerning that other "area residents" (other than the Badgers) told officer's Flores and Rael that persons who "resemble" Mr. Wahhaj and his son occupied a property on Juniper Road. Third, the false statement that FBI surveillance documented multiple "adult males." Fourth, the false statement concerning that AG walked with a "limp." Fifth, the false statement that the text messages from the one female indicated the family was starving and needed money. Sixth, the false statement that Mr. Wahhaj is a felon.

In addition to the six false statements, the affiant failed to include three material omissions in the affidavit, which must now be included in the analysis of the affidavit. First, the material omission that AG's mother had told law enforcement that the child photographed walking with the "limp" was NOT her son must be considered. Second, the material omission that Mr. Badger told the TCSO on May 14, 2018 that he had not seen Mr. Wahhaj and his son "in a long time" and had

24

actually only seen him "that one time" must also be considered. Finally, the material omission that on August 2, 2018, the same day the Affiant drafted the Affidavit, he received information that AG's mother was traveling to New Mexico because she believed law enforcement had not done enough must also be considered.

By the time the affiant drafted the affidavit, any circumstances even arguably establishing probable cause that Mr. Wahhaj and his son were on the Subject property had become stale. *See United States v. Neal*, 500 F.2d 305 (10th Cir. 1974) (holding that "[p]robable cause existing at some time in the past will not suffice unless circumstances exist from which it may be inferred that the grounds continued to the time the affidavit was filed.") (citations omitted). Importantly, probable cause for a search warrant "cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." *United States v. Snow*, 919 F.2d 1458, 1459 (10th Cir. 1990). The affiant's affidavit attempted to mask the staleness of the information through deliberate and reckless false statements and material omissions. The recklessness and deliberateness can even be deduced by the numerous false statements and material omissions. The affidavit contains nine false statements and material omissions compared to only three pages of facts attempting to establish probable cause. After considering the false statements and material omissions in the affidavit, any probable cause the warrant may have had, vitiated.

After excising the intentional and reckless falsehoods and considering the material omissions, the affidavit fails to establish probable cause in part because the information about Mr. Wahhaj and his son's present on the Subject Property had become stale. The affidavit fails to establish a nexus between Mr. Wahhaj and his son and the Subject Residence because any nexus that may have existed had grown stale by August 2, 2018. *See Id*. Additionally, the text messages

concerning that one of the females asked for money to save *herself* from starvation did not suffice to establish probable cause to conduct a well-being check.

1. **After considering the intentional and reckless falsehoods and omissions, the warrant is insufficient to establish probable cause that Mr. Wahhaj and his son resided at the Subject Property.**

By the time the affiant obtained the warrant on August 2, 2018, the information concerning Mr. Wahhaj turned stale and any circumstances depicting probable cause that Mr. Wahhaj or his son resided on the Subject Property no longer persisted. *United States v. Neal*, 500 F.2d 305, 309 (10th Cir. 1974); *see also United States v. Garcia*, 707 F.3d 1190, 1195-96 (10th Cir. 2013)) (holding "[t]he Fourth Amendment requires probable cause to persist from the issuance of a search warrant to its execution.").

Circumstances no longer existed to establish a nexus between Mr. Wahhaj and his son and the Subject Residence. The identification of Mr. Wahhaj had grown stale by August 2, 2018. The affidavit fails to specify when Mr. Badger allegedly saw Mr. Wahhaj on the Subject Residence. It details that around the first part of 2018, Mr. Wahhaj and Mr. Morton had built their residence on Mr. Badger's property. This means Mr. Badger could have seen Mr. Wahhaj as early as January 1, 2018, seven months before the application for the warrant. An early date also coincides with Mr. Badger informing Sergeant Rael that he had not seen Mr. Wahhaj "in a long time."

This seven-month period of failing to see Mr. Wahhaj gives rise to the logical conclusion that Mr. Wahhaj and his son no longer resided on the Subject Property. *See United States v. Neal*, 500 F.2d 305 (10th Cir. 1974) (holding that three-month old information proved to be stale when there was no further information that the criminal operation continued or that the material sought to be recovered remained on the described premises). Although time is just one factor to consider, time is crucial to staleness and the concept of probable cause. *United States v. Johnson*, 461 F.2d

285, 287 (10th Cir. 1972). Additionally, considering the affidavit only details one sighting of Mr. Wahhaj, a seven-month period of not observing Mr. Wahhaj or his son adds to the staleness of the information. *See United States v. Wagner*, 989 F.2d 69 (2d Cir. 1993) (holding a six-week-old sale of marijuana as stale, when the sale was the only documented sale and was of a quantity of marijuana consisting of four "nickel bags"); *see also United States v. Riedesel*, 987 F.2d 1383, 1391 (8th Cir. 1993) (opining a seven-month-old search and seizure of items may have been too stale to use in a subsequent warrant, but upholding the constitutionality of the warrant through the good-faith exception).

