IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cr. No. 18-CR-2945 WJ |
| | ) | |
| JANY LEVEILLE, | ) | |
| SIRAJ IBN WAHHAJ, | ) | |
| LUCAS MORTON, | ) | |
| HUJRAH WAHHAJ, and | ) | |
| SUBHANAH WAHHAJ, | ) | |
| | ) | |
| Defendants. | ) | |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO FOR COURT-ORDERED DEPOSITION OF WITNESS DUE TO OBSTRUCTION OF WITNESS COMMUNICATION BY THE UNITED STATES**

Defendants Jany Leveille, Siraj Ibn Wahhaj, Lucas Morton, Hujrah Wahhaj, and Subhanah Wahhaj ask the Court to authorize the taking of Taos County Sheriff Jerry Hogrefe's deposition or, in the alternative, to conduct an evidentiary hearing and permit the defense to question Sheriff Hogrefe under oath about what he was told by the government with respect to engaging in a defense interview. Doc. 465. For the reasons set forth below, the United States categorically denies ever ordering Sheriff Hogrefe to not speak with the defense and respectfully requests that the motion be denied.

I.   FACTUAL BACKGROUND

Three years ago, in October 2019, Ryan Villa, counsel for Subhanah Wahhaj, contacted the United States Attorney's Office and requested that the lead prosecutor give Sheriff Hogrefe

1

"permission" to speak with the defense. The prosecutor with whom Mr. Villa spoke has no recollection of ever being informed that Sheriff Hogrefe had told the defense team he was under "orders" to not speak with them, and only recalls that Mr. Villa said the sheriff would only speak with the defense if he had permission to do so.

It would be improper for a prosecutor to grant or deny a witness permission to speak with the defense, and no member of the prosecution team, including the supervisory federal agents, has ever instructed, much less ordered, Sheriff Hogrefe or any other witness to not speak with the defense. Indeed, it is the habit and practice of the attorneys and agents assigned to this case to never grant or deny a witness permission to speak with the defense, but rather to advise witnesses that it is each witness's own personal decision whether or not to speak with the defense in this or any other case.

After speaking with Mr. Villa in 2019, the lead prosecutor agreed to contact Sheriff Hogrefe in an attempt to clarify the situation between the Sheriff and the defense. The prosecutor contacted Sheriff Hogrefe, and on October 18, 2019, responded to Mr. Villa in email about the conversation, writing:

> I did talk to Sheriff Hogrefe. As you know, a witness is under no obligation to speak with defense counsel or investigators unless compelled to do so. Apparently, Sheriff Hogrefe does not want to talk to defense counsel or your investigators about this case without being compelled to do so. That's his decision, and I do not believe it is appropriate for me to influence him one way or another.

*See* Email dated October 18, 2019, attached hereto as Exhibit 1; *see also* Doc. 465-4.

It was not until three years later, when the defense filed a motion to depose Sheriff Hogrefe because of alleged obstruction on the part of the United States, that the government learned what allegedly happened when Mr. Villa and his investigator, Gary Ainsworth, tried to

2

speak with Sheriff Hogrefe. Doc. 465 at 3-4. According to the proffered facts in the motion, the defense did not tell Sheriff Hogrefe what case they wanted to discuss with him until they were already at his office, and the Sheriff's demeanor toward them changed upon realizing the purpose of their visit. *Id*. at 3, 5. Sheriff Hogrefe told Mr. Villa and Mr. Ainsworth, "I'm not going to talk to you" because of "direct orders from 'them,'" and the defense team left his office. *See* Doc. 465 at 3-4. The defense then alleges that Sheriff Hogrefe followed them to their car, gave them his business card, and "expressed a willingness" to speak with them "if he was only given permission." *Id*. at 4-5.[1]

The motion makes no mention of any attempts the defense has made since October 2019 to speak with Sheriff Hogrefe, nor does it specify who, supposedly, ordered Sheriff Hogrefe to

