IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                            CR 18-2945 WJ

JANY LEVEILLE, et al.,

        Defendants.

## DEFENDANTS' MOTION TO DISMISS COUNTS ONE AND TWO AS UNCONSTITUTIONALLY VAGUE

Defendant Subhanah Wahhaj, by her undersigned counsel, joined by all Defendants, pursuant to the due process rights guaranteed by the Fifth Amendment to the United States' Constitution and the nondelegation doctrine rooted in the principal of separation of powers decreed by Article One, Section One of the Constitution, respectfully moves this Court to dismiss Count One - Conspiracy to Provide Material Support to Terrorists and Count Two - Providing Material Support to Terrorists, both alleged violations of 18 U.S.C. § 2339A, because Section 2339A is void due to unconstitutional vagueness.

The void-for-vagueness doctrine requires a statute to define a criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited. *Kolender v. Lawson,* 461 U.S. 352, 357 (1983); *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010); *United States v. Williams*, 553 U.S. 285, 304 (2008). Objections to vagueness under the Due Process Clause rest on the lack of notice. *Maynard v. Cartwright*, 486 U.S. 356, 361, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). A statute must create a clear standard and be written in a manner that does not encourage arbitrary and discriminatory enforcement. *Id.*

Section 2339A is fundamentally flawed and contravenes the "first essential of due process of law" because it fails to give people of "common intelligence" fair notice that one may be

punished as a terrorist if convicted of an ordinary crime under this statute. *Connally v. General Constr. Co.*, 269 U.S. 285, 391 (1926); see *Collins v. Kentucky,* 234 U.S. 634, 638 (1914). It also undermines the separation of powers demanded by the Constitution and the democratic self-governance it aims to protect because it hands responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of laws they are expected to abide by. *United States v. Hudson*, 7 Cranch 32, 34 (1812); See *Kolender v. Lawson*, 461 U.S. 352, 357-358, and n. 7 (1983); *United States v. L. Cohen Grocery Co.,* 255 U.S. 81, 89-91 (1921); *United States v. Reese*, 92 U.S. 214, 221 (1876).

## AUTHORITY & ARGUMENT

**I.     Section 2339A is unconstitutionally vague because it fails to require a finding of terrorism and is therefore insufficiently definite.**

Section 2339A is "invalid *in toto* —and therefore incapable of any valid application."  *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495, (1982), citing *Steffel v. Thompson*, 415 U.S. 452, 474, (1974). However, where no First Amendment interests are implicated, as is the case in this matter, vagueness challenges are examined on an "as applied" basis. *Chapman v. United States,* 500 U.S. 453 (1991) ("First Amendment freedoms are not infringed by [the statute at issue], so the vagueness claim must be evaluated as the statute is applied."); *Maynard v. Cartwright,* 486 U.S. 356, 361 (1988) ("Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis."); *United States v. Mazurie*, 419 U.S. 544, 550 (1975) ("[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.").  Therefore, despite his claim that Section 2339A is facially invalid and cannot be constitutionally applied, the Court must evaluate the statute as applied to this case.

In evaluating such a challenge, the Court considers whether Section 2339A is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971).  A statute cannot be constitutional when it "simply has *no* core." *Smith v. Goguen*, 415 U.S. 566, 578, (1974).  Section 2339A is a provision that has no core. It purports to prohibit providing material support to *terrorists*, but in application does no such thing.

The United States Code contains an entire chapter dedicated to laws designed to prevent and punish acts of terrorism. 18 U.S.C. 113B.  The offense of "Providing Material Support to Terrorists" falls within that chapter and is statutorily defined as follows:

> Whoever provides material support or resources or conceals or disguises the nature, location, source, or ownership of material support or resources, knowing or intending that they are to be used in preparation for, or in carrying out, a violation of section 32, 37, 81, 175, 229, 351, 831, 842(m) or (n), 844(f) or (i), 930(c), 956, 1091, 1114, 1116, 1203, 1361, 1362, 1363, 1366, 1751, 1992, 2155, 2156, 2280, 2281, 2332, 2332a, 2332b, 2332f, 2340A, or 2442 of this title, section 236 of the Atomic Energy Act of 1954 (42 U.S.C. 2284), section 46502 or 60123(b) of title 49, or any offense listed in section 2332b(g)(5)(B) (except for sections 2339A and 2339B) or in preparation for, or in carrying out, the concealment of an escape from the commission of any such violation, or attempts or conspires to do such an act, shall be fined under this title, imprisoned not more than 15 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life. A violation of this section may be prosecuted in any Federal judicial district in which the underlying offense was committed, or in any other Federal judicial district as provided by law.

18 U.S.C.A. § 2339A(a).  This law outlaws providing or concealing support only when defendant knows or intends the support to be used in preparation for, commission of, or the escape following the commission of, one or more predicate offenses. *Id.* The qualifying predicate offenses are identified in two ways: by enumerated list and by cross reference to federal crimes of terrorism.

18 U.S.C.A. § 2339A(a); 18 U.S.C. §2332b(g)(5)(A). Enumerated examples include: bombing a federal building or murdering a federal official in the performance of their duty, or as is relevant to the instant case, killing or attempting to kill an officer or employee of the United States while that person is engaged in official duties. *Id.*; 18 U.S.C. § 1114.

This predicate list of offenses, both those specifically enumerated by statute and those included by virtue of their status as federal crimes of terrorism, includes crimes that can be committed to serve terrorist purposes or committed for other reasons devoid of terroristic intent. For example, one could kill an FBI agent in order to prevent that agent from uncovering a terrorist organization's conspiracy to bomb a federal building to affect the conduct of the government. Or, one could kill an FBI agent because that agent cut the person off while driving a government vehicle. Either hypothetical crime would qualify as a predicate offense pursuant to 18 U.S.C. §2339A and §1114, but only the first scenario would qualify as a crime of terrorism. Accordingly, Section 2339A fails to comport with legislative intent because it does not require a showing that a defendant knew that a provision of support would benefit a crime of terrorism, or even that the provision of support did in fact support a crime of terrorism. The statute fails the define either the mens rea or the actus reus with sufficient definiteness to adequately put the public on notice of prohibited behavior.

