**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**vs.**                                                                                    **CR 18-2945 WJ**

**JANY LEVEILLE, et al.,**

        **Defendants.**

**DEFENDANTS' REPLY TO GOVERNMENT'S MOTION IN OPPOSITION TO**
**EXCLUDE GOVERNMENT EXPERT WITNESS TESTIMONY**

Defendant Subhanah Wahhaj, by counsel Ryan J. Villa and Justine Fox-Young, joined by all Defendants through their counsel, respectfully replies to the United States' Motion in Opposition to Exclude Government Expert Witness Testimony [Doc. 494]. Despite the government's incendiary arguments, the government fails to demonstrate that Dr. Phillips' testimony regarding the cause of death of A.G. satisfies the standards set by Fed. R. Evid. 702, *Daubert v. Merrell Dow Pharmaceuticals*, Inc., 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Therefore, this Court must prohibit Dr. Phillips from testifying on this subject. Defendants do not seek to exclude all of Dr. Phillips' testimony with this Motion. As the Motion plainly states, Defendants seek to exclude testimony about the cause of A.G.'s death. If relevant,[1] Dr. Phillips can certainly provide other expert testimony to educate the jury about A.G.'s neurological conditions and the treatment required for those conditions.

The premise upon which the government's entire Response mistakenly relies is that "Defendants specifically move to exclude *in its entirety* the testimony of Dr. John Phillips." Doc

---

[1] Defendants do not concede this information is relevant, only that it is not subject of the instant challenge under Fed. R. Evid. 702. Defendants will comply with the Court's motions in limine deadline to raise any relevancy or other challenges to Dr. Phillips' testimony that do not implicate Rule 702.

494. at 1 (emphasis added). The government litters these erroneous claims throughout its Response despite Defendants simply and specifically requesting this Court "to exclude the government's expert witness, Dr. John Phillips, from testifying *regarding the cause of death* of A.G. Wahhaj." Doc 467 at 1 (emphasis added). Although Defendants clearly established their position that "[w]hile Dr. Phillips may have adequate qualifications to testify regarding A.G.'s medical conditions prior to his death, he cannot speculate about the cause of the child's death," *id*. at 2, the government attempts to mislead this Court by alleging unreasonableness that simply does not exist. Ironically, the government erects its own straw man, that Defendants are arguing something they are not, in trying to persuade this Court that Defendants' arguments are based on a straw man argument.

The government argues that because Dr. Phillips does not conclude with absolute certainty on A.G.'s cause of death (which no one in this case, not even the OMI, can be certain), he does not make cause of death conclusions at all. However, the government ignores the fact that Dr. Phillips does indeed conclude that A.G. "likely died during one of the many prayer rituals he was subjected to." **Exhibit 1** at 8. Dr. Phillips bases this unsupported and speculative conclusion solely on the transcripts of witness interviews, and Ms. Leveille's journal, rather than medical-pathological data or science. With no data or science to support his conclusion, Dr. Phillips simply adds more speculation to the world of possibilities of A.G.'s cause of death, rather than using his expertise to narrow it down to certainty for a jury. The pathologist at the OMI, who is tasked with making and holds the experience necessary to make a cause of death determination, found no evidence to support Dr. Phillips' guesses of death by seizure or restricted airway during a prayer ritual, and therefore ruled the cause of death undetermined. As such, Dr. Phillips, who may be specialized in neurology but not pathology, lacks the qualifications needed to adequately

determine the cause of death of A.G. and his opinions in this area do not meet the standard of "specialized knowledge" articulated in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

