**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. 1:18-CR-02945-WJ** |
| | § | |
| **JANY LEVEILLE,** | § | |
| **SIRAJ IBN WAHHAJ,** | § | |
| **HUJRAH WAHHAJ,** | § | |
| **SUBHANAH WAHHAJ, and** | § | |
| **LUCAS MORTON,** | § | |
| | § | |
| **Defendants.** | § | |

**Reply to the government's response to defendants' joint**
**<u>motion to dismiss—no predicate crime for conspiracy to kidnap (Doc. 487)</u>**

Defendants submit the following reply to the government's response to the joint motion to dismiss counts six and seven of the indictment. (Doc. 487)

The defendants moved to dismiss counts six and seven of the indictment on the ground that because A.G. was with his father, Siraj ibn Wahhaj, there was no crime of federal kidnapping. (Doc. 469). The government responded to this motion. (Doc. 487). The government's response centers on the argument that regardless of the fact that John Doe, or AG, was at all times with his biological

father, Siraj ibn Wahhaj, the four co-defendants can nevertheless be charged with kidnapping because they conspired to kidnap John Doe. This argument ignores several key features of the kidnapping statute.

First, the government does not dispute that Siraj Ibn Wahhaj is AG's biological father and he had parental rights as AG's biological father at the time that AG traveled from Georgia to New Mexico with Siraj Ibn Wahhaj. It is true, neither Jany Leveille, Lucas Morton, Hujrah Wahhaj, nor Subhanah Wahhaj were AG's biological parents. It is undeniable that Jany Leveille is Siraj Ibn Wahhaj's second wife, that Hujrah and Subhanah Wahhaj are Siraj Ibn Wahhaj's sisters, and Lucas Morton is Siraj Wahhaj's brother-in-law. As such, Jany Leveille is AG's step-mother and Hujrah and Subhanah Wahhaj are AG's aunts, and Lucas Morton is AG's uncle. There is no factual basis, and is laughable, that the government now claims that Jany Leveille was a stranger or a transient person in AG's life, despite this familial relationship. Even if undisputed, the analysis remains the same for the reason that AG was in the custody of his biological father Siraj Ibn Wahhaj throughout his travels from Georgia to New Mexico.[1]

---

[1] The defendant's dispute a number of the other allegations made by the government in its response. Ms. Leveille disputes or takes issue with the allegations in paragraph (4) on page 3 of document 487. Ms. Leveille did not kidnap John Doe and takes issue with the context, accuracy, and factual basis of the other allegations in paragraph (4). The allegations in paragraph (5) are similarly unfounded and the defendants dispute these allegations and question the source and factual basis of the government's assertions in

As shown in the discovery, Siraj Ibn Wahhaj is AG's biological father who had AG in his custody throughout his travels from Georgia to New Mexico. It is undeniable that Jany Leveille was a passenger in the vehicle driven by Siraj Ibn Wahhaj along with AG and their other children. Hujrah Wahhaj, Subhanah Wahhaj, and Lucas Morton traveled in separate vehicles with their children as well, those children being AG's cousins. Hujrah Wahhaj, Subhanah Wahhaj, and Lucas Morton did not have AG in their custody or control.

The government's argument is based on the false premise that AG was unlawfully with Jany Leveille, Hujrah Wahhaj, Subhanah Wahhaj and Lucas Morton. From this false premise the government builds their case against the co-defendants. But AG was not solely "with" the co-defendants. AG was with his biological father, Siraj Ibn Wahhaj, who was in turn travelling and living with his two sisters (Subhanna and Hujrah Wahhaj), his brother-in-law, Lucas Morton, and his wife, Jany Leveille. Whatever machinations the government imagines led to this group's travelling across the country and settling in New Mexico does not change the fact that this was a family of close relatives travelling and living together. Mr. Wahhaj was travelling with his wife, family, and young child, AG.

---

paragraph (5). The defendants also dispute the factual accuracy of paragraphs (6) through (9). Regardless of the accuracy of these factual statements, they are irrelevant to the analysis of the defendants' motion to dismiss.

There was no federal crime of kidnapping because AG was at all times with his father, Mr. Wahhaj.

This in turn leads to the key feature of the federal kidnapping statute that the government ignores. According to the government, the co-defendants can be charged with kidnapping regardless of Mr. Wahhaj's immunity from prosecution. But "immunity" from prosecution is the wrong lens through which to view the parental exception to the kidnapping statute. The parental exception in § 1201 is not simply "immunity" from prosecution. It is a hard statutory limitation on the scope of what constitutes the federal crime of kidnapping. A parent who takes his child across state lines in violation of a state court order has not committed the federal crime of kidnapping as a legal matter and simply becomes "immunized" from federal prosecution at the same time. Rather, that parent has not committed the federal crime of kidnapping at all. Mr. Wahhaj cannot be charged with kidnapping not because he is simply "immunized" as the government frames it but instead has not, cannot, and could not commit the federal crime of kidnapping with respect to his own child.

Both the legislative history and intent to exempt parents in the federal kidnapping statute reflects the blanket exemption afforded to parents. This is reflected in the Department of Justice's own Manual:

> The kidnapping offense generally ***does not apply to matters involving the taking a minor by a parent***, except for 18 U.S.C. § 1204, international parental kidnapping. . . Under § 1201, the term "parent" does not include those persons whose parental rights with respect to the victim child have been terminated by a final court order.

