IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cr. No. 18-CR-2945 WJ |
| ) | |
| JANY LEVEILLE, ) | |
| SIRAJ IBN WAHHAJ, ) | |
| LUCAS MORTON, ) | |
| HUJRAH WAHHAJ, and ) | |
| SUBHANAH WAHHAJ, ) | |
| ) | |
| Defendants. ) | |

**UNITED STATES' SUPPLEMENT TO RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR COURT-ORDERED DEPOSITION OF WITNESS DUE TO OBSTRUCTION OF WITNESS COMMUNICATION BY THE UNITED STATES**

The United States hereby submits this supplement to the "United States Response in Opposition to Defendants' Motion for Court-Ordered Deposition of Witness Due to Obstruction of Witness Communication by the United States" (hereinafter "Response") filed on November 3, 2022, Doc. 501, to provide additional information that may be relevant. The United States maintains that it would not, and in fact did not, interfere with the defense's ability to interview Sheriff Hogrefe. To the extent Sheriff Hogrefe believed he was told to not speak with defense counsel, he was disabused of any such notion in October 2019, as evidenced by the email dated October 18, 2019, and again by letter sent to him on October 21, 2022. *See* Docs. 501-1 and 501-2. There is no question that the Government advised Sheriff Hogrefe that he was free, should he wish, to speak with defense counsel.

1

1. On November 17, 2022, Defendants, through counsel, filed a "Motion for Court-Ordered Deposition of Witness Due to Obstruction of Witness Communication by the United States" (hereinafter "Motion"). Doc. 465. In the Motion, Defendants recounted that Sheriff Hogrefe, in October 2019, said that someone in the Government (referred to as "them" by Sheriff Hogrefe) ordered him not to talk with defense counsel. *Id*. at 4-5; Doc. 501 at 3. There is no indication of who allegedly gave any such orders to the sheriff, and the Motion does not specifically allege that United States Attorney's Office (USAO) personnel told the sheriff to not speak with defense counsel. *See id*.

2. Indeed, the attorneys assigned to this case are well aware of their ethical obligations and, as a matter of routine practice, consistently advise witnesses in all cases that it is each witness's own personal decision whether or not to speak with defense counsel. *See* Doc. 501 at 2. This practice is corroborated by the October 2019 e-mail to defense counsel confirming that the Government advised Sheriff Hogrefe at the defense's request that he was free to speak with defense counsel, should he so choose. Doc. 501-1. This email also indicates that Sheriff Hogrefe did not want to speak with the defense and states in part, "Apparently, Sheriff Hogrefe does not want to talk to defense counsel or your investigators about the case without being compelled to do so. That's his decision, and I do not believe it is appropriate for me to influence him one way or another." *Id*.

3. After an unexplained delay of three years, defense counsel, for the first time, raised allegations of interference. Much as it did three years ago in response to defense counsel's allegation that Sheriff Hogrefe would speak with defense counsel only if compelled to do so, the Government made clear to Sheriff Hogrefe that he was free to speak with defense

2

counsel and did not require the Government's permission to do so. In a letter to Sheriff Hogrefe, the Government reiterated, "The choice of whether or not to be interviewed by either party is entirely yours." Doc. 501-2. This is entirely consistent with the long-standing practice followed by all Government attorneys assigned to this case.

4. More recently, the Federal Bureau of Investigation (FBI), in an effort to learn more about why Sheriff Hogrefe may have believed he was told to not speak with defense counsel, contacted Sheriff Hogrefe and the two retired supervisory special agents who communicated with him during the course of the investigation of this case. Sheriff Hogrefe, in a brief phone call, stated that former FBI Santa Fe Supervisor Mark Buie told him not to speak with anyone about the case. *See* Hogrefe 302, attached hereto as Exhibit 3. He also said someone from the USAO told him this, although he could not remember who. *Id*. Sheriff Hogrefe also expressed displeasure that the FBI had served him with a search warrant as part of its investigation of this case. *Id*.

5. Mr. Buie was interviewed about his communications with Sheriff Hogrefe, and he said he does not remember ever telling Sheriff Hogrefe to not talk to defense counsel or the press, nor does he remember e-mailing the Taos County Sheriff's Office (TCSO); he said that most of the communications between the FBI and TCSO occurred over the phone. *See* Buie 302, attached hereto as Exhibit 4. Mr. Buie recalled that the TCSO initially contacted the FBI requesting assistance, and Sheriff Hogrefe was upset that the FBI SWAT team did not assist the TCSO. *Id*.

6. Finally, former FBI Assistant Special Agent in Charge Christine Paz was interviewed. *See* Paz 302, attached hereto as Exhibit 5. She said she never gave Sheriff

Hogrefe an order to not talk to defense counsel, nor did she hear of anyone else giving such an order.  *Id*.

7. The United States does not know why Sheriff Hogrefe may think that he was instructed at some point several years ago to not speak to defense counsel.  It is possible that there may have been a conversation between Sheriff Hogrefe and some government employee in which Sheriff Hogrefe was asked to not speak with the press once federal charges were filed, but this is not known for certain.[1]  Indeed, none of the agents or attorneys who have been assigned to this case have any recollection of ever instructing Sheriff Hogrefe to not speak with defense counsel.  The attorneys have no recollection of ever speaking with him at any other time, with the exception of the October 2019 phone call memoralized in the October 18, 2019, email, and they simply would not, as a matter of routine practice, have told him not to speak with defense counsel.

8. Although Sheriff Hogrefe appears to think he was told to not speak with defense counsel over three years ago, the October 2019 phone call and the October 21, 2022 letter from the USAO clearly informed him that he does not need permission to speak with defense counsel and investigators and that the choice of whether to be interviewed by either party is entirely his.  Doc. 501-2.  Had defense counsel pursued this allegation three years ago, it could have been quickly addressed and more than likely quickly resolved with a letter such as the letter that the Government sent on October 21, 2022.  At this time, rather than seek a court order to depose

---

[1] The Department of Justice has policies that govern the release of information to the media.  *See* Justice Manual § 1-7.000, *et seq*.  These policies apply only to Department employees, but sometimes when federal charges are filed, the state and local law enforcement partners are asked to please coordinate media communications through a person designated as the Department's media contact.

him, defense counsel should try to approach Sheriff Hogrefe again, and if he refuses to speak with them, accept that as his choice.

9. In conclusion, the United States did not interfere with the defense's ability to interview Sheriff Hogrefe, as evidenced by the October 2019 e-mail to Mr. Villa (Doc. 501-1), the October 2022 letter addressed to Sheriff Hogrefe (Doc. 501-2), and the recent interviews of Mr. Buie and Ms. Paz. Moreover, as stated in the Response, there are no exceptional circumstances that justify compelling Sheriff Hogrefe to be deposed, as he is clearly and unequivocally on notice that he may, if he so chooses, speak with defense counsel and their investigators.

10. WHEREFORE, the "Motion for Court-Ordered Deposition of Witness Due to Obstruction of Witness Communication by the United States" (Doc. 465) should be denied.

Respectfully submitted,

ALEXANDER M. M. UBALLEZ
United States Attorney

 */s/ Electronically filed*
KIMBERLY A. BRAWLEY and
TAVO HALL
Assistant U.S. Attorneys
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274

I HEREBY CERTIFY that I filed the foregoing pleading electronically through
the CM/ECF system, which caused counsel of record for Defendants to be served
by electronic means, and a copy of this pleading was mailed to Defendant Lucas Morton.

 */s/ Filed Electronically*
KIMBERLY A. BRAWLEY
Assistant U.S. Attorney

5