This document is a supplemental report to Taos County Sheriff's Office case number ▇▇▇▇. On August 3rd, 2018, the Taos County Sheriff's Office Special Response Team was tasked with serving a Search Warrant in the area of Ventero, within Taos County New Mexico. Ventero, New Mexico lies just north of Amalia, New Mexico and just immediately south of the New Mexico / Colorado state line.

I, Undersheriff Steve Miera of the Taos County Sheriff's Office, am a certified and sworn peace officer in good standing with approximately 23 years of experience and advanced training. I have received and successfully completed various tactical training to include but not limited to, Basic SWAT, Advanced SWAT, Basic SWAT Sniper, Sniper/Counter Sniper, Advanced Sniper, Sniper Instructor, Active Threat/Active Shooter, and Firearms Instructor. I am currently a certified Firearms Instructor as well as a certified Sniper/Precision Rifle Instructor though the New Mexico Department of Public Safety Advanced Training Bureau. I am also an active member of the Taos County Sheriff's Office Special Response Team.

The location of the area to be searched, specifically located at Unit 2, Lot 28, Costilla Meadows, as described within the Search Warrant drafted by Sheriff Jerry Hogrefe was utilized as a residence but could much better be described as a highly defendable fortified compound. While analyzing the intelligence provided to me for the purpose of developing a tactically safe and sound approach to this compound, I had several factors to take into consideration. Among them were our two defining objectives as a tactical operations team, they are: 1) Our primary objective is the preservation of life and property. 2) Our secondary is to minimize, to the extent possible, any and all collateral damage that may be caused by the actions of the suspects involved. Also, in the information I received from various sources indicated the potential for the presence of children on the compound and that the adults occupying the compound were armed and well versed in the operation and utilization of firearms.

In reviewing the photographs of the compound, I took into account the geographic location. This location is an extremely remote area of Taos County where human traffic in the area is infrequent and sparse. The surrounding residences are few and most are uninhabited full time or at all. Furthermore this is located on a high plateau at approximately 8,500 feet in elevation. The terrain is open with a field of view that extends for miles in all directions from various locations within the property. Of concern was the view to the front of the property which included not only the immediate approach but the extended single access to the property from Ventero Road. Direct line of sight from the compound to Ventero Road initial exposure is approximately 1,900 yards (just over one mile). The distance from the point of initial exposure to detection, to the compound is approximately 2.90 miles via roadway. Approximately 1.25 miles of this is on Ventero Road which runs perpendicular to the front of the compound. It is also important to mention the road construction of Ventero Road is maintained dirt that immediately leads to Panorama Blvd., which is unmaintained dirt road to the compound. A vehicle borne approach must follow the dirt road as the surrounding terrain is covered with sage and cannot be driven over.

RECEIVED
AUG 0 9 2018
US v. Jany Leveille, et al 2800
8TH JUDICIAL D.A.

EXHIBIT 9



How this becomes important is in the factor of, time. The time it takes for a vehicle to travel from the point of exposure to detection, to the compound is approximately five to ten minutes. This time allows for the occupants of the compound to prepare and arm themselves for the purpose of violently repelling the Service of a Legal Process, if they were so inclined. Upon arrival to the front of the compound, approach must be made on foot as old tire carcasses have been placed across the driveway as a barrier. The approach from the road to the front of the compound is approximately 30 yards. Also located on the approach is a large white in color box truck best describe as a "U-Haul" type truck.

The compound is surrounded almost entirely by tire carcasses that have been stacked on top of each other to form a wall approximately five to six feet high. Tire carcasses filled with dirt are an excellent protective barrier against various small arms. These walls are impervious to handgun and rifle ammunition. On the front side of the compound are dirt walls approximately a foot thick and of various heights that are topped with broken glass. The broken glass acts as a deterrent to prevent anyone from climbing over or in the alternative to inflict serious injury to those who would attempt to breach the wall. Access points in various locations of the tire wall to the interior of the compound are constructed as switch backs. These switch back access points are highly effective in enabling the ambush of individuals coming into the compound. These switchbacks are also narrow in construction making it difficult for an individual laden with protective body armor to navigate. There are also, constructed within the compound, secondary walls that are intended to be utilized as an inner defendable perimeter. In some areas there are alley walk ways that are also narrow in construction for the purpose of again, making navigation by armor laden personnel difficult. Large mounds of dirt were placed in various locations but most notable was on the north side of the compound.

In the aerial photographs a large plastic covering can be seen. This covering conceals the subterranean structure beneath as well as walkways, trenches and other construction efforts. After the peaceful Service of Process, a tunnel system was discovered on the north side of the compound underneath the plastic covering. The length of the tunnel system which was inclusive of several compartments in which provisions, ammunition and firearms were stored, was approximately 100 feet long. At the entrance of the tunnel, within, was an internal tunnel compartment that was approximately 19 feet in length that ran to the west. The main shaft of the tunnel was bored in an imperfect manner thus creating corners and positions that would give the occupant of the interior of the tunnel an advantage over elements required to take control of same. A key construction component of this tunnel system of tactical significance is the "spider hole" at the end of the tunnel that allowed exit to the surface facilitated by a makeshift ladder, in an area concealed by sage to the north of the compound. This "spider hole" exit could be utilized for two purposes as this has been a military tactic used in past conflicts, the first being a concealed and extended escape route, and the second which is of most concern, an ambush point. An individual could gain a tactical advantage over an individual or element that has passed over the "spider hole" and is focused or taken a cover position on the dirt berm, exposing the backside of the individual or element to an attack.

EXHIBIT 9

2

US v. Jany Leveille et al 2801

In summation, every aspect of this compound, from the choice of geographic location to its construction characteristics has been specifically researched in depth and designed to minimize detection by authorities and maximize a defendable position of advantage, if in the event imminent legal process be served upon the occupants and said occupants chose to violently resist said legal service.

*Steve Mera*
8/9/18

EXHIBIT 9

3

US v. Jany Leveille et al 2802