IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                            No. 1:18-CR-02945-WJ

SUBHANAH WAHHAJ,

      Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR COURT-ORDERED DEPOSITION OF WITNESS DUE TO OBSTRUCTION OF WITNESS COMMUNICATION BY THE UNITED STATES [DOC. 465]**

Defendant Subhanah Wahhaj, through counsel, The Law Office of Ryan J. Villa, by Ryan J. Villa, and Justine Fox-Young, PC, by Justine Fox-Young, joined by all Defendants, respectfully files this reply brief in support of her Motion for Court-Ordered Deposition of Witness Due to Obstruction of Witness Communication by the United States (Doc. 465) and requests an evidentiary hearing in the matter as follows:

1. On October 4, 2019, Ms. Wahhaj's defense team attempted to interview Mr. Jerry Hogrefe, a key witness in this case who was at the time the Sheriff of Taos County.[1] *See* Doc. 465; Exhibit 1 ("Declaration of Gary Ainsworth"); Exhibit 2 ("Declaration of Ryan Villa").

2. Sheriff Hogrefe refused to speak with the defense. He stated that because the case is federal, with federal charges, he and his staff were under direct orders not to speak with the defense. *See* Exhibits 1 and 2; Doc. 548-1. Although he did not specifically name the federal government employees who had given him

---

[1] Former Undersheriff Steve Miera was recently elected Taos County Sheriff. *See* https://www.taosnews.com/miera-elected-taos-county-sheriff/image_a7889ff2-87cb-11ed-a741-77b5e39e9d19.html

these orders, it was clear that they came from individuals acting with authority from the US Attorney's Office, the Federal Bureau of Investigation or some other element of the prosecution team. *Id.*

3. The undersigned counsel contacted Assistant United States Attorney George Kraehe by phone to discuss and rectify the problem within days, and on October 18, 2019, Mr. Kraehe emailed to say that Sheriff Hogrefe did not want to talk to the defense team unless he was compelled to do so.

4. It is not clear what, if anything prosecutors discussed with Sheriff Hogrefe in October 2019 after hearing from the defense because the Government has not provided correspondence or reports documenting any information whatsoever other than what has been filed with the pleadings. The Government response simply states that "the [lead] prosecutor contact[ed] Sheriff Hogrefe" and then responded to the defense via email but does not reveal the means of contact or the substance of any correspondence or discussion the prosecutor may have had with Hogrefe. *See* Doc. 501 at 2.[2]

5. Soon after, the case was stayed on February 18, 2020, and the stay was not lifted until October 14, 2022. Docs. 192, 464.

6. Three days after the stay was lifted, on October 17, 2022, Ms. Wahhaj filed her Motion for Court-Ordered Deposition of Witness Due to Obstruction of Witness Communication by the United States. Doc. 465.

---

[2] Furthermore, the defense has specifically requested that the Government produce in discovery any and all correspondence and reports, state and federal, pertaining to Sheriff Hogrefe, and the Government has responded that they do not have custody or control of any material documents in that regard.

7. On November 3, 2022, the Government filed a response, *see* Doc. 501, and subsequently sought leave to file a supplement to its response, to which the defense did not object, and which was filed on December 13, 2022, *see* Doc. 548.

8. The Government's supplement attached as exhibits several items including an FBI 302 report documenting an October 18, 2022 phone call with Sheriff Hogrefe. Notably, the Government waited nearly two months to disclose this exculpatory information to the defense and did so only in the form of an attachment to its supplement. *See* Doc. 548-1.

9. The FBI report reveals that, consistent with his earlier statements, Sheriff Hogrefe has declined defense interviews because, over three years ago, he was specifically instructed by the federal government not to speak to anyone regarding the Leveille case. *Id.*

10. Who told Hogrefe not to speak to the defense is an important question to answer because under the American Bar Association Model Rules of Professional Conduct, Rule 3.4, "[a] lawyer shall not … unlawfully obstruct another party' s access to evidence" or "request a person other than a client to refrain from voluntarily giving relevant information to another party" absent narrow exceptions.

