# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                    Case No. 1:18-cr-02945-WJ

JANY LEVEILLE,
SIRAJ IBN WAHHAJ,
HUJRAH WAHHAJ,
SUBHANAH WAHHAJ, and
LUCAS MORTON,

      Defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR COURT-ORDERED DEPOSITION OF WITNESS DUE TO OBSTRUCTION OF WITNESS COMMUNICATION BY THE UNITED STATES

THIS MATTER comes before the Court upon Defendants' Motion for Court-Ordered Deposition of Witness Due to Obstruction of Witness Communication by the United States ("Motion") (Doc. 465), filed October 17, 2022. Defendants request that the Court order a deposition of Taos County Sheriff Jerry Hogrefe, who allegedly stated that he had been ordered not to consent to an interview with defense counsel. Defendants also seek an evidentiary hearing to determine more clearly what was said to Sheriff Hogrefe that caused him to believe he did not have permission to speak to the defense. The United States responds that it made no such order, nor did it have any knowledge of such an instruction being given, and that upon learning this information from Defendants' Motion, it sent a letter to Sheriff Hogrefe to ensure he understood that it was entirely his decision whether to consent to an interview. Doc. 501. Having reviewed the parties' submissions and the applicable law, the Court finds that Defendants' Motion is not well-taken and therefore DENIES it.

**BACKGROUND**

Defendants allege that on October 4, 2019, defense counsel visited Sheriff Hogrefe's office in the hopes of obtaining an interview. Doc. 465 at 3. When defense counsel explained his role, Sheriff Hogrefe declined to speak with him about the case. *Id.* at 3–4. Sheriff Hogrefe stated that he declined "on direct orders from 'them'" but did not clarify who had given the orders. *Id.* at 4. Instead, he provided his business card and said he would only speak with defense counsel if given permission. *Id.*

On October 18, 2019, defense counsel contacted counsel for the United States and asked if he had spoken to Sheriff Hogrefe. Doc. 465-4 at 2–3. For context, counsel for the United States proffers that the lead prosecutor spoke with defense counsel about the possible misunderstanding with Sheriff Hogrefe and that the lead prosecutor ultimately agreed to speak with Sheriff Hogrefe to clarify his rights. Doc. 501 at 2. Apparently, at the time, the lead prosecutor was unaware of Sheriff Hogrefe's statements about orders but was aware that Sheriff Hogrefe believed he needed permission to speak with defense counsel. *Id.* In response to defense counsel's email, counsel for the United States responded that he had spoken with Sheriff Hogrefe but that "[a]pparently, Sheriff Hogrefe does not want to talk to defense counsel or your investigators about the case" and that it would be inappropriate for counsel for the United States to attempt to persuade him otherwise. *Id.* at 2.

Counsel for the United States affirm that they were unaware of Sheriff Hogrefe's comments about "direct orders from 'them'" at the time of this email exchange. Doc. 501 at 6. They state that if they had known, they would have attempted to disabuse him of this notion and ascertain who had made such a communication to Sheriff Hogrefe. *Id.* Upon learning of Sheriff Hogrefe's misapprehension in the filing of the present Motion, counsel for the United States sent Sheriff

2

Hogrefe a letter dated October 21, 2022 stating that he did not need anyone's permission to speak with defense counsel and that "the choice of whether or not to be interviewed by either party is entirely yours." Doc. 501-2 at 1.

## LEGAL STANDARD

A witness has the right to choose not to speak with the defense as long as the prosecution has not interfered with that choice. *United States v. Pinto*, 755 F.2d 150, 152 (10th Cir. 1985). Witnesses in a criminal case do not "belong" to one side or the other, and it is unprofessional conduct for the prosecution to advise a witness not to speak with defense counsel. *See United States v. Carrigan*, 804 F.2d 599, 603 (10th Cir. 1986) (citations omitted). In unusual circumstances, the court may remedy prosecutorial interference by ordering a deposition of the witness in question if an order to cease interference would be insufficient. *Id.* at 604.

