IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                            No. 1:18-CR-02945-WJ

JANY LEVEILLE, et al.,

        Defendants.

## MOTION TO DISMISS COUNT FIVE FOR UNCONSITUTIONAL APPLICATION OF FIREARMS STATUTE, WHICH EXCEEDS CONGRESS'S AUTHORITY UNDER THE COMMERCE CLAUSE

Defendant Subhanah Wahhaj, through counsel, The Law Office of Ryan J. Villa, by Ryan J. Villa, and Justine Fox-Young, PC, by Justine Fox-Young, joined by Defendants Hujrah Wajjah, Jany Leveille, Siraj Wahhaj, and Lucas Morton, respectfully moves the Court to make a finding that if the Court were not bound by precedent, it would dismiss count five of the Superseding Indictment charging the illegal possession of a firearm by a person unlawfully in the United States, and aiding and abetting, 18 U.S.C. § 922(g)(5) and 2, *see* [Doc. 85], without a sufficient nexus to interstate commerce to satisfy the requirements of the Commerce Clause, Article 1, Section 8 of the United States Constitution.

### I.    INTRODUCTION

"The powers of the legislature are defined and limited; and that those limits may not be mistaken, or forgotten, the constitution is written." *Marbury v. Madison*, 1 Cranch 137, 176, 2 L.Ed. 60 (1803). Chief Justice Marshall's words judicially endorsed the notion that fundamental to our federalist system of government is the principle that "every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution." *United States v. Morrison*, 529 U.S. 598, 607 (2000). Ms. Jany Leveille is charged under 18 U.S.C. § 922(g)(5) for allegedly being an illegal alien in possession of a firearm. *See* [Doc. 85]. Subhanah Wahhaj, Hujrah Wajjah, Siraj

Wahhaj, and Lucas Morton are charged with aiding and abetting Jany Leveille in such alleged possession. The sole connection to interstate commerce is that the firearm at issue at one point traveled in interstate commerce; however, that is insufficient under the Commerce Clause.

For over thirty years, since *U.S. v. Scarborough*, 431 U.S. 563 (1977), our Supreme Court has determined that such prosecutions do not offend the Commerce Clause's limitation on federal power. However, in 1995, the Supreme Court handed down its landmark decision in *U.S. v. Lopez*, 514 U.S. 549 (1995) redefining the landscape of Congress's Commerce Clause authority. Later, in *U.S. v. Patton*, 451 F.3d 615 (10th Cir. 2006), our court of appeals re-examined *Scarborough* in light of *Lopez* and questioned its continued validity. Since only the Supreme Court can overrule *Scarborough*, the Tenth Circuit determined in *Patton* that it was bound by that precedent. The *Patton* court suggested however that the Supreme Court may someday re-evaluate *Scarborough*. Defendant Wahhaj asks this Court to reexamine *Scarborough*, make a similar determination, and determine that, but for *Scarborough*, it would find that as applied to this case, the Commerce Clause does not provide Congress the authority to regulate mere possession of firearms by illegal aliens, or those who would aid and abet such crimes.

In this case, the Court should dismiss Count five of the Superseding Indictment against Jany Leveille for possession of firearms and ammunition in violation of §§ 922(g)(5) and Subhanah Wahhaj, Hujrah Wahhaj, Siraj Wahhaj, and Lucas Morton for knowingly aiding and abetting the same because there is insufficient sufficient nexus to interstate commerce necessary to satisfy the requirements of the Commerce Clause, Article 1, Section 8 of the United States Constitution.

## II.    RELEVANT FACTUAL BACKGROUND

Count five of the Superseding Indictment charges Subhanah Wahhaj, Hujrah Wahhaj, Siraj Wahhaj, and Lucas Morton with knowingly aiding and abetting alleged illegal alien Jany Leveille's possession of firearms and ammunition that is "in and affecting commerce" in violation of 18 U.S.C.

§§ 922(g)(5) and 2. See [Doc. 85] at 7-8. It also charges Ms. Leveille with unlawful possession. *Id*. This charge, like the others alleged in the Superseding Indictment, stems from the government's decision to target and investigate a Black Muslim family and their associates as terrorists. The government systematically surveilled the Wahhaj family and those that came into their orbit for years, including by installing pole cameras outside their home in Georgia. Despite years of invasive around-the-clock surveillance, no terroristic activities were revealed. When several members of the Wahhaj family and their relatives moved to New Mexico in 2017, the suspicious eye of the government followed them.

On August 3, 2018, months of the government's fruitless terrorism investigation culminated in a raid on the family's homestead in Taos County, New Mexico. The affidavit used to secure the search warrant of the property was riddled with false statements and material omissions. See generally Motion to Suppress [Doc. 471]. During the raid, Subhanah Wahhaj and her co-defendants were arrested and subsequently indicted by a federal grand jury with conspiracy to provide co-defendant Jany Leveille, "an alien who was illegally and unlawfully in the United States" possession of firearms in violation of § 922(g)(5). See Indictment [Doc. 25], Count 1. Count five of the Superseding Indictment is based on Firearms allegedly recovered from the property during the search on August 3, 2018. The original indictment was later superseded to further conform to the government's terrorism theory, and Subhanah Wahhaj and her co-defendants, Siraj Ibn Wahhaj, Hujrah Wahhaj, and Lucas Morton, were charged with knowingly aiding and abetting Jany Leveille's possession of firearms and ammunition in violation of 18 U.S.C. §§ 922(g)(5) and 2. See Superseding Indictment [Doc. 85] at Count 5.

### III.   LAW AND ARGUMENT REGARDING COMMERCE CLAUSE

**I. After *U.S. v. Lopez*, it is clear that Congress does not have authority pursuant to the Commerce Clause to regulate the possession of a firearm by an alien. *Scarborough v. U.S.* should be overruled, and Count Five of the superseding indictment in this case should be dismissed.**

#### A.   Methodology for review of Commerce Clause Challenge

Article I, Section 8 of the Constitution, the Commerce Clause, gives Congress power "[t]o regulate Commerce . . . among the several States." Under this clause, after *U.S. v. Lopez*, it is well-settled that Congress may regulate three broad categories of activity. *See United States v. Morrison*, 529 U.S. 598, 608 (2000); *United States v. Lopez*, 514 U.S. 549, 558 (1995); *U.S. v Patton*, 451 F.3d 615, 620 (10th Cir. 2006). "Congress may regulate the use of the channels of interstate commerce." *Morrison*, 529 U.S. at 609 (quoting *Lopez*, 514 U.S. at 558). Congress may also "regulate and protect the instrumentalities of interstate commerce even though the threat may come only from intrastate activities." *Id.* "Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, … i.e., those activities that substantially affect interstate commerce." *Id.*

The first *Lopez* category, regulation of the channels of commerce, involves regulation not of conduct "related to interstate commerce but rather interstate commerce itself—barring from the channels of interstate commerce a class of goods or people." *Patton*, 451 F.3d at 621 (citing *U.S. v. Rybar*, 103 F.3d 273, 288-89 (3d Cir. 1996) (Alito, J., dissenting). The Tenth Circuit has listed as examples of this authority the bans on interstate shipment of stolen goods or kidnapped persons, the interstate shipment of goods produced without minimum-wage protections and the interstate transportation of persons for prostitution. *Id.*

The second category of regulation is of "the instrumentalities of interstate commerce, or persons or things in interstate commerce." *Lopez*, 514 U.S. at 558; *Patton*, 451 F.3d at 621. "The 'instrumentalities' are the means of interstate commerce, such as ships and railroads, and the 'persons or things in interstate commerce' are the persons or things transported by the instrumentalities among the states." *Patton*, 451 F.3d at 621. Although regulation under this category may extend to intrastate activities, it is only regulation of activity that threatens these instrumentalities, persons or things that is constitutional. *Id.* at 622. Moreover, the cases that have upheld such regulation "involve things actually being moved in interstate commerce, not all people and things that have ever moved across state lines." *Patton*, 451 F.3d at 622 (citing *Lopez*, 514 U.S. at 559 (rejecting the idea that prohibition on possessing firearms near schools could "be justified as a regulation by which Congress has sought to protect…a thing in interstate commerce"); *Gibbs v. Babbitt*, 214 F3d 483, 491 (4th Cir. 2000) (rejecting the notion that past movement across state lines could mark something forever as "a 'thing' in interstate commerce" and noting that category two did not apply in *Lopez* "despite the fact that the regulated guns likely traveled through interstate commerce")).

The third category identified in *Lopez* is the broadest and covers most intrastate activity that on its face does not have an immediate connection to interstate commerce. Under this category, "[w]here economic activity substantially affects interstate commerce, legislation regulating that activity will be sustained." *Lopez*, 514 U.S. at 560. This is true even for intrastate economic activity. Indeed, our Supreme Court has "upheld a wide variety of congressional Acts regulating intrastate economic activity where [it has] concluded that the activity substantially affected interstate commerce." *Lopez*, 514 U.S. at 569. By contrast, where the regulated activity is non-economic in nature it becomes more difficult to sustain under the Commerce Clause. Indeed, in

*Morrison*, the Court held the portion of the Violence Against Women Act (VAWA), which established a federal civil cause of action for any crime motivated by gender regardless of where it occurred, to be unconstitutional under the Commerce Clause. 529 U.S. at 619-20. In so doing, the Court rejected the argument that "Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." *Id.* at 617; *see id.* at 615 (suggesting that the suppression of violent crime "has always been the prime object of the States' police power").

This third category of Commerce Clause regulation has been described as "the most unsettled, and most frequently disputed of the categories." *Patton*, 451 F.3d at 622. This is so because it allows regulation of non-economic, intrastate activity, based on its effects. *Id.*

> Consideration of effects necessarily involves matters of degree. The third category thus poses not two hazards, like Scylla and Charybdis, but three. If we entertain too expansive an understanding of effects, the Constitution's enumeration of powers becomes meaningless and federal power becomes effectively limitless. If we entertain too narrow an understanding, Congress is stripped of its enumerated power, reinforced by the Necessary and Proper Clause, to protect and control commerce among the several states. If we employ too nebulous a standard, we exacerbate the risk that judges will substitute their own subjective or political calculus for that of the elected representatives of the people, or will appear to be doing so.

*Id.* at 622-23. To this end, the Court must consider "whether Congress had a rational basis to find that the regulated activity, taken in the aggregate, would substantially affect interstate commerce." *Id.* at 623 (citing *Gonzales v. Raich*, 545 U.S. 1, 20-21 2005) (holding Congress may regulate under its commerce power the intrastate manufacture and possession of marijuana for medical purposes because its effects, however small in the individual case, when taken in the aggregate, have a substantial effect on the intestate market)). *See also Wickard v. Filburn*, 317 U.S. 111, 128-29 (1942) (establishing Congress's power to regulate purely local activities that are part of an economic "class of activities" that have a substantial effect on interstate commerce).

To determine if Congress indeed had a rational basis to regulate a purely local activity, based on its judgment that such activity, in the aggregate, has a substantial effect on interstate commerce, courts have distilled four factors to examine based on the seminal decisions in *U.S. v. Lopez* and *U.S. v. Morrison* whether: (1) the regulated activity is commercial or economic in nature; (2) the statute contains an express jurisdictional element relating to interstate activity that would limit its reach; (3) Congress has made specific findings on the effects on interstate commerce; and (4) the link between the prohibited conduct and a substantial effect on interstate commerce is attenuated. *Patton*, 451 F.3d at 623. Although the Supreme Court has never directly said so, the first factor is all but dispositive. Where the activity is commercial or economic in nature, "it generally (perhaps invariably) follows that, aggregated with similar activities elsewhere, the activity affects the national economy sufficiently to fall within congressional power." *Id.* at 625.

Given the integration of the American economy in the past two centuries, "there is a heavy- perhaps in reality irrebutable-presumption that it affects more states than one." *Id.* at 623 (citing *Lopez,* 514 U.S. at 574) (Kennedy, J., concurring) ("Congress can regulate in the commercial sphere on the assumption that we have a single market and a unified purpose to build a stable national economy."). If the regulated activity is non- commercial, the last three factors are much more significant. *Id.* at 624. In *Lopez*, the Court struck down a federal prohibition on possession of a firearm in a school zone finding that it exceeded Congress's commerce authority. 514 U.S. at 551. Central to the *Lopez* Court's decision that the statute could not be justified under the Commerce Clause, was the noneconomic, criminal nature of the conduct at issue. *Morrison*, 529 U.S. at 610 (citing various portions of the *Lopez* opinion); *Gonzales*, 545 U.S. at 25 (referring to

the Morrison decision regarding the VAWA, stating "we held the statute unconstitutional because, like the statute in *Lopez*, it did not regulate economic activity").

A fourth category, not addressed in *Lopez*, has been determined to exist as the result of the tension between *Lopez* and *Scarborough*. In *Scarborough*, the Supreme Court upheld a previous version of the felon-in-possession of a firearm statute against a Commerce Clause challenge, determining that proof that the firearm had once traveled at some time in interstate commerce was sufficient to satisfy the required nexus to interstate commerce. 431 U.S. 563 (1977). The *Patton* court has recognized that the analysis in *Scarborough* does not fit within any of the three *Lopez* categories. 451 F.3d at 635. The *Patton* court in fact found "considerable tension between *Scarborough* and the three-category approach adopted by the Supreme Court in its recent Commerce Clause cases." *Id.* at 636. However, the court indicated that it was bound by *Scarborough*, which was left intact by *Lopez*,[1] and any inconsistency between the two would be for the Supreme Court, not the Tenth Circuit, to resolve. Unfortunately, neither the *Lopez* majority opinion, nor the concurring opinions by Justice Kennedy and Justice Thomas, address *Scarborough*. As it stands, this Court is also bound by *Scarborough* as explained in *Patton*. The Defendants submit this Motion to preserve the issue and make a good-faith request for a change in the law.

    **B.**    **The possession of a firearm statute as it applies to mere possession of a firearm is unconstitutional because it violates the Commerce Clause as annunciated in *U.S. v. Lopez* and its progeny, requiring *Scarborough v. U.S.* to be overruled.**

While acknowledging it was bound by *Scarborough*, the Tenth Circuit in *Patton* indicated that perhaps the Supreme Court would revisit its decision in light of *Lopez* and change the

---

[1] The court noted as well that it was bound by previous Tenth Circuit decisions that were decided after *Lopez*, which continued to follow *Scarborough*. *Patton*, 451 F.3d at 636.

requirements for the interstate commerce nexus for a federal felon-in-possession of a firearm prosecution. 451 F.3d at 436. In *Patton*, the Tenth Circuit explored the application of the three *Lopez* categories to a charge of possession of body armor by a felon. 451 F.3d at 620. The statute at issue there makes it a crime "for a person to purchase, own, or possess body armor, if that person has been convicted of a felony" that qualifies as a crime of violence. *Id.* (quoting 18 U.S.C. § 931). "Body armor" is defined as "any product sold or offered for sale, in interstate or foreign commerce…." *Id.* (quoting § 921(a)(35)). Mr. Patton was convicted for mere possession of the body armor, not purchase or sale, and the possession occurred entirely within the borders of Kansas. *Id.* Similar to the firearms statute at issue here, the body armor statute makes no reference to any effect or potential effect that possession or use of the body armor might have on interstate commerce. *Id.* As is true in this case, the only connection Mr. Patton's possession of the body armor had to interstate commerce was that prior to his possession, the body armor moved in interstate commerce. *Id.* Mr. Patton challenged the statute as applied to his case in that his mere possession of body armor that came to rest in Kansas and has long since left the channels of interstate commerce, has no effect on interstate commerce. *Id.* n. 2. He did not challenge the statute as it applies to purchasing body armor. *Id.* n. 2. Defendants make the same as applied challenge here, in that the Government can only establish mere intrastate possession of a firearm that once traveled in interstate commerce. Even if that is established, the government cannot establish a nexus to commerce strong enough to constitutionally support Count five, which regardless of outcome is insufficient under the Commerce Clause.

     *Patton* noted that the prohibition on possession of firearms by felons is indistinguishable from the prohibition on possession of body armor at issue there. *Id.* at 635. Ultimately, this is what led the court to uphold the body armor statute as applied to mere possession. However, the *Patton*

court carefully explored the three *Lopez* categories, ultimately determining that simple, intrastate possession of body armor did not meet any of the categories. *Id.* With respect to the first category, as is often the case with most possessory crimes regulated by the federal government, intrastate possession of body armor does not fit within the category because it is not directed at the movement of the body armor through the channels of interstate commerce. *Id.* at 621. Like with firearms, the body armor statute prohibits stationary and entirely intrastate acts of possession. *Id.*

A statute that would apply under the first category would require an element such as interstate transportation of a firearm by a felon. *Id.* Similarly, with the second category, because the possession is prohibited wherever it occurs, without regard to its use or effect, it exceeds Congress's authority under the Commerce Clause "to protect the instrumentalities of, and persons or things in, interstate commerce." *Id.* at 622. Accordingly, as with body armor, the mere, intrastate possession of a firearm by an illegal alien is not justified by Congress's commerce power under the first two categories. *Patton*, 451 F.3d at 622 (stating that regulation directed at people or things moving in interstate commerce "involve things actually being moved in interstate commerce, not all people and things that have ever moved across state lines.") (citing *Lopez*, 514 U.S. at 559 (rejecting the idea that prohibition on possessing firearms near schools could "be justified as a regulation by which Congress has sought to protect … a thing in interstate commerce")); *Gibbs v. Babbitt*, 214 F3d 483, 491 (4th Cir. 2000) (rejecting the notion that past movement across state lines could mark something forever as "a 'thing' in interstate commerce" and noting that category two did not apply in Lopez "despite the fact that the regulated guns likely traveled through interstate commerce")).

Turning to the third category, the *Patton* court also concluded that possession of body armor by a felon did not meet the "substantial effects" test. *Id.* at 633-634. Applying the first factor

in the *Lopez/Morrison* test for analyzing whether something has a substantial effect on commerce, the court determined that mere possession of body armor was not commercial in nature. *Id.* at 625. Like gun possession in *Lopez,* possession of body armor does not constitute buying, selling, producing or transporting products or services, or any activity preparatory to it. *Id.* at 624-625. After *Lopez* and *Morrison*, when an activity is not commercial in nature, although this is not expressly dispositive, it creates an all but insurmountable burden for the Government to establish federal jurisdiction exists. *See Morrison*, 529 U.S. at 611 ("*Lopez*'s review of Commerce Clause case law demonstrates that in those cases where we have sustained federal regulation of intrastate activity based upon the activity's substantial effects on interstate commerce, the activity in question has been some sort of economic endeavor."); *id.* at 613 ("While we need not adopt a categorical rule against aggregating the effects of any noneconomic activity in order to decide these cases, thus far in our Nation's history our cases have upheld Commerce Clause regulation of intrastate activity only where that activity is economic in nature."); *id.* at 617 ("The regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States.").

Under the *Lopez/Morrison* test, if the activity is not commercial in nature, courts must carefully scrutinize the other three factors. *See Patton*, 451 F.3d at 624. In light of these three factors and *Lopez* and its progeny, the *Patton* court identified two ways where possession of an item that is not commercial in itself may have a substantial effect on interstate commerce sufficient to satisfy the third *Lopez* category. *Id.* at 626. The first is whether Congress is regulating the market for a good and prohibiting possession is a necessary and proper means of controlling the supply or demand for that good. *Id.* For instance, prohibiting the possession of eagle feathers as a means of eliminating the market for them in order to protect against killing eagles is an appropriate exercise

of the commerce power. *Id.* (citing *Andrus v. Allard*, 444 U.S. 51, 58 (1979)). The second arises from the use of the good. *Id.* If the use of the good has an effect on interstate commerce, then regulating possession as a means of limiting the use may be an appropriate exercise of the commerce power. *Id.* The example given in Patton is prohibiting the possession of surface-to-air missiles. *Id*. Clearly, their use would affect interstate commerce and prohibiting possession can limit use. *Id.*

The *Patton* court determined that the first subcategory for noneconomic, possessory crimes did not apply to body armor. *Id.* at 627. It distinguished the body armor statute from one of the most recent examples of a statute upheld under this category in *Gonzales v. Raich*, 545 U.S. 1, 20-21 (2005). There the Supreme Court held that Congress could regulate intrastate, noncommercial possession of homegrown, medical marijuana as authorized by state law because it "could rationally be considered an inseparable part of the broader, and undeniably commercial, national market for marijuana." *Patton*, 451 F.3d at 626 (citing *Raich*, 545 U.S. at 25). This is because the federal prohibition on possession of marijuana and other drugs is part of a comprehensive scheme of regulation over goods that move in and affect interstate commerce. *Id.* On the other hand, if a statute is not part of a comprehensive regulatory scheme, regulation of purely intrastate noneconomic activity will not be sustained. *Id.* at 627 (citing *Morrison*, 529 U.S. at 610). The *Patton* court concluded that the prohibition on possession of body armor by a felon was not part of a comprehensive regulatory scheme. *Id.* In fact, unlike controlled substances, anybody, save for felons, is free to buy, own and possess body armor. *Id.* Accordingly, prohibiting possession of body armor by a felon cannot be justified under the Commerce Clause based on the rationale in *Raich*. *Id.*

Possession of a firearm is no different. Prohibiting possession of body armor also did not satisfy the second subcategory because the regulation of possession, in order to regulate use, must have a substantial and not attenuated effect on interstate commerce. *Id.* at 629. An overly broad interpretation of this area of commerce regulation can lead to plenary police power for Congress. As noted in *Patton*, "any use of anything might have an effect on interstate commerce, in the same sense which a butterfly flapping its wings in China might bring about a change of weather in New York." *Id.* The court correctly noted that, "[i]f any activity with any effect on interstate commerce, however attenuated, were within congressional regulatory authority, the Constitution's enumeration of powers would have been in vain." *Id.* It goes without saying that possession of body armor, like possession of firearms, contributes to crime, and that crime has a "measurable and significant impact on the national economy." *Id.* This, however, is the argument rejected in *Lopez* and *Morrison*. *Id*. Accordingly, the *Patton* Court determined that the body armor statute could not be justified under this doctrine of Commerce Clause law.

As explained above, the *Patton* court found that possession of a firearm by a felon was no different than the body armor statute at issue in that case for purposes of the Commerce Clause. *Id.* at 635. The court also found that the rationale for federal regulation of possession of firearms by felons as set forth in *Scarborough* was difficult to reconcile with the modern, post-Lopez Commerce Clause jurisprudence. *Id.* at 635. Indeed, *Patton* is not the only lower court to express these concerns. *See, e.g., United States v. Goines*, 2021 WL 4544098, at *1 (10th Cir. Oct. 5, 2021) (indicating the Court was bound by precedent and could not take an opportunity to undercut *Scarborough*) (unreported), cert. denied, *Goines v. United States*, 212 L. Ed. 2d 40, 142 S. Ct. 1167 (2022); *United States v. Seekins*, 52 F.4th 988, 991 (5th Cir. 2022) (C. Ho J., Dissenting Denial of Rehearing en Banc) ("A number of circuit judges nationwide have noted the fundamental

inconsistency between *Lopez* and *Scarborough*"); *United States v. Alderman*, 565 F.3d 641, 648 (9th Cir. 2009) (citing *Patton* to acknowledge doctrinal inconsistency between *Scarborough* and *Lopez*); *id.* at 648 (Paez, J., dissenting) (determining body armor statute was unconstitutional application of Commerce Clause); *United States v. Weems*, 322 F.3d 18, 26 (1st Cir.2003) (considering *Scarborough* to be unaltered by *Jones*); *United States v. Lemons*, 302 F.3d 769, 773 (7th Cir.2002) (noting "ample Seventh Circuit precedent" upholding § 922(g)(1) because of its jurisdictional hook and suggesting that if *Lopez* undercuts this approach, "it is for the Supreme Court to so hold"); *United States v. Cortes*, 299 F.3d 1030, 1037 n. 2 (9th Cir.2002) (noting that doubts have been raised but choosing, "[u]ntil the Supreme Court tells us otherwise," to "follow *Scarborough* unwaveringly"); *United States v. Kirk*, 105 F.3d 997, 1004 (5th Cir.1997) (evenly divided court en banc) (Higginbotham, J.) (upholding § 922(o), the ban on possession of machine guns, but relying on the third *Lopez* category instead of the more expansive approach in *United States v. Bass*, 404 U.S. 336, 350 (1971), a predecessor case to *Scarborough*, and noting that "[i]t is not for us to say that *Bass* cannot survive *Lopez* "); *id*. at 1016 n. 25 (Jones, J.) (finding the statute unconstitutional under the three *Lopez* categories yet noting that "[w]e are not at liberty to question" *Scarborough*, despite its "tension" with *Lopez*); *United States v. Kuban*, 94 F.3d 971, 973 n. 4 (5th Cir.1996) (noting the "powerful argument" against the constitutionality of § 922(g)(1) but regarding *Scarborough* "as barring the way" for an "inferior federal court"); *id.* at 976-78 (DeMoss, J., dissenting in part) (distinguishing the statute in *Scarborough* and finding its holding "in fundamental and irreconcilable conflict with the rationale" of *Lopez*); *United States v. Chesney*, 86 F.3d 564, 571 (6th Cir.1996) (following *Scarborough*); *United States v. Shelton*, 66 F.3d 991, 992 (8th Cir.1995) (per curiam) (following *Scarborough*); *United States v. Bishop*, 66 F.3d 569, 587-88, n. 28 (3d Cir.1995) (upholding 18 U.S.C. § 2119, a carjacking statute, because of its

jurisdictional hook and noting that until the Supreme Court is more explicit on the relationship between *Lopez* and *Scarborough* a lower court is "not at liberty to overrule existing Supreme Court precedent"); *id.* at 593-97 & n. 13 (Becker, J., concurring in part and dissenting in part) (criticizing the majority for relying on *Scarborough*, which "was devoid of any Commerce Clause analysis," and insisting that a jurisdictional hook could make an application of a statute constitutional only if it also fell within one of the three Lopez categories).

The conflict between the two cases was later addressed by the Supreme Court in a dissenting opinion in a denial of a petition for certiorari, where Justice Thomas, joined by Justice Scalia asserted that it was imperative to protect stare decisis and address *Lopez*. *See Alderman v. United States*, 562 U.S. 1163, 131 (2011) (Thomas J., Dissenting Denial of Cert.) ("It is difficult to imagine a better case for certiorari. *Scarborough*, as the lower courts have read it, cannot be reconciled with *Lopez*.").

*Patton* has also set the appropriate framework to determine that a prosecution for possession of a firearm that relies on mere intrastate possession, of a firearm that at one time traveled in interstate commerce, is insufficient under the Commerce Clause to justify a federal prosecution. That is the case at hand. Mere possession of a firearm by an illegal alien, or aiding and abetting the same, does not meet the factors outlined in *Lopez* and explained in *Patton* and does not support Count five of the Indictment. Alternatively, even if the government can establish that the Defendants traveled over state lines with the firearms seized during the raid of their property, the factors cannot be met. At best the government could prove the firearms traveled in late 2017 from Georgia to New Mexico and stayed there for almost 9 months before they were seized.

This has no appreciable effect on commerce, much less a substantial one as required under *Lopez* to sustain federal jurisdiction. Indeed, the possession of an object in one state has just as

much of an effect on commerce as possession crossing from state to state. There are no allegations and there is no support for the notion that Defendants were transporting firearms to disrupt or participate in the firearm market, nor were they transporting firearms for another individual to exchange for any sort of consideration or at all. Defendants simply moved their state of residence and allegedly brought guns with them, along with their other possessions.

Many firearms are produced and shipped through the channels of commerce, but once purchased by the final owner, it leaves the stream of commerce and ceases to have any effect on commerce unless the owner acts in a specific way. Therefore, the nexus between commerce and prosecuting the felon in possession statute requires a daisy chain of logic not present in *modern* law, and that nexus is insufficient to allow the federal government to prosecute Defendants in Count 5. Essentially, there is no substantial effect on commerce at any point these individuals allegedly had firearms in their possession. The Supreme Court must overrule *Scarborough* in light of *Lopez*. Defendants ask that this Court make a similar finding as was made in *Patton*, join other district and appellate courts in requesting guidance from the Supreme Court, and permit the issue to be addressed on appeal. See *Alderman*, 562 U.S. at (Thomas J., Dissenting) ("Recognizing the conflict between Lopez and their interpretation of *Scarborough*, the lower courts have cried out for guidance from this Court… This Court has a duty to defend the integrity of its precedents, and we should grant certiorari to affirm that *Lopez* provides the proper framework for a Commerce Clause analysis of this type.").

## CONCLUSION

The Court should determine that if it were not for *Scarborough*, it would dismiss Count 5 of the Indictment in this case because it is based upon the unconstitutional application of a statute because it exceeds Congress's authority under the Commerce Clause.

Respectfully submitted,

/s/ *Ryan J. Villa*
Ryan J. Villa
The Law Office of Ryan J. Villa
5501 Eagle Rock Ave NW Ste. C2
Albuquerque, NM 87113
(505) 639-5709
ryan@rjvlawfirm.com

*/s/ Justine Fox-Young*
Justine Fox-Young
Justine Fox-Young, PC
5501 Eagle Rock Ave NE Ste C2
Albuquerque, NM 87113
(505) 796-8268
justine@foxyounglaw.com

*Attorneys for Defendant Subhanah Wahhaj*

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2023 a copy of the foregoing document was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/*Ryan J. Villa*
RYAN J. VILLA