IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

   Plaintiff,

vs.            No. 1:18-CR-02945-WJ

JANY LEVEILLE, et al.,

   Defendants.

## MOTION FOR SEVERANCE OF COUNT THREE FOR TRIAL

Defendant Subhanah Wahhaj, through counsel, Ryan J. Villa and Justine Fox-Young, joined by Defendant Hujrah Wahhaj, through counsel Marshall J. Ray and Donald Kochersberger, Jany Leveille through counsel Aric Elsenheimer and Angelica M. Hall and Lucas Morton, pro se, respectfully moves the Court for an Order severing Count 3 of the Superseding Indictment from the other counts for trial pursuant to *Zafiro v. United States*, 506 U.S. 534 (1993) and Federal Rule of Criminal Procedure 14(a).

## FACTUAL BACKGROUND

Ms. Subhanah Wahhaj and Ms. Hujrah Wahhaj were arrested on August 31, 2018 and subsequently charged in a Superseding Indictment with conspiracy to provide material support to terrorists (count 1), providing material support to terrorists (count 2), conspiracy to commit an offense against the United States (count 4), aiding and abetting Jany Leveille's illegal possession of a firearm (count 5), conspiracy to commit kidnapping (count 6), and kidnapping (count 7). *See* [Doc. 85].

Defendants Leveille, Morton and Siraj Ibn Wahhaj are charged in the above counts as well as in count 3, with conspiracy to kill officers and employees of the United States contrary to 18 U.S.C. § 1117. *Id.* Subhanah and Hujrah were not charged in count 3.

With respect to all of the terrorism charges (counts 1, 2 and 3), there exists virtually no evidence of any conspiracy by any co-defendant, but to the extent there is actually any evidence, it is not linked to Subhanah or Hujrah Wahhaj. As far as can be gleaned from discovery, the government bases the frivolous terrorism charges contained in count 3 on writings in a diary or a book allegedly written by Ms. Leveille and a document which the government produced that was allegedly written by Siraj or Lucas called "phases of a terrorist attack." The material in the second writing appears to just be copied from the internet with nothing specific to these defendants or any terrorist organization, terroristic goals, or planned acts of terrorism.  Critically, there is no evidence Subhanah or Hujrah ever even saw these writings, much less subscribed to the views espoused in them, which is likely why the government has declined to charge them with count 3.

Other than these two writings, the only evidence the government clings to for its terrorism case is the presence of firearms and ammunition at the property, the firearms training that was purportedly being conducted, and the location and design of the very rudimentary living quarters that the government sinisterly refers to as a "compound," all of which was entirely lawful activity. Regardless, there is no evidence that either Subhanah or Hujrah procured any of the firearms or ammunition, that they participated in any of the firearms training, that they participated in constructing their living quarters or that they had any knowledge whatsoever of any plan or agreement to provide material support to terrorism.

## I.  Legal Standard

Under Federal Rule of Criminal Procedure 8(a), "[t]he indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged … are of the same or similar character, or are based on the same act or transaction, or are

connected with or constitute parts of a common scheme or plan." "[I]t is fundamental that charges may be joined in one indictment where they arise from the same or continuing act or transaction and are of the same or similar character, thus coming together to constitute parts of a common scheme." *United States v. Shelton*, 736 F.2d 1397, 1409 (10th Cir. 1984). "[E]ven in the absence of a misjoinder under Rule 8(a), the court may order the separate trials of counts'[i]f it appears that a defendant . . . is prejudiced by a joinder of offenses'" *United States v. Hollis*, 971 F.2d 1441, 1456 (10th Cir. 1992) (quoting Fed.R.Crim.P. 14). In addition to the prejudice to the defendant resulting from joinder, severance may be ordered based at least in part on "logistical concerns" in the management of complex cases. *See United States v. Kennedy*, 819 F.Supp. 1510 1515 (D.Colo. 1993)(collecting cases). Severance is a matter left to the trial court's "very broad" discretion. *United States v. Wiseman*, 172 F.3d 1196, 1211 (10th Cir. 1999).

Rule 14(a) of the Federal Rules of Criminal Procedure is the mechanism by which district courts may sever trials where there is a risk of prejudice. *United States v Cox*, 934 F.2d 1114, 1119 (10th Cir. 1991) (applying rule 14 to set the standard for severance). The rule provides as follows:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14. This rule operates to provide relief to otherwise properly joined offenses or defendants when proceeding to trial together would result in prejudice. *See id.* The prejudice standard envisioned by Rule 14 requires that defendants make a showing of actual prejudice, not merely a showing that they "may have a better chance of

acquittal in separate trials." *United States v. Pursley*, 474 F.3d 757, 766 (10th Cir. 2007). To establish actual prejudice, "a defendant must point to a specific trial right that was compromised or show the jury was prevented from making a reliable judgment about guilt or innocence." *Id.* The defendant has the burden of making "a strong showing of prejudice." *United States v. Strand*, 617 F.2d 571, 575 (10th Cir. 1980). To establish real prejudice, the defendant must show that the prejudice he will suffer outweighs the expense and inconvenience of separate trials. *See United States v. Martin*, 18 F.3d 1515, 1518 (10th Cir. 1994).

While "[t]here is a preference in the federal system for joint trials of defendants who are indicted together" in order to "promote economy and efficiency and avoid a multiplicity of trials[,]" these objectives must be achieved without "substantial prejudice to the rights of the defendants to a fair trial." *Zafiro v. United States*, 506 U.S. 534, 537-40 (1993) (quoting *Bruton v. United States*, 391 U.S. 123, 131 (1968)). Given the complexity of a given case, the nature of the charges, and the volume of evidence, a trial court's limiting instructions may prove insufficient to remedy the substantial prejudice that may infect a joint trial. *See Krulewitch v. United States*, 336 U.S. 440, 453 (1949) (J. Jackson concurring)(criticizing the use of limiting instructions in conspiracy trials); *see also Dunn v. United States*, 307 F.2d 883, 886 (5th Cir. 1962) (explaining "if you throw a skunk into the jury box, you can't instruct the jury not to smell it"). *United States v. Lewis*, 787 F.2d 1318 (9th Cir. 1986)(noting that there is "a high risk of undue prejudice whenever . . . joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible.")

## II.    The Evidence in Support of Count 3 is Highly Inflammatory and is Not Cross Admissible Against Subhanah and Hujrah

If any portions of Ms. Leveille's alleged diary, excerpted below, are admissible, they would be admissible against her and her alone as a statement of a party opponent. *See* Fed. R. Evid. 801(d)(2)(A). Her diary entries are not co-conspirator statements, which are narrowly defined as those statements "made by the party's coconspirator during and in furtherance of the conspiracy," Fed. R. Evid. 801(d)(2)(E), because they were not made in furtherance of the alleged conspiracy to provide material support and resources to carry out attacks against the United States. Indeed, the statements could not have been made in furtherance of a conspiracy because they were not made to anyone at all.  Rather, Ms. Leveille's diary allegedly memorializes her private thoughts, worries, and revelations. For example, it included comments about relatives:

> The reason Allah dislikes Hakima Ramzi, Jamillah Jihad and Halima Jordan is because they denied Allah and they denied me as a Messenger. They prayed salat to show off and did not make salat where they were alone. They only shared their wealth as a means of hurting people, by putting magic in food to turn people away from Islam. They also acquired forbidden wealth from the jinns.

She describes being wary of technology, writing:

> Previously, Allah sent a warning about Google. Googling anything is shirk. Most google answers are designed to stray us from Allah's path. Google belongs to a company managed by people whom shayateens control. As a result, we find different answers sometimes for a single question.

> Therefore, I warn you, that seeking an answer from Google is like interrogating Satan, and you will only get scammed in return, and earn Allah's anger.

She recalls encountering Angel Jibril at a Papa John's Pizza, stating that:

> However, the boys could not look into his face. They clarified later on that a very bright light was beaming from his face. He asked them about their schooling. Unable to stare in his face, they stated that they were homeschooled. He said he approved homeschooling and he despised being bullied in school. After a while, lbn Siraj considered his statements to be extremely bizarre. So, he walked out [sic] Papa John's Pizza and said, smiling: "Please ask Allah who that man is." When I opened the Qur'an to

ask, it was indeed the amazing Angel jibril. lbn Siraj rushed back inside, but it was too late, he had vanished. Finally catching the meaning of his stories, we laughed, saying: "Of course he has not been to Papa John's, angels don't eat." We laughed more.

And writes about her belief that she is the Virgin Mary, writing:

Allah is halting the respite and exposing all the plots. He wants to favor us and make us inheritors of the earth. So, He made Isa (Jesus) and I (Mary) leaders, and sent us to establish the truth, and bring to light all the Pharaohs, like Jamillah Jihad, Halima Jordan, Hakima Ramzi, and the shayateens who are willingly, like Shaytan, defying Allah. What they feared, after they worked so hard to plan will successfully get ruined.

"To be in furtherance of the conspiracy, a statement must be more than a merely narrative description by one co-conspirator of the acts of another." *United States v. SKW Metals & Alloys, Inc.*, 195 F.3d 83, 88 (2d Cir. 1999) (citations and quotations omitted); *compare with. See United States v. Arce*, 997 F.2d 1123 (5th Cir. 1993) (affirming the district court's decision to admit evidence of drug ledger entries as co-conspirator statements made in furtherance of a drug trafficking conspiracy). "The statements must prompt the listener to respond in a way that promotes or facilitates the carrying out of a criminal activity." *SKW Metals & Alloys, Inc.*, 195 F.3d at 88 (quoting *United States v. Maldonado-Rivera*, 922 F.2d 934, 958 (2d Cir. 1990)). "[T]he statements need not be commands, but are admissible" when "they provide reassurance, or seek to induce a coconspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy." *Id.*

Ms. Leveille's alleged musings are not co-conspirator statements that furthered the alleged conspiracy in any way because they did not provide reassurance, induce assistance, foster trust, or inform other members of the alleged conspiracy about its status. There is no evidence Subhanah or Hujrah read the diary or that they were meant to read it.  Nor is there evidence that they were influenced by it in any way. Because they

are not co-conspirator statements, the diary entries are not admissible against anyone but the author. If admitted at a joint trial, the bizarre and inflammatory nature of the entries would prevent the jury from making a reliable judgment about Subhanah's or Hujrah's guilt.

The same analysis applies to any statements from the writings "Phases of a Terrorist Attack," which if found to be admissible, would only be admissible against the author. As is the case with the diary entries, there is simply no evidence that the document was shared with Subhanah or Hujrah, much less that the contents prompted either of them to respond in a way that promoted or facilitated the conspiracy. *See SKW Metals & Alloys, Inc.*, 195 F.3d at 88. Further, much of the writings appears to have been collected and copied from the internet and dumped into a document rather than written or adopted by anyone. *See* Fed. R. Evid. 801(d)(2)(B). Accordingly, much of the document may not be admissible against any of the defendants.

In any event, the title of the document "Phases of a Terrorist Attack" and its contents risk preventing the jury from reliably rendering a judgment as to Subhanah and Hujrah's guilt or innocence of counts 1, 2, and 4-7. For example, "Phases of a Terrorist Attack" contains the following excerpts:

> Chronologically, attacks follow the same basic phases:
> A) Target selection is based on the objective and capabilities of the terrorist group.
> B) Surveillance of the target is necessary to gather all information and intelligence for successful completion of the operation.
> C) Operational planning occurs after information and intelligence are gathered.
> D) Performing rehearsals and dry run.
> E) Attack - executing the plan.
> F) Escape and evade from attack site.
> G) Exploiting the act for political purposes.

These statements evoke vivid memories of earlier terrorist attacks, including the attack on the World Trade Center and Pentagon on September 11, 2001, and the Boston Marathon and will trigger a hostile and unfairly prejudicial response from the jury, which they will almost certainly impute to Subhanah as a result of her marriage to Mr. Morton and because she is his co-defendant. Similarly, these prejudicial responses will be directed towards Hujrah because of her familial relationship.  Media coverage of high profile terrorist attacks has been ubiquitous for years and virtually any juror will be familiar with and have strong feelings about such attacks.  There is no evidence that Mr. Morton's materials promoted or facilitated Subhanah's or Hujrah's role in the alleged conspiracy or that they induced her assistance, fostered her trust or cohesiveness, or informed her or the others about the status of the alleged conspiracy. *See SKW Metals & Alloys, Inc.*, 195 F.3d at 88.

### III.   Subhanah and Hujrah Wahhaj Will Suffer Actual Prejudice in a Trial That Includes Count 3

Subhanah and Hujrah Wahhaj both face two serious forms of real prejudice if count 3 is included in their trial. These are 1) the likelihood that the jury cumulates evidence of count 3 and the other separate crimes and 2) the likelihood that the jury improperly infers a criminal disposition and treats the inference as evidence of guilt. *See Blunt v. United States*, 404 F.2d 1283, 1288 (D.C.Cir. 1968). Further, given that, at least on the face of the discovery, count 3 seems to lack sufficient evidence, the court "should be particularly sensitive to the possibility of ... prejudice." *United States v. Gooch*, 665 F.3d 1318, 1336 (D.C.Cir. 2012) (quoting *Shaffer v. United States*, 362 U.S. 511 (1960)).

The offense of conspiracy to kill a government agent is substantively entirely unrelated to the material support terrorism charges in counts 1-2 and the firearms related

and kidnapping charges in counts 4-7. From an evidentiary standpoint, count 3 is totally irrelevant to the other counts, and vice versa. Count 3 must be severed as the extremely limited evidence in support of this count is not cross-admissible to prove the other counts, nor is it even res gestae evidence in support of those counts. *Cf. United States v. Ramos-Soto*, 576 F.Supp 3d 894 (D. Utah 2021)(severing case for purposes of trial where the government could not show by a preponderance the one single overarching conspiracy existed but rather that there were two distinct drug conspiracies)

　　If defendants are tried at a trial on all seven counts, it will be very difficult for the jury to disentangle the evidence in support of any given count. "As the number of counts in an indictment increases, it is obvious that the resulting complex trial record makes it more difficult for a jury to keep straight the specific evidence and charges against each defendant." *United States v. Jahani*, 2014 WL 6680422 at *6 (D. Colo. Nov. 25 2014)(internal quotation marks omitted)(severing case due to real risk of prejudice and for case management purposes).

　　The Supreme Court has also acknowledged that "[w]hen many defendants are tried together in a complex case, and they have markedly different degrees of culpability, th[e] risk of prejudice is heightened." *Zafiro*, 506 U.S. at 539.  Subhanah and Hujrah, who are not charged with conspiracy to kill officers or employees of the United States and were unaware of and uninvolved in generating the writings the government relies on, will be subject to certain prejudice if the Court permits evidence of a plot to kill government agents at their trial on the other six counts. Jurors, no matter how well intentioned, will not be able to avoid weighing the evidence of the alleged murder plot, by Subhanah and Hujrah's own family members with whom they were living at the time, as they deliberate on the other six unrelated counts. This very real risk of "guilt by association" is a strong

basis to exclude the evidence in support of count 3 from a joint trial and essentially requires severance. *Cf United States v. Brown*, 288 Fed.App'x 518, 524 (10th Cir. 2008)(the admission of gang evidence was improper in a non-conspiracy drug case to show intent to distribute because it had the potential to elicit an unfavorable reaction from the jury increasing the danger of guilt by association.)

Additionally, because Subhanah and Hujrah are not charged in count 3 but are charged with conspiracy to provide material support to terrorists (count 1) and with providing material support to terrorists (count 2), there is substantial risk that the jury will cumulate and confuse the evidence in support of those counts, that the defendants possessed firearms, conducted trainings and constructed a "compound," with that in support of count 3.  Given all of the above, the risk of real and severe prejudice far outweighs any efficiencies to be gained in a joint trial, the Court "should not hesitate to order severance" of count 3. *Jahani* at *6 (quoting *United States v. Coleman*, 22 F. 3d 126, 134 (7th Cir. 1994)).

## IV.     Limiting Instructions Will not Cure the Real Prejudice

The Supreme Court has observed that limiting instructions may sometimes cure any prejudice resulting from a joint trial, *Zafiro*, 506 U.S. at 539, however, that is not always the case, *see generally Bruton v. United States*, 391 U.S. 123, 135 (1968) ("[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored.").

In this case, the admission of hearsay evidence against Ms. Leveille and Lucas Morton, which is clearly inadmissible against Subhanah and Hujrah, will interfere with the jury's ability to fairly assess the evidence that is admissible against Subhanah and

Hujrah. *See Lawrence v. United States,* 357 F.2d 434, 436-39 (10th Cir. 1966) (cautionary instructions were insufficient where inadmissible evidence "interfere[d] with the jury's impartial consideration of the other evidence properly admitted"). Given the complexity of the case, the number of charges, and the inflammatory and incendiary nature of the evidence supporting count 3, limiting instructions are an insufficient remedy.

## I.   CONCLUSION

For the reasons discussed above, the Court should enter an Order severing Count III for purposes of trial.

Respectfully submitted,

*/s/ Ryan J. Villa*
Ryan J. Villa
The Law Office of Ryan J. Villa
5501 Eagle Rock Ave NW Ste. C2
Albuquerque, NM 87113
(505) 639-5709
ryan@rjvlawfirm.com

*/s/ Justine Fox-Young*
Justine Fox-Young
Justine Fox-Young, PC
5501 Eagle Rock Ave NE Ste C2
Albuquerque, NM 87113
(505) 796-8268
justine@foxyounglaw.com

*Attorneys for Defendant Subhanah Wahhaj*

*/s/ Donald F. Kochersberger III*
Donald F. Kochersberger III
Business Law Southwest
320 Gold Ave. SW, Suite 610
Albuquerque, NM 87102
(505) 848-8581
Donald@BusinessLawSW.com

*/s/ Marshall J. Ray*
Marshall J. Ray

Law Offices of Marshall J. Ray, LLC
514 Marble Ave, NW
Albuquerque, NM 87111
(505) 312-2748
mray@mraylaw.com

*Attorneys for Defendant Hujrah Wahhaj*

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2023 a copy of the foregoing document was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/*Justine Fox-Young*
JUSTINE FOX-YOUNG