## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**vs.**                                   **No. 1:18-CR-02945-WJ**

**JANY LEVEILLE, et al.,**

      **Defendants.**

### DEFENDANTS' MOTION TO SEVER COUNTS 6 AND 7 FOR TRIAL

Defendant Subhanah Wahhaj, through counsel, Ryan J. Villa and Justine Fox-Young, joined by Defendants Siraj Wahhaj, through counsel Marc H. Robert and Thomas Clark, Hujrah Wahhaj, through counsel Marshall J. Ray and Donald Kochersberger, and Lucas Morton, pro se, respectfully move the Court for an Order severing Counts 6 and 7 of the Superseding Indictment from the other counts for trial pursuant to *Zafiro v. United States*, 506 U.S. 534 (1993), Federal Rule of Criminal Procedure 8(a) and Federal Rule of Criminal Procedure 14(a).

As further demonstrated below, the Government's "kidnapping case" (Counts 6 and 7) was improperly joined with the remaining counts including the Government's "terrorism case" (counts 1-3) under Rule 8(a), as the two groups of counts do not share a sufficient nexus to permit joinder. In the event that the Court finds joinder proper under Rule 8(a), severance is still required under Rule 14 and the Fifth Amendment because a denial of severance would deprive the Defendants of their right to a fair trial. In further support of the motion, Defendants argue as follows:

### I. Factual Background

Defendants were arrested on August 31, 2018 and subsequently charged in a Superseding Indictment with conspiracy to provide material support to terrorists (count 1), providing material support to terrorists (count 2), conspiracy to kill officers and employees of the United States contrary to 18 U.S.C. § 1117 (count 3), conspiracy to commit an offense against the United States (count 4), aiding and abetting Defendant Leveille's illegal possession of a firearm (count 5), conspiracy to commit kidnapping (count 6), and kidnapping resulting in death (count 7). *See* [Doc. 85]. Subhanah and Hujrah Wahhaj were not charged in count 3, and Siraj Wahhaj was not charged in counts 6 or 7.

The Government's kidnapping case in counts 6 and 7 is based on allegations that Defendants took Siraj Wahhaj's son, AG, from Georgia to Alabama and then later to New Mexico where the child subsequently died. At trial, the Government intends to put on evidence in support of the following theory to prove the kidnapping case:[1]

*AG, who was three years old and suffered from a number of disabilities and medical conditions, including cerebral palsy, epilepsy and developmental delays, was the biological child of Siraj Wahhaj and his wife Hakima Ramzi. AG required significant medical care and a regimen of medications in order to prevent his seizures.*

*Siraj Wahhaj's second, "Islamic" wife, Defendant Leveille, believed that AG was her child who had been transferred from her womb to Ramzi's, that he had been born dead but that Ramzi had caused demons to enter his body causing him to move so that he appeared to be alive.*

---

[1] Defendants dispute the following factual narrative which is taken from the Government's Response to Defendants' Joint Motion to Dismiss for Outrageous Government Conduct. *See* Doc. 502 at 2-9.

In late 2017, before the Defendants left Georgia, Leveille instructed Siraj Wahhaj to bring AG to her and to "recite the Quran on [him]" before receiving a message from God ordering her and the other Defendants to leave Georgia with AG, first for Alabama and then New Mexico, where she and Siraj Wahhaj would perform exorcisms on him and cast the demons from his body. Wahhaj had traveled to London a couple months prior in order learn how to do an exorcism or "ruqyah" in preparation. The Government asserts that Leveille and Wahhaj deprived AG of his anti-seizure medication based on their belief that the medication caused demons to enter the child's body.

The Government asserts that throughout December 2017, Leveille instructed Wahhaj to recite the Quran over the child in order to exorcise the demons from his body. These recitation sessions would last hours and sometimes all day and involved Wahhaj holding the child down, sometimes putting his hands around the child's neck and sometimes placing a hand on the child's forehead. During the course of the rituals, the child would often cry and would sometimes froth at the mouth and choke.

The Government further asserts that, in late December 2017, during the performance of an exorcism session by Wahhaj, the child choked and that "white slime" came out of his mouth before his heart stopped and he died. Leveille instructed the group that the child would come back to life as Jesus Christ on Easter. After the child's death, Wahhaj cleaned and wrapped the body and placed it on his bed. Leveille's children were required to wash the body every other day by hand, and it remained on Wahhaj's bed for some time. Only after a period of months, when temperatures warmed and the body began to smell, was it moved to a storage shed and later to an underground tunnel.

The Government theorizes that Leveille and Wahhaj continued to wash and view the child's body until late July 2018, with Leveille allegedly writing her brother on July

26, 2018 to say "[t]his is like really walking dead movie . . . he is not turning to dust . . . since December . . . . Its a miracle . . . He has ski[m] . . . skin . .Alllll his skin . . . No skin gone . . . His muscles r there . . . . He onlys looks ugly . . . Miracle."

The facts in support of the Government's theory on the kidnapping case are simply not of the same or similar character as the other counts in the indictment, nor are they connected to or based on the same acts or transactions which give rise to the "terrorism" counts, which are supported by the following evidence under the Government's theory:

As far as can be gleaned from discovery, the government bases its terrorism charges contained in counts 1-3 on the following purported facts:

Defendants had firearms and ammunition at the property and were purportedly conducting firearms training at the very rudimentary living quarters that the government sinisterly refers to as a "compound," all of which was entirely lawful activity.

Additionally, in support of count 3, the Government seems to rely on writings in a diary or a book allegedly written by Jany Leveille and a document which the government produced that was allegedly written by Siraj or Lucas called "phases of a terrorist attack."

All three terrorism counts are based on the allegation that Defendants sought to kill employees and officers of the United States. Notably, there is no evidence Defendants had any intention to kill anyone, especially United States' employees and officers. Pertinent here is that it is not alleged in the Superseding Indictment and there is no evidence that the alleged kidnapping of AG, and the alleged exorcisms performed, were overt acts in furtherance of any plot to kill employees and officers of the United States.

## II. Legal Standard

Under Federal Rule of Criminal Procedure 8(a), "[t]he indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." "[I]t is fundamental that charges may be joined in one indictment where they arise from the same or continuing act or transaction and are of the same or similar character, thus coming together to constitute parts of a common scheme." *United States v. Shelton*, 736 F.2d 1397, 1409 (10th Cir. 1984). *See also United States v. Riebold*, 557 F.2d 697, 707 (10th Cir. 1977)(holding that joinder is proper "[w]here the evidence overlaps and the offenses are similar . . . and the operable events occurred within a relatively short span of time"); *United States v. Tubol*, 191 F.3d 88, 95 (2d Cir. 1999)(finding joinder of two robbery offenses improper where defendant "used distinctly different methods").

Despite the need for efficiency in judicial administration, a joint trial is inappropriate if it sacrifices a defendant's right to a fundamentally fair trial. *Baker v. United States*, 329 F.2d 786 (10th Cir. 1964), *cert. dismissed*, 379 U.S. 853 (1964). "[W]hen joinder of either defendants or offenses causes the actual or threatened deprivation of a fair trial, severance is no longer discretionary." *United States v. Butler*, 494 F.2d 1246, 1256 (10th Cir. 1974).

Therefore, even if separate counts or defendants are appropriately joined under rule 8, where that joinder "appears to prejudice a defendant or the government," a "court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a); *see also United States v. Hollis*, 971 F.2d 1441, 1456 (10th Cir. 1992). "Rule 14 provides a safety valve for the highly technical and inclusive analysis under Rule 8." *United States v. Thomas*, 61 F. Supp. 3d

1221, 1226 (D.N.M. 2014)(Vázquez, J.), *aff'd in part*, 849 F.3d 906 (10th Cir. 2017). *See also United States v Cox*, 934 F.2d 1114, 1119 (10th Cir. 1991) (applying rule 14 to set the standard for severance).

The rule operates to provide relief to otherwise properly joined offenses or defendants when proceeding to trial together would result in prejudice. *See id.* The prejudice standard envisioned by Rule 14 requires that defendants make a showing of actual prejudice, not merely a showing that they "may have a better chance of acquittal in separate trials." *United States v. Pursley*, 474 F.3d 757, 766 (10th Cir. 2007). To establish actual prejudice, "a defendant must point to a specific trial right that was compromised or show the jury was prevented from making a reliable judgment about guilt or innocence." *Id.* The defendant has the burden of making "a strong showing of prejudice." *United States v. Strand*, 617 F.2d 571, 575 (10th Cir. 1980). To establish real prejudice, the defendant must show that the prejudice he will suffer outweighs the expense and inconvenience of separate trials. *See United States v. Martin*, 18 F.3d 1515, 1518 (10th Cir. 1994). *See also United States v. Lewis*, 787 F.2d 1318 (9th Cir. 1986)(noting that there is "a high risk of undue prejudice whenever . . . joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible."); *United States v. Busic*, 587 F.2d 577, 585 (3d Cir. 1978) (suggesting that severance should be granted where evidence of a prior conviction would be admissible on one or more counts but inadmissible on others), *rev'd on other grounds*, 446 U.S. 398 (1980).

"The Tenth Circuit has recognized the persuasiveness of the cross-admissibility test stated by the United States Court of Appeals for the Third Circuit in *United States v. Busic* as an important factor in determining whether severance is advisable to assure a

fair trial, but has not adopted it is as a per se rule." *See United States v. Martinez*, 542 F.Supp.3d 1170, 1215-16 (D.N.M. 2021) (internal quotations omitted). At least one other court in this district has noted its "agree[ment] with the general proposition that if evidence is not cross-admissible, that the inadmissibility is a factor in favor of severance, because rule 14(a) of the Federal Rules of Criminal Procedure disfavors joinder, where joinder 'appears to prejudice a defendant.'" *Id.* (citing Fed. R. Crim. P. 14(a); *United States v. Valentine*, 706 F.2d 282, 290 (10th Cir. 1983)).

In addition to the prejudice to the defendant resulting from joinder, severance may be ordered based at least in part on "logistical concerns" in the management of complex cases. *United States v. Kennedy*, 819 F.Supp. 1510 1515 (D.Colo. 1993)(collecting cases). Severance is a matter left to the trial court's "very broad" discretion. *United States v. Wiseman*, 172 F.3d 1196, 1211 (10th Cir. 1999). The Court has a "continuing duty at all stages of the trial to grant a severance if prejudice does appear." *United States v. Peveto*, 881 F.2d 844, 857 (10th Cir. 1989) (quotations and citation omitted).

While "[t]here is a preference in the federal system for joint trials of defendants who are indicted together" in order to "promote economy and efficiency and avoid a multiplicity of trials[,]" these objectives must be achieved without "substantial prejudice to the rights of the defendants to a fair trial." *Zafiro v. United States*, 506 U.S. 534, 537-40 (1993) (quoting *Bruton v. United States*, 391 U.S. 123, 131 (1968)). Remedial measures other than severance, such as limiting instructions, may minimize or cure the risk of prejudice. *See id.* at 539. Given the complexity of a given case, the nature of the charges, and the volume of evidence, however, a trial court's limiting instructions may prove insufficient to remedy the substantial prejudice that may infect a joint trial. *See Krulewitch v. United States*, 336 U.S. 440, 453 (1949) (J. Jackson concurring)(criticizing

the use of limiting instructions in conspiracy trials); *see also Dunn v. United States*, 307 F.2d 883, 886 (5th Cir. 1962) (explaining "if you throw a skunk into the jury box, you can't instruct the jury not to smell it").

Beyond showing that a denial of severance would result in actual prejudice, a defendant must show "that this prejudice would 'outweigh' the expense and inconvenience of separate trials." *United States v. Hutchinson*, 573 F.3d 1011, 1025 (10th Cir. 2009)(citation omitted). Where offenses arise out of separate and unrelated transactions, courts save little time or resources in having a single trial. *See United States v. Mullen*, 550 F.2d 373, 375 (1977) ("Very little time is saved since the charges usually involve different transactions . . . . Ordinarily the only time saved by such joinder [based on the 'similar character' prong] is the selection of one jury rather than two."); *United States v. Halper*, 590 F.2d 422, 430 (2d Cir. 1978)(noting that advantages of joinder "largely disappear" where there is no common factual basis for two offenses).

### III. Severance Is Warranted Because the "Kidnapping Case" Is Extraneous to the "Terrorism Case" and Because Joinder Will Compromise the Defendants' Right to a Fair Trial

### A. The Kidnapping Case Is Improperly Joined Because Counts 6 and 7 are Dissimilar and Unrelated to the Other Counts

As is clear from a comprehensive review of the discovery in this case, the Government apparently discovered evidence of criminal activity underlying its terrorism case in the course of its lengthy investigation of its kidnapping case, or, had long investigated some of the Defendants for possible criminal activity and used the kidnapping allegations to build its terrorism case.[2] In either case, the fact that the

---

[2] This likely possibility underscores the exculpatory nature of the discovery pertaining to the Government's surveillance of Defendants prior to their departure from

Government apparently "discovered evidence of unrelated types of criminal activity by some of the co-conspirators during the course of their investigation is insufficient to create a logical relationship between the acts and transactions within the series of offenses listed in the indictment." *United States v. Suggs*, 531 F.Supp. 2d 13, 28 (D.D.C. 2008)(internal quotation and citation omitted)(granting motion to sever counts). This Court simply does not have discretion to allow joinder of offenses that fail to meet the requirements under Rule 8. *Id.*

Counts 6 and 7 are not of the same or similar character as the other counts in the superseding indictment, nor are they connected to or based on the same acts or transactions which give rise to the other counts. Fed. R. Crim. P. 8(a). The conduct alleged in counts 6 and 7, underlying conspiracy to commit kidnapping and kidnapping, is not sufficiently similar to the other charged conduct to permit joinder. The kidnapping counts are certainly not of the same character as the terrorism and gun charges, nor do they have any general likeness to one another. *See United States v. Werner*, 620 F.2d 922, 926 (2d Cir. 1980). There is no evidence that AG's alleged transportation to New Mexico constituted anything other than an aspect of a domestic or custody dispute or was related in any way to the alleged terrorism charges. Accordingly, they are not similar in category or in evidence. *See, e.g., United States v. Coleman*, 222 F.3d 126, 133 (7th Cir. 1994).

This is demonstrated by the fact that the proof in support of the kidnapping charges contained in counts 6 and 7, *see supra* section I, does not overlap in the least with the facts and proof in the remainder of the case and would not be admissible in a trial on

---

Georgia, which the defense has requested pursuant to the Classified Information Procedures Act ("CIPA").

counts 1 through 5. *See, e.g., United States v. Chavis*, 296 F.3d 450, 458 (6th Cir. 2002) (finding firearm and drug offenses misjoined because "[t]here [was] no evidence or allegation in the indictment suggesting that Chavis's possession of cocaine base . . . was part of 'the same act or transaction' as the purchase of the handgun . . . ." and there was also no "common thread of an overarching criminal scheme connecting these two crimes").

Specifically, the evidence documenting the transportation of AG from Georgia to New Mexico and the events that followed, including the ruqyahs that Defendants Leveille and Siraj Wahhaj are alleged to have performed on AG, AG's alleged unmet medical needs and the events that ensued prior to and including his death, are part of an entirely separate scheme, and are totally factually unrelated and unconnected to the charges that Defendants conspired to provide and provided material support to terrorists, that they conspired to kill officers of the United States, and to commit an offense against the United States and that they aided and abetted Defendant Leveille's illegal possession of a firearm.

Because from an evidentiary standpoint, counts 6 and 7 are entirely unrelated to the other counts, and vice versa, there are few if any efficiencies to be gained by holding a single trial. *See Halper*, 590 F.2d at 430 (noting that advantages of joinder "largely disappear" where there is no common factual basis for two offenses). The Government's evidence regarding AG's infirmities, his medical care in Georgia, Defendants' apparent reasons for refusing to return the child to his biological mother, and the events that occurred in the weeks before the child's death will come through a discrete group of fact and expert witnesses and stands apart from the terrorism case. None of the evidence is cross-admissible to prove the other counts, nor is it res gestae evidence in support of the terrorism charges. *Cf. United States v. Ramos-Soto*, 576 F.Supp 3d 894 (D. Utah

2021)(severing case for purposes of trial where the government could not show by a preponderance the one single overarching conspiracy existed but rather that there were two distinct drug conspiracies). The evidence of the terrorism case is not relevant to the kidnapping case and vice versa. Nor is the evidence from either case admissible under Rule 404(b) or any other rule of evidence.

In short, counts 6 and 7 are improperly joined with counts 1-5 as they are of an entirely different character, are not based on the same alleged acts and are not part of a common scheme or plan. *See* Fed. R. Crim. Proc. 8; *Tubol*, 191 F.3d at 94-95 (reversing the district court's order of a joint trial on a bank robbery charge and a charge of robbery of an appliance store and finding that joinder of the two separate robberies was improper where, although the offenses were committed in close geographic proximity within a six week period and involved the use of a gun, the defendant "used distinctly different methods in the two robberies . . . [and] targeted distinctly different victims."); *United States v. Martinez*, 1993 WL 322768, at *8 (holding that a separate firearm possession charge and a narcotics conspiracy charge were not of 'the same or similar character' because there was no evidence of any relationship between the defendant's gun possession and the narcotics conspiracy).

### B. Severance Is Further Justified Because Joinder of the Kidnapping Case with the Other Counts Seriously Prejudices Defendants

Given the above, there is not a sufficient logical or causal connection to justify the joinder; however, even if the Court finds that the counts are properly joined, it may nevertheless grant severance given the substantial prejudice that joinder will visit on each of the Defendants. *See* Fed. R. Crim. P. 14(a); *Hollis*, 971 F.2d at 1456. Defendants face at least two serious forms of real prejudice if counts 6 and 7 are not severed and tried

separately from the remaining counts. These are 1) the likelihood that the jury cumulates evidence of the kidnapping case and the other separate crimes and 2) the likelihood that the jury improperly infers a criminal disposition in the kidnapping case and treats the inference as evidence of guilt by all Defendants on all charges. *See Blunt v. United States*, 404 F.2d 1283, 1288 (D.C.Cir. 1968).

With respect to both categories, the Defendants will all be highly prejudiced by the admission of the evidence related to the kidnapping counts at a trial on counts 1 through 5 because the highly inflammatory nature of the evidence regarding AG's transportation, the conditions under which he lived and the circumstances surrounding his death would prevent the jury from making a reliable judgment about the defendants' guilt or innocence as to the other counts. The Court must be

> alert to the danger that … the jury may use the evidence cumulatively; that is, that although so much as would be admissible upon any one of the charges might not have persuaded them of the accused's guilt, the sum of it will convince them as to all.

*United States v. Werner*, 620 F.2d 922, 926 (2d Cir. 1980)(internal quotation marks omitted). Jurors, no matter how well intentioned, will not be able to avoid weighing the highly charged evidence of the events leading up to AG's tragic death, including the opinions of the pediatric neurologist as to AG's medical condition, vulnerabilities and how he would have likely responded to being deprived medications, denied nutrition, and forced into a supine position for prayer rituals before foaming at the mouth, becoming breathless and unable to swallow and ultimately dying. *See* Doc. 544 at 7-8 (declining to exclude such detailed testimony from the Government's pediatric neurology expert, Dr. Phillips, despite the fact that it is "prejudicial," "emotional" and "certainly upsetting"). As Defendant Siraj Wahhaj stated in his motion for severance of a defendant, the

Government's evidence with respect to Counts 6 and 7 will be highly charged and emotional, the factual center of the case:

> The emotional impact of the story of the "kidnapping" of the three-year-old, medically fragile AG and his eventual death cannot be overstated. It is anticipated that the Government will introduce evidence explaining to the jury in detail AG's medical conditions, their etiology, the devastating consequences to AG's health, and the care he was receiving while in Georgia. It is further anticipated that the Government will attempt to contrast all of that with evidence, or suppositions, of the lack of medication or treatment following AG's departure from Georgia. AG's congenital medical conditions, his fragility and his eventual tragic death, will be the most factually and emotionally compelling facet of the upcoming trial . . . .

Doc. 635 at 6.

In the absence of severance, there is no question that this highly inflammatory evidence will be in the minds of the jurors as they deliberate on the other five unrelated counts. This very real risk of "guilt by association" is a strong basis to bifurcate the trial and essentially requires severance. *Cf United States v. Brown*, 288 Fed.App'x 518, 524 (10th Cir. 2008)(the admission of gang evidence was improper in a non-conspiracy drug case to show intent to distribute because it had the potential to elicit an unfavorable reaction from the jury increasing the danger of guilt by association.)

These circumstances, particularly the fact that the evidence on counts 6 and 7 is not cross-admissible, strongly favor a severance of counts 6 and 7 in order to assure a fair trial. *See Martinez*, 542 F.Supp.3d at 1216 (noting the Tenth Circuit's recognition that cross-admissibility is an important factor "because rule 14(a) of the Federal Rules of Criminal Procedure disfavors joinder, where joinder 'appears to prejudice a defendant'"). A severance will not increase the expense and inconvenience of trial for the Court or for the parties because it will not require the Government to put on the same or similar evidence in each trial – to the contrary, the evidentiary bases for the cases is entirely

distinct. Defendants' prejudice therefore far outweighs the expense and inconvenience of separate trials. *See United States v. Martin*, 18 F.3d 1515, 1518 (10th Cir. 1994).

Additionally, if Defendants are tried at a trial on all seven counts, it will be very difficult for the jury to disentangle the evidence in support of any given count. "As the number of counts in an indictment increases, it is obvious that the resulting complex trial record makes it more difficult for a jury to keep straight the specific evidence and charges against each defendant." *United States v. Jahani*, 2014 WL 6680422 at *6 (D. Colo. Nov. 25 2014)(internal quotation marks omitted)(severing case due to real risk of prejudice and for case management purposes).

Given all of the above, the risk of real and severe prejudice far outweighs any efficiencies to be gained in a joint trial, the Court has a strong justification to order severance of counts 6 and 7. *Jahani* at *6 (quoting *United States v. Coleman*, 22 F. 3d 126, 134 (7th Cir. 1994)).

## IV.    Defendants' Right to Put on a Complete Defense Is Impaired Without a Severance of Counts 6 and 7

The misjoinder of Counts 6 and 7 further directly interferes with Defendants' constitutional rights to present a complete defense. *See, e.g, Pursley*, 474 F.3d at 766 (to demonstrate prejudice, a defendant must identify a specific trial right that was compromised or show that the jury would be prevented from making a reliable judgment about guilt or innocence). Both the Fifth and Sixth Amendments to the United States Constitution protect a defendant's right to a meaningful opportunity to present a complete defense, which is essential to a fair trial. *See Crane v. Kentucky,* 476 U.S. 683, 690 (1986); *Holmes v. South Carolina,* 547 U.S. 319, 324 (2006). The Fifth and Sixth Amendments afford every defendant the right to testify and to call witnesses in his favor,

*see Rock v. Arkansas,* 483 U.S. 44, 49–52 (1987), and "concomitantly provide a criminal defendant the right to present a defense by compelling the attendance, and presenting the testimony, of his own witnesses," *United States v. Serrano, 406 F.3d 1208,* 1215 (10th Cir. 2005). *See also Washington v. Texas,* 388 U.S. 14, 19 (1967) (holding the right to present witnesses and establish a defense is "a fundamental element of due process of law"). "The Supreme Court's broad reading of the Sixth Amendment's Compulsory Process Clause, establish[es], at a minimum, that criminal defendants have the right to . . . put before a jury evidence that might influence the determination of guilt." *Serrano,* 406 F.3d at 1215 (internal citation and quotation marks omitted).

Misjoinder impairs the Defendants' Fifth and Sixth Amendment rights in myriad ways and necessarily deprives them of a fair trial, meaning that "severance is no longer discretionary" but rather is required. *Butler*, 494 F.2d at 1256. For instance, with respect to Subhanah Wahhaj and Hujrah Wahhaj, the misjoinder impairs each of their rights to call all necessary witnesses in their defense and to testify in their own defense, which will likely "prevent the jury from making a reliable judgment about guilt or innocence." *Pursley*, 474 F.3d at 766.

If the kidnapping case were severed, Subhanah Wahhaj and Hujrah Wahhaj would each be able to call Defendant Siraj Wahhaj as a witness at trial and in this way to marshal critical evidence in each of their defense including that they were not in any way involved in planning to take AG from his mother's home in Georgia, in seizing or confining AG, or participating in any exorcisms. Although Mr. Wahhaj has a Fifth Amendment privilege in a joint trial, he has no such privilege with respect to a separate trial on the kidnapping case. Ms. Wahhaj's right to present a defense, in part through the testimony of this co-defendant requires severance. *See, e.g., United States v. Shuford*, 454 F.2d 772, 776 (4th

- 15 -

Cir. 1971)(holding that it was reversible error to deny severance where that was the only way of affording defendant any possibility of persuading codefendant to testify); *Zafiro*, 506 U.S. at 539 ("[A] defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial.")

Furthermore, if the kidnapping case were not misjoined, Subhanah Wahhaj and Hujrah Wahhaj could each freely exercise their right to testify in their own defense with respect to the Government's terrorism case, explaining for instance that they never procured any firearms or ammunition or participated in any firearms training, never participated in constructing the group's living quarters, never had any knowledge whatsoever of any plan or agreement to provide material support to terrorism or to kill an officer or employee of the United States, and were not a part of any plans to "do jihad."

Siraj Wahhaj would be uniquely prejudiced as the only one of the five defendants not charged in counts 5 and 6. As noted in his motion for severance of defendant, *see* Doc. 635, at a joint trial Mr. Wahhaj would be required to sit through a trial including a detailed and highly prejudicial discussion of the kidnapping allegations in which he would likely be the center of attention. More crucially, he would be judged on counts 1 through 5 by a jury inflamed by the evidence of the alleged kidnapping and the tragic death of AG. Moreover, his own right to testify as to counts 1-5 would likely be significantly impaired by the risk of fulsome cross-examination on the facts underlying the offenses with which he is not charged.

The problem is that, given the misjoinder of counts and lack of severance, the Defendants cannot testify in their own defense against the terrorism charges while also choosing not to answer questions regarding the allegations in the kidnapping case, including for instance questions regarding Defendants' provision or denial of medical care

to AG and what any of them may know about the time and manner of AG's death. As a result, the misjoinder of the kidnapping case substantially prejudices Defendants in violation of their Fifth and Sixth Amendment rights, will significantly impair their defense and demands severance. *See, e.g., United States v. Sampson*, 385 F.3d 183, 190-93 (2d Cir. 2004) (the joint trial of drug offenses occurring in 1998 with drug offenses occurring in 2000 "caused Sampson substantial prejudice with regard to the 1998 counts" because "he would have taken the stand in his defense on the 1998 counts" and he had "reasons for wanting to remain silent on the 2000 counts"); *Cross v. United States*, 335 F.2d 987 (D.C. Cir. 1964) (the joint trial of charges of robbing a church rectory and robbing a tourist home on different dates was prejudicial because Cross "wished to testify on Count II [the tourist home robbery] and remain silent on Count I [the church rectory robbery]").

## V. Limiting Instructions Fail to Cure the Risk of Prejudice

The Supreme Court has observed that limiting instructions may sometimes cure any prejudice resulting from a joint trial, *Zafiro*, 506 U.S. at 539, however, that is not always the case, *see generally Bruton v. United States*, 391 U.S. 123, 135 (1968) ("[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored."). Limiting instructions cannot conceivably cure the constitutional violations delineated in Section IV, and the Court's inquiry should end there.

In this case, the admission of evidence on the kidnapping counts which is clearly inadmissible with respect to the other five counts will substantially interfere with the jury's ability to fairly assess the evidence that is admissible on counts 1 to 5, making limiting instructions a woefully insufficient remedy. *See Lawrence v. United States,* 357

F.2d 434, 436-39 (10th Cir. 1966) (cautionary instructions were insufficient where inadmissible evidence "interfere[d] with the jury's impartial consideration of the other evidence properly admitted"). This is particularly true given the complexity of the case, the number of charges, and the inflammatory and incendiary nature of the evidence supporting counts 6 and 7.

## VI.   Defendants' Sixth Amendment Rights to a Speedy Trial Strongly Favor a Severance

All Defendants have asserted their speedy trial right at varying times and frequencies, and by the time of the scheduled trial on all counts in September, 2023, will have been in custody for 60 months.[3] Sixty months of pre-trial incarceration in this case is outrageous and unreasonable, and is one factor weighing heavily in favor of a finding that Defendants' speedy trial rights have been violated. *See Barker v. Wingo*, 407 U.S. 514, 533 (1972)(finding a five-year delay extraordinary); *see also United States v. Muhtorov*, 20 F.4th 558, 658 (10th Cir. 2021) (stating six-and-a-half year delay "is highly unusual and should not be tolerated without good reason").

To the extent that litigation pursuant to CIPA, involving discovery on the terrorism counts is contributing to the delay in bringing Defendants to trial, *see* Doc. 463 (noting the Government's position that CIPA litigation will take some time, meaning the case cannot be trial ready before fall, 2023), a severance can mitigate the prejudice to Defendants to some degree. If the Court bifurcates the case, a trial on the kidnapping

---

[3] Subhanah Wahhaj, for instance, has filed three notices asserting her right to a speedy trial and a motion to dismiss on speedy trial grounds. *See* Doc. 603 at 5. Trial on all seven counts in the superseding indictment is presently set for September 25, 2023, *see* Doc. 529; however, Ms. Wahhaj has objected to this trial date and requested a trial date in the late Spring of 2023, *see* Doc. 484. Since her arrest in September 2018, Ms. Wahhaj has been incarcerated for a current total of 1,634 days or nearly four and a half years.

charges could and should be held well before September as the ongoing CIPA litigation is

unrelated to those counts.

<b>CONCLUSION</b>

For all the foregoing reasons, Defendants Subhanah Wahhaj, Siraj Wahhaj, Hujrah

Wahhaj and Lucas Morton respectfully request that the Court enter an Order severing

Counts 6 and 7 for purposes of trial.

Respectfully submitted,

*/s/ Ryan J. Villa*
Ryan J. Villa
The Law Office of Ryan J. Villa
5501 Eagle Rock Ave NW Ste. C2
Albuquerque, NM 87113
(505) 639-5709
ryan@rjvlawfirm.com

*/s/ Justine Fox-Young*
Justine Fox-Young
Justine Fox-Young, PC
5501 Eagle Rock Ave NE Ste. C2
Albuquerque, NM 87113
(505) 796-8268
justine@foxyounglaw.com

*Attorneys for Defendant Subhanah Wahhaj*

<b>CERTIFICATE OF SERVICE</b>

I hereby certify that on February 24, 2023 a copy of the foregoing document was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/Justine Fox-Young*
JUSTINE FOX-YOUNG