**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**vs.**                                                        **No. 1:18-CR-02945-WJ**

**JANY LEVEILLE, et al.,**

**Defendants.**

**REPLY IN SUPPORT OF MOTION TO DISMISS COUNT FIVE**

Defendants Subhanah Wahhaj, through counsel, The Law Office of Ryan J. Villa, by Ryan J. Villa, and Justine Fox-Young, PC, by Justine Fox-Young, and Hujrah Wajjah, through her counsel, joined by Defendants Jany Leveille, Siraj Wahhaj, and Lucas Morton, submit this reply in support of Defendants' Motion of Dismiss Count Five ("Motion") [Doc. 555] and the Government's Response ("Response") [Doc. 579].

Because depriving Jany Leveille of her right to armed self-defense based solely on the ATF's definition of "illegal alien" is not consistent with the Nation's historical tradition of firearm regulation, § 922(g)(5) cannot be constitutionally charged in the Superseding Indictment. The Government argues that § 922(g)(5) is constitutional following the Supreme Court's decision in *New York Rifle & Pistol Assn.' Inc. v. Bruen*, 597 U.S. --, 142 S. Ct. 2111 (2022). *See generally* Response [Doc. 579]. It is wrong. As discussed in the Motion and set forth below, because § 922(g)(5) fails the tests prescribed by *Bruen,* this Court should dismiss the charge from the Superseding Indictment. *See* [Doc. 85] at 7-8.

**1. The Second Amendment Applies to "The People," Including Jany Leveille.**

The Second Amendment provides that "the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. This language confers an "individual right to possess

and carry weapons." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). The Supreme Court has not directly addressed whether non-citizens are among "the people" to whom the Second Amendment guarantees this individual right. In *Heller*, however, the Court took the opportunity to acknowledge "the similarities between the Second Amendment and the First and Fourth Amendments, implying that the phrase 'the people' (which occurs in all three) has the same meaning in all three provisions." *United States v. Meza-Rodriguez*, 798 F.3d 664, 669 (7th Cir. 2015) citing *Heller*, 554 U.S. at 592 ("[I]t has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right."); *id*. at 580 (noting that "the people" is "a term of art employed in select parts of the Constitution," including the First, Second, Fourth, Ninth, and Tenth Amendments).

This is consistent with the Court's holding in *United States v. Verdugo–Urquidez*, which reasoned that the Constitution's use of the phrase "the people" referred not to citizens but rather "to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." 494 U.S. 259, 265 (1990); *see also Johnson v. Eisentrager,* 339 U.S. 763, 770 (1950) (explaining that some constitutional provisions clearly extend beyond the citizen to the "alien, to whom the United States has been traditionally hospitable, [and] has been accorded a generous and ascending scale of rights as he increases his identity with our society."); Motion at 10-11 (discussing *Huitron-Guizar*, 678 F.3d 1164, 1170 (10th Cir. 2012)).

Additionally, as a practical matter, citizenship is not a test for Second Amendment protection as non-citizens can enlist in the military, where possession of firearms is a requirement for service. In fact, "[b]etween 1999 and 2010, 80,000 non-citizens enlisted in the U.S. military

representing 4% — one out of 25 — recruits."[1] Accordingly, under the plain text of the Second Amendment, the phrase "the people" encompasses non-citizen "aliens" like Jany Leveille who live in the United States among a national community and develop significant connections to the country.

The Government repeatedly cites the *Bruen* opinion's use of the term "law-abiding citizen" for support that the Second Amendment does not apply to Jany Leville because she was (1) not a citizen and (2) not law-abiding. *See* Response at 4. Its reliance on this term is misplaced for two reasons. First, the *Bruen* Court was not deciding to whom the Second Amendment applied. 142 S. Ct. at 2134 ("It is undisputed that petitioners Koch and Nash—two ordinary, law-abiding, adult citizens—are part of "the people" whom the Second Amendment protects."). Instead, the Court was asked to consider "whether the plain text of the Second Amendment" protected the petitioners' right to carry handguns publicly for self-defense when it came to New York's requirement that individuals prove they had a "special need" to carry a firearm. *Id*. at 2122, 2134. As a result, as used throughout the *Bruen* opinion, the term "law-abiding citizen" was not used to describe who was protected by the Second Amendment but to emphasize that the Court had already decided that law-abiding citizens had the right to possess firearms for self-defense. *Id*. at 2122 ("In … *Heller*… and *McDonald v. Chicago*, … we recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense."). Contrary to the Government's argument, *Bruen* does not support the principle that there is a citizenship test for protection under the Second Amendment.

Second, while the Government argues that Jany Leveille was not "law-abiding" because she was involved in a "kidnapping and jihadist conspiracy," it overlooks that Ms. Leveille is

[1] Mark Thompson, *Non-Citizens Make Better U.S. Soldiers*, April 6, 2012. Last accessed 02/27/2023. Available at https://nation.time.com/2012/04/06/non-citizens-make-better-u-s-soldiers/

presumed innocent of these allegations,[2] and the offense for which she is charged cannot be used as the basis for finding her "non-law-abiding" and therefore not entitled to protection under the Second Amendment. *See* Response [Doc. 579] at 6-7. According to the Government's logic, anyone charged with a crime involving a firearm could then be charged with illegal possession of a firearm because their involvement in criminal activity strips them of Second Amendment protection (*i.e.*, they are no longer a *law-abiding* citizen). This makes no sense, and the Court should reject the Government's argument that the plain text of the Second Amendment does not apply to Jany Leveille.

**2.   Section 922(g)(5)(A) Is Not Consistent with Historical Precedent.**

In *Bruen*, the Supreme Court reiterated that the Second Amendment's guarantee was one of the right to armed self-defense. 142 S.Ct. at 2133 ("As we stated in *Heller* and repeated in *McDonald*, individual self-defense is the central component of the Second Amendment right.") (internal quotation marks omitted). Therefore, "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are 'central' considerations when engaging in an analogical inquiry." *Id*. The Court went on to explain that:

> analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check. On the one hand, courts should not uphold every modern law that remotely resembles a historical analogue, because doing so risks endorsing outliers that our ancestors would never have accepted. On the other hand, analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster.

*Id.* (quotation marks and authority omitted).

---

[2] The United States filed a Notice of Intent to Withdraw From Plea Agreement as to Jany Leveille [Doc. 649], which provides Ms. Leveille with the opportunity to withdraw her guilty plea.

The Government argues § 922(g)(5)(A) is constitutional because the law passes the "straightforward historical inquiry," or alternatively, the "historical analogies" test. *See* Response [Doc. 579] at 8. According to the Government, the "historical records supports the conclusion that the Second Amendment was understood to extend the right to bear arms only to citizens – and, indeed, only to *specific citizens* – at the time of its ratification." *Id*. (emphasis added). The Government then cites references in support of its "straightforward historical inquiry," acknowledging that in colonial America, those specific citizens entitled to possess firearms did not include alien men, non-landed gentry, Native Americans, Catholics, or royalist. *Id*. at 9-10. The problem, in this case, is that these groups are not non-citizen "illegal aliens" as defined by the ATF. Instead, these groups represent portions of the population that were marginalized by early governments but that today are recognized as entitled to the Second Amendment's protection and enjoy the right to armed self-defense. The Government has not provided any straightforward historical information that would support § 922(g)(5)'s illegal alien prohibition was consistent with and similar to any non-discriminatory law in place at the time of the founding.

The Government argues that § 922(g)(5) is analogous to historic exclusions to firearms possession because "laws prohibiting illegal immigrants from bearing arms that followed close on the heels of the existence of illegal immigrants suggest a long-standing understanding that the Second Amendment does not extend to such individuals." *See* Response [Doc. 579] at 13. In making this argument, the Government ignores that the ATF regulated into existence the illegal aliens prohibited by § 922(g)(5). The Government cites no analogous support for allowing an agency like the ATF to define the parameters of the Second Amendment's protections.

Instead, the case law referenced by the Government underscores § 922(g)(5) problematic racist and xenophobic history. *See* Response [Doc. 579] at 12-14 (referring to such laws as

"colonial restrictions"). But the existence of such laws should not provide analogous support for current prohibitions. *See* Motion [Doc. 555] at 14-18. As the Supreme Court has recognized, while history and precedent are important,

> we cannot escape the reality that the law on occasion adheres to doctrinal concepts long after the reasons which gave them birth have disappeared and after experience suggest the need for change. This was recognized in *Funk* where the Court declined to enforce . . . ancient rules of the common law under conditions as they now exist…. When precedent and precedent alone is all the argument that can be made to support a court-fashioned rule, it is time for the rule's creator to destroy it.

*Trammel v. United States*, 445 U.S. 40, 48 (1980) (discussing the historic rationale of marital privileges). The same is true here. While there is a tradition of firearms prohibition based largely on race, such a tradition cannot be justified in light of today's modern standards of decency. *See* Motion [Doc. 555] at 12. Instead, the Court should look to the historical tradition of ensuring the individual right to armed self-defense rather than the colonial prohibitions relied on by the Government.

Because the Government has failed to prove that § 922(g)(5)'s prohibition is consistent with the Nation's historic tradition of firearms regulation, which prioritizes an individual's right to self-defense, the statute must be declared unconstitutional, and Count 5 of the Indictment should be dismissed.

## CONCLUSION

For the reasons discussed in Defendants' Motion to Dismiss Count Five [Doc. 555] and set forth here, this Court should dismiss Count 5 of the indictment against all Defendants.

Respectfully submitted,

/s/ *Ryan J. Villa*
Ryan J. Villa
The Law Office of Ryan J. Villa
5501 Eagle Rock Ave NW Ste. C2
Albuquerque, NM 87113
(505) 639-5709
ryan@rjvlawfirm.com

/s/ *Justine Fox-Young*
Justine Fox-Young
Justine Fox-Young, PC
5501 Eagle Rock Ave NE Ste C2
Albuquerque, NM 87113
(505) 796-8268
justine@foxyounglaw.com

*Attorneys for Defendant Subhanah Wahhaj*

-and-

/s/ *Marshall J. Ray*
Marshall J. Ray
Law Offices of Marshall J. Ray, LLC
514 Marble Ave, NW
Albuquerque, NM 87111
(505) 312-2748
mray@mraylaw.com

/s/ *Donald F. Kochersberger III*
Donald F. Kochersberger III
Business Law Southwest
320 Gold Ave. SW, Suite 610
Albuquerque, NM 87102
(505) 848-8581
Donald@BusinessLawSW.com

*Attorneys for Defendant Hujrah Wahhaj*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2023, a copy of the foregoing document was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/*Ryan J. Villa*__
RYAN J. VILLA