# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                           Case No. 1:18-cr-02945-WJ

JANY LEVEILLE,
SIRAJ IBN WAHHAJ,
HUJRAH WAHHAJ,
SUBHANAH WAHHAJ, and
LUCAS MORTON,

    Defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS COUNT FIVE FOR UNCONSTITUTIONAL APPLICATION OF THE FIREARMS STATUTE, WHICH EXCEEDS CONGRESS'S AUTHORITY UNDER THE COMMERCE CLAUSE

THIS MATTER comes before the Court upon Defendants' Motion to Dismiss Count Five for Unconstitutional Application of the Firearms Statute, Which Exceeds Congress's Authority Under the Commerce Clause (Doc. 595), filed February 2, 2023. Defendants seek a Court ruling that if not for binding precedent, it would find that Defendants' firearm possession charges in Count Five of the Superseding Indictment should be dismissed because the law lacks a sufficient nexus to Congress's power under the Commerce Clause. *Id.* at 1; Doc. 660 at 6-7. The United States responds that binding precedent makes it clear that 18 U.S.C. § 922(g), the firearm possession statute, is a constitutional exercise of the congressional power to regulate interstate commerce. Doc. 631 at 2–3. Having reviewed the parties' submissions and the applicable law, the Court finds that Defendants' motion is not well-taken and therefore DENIES it.

**BACKGROUND**

The allegations in this case are lengthy, and the Court reproduces here only what is necessary to address the Motion. Allegedly, Defendants[1] kidnapped a three-year-old child, John Doe—the son of one of the defendants—and brought him to a remote compound in Amalia, New Mexico. Doc. 1 ¶ 17. It was the kidnapping that initiated a law enforcement investigation, but when law enforcement eventually searched the compound, they found several firearms. The Superseding Indictment alleges that various defendants brought firearms across state lines, provided firearms to the other defendants, shot those firearms on the compound, and otherwise trained with the firearms as part of a terrorist conspiracy. Doc. 85 at 2–4. Because defendant Jany Leveille is not a United States citizen and is not lawfully present in the United States, her alleged possession and use of these firearms and the other defendants' alleged provision of the firearms to her violates federal law. *Id.* at 7–8.

## LEGAL STANDARD

18 U.S.C. § 922(g)(5) forbids aliens who are "illegally or unlawfully in the United States" from "ship[ping] or transport[ing] in interstate or foreign commerce, or possess[ing] in or affecting commerce, any firearm or ammunition; or [receiving] any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." The element of shipping or transportation in interstate or foreign commerce matters because the law was passed based on Congress's power under the Commerce Clause.

Congress holds only the powers that the Constitution has enumerated for it. *United States v. Morrison*, 529 U.S. 598, 607 (2000) (citing *Marbury v. Madison*, 1 Cranch. 137, 176, 2 L. Ed. 60 (1803)). One such power is granted under the Commerce Clause, which empowers Congress

---

[1] Defendant Siraj ibn Wahhaj is John Doe's father and therefore is not charged with kidnapping. *See* Doc. 85 ¶ 35.

2

"[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." Art. I § 8, cl. 3. This power has been construed quite broadly: Congress may go so far as to regulate whether a farmer may grow and consume his own wheat because if many others acted similarly, it would substantially impact the national economy. *Wickard v. Filburn*, 317 U.S. 111, 127–29, 63 S. Ct. 82, 87 L. Ed. 122 (1942).

The Supreme Court has also held that this power includes the ability to criminalize the possession of firearms by felons. *Scarborough v. United States*, 431 U.S. 563, 97 S. Ct. 1963, 52 L. Ed. 2d 582 (1977). Specifically, *Scarborough* considered whether the interstate commerce element of that offense could be satisfied by proof that the firearm had, at some prior time, traveled in interstate commerce. *Id.* at 564. The Court analyzed the text, including the ambiguous verb tenses Congress chose to include in the interstate commerce element, *id.* at 569–71, and the legislative history, *id.* at 572–75. The Court determined that "Congress sought to reach possessions broadly, with little concern for when the nexus with commerce occurred." *Id.* Therefore, the Supreme Court has ruled that proving a firearm has traveled at any point in interstate commerce is sufficient to connect the offense to the Commerce Clause. *Id.* at 564.

However, the Commerce Clause does not serve as *carte blanche* for Congress to pass any gun control measure it pleases. In *United States v. Lopez*, the Supreme Court found that a law prohibiting an individual from possessing a firearm in an area he knows is a school zone surpassed congressional authority under the Commerce Clause. 514 U.S. 549, 551, 115 S. Ct. 1624, 131 L. Ed. 2d 626 (1995). The Court found that Commerce Clause jurisprudence recognized three categories of interstate commercial activity over which Congress may pass regulations: "the channels of interstate commerce"; "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities";

3

and "activities having a substantial relation to interstate commerce," or "those activities that substantially affect interstate commerce." *Id.* at 558–59. The gun control restriction at issue in *Lopez* did not involve the channels or instrumentalities of interstate commerce; there was no attempt to prevent firearms from crossing state lines, for example, nor was the law an effort to protect a thing traveling in interstate commerce. *Id.* at 559. Looking to the "substantial relation" category, the Court found that essentially *anything* could conceivably relate to interstate commerce by virtue of having a possible impact on violent crime, including matters traditionally belonging to state authority such as education and family law. *Id.* at 564–65. Because Congress holds only enumerated powers, granting it a general police power is incompatible with the Constitution. *Id.* at 566.

The Tenth Circuit has observed the possible conflicts between *Lopez* and *Scarborough*, particularly because the three-category approach outlined in *Lopez* does not intuitively map onto a congressional prohibition on firearm possession under the Commerce Clause as addressed in *Scarborough*. *See United States v. Patton*, 451 F.3d 615, 636 (10th Cir. 2006) ("Like our sister circuits, we see considerable tension between *Scarborough* and the three-category approach adopted by the Supreme Court in its recent Commerce Clause cases, and like our sister circuits, we conclude that we are bound by *Scarborough*, which was left intact by *Lopez*."). However, the Tenth Circuit has elected to follow *Scarborough* as binding precedent until the Supreme Court clarifies the relationship between *Scarborough* and *Lopez*. *Id.*

## ANALYSIS

Defendants walk through the three categories in *Lopez* and find no sufficient nexus between interstate commerce and Section 922(g), the law at issue in this case. While they concede that the

United States Supreme Court in *Scarborough* and the Tenth Circuit in *Patton* have both permitted similar laws to stand, they seek to preserve the issue for appeal. Doc. 595 at 8.

Defendants are correct; *Scarborough* and *Patton* bind this Court. Defendants ask what the Court would decide in the absence of this controlling precedent, but it is not the province of the district court to issue advisory opinions on such hypotheticals. The district court's task is to determine what the law is, not what it might be if circumstances were different. *Preiser v. Newkirk,* 422 U.S. 395, 401 (1975).

Defendants' Motion is therefore DENIED.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE