IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.   No. 18 CR 2945 WJ

JANY LEVEILLE,

    Defendant.

## MOTION FOR SEVERANCE OF DEFENDANT LEVEILLE AND NOTICE OF JOINDER IN DEFENDANTS' MOTION TO SEVER COUNTS 6 AND 7 FOR TRIAL (DOC. 648)

COMES NOW Defendant Jany Leveille, by and through Assistant Federal Public Defenders Aric Elsenheimer and Angelica Hall, and respectfully moves this Honorable Court for an Order severing her case for trial from that of her co-defendants pursuant to *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993), and Federal Rules of Criminal Procedure 8(b) and 14.   Pursuant to Federal Rule of Criminal Procedure 14(b), Ms. Leveille also respectfully requests the Court conduct an *in camera* inspection of Ms. Leveille's statements that the government intends to use as evidence.

Ms. Leveille also respectfully requests leave to supplement this Motion to submit affidavits of Ms. Leveille's Co-Defendants under seal and *ex parte* for the Court's *in camera* review and consideration.

Further, Ms. Leveille hereby gives Notice of her intent to join in Defendants' Motion to Sever Counts 6 and 7 For Trial (Doc. 648).

As grounds, Defendant Leveille states:

**Procedural Background**

1. On August 31, 2018, Defendants Jany Leveille, Siraj Wahhaj, Hujrah Wahhaj, Subhanah Wahhaj, and Lucas Morton were charged by *Criminal Complaint* with two counts: Count One being Possession of a Firearm and Ammunition by an Alien Illegally and Unlawfully in the United States, a violation of 18 U.S.C. § 922(g)(5) and 2; and Count Two being Conspiracy, a violation of 18 U.S.C. § 371. Doc. 1.

2. On September 11, 2018, an *Indictment* was filed charging the same two counts. Doc. 25.

3. On March 14, 2019, a seven-count *Superseding Indictment* was filed charging:

> **Count 1**: Conspiracy to Provide Material Support to Terrorists, 18 U.S.C. § 2339A;
>
> **Count 2**: Providing Material Support to Terrorists, 18 U.S.C. §§ 2339A & 2;
>
> **Count 3**: Conspiracy to Murder an Officer or Employee of the United States, 18 U.S.C. § 1117;
>
> **Count 4**: Conspiracy to Commit an Offense Against the United States, 18 U.S.C. § 371;
>
> **Count 5**: Possessing a Firearm While Unlawfully in the United States, 18 U.S.C. §§ 922(g)(5) & 2;
>
> **Count 6**: Conspiracy to Commit Kidnapping, 18 U.S.C. § 1201(c); and
>
> **Count 7**: Kidnapping, 18 U.S.C. §§ 1201(a) & 2.

Doc. 85. Defendants Jany Leveille, Siraj Wahhaj, Hujrah Wahhaj, Subhanah Wahhaj, and Lucas Morton are charged in Counts 1, 2, 4, and 5. Defendants Jany Leveille,

Hujrah Wahhaj, Subhanah Wahhaj, and Lucas Morton are charged in Counts 6 and 7. Defendants Jany Leveille, Siraj Wahhaj, and Lucas Morton are charged in Count 3. Importantly, Defendant Siraj Wahhaj is not charged in Counts 6 and 7, those counts involving allegations of Conspiracy to Commit Kidnapping and Kidnapping. Doc. 85. Count Seven alleging the offense of Kidnapping, 18 U.S.C. §§ 1202(a) and 2, carries a mandatory statutory penalty of life imprisonment.

4. Counts 1 and 2 allege facts common to a conspiracy to provide material support to terrorists. Those allegations are directed as to all defendants. Count 3 alleges a conspiracy to "attack and kill officers and employees of the United States," to wit, "Federal Bureau of Investigation employees, government officials, and military personnel." This allegation is generalized in that it does not specifying any particular employees, officials, or military personnel and is directed as to only Jany Leveille, Siraj Wahhaj, and Lucas Morton. Counts 4 and 5 appear to allege facts common to a conspiracy to providing Jany Leveille, an alien, alleged to be illegally and unlawfully in the United States, with firearms. Those allegations are directed as to all defendants. Counts 6 and 7 appear to allege facts common to a conspiracy to kidnap, carry away, conceal and hold John Doe, resulting in his death. Those allegations are only directed towards Defendants Jany Leveille, Hujrah Wahhaj, Subhanah Wahhaj, and Lucas Morton. Importantly, Defendant Siraj Wahhaj is excluded from this alleged conspiracy.

5. Defendants Subhanah Wahhaj, Hujrah Wahhaj, and Siraj Wahhaj, have filed motions to sever their cases from the cases of their co-defendants. Docs. 598 (filed on February 3, 2023 by counsel for Subhanah Wahhaj), 609 (filed on February 3, 2023 by

counsel for Hujrah Wahhaj), and 635 (filed on February 17, 2023 by counsel for Siraj Wahhaj, joined by Subhanah Wahhaj).[1]  At the time of the filing of this Motion, *pro se* Defendant Lucas Morton has not filed a request for a severance of his case from the cases of his co-defendants.

6.      On March 3, 2023, Ms. Leveille filed a *Notice Pursuant to Fed. R. Crim. P. 12.2* (Doc. 657) providing notice of her intent to rely upon the defense of insanity at the time of the alleged offenses and an intent to introduce expert testimony relating to mental disease or defect or mental condition of the defendant that bears upon issues of guilt. None of Ms. Leveille's co-defendants have given notice of intent to present such a defense.

**ARGUMENT**

**A.      Impermissible Joinder**

Rule 8(b) of the Federal Rules of Criminal Procedure provides, "[t]he indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  The defendants "may be charged in one or more counts together or separately" and "[a]ll defendants need not be charged in each count."  Rule 8(b) has been "designed to promote judicial economy and efficiency and to avoid a multiplicity of trials[.]" *Zafiro v. United States*, 506 U.S. 534, 540 (1993).  The Supreme Court has

---

[1]  It should be noted that on March 15, 2023, Defendant Hujrah Wahhaj personally submitted to the Court a document entitled "Motion to Proceed Pro Se" (Doc. 682) seeking an order allowing her to proceed *pro se*.

instructed federal courts to interpret the requirement of Rule 8(b) liberally in favor of joinder, *Zafiro v. United States*, 506 U.S. 534, 537 (1993), "but only so long as these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *Id.*, 506 U.S. at 540.

The inquiry into whether defendants are properly joined focuses upon the indictment, not the proof to be produced at trial. *See United States v. Jimenez*, 513 F.3d 62, 82 (3d Cir. 2008); *United States v. Ledbetter*, 929 F.3d 338 (6th Cir. 2019)("For joinder, the allegations in the indictment are what matter.").

The Tenth Circuit has held that "[t]he test for proper joinder is a common thread to each of the defendants, which may be established by common evidence as to various counts." *United States v. Caldwell*, 560 F.3d 1202, 1212 (10th Cir. 2009)(internal quotations and citation omitted); *United States v. Rogers*, 921 F.2d 975, 984 (10th Cir. 1990)(*referencing United States v. McLain*, 823 F.2d 1457, 1467 (11th Cir. 1987)("The litmus test for misjoinder of counts under Rule 8(b) is whether the acts described in the indictment are tied by a 'common thread' to each other or the participants.").   Courts also generally require that the United States show a logical connection between the offenses. *See United States v. Cardall*, 885 F.2d 656, 668 (10th Cir. 1989)("With respect to the misjoinder argument, we believe that the indictment clearly alleged an ongoing series of interconnected illegal transactions amounting to the operation of a criminal enterprise."); *see also United States v. Sarkisian*, 197 F.3d 966, 976 (9th Cir. 1999)(*quoting United States v. Ford*, 632 F.2d 1354, 1372)(9th Cir. 1980))("[T]here must be a some greater 'logical relationship' between the occurrences. Such a logical

5

relationship may be shown by the existence of a common plan, scheme, or conspiracy."); *United States v. Mackins*, 315 F,3d 399, 413 (4th Cir. 2003)(invalidating joinder of defendants charged with counterfeit check offenses and money laundering and drug conspiracies because indictment contained no evidence of connection between or among them); *United States v. Cortinas*, 142 F.3d 242, 248-49 (5th Cir. 1998)(holding that joinder was improper because defendants were not associated with codefendants' criminal organization).

Joinder is often permitted when at least one count alleges a conspiracy, two requirements must be met: (1) the charges must have been joined in good faith, and (2) the joinder must have a firm basis in fact, considering the face of the indictment and the evidence adduced at trial." *United States v. Rehal*, 940 F.2d 1, 4 (1st Cir. 1991). However, "distinct conspiracies, as opposed to one conspiracy, 'can complicate, and in some circumstances defeat the propriety of a joinder.'" *United States v. DeLeon*, No. CR 15-4268 JB, 2021 WL 6134696, at *29 (D.N.M. Dec. 29, 2021)(*quoting United States v. Rivera-Hernandez*, 439 F. Supp.3d 20, 30 (D.P.R. 2020)).

In this instance, the joinder of Ms. Leveille and her co-defendants in the same indictment is legally improper. First, as to Counts 3, 6 and 7, Ms. Leveille's co-defendants are not alleged to have participated in the same acts or in the same series of acts consisting those offenses. Fed. R. Crim. P. 8(a). Counts 3, 6, and 7 (nearly half of the counts) are offenses in which some of Ms. Leveille's co-defendants are not alleged to have participated. Although all defendants are alleged to have participated in Counts 1 and 2, Co-Defendants Hujrah Wahhaj and Subhanah Wahhaj are not alleged to have

6

participated in acts consisting of the offense charged in Count 3. Count 3 alleges that Ms. Leveille, Siraj Wahhaj, and Lucas Morton conspired to attack and kill officers and employees of the United States. Co-Defendants Hujrah Wahhaj and Subhanah Wahhaj are excluded as participants of this offense and there is no allegation that they participated in the same acts or series of acts consisting of that offense similar to those alleged of Ms. Leveille and Co-Defendants Siraj Wahaj and Lucas Morton.

As to Counts 6 and 7, the acts of Co-Defendant Siraj Wahhaj, the biological father of John Doe statutorily exempted from federal prosecution, are, as a matter of law, not acts consisting of the offenses charged in Counts 6 and 7. However, Ms. Leveille (stepmother to John Doe) and the remainder of her Co-Defendants (aunts and uncle of John Doe), are charged with conspiring and committing acts consisting of the offenses charged in Counts 6 and 7. The innocent acts of traveling with Co-Defendant Siraj Wahhaj and his son John Doe, residing with Siraj Wahhaj and John Doe, providing for John Doe's basic needs, save the Western medical treatment rejected by his biological father, and praying for John Doe's spiritual recovery are not acts amounting to the offenses charged in Counts 6 and 7. Thus, Counts 3 and 6 and 7 lack a common thread to each of the defendants.

Second, on its face, the Superseding Indictment fails to specify a common thread among the counts. The Superseding Indictment appears to identify three distinct conspiracies. The first distinct conspiracy is comprised of Counts 1, 2, and 3. Count 1 charges all defendants and includes alleged facts detailing a singular plan or agreement among all defendants, that is, to provide material support and resources. The factual

7

allegations set forth each defendant's alleged involvement to support the manner and means for accomplishing that conspiracy, and overt acts allegedly committed by each of the defendants in furtherance of that conspiracy.  Similarly, Count 2 charges all defendants with a singular plan, to provide material support and resources, to accomplish a singular intent, to utilize the material support and resources for the preparation of and in carrying out attacks to kill officers and employees of the United States.  Count 3, however, only charges three defendants as having an agreement to kill officers and employees of the United States and identifies those same three defendants as committing specified overt acts in furtherance of that limited agreement.

      Counts 4 and 5 allege a different conspiracy altogether, one that does not appear to be interconnected with Counts 1, 2, or 3.  These charges entail Ms. Leveille having status as an "alien," being illegally and unlawfully in the United States, knowing that she was prohibited from possessing a firearm, possessing the firearms and ammunition, and the possession of those firearms and ammunition in or affecting interstate commerce. Further, the charges entail an agreement amongst Ms. Leveille's Co-Defendants to provide Ms. Leveille "possession of firearms" and to aid and abet Ms. Leveille in doing so.

      Counts 6 and 7 allege yet a third conspiracy, to kidnap, conceal and hold John Doe, resulting in his death.  The factual allegations include an agreement among four defendants, Jany Leveille and Co-Defendants Hujrah Wahhaj, Subhanah Wahhaj, and Lucas Morton, to commit the kidnapping of John Doe and allege overt acts committed by these four defendants include transporting John Doe in interstate commerce and

concealing and holding him, resulting in his death. These charges specifically exclude Co-Defendant Siraj Wahhaj who has a legal exemption from criminal liability in federal court.

Although Counts 6 and 7 (kidnapping charges) incorporate by reference the factual allegations contained in paragraphs 2 through 13 of Count 1 (material support charge), there is no information alleged that establishes a common thread or logical relationship between the charges forming the basis of the first conspiracy theory (material support) and the third conspiracy theory (kidnapping). Similarly, Counts 4 and 5 (prohibited person in possession of firearms and ammunition) incorporate by reference the factual allegations contained in paragraphs 2 through 23 of Count 1, but no information is alleged that establishes the common thread or logical relationship between the charges forming the basis of the second conspiracy theory (prohibited person in possession of firearms and ammunition) and first (material support) and third (kidnapping) conspiracies identified.

Fourth, Counts 6 and 7 (kidnapping conspiracy), which carry vastly greater potential penalties as compared to all the other charges of the Superseding Indictment, and Counts 4 and 5 (prohibited person in possession of firearms and ammunition) are different in character, are based on differing acts, and are clearly unconnected to and do not constitute parts of any apparent common scheme or plan of Counts 1, 2, and 3. The failure to meet these criteria render the joinder of Counts 6 and 7 and Counts 4 and 5 legally improper pursuant to Rule 8(a) of the Federal Rules of Criminal Procedure. *See Defendants' Motion to Sever Counts 6 and 7 For Trial* (Doc. 648).

There being no "common thread" between the each of the counts or the defendants, and no common evidence as to the various counts, and no logical connection between the offenses, the Superseding Indictment fails the *Caldwell* and *Cardall* tests. As a result, the Court should find that the joinder is legally inappropriate under Fed. R. Crim. P. 8(b) and sever Ms. Leveille's case as well as the cases of her four Co-Defendants Siraj Wahhaj, Hujrah Wahhaj, Subhanah Wahhaj, and Lucas Morton.

### B. Even if joinder was proper, severance of Ms. Leveille's case from her co-defendants is required and appropriate

In cases where defendants are properly joined, severance the Court may nevertheless grant severance if joinder would prejudice the parties. Fed. R. Crim. Pro. 14(a). Severance is appropriate when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. at 539. The Court may "order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." *Id*. In deciding on a motion for severance, the district court "has a duty to weigh the prejudice resulting from a joint trial of co-defendants against the expense and inconvenience of separate trials. *United States v. Small*, 423 F.3d 1164, 1181.

### A. Inability to Elicit Exculpatory Evidence

Where a defendant basis his motion for severance upon a claim that he needs a co-defendant's testimony, an analysis of cases from several circuits reveals "the following factors appear relevant":

> 1) the likelihood that the co-defendant would in fact testify at the movant's severed trial and waive his Fifth Amendment privilege; 2) the significance of the testimony in relation to the defendant's theory of defense; 3) the exculpatory nature and effect of such testimony; 4) the likelihood that the co-defendant's testimony would be impeached; 5) the extent of prejudiced caused by the absence of the testimony; 6) the effect of a severance on judicial administration and economy; 7) the timeliness of the motion.

*United States v. McConnell*, 749 F.2d 1441, 1445 (10th Cir. 1984).

Ms. Leveille anticipates that if the Court were to grant a severance of Ms. Leveille's case from the case of her Co-Defendants, Co-Defendant Siraj Wahhaj (who is not charged in those counts) would testify as to exculpatory evidence concerning Ms. Leveille's lack of knowledge and lack of acts amounting to the offenses charged in Counts 6 and 7 (kidnapping conspiracy counts). Without severance, Co-Defendant Siraj Wahhaj would be unable to testify.

Further, Ms. Leveille anticipates that if the Court were to grant a severance of Ms. Leveille's case from the case of her Co-Defendants, Co-Defendants Siraj Wahhaj, Hujrah Wahhaj, Subhanah Wahhaj, and Lucas Morton would testify as to the exculpatory evidence concerning Ms. Leveille's lack of intent, erroneous assertions by the United States as to the factual allegations in paragraphs 1, 3, 4, 5, 9, 10, 12, 13, 16, 21, and 23, as well as the absence of any agreement to commit the offenses charged in Counts 1, 2, and 3. In specific instances, to be identified in sealed *ex parte* affidavits, Ms. Leveille's Co-Defendants would testify to an admission to certain operative facts which lack of the purported purposes and intent alleged by the United States. The failure to sever Ms. Leveille's case from the cases of her Co-Defendants renders Ms. Leveille unable to secure witnesses on her behalf and an inability to present her defense.

11

The failure to sever Ms. Leveille's case from the cases of her Co-Defendants also renders Ms. Leveille's Co-Defendants unable to elicit exculpatory evidence from Ms. Leveille. In particular, Ms. Leveille is uniquely positioned to provide testimony concerning the writings in the "diary" which the United States intends to introduce as co-conspirator statements in support of its allegations in Counts 1, 2 and 3. Ms. Leveille would testify as to the preparation of those writings, the possession and safeguarding of those writings, the meaning of those writings, the impact of her mental disease and defect on those writings, and her observations about the effect the writings in the "diary" had on others. Further, Ms. Leveille also possesses testimonial evidence of an exculpatory nature concerning the United States assertions contained in paragraphs 21 and 23 of the Superseding Indictment. Without a severance of Ms. Leveille from her Co-Defendants, Ms. Leveille is unable to provide this exculpatory information. Ms. Leveille assumes her Co-Defendants will join in this motion and will request an affidavit to be filed under seal and *ex parte* for the Court's *in camera* consideration.

Ms. Leveille requests the Court conduct an *in camera* review of the defendants statements the United States intends to use at trial. Fed. R. Crim. P. 14(b). Ms. Leveille also respectfully requests leave of the Court to supplement this Motion with affidavits filed under seal and *ex parte* from Co-Defendants Siraj Wahhaj, Hujrah Wahhaj, Subhanah Wahhaj, and Lucas Morton, for an *in camera* review by the Court and to present additional support at the time of an evidentiary hearing.

### C.     Mutually Exclusive Defenses

The Tenth Circuit requires a three-step inquiry to determine whether a defendant

will be prejudiced by a joint trial because he and a co-defendant have mutually exclusive defenses:

> (1) whether the two defenses are so antagonistic as to be mutually exclusive;
>
> (2) whether there is a serious risk that a joint trial would compromise a specific trial right or prevent the jury from making a reliable determination of guilt or innocence; and
>
> (3) if a defendants shows the first two facts, the trial court must weight the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration.

*United States v. Jones*, 530 F.3d 1292, 1304 (10th Cir. 2008). To establish that the trials must be severed, "the conflict between the defendants' defenses must be such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other." *Id*. (*quoting United States v. Pursley*, 474 F.3d 757, 765 (10th Cir. 2007)).

Ms. Leveille has identified a defense unique to herself that is so antagonistic as to be mutually exclusive to the defenses of her Co-Defendants. On March 3, 2023, Ms. Leveille filed a *Notice Pursuant to Fed. R. Crim. P. 12.2* (Doc. 657) providing notice of her intent to rely upon the defense of insanity at the time of the alleged offenses and an intent to introduce expert testimony relating to mental disease or defect or mental condition of the defendant that bears upon issues of guilt. None of Ms. Leveille's co-defendants have given notice of intent to present such a defense.

As part of that defense, Ms. Leveille intends to introduce the testimony of Bureau of Prisons Psychologist, Dr. Andrea Correa. Pursuant to a Court order, Dr. Correa conducted an evaluation of Ms. Leveille and determined that she was suffering from a

mental defect which "clearly impaired her ability to function." TR at 19, ln. 9.   Dr. Correa testified concerning Ms. Leveille's symptoms and presentation, her cognitive functioning, her mental health diagnosis, the severity of her mental health diagnosis, Ms. Leveille's religious and cultural beliefs, her medical history, and her medical treatment and restoration, and the status of her beliefs at the time of the alleged offenses which were impacted by her mental health diagnosis.

Additionally, it is very likely Ms. Leveille's defenses at trial will be mutually exclusive as to the interpretation of Islam, which forms a key part of her defense.

In order for the jury to believe the core of Ms. Leveille's defense, the jury must necessarily disbelieve the core of the anticipated defenses of Ms. Leveille's Co-Defendants. *Jones*, 530 F.3d at 1304.   Such a result would be insurmountably prejudicial to Ms. Leveille and her Co-Defendants.   Additional prejudice results if the jury were to impute Ms. Leveille's defenses to her Co-Defendants and their defenses imputed to Ms. Leveille.

Additional prejudicial confusion and complication arises as it is not clear whether the evidence the United States intends to introduce would be admissible as to all defendants, especially given the privileges held by the married defendants who may claim privileges specific to themselves.   As stated in the severance motions filed by Defendants Hujrah Wahhaj, Subhanah Wahhaj, and Siraj Wahhaj, certain evidence from discovery which has been identified that may be admissible exclusively as against Ms. Leveille or Mr. Morton, would not be admissible against the whole.   Specifically, Co-Defendants Hujrah Wahhaj and Subhannah Wahhaj have identified Ms. Leveille's

14

writings contained in a "diary" and a document allegedly written by either Siraj Wahhaj or Lucas Morton called "phases of a terrorist attack" which appear to be the sole evidence that would be admissible by the United States to support its frivolous terrorist charges. Given the discovery disclosed to date, the defense does not anticipate that the United States can meet is burden under the Federal Rules of Evidence at a *James Hearing* to prove by a preponderance of evidence that (1) a conspiracy existed; (2) each defendant and the declarants were members of the conspiracy; and (3) the declarants made the statements during the course of and in furtherance of the conspiracy. *See United States v. James*, 590 F.2d 575, 579-80 (5th Cir. 1979); Fed. R. Evid. 801(d)(2); *United States v. Thornburg*, 645 F.3d 1197, 1210 (10th Cir. 2011).

    WHEREFORE, Ms. Leveille respectfully moves this Honorable Court for an Order severing her case for trial from that of her co-defendants pursuant to *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993), and Federal Rules of Criminal Procedure 8(b) and 14. Pursuant to Federal Rule of Criminal Procedure 14(b), Ms. Leveille also respectfully requests the Court conduct an *in camera* inspection of Ms. Leveille's statements that the government intends to use as evidence.

    Ms. Leveille also respectfully requests leave to supplement this Motion to submit affidavits of Ms. Leveille's Co-Defendants under seal and *ex parte* for the Court's *in camera* review and consideration.

    Further, Ms. Leveille hereby gives Notice of her intent to join in Defendants' Motion to Sever Counts 6 and 7 For Trial (Doc. 648).

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489


 *Electronically filed on 03/17/23*
Aric Elsenheimer, AFPD
Angelica Hall, AFPD
*Counsel for Ms. Leveille*