IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.   No. 1:18-CR-02945-WJ

JANY LEVEILLE, et al.,

    Defendants.

### DEFENDANTS' REPLY IN SUPPORT OF MOTIONS TO SEVER COUNTS 6 AND 7 [DOC. 648] AND MOTION TO SEVER COUNT 3 [DOC. 608]

Defendant Subhanah Wahhaj, through counsel, Ryan J. Villa and Justine Fox-Young, joined by Defendants Siraj Wahhaj, through counsel Marc H. Robert and Thomas Clark, Hujrah Wahhaj, through counsel Marshall J. Ray and Donald Kochersberger, and Lucas Morton, pro se, files this Reply brief in support of Defendants' motions to sever counts 6 and 7 [Doc. 648] and to sever count 3 [Doc. 608][1], respectively.

1. On February 3, 2023, Subhanah Wahhaj filed a Motion to Sever Count 3 for Trial. Doc. 608.

2. On February 24, 2023, Subhanah Wahhaj filed a Motion to Sever Counts 6 and 7 for Trial. Doc. 648.

3. On March 3, 2023, the government filed a combined response to three individual motions to sever defendants and to Subhanah Wahhaj's Motion to Sever Count 3. Doc. 663.

---

[1] Defendant Siraj Wahhaj does not join in the Motion to Sever Count 3 but does join in the Motion to Sever Counts 6 and 7.

4. On March 10, 2023, the government filed a response to Subhanah Wahhaj's Motion to Sever Counts 6 and 7 for Trial. Doc. 676.

5. This reply in support of both Motions is timely filed pursuant to the Court's order permitting an extension. Doc. 694.

## **Introduction**

As detailed in Defendants' motions, Count 3 and Counts 6 and 7, respectively, are improperly joined with the remaining counts under Rule 8. The facts in support of the Government's theory on the charge of conspiracy to kill a government agent (Count 3) and the kidnapping case (Counts 6 and 7), respectively, are simply not of the same or similar character as the other counts in the indictment, nor are they in any way connected to or based on the same acts or transactions which give rise to the other counts. *See* Docs. 608, 648.

Additionally, Defendants have made a showing of actual prejudice under Rule 14 and have detailed specific trial rights, including the right to testify in their own defense and to call witnesses in their defense, which will be compromised if the Court does not sever these counts. *See United States v. Pursley*, 474 F.3d 757, 766 (10th Cir. 2007). Most critically, if the Defendants cannot testify in their own defense with respect to the terrorism counts while also exercising the right to remain silent at a trial on the kidnapping counts, the jury will be prevented from reliably assessing their respective guilt and/or innocence as to each count.

In arguing generally against Defendants' motions to sever counts, the government makes passing reference to "considerations of judicial efficiency and resources, risks of inconsistent verdicts, harm to certain witnesses that would come from having to testify about the same facts multiple times, a common set of operative facts, [and] a lack of

prejudice to any of the Defendants for being tried together" but does not actually substantiate these arguments. *See, e.g.,* Doc. 663 at 1. Nothing in the government's responses serves to counter Defendants' robust arguments that the prejudice they will suffer if counts 3, 6 and 7 remain joined with the others, particularly given the critical witnesses they will not be able to call in their defense and testimony they themselves will not be able to offer, far outweighs any expense or inconvenience due to separate trials. *See United States v. Martin*, 18 F.3d 1515, 1518 (10th Cir. 1994).

### I. The Government's Current "Theory of the Case" Does Not Make Joinder Proper

Under Federal Rule of Criminal Procedure 8(a), "[t]he indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." "[I]t is fundamental that charges may be joined in one indictment where they arise from the same or continuing act or transaction and are of the same or similar character, thus coming together to constitute parts of a common scheme." *United States v. Shelton*, 736 F.2d 1397, 1409 (10th Cir. 1984).

In its response to the motion to sever count 3, the government argues that there exists a "single set of facts and witnesses applicable to all five Defendants' charges," doc. 663 at 13, but then altogether fails to elaborate in support of this assertion. The notion that a single set of facts and witnesses supports the government's kidnapping case as well as the terrorism case is clearly belied by Defendants' arguments as to the dissimilarity of the offenses.

In its subsequent response opposing Defendants' Motion to Sever Counts 6 and 7, the government argues for the first time that the kidnapping of John Doe "constitutes the very heart of the material support for terrorism and conspiracy to murder charges." Doc 676 at 14. The government goes on to articulate its current theory of the case, that "Defendants' material support was motivated by JOHN DOE's death and Leveille's assertion that JOHN DOE would be resurrected and lead them in jihad, to include the murder of federal employees and others" and that John Doe "was just a prop in Defendants' scheme to prepare for and engage in jihad." Doc. 676 at 14-15.

This contorted theory attempts to shoehorn the kidnapping allegations into the material support statute in a way that is certainly not contemplated by or consistent with the language of that statute. The only way John Doe could be central to the terrorism allegations is if his body were an instrumentality or resource the Defendants were concealing, which could only be the case under the patently unreasonable theory that his body would be resurrected and would have identified targets for the Defendants. *See* 18 U.S.C. 2339A(a) ("Whoever provides material support or resources or conceals or disguises the nature, location, source, or ownership of material support or resources, knowing or intending that they are to be used in preparation for, or in carrying out, a violation of [various statutes]. . . . .") Simply put, just because the government alleges that Defendants had a belief that John Doe would be resurrected and would lead them into war doesn't make John Doe's alleged kidnapping and his death "resources" for material support.

Moreover, even that theory leaves a glaring hole and is temporally incoherent because—it goes without saying-- John Doe was alive when he was allegedly kidnapped, and there is no evidence or even an allegation by the United States that anyone intended

for John Doe to die. Rather, according to the United States' own factual recitation, the Defendants "wanted to take JOHN DOE to Alabama and later to New Mexico to perform exorcisms on him and to cast the demons from his body." Doc. 676 at 6. At best, under the Government's version of events, the prospect of John Doe rising from the dead and identifying targets arose long after the alleged kidnapping, when John Doe was already dead. Only then, according to the government, did the concept of resurrection fomenting jihad arise.

In fact, the indictment itself includes no such allegations, instead alleging with respect to Counts 1 and 2 only that Defendants conspired to provide and provided material support to terrorists insofar as they engaged in activities including building a training compound, outfitting it with firearms, and training with and firing weapons. *See* Doc. 85 at 2-6. With respect to Count 3, the indictment alleges that Defendants Leveille, Siraj Wahhaj and Lucas Morton conspired to kill officers and employees of the United States. Doc. 85 at 6. If in fact the alleged kidnapping and facts underlying it were instrumental to the material support and terrorism counts, the government altogether failed to allege this in its superseding indictment.

### II. The Government Fails to Counter Defendants' Argument That Severance is Required Under Rule 14 Due to Prejudice

The government argues that Defendants fail to make an adequate showing of prejudice and instead only provide vague suggestions as to what testimony they would offer if the case were severed but that they cannot offer with the counts joined. *See* Doc. 676 at 23-24. In fact, Subhanah and Hujrah Wahhaj offer very specific assertions as to the detail of the testimony they would be able to elicit if the kidnapping case were severed, including that Siraj Wahhaj, who would have no Fifth Amendment privilege in a separate

kidnapping case, would testify that his sisters were not in any way involved in planning to take AG from his mother's home in Georgia, in seizing or confining AG, or participating in any exorcisms. This is in line with the standard set out in *United States v. Sampson*, 385 F.3d 183 (2d Cir. 2004), and *United States v. Cross*, 335 F.2d 987 (D.C. Cir. 1964). The government also gives short shrift to the very specific assertions that, if counts 6 and 7 are severed, Defendants could and would freely exercise their respective rights to testify in their own defense with respect to the Government's terrorism case, on the subjects set out in detail in Defendants' motion without also answering questions regarding the government's kidnapping case. *See* Doc. 648 at 15-17. Subhanah and Hujrah Wahhaj have clearly demonstrated the need for severance as they have "ma[de] a convincing showing that [they] ha[ve] both important testimony to give concerning one count *and* a strong need to refrain from testifying on the other." *United States v. Martin*, 18 F.3d 1515, 1518-19 (10th Cir. 1994)(internal quotation marks and citations omitted)(emphasis added). In order to demonstrate "convincing need," a defendant must "present enough information . . . to satisfy the court that the claim of prejudice is genuine and to enable it to intelligently weigh the considerations of economy and expedition in judicial administration against the defendant's interest in having a free choice with respect to testifying." *Id.* at 1519.

That the government believes that its evidence demonstrating the sisters' generically "support[ed] the group's activities and training" (which it does not reveal) will outweigh their anticipated testimony is a question for the jury and is irrelevant to the Court's analysis. Doc. 676 at 21. Based apparently on speculation and conjecture, as the government also references no evidence in support of this claim, the government argues that Subhanah and Hujrah's "financial and other material support of, and participation

- 6 -

in, the same underlying set of facts, up to and including the training and material support for terrorist attacks reflected in Counts 1 and 2" is intertwined with the kidnapping counts. These assertions are unsupported, and along with concerns regarding judicial efficiency, are substantially outweighed by the prejudice that will be visited on Defendants if the counts are not severed.

Defendants have made a particularized showing as to how joinder of the two cases will deprive them of a fair trial and will compromise their right to put on a complete defense, meaning that severance is not discretionary but required. *See, e.g.*, *Baker v. United States*, 329 F.2d 786 (10th Cir. 1964), *cert. dismissed*, 379 U.S. 853 (1964); *United States v. Butler*, 494 F.2d 1246, 1256 (10th Cir. 1974). Limiting instructions cannot overcome this prejudice because 1) most critically, they would do nothing to resolve the problem of Defendants' inability to testify freely and present witness testimony in their own defense, and 2) jurors simply cannot be expected to successfully compartmentalize and retain information regarding the limited admissibility of evidence especially given the extremely dissimilar charges in this indictment. *See, e.g., United States v. Foutz*, 540 F.2d 733, 738 (4th Cir. 1976)("the prejudice to the defendant, arising from the weakness of the government's one case and strength of the other, so marked that we cannot presume that the jury adhered to limiting instructions and properly 'segregated the evidence into separate intellectual boxes,'" (quoting *Bruton v. United States*, 391 U.S. 123, 131 (1967)).

## **CONCLUSION**

For the reasons discussed above, Defendants respectfully request that the Court enter an Order severing Count 3 and Counts 6 and 7 and hold three separate trials on the charges in the superseding indictment.

Respectfully submitted,

*/s/ Ryan J. Villa*
Ryan J. Villa
The Law Office of Ryan J. Villa
5501 Eagle Rock Ave NW Ste. C2
Albuquerque, NM 87113
(505) 639-5709
ryan@rjvlawfirm.com

*/s/ Justine Fox-Young*
Justine Fox-Young
Justine Fox-Young, PC
5501 Eagle Rock Ave NE Ste C2
Albuquerque, NM 87113
(505) 796-8268
justine@foxyounglaw.com

*Attorneys for Defendant Subhanah Wahhaj*

&

*/s/ Donald F. Kochersberger III*
Donald F. Kochersberger III
Business Law Southwest
320 Gold Ave. SW, Suite 610
Albuquerque, NM 87102
(505) 848-8581
Donald@BusinessLawSW.com

*/s/ Marshall J. Ray*
Marshall J. Ray
Law Offices of Marshall J. Ray, LLC
514 Marble Ave, NW
Albuquerque, NM 87111
(505) 312-2748
mray@mraylaw.com

*Attorneys for Defendant Hujrah Wahhaj*

**CERTIFICATE OF SERVICE**

    I hereby certify that on March 31, 2023 a copy of the foregoing document was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

                                          /s/*Justine Fox-Young*
                                          JUSTINE FOX-YOUNG