IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Cause No. 18 CR 2945 WJ |
| SIRAJ IBN WAHHAJ, et al., | § § § | |
| Defendants. | § § | |

**DEFENDANTS' MOTION TO EXCLUDE OR LIMIT TESTIMONY OF GOVERNMENT'S WITNESS**

SIRAJ IBN WAHHAJ, Defendant, by and through his appointed counsel, Thomas Clark and Marc H. Robert, and joined by all represented Defendants through their respective counsel[1], moves the Court for an order excluding or limiting the testimony of Stephen "Randy" Watt ("Watt"), whom the Government has identified as a testifying expert [Doc. 706], pursuant to *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Company v. Carmichael*, 536 U.S. 137 (1999), and in support of his motion would respectfully show the Court as follows:

**Procedural History**

On August 31, 2018, Mr. Siraj and four others were arrested on a criminal complaint [Doc. 1], filed on the same date, charging possession of a firearm by one

---
[1] Counsel was unable to secure Defendant Lucas Morton's position prior to filing this motion.

lacking immigration status and conspiracy to commit that offense. Mr. Wahhaj made his initial appearance on September 4, 2018 [Doc. 13] and was temporarily detained at that time [Doc. 14]. On September 11, 2018, Mr. Wahhaj was charged by indictment with the same offenses [Doc. 25]. He was arraigned on September 12, 2018 [Doc. 33] and ordered detained [Doc. 36]. Mr. Wahhaj has been held in custody since that time.

On March 13, 2019, a superseding indictment was filed charging all five Defendants with conspiracy to provide material support to terrorists, in violation of 18 U.S.C. § 2339A (count 1); providing material support to terrorists, in violation of 18 U.S.C. § 2339A and 2 (count 2); conspiring to murder an officer or employee of the United States, in violation of 18 U.S.C. § 1117 (count 3); conspiring to commit an offense against the United States, in violation of 18 U.S.C. § 371 (count 4); and possession of a firearm while unlawfully in the United States, in violation of 18 U.S.C. § 922(g)(5) and 2 (count 5). All of the other Defendants, with the exception of Mr. Wahhaj, were also charged with kidnapping resulting in death, in violation of 18 U.S.C. § 1201(c) (count 6) and conspiracy to commit that offense, in violation of 18 U.S.C. § 1201(a) (count 7). Counts 6 and 7 are based on the allegation that Mr. Wahhaj's son, AG, was kidnapped and subsequently died. At this time, Mr. Wahhaj remains joined with the other Defendants for trial, which is scheduled for September 25, 2023 [Doc. 529].

On July 9, 2019, the Government filed its first notice of intent to offer expert testimony at trial [Doc. 127]. That notice indicated that Stephen "Randy" Watt would offer testimony at trial as follows:

>Mr. Watt will offer expert testimony about the design, construction, purposes, and use of the training areas on the property; the design, construction, purposes, and use of other areas on the property, to include the dwellings, barriers, and tunnels; whether and to what extent the training was consistent with defensive or offensive purposes; whether and to what extent the defendants' and others' firearms and tactical training activities on the property were consistent with known terrorist tactics, techniques, and procedures; the sources and significance of writings of the defendants, including handwritten notes "Phases of a Terrorist Attack"; and general terrorism and counter-terrorism knowledge and doctrine generally and as applied to the facts of this case. The testimony of Mr. Watt may include expert opinions or specialized knowledge regarding firearms and tactics training and counter-terrorism that is derived from his education, training, and professional experience.

On April 3, 2023, the Government filed its second notice of intent to offer expert testimony at trial [Doc. 706]. That notice essentially mirrored the first notice as to Watt's proposed expert testimony, and attached Watt's report and CV, which are attached hereto as Exhibit 1 and Exhibit 2, respectively.

**Argument and Authority**

Mr. Watt lacks the training and experience to offer expert testimony described in his report regarding the "domestic terrorism" in which he alleges the Defendants were engaged. The conclusions announced in Watt's report, which presumably would be the basis for his proposed "expert" testimony, are nothing more than prejudicial speculation about the purposes of the Defendants in building their remote, off-the-grid redoubt in far Northern New Mexico and their intent in possession, use and training with firearms. Watt should be precluded from presenting this prejudicial speculation to the jury.

Federal Rule of Evidence 702 governs admissibility of expert testimony. It states in relevant part:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "The proponent of the expert bears the burden by a preponderance of the evidence to establish that the requirements for admissibility have been met." *Array Tech., Inc. v. Mitchell*, Civ. No. 17-087 JCH/LF, 2020 WL 1514621, at *1 (D.N.M. Mar. 30, 2020) (citation omitted).

Fed. R. Evid. 702 provides that the trial court must "determine whether the expert is proposing to testify to (1) scientific, technical, or other specialized knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *United States v. Muldrow*, 19 F.3d 1332, 1337 (10th Cir. 1994). Additionally, the court must consider potential expert testimony under the frameworks articulated in "a trilogy of Supreme Court cases" *Daubert*, *Kumho Tire Co.*, and *Joiner*, that "clarify the district court's gatekeeper role under Federal Rule of Evidence 702." *United States v. Rodriguez-Felix,* 450 F. 3d 1117, 1122 (10th Cir. 2006). The trial court "'generally must first determine whether the expert is qualified.'" *United States v. Avitia-Guillen*, 680 F.3d 1253, 1256 (10th Cir. 2012) (quoting *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (*en banc*)). "[T]he gatekeeping inquiry must be tied to the facts of a particular case." *Kumho Tire,* 526 U.S. at 150 (citations and quotations omitted). "Despite the flexibility granted to district courts, the text of Rule 702 requires that they ensure that proffered expert testimony be 'based on sufficient facts or data' and 'the product of reliable

4

principles and methods.'" *United States v. Medina-Copete*, 757 F.3d 1092, 1103 (10th Cir. 2014)(quoting Fed.R.Evid. 702(b) & (c)).

The trial court may qualify a witness as an expert if they possess "knowledge, skill, experience, training, or education" on the subject. Fed. R. Evid. 702. When the expert's testimony is called into question the trial judge must look to whether the expert has "a reliable basis in the knowledge and experience of [the relevant] discipline" *Daubert*, 509 U.S. at 592.  The Tenth Circuit has held that an expert is "required to possess such skill, experience or knowledge in that *particular field* as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (emphasis added).  It is not enough for an expert to have general expertise in the field; they must have "sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case." *Kumho*, 526 U.S. at 156.

Federal Rule of Evidence 704(b) instructs that no expert witness may state an opinion as to whether a defendant acted with the mental state or condition constituting an element of the offense or of a defense.  "Such ultimate issues are matters for the trier of fact alone."  Fed.R.Evid. 704(b).

Federal Rule of Evidence 403 empowers the Court to exclude evidence if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

**<u>Mr. Watt is not qualified to render an opinion in this matter.</u>**

Mr. Watt's CV reflects long and honorable service in law enforcement and the military. He has many awards and certificates for various aspects of each of those careers. However, an examination of that impressive list of accomplishments will find little or no information about Mr. Watt's education or experience with terrorism or terroristic activities. While Mr. Watt's military service has included tours in Afghanistan and Iraq, neither his military education nor his military training and experience includes significant (or indeed, any) training regarding terrorism. And even his military service in theaters of operation in which well-known terrorist organizations were operating fails to provide the sort of expertise which would support the Government's sponsorship of his testimony about the nature, purpose and aims of an impoverished extended family in the high deserts of Northern New Mexico.

Similarly, Mr. Watt's roles as a member of various boards or directors or advisory groups fail to include any with terrorism as a feature or subject. While his service in such organizations is laudable, it wholly fails to support the Government's efforts to add his testimony to the evidentiary mix during trial.

His professional affiliations, whether law enforcement, military or academic, likewise fail to provide support for the Government's request to allow Mr. Watt's testimony as an expert in the nature, purposes and aims of activities alleged to constitute material support for terrorism. The sole item in the list of these categories that provides barely nominal support for the request is Mr. Watts involvement with something called the "Technical Support Working Group (TSWG), Office of Combatting Terrorism,

6

Office of Secretary of Defense (OSD)." However, that item on its face provides little or no support for the Government's proffer of this witness' qualifications as an expert. Mr. Watt's copyrights, and his published works, contain nothing relating to terrorism.

Mr. Watt includes a list of matters with respect to which he has provided testimony in his CV. Until the Government tapped him to be the expert on whether the Defendants were providing material support for terrorism, he had not, and has not, been qualified as an expert in court on terrorism issues. Mr. Watt reports that he is considered an "expert in terrorism", but little or nothing in his reported background, training, experience, publication, teaching or prior testimony provides any actual support for that claim or for the Governments request that he be qualified as an expert in this case.

**The proposed expert testimony is not based on sufficient facts or data; neither is it the product of reliable principles or methods.**

The trial court's inquiry into the proffered expert does not stop at their qualifications. Under Fed. R. Evid. 702, the district court has an obligation to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. When making this determination, the district court assesses "whether the reasoning or methodology underlying the testimony is scientifically valid . . ." and applicable to the facts at issue in the case. *Id.* At 592-93. The Supreme Court has held that "where [expert] testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co.*, 526 U.S. 137 (quoting *Daubert,* 509 U.S. at

7

592). While absolute certainty is not required, expert opinions "must be based on facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation…" *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (quoting *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir.1995)).

Expert testimony must additionally be "the product of reliable principles and methods." Fed. R. Evid. 702.  To be reliable under *Daubert*, an expert's testimony must be based on scientific knowledge, which "implies a grounding in the methods and procedures of science" based on actual knowledge, not "subjective belief or unsupported speculation." *Id.* At 590.  *Daubert* further states: "an inference or assertion must be derived by the scientific method ... [and] must be supported by appropriate validation— i.e. 'good grounds,' based on what is known." *Id.*

Here, Watt proposes to testify as to the *purpose* which the Defendants' home, surrounding area and equipment were to be put, and the Defendants' aims and goals in constructing their ramshackle and poorly-resourced home.  Moreover, the Government proposes to have this witness testify that the berms and tunnels and sagebrush were intended by the Defendants for offensive rather than defensive purposes.  This, after the proposed witness reflects on writings that clearly suggest a defensive purpose.  This remarkable conclusion appears to be presented in the absence of any substantively reasonable or reliable data or fact.

There is no methodology, no facts or data, no research or peer-reviewed studies whatsoever to support this bald assertion, or for any of the proposed witness' other "expert" opinions.  The witness should be excluded on this basis alone.

8

### Mr. Watt should be excluded because his proposed testimony would invade the province of the jury by opining on the Defendants' intent and state of mind.

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Fed.R.Evid. 704(b); *see also United States v. Morris*, 576 F.3d 661, 674 (7th Cir. 2009). The testimony that the Government seeks to present to the jury in this case purports to "explain" the Defendants' intent and state of mind in constructing their home and engaging in lawful training with legally possessed firearms. The proffered witness intends to tell the jury that the Defendants were planning an offensive terroristic event, rather than the self-defensive purpose that the actual facts suggest. In addition to being unqualified to render testimony about actual terrorism and having no facts or data to support his suppositions, Mr. Watt proposes to invade the province of the jury by professing to know the Defendants' intent and state of mind. The proposed testimony violates Rule 704(b).

In the event that the Court finds Mr. Watt's proposed testimony to be more in line with Fed.R.Evid. 704(a) than with the prohibition set forth in 702(b), the testimony should be excluded on the alternative basis that the minimal probative value of the testimony is substantially outweighed by the danger of unfair prejudice. Fed.R.Evid. 403.

Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.  The Tenth Circuit has held that in the context of Fed.R.Evid. 403, "[e]vidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *United States v. Rodriguez*, 192 F.3d 946, 951 (10th Cir.1999).

"Evidence is not unfairly prejudicial merely because it damages a party's case. See United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008); United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003); United States v. Martinez, 938 F.2d 1078, 1082 (10th Cir. 1991). Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee's note)." *United States v. Young*, 2019 U.S. Dist. LEXIS 3022 (Browning, J).

The weighing of probative value and the danger of unfair prejudice is not a linear calculation, but is rather a thing to be judged on a sliding scale.  Evidence with powerful probative value requires an exceptional danger of unfair prejudice to warrant exclusion; the inverse also applies.  *See United States v. Young*, 2019 U.S. Dist. LEXIS 3022 (Browning, J).  As described above, the probative value of Watt's unqualified

10

speculation is, at best, minimal.  On the other hand, the unfair prejudice to the Defendants of Watt's testimony that he expertly determined one of the essential elements of the crimes charged against the Defendants cannot be overstated.  Applying the Fed.R.Evid. 403 test to the facts here, because the probative value of Watt's unqualified speculations is minimal, and the danger of unfair prejudice is high, the proposed testimony should be excluded.

### Request for a *Daubert* Hearing

Mr. Wahhaj requests that the Court schedule a hearing at which the proposed witness' qualifications to testify as an expert, and the bases for the opinions set forth in his report, may be tested.  Inquiry into those qualifications, and the data, facts and methodology that form the basis for the witness' opinions could then be fleshed out, providing the Court with a more complete record on which to base a decision.  A pretrial hearing would also avoid the need to have the issue argued while a jury watches or waits.

### CONCLUSION

Mr. Watt lacks the qualifications to present expert testimony on the subject of terrorism to the jury in the trial of this cause.  His report lacks data and facts to support his speculations about the purposes for the construction of the Defendants' home and their intended actions.  His conclusions are not based on reliable principles or methods.  His testimony would improperly invade the province of the jury.  The minimal probative value of the evidence would be substantially outweighed by the danger of unfair prejudice.  For any of these reasons, or for any combination of them, Mr. Watt must be excluded as an expert witness at the trial of this cause.

WHEREFORE, SIRAJ IBN WAHHAJ, Defendant, by and through the undersigned counsel and joined by all Defendants, respectfully moves the Court for the setting of a *Daubert* hearing; following that hearing, for an order excluding Randy Watt as an expert witness; and providing for such other and further relief to which the Court may find Mr. Wahhaj and the other Defendants to be justly entitled.

Respectfully Submitted,

/s/  *Electronically filed on 5/5/23*
MARC H. ROBERT
P.O. Box 25271
Albuquerque, New Mexico 87102
575.571.7435
m505robert@gmail.com

THOMAS CLARK
432 Galisteo Street
Santa Fe, New Mexico 87501
505.820.1825
tmclark@cjplawsf.com

*Co-Counsel for Mr. Wahhaj*