IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | CRIMINAL NO. 18-CR-02945 WJ |
| vs. ) | |
| ) | |
| JANY LEVEILLE, ) | |
| SIRAJ WAHHAJ, ) | |
| HUJRAH WAHHAJ, ) | |
| SUBHANAH WAHHAJ, and ) | |
| LUCAS MORTON ) | |
| ) | |
| Defendant. ) | |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' RESPONSE TO GOVERNMENT LETTER TO COURT (DOC. 738) AND REQUEST FOR HEARING**

The United States of America, through its undersigned counsel, files this Response to Defendants' "Response to Government Letter to Court (Doc. 738) and Request for Hearing." Doc. 740. The Defense seeks an order for a subpoena pursuant to Rule 17(c) to obtain potential New Mexico State Police (NMSP) lapel cam footage and reports related to a NMSP officer's interaction with Lucas Morton on June 30, 2018. Doc. 740 at 2. The Defense also requests that the Court re-open the evidentiary hearing on the issue of the Defendants' standing to challenge the local warrant served on August 3, 2018, so that the Defense can "supplement the record with testimony by Officer Bryan Donis" of the NMSP. *Id.*

The United States does not oppose the issuance of a Rule 17(c) subpoena to the NMSP for the requested lapel camera footage and reports, to the extent they exist and are still in the possession of the New Mexico State Police.[1]

---

[1] The Defense assumes that lapel footage referenced in a CNN article from August 2018 is part or connected to the FBI report attached to the United States' letter to the Court (Doc. 738-1). As the footage is not in the custody or control of the United States, and the NMSP is not part of the

1

The United States does oppose, however, re-opening the evidentiary hearing on the issue of standing to take testimony from NMSP Officer Donis. The report speaks for itself, and describes an interaction that, while containing slightly more detail, was already described in the record by Jason Badger as having taken place and the reason for the NMSP not intervening to enforce a private trespass action (a matter the Taos County Sheriff's Office would handle anyway):

> Q: So you asked a State Police officer to go up there and talk to Mr. Morton?
>
> A [Mr. Badger]. Yeah.
>
> Q. And do you know what happened?
>
> A. He went up there. I remember him coming back. He came back to our house. He said he needed to see some kind of documents proving, I think it was, that we owned the land and whatnot. So we showed him, and then he was going to go back up there, but somebody told him not to.

Doc. 707 at 73. *See also id.* at 78 ("Q. Now, you also asked law enforcement, I believe you said a New Mexico State Police officer, to help you get Lucas Morton off your land, right? A. Yes, sir. Q. You requested him to go up to your land and talk to him? A. Yes, sir. Q. But that didn't work either, right? A. No, huh-uh.").

As briefed extensively in the United States' previous filings on this issue, the relevant facts as to the issue of the objective reasonableness of the Defendants' claim of standing are (1) who the true property owners were, (2) whether the Defendants had any legally recognizable property rights to occupy Lot 28, Unit 2, at the time of the search, and (3) whether the true property owners made it known to the Defendants that they were not permitted to be on their property, thus making

---

prosecution team in this case, the United States has not seen this footage and cannot verify whether the CNN article's reference is accurate.

the Defendants trespassers on that land at the time of the search warrant execution on August 3, 2018.

Under all of the pertinent case law, these are the only facts that affect the analysis of whether society is prepared to recognize as reasonable a claimed expectation of privacy at a certain property or location when the legitimacy of a person's presence is questioned. Regardless of what a certain NMSP officer may or may not have thought—correctly or incorrectly—about the situation, or the Defendants' presence, or TCSO's investigation, or the FBI's connection, none of that information has any tendency to make the operative facts related to the legitimacy of the Defendants' occupation of the property more or less true. An NMSP officer's thoughts do not change the evidence in the record before the Court, namely that (1) the Badgers were the true property owners, (2) the Badgers had attempted every means available to them to get the Defendants off their property, which the Defendants knew, and (3) Defendants had no legal right to be on the property at the time of the search warrant's execution.

The Defendants' state that additional testimony from the NSMP officer who interacted with Lucas Morton would "bolster" the Defendants' argument that they "had a subjective expectation of privacy" at the compound on the Badgers' property, and that this subjective expectation would be recognized by society as reasonable. Doc. 740 at 2–3. This claim fails as a matter of logic.

As an initial matter, the "bolstering" of the Defendants' claimed subjective expectation of privacy at their compound on the Badgers' property is irrelevant because their subjective expectation of privacy is not at issue. All parties agree that the Defendants subjectively supposed they had an expectation of privacy at the non-permanent compound they built on Lot 28, Unit 2, of the Costilla Meadows Subdivision. "Bolstering" this argument is irrelevant to the Court's

determination and is not a basis for taking more testimony from a NMSP officer who had an interaction with Lucas Morton.

Regarding the question that is before the Court—whether the Defendants' claimed expectation of privacy on the Badgers' land on August 3, 2018, would be recognized by society as objectively reasonable—testimony by NMSP Officer Donis would also have no effect on that question, as noted above. If anything, the FBI report corroborates and reinforces the evidence in the record of the objective *unreasonableness* of the Defendants' claim to an expectation of privacy.

First, it corroborates existing evidence that Lucas Morton's claim that the Defendants' right to occupy the property was a result not of some recognized tenet of the law, but rather of him "inheriting the land from his creator." Doc. 738-1 at 3; *see also* Doc. 707 at 80:4-13 (Lucas Morton had expressed a right for the Defendants to occupy the Badgers' property due to their "beliefs").

Second, the report describes Lucas Morton as blocking off the driveway and behaving in a way to keep Officer Donis from coming onto or seeing the Badgers' property, which corroborates evidence in the record that a substantial (and recognized by courts as objectively unreasonable) purpose for the Defendants' refusal to vacate the property was to further the ongoing criminal activity charged, at the very least, in the kidnapping counts of the indictment. *Id.*; *see also* Doc. 707 at 216:8-217:7 (noting the kidnapping victim was still missing at the time of the search warrant).

Finally, the report also corroborates Jason Badger's testimony that he and Tonya Badger, as the property owners, continued to pursue whatever route they could to get the Defendants off their property after their eviction lawsuit effort was dismissed for being filed in the wrong court,

and that the Defendants were aware of these continued efforts to get them to leave. *Id.* at 2–3; *see also* Doc. 707 at 73:9-74:3; 78:15-79:6.

As stated in its letter to the Court, the United States was unaware that this report had not been included in the extensive discovery provided to the Defendants in 2019. However, the United States did not make use of the report during the litigation of the standing issue, despite its helpfulness to the United States' position. At this point, the report has little effect on the facts of consequence central to the Court's analysis of the Defendants' standing to challenge the search warrant executed on August 3, 2018, on Lot 28, Unit 2 of the Costilla Meadows Subdivision. The Court can also review the report for itself. Testimony from NMSP Officer Donis about the contents of the report cannot change the facts of consequence already established by the evidence in the record, and the Defendants' request for re-opening the evidentiary hearing should be denied.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

/s/_____
TAVO HALL
KIM BRAWLEY
Assistant United States Attorneys
P.O. Box 607
Albuquerque, NM 87102
(505) 346-7274

**CERTIFICATE OF SERVICE**

I hereby certify that on May 10, 2023, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon defense counsel and that a copy was mailed to pro se Defendant Lucas Morton.

/s/_____
Tavo Hall
Assistant United States Attorney