IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cr. No. 18-2945 WJ |
| | ) |
| JANY LEVEILLE, ET AL, | ) |
| | ) |
| Defendants. | ) |

**UNITED STATES' MOTION TO EXCLUDE THE
TESTIMONY OF JOOST JANSSEN**

Pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Federal Rules of Evidence 702, 703, and 704, the United States moves to exclude Defendant Subhanah Wahhaj's proposed expert testimony of Joost Janssen. The United States also moves to exclude the proffered testimony pursuant to Fed. R. Evid. 401, 402, and 403. For the reasons discussed below, the purposes for which Defendant Subhanah Wahhaj (Subhanah) proposes to offer Mr. Janssen's testimony are not appropriate because the testimony would be of so little probative value that it would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and a waste of time.

I.  Introduction

Fed. R. Crim. P. 16(b)(1)(C) governs a defendant's disclosure regarding expert witnesses and provides that a defendant must, at the government's request, provide, amongst other things, a written summary of all opinions the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial. The complete statement of the expert witness's opinion must also include the bases and reasons for the expert's opinion.

1

*Id*.

The Supreme Court in *Daubert* interpreted Federal Rule of Evidence 702 to require district courts to ensure that an expert's scientific testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 508 U.S. at 597. The Court suggested a nonexclusive list of factors for courts to consider in determining whether the proposed scientific expert testimony is "reliable," including whether the theories or techniques (1) have been or can be tested; (2) have been subjected to peer review and publication; (3) have a known or potential error rate; (4) are subject to standards governing their application; and (5) enjoy widespread acceptance.

Following the decision in *Daubert* and other cases, including *Kumho Tire Co. v. Carmichael,* 119 S.Ct. 1167, 1171 (1999), the gate-keeping responsibilities of district courts were expanded through an amendment to Rule 702 in 2000, which changed the rule to include all expert testimony, not just testimony based in science, and the rule was again amended in 2011. Rule 702 now states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Notwithstanding Amended Rule 702, the admissibility of proposed expert testimony continues to depend upon the reliability and helpfulness to the trier of fact. Indeed, the Court in *Kumho* held that *Daubert*'s non-exclusive factors to aid trial courts in assessing the reliability of scientific expert testimony might also be applicable in assessing the reliability of non-scientific testimony, depending upon the particular circumstances of each case. *Id.* at 1175. The trial court has the

responsibility to ensure that the scientific evidence satisfies the relevance standard for admissibility. If evidence has no grounding in fact, then it cannot in any meaningful way be relevant to resolving a disputed issue. The application of the factors set forth in *Daubert* and *Kumho* requires an analysis of the evidence to determine the extent to which the theory in question relies on the expert's own interpretations, or on subjective rather than on objectively verifiable criteria.

II.     The Charges in the Superseding Indictment

On March 14, 2019, a federal grand jury returned a seven-count superseding indictment, alleging violations of 18 U.S.C. §§ 2339A and 2 (Providing Material Support to Terrorists and Conspiracy to do the same), 1117 (Conspiracy to Murder an Officer or Employee of the United States), 371 (Conspiracy to Commit an Offense Against the United States), 922(g)(5) (Possession of Firearms by a Person Unlawfully in the United States), and 1201 (Kidnapping and conspiracy to do the same).  Doc. 85.  Jany Leveille (Leveille) and Lucas Morton (Morton) are charged with each count, but  Siraj Wahhaj (Siraj) is not charged with Counts 6 and 7 (18 U.S.C. § 1201), and Subhanah and Hujrah Wahhaj (Hujrah) are not charged with Count 3 (18 U.S.C. § 1117).

To convict the Defendants of Count 1, Conspiracy to Provide Material Support to Terrorists,  in violation of § 2339A, the United States must prove the following elements beyond a reasonable doubt:

1. The Defendants entered into a conspiracy;
2. The objective of the conspiracy was to provide material support or resources; and
3. The Defendants knew and intended that the provision of such material support or resources would be used in preparation for, or in carrying out, a violation of 18 U.S.C. § 1114.

*United States v. Hassan*, 742 F.3d 104, 111-12 (4th Cir. 2014) (internal citation omitted); *United States v. Khan*, 309 F. Supp. 2d 789, 821 (E.D. Va. Mar. 4, 2004); Doc. 85 at 2.  For purposes of

§ 2339A, "'material support or resources' . . . includes currency and other property, training, weapons, expert advice or assistance and personnel." *Hassan*, 742 F.3d at 112 (citing 18 U.S.C. § 2339A(b)(1)). "Material support or resources" is broadly defined to include:

> any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials.

*Id.* at § 2339A(b)(1). Section 1114 criminalizes killing or attempting to kill any officer or employee of the United States while the person is engaged in or on account of the performance of official duties. Notably, however, the government does not need to satisfy the elements of the predicate offense to secure a conviction under § 2339A. The Eleventh Circuit has explained:

> [T]he government need not prove all the elements of … the object offense, in order to satisfy the elements of the substantive § 2339A charge. By its elements, § 2339A criminalizes material support given "in preparation for" the object offense – clearly, the object offense need not even have been completed yet, let alone proven as an element of the material support offense.

*United States v. Hassoun*, 476 F.3d 1181, 1188 (11th Cir. 2007). In sum, it is sufficient to prove that the Defendants provided material support or resources knowing that they would be used in preparation for a predicate offense. *Id*.

Count 2 is a substantive § 2339A charge. Thus, to convict the Defendants of Count 2, the United States must prove the third element of Count 1, listed above, beyond a reasonable doubt. Count 2 includes an aiding and abetting theory, and the elements of this theory are as follows:

1. Every element of the charged crime was committed by someone other than the Defendant(s); and
2. The Defendant(s) intentionally associated him/herself in some way with the crime and intentionally participated in it as he/she would in something he/she wished to bring about.

*See* 10th Cir. Pattern Jury Instr. 2.06 (2021) (modified).

To convict the Defendants of Count 3, Conspiracy to Murder an Officer or Employee of the United States, in violation of 18 U.S.C. § 1117, the government to prove beyond a reasonable doubt:

1. The Defendants entered into a conspiracy;
2. The object of the conspiracy was to kill or attempt to kill officers and employees of the United States government (here, Federal Bureau of Investigation employees, government officials, and military personnel), on account of—or while such officers and employees were engaged in—the performance of their official duties; and
3. That at least one overt act was committed in furtherance of the conspiracy.

*Hassan*, 742 F.3d at 113 (upholding defendant's convictions for both 18 U.S.C. §§ 2339A and 1117).

To convict the Defendants of Count 4, Conspiracy to Commit an Offense Against the United States, the United States must prove the following elements beyond a reasonable doubt:

1. The Defendants agreed with at least one other person to violate the law, i.e., to assist Leveille in unlawfully possessing a firearm;
2. One of the conspirators engaged in at least one overt act furthering the conspiracy's objective;
3. The Defendants knew the essential objective of the conspiracy;
4. The Defendants knowingly and voluntary participated in the conspiracy; and
5. There was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

*See* 10th Cir. Pattern Jury Instr. 2.19 (2021) (modified).

To convict the Defendants of Count 5, Possessing a Firearm While Unlawfully in the United States, in violation of 18 U.S.C. §§ 922(g)(5) and 2, the United States must prove the following elements beyond a reasonable doubt:

1. Leveille knowingly possessed a firearm or ammunition;
2. At the time of the possession, Leveille was illegally or unlawfully in the United States;
3. Leveille knew she was illegally or unlawfully in the United States; and
4. Before Leveille possessed the firearm or ammunition, the firearm or ammunition moved at some time in interstate or foreign commerce.

*See* 10th Cir. Pattern Jury Instr. No. 2.44 (2021) (modified).  The aiding and abetting instructions

included above apply to the remaining Defendants.

To convict the Defendants of Kidnapping in violation of 18 U.S.C. § 1201, as charged in Counts 6 and 7, the United States must prove the following elements beyond a reasonable doubt:

1. The Defendants, knowingly acting contrary to law, kidnapped John Doe by seizing, confining, inveigling, decoying, abducting, or carrying him away as charged;
2. The Defendants kidnapped John Doe for some purpose or benefit;
3. The Defendants willfully transported John Doe; and
4. The transportation was in interstate commerce.

> To "kidnap" a person means to unlawfully hold, keep, detain, and confine the person against the person's will. Involuntariness or coercion in connection with the victim's detention is an essential part of the offense.

*See* 10th Cir. Pattern Jury Instr. 2.55 (2021) (modified); *see also United States v. Walker*, 137 F.3d 1217, 1220 (10th Cir. 1998) (setting forth the requirements for conviction under § 1201(a)(1)); *United States v. Toledo*, 985 F.2d 1462, 1467 (10th Cir. 1993). Again, because Count 6 is a conspiracy charge and because Count 7 includes an aiding and abetting theory, the aforementioned elements pertaining to conspiracy and aiding and abetting also apply.

In this case, the Defendants are alleged to have worked together to commit these various crimes. Indeed, they are each charged in the specific overt acts that further describe their criminal conduct. Doc. 85.

### III. The Proposed Testimony of Joost Janssen

Subhanah has provided notice that she intends to call Joost Janssen, whom she identifies as a weapons and military tactics expert, to testify at trial. Doc. 723 at 2. The notice of his testimony states that Mr. Janssen:

> . . . will opine that Ms. Leveille and the group of 4 other co-defendants and 12 children, did not form a homegrown, or any other form of terrorist organization. He concludes that Ms. Leveille and her peers do not meet the criteria to be identified as a terrorist group.

*Id.* Mr. Janssen's curriculum vitae appears to substantiate his familiarity with Navy Seal operations,

6

instruction, and training; some overseas terrorism interdiction or security work on behalf of the U.S. military and CIA; and combat tactics, techniques, and practices. *See* Mr. Janssen's Curriculum Vitae and Report, attached hereto as Exhibit 1.

Mr. Janssen prepared a written report that is intended to summarize his opinions and the bases for those opinions. *Id*. By his account, Mr. Janssen's report is based on his review and analysis of "all the case related documents provided to me by defense attorney Ryan Villa through Perfectly Legal, Inc."[1] and on his "experience, education and training in firearms, tactics, counter terrorism and intelligence gathering." Mr. Janssen relied on his review of a handful of books, including *United States of Jihad*, by Peter Bergen (2017), *Cults that Kill*, by Wendy Joan Biddlecombe Agsar (2018), *Earthship*, Vols. 1, 2 & 3 (1990); and *Homegrown Terrorism Inside of Democratic States*, published by the U.S. Army Command and General Staff College (2014). In summary, Mr. Janssen opines that "the behavior of the group is not consistent with terrorist ideology, but rather an ideology of religion, self-sufficiency and privacy." *See* Exhibit 1 at 8. He further opines as follows:

> Leveille and her peers do not meet the criteria to be identified as a terrorist group. This is further detailed below in the Department of Homeland Security 8 Signs of Terrorism section. The group did not, at any time, have communications with any known terrorists or terrorist organizations. They did not raise money or other resources for the purpose of terrorism. Any firearms or tactical training conducted on the property although dynamic, was defensive in nature. Any improvements done to the property were consistent with the local earthship style of construction. Morton had received training in this style of building. Terror training camps generally focus on constructing facilities for housing recruits, building mockup structures, and expanding training areas. There was no indication that the group utilized their efforts and resources in that nature. The documents related to the Phases of a Terrorist Attack, that were handwritten by Wahhaj are consistent with notes related to his training as a private investigator and bodyguard, for use in his executive protection business. The original source of the written notes is not similar to anything that would be written by a terrorist organization, but rather from a training program to prevent and stop terrorism. There were also no signs of a recon of any target of attack. A group interested in conducting terrorism, would spend considerable time researching and investigating suitable targets.

---

1 Mr. Janssen does not state what materials he received from the defense. *See* Exhibit 1 at 2.

*Id*. at 2.

Mr. Janssen's testimony is intended, among other things, to rebut the anticipated opinions of the Government's expert witness, Randy Watt, who is expected to testify about "the firearms and tactics training the defendants and others engaged in on their property in Amalia, New Mexico; . . . about the design, construction, purposes, and use of the training areas on the property; the design, construction, purposes, and use of other areas on the property, to include the dwellings, barriers, and tunnels; whether and to what extent the training was consistent with defensive or offensive purposes; whether and to what extent the defendants' and others' firearms and tactical training activities on the property were consistent with known terrorist tactics, techniques, and procedures; the sources and significance of writings of the defendants, including handwritten notes 'Phases of a Terrorist Attack"; and general terrorism and counter-terrorism knowledge and doctrine generally and as applied to the facts of this case." Docs. 127 at 2; 267 at 2; and 706 at 2.

### IV.   Discussion

A.   Mr. Janssen is not qualified.

In order to determine whether the expert opinion of Mr. Janssen is admissible, the district court must first determine whether he is qualified by "knowledge, skill, experience, training, or education" to render an opinion. *See* Fed. R. Evid. 702. Mr. Janssen is not qualified to testify in this case.

At issue in this case, among other things, is the knowledge, ability, and intent of the Defendants to engage in a conspiracy to provide material support or resources knowing and intending that the provision of such material support or resources would be used in preparation for, or in carrying out, a violation of 18 U.S.C. § 1114. Also at issue is the knowledge, ability, and intent of the Defendants to enter into a conspiracy the object of which was to kill or attempt

to kill officers and employees of the United States government (here, Federal Bureau of Investigation employees, government officials, and military personnel).

While Mr. Janssen is generally knowledgeable about regular, "white side" Navy Seal operations, instruction, and training; overseas terrorism interdiction or security work on behalf of the U.S. military and CIA; and combat tactics, techniques, and practices, he does not claim to have knowledge or expertise in investigations involving material support or conspiracy. Indeed, nothing in the Defendant's disclosures reveals any familiarity or background of any kind with investigations, criminal or otherwise, of murder or material support. Mr. Janssen has no law enforcement experience, is not an intelligence officer, and has not been trained by the CIA at "the Farm" as its career officers are. Rather, Mr. Janssen is a weapons and military tactics operator and training expert, based on his claimed "career as a Military and CIA Advisor to Hollywood . . . teach[ing] actors how to perform close quarters battle scenes, to helping recreate the look of actual combat." Exhibit 1 at 14. Nothing in Mr. Janssen's CV indicates a personal role in the events he describes in his military and CIA experience, other than generally being present.

Moreover, nothing in Mr. Janssen's education, experience, training, or background indicates that he has knowledge or expertise in terrorist groups, foreign or domestic, their identification, characteristics, histories, ideologies, or practices. Mr. Janssen has no apparent familiarity, expertise, education, training, or experience with regard to domestic terrorism. Mr. Janssen further does not claim and has no apparent expertise regarding religious ideology, cults, privacy, or earthships, yet he offers opinions on these matters, apparently based on having recently read a book or two on these issues. Again, Mr. Janssen is a weapons and military tactics expert with alleged experience working overseas on behalf of the U.S. military and the

CIA.

      B.  <u>The proposed testimony of Mr. Janssen is not relevant</u>.

Mr. Janssen would offer testimony that the Defendants "did not form a homegrown, or any other form of terrorist organization." Exhibit 1 at 2. Mr. Janssen would also offer testimony that the Defendants "did not, at any time, have communications with any known terrorists or terrorist organizations." *Id.* Mr. Janssen would "conclude that Ms. Leveille and her peers do not meet the criteria to be identified as a terrorist group," despite there being no such "criteria" at issue in this case, and no requirement whatsoever that the Defendants be "identified as a terrorist group" as part of the proof of any of the charges against them.

The superseding indictment alleges, among other things, that the Defendants engaged in a conspiracy to provide material support or resources, knowing and intending that the provision of such material support or resources would be used in preparation for, or in carrying out, a violation of 18 U.S.C. § 1114, and also entered into a conspiracy to kill or attempt to kill officers and employees of the United States Government. There is no allegation and there is no evidence that the Defendants provided material support to a foreign terrorist organization or to a "homegrown terrorist organization." There is no allegation that the Defendants formed a "homegrown terrorist organization," and no such allegation or evidence is necessary to prove the offenses with which the Defendants are charged.

Mr. Janssen's opinions are therefore not relevant to the determinations that any jury will be making in this case. The proposed expert testimony is nothing more than the extension of the Defendants' continued efforts to fight the straw man argument that this case is about defining terrorism and defining the Defendants as terrorists. No charge requires any proof of these subjects, and any evidence presented by the Defendants, to include expert testimony, geared to proving the

Defendants were or were not "terrorists" is irrelevant and should be excluded.

      C.      <u>The opinions of Mr. Janssen are not reliable and would be confusing to the jury</u>.

In the event the Court finds Mr. Janssen qualified, it must also determine whether his opinions are "reliable" under the principles set forth under *Daubert* and *Kumho*. In this regard, the trial court is required to ensure that the expert's opinion is supported by more than the expert's word and that there are "good grounds based on what is known." *See Daubert*, 509 U.S. at 590. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 147 (1997); *see also Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1344 (11th Cir.2003) ("[A]n expert's failure to explain the basis for an important inference mandates exclusion of his or her opinion."). It is an abuse of discretion to allow expert testimony which lacks factual support in the record. *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002).

Mr. Janssen's report is based on the faulty assumption that the Government must prove that the Defendants were terrorists, that they formed a "homegrown terrorist organization," or that they provided material support to a "homegrown terrorist organization" or to a "foreign terrorist organization." As noted, Mr. Janssen has no apparent expertise in what constitutes a "terrorist," a "homegrown terrorist organization," or a "foreign terrorist organization"—rather, his expertise appears confined to weapons and military tactics operations and training.

In any event, testimony regarding the characteristics and practices of a terrorist, homegrown terrorist organization, or foreign terrorist organization would only serve to confuse the jury, because none of these things are relevant to the offenses with which the Defendants have been charged. The Government has not alleged and is not burdened with proving that the

Defendants were terrorists, nor that they formed or provided material support to a homegrown terrorist organization, nor that they provided material support to a foreign terrorist organization. Introducing these matters into evidence would unnecessarily mislead and confuse the jury as to the Government's allegations and burden.

The Defendants have failed to provide sufficient information for the Court to determine whether the proposed testimony is reliable. In essence, Mr. Janssen proposes to testify that the Defendants were not terrorists, did not provide material support to a foreign terrorist organization, did not form a homegrown terrorist organization, and did not engage in behavior "consistent with terrorist ideology, but rather an ideology of religion, self-sufficiency and privacy." Exhibit 1 at 8. Mr. Janssen, being primarily a weapons and military tactics expert, is unqualified to render these opinions. More crucially, however, these opinions have nothing to do with the offenses with which the Defendants are charged. They are not charged with being terrorists, nor with providing material support to a foreign terrorist organization, nor with forming a homegrown terrorist organization. Absent from Mr. Janssen's report is any discussion of the offenses with which the Defendants have been charged—conspiracy to provide material support in preparation of the murder of federal employees and officials, conspiracy to murder federal employees and officials, kidnapping, and unlawful possession of firearms.

In addition, given Mr. Janssen's clear lack of qualifications to opine on "ideologies" of "self-sufficiency and privacy," which is apparently based on Mr. Janssen's having read a book on "earthship" homes, Subhanah appears to be seeking to admit through Mr. Janssen inadmissible hearsay by having him testify about the Defendants' plans and statements made at the compound and made afterward about their plans and purposes at the compound. Although

the Federal Rules of Evidence permit some leeway for experts to testify to hearsay evidence, Fed. R. Evid. 703 does not permit a party to "call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013); *see also Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013) ("Rule 703 was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion."). If the Defendants want to claim their compound was a simple earthship home, and their weapons and tactics training were simple home defense measures with no specific purpose in mind, they can take the stand and make those statements. Otherwise, they are attempting to use Mr. Janssen as a mouthpiece to admit those statements for them.

In sum, Mr. Janssen's proposed testimony misses the mark—if it belongs anywhere, it belongs in a different case, not this one. Allowing Mr. Janssen to testify would inevitably mislead and confuse the jury. Mr. Janssen's proposed testimony further fails to provide any meaningful data, methodology, or analysis necessary to establish the reliability of the opinions rendered. The Defendants, as proponent of their experts' testimony, have not met their burden of establishing any admissibility requirements by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171 (1987).

## V.   Conclusion

For the foregoing reasons, pursuant to Fed. R. Crim. P. 16(b)(1)(C) and Fed. R. Evid. 401, 402, 403, and 702, the United States respectfully requests this Court exclude the testimony of Mr. Joost Janssen because he is not qualified to offer the proffered testimony, and the testimony is not relevant, reliable, or proper. To the extent Mr. Janssen's testimony is relevant,

it presents a risk of unfair prejudice, confusing the issues, misleading the jury, and wasting time. If the Court is not prepared to exclude Mr. Janssen's testimony on the papers, the United States respectfully requests a *Daubert* hearing.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

*Electronically filed*
KIMBERLY A. BRAWLEY and
TAVO HALL
Assistant United States Attorneys
P.O. Box 607
Albuquerque, NM 87102
(505) 346-7274

I HEREBY CERTIFY that I electronically filed
the foregoing with the Clerk of the Court
using the CM/ECF system which will send
notification to counsel for the Defendants. A
copy was also mailed to Defendant Lucas Morton.

  *Filed Electronically*
KIMBERLY A. BRAWLEY
Assistant United States Attorney