Additionally, law enforcement's own investigation buttresses the argument that the information was stale. Since February 6, 2018, law enforcement had the GPS coordinates of Mr. Morton's property, which was adjacent to the Subject Property (Exhibit H, BN 2759).  The TCSO, FBI, and New Mexico State Police (NMSP) investigated the Subject Property and even conducted aerial surveillance numerous times. (Exhibit B, BN 23795). Neither the investigation nor the aerial surveillance added information that Mr. Wahhaj or his son were on the Subject Residence. To the contrary, after months of surveilling, law enforcement at no point saw Mr. Wahhaj or AG. Indeed, even Sergeant Rael did not believe they had sufficient evidence to establish that Mr. Wahhaj or AG were at the Property. As detailed in Sergeant Rael's report, Mr. Badger told officer Cox, sometime after July 15, 2018, he "did not know how much further [they] could proceed given no solid concrete evidence Siraj Wahhaj and Abdul-Ghani were at the compound." (Exhibit B; BN 23795). Besides Mr. Badger's information to law enforcement that Mr. Wahhaj occupied the Subject Property at some earlier time, the warrant fails to establish any other evidence of a nexus between Mr. Wahhaj and his son and the Subject Property.

The affiant's various falsehoods and material omissions were intended to create probable cause where none existed. He attempted to create the illusion that, from May 15, 2018, law enforcement gathered intel that Mr. Wahhaj and his son were seen on the Subject Residence. After excising the falsehoods and considering the material omissions, the warrant uncovers the truth: the affidavit simply lacks probable cause and is fatally stale.

2. **After considering the intentional and reckless falsehoods and material omissions, the warrant is insufficient to establish probable cause as to warrant a welfare check of the children.**

Clearly established Tenth Circuit law dictates that police, and even social workers, must not enter a person's home unless there is consent, exigent circumstances, or probable cause to support a warrant, even for the purpose of taking a child into custody and much less, to conduct a search. *Turner v. Houseman*, 268 Fed.Appx. 785, 788 (10th Cir. 2008) (unpublished). This case does not involve consent nor exigent circumstances, only a warrant and the issue of probable cause.

"Probable cause to issue a search warrant… exists when the supporting affidavit sets forth sufficient facts that would lead a prudent person to believe that a search of the described premises would uncover contraband or evidence of a crime." *United States v. Rowland*, 145 F.3d 1194, 1204 (10th Cir. 1998). The affiant averred that he had probable cause to search the Property because "there is now information that the children are being neglected of food and/or basic needs and that the totality of what is presented in this affidavit rises to the need for law enforcement… to check the welfare of any persons/children that may be present." (Exhibit A, BN 23618) The affiant also claimed that the criminal investigation shall include "child abuse and/or neglect." (Exhibit A, BN 23618). After considering affiant's recklessly made false statements and material omissions, the affidavit also fails to establish probable cause that the search would uncover contraband or evidence of child abuse or neglect. (Exhibit A, BN 23618).

The affidavit further failed to establish probable cause that the children were being abused, neglected, or that any other potential crime was being committed. The affiant alleged that on August 2, 2018, Detective Porter relayed that his agency obtained messages "regarding one of the females asking for help, stating the family was starving and needed money and food." The affiant, however, recklessly and falsely represented that the messages stated "the family was starving." In the messages, the female who sent the message told the receiver "I am desperately in need of $400 in order to save *myself* from starvation." (Exhibit G, BN 21265) (emphasis added). She made no mention of the family starving.

After excising the false statement, the affidavit fails to establish probable cause that the children are being neglected or of any other crime. Besides that false statement, no other factual basis in the affidavit even hints that the children are being abused or neglected. Indeed, after excising such false statement, there is not even a "hunch" of child neglect. *United States v. Valenzuela*, 365 F.3d 892, 897 (10th Cir. 2004) (holding that "hunch piling upon hunch" will not establish probable cause).

### 3. The Good-Faith Exception Does not Save the Affiant's Warrant From Suppression.

Because the affidavit lacks a nexus between the criminal activity described and the presence of Mr. Wahhaj or AG within the Subject Property and because the affidavit contains misrepresentations and material omissions, the good faith doctrine of *United States v. Leon*, 468 U.S. 897 (1984), does not save the search. *See United States v. Gonzales*, 399 F.3d 1225, 1229 (10th Cir. 2005). In *Leon*, the Supreme Court stated suppression remains an appropriate remedy when the issuing magistrate wholly abandons his judicial role. 468 U.S. at 898-99. The Court recognized ". . . no reasonably well-trained officer should rely on the warrant" and "nor would an officer manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in

29

indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Leon*, 468 U.S. at 923, (quoting *Brown v. Illinois*, 422 U.S. 590, 610-611 (1975)).

The affidavit submitted in this case was wholly lacking in indicia of probable cause because it completely failed to establish any criminal activity at the place to be searched. While *Leon* suggests that officers may rely on the magistrate's judgment, at the same time, officers "are also required to exercise their own professional judgment." *United States v. Gonzales,* 399 F.3d 1225, 1230 (10th Cir. 2005). "Indeed, law enforcement officers are presumed to have a reasonable knowledge of the law." *Leon,* 468 U.S. at 919 n. 20. "[A] reasonably well-trained law enforcement officer should be familiar with the fundamental legal principle that both the 'commission' and 'nexus' elements of 'probable cause' include an essential temporal component." *United States v. Zayas-Diaz,* 95 F.3d 105, 114-115 (1st Cir. 1996), (quoting *Leon,* 468 U.S. at 920, n. 20). However, when a warrant contains falsehoods, reliance thereon is not objectively reasonable and *Leon* requires suppression. *United States v. Stout*, 641 F.Supp. 1074 (N.D.Cal. 1986).

The good faith exception has no application in this case. The good faith doctrine is inapplicable because the search warrant affiant violated the *Franks* doctrine by misrepresenting the facts and omitting material information. These omissions and misrepresentations were necessarily knowing, reckless, and vitiated any probable cause for the warrant to issue.

The previously described misrepresentations, when coupled with the lack of a nexus between the Subject Property and Mr. Wahhaj and AG preclude a finding of probable cause or reasonable reliance on the warrant. The good faith doctrine cannot apply to salvage the fruits of the warrant from the exclusionary rule. Furthermore, exclusion is appropriate because reasonably trained officers, exercising their own professional judgment, would be able to recognize the

deficiency in the affidavit seeking the warrant and thus, any reliance upon the warrant was not objectively reasonable.

## II.   In Addition to the Suppression of the Search and All Evidentiary Fruits Obtained Therefrom, the Firearms Seized Must Also Be Suppressed Because the Warrant Did Not Authorize the Seizure of Weapons.

To protect against unreasonable searches and seizures, the Fourth Amendment mandates that a warrant (1) be supported by probable cause and (2) must describe with "particularity" the things to be seized. *United States v. Russian*, 848 F.3d 1239, 1244 (10th Cir. 2017). After executing the search warrant on the Subject Property, law enforcement seized multiple firearms and magazines for "safekeeping." (Exhibit A, BN 23626.) The search warrant only authorized law enforcement to seize property "described in the Affidavit" for safekeeping.  (Exhibit A, BN 23628).

The seizure of these weapons violated the Defendants' rights for three reasons. First, the warrant did not include the seizure of firearms and magazines, and the warrantless search failed to meet any of the exceptions to the warrant requirement. Second, even assuming the warrant did include the seizure of the firearms and magazines, the warrant was overly broad and failed to describe with particularity that the firearms and magazines were to be seized. Third, after considering another recklessly made false statement pursuant to *Franks*, the search warrant failed to provide probable cause to seize the firearms and magazines.

The affidavit included a list of persons and property intended to be seized in a section titled: "THERE IS AT SAID SUSPECTED PLACE AND PREMISES PROPERTY CONCEALED AND KEPT IN VIOLATION OF THE LAWS OF THE STATE OF NEW MEXICO, SAID PROPERTY BEING MORE FULLY DESCRIBED AS FOLLOWS." (Exhibit, BN 23616). This section lists three sets of persons: (1) Siraj Wahhaj, (2) AG Wahhaj, (3) and any

other person whose welfare may be compromised. (Exhibit A, 23616) No property is listed in this section, and more so, no firearms are listed. The only mention of firearms in the affidavit is a statement noting, "[t]hrough information provided by FBI Agent Suta, WAHHAJ was contacted by LE during a traffic crash in December 2017 and found in possession of guns and body armor." (Exhibit A, BN 23618). This is the only mention of firearms in the entire affidavit, and it does not in any way request the seizure of the firearms or demonstrate that any firearms constituted evidence of criminal activity.

### A. The search warrant did not authorize law enforcement to seize the firearms from the Subject Property.

In this case, the search warrant only allowed the seizure of the "property described in the Affidavit." (Exhibit A, BN 23625). The affidavit, however, only mentions the intent to seize  (1) Siraj Wahhaj, (2) AG Wahhaj, (3) and any other person whose welfare may be compromised. (Exhibit A, BN 23616**).** The affidavit included a list of persons and property to be seized in a section titled: "THERE IS AT SAID SUSPECTED PLACE AND PREMISES PROPERTY CONCEALED AND KEPT IN VIOLATION OF THE LAWS OF THE STATE OF NEW MEXICO, SAID PROPERTY BEING MORE FULLY DESCRIBED AS FOLLOWS." (Exhibit A, BN 23616**).** This section lists three sets of persons: (1) Siraj Wahhaj, (2) AG Wahhaj, (3) and any other person whose welfare may be compromised. (Exhibit A, BN 23616**).** This section, however, includes no mention of any firearms or magazines. While the affidavit included a sentence that in December 2017, Mr. Wahhaj was found in possession of guns and body armor, it at no point expresses an intent to seize these weapons. The warrant's grant to seize "property described in the Affidavit" does not include firearms. The search warrant did not authorize the seizure of the firearms and magazines, therefore law enforcement's seizure thereof was warrantless and violative of the Defendants' rights.

A seizure carried out without a warrant is "per se unreasonable," unless it is based on the presence of "exigent circumstances." *United States v. Gordon*, 741 F.3d 64, 69 (10th Cir. 2014) (quotation and citation omitted). No exigent circumstances are present here, and *United States v. Gordon* is informative in this case. 741 F.3d 64 (10th Cir. 2014) In *United States v. Gordon*, police responded to the defendant's home after the victim called 911. *Id.* at 68. The victim told 911 that two days earlier her boyfriend had pushed her against the wall and swung a samurai sword at her. *Id.* She indicated that her neck hurt, and she fought with her boyfriend earlier in the day about getting medical attention. *Id.* She also indicated she was seriously worried her boyfriend and her other roommate were going to hurt her. *Id.* After the call, officers responded and entered the home without consent. *Id.* While in the house, an officer noticed a shotgun and seized it. *Id.* The officer then arrested the defendant for aggravated assault. *Id.* at 69. The officer's retained the shotgun when they left the home to take the defendant to jail. *Id.* While en route to jail, the officers discovered the defendant was a felon. *Id.* The defendant was charged with felon in possession of a firearm. *Id.* The defendant moved to suppress the firearm, but the district court denied his motion. *Id.* On appeal, The Tenth Circuit reversed the district court and held the seizure was unconstitutional. *Id.* The court reasoned that while the temporary seizure of the shotgun was reasonable under the plain view doctrine, the seizure *after* the officers left the home was unreasonable. *Id.* at 72. The court held that prior to learning of his felony conviction, the officer had no reason to continue the temporary seizure. *Id.* The court further explained that had the officer left the gun, then found the defendant was a felon, the officer would have had probable cause to seize it again *with a warrant*. *Id.*

Here, law enforcement violated Defendants' rights when they seized the firearms and magazines without authorization from a warrant, and when no exceptions to the warrant

requirement applied. Like *Gordon*, in this case, while the officers could have temporarily seized the weapons, any more than that is an unconstitutional seizure. Indeed, in *Gordon*, where the officers had evidence of the defendant's violent nature and even arrested him for aggravated assault, the officers still could not hold on to the shotgun absent a warrant. In this case, the officers could not hold on to the firearms and magazines absent a warrant. While *Gordon* only focused on the plain view exception to the warrant requirement, there is no other warrant exception that would apply in this case. Like in *Gordon*, the officers illegally seized the firearms and magazine when they retained them past the Defendants' arrests. Therefore, this Court must suppress the evidence of the firearms seized during the search of the Subject Property.

**B. Even if the search warrant had included the seizure of the firearms and magazines, the officer's seizure violated Defendants' rights because the search warrant was overly broad.**

The Fourth Amendment requires that warrants to seize items must describe the items with "particularity" and not be "overbroad." *United States v. Leary*, 846 F.2d 592, 600-01 (1988). The Supreme Court has long held that particularity "'prevents the seizure of one thing under a warrant describing another.'" *Stanford v. Texas*, 379 U.S. 476, 485 (1965) (quoting *Marron v. United States*, 275 U.S. 192 (1927)). Moreover, "a description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Wolfenbarger*, 696 F.2d 750, 752 (10th Cir. 1982) (quotation and citation omitted). Additionally, the difference between an overbroad warrant and a valid warrant also depends on "whether the government could have phrased the warrant more specifically." *United States v. Le*, 173 F.3d 1258, 1275 (10th Cir. 1999). In this case, the search warrant was overbroad as it did not enable an officer to reasonably ascertain and identify the property to be seized with specificity.

In this case, the search warrant allowed for the seizure of property "described in the Affidavit." While the affidavit lists Mr. Wahhaj, AG Wahhaj, and any other person whose welfare may be compromised, there is no list of any firearms, magazines, or any other property to be seized. The only allusion to firearms is contained in a brief mention that Mr. Wahhaj was found in possession of guns and body armor in December 2017. However, there is no mention that Mr. Wahhaj illegally possessed the guns (because he did not), much less that they should be seized.

The search warrant allowed for the seizure of property "described in the Affidavit." If law enforcement relies on the search warrant for the seizure of the firearms, then law enforcement broadly assumes the search warrant's phrase "described in the Affidavit" includes the guns Mr. Wahhaj was found in possession in December of 2017. This reliance would make the phrase "described in the Affidavit" overly broad and unconstitutional.

If the search warrant's phrase "described in the Affidavit" includes firearms, then it is overly broad as it does not enable a searcher to reasonably ascertain and identify the things authorized to be seized, and the phrase could have been more specific. *Wolfenbarger*, 696 at 752; *Le*, 173 F.3d at 1275. There are many items described in the affidavit. Besides Mr. Wahhaj, AG, and any other person whose welfare may be compromised, there are many items that are not in a list format but are still part of the affidavit. This includes the tires that surround the house, the guns and body armor Mr. Wahhaj was seen with in 2017, and the white box van. The warrant allowing for the seizure of property "described in the Affidavit" is too broad because the many items included in the Affidavit do not reasonably alert the officers which items they are actually authorized to seize. *See* e.g.*, Groh v. Ramirez*, 540 U.S. 551, 560 (2004) (holding that "[b]ut unless the particular items described in the affidavit are also set forth in the warrant itself…, there can be

no written assurance that the [judge] actually found probable cause to search for, and to seize, every item mentioned in the affidavit." (citation omitted)).

Additionally, the circumstances in this case were foreshadowed by the United States Supreme Court. In *Groh v. Ramirez*, the plaintiff sued law enforcement for various constitutional violations. 540 U.S. 551 (2004). Officers had executed a search warrant hoping to find explosives and firearms in the plaintiff's home. *Id.* at 554. The officers had a detailed search warrant affidavit listing the items to be seized, but the search warrant failed to incorporate the affidavit and had no similar list. *Id.* at 554-55. The Supreme Court held that the warrant was unconstitutional because it failed to describe with particularity the things to be seized. 540 U.S. 551, 563 (2004). The Court reasoned that just because a judge issues a warrant, it is not necessarily established that the search may be as broad as requested in the affidavit. *Id.* at 561. The Court also reasoned the warrant was not particular enough because it was "conceivabl[e], [that] the [judge] might have believed that some of the weapons mentioned in the affidavit could have been lawfully possessed and therefore should not be seized." *Id.* at 561. Therefore, even if an affidavit requests the seizure of firearms, an overbroad warrant may conceivably hide the fact that the judge believed the weapons should not be seized, thereby making the warrant unconstitutional.

Here, the warrant was unconstitutionally over broad as it was conceivable that Judge Backus did not intend the weapons to be seized as they were lawfully possessed. Just as the Supreme Court noted in *Groh*, in this case the warrant was not particular enough, and it is conceivable that the judge might have believed that the firearms mentioned in the affidavit were lawfully possessed and therefore, should not be seized. Indeed, there is nothing in the warrant that depicts that Mr. Wahhaj illegally possessed any guns, unlike the defendant in *Groh*. But just like the warrant in *Groh*, the warrant in this case was not particular enough to detail whether the judge

authorized the seizure of firearms mentioned in the affidavit. Regardless of the detail in an affidavit, if a warrant is not particular enough then the particularity requirement is not met.

Finally, the warrant is also overbroad as it failed to particularly describe the firearms and magazines to be seized. Therefore, this Court must suppress the firearms and magazines.

> **C. After excising the false statement, the search warrant was impermissibly overbroad and the authorization of the seizure lacked probable cause; therefore the officers violated the Defendants' rights by seizing the firearms and magazines.**

A search warrant can also be "impermissibly overbroad" if it authorizes a seizure that is not supported by probable cause. *United States v. Leary*, 846 F.2d 592, 605 (10th Cir. 1988). For probable cause, there must be a nexus between the item seized and the criminal behavior. *Knox*, 883 F.3d at 1277. In this case, there is absolutely no nexus to the firearms seized and any potential criminal behavior articulated in the warrant or Affidavit.

The affiant also falsely refers to Mr. Wahhaj as a "wanted felon." (Exhibit 1, BN 23618). Mr. Wahhaj is not a felon. This statement is not only false, but was made with knowledge and reckless disregard to the truth. *See DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir. 1990) (alterations and internal quotation marks omitted). While Mr. Wahhaj may have had an arrest warrant out for him, there has been no conviction and the statement that he is a "felon" is false. This court must excise such statement.

After excising such statement, the search warrant is impermissibly overbroad. There was no probable cause because there was absolutely no nexus between the firearms and any potential criminal behavior. There was no hunch the firearms pertained to any criminal activity. *United States v. Valenzuela*, 365 F.3d 892, 897 (10th Cir. 2004) (holding that "hunch piling upon hunch" will not establish probable cause). More so, the warrant did not even provide mere suspicion of a nexus between the firearm and any criminal activity. *Brinegar,* 338 U.S. 160 (1949). Therefore,

even assuming the search warrant authorized the seizure of the firearms and magazines, the search warrant contained no probable cause to allow for such a seizure, and all evidence of the seizure must be suppressed.

### D.  The good-faith exception does not apply.

The Good-Faith Exception does not apply to the seizure of the firearms and magazines. First, the seizure of the firearms and magazines was not pursuant to a warrant, and warrantless seizures do not fall within the Good-Faith exception. *See Leon*, 468 U.S. 897.  Second, even assuming the seizure of the firearms and magazines was authorized by the warrant, the affiant falsely stated Mr. Wahhaj was a felon. He is not a felon. After excising such statement, there exists no probable cause to seize the firearm. The good faith exception does not apply when probable cause is vitiated by *Franks* challenges, therefore this suppression is unsavable. *Id.* at 923.

## CONCLUSION

Wherefore, for the foregoing reasons, the Defendants urge this Court to suppress evidence seized from the Subject Property and any subsequent evidentiary fruits therefrom, as the search warrant failed to establish probable cause to issue, contained stale evidence, contained material omissions and misrepresentations, and law enforcement reliance thereon is unreasonable.


Respectfully Submitted,

*/s/electronically filed on 10-20-2022*
Thomas J. Clark
Counsel for Siraj Wahhaj
432 Galisteo Street
Santa Fe, NM 87501

 electronically filed  10-20-2022
Erlinda O. Johnson
Counsel for Siraj Wahhaj
620 Roma Ave. N.W.

Albuquerque, NM 87102
(505) 792-4048

/s/_____
Aric Elsenheimer and
Angelica Hall
Office of the Federal Public Defender
Counsel for Jany Leveille
501 Lomas Ave. N.W.
#501
Albuquerque, NM 87102

_/s_____
Justine Fox-Young
Counsel for Subhanah Wahhaj
5501 Eagle Rock Ave. NE, Suite C2
Albuquerque, NM 87113
505.796.8268

/s/_____
Ryan Villa
Counsel for Subhannah Wahhaj
5501 Eagle Rock Ave. NE, Suite C2
Albuquerque, NM 87113
505.639.5709

/s/_____
Matthew Beck
Counsel for Lucas Morton

/s/_____
Joseph Shattuck
Counsel for Lucas Morton

/s/_____
Marshall Ray
Counsel for Hujrah Wahhaj
212 12th Street N.W.
Albuquerque, NM 87102

/s/_____
Donald Kochersberger
Counsel for Hujrah Wahhaj


I hereby certify that a true and correct copy of the foregoing was emailed via CM-ECF to counsel for the government on this 20th day of October 2022.


*/s/Erlinda O. Johnson*
Erlinda O. Johnson