---

1 On October 28, 2022, Mr. Villa provided a two minute and 41 second recording of the interaction between him, Mr. Ainsworth, and Sheriff Hogrefe in 2019. In the recording, after the defense team stated they wanted to talk about this case, the conversation was as follows:

> **Sheriff Hogrefe:** I can't talk to you guys.
> **Ryan Villa:** Sure you can.
> **Sheriff Hogrefe:** No, I'm not going to talk to you guys. [Several people talking at once.] That's federal charges, federal case. I'll answer any subpoenas, or anything like that, but I can't sit down and talk to you guys. And none of my staff will. Sorry.
> **Ryan Villa:** No, I understand.
> **Sheriff Hogrefe:** That's direct orders from – them.
> **Ryan Villa:** Well, you're your own boss, you don't have to follow their orders.
> **Sheriff Hogrefe:** Yep. I know that.
> **Ryan Villa:** But we will respect the orders.
> **Sheriff Hogrefe:** [Chuckles] Sorry guys, alright, you have a good day.

The motion makes no mention of Sheriff Hogrefe acknowledging he knew he did not have to follow anyone's orders. *See* Doc. 465 Moreover, the recording does not capture Sheriff Hogrefe ever stating he would speak with the defense if he received permission.

not speak with the defense. Nor did the defense seek the United States' position on the motion or advise the United States of its premise before it was filed.

Surprised to learn of the purported statements Sheriff Hogrefe made to Mr. Villa and Mr. Ainsworth three years ago, the United States recently sent a letter to Sheriff Hogrefe, clarifying that he did not need permission from the government to speak with the defense. *See* Letter dated October 21, 2022, attached hereto as Exhibit 2. The letter also reiterated that the decision of whether or not to speak with the defense is his alone. *See id*.

## II.   ARGUMENT

Witnesses belong "neither to the government nor the defense[, and b]oth sides have a right to interview witnesses before trial." *United States v. Carrigan*, 804 F.2d 599, 603 (10th Cir. 1986) (internal citations omitted). Nevertheless, "[a] witness in a criminal case has the right to refuse to be interviewed," and a defendant's rights are not violated when a witness decides not to talk. *United States v. Pinto*, 755 F.2d 150, 152 (10th Cir. 1985) (internal citations omitted); *see also United States v. Troutman*, 814 F.2d 1428, 1453 (10th Cir. 1987) ("*Pinto* is in complete accord with the holding of every circuit that has examined this question").[2]

---

[2] In *United States v. Pinto,* the Tenth Circuit considered a case in which a prosecution witness refused to speak with the defendant's investigator and told the investigator that the United States Attorney's Office had instructed her that she had the right to speak or not to speak with anyone from the defense. *See* 755 F.2d at 152. The investigator stated in an affidavit that the witness had made a telephone call to the United States Attorney's Office while he attempted to meet with her at the witness's home, and that a secretary at the office instructed her not to speak to anyone from the defense. *See id.* At trial, the witness testified that she could not remember what the secretary told her during the telephone call. *See id.* In affirming, without analysis, the district court's denial of the defense's pre-trial motion to depose the witness, the Tenth Circuit concluded that "[i]n the case at bar the prosecution did not impermissibly interfere with [the witness's] choice." *Id.* The case at hand is very different than *Pinto* because no member of

A witness's decision to speak with the defense must be his own, and prosecutors may not interfere with the free choice of a witness to speak with the defense absent justification "by the clearest and most compelling considerations." *Pinto*, 755 F.2d at 152. The prosecutor must not obstruct communications between a witness and defense counsel, and "it is unprofessional conduct for the prosecutor to advise a prospective witness to decline to give the defense information that person has a right to give." *Carrigan*, 804 F.2d at 603 (citing Model Rules of Prof'l Conduct R. 3.4(f) (2003) ("A lawyer shall not ... request a person other than a client to refrain from voluntarily giving relevant information to another party. . . .")); *see also* New Mexico Rules of Prof'l Conduct R. 16-304(F).

The Tenth Circuit has assumed that where a prosecutor's interference with a defendant's access to a witness is significant, a district court has the authority to order the taking of an adverse witness's deposition. *Carrigan*, 804 F.2d at 603-604 (citing *Pinto*, 755 F.2d at 152); *see also Troutman*, 814 F.2d at 1453. The deposing of witnesses is governed by Fed. R. Crim. P. 15(a), which permits a district court to grant a motion to depose a witness if there are "exceptional circumstances" and if taking the deposition is "in the interest of justice."

In this case, the accusations that the United States obstructed communications between Sheriff Hogrefe and the defense lack support and are utterly false. The prosecution did not—and would not—interfere with the defense's access to Sheriff Hogrefe or any other witness. The prosecutors assigned to this case consistently abide by the legal and ethical standards and advise witnesses, if they advise them at all, that speaking with the defense is solely the witness's

---

the United States Attorney's Office ever told Sheriff Hogrefe to not speak with the defense. If the facts of *Pinto* were insufficient to show the prosecution impermissibly intereferd with the witness's choice to speak with the defense, the facts of the instant case certainly are as well.

decision. Indeed, Mr. Villa was aware of this as early as October 2019, when, after a prosecutor contacted Sheriff Hogrefe at Mr. Villa's request, that prosecutor informed Mr. Villa via email that it would be "inappropriate for [the prosecution]. . . to influence [Sheriff Hogrefe] one way or another." *See* Exhibit 1. The contemporaneous email Mr. Villa received—which was attached, but selectively discussed in the defense's motion insinuating professional misconduct by the prosecution—confirms that the prosecution acted properly. In fact, this email indicates that, if anyone was seeking to influence or push Sheriff Hogrefe one direction or the other in his personal decision to speak or not speak with the defense, it was Mr. Villa's defense team by seeking the prosecution to encourage the Sheriff to speak.

No counsel for the United States has any recollection of being informed three years ago of the comments reportedly made by Sheriff Hogrefe—those comments being that he was under "direct orders from 'them'" to not speak with the defense. It is unsurprising that no counsel have such a recollection, because if counsel for the United States had known that Sheriff Hogrefe had said something like this, counsel would have made clear that it never gave any such orders and would have easily disabused Sheriff Hogrefe of any impression he may have had that the choice to speak to the defense was not entirely his either way. The United States would also have attempted to ascertain who supposedly gave the "orders" and why Sheriff Hogrefe believed he could not speak with the defense. If the United States had known these purported facts, the October 2019 email from counsel to Mr. Villa would likely have addressed this issue of the "orders" Sheriff Hogrefe was talking about. Instead, the prosecutor's email simply recounts that Sheriff Hogrefe appeared to not want to speak to the defense, and correctly states that it is not

appropriate for the prosecution to try to influence Sheriff Hogrefe's decision one way or the other.

Moreover, noticing the lack of mention of any "orders" not to speak or related misunderstandings by Sheriff Hogrefe, the defense could easily have responded to the prosecutor's October 2019 email and explained that Sheriff Hogrefe had allegedly told them the prosecution ordered him not to speak to the defense.  Again, the prosecution would have then easily and quickly disabused Sheriff Hogrefe of any such notion, and this issue would have been resolved in 2019.  The United States has been unable to find record of any such response from the defense in 2019 or any time thereafter.  Instead, the defense waited three years beforefully advising the United States of Sheriff Hogrefe's purported statements and did so only while raising this issue with the Court (and without having sought the United States' position on its three-years-in-the-making motion).

Given the passage of time since anyone associated with this case last tried to speak with Sheriff Hogrefe, and upon receipt of the allegations and purported statements in the defense's motion, the United States sent a letter to Sheriff Hogrefe informing him, to the extent he still believes he needs permission to speak with the defense, that he does not need any permission. *See* Exhibit 2.  The decision whether or not to speak with the defense is, and always has been, Sheriff Hogrefe's decision, and he was reminded of this in the recent correspondence which should disabuse him of any notion to the contrary.  This is the type of letter or communication that the United States could have provided Sheriff Hogrefe in 2019, had any counsel for the United States ever been made aware of Sheriff Hogrefe's supposed "orders" to not speak.  In any event, the United States has certainly not obstructed the defense's ability to speak with

Sheriff Hogrefe or done anything warranting a sanction.  The United States does not know if Sheriff Hogrefe is now willing to speak with the defense.  He may very well again refuse to speak with the defense, and, if he does, that would not amount to an exceptional circumstance warranting that he be deposed.

The defense attempts to bolster its argument to depose Sheriff Hogrefe by claiming that he "is the best person to provide pertinent, relevant and potentially exculpatory information as to when and why the FBI became involved," *see* doc. 465 at 3, but this is legally and factually untrue.  Legally, the defense is not prejudiced if Sheriff Hogrefe chooses to not speak with them, *see Pinto*, 755 F.2d at 152, and, factually, one would expect that FBI personnel, not the Taos County Sheriff, would be in the "best" position to know when the FBI became involved in the investigation.  And, for what it is worth, the defense already knows when the FBI became involved, as the defense has received much discovery that shows not only when FBI agents in Santa Fe became involved in the investigation, but also when agents in Georgia became involved.  Regardless of when the FBI became involved in the investigation, it is difficult to imagine how the timing of federal involvement would ever lead to exculpatory evidence.

Finally, in attempting to support their supposed need to depose Sheriff Hogrefe, the defense misstates FBI Special Agent Travis Taylor's testimony from the September 2018 detention hearing.  Specifically, the defense unabashedly asserts that Special Agent Taylor testified "the FBI only became involved in the investigation on June 17, 2018 at the request of the Taos County Sheriff's Office." Doc. 465 at 3.  This is simply not true.  Rather, the question posed to Special Agent Taylor and his testimony were as follows:

> **Q:  And can you tell me how you became involved in the investigation that resulted in the Indictment against them?**

8

>A:  We were asked by Taos County Sheriffs for assistance in a case approximately June 17 (indiscernible, audio skips) asked for assistance because they believed that Siraj Wahhaj and (minor's name – [JOHN DOE]) were located on the property.

Doc. 465-1 at 2.  It strains credulity to read this question and answer and then conclude that Special Agent Taylor testified that the FBI's involvement in this case began in June 2018, that the entire FBI only became involved because of a request by the Taos County Sheriff's Office in June 2018, or that the testimony at the detention hearing somehow creates an exceptional circumstance warranting the Court to order that Sheriff Hogrefe be deposed.  Special Agent Taylor quite clearly was stating when he personally became involved in the investigation, not the entire FBI, which is consistent with the extensive discovery the defense has long possessed documenting the FBI's involvement in this case.

Given that Sheriff Hogrefe has now been explicitly advised that he may speak with the defense if he wishes to do so, the defense should approach him again.   If Sheriff Hogrefe again chooses to not speak with the defense, that is his right, and it in no way amounts to an exceptional circumstance that warrants him being deposed.

### III. CONCLUSION

The United States did not interfere with the defense's ability to interview Sheriff Hogrefe, as evidenced by the October 2019 email to Mr. Villa and the recent letter addressed to Sheriff Hogrefe, both of which undercut any implication that the United States acted improperly and "ordered" Sheriff Hogrefe to not speak with the defense.   There are no exceptional circumstances that justify compelling Sheriff Hogrefe to be deposed, and the Motion for Court-Ordered Deposition of Witness Due to Obstruction of Witness Communication by the United States (Doc. 465) should be denied.

                    Respectfully submitted,

                    ALEXANDER M. M. UBALLEZ
                    United States Attorney

                    */s/ Electronically filed*
                    KIMBERLY A. BRAWLEY and
                    TAVO HALL
                    Assistant U.S. Attorneys
                    P.O. Box 607
                    Albuquerque, New Mexico 87103
                    (505) 346-7274

I HEREBY CERTIFY that I filed the foregoing pleading electronically through the CM/ECF system, which caused counsel of record for defendant to be served by electronic means.

*/s/ Filed Electronically*
KIMBERLY A. BRAWLEY
Assistant U.S. Attorney