From its earliest cases, the Supreme Court has followed the "whole act rule" in construing statutes. *E.g., United States v. Fisher,* 6 U.S. (2 Cranch) 358, 2 L.Ed. 304 (1805); *Priestman v. United States,* 4 U.S. (Dall.) 28, 29, 1 L.Ed. 727 (1800) (per curiam). This rule invites the court to consider the statute in its proper context by evaluating a larger statutory scheme. "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme— because the same terminology is used elsewhere in a context that makes its meaning clear, or

because only one of the permissible meanings produces a substantial effect that is compatible with the rest of the law." *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 371 (1988).

Reading the language of Section 2339A in isolation, thereby disregarding its title, the title of the chapter in falls under, Section 2339B, the definitions in Section 2331, the Sentencing Guidelines' Terrorist Enhancement, Congressional intent, legislative history, and judicial precedent renders Section 2339A incoherent.  Accordingly, it is appropriate to apply the whole act rule to the constitutional analysis of Section 2339A. Application of the whole act rule to Section 2339A clearly indicates that it should be used to punish crimes of terrorism, as will be developed below, but the law does not require such a finding.

### a.  Legislative history confirms that Section 2339A was designed to prevent terrorism.

Two material support statutes have laid the foundation for the Justice Department's efforts to prosecute suspected terrorism since their inception in the mid-1990's. CRS Report R41333, *Terrorist Material Support: An Overview of 18 U.S.C. §2339A and §2339B*, by Charles Doyle. The first statutory section, Section 2339A, was designed to outlaw the provision material support or concealing support "for the commission of crimes a terrorist has committed or may be planning to commit." *Id.* at page 2; 18 U.S.C. §2339A. The second section, Section 2339B, was created to prohibit the provision of material support to designated terrorist organizations generally—regardless of the way in which the organization intended to use the resources. 18 U.S.C. §2339B.

Section 2339A was initially passed, without much debate, as part of the wide-ranging crime package known as the Violent Crime Control and Law Enforcement Act of 1994.[1] P.L. 103-322,

---

[1] "The Violent Crime Control and Law Enforcement Act was a three hundred- and fifty-five-page amalgam of legislative proposals consisting of thirty-three separate titles which included Cop on the Beat grants, the Violence Against Women Act, revival of the death penalty as a federal sentencing alternative, a ban on

§120005, 108 Stat. 2022 (1994).  Two years later, Section 2339A was amended and Section 2339B

was enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter

AEDPA).[2] P.L. 104-132, §§323, 303, 110 Stat. 1255, 1250, respectively. Section 2339A was

expanded to include a wider range of qualifying predicate offenses, and the limitations originally

imposed upon investigations in the 1994 version of the law were repealed. *Id.*; H.Rept. 104-383,

81 (1995). Section 2339B was included in AEDPA in recognition of the "fungibility of financial

resources and other types of material support," and the concern that funding terrorist organizations,

even for seemingly legitimate purposes "helps defray the costs to the terrorist organization…[and]

frees an equal sum that can then be spent on terrorist activities."  H.Rept. 104-383, 81 (1995).  In

sum, Section 2339A was designed to prohibit the provision of material support to those who intend

to commit crimes of terrorism and Section 2339B was added to prevent the provision of material

support to known terrorist groups generally.

In 2001, the USA PATRIOT Act served to amend both statutory provisions by: 1)

increasing the maximum term of imprisonment from 10 to 15 years and to life imprisonment when

---

assault weapons, DNA identification, and crime victims' rights. Its various components had been the subject
of two dozen House committee reports, listed in 1994 U.S.C.C.A.N. 1801 (1994), none which appear to
have addressed § 2339A. The section, however, had been included in much the same language in separate
legislative proposals offered by members of both parties in both Houses, *see e.g.*, H.R. 1301, §110
(Representative Schumer); H.R. 2847, §702 (Representative Sensenbrenner); H.R. 2872, §421
(Representative McCullom); H.R. 1313 (Representative Brooks); S. 8, §702 (Senator Hatch); S. 1488, §726
(Senator Biden)."  CRS Report R41333, *Terrorist Material Support: An Overview of 18 U.S.C. §2339A
and §2339B*, by Charles Doyle, page 1.

[2] "Section 323 amended Section 2339A to enlarged its predicate offense list to include 18 U.S.C. §§37
(violence at international airports), 81 (arson), 175 (biological weapons), 831 (nuclear weapons), 842(m)
and (n) (plastic explosives), 1362 (destruction of communications facilities), 2155 and 2156 (destruction,
or defective production, of war materials), 2332 (terrorist violence against Americans overseas), 2332a
(weapons of mass destruction), and 2332b (multi-national terrorism). Later in the year, Congress added
three other crimes to § 2339A's predicate offense list: 18 U.S.C. §§ 930(c) (use of a firearm during a
murderous attack on a federal facility), 1992 (train wrecking), and 2332c (chemical weapons), P.L. 104-
294, §601(b)(2), (s)(2), (s)(3), 110 Stat. 3502, 3506 (1996)."  CRS Report R41333, *Terrorist Material
Support: An Overview of 18 U.S.C. §2339A and §2339B*, by Charles Doyle, page 1.

the commission of the offense resulted in death; 2) adding "expert advice or assistance" to forms of proscribed material support or resources; and 3) subjecting attempts and conspiracies to violate Section 2339A to the same maximum penalties as the substantive violation of the section. P.L. 107-56, §§810(c), (d), 811(d), 155 Stat. 380, 381 (2001).

In 2004, Congress expanded and clarified the definition of "material support or resources" as applicable to both Section 2339A and 2339B,[3] and expanded the enumerated predicate offense list to include any of the previously identified federal crimes of terrorism. Intelligence Reform and Terrorism Prevention Act of 2004, P.L. 108-458, §6603, 118 Stat. 3762 (2004); 18 U.S.C. 2339A(a).  In 2009, Congress added genocide and recruiting child soldiers to the predicate list of offenses for Section 2339A and adjusted certain deadlines for interlocutory appeal related to Section 2339B. P.L. 111-122, §3(d), 123 Stat. 3481-82 (2009), codified at 18 U.S.C. §2339A(a); P.L. 111-16, §§3(6), (3)7, 3(8), 123 Stat. 1608 (2009), codified at 18 U.S.C. §§2339B(f)(5)(B)(ii), (f)(5)(B)(iii)(I), (f)(5)(B)(iii)(III).  Finally, in 2015, the maximum penalties for violation of Section 2339B were increased to imprisonment for not more than twenty years. P.L. 114-23, tit. VI, §704, 129 Stat. 300 (2015).

More than twenty years of legislative history support the assertion that both Sections 2339A and 2339B were designed to combat terrorism.  This nation's government has exercised its powers to protect the world's citizens from the indescribable trauma true terrorism inflicts on communities. In so doing, the legislature has created an infrastructure designed to resolutely charge and punish those found guilty of committing such atrocious crimes in a manner commiserate with their terroristic intent. However, the plain language of Section 2339A is not in line with the legislature's intent in devising this system. Section 2339A was enacted to prevent the provision of

---

[3] This amendment was initially intended to be temporary but was made permanent in 2006 in the USA PATRIOT Act Improvement and Reauthorization Act. P.L. 109-177, §104, 120 Stat. 195 (2006).

material support to the commission of crimes of terrorism, but the causal connection between the crime and the terroristic intent is not establish by the language of the law.

     **b. Section 2339A's mens rea requirement fails to comport with legislative intent because it does not require proof that a defendant knew the support provided would further a crime of terrorism.**

In crafting Section 2339A, Congress supplied an explicit mens rea requirement, but the requirement as written fails to establish the connection to terrorism intended by the legislature. CRS Report R41333, *Terrorist Material Support: An Overview of 18 U.S.C. §2339A and §2339B*, by Charles Doyle, page 4, ¶ 2. Under the plain language of Section 2339A, providing support only violates the law if the support is given "knowing or intending" that it will be used to commit or prepare for the commission of a predicate offense. *Id.* As a general rule, a "knowing" mens rea standard requires the government to prove that the defendant has "knowledge of the facts that constituted the offense." *Dixon v. United States*, 548 U.S. 1, 5 (2006) (quoting *Bryan v. United States*, 524 U.S. 184, 193 (1998)).

Section 2339A has previously survived challenges arguing that it is unconstitutionally vague because it requires that the support be given while "knowing or intending that it will be used in preparation for or in the commission of a specific <u>terrorist</u> offense." CRS Report R41333, *Terrorist Material Support: An Overview of 18 U.S.C. §2339A and §2339B*, by Charles Doyle, page 6, ¶ 1 (emphasis added); referencing *United States v. Stewart*, 590 F.3d 93, 117 (2d Cir. 2009); *United States v. Abu Khatallah*, 151 F. Supp. 3d 116, 140 (D.D.C. 2015); *United States v. Amawi*, 545 F. Supp. 2d 681, 684 (N.D. Ohio 2008); *United States v. Abdi*, 498 F. Supp. 2d 1048, 1058 (S.D. Ohio 2007).[4]

---

[4] Each of these cases will be addressed in a later section.

Therein lies the exact problem addressed by this motion. The courts have intertwined: 1) the title of the statute, which includes the word "terrorists"; 2) the enumerated list of predicate qualifying offenses, most of which implicate terrorist activity, and 3) the inclusion of any Federal crime of terrorism as outlined in Section 2332b(g)(5)(B), to mean that a guilty party must have known or intended the support to be used in preparation for or in the commission of a "specific terrorist offense." *Id.* However, the elements of the statue itself do not require a factual finding that the predicate offense was in fact a terrorist offense. This failure renders the statue unconstitutionally vague.

In *Holder v. Humanitarian Law Project*, the plaintiffs sought to provide two groups, who had been designated as terrorist organizations, with material support or resources. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 7 (2010). The plaintiffs intended to facilitate only the lawful, non-violent purposes of those groups, but sought prior redress based upon concern that Section 2339B could be applied to prevent or subsequently punish their actions. *Id.* As is relevant to this motion,[5] the plaintiffs challenged Section 2339B's prohibition on providing four types of material support—"training," "expert advice or assistance," "service," and "personnel"—asserting violations of the Fifth Amendment's Due Process Clause on the ground that the statutory terms are impermissibly vague. *Id.* The Supreme Court ultimately held that Section 2339B of the material support statute was constitutional as applied to the plaintiffs' activities. *Id.* at 8. However, in so holding, the Court did not "address the resolution of more difficult cases that may arise under the statute in the future." *Id*.

Today, this Court faces one of those "more difficult cases." Defendants are not charged with a violation of Section 2339B, nor do they argue that specific terms included in Section 2339A

---

[5] The Plaintiffs also asserted violations of their constitutional rights to free speech and free association, but those issues are not raised in this motion and are therefore not relevant here.

are vague, but the court's analysis of that Section in *Holder* is useful to this Court's analysis of Section 2339A.  The court in *Holder* found that Congress clearly intended a violation of Section 2339B to be premised upon a defendant's "knowledge about the organization's connection to terrorism, not specific intent to further the organization's terrorist activities." *Id.* at 16 – 17.  The Court found this holding to be supported by the "sections immediately surrounding § 2339B, both of which *do refer to terrorist activity.*" *Id.* (emphasis added.)  The Court even references Section 2339A directly as a law "establishing criminal penalties for one who "provides material support or resources ... knowing or intending that they are to be used in preparation for, or in carrying out, a violation of" statutes *prohibiting violent terrorist acts.*" *Id.* at 17 (emphasis added).  Clearly the Court believed that Section 2339A prohibits violent terrorist acts, which is line with congressional intent and the title of the section; however, statutorily, Section 2339A fails to require the prohibited acts be acts of terrorism.

In *Holder*, the Court noted that past statutes tying "criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent'—wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings" had been struck down, but distinguished the terms at issue.  *Id.* at 20.  The terms the plaintiffs alleged to be vague did not require similarly untethered, subjective judgments. *Id.*  Defendants' case is much worse than the situation asserted in *Holder*, and even more disheartening than the cases in which vagueness had been found.  Here, Defendants do not face a term requiring an untethered, subjective judgment.  He faces no qualifying term at all.  Congress enacted Section 2339A to prohibit the provision of material support and resources to terrorists but did not require a finding of terrorism. This Court cannot determine whether the term "terrorist" is vague or requires a subjective interpretation because the term "terrorist" is only found in the title of the chapter, the section, and in Congressional intent. It

is not featured in the language of the statute. This glaring omission renders the statute impermissibly and unconstitutionally vague.

###### c. Section 2339B's mens rea requirement supports the assertion that Section 2339A's mens rea requirement fails to comport with legislative intent.

As noted above, Section 2339B creates the federal crime of "knowingly provid[ing] material support or resources to a foreign terrorist organization." 18 U.S.C. § 2339B. The statute has two knowledge elements. *United States v. Al Kassar*, 660 F.3d 108, 129 (2d Cir. 2011). First, the government must prove that the defendant knew he or she was providing something to an entity. 18 U.S.C. §2339B(a)(1); *Al Kassar*, 660 F.3d at 129. Second, it must show that the defendant knew the entity was a designated terrorist organization or that the entity engaged in acts of terrorism. *Id.*; *see also United States v. Omar*, 786 F.3d 1104, 1112 (8th Cir. 2015); *United States v. Mehanna*, 735 F.3d 32, 42 (1st Cir. 2013). The government does not have to demonstrate that the defendant "intended to further a foreign terrorist organization's illegal activities." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 16 (2010); *United States v. Mehanna*, 735 F.3d 32, 42 (1st Cir. 2013); *Al Kassar*, 660 F.3d at 129. The prohibition is based on a finding that the specified organizations "are so tainted by their criminal conduct that any contribution to such an organization facilitates that conduct." Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), § 301(a)(7), 110 Stat. 1247, note following 18 U.S.C. § 2339B (Findings and Purpose). *Holder v. Humanitarian Law Project*, 561 U.S. 1, 7 (2010). Essentially, the legislature has determined that any provision of support to a designated entity will inevitably support terrorism, whether the support was so allocated or not, because the use of resources for innocent purposes then frees other resources to be used with malintent.

The Secretary of State is authorized to designate an entity as a terrorist organization upon a finding that the organization is: 1) a foreign organization; 2) that "engages in terrorist activity or

terrorism, or retains the capacity and intent to engage in terrorist activity or terrorism"; and 3) "the terrorist activity or terrorism" of the entity "threatens the security of United States nationals or the national security of the United States." Immigration and Nationality Act, 8 U.S.C. § 219, § 1189. A designated organization may challenge the designation, the Secretary may sustain or revoke the designation, and the organization may appeal the Secretary's decision to the U.S. Court of Appeals for the District of Columbia.  8 U.S.C. § 1189(a)(4)(B); 8 U.S.C. § 1189(a)(6); 8 U.S.C. § 1189(c).

Terrorism, as applicable to Section 2339B, is defined as "premeditated, politically motivated violence perpetrated against noncombatant targets by subnational groups or clandestine agents."  CRS Report R41333, *Terrorist Material Support: An Overview of 18 U.S.C. §2339A and §2339B*, by Charles Doyle, page 18, ¶ 1. The term is defined by cross reference to Section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989. P.L. 100-204, 101 Stat. 1349 (1987), codified at 22 U.S.C. §2656(f)(d)(2).

In crafting and amending Section 2339B, Congress was careful to ensure that a violation would only be premised upon a finding that the defendant *knew* that the group being supported engaged in terrorism. The plain language of 2339B supports and comports with the broader legislative intent for Section 2339 as whole—preventing and prohibiting *known* terrorism. However, where the enactment of 2339B met that goal, the enactment of 2339A failed.

### d.  Statutory definitions support the assertion that Section 2339A fails to comport with legislative intent.

"The search for a definition for terrorism has aptly been compared to the quest for the Holy Grail by King Arthur's Knights of the Round Table, with "eager souls set[ting] out, full of purpose, energy and self-confidence, to succeed where so many others have failed." Nicholas J. Perry, *The Numerous Federal Legal Definitions of Terrorism: The Problem of too Many Grails*, 30 J. Legis.

249, 1 (2004). Federal law provides numerous, although fewer than 150, definitions of the term "terrorism." *Id.*

However, most relevant here, are the statutory definitions of international and domestic terrorism outlined in Section 2331 and the federal crime of terrorism. 18 U.S.C. § 2331(1) & (5). The term "international terrorism" means activities that:

> **(A)** involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;
> **(B)** appear to be intended to intimidate or coerce a civilian population; to influence the policy of a government by intimidation or coercion; or to affect the conduct of a government by mass destruction, assassination, or kidnapping; and
> **(C)** occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

18 U.S.C.A. § 2331(1).  Meanwhile, the term "domestic terrorism" means activities that:

> **(A)** involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State;
> **(B)** appear to be intended to intimidate or coerce a civilian population; to influence the policy of a government by intimidation or coercion; or to affect the conduct of a government by mass destruction, assassination, or kidnapping; and
> **(C)** occur primarily within the territorial jurisdiction of the United States.

18 U.S.C.A. § 2331(5).  Both definitions require the act to "appear to be intended to intimidate or coerce a civilian population; to influence the policy of a government by intimidation or coercion; or to affect the conduct of a government by mass destruction, assassination, or kidnapping."  This phrasing is the crux of the federal definition of terrorism. The standard "does not focus on the defendant but on his 'offense,' asking whether it was calculated, *i.e.*, planned –for whatever reason or motive –to achieve the stated object." *United States v. Mohamed*, 760 F.3d 757, 761 (8th Cir.

13

2014), quoting *United States v. Awan*, 607 F.3d 306, 317 (2d Cir. 2010). In summary, a federal crime of terrorism is one "calculated to influence or affect the conduct of [a] government by intimidation or coercion, or to retaliate against government conduct." CRS Report R41333, *Terrorist Material Support: An Overview of 18 U.S.C. §2339A and §2339B*, by Charles Doyle, pages 9-10.

Section 2339A, which is designed to prohibit the provision of support to terrorists, should incorporate these definitions.  However, the Section fails to require the prosecution to establish any connection between the criminal act and any intent to "influence or affect the conduct of [a] government by intimidation or coercion, or to retaliate against government conduct." *Id.* Accordingly, Section 2339A fails to provide sufficient notice of prohibited activity, rendering it unconstitutionally vague.

e.   **The Sentencing Guidelines' Terrorist Enhancement supports the assertion that Section 2339A fails to comport with legislative intent.**

The Sentencing Guidelines treat Section 2339A convictions "as if they were convictions for aiding and abetting and for being an accessory after the fact," and set the Guideline range using that of the predicate offense.  CRS Report R41333, *Terrorist Material Support: An Overview of 18 U.S.C. § 2339A and § 2339B*, by Charles Doyle, page 9, ¶ 2; U.S.G. §§ 2X2.1, 3X3.1. This is appropriate because Section 2339A is essentially an aiding and abetting statute. Section 2339A punishes aiding and abetting specified predicate offenses, which violations are treated no differently than a direct violation of the predicate statute.

The Guidelines feature a terrorism adjustment that can raise the sentencing level for an offense that "involved or was intended to promote a federal crime of terrorism." U.S.G. § 3A1.4(a). A felony offense that involved or was intended to promote a federal crime of terrorism results in a 12-level increase, or an increase to level 32 where the resulting offense level would have otherwise

been less than level 32. *Id.* In each such case, the defendant's criminal history category from Chapter Four shall be Category VI. U.S.G. §3A1.4(b). According to the Second Circuit, "the Sentencing Commission had a rational basis for creating a uniform criminal history category for all terrorists under [U.S.S.G.] § 3A1.4(b), because even terrorists with no prior criminal behavior are unique among criminals in the likelihood of recidivism, the difficulty of rehabilitation, and the need for incapacitation." *United States v. Meskini,* 319 F.3d 88, 92 (2d Cir.), *cert. denied,* 538 U.S. 1068, 123 S.Ct. 2240, 155 L.Ed.2d 1125 (2003). This guideline would be in line with the legislative intent to enhance punishment for crimes of terrorism, if it were only applied where a finding of terrorism was shown. However, that is not the case.

For the purposes of this guideline, a "federal crime of terrorism" is defined as an offense that "is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct, and is a violation of certain offenses enumerated in 18 U.S.C. §2332(g)(5)(B)." U.S.G. § 3A1.4, application note 1, citing to 18 U.S.C. § 2332(g)(5). Application note two states that an offense that involved harboring or concealing a terrorist who committed a federal crime of terrorism, such as an offense under 18 U.S.C. § 2339A, shall be considered to have involved, or to have been intended to promote, that federal crime of terrorism. *Id.* at application note 2. Clearly, this enhancement is premised on the assumption that violations of Section 2339A constitute federal crimes of terrorism, and that a conviction under that section is premised upon involvement or promotion of terrorism. While this would be a reasonable assumption if it was based only upon the title of the crime, the plain language of Section 2339A requires no finding of, or even direct link to, terrorism.

There is a separate guideline relevant to cases in which the victim is a government officer or employee and the offense was motivated by that status, but the crime itself was not motivated

15

by terrorism. U.S.G. §3A.2(a).  Application of this guideline results in a three-level increase, which is much less significant than the 12-level increase described above. This lesser increase is reasonable considering legislative intent to stringently punish terrorism. However, the application of Section 2339A flies in the face of the intended structure.

In further support of the clear legislative intent to enhance punishment for those engaging in terrorism, Congress decided that a defendant convicted of a violation of a federal crime of terrorism may be subject to a life-time term of supervised release, rather than the general five-year maximum term. 18 U.S.C. § 3583(j), (b).  This enhanced punishment may not be unreasonable for those truly convicted of crimes of terrorism, but application of this statute to those convicted of crimes that do not rise to the level of terrorism, as is likely under Section 2339A, violates legislative intent and due process principles. The legislature clearly intended Section 2339A to prohibit the provision of material support in furtherance of crimes of terrorism. However, the statute as written does not require proof that an individual knew that they were providing support to a crime of terrorism, or even that they did in fact provide support to a crime of terrorism. Accordingly, the statute is void for vagueness.

## II.     Section 2339A is void for vagueness because it invites arbitrary and overreaching enforcement.

In addition to being insufficiently definite with respect to what constitutes terrorism, Section 2339A also violates the constitutional protection of the separation of powers because it grants too much enforcement discretion to the prosecution team.  Absent the inclusion of a clear terrorism element, Section 2339A could be applied to a host of garden variety criminal offenses not rising to the level of terrorism.  For example, one who provides material support in furtherance of the federal crime of arson could be charged under Section 2339A, despite harboring no intent to commit an act of terrorism.

The courts have recognized recently that the more important aspect of vagueness doctrine "is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983), citing *Smith v. Goguen*, 415 U.S. 566, 574 (197). Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." *Id.* at 575. This requirement renders unconstitutional laws that provide no standard for evaluating whether a suspect has violated the statute in question, leaving "full discretion" in the hands of law enforcement to determine whether a violation has occurred. *See Kolender*, 461 U.S. at 358–59.

Section 2339A, as presently enacted and construed by the courts, contains no standard for determining whether a defendant has provided material support or resources with the intent to further a crime of terrorism. The statute vests virtually complete discretion in the hands of the police or the government to determine whether the suspect should be charged as a terrorist or ordinary criminal. It does not satisfy the constitutional requirement of establishing minimal guidelines to direct law enforcement and should therefore be deemed unconstitutional.

In recent years the application of the constitutional principles described herein has resulted in invalidation of several previously accepted statutes. For example, the United States Supreme Court recently decided in *Davis* that Section 924(c)(3)(B) is unconstitutionally vague. *United States v. Davis*, 139 S. Ct. 2319 (2019). In so deciding, Justice Gorsuch opined that:

> In our constitutional order, a vague law is no law at all. Only the people's elected representatives in Congress have the power to write new federal criminal laws. And when Congress exercises that power, it has to write statutes that give ordinary people fair warning about what the law demands of them. Vague laws transgress both of those constitutional requirements. They hand off the legislature's responsibility for defining criminal behavior to unelected prosecutors and judges, and they leave people with no sure way to

know what consequences will attach to their conduct. When Congress passes a vague law, the role of the courts under our Constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite Congress to try again.

*Id.* at 2323.  Defendants ask this Court to apply the principles venerated in *Davis* to 18 U.S.C. 2339A—a statute that threatens long prison sentences for anyone who provides material support or resources in furtherance or certain crimes based upon an *assumption* that those predicate crimes constitute terrorism. *Id.*  The language of the statute itself provides no reliable way to determine whether the material support is provided in furtherance of an act of terrorism. Thus, the prosecution is left to act in place of the legislature.

In the instant case, Defendants are accused of "Providing material support to terrorists" by providing material support or resources knowing or intending that they be used in preparation for or in carrying out the killing or attempted killing of a government official in the course of or because of official duties. Superseding Indictment [Doc. 85]. While the title of Section 2339A uses the word "terrorists," in application, no fact finder would have to find that Defendants intended their support to be used for terrorism, or more specifically, to kill an official in order to intimidate or coerce a civilian population, influence the policy of a government by intimidation or coercion, or affect the conduct of a government by mass destruction, assassination, or kidnapping. Under the current law, a fact finder could convict Defendants of Providing Material Support to Terrorists by finding that they provided material support in furtherance of an attempt to kill a government official, without ever finding that the attempt at killing was committed as an act of terrorism.

It would not be difficult to ask a jury to make an additional finding about whether the defendant intended the provision of material support to further a predicate crime based upon an objective rooted in terrorism; however, as it stands that step is not required by the law as written. *United States v. Davis*, 139 S. Ct. 2319, 2327 (2019)  But all this tells us is that it might have been

a good idea for Congress to have written that requirement into the law itself. *Id.* This failing contravenes the statutory intention of the law. After all, "[i]n all but the most unusual situations, a single use of the statutory phrase must have a fixed meaning." *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S.Ct. 1507, 1512 (2019). Usually when statutory language "is obviously transplanted from…other legislation," we have reason to think "it brings the old soil with it." *United States v. Davis*, 139 S. Ct. 2319, 2331 (2019), citing *Sekhar v. United States*, 570 U.S. 729, 733 (2013). Section 2339A was included in the "Terrorism" chapter of the criminal code, and the title of Section 2339A is "Providing Material Support for Terrorists." It therefore stands to reason that Congress intended the law to prevent individuals from providing material support to *terrorists*. Unfortunately, the law as drafted does no such thing. As it stands, the statute cannot accomplish the congressional intent to prevent and punish crimes of terrorism because it encompasses crimes committed for reasons not based in terrorism.

"Respect for due process and the separation of powers suggests that a court may not, in order to save Congress the trouble of having to write a new law, construe a criminal statute to penalize conduct it does not clearly proscribe." *United States v. Davis*, 139 S. Ct. 2319, 2333 (2019). Employing a reading contrary to Defendants arguments here would also "sit uneasily with the rule of lenity's teaching that ambiguities about the breadth of a criminal statute should be resolved in the defendant's favor." *Id*. That rule is perhaps not much less old than the task of statutory construction itself. *Id.* (internal quotations and punctuation omitted), citing *United States v. Wiltberger*, 5 Wheat. 76, 95 (1820) (Marshall, C. J.). Much like the vagueness doctrine, it is founded on the "tenderness of the law for the rights of individuals to fair notice of the law and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department." *Id.*; *see United States v. Lanier*, 520 U.S. 259, 256-266, n.5 (2018).

In prosecuting acts under Section 2339A, the government seems willing to consign numerous defendants to prison for significant sentences, not based upon valid findings of terrorist acts or support of terrorist acts but based upon the tenuous belief that these defendants might have been or could have been engaged in terrorist acts. In this republic, a speculative possibility that a person's conduct violated the law should never be enough to justify taking his liberty. *United States v. Davis*, 139 S. Ct. 2319, 2335 (2019).

### III.   Sound judicial reasoning supports the conclusion that Section 2339A is unconstitutionally vague.

Past courts have considered constitutional challenges to Sections 2339A and 2339B, and in so doing have both upheld and ruled against varying issues. Those cases address issues distinct from those raised herein or are otherwise distinguishable. Nonetheless, the reasoning applied in those cases may provide useful guidance to the Court in this case.

In 2009, the Second Circuit faced a constitutional challenge to Section 2339A as void for vagueness. *United States v. Stewart*, 590 F.3d 93 (2009). Although the court ultimately found that Section 2339A was constitutional as applied to the defendants' actions, the argument addressed by that court is drastically different than the one posed by Defendants herein. The defendants in *Stewart* argued that the statute was unconstitutionally vague as applied to them because: 1) it did not require both knowledge and intent and 2) that the term "personnel" was impermissibly vague. Defendants do not assert either of these settled arguments.[6] Nonetheless, the court's analysis is helpful to the argument here.

First, the court in *Stewart* provides the "full text" of Section 2339A as follows:

> Whoever, within the United States, provides material support or
> resources or conceals or disguises the nature, location, source, or

---

[6] As point of clarification, Defendants do not argue that the statute should require both "knowing" and "intending." They argue that the statute should require that they intended for their support to be used in furtherance of a crime of terrorism, not just a crime.

> ownership of material support or resources, knowing or intending that they are to be used in preparation for, or in carrying out, a violation of [*various enumerated statutes related to terrorism*] or in preparation for, or in carrying out, the concealment of an escape from the commission of any such violation, or attempts or conspires to do such an act, shall be [subject to criminal punishment].

*Id.* at 113 (emphasis added).  Later, the court defines Section 2339A as "criminaliz[ing] the provision of material support or resources "knowing or intending" that they are to be used to assist in certain enumerated crimes of terrorism." *Id.* at 116. In so describing the statute, the court is importing the title of the chapter and the section into the body of the text even though it cannot be found there when quoted verbatim. Again, this interpretation is in line with Congressional intent, but does not accurately represent the true language and elementary requirements of the law itself.

The court in *Stewart* utilized the above-described interpretation of Section 2339A to determine whether the statute was unconstitutionally vague as applied to the defendants and found that the section's "knowledge-or-intent formulation" saved the statute from being unconstitutionally vague. *Id.* at 117.  The court reasoned that the charge required the jury to find that the defendants knew or intended the criminal uses to which the conspiracy would put the material support they provided, thereby eliminating concerns about inadequate notice.  *Id.*  In other words, if the defendants knew "that their actions provided material support to a conspiracy to end the cease-fire and *thereby unloose deadly acts of terrorism*"… "then they were on notice that what they were doing was prohibited by a statute that criminalizes the provision of material support knowing or intending that such support is to be used in preparation for, or in carrying out criminal actions."  *Id.* at 117-118 (internal quotations omitted).  The court's articulation of its reasoning clearly demonstrates a belief that a violation of Section 2339A should be premised upon the defendant's knowledge or intention that the material support provided be used to support an act of

terrorism. This reasoning is not supported by the language of Section 2339A and that is the crux of Defendans' argument that Section 2339A is unconstitutionally vague.

In *Stewart*, the court noted that "the heightened scienter requirement in section 2339A constrains prosecutorial discretion and ameliorates concerns of arbitrary and discriminatory enforcement." *Id.* at 118. While it may be true that similar scienter requirements have saved other statutes from void-for-vagueness challenges, it does not save Section 2339A in this case.  It is unreasonable to allow one to be convicted of providing material support to terrorists without requiring proof of either knowledge or intent to providing material support to *terrorists*, but Section 2339A contains no such requirement or fails to put the public on notice thereof.  It seems obvious that if there is no evidence that the defendant "sought to influence or affect the conduct of the government," the crime is not a federal crime of terrorism. *Id.* at 137; *See United States v. Leahy,* 169 F.3d 433, 446 (7th Cir.1999).  However, Section 2339A is clearly a crime of terrorism that requires no such finding.

In *United States v. Amawi*, the defendants argued that the terms "training," "expert advice or assistance," and "service," as used in Section 2339A were impermissibly vague.  *United States v. Amawi*, 545 F.Supp.2d 681 (N.D. Ohio 2008).  Although those same terms have been found to be unconstitutionally vague as applied to Section 2339B,[7] the court in *Amawi*, rejected the argument as applied to Section 2339A because Section 2339A, unlike Section 2339B, "requires that whoever provides the prohibited training, service and/or expert advice and assistance must do

---

[7] *Humanitarian Law Project v. Mukasey*, 509 F.3d 122 (9th Cir. 2007); *Humanitarian Law Project v. Reno,* 9 F.Supp.2d 1176 (C.D.Cal.1998), *aff'd,* 205 F.3d 1130 (9th Cir.2000), *on subsequent appeal sub nom. Humanitarian Law Project v. U.S. Dept. of Justice,* 352 F.3d 382 (9th Cir.2003), *reh. en banc granted,* 382 F.3d 1154 (9th Cir.2004), *judgment vacated,* 393 F.3d 902 (9th Cir.2004), *on remand sub nom. Humanitarian Law Project v. Gonzales,* 380 F.Supp.2d 1134 (C.D.Cal.2005), *aff'd sub nom. Humanitarian Law Project v. Mukasey,* 509 F.3d 1122 (9th Cir.2007) [*HLP III* ].

so "knowing and intending that they are to be used in preparation for, or in carrying out, a violation" of one of statute's enumerated criminal offenses." *Id.* at 684. *Id.* at 683.  Defendants do not argue that the specific terms used to describe the material support allegedly provided in this case are unconstitutionally vague, as the defendant's in *Amawi* did.  Thus, his case is definitively distinguishable.

There is one case, *Abu Khatallah*, in which a court considered constitutional challenges to Section 2339A that are similar to those raised here. The court in that case ruled against the defendant; however, the non-binding opinion is inconsistent with constitutional principles embraced by the courts and should be abrogated. *United States v. Abu Khatallah*, 151 F. Supp. 3d 116, 141 (D.D.C. 2015).

The defendant in *Abu Khatallah* was charged, *inter alia*, with providing and conspiring to provide material support to terrorists, resulting in death, contrary to 18 U.S.C. § 2339A. United *States v. Abu Khatallah*, 151 F.Supp.3d 116, 122 (D.D.C. 2015).  As is relevant here, the defendant challenged those two counts on the ground that Section 2339A is unconstitutionally vague. *Id.*  He claimed that the statute, which falls under the heading "Providing material support to terrorists," should punish only terrorist activity, but provides no clear notice of when one's conduct constitutes terrorism and allows for arbitrary and capricious enforcement rendering it unconstitutionally vague under the Due Process Clause of the Fifth Amendment. *Id.* at 138. The government countered that it is irrelevant whether it alleged that the defendant's actions supported terrorism or whether the material-support statute defines the term "terrorism" because "[t]here is no statutory requirement that [one's] actions 'qualify as terrorism'" to be guilty under § 2339A." *Id.* at 138 – 139. Instead, the statute criminalizes providing "material support" with the knowledge or intent that such support will be used in preparation for, or in carrying out, a set of enumerated criminal offenses

that may or may not involve terrorist activity. *Id.* The court ultimately found in favor of the government and held that, even though the "material-support statute may have been designed to punish activity connected to terrorism, an association with terrorism is not an element of the crime defined by § 2339A." *Id.* Accordingly, "criminal liability under Section 2339A attaches regardless of any linkage to terrorism," and the "statute need not provide any notice of what constitutes "terrorism" to survive a void-for-vagueness challenge under the Due Process Clause." *Id.* at 139.

Defendants suggest that this Court to disregard the non-binding opinion issued in *Abu Khatallah* because the case is factually distinguishable, and the opinion contradicts sound policy. The facts in *Abu Khatallah* are distinguishable from the facts, as Defendants know them, in this case.[8]  Abu Khatallah was charged in an eighteen-count indictment which resulted from the government's belief that Abu Khatallah orchestrated and participated in the attacks that occurred at a U.S. diplomatic compound in Benghazi, Libya and resulted in the deaths of four Americans, including United States Ambassador to Libya J. Christopher Stevens. *Id.* at 120, 122.  The evidence in the case against Abu Khatallah was copious and acts of terrorism were directly implicated. Defendants are disparately situated.

They are charged in a seven-count Superseding Indictment with charges arising from the Defendants alleged relocating from Georgia to Amalia, New Mexico because they allegedly believed the end of days was coming and Jesus Christ was going to be resurrected.  Defendants understand and acknowledge that the charges pressed against him are serious, and in no way intends to diminish the concern with which they must be addressed by this Court despite the presumption of innocence. Nonetheless, the allegations against them are significantly less serious

---

[8] As will be addressed in a separate pleading, the starkly limited Superseding Indictment and discovery produced render the Defense unable to address the full nature of the Government's allegation in this matter.  Should additional facts become known in the course of litigation, Defense reserves the right to supplement briefing on this issue.

than those pressed against Abu Khatallah. *Abu Khatallah*, 151 F.Supp.3d, 122. In addition, the factual basis justifying Abu Khatallah's charges directly implicated crimes or terrorism in ways not found in the present case. As such, Mr. Morton's case is factually distinguishable from *Abu Khatallah.*

More importantly, the reasoning set forth in *Abu Khatallah* in inconsistent with the principles expressed by the Supreme Court in *Davis* and embraced by this Court's historical jurisprudence.  In *Davis*, the Supreme Court found that it is inappropriate and inconsistent with decades of jurisprudence to tip the scales of justice in favor of the government when faced with a statue that is vague; yet, the court in *Abu Khatallah* did just that. *United States v. Davis*, 139 S. Ct. 2319 (2019). In deciding *Abu Khatallah*, the district court noted that the title of Section 2339A did point to an intent to limit terrorism, and agreed that "statutory titles and section headings are tools available for the resolution of a doubt about the meaning of a statute," *Id.* at 139, citing *Fla. Dep't of Rev. v. Piccadilly Cafeterias, Inc.,* 554 U.S. 33, 47 (2008).  Nonetheless, the court decided that the text of the statute was clear and did not require a defendant's actions be connected to terrorism. *Id.*  Defendants agree that the statutory language of Section 2339A does not currently require a finding of terrorism, but that is exactly the problem with the statute as enacted.  The title of the section and the title of the chapter are not consistent with the language of the law itself.  This inconsistency cannot be ignored as inconsequential without violating the basic tenants fervently expressed by the Supreme Court in *Davis*.

In *Abu Khatallah* the court went on to consider the defendant's argument that "the statute's passage as an anti-terrorism measure demonstrates that some connection to terrorism is required for criminal liability to attach under § 2339A." *Id.* Unfortunately, the court accepted the government's rather weak contention that, although "Congress passed § 2339A primarily to

combat terrorism—and that it did so by imposing additional punishment on persons who provide material support to those who commit violent federal offenses of a kind that terrorists commit," "[t]he mere fact that Congress may have enacted § 2339A with terrorism in mind does not require prosecutors to prove that a person charged under that statute actually engaged in (or conspired to engage in) terrorism." *Id.* at 140 (internal quotations omitted).  This blatant disregard for fairness, due process, and—most concerningly—Congressional intent, stands in stark contrast to the tenants this Country was founded upon.  In offends logic to say that a court may arbitrarily disregard clear Congressional intent and simply shrug its shoulders at what is clearly a missing element.

The court in *Abu Khatallah* took this alarming reasoning one step further when addressing statutory enforcement of Section 2339A.  The court stated that, "[a]lthough the Government may have consistently used § 2339A to prosecute those that it alleges have provided "support to terrorists," apparently no court has ever required the Government to prove a specific connection to terrorism as an element of that crime." *Id.* at 140.  The court went on to say that, "[i]f the Government was required to prove that a defendant's actions constituted "terrorism" in order to secure a conviction under § 2339A, it is quite odd that in so many cases no court has ever addressed the failure of § 2339A to define terrorism." *Id.* (internal quotations omitted). Then the court declared that "[t]he explanation, however, is straightforward: Conviction under § 2339A does not require proof of terrorist conduct," and so denied the void-for-vagueness challenge. *Id.* This conclusion is appalling. It is not American to decide that a practice is acceptable, and even constitutional, merely because it has been done for decades and no one has objected before. The argument that this has been done before without objection is not persuasive. The Supreme Court did not find that argument persuasive in *Davis*, and this Court should find no differently here.

*United States v. Davis*, 139 S. Ct. 2319, 2333 (2019). The Court should reject this backwards notion and right the injustice imposed in *Abu Khatallah*.

It is infinitely more reasonable and more in line with decades of jurisprudence, to understand that where the title of a chapter of the criminal code points to terrorism, where the title of a section of the code points to terrorism, where Congressional intent points to terrorism, and where statutory enforcement points to terrorism, then the language of the statue itself must necessarily require a finding of terrorism. That statutory element is currently missing and that presents an unavoidable constitutional issue that can only be remedied by partial dismissal based upon a finding of void-for-vagueness.

## CONCLUSION

Section 2339A fails to provide a person of ordinary intelligence fair notice of what is prohibited and is so standardless that it authorizes and encourages seriously discriminatory enforcement.  Under the current law, a fact finder could convict a person of Providing Material Support to Terrorists by finding that material support was provided in furtherance of one of the predicate crimes, without ever finding that the crime was committed as an act of terrorism. A constitutional statute must be grounded in congressional purpose not prosecutorial discretion.  No person in Defendants' position could have understood what conduct was prohibited under Section 2339A.  In view of this deficiency, justice, due process, and the separation of powers require the dismissal of Counts One and Two.

Respectfully submitted,

/s/ *Ryan J. Villa*
Ryan J. Villa
The Law Office of Ryan J. Villa
5501 Eagle Rock Ave NW Ste. C2
Albuquerque, NM 87113
(505) 639-5709

27

ryan@rjvlawfirm.com

*/s/ Justine Fox-Young*
Justine Fox-Young
5501 Eagle Rock Ave NE Ste C2
Albuquerque, NM 87113
(505) 796-8268
justine@foxyounglaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2022, a copy of the foregoing document was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/Ryan J. Villa*
RYAN J. VILLA