The government claims that the importance of Dr. Phillips' testimony lies within an element that the government must prove: that A.G.'s death "resulted from" his alleged kidnapping. However, any layman could speculate that A.G. died during a prayer ritual if they were handed transcripts from witnesses and reviewed Ms. Leveille's journal that say so and were told so by state agents. "An expert must do more than simply constructing a factual narrative based upon record evidence or 'address[ ] 'lay matters which a jury is capable of understanding and deciding without the expert's help.'" *Wells v. Allergan*, Inc., No. CIV-12-973- C, 2013 WL 7208221, at *2 (W.D. Okla. Feb. 4, 2013) (internal quotations and citation omitted). The value that an expert witness brings to a trial is the ability to testify with specialized knowledge and come to conclusions regarding complicated topics that a jury might not be able to understand on their own. Assuming it is relevant and does not violate Rule 403, while Dr. Phillips is qualified to and may testify about A.G.'s medical conditions, his medical history, the medications he was taking, and the risks that come with not taking those medications, he cannot speculate as to how he died. He cannot simply endorse the witness testimony, and especially out of court statements that are hearsay, or the government's version of that hearsay, and Ms. Leveille's journal, written when she was experiencing auditory and visual hallucinations caused by schizophrenia.

This would simply be parroting the government's case, which is not the appropriate subject of expert testimony. *See United States v. Garcia*, 793 F.3d 1194, 1213–14 (10th Cir. 2015). "When an expert's bailiwick is only 'internal expertise' of the investigation at hand and the expert does no more than 'disgorge ... factual knowledge to the jury,' the expert is 'no longer aiding the jury in its factfinding [but is] instructing the jury on the existence of the facts needed to satisfy the

elements of the charged offense.'" *Garcia*, 793 F.3d at 1213 (quoting *United States v. Mejia*, 545 F.3d 179, 190 (2d Cir. 2008)). As proposed by the government in its Response, Dr. Phillips would be no different than any other witness who parrots hearsay, and as indicated in *Garcia*, this could violate the Confrontation Clause, 793 F.3d at 1214, but also this testimony simply does not assist the trier of fact as contemplated by Rule 702. With respect to the time, manner, and cause of A.G.'s death, Dr. Phillips' testimony is no more than just repeating what other evidence may be presented. It has no basis in science and should therefore be prohibited.

First, the only evidence of *when* A.G. died comes from witness statements and Ms. Leveille's journal, both of which are suspect in their credibility and accuracy and contradicted by other evidence. Notably, there is lay witness evidence from neighbors near the property that A.G. was alive well past December. The pathologist who conducted the autopsy could not determine a postmortem interval (PMI), or time of death, due to the decomposed state of the body. *See* **Exhibit 3**, Trans. of Dr. Kastenbaum Interview, 18:24 – 19:15.  Indeed, when Dr. Kastenbaum was asked if she was provided information from investigators or witness statements about the time of death if she could then make a determination, and she stated: "So I can review and consider information like that, but it's not going to be a medical or pathologic assessment…I can try and see if the two fit, what the investigation turns up, and what the body looked like, but I don't know that I can [do] so with any degree of certainy." *Id.* at 20:16 – 21:5. Because PMI cannot be established scientifically, and there is evidence that undermines the statements the government relies on for the time of death, it is inappropriate for Dr. Phillips to provide expert testimony regarding when A.G. died. Just like cause of death cannot be medically or scientifically determined, neither can time of death, and thus these determinations must be left for the jury to hear all of the lay evidence and come to its own conclusion.

4

Opining about *how* A.G. died, if he did in fact die when the government claims, is equally fraught with conjecture and speculation. In fact, even Dr. Phillips notes the unreliability of the interviews with the children, writing, "[t]he actual death is not well described; the interviewee describes a prayer ritual that he heard but didn't see..." **Ex. 1** at 5. Dr. Phillips' opinion will not assist the trier of fact in their search for truth as it "represents an 'unfounded extrapolation' from the data," in contravention of Rule 702(b). *United States v. Medina-Copete*, 757 F.3d 1092, 1103 (10th Cir. 2014) (quoting Fed.R.Evid. 702(b) & (c)). The government claims that "[w]hether any of the potential causes discussed by Dr. Phillips was in fact the cause of death, or whether the Defendants brought about a specific, conclusive cause of death, is not part of Dr. Phillips's expert opinions." Doc. 494 at 7. The government cannot have it both ways. Dr. Phillips' testimony cannot be used to "prove beyond a reasonable doubt only that the Defendants' kidnapping of JOHN DOE "resulted in" his death," without maintaining some causal chain between Defendant's actions and A.G.'s death. *Id*. Because Dr. Phillip's speculations about the accuracy of witness statements and journals do not contribute to proving beyond a reasonable doubt that the actions of Defendants resulted in the death of A.G., he should be prohibited from testifying on that subject.

Despite the government noticing Dr. Phillips as testifying to cause of death [Doc. 267 at ¶ 5], it states that "the Court could grant the Defense's motion insofar as restricting Dr. Phillips from concluding that a certain event or condition was in fact the cause of [A.G.'s death], and it would not change Dr. Phillips's report, his expert opinion, or his expected testimony in any way." Doc. 494 at 7. With the Government attempting to limit Dr. Phillips' testimony to show causation between the alleged kidnapping and A.G.'s death, lacking a cause of death determination would likely render Dr. Phillips' testimony useless and unfairly prejudicial. If he can only guess at the cause of death, then it is pure speculation to testify to a causal connection between A.G.'s alleged

kidnapping and his death. Moreover, this question should be left for the jury. If the jury determines A.G. was kidnapped by his own father—a legal impossibility under federal law—then without pathological information as to how A.G. died, the jury should determine if that kidnapping resulted in A.G.'s death and Dr. Phillips speculative testimony will not assist in this endeavor.

The government alleges that Dr. Phillips' report is not in conflict with the OMI report despite the fact that Dr. Phillips' speculations have no scientific foundation. While the OMI report listed possibilities of A.G.'s cause of death, including "*but not limited to,* infection, dehydration, starvation, JOHN DOE's underlying seizure disorder, and/or toxicity of an undetected medication or substance," [Doc. 467-2 at 1], Dr. Phillips' narrowing of potential causes of death to seizure or respiratory arrest (for which there is absolutely no evidence, in the transcripts or OMI report) are mere guesses. He cannot opine on how A.G. may have died beyond those listed possibilities, anymore than any other expert or layperson.

Since he is an expert in pediatric neurology, he may testify to a hypothetical question, assuming it is relevant and not unfairly prejudicial, that *if* A.G. died when the government thinks he died, he may have been suffering from the neurological conditions that are identified in his medical records. He might also answer a hypothetical question about what might happen to someone with A.G.'s neurological conditions if medication is not given. However, he still cannot speculate about how death occurred as he would simply be guessing. Any child, whether afflicted with the neurological conditions A.G. had or not, could potentially die from an obstructed airway during the rituals that alleged occurred. A pediatric neurologist is not needed to establish this. Moreover, any child with A.G.'s conditions could die even if given all the proper treatment and care. Here, there is no scientific way to make this determination. Allowing an expert like Dr. Phillips to guess as to how death occurred in A.G.'s case is unreliable because it is not based on

any pathological scientific data. It would also invade the province of the jury because they can determine whether to believe the evidence that A.G. died during a ritual or died later. The jury can also decide whether that death resulted from any alleged kidnapping. It would also be unfairly prejudicial in violation of Rule 403 to add an expert's imprimatur to lay witness testimony that A.G. died during a certain time when there is no information other than eyewitness accounts and a journal. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 144, (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

## CONCLUSION

For all the foregoing reasons, Defendants respectfully requests this Court conduct a Daubert hearing and enter an order excluding the government's proposed expert witness testimony regarding cause of death under Daubert and the additional authorities discussed herein.

Respectfully submitted,

/s/ *Ryan J. Villa*
Ryan J. Villa
The Law Office of Ryan J. Villa
5501 Eagle Rock Ave NW Ste. C2
Albuquerque, NM 87113
(505) 639-5709
ryan@rjvlawfirm.com

and

/s/ *Justine Fox-Young*
Justine Fox-Young
5501 Eagle Rock Ave NE Ste C2
Albuquerque, NM 87113
(505) 796-8268
justine@foxyounglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2022, a copy of the foregoing document was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/Ryan J. Villa*
RYAN J. VILLA