DEP'T OF JUST. MANUAL RESOURCE MANUAL Title 9 Number 1034.

The key language in the Department of Justice's own manual is that the "kidnapping offense generally ***does not apply to matters involving the taking a minor by a parent."*** *Id.* The exemption was written so that those attempting to exercise their parental custody are not subject to prosecution and draconian punishment under the same statute and to the same extent as one who cruelly and viciously takes a child from his or her home for ransom, reward, or a nefarious purpose. The only type of "parent" that the exemption does not apply to are those who have definitively and finally lost their parental rights. It is undisputed that at the time Siraj Wahhaj took John Doe (AG), to New Mexico, his parental rights over John Doe (AG) were not terminated.

Two cases cited by the government confirm this reading of the federal kidnapping statute. First, in *United States v. Boettcher*, 780 F.2d 435, 437 (4th Cir. 1985) the Fourth Circuit clarifies that the parental exception to the kidnapping statute is an "exemption" from the kidnapping statute. Second, the Tenth Circuit in *United States v. Mobley*, 971 F.3d 1187, 1202–03 (10th Cir. 2020) observed that "the plain language and legislative history of § 1201 shows Congress' intent to ***exclude*** parents from federal criminal sanctions for kidnapping and threatening to kidnap their children." The co-defendants are not simply "immunized" from prosecution because they were with Mr. Wahhaj. Instead, there was no crime of federal kidnapping because John Doe (AG) was at all times in Mr. Wahhaj's custody.

Taken to a different, yet virtually identical hypothetical, the government's theory of prosecution would expose to the draconian charge of federal kidnapping any person who accompanies a parent who takes his or her child across state lines in the course of a state court civil custody dispute. There is zero distinction between the government's prosecution of the co-defendants here and a spouse, partner, or friend of someone who takes his or her child and crosses

state lines without the consent of the other parent. That spouse, partner, or friend could, under the government's theory, just as easily be charged with kidnapping.

While the government appears to argue that this case differs because it was the four co-defendants who "conspired" to take John Doe (AG), this situation is ultimately no different than the partner in the hypothetical above convincing his or her boyfriend to move to Montana to escape the clutches of the child's other parent back in Oklahoma. That is not kidnapping and neither is what happened here.

This is precisely the fear the Supreme Court warned of in *United States v. Chatwin*, 326 U.S. 455, 460 (1946) and noted "could lead to the punishment of anyone who induced another to leave his surroundings and do some innocent or illegal act of benefit to the former, state lines subsequently being traversed." *Id.* at 464. Those warnings made years ago are all the more relevant now. The federal government, aggrandizing itself with ever more authority over state and local governments, now seeks to expand the federal kidnapping statute beyond the scope of anything Congress intended and in a direction contrary to the limits recognized by the Supreme Court.

The government, in its response, also appears to confuse its own arguments with those of the defense. The government states that "the Defendants seek dismissal of the kidnapping charges on grounds that 'Ms. Leveille induced her husband, the child's father, to take his own son . . . [w]hich does not trigger the involuntariness element of the Federal Kidnapping Act.'" Doc. 487 at 8. The government then chides the defense for getting the "facts all mixed up." But mixed-up facts appear to be the government's forte. It was not the defense that made the argument that Ms. Leveille "induced her husband . . . to take his own son." Rather, that was the government's own (and completely unsupported) argument, made in its response to Ms. Leveille's motion to have contact with her children. Specifically, in that response, the government stated "The evidence establishes that she: . . . induced the father to surrender control of the child to her." The co-defendants, in the motion to dismiss, argued that ***even if the government was correct*** that Ms. Leveille "induced her husband . . . to take his own son" that still would not be a violation of the kidnapping statute. And it would not be a violation of the kidnapping statute because John Doe (AG) was with his father, Mr. Wahhaj.

The government argues that "Jany Leveille claimed to be John Doe's real mother and on this basis took unlawful custody of John Doe; and Jany Leveille, Lucas Morton, Hujrah Wahhaj, and Subhanah Wahhaj conspired to and, knowing it to be unlawful to do so, did in fact transport John Doe across state lines from Georgia to New Mexico and held and concealed John Doe in New Mexico." This again ignores the fact that AG was at all times with his father, Mr. Wahhaj. The government's argument would fit to this case if the co-defendants had also kidnapped Mr. Wahhaj. But that did not happen here. Ms. Leveille is and was Mr. Wahhaj's spouse, regardless of the government's protestations to the contrary. Mr. Wahhaj was travelling with his wife, two sisters and brother-in-law. There is nothing in the facts of this case to suggest that Mr. Wahhaj was forced against his will to accompany the co-defendants and travel to New Mexico. That Mr. Wahhaj took his son, John Doe (AG), with him may pose a problem for Mr. Wahhaj in state civil court in Georgia, but it is not a proper basis for a federal kidnapping charge against his traveling companions. Mr. Wahhaj, as the parent of John Doe (AG), is exempt from the federal kidnapping statute. Because he is exempt, was not forced to accompany the others, and was not

himself kidnapped, this case does not trigger the federal kidnapping statute. Counts six and seven must be dismissed.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas Blvd., NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489
(505) 346-2494 Fax
aric_elsenheimer@fd.org

*/s/ filed electronically December 5, 2022*
ARIC G. ELSENHEIMER, AFPD
Attorney for Jany Leveille