11. These rules underscore the right of the accused to information related to their defense, and defense counsel has a duty to make reasonable investigations, which includes the duty to interview witnesses without governmental interference. See *Strickland v. Washington*, 466 U.S. 668, 690 (1984) (explaining that defense counsel's obligation, "is to make the adversarial testing

- 3 -

process work in a particular case"; *Wiggins v. Smith*, 539 U.S. 510 (2003) (discussing defense counsel's duty to investigate).

12. For all of these reasons and those detailed in the briefing on this matter, Ms. Wahhaj respectfully requests that the Court grant the defense the opportunity to depose Sheriff Hogrefe given that the Government has clearly interfered with Hogrefe's freedom of choice regarding whether to talk with the defense.

13. Ms. Wahhaj further requests the Court hold an evidentiary hearing on this matter, thereby allowing the defense to present further evidence in support of the motion.

### I. The Parties' Statements and the Government's Response All Clearly Affirm that the Prosecution Team Unlawfully Instructed Sheriff Hogrefe Not to Communicate With Defense Counsel

As the Court can clearly glean from the parties' briefing and exhibits, the statements made under oath by Mr. Villa and Mr. Ainsworth, and Sheriff Hogrefe's repeated refrain to the defense and the prosecution that he was instructed by the Government not to speak to the defense, the Government improperly interfered with Hogrefe's free choice to speak with the defense. Specifically, on October 18, 2022, Hogrefe specifically recalled being instructed, not just by some unnamed federal employee, but by former FBI Supervising Agent Mark Buie, not to speak to anyone regarding the case. Doc. 548-1. He also specifically recalled that someone at the United States Attorney's Office gave him the same direction. *Id.* This assertion is perfectly consistent with Hogrefe's response to Mr. Villa and Mr. Ainsworth in October 2019 when they attempted to interview him, that he did not have permission to speak to them but would do so if given permission. *See* Exhibits 1 and 2.

After Mr. Villa called Mr. Kraehe to attempt to rectify this problem and requested that the Government disabuse Hogrefe of the notion that he needed "permission" to talk with the defense, Mr. Kraehe responded by email that he "did talk to Sheriff Hogrefe" and that Hogrefe "[a]pparently d[id] not want to talk to defense counsel or . . . investigators" unless compelled. It is clear now, after Hogrefe's continued insistence that he was essentially ordered not to discuss the case with the defense, by someone acting with authority from the Government, and that nobody from the US Attorney's office of the FBI ever disabused him of this notion. Had the government not unlawfully told Hogrefe not to speak to anyone, it is clear he would have agreed to be interviewed when Mr. Villa and Mr. Ainsworth approached him. Indeed, Sheriff Hogrefe said he would speak to them if given permission to do so.

For its part, the Government notes that Agent Buie does not categorically deny the allegation but that he does not recall instructing Hogrefe not to speak to the defense, *see* doc. 548-2; however, the Government does concede the "possib[ility] that there may have been a conversation between Sheriff Hogrefe and some government employee in which Sheriff Hogrefe was asked to not speak with the press once federal charges were filed," *see* doc. 548 at 4.

This limited concession is really a means of deflection by the Government, as Sheriff Hogrefe has consistently stated that, as a result of the order from Agent Buie and others, he was barred from talking to the defense absent permission from the federal government. To the contrary, Sheriff Hogrefe has exhibited no reticence about speaking to the press regarding this case and has never asserted that the Government's gag order pertained to press interviews. In fact, he gave numerous interviews to media outlets throughout 2018 and 2019, at times indirectly criticizing the FBI for its failure to raid or

otherwise take action at the Amalia property. For instance, in August of 2018, he noted "I absolutely knew that we couldn't wait on another agency to step up and we had to go check this out as soon as possible."[3]

Interestingly, the FBI in turn, though ostensibly working on a joint operation with Sheriff Hogrefe's office, inexplicably served him with a warrant for the evidence his officers collected from the property. *See* Doc. 548-1. The animus between the two agencies was clear, and it is therefore totally unsurprising that, as Hogrefe recalls, representatives of both the FBI and US Attorney's office instructed him not to speak with anyone regarding the case. Given this history, the Court has a strong basis to order a defense deposition of Mr. Hogrefe in order to allow the defense to gain critical information from him and as a sanction for the Government's improper interference with the defense's attempts to interview witnesses. Such an order would put the defense back in the position it was in, absent the unlawful instruction not to talk, when it went to interview Sheriff Hogrefe in 2019.

## II. An Order Permitting the Deposition of Sheriff Hogrefe is a Necessary and Appropriate Measure to Allow the Defense to Conduct Its Investigation

Because the Government's interference with the defendants' access to Sheriff Hogrefe has been significant, the Court clearly has the authority to order Hogrefe's deposition. *See, e.g. United States v. Carrigan*, 804 F.2d 599, 603-04 (10th Cir. 1986). At this point, a court-ordered deposition will not wholly rectify the Government's interference, given the passage of time and the tainting of this witness, but it is an appropriate remedy within the Court's discretion. *See United States v. Carrigan*, 804

---

[3] https://www.jacksonville.com/story/news/2018/08/05/message-led-to-discovery-of-11-kids-in-new-mexico-compound/6548576007/

F.2d 603-04 (noting that "[a]n order merely to cease such interference, after the fact, might be insufficient because the witnesses' free choice might have been already perverted and the witnesses likely to refuse voluntary interviews.")

The Government implies that any interference should be ignored because, had the defense raised this issue three years ago, it could have been quickly addressed and resolved with a letter to Hogrefe. This is an intellectually dishonest claim, as the prosecutors in this case are well aware that defense counsel did alert them to the issue three years ago, indeed within two weeks of the attempted interview, and that the Government apparently declined to rectify the situation by informing Hogrefe that he was not under a gag order. Instead, the Government responded to undersigned counsel with a brief assertion, ostensibly on Hogrefe's behalf, that Hogrefe declined to speak to the defense. The Government's recent interview of Hogrefe reveals that the Government did nothing to disabuse him of the notion that he was barred from talking to the defense in October of 2019 or later, until the defense filed its motion immediately after the Court lifted its order staying motions in this case.

The Government also suggests that the defense was remiss in failing to attempt to re-interview Hogrefe at some point over the last three years. Unfortunately, as an ethical and practical matter, after Mr. Hogrefe told undersigned counsel that he would not speak to defense counsel without the permission of the prosecution team, and after Mr. Kraehe reaffirmed in an email that Mr. Hogrefe would not speak to counsel, the defense could not pursue another interview. It would have been unethical and improper for counsel to attempt to contact Mr. Hogrefe after that point and the defense has therefore been denied access to this critical witness.

As a remedy, a court-ordered deposition will permit the defense to conduct a critical portion of its investigation as is necessary to marshal a proper defense, and is also a reasonable sanction given the nature and extent of the Government's interference in this matter. *See, e.g. United States v. Gonzales*, 164 F.3d 1285 (10th Cir. 1999)(quoting *United States v Ceccolini*, 435 U.S. 268, 279 (1978)) (holding that the district court did not abuse its discretion in sanctioning the government for witness interference but noting that suppression of witness statements was improper given that "penalties visited upon the Government, and in turn upon the public, because its officers have violated the law must bear some relation to the purposes which the law is to serve.")

WHEREFORE, for all the foregoing reasons and all the reasons identified in Defendants' motion, Defendants respectfully request that the Court order a deposition of witness Jerry Hogrefe where he is compelled to testify under oath due to obstruction of witness communication by the United States and further requests that the Court set an evidentiary hearing in this matter to resolve any factual and credibility disputes.

Respectfully submitted,

*/s/ Ryan J. Villa*
Ryan J. Villa
The Law Office of Ryan J. Villa
5501 Eagle Rock Ave NW Ste. C2
Albuquerque, NM 87113
(505) 639-5709
ryan@rjvlawfirm.com


*/s/ Justine Fox-Young*
Justine Fox-Young
5501 Eagle Rock Ave NE Ste C2
Albuquerque, NM 87113
(505) 796-8268
justine@foxyounglaw.com

- 9 -

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2023, a copy of the foregoing document was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/*Justine Fox-Young*
JUSTINE FOX-YOUNG