## ANALYSIS

Defendants argue that counsel for the United States has improperly influenced Sheriff Hogrefe to believe that he needs permission to speak with defense counsel. Doc. 465 at 1. As a sanction for this conduct, Defendants seek a court order requiring Sheriff Hogrefe to participate in a deposition. *Id.* The United States responds that it has not engaged in any improper behavior, that it did not know Sheriff Hogrefe was under this impression in 2019 when defense counsel emailed to question the United States about it, and that it has sent a letter to Sheriff Hogrefe clarifying that it is entirely up to him whether he participates in an interview with defense counsel. Doc. 501 at 6–7. The Court finds that, given the circumstances of this case, a court order requiring Sheriff Hogrefe's participation in a deposition is not appropriate.

In *Carrigan*, the court relied upon findings of fact that the prosecution had "at least strongly implied that the witnesses should decline the requested defense interviews." 804 F.2d at 601. No

3

such evidence is present here. On the phone with an FBI employee on October 18, 2022, Sheriff Hogrefe stated that it was former FBI Santa Fe Supervisor Mark Buie who told him not to speak to anyone about the case and that someone from the AUSA's office also told him not to speak to anyone about the case, but he could not remember who. Doc. 548-1. Mark Buie, for his part, stated that he did not recall ever telling Sheriff Hogrefe not to speak to defense counsel or the press about the case. Doc. 548-2. Therefore, the interaction appears to have involved some degree of misunderstanding. Defense counsel identifies no objectionable statements by the attorneys for the United States, and the attorneys for the United States affirm that they have no recollection of such a communication and would not have made it. The Court can make no comparable finding of fact to *Carrigan* based on the assertions in this case.

The circumstances in *Carrigan* also involved witnesses who were formerly willing to speak with defense counsel, but whose willingness was "substantially chilled" after the prosecution's conduct. *Id.* at 604. These circumstances are not present here: defense counsel has not argued that Sheriff Hogrefe was initially willing to speak about the issue and then experienced a chill in that willingness. Defense counsel states that Sheriff Hogrefe initially invited defense counsel into his office, but when he learned "why they were there and who [defense counsel] represented," he declined, gave them his business card, and stated that he would only speak to them if he had permission. Doc. 465 at 3–4. Based on this narrative, Sheriff Hogrefe appeared to remain willing to speak with defense counsel even at the end of the encounter but for a misunderstanding about his authorization to do so. Now that he has received the letter of clarification, there appears to be nothing stopping him unless he has changed his mind—a decision which is ultimately his to make.

*Carrigan* emphasized the "unusual circumstances" present in that case and noted the risk that the witnesses' "free choice might have been already perverted and the witnesses [might be]

likely to refuse voluntary interviews." 804 F.2d at 604. Here, the Court considers that Sheriff

Hogrefe is an elected official who works in law enforcement and is therefore less likely than other

witnesses to experience a significant chilling effect if someone had said or implied—intentionally

or inadvertently—that he should not speak to defense counsel. While a lay witness inexperienced

with the criminal justice system may be easily swayed, the Court doubts a sheriff would feel a

lingering sense of intimidation, particularly after receiving a letter from the prosecution clarifying

that the choice to speak with defense counsel is entirely his to make.

In summary, given the lack of evidence that counsel for the United States engaged in

improper behavior, Sheriff Hogrefe's stated willingness to speak with defense counsel if he had

permission, counsel for the United States' diligent letter clarifying Sheriff Hogrefe's rights as soon

as they became aware of the misunderstanding, and Sheriff Hogrefe's experience with the law

enforcement system, the Court does not find it necessary to order a deposition of Sheriff Hogrefe

at this time. The Court also finds an evidentiary hearing unnecessary at this time because the

United States' letter rectifies any misunderstanding on Sheriff Hogrefe's part, so Sheriff Hogrefe

may make his choice unfettered by any possible statements that may have caused his confusion

before.

Defendants' motion for court-ordered deposition is denied.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE