IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>JANY LEVEILLE, )<br>SIRAJ IBN WAHHAJ, )<br>HUJRAH WAHHAJ, )<br>SUBHANAH WAHHAJ, and )<br>LUCAS MORTON, )<br>)<br>Defendants. ) | CRIM. NO. 18-CR-2945 WJ |

**UNITED STATES' RESPONSE TO DEFENDANTS' JOINT MOTION TO EXCLUDE EXPERT TESTIMONY OR IN THE ALTERNATIVE FOR *DAUBERT* HEARING**

The United States responds in opposition to the Defendants' Joint Motion to Exclude Expert Testimony or in the Alternative for *Daubert* Hearing (hereinafter Motion), filed May 15, 2023 (Doc. 754), and states as follows:

I.  INTRODUCTION

The United States provided notice to the Defendants three separate times of its intention to call Gloria Smikle, a nurse practitioner, as a witness at trial. The first notice was filed nearly four years ago on July 9, 2019, and it states in pertinent part:

> . . . the United States gives notice that it intends to introduce during its case-in-chief at trial, expert testimony and testimony that may arguably be considered as expert testimony, as described in the following paragraphs.
> \*\*\*
> 3. The United States further intends to call Gloria Smikle, Nurse Practitioner, the medical care provider of John Doe, to testify about medical treatment she provided John Doe prior to his death. Ms. Smikle will testify about John Doe's medical diagnosis and treatment history. Ms. Smikle will also testify that John Doe suffered from a seizure disorder, that his medical conditions required continuing medical treatment, that he required daily prescription medication, and that death was the likely eventual outcome in the event John Doe did not receive his required treatment and prescription medication. Ms. Smikle will also testify about physical and

emotional stressors that could aggravate John Doe's medical conditions. The testimony of Nurse Practitioner Smikle may include expert opinions or specialized knowledge regarding medical diagnosis and treatment that is derived from her education, training, and professional experience.

Doc. 127 at 1-3.

On September 28, 2020, the United States filed a Supplemental Notice of Intention to Offer Expert Testimony. Doc. 267. The language pertaining to Ms. Smikle in the second notice was identical to the language in the first notice. *Compare* Docs. 127 at ¶ 3 and 267 at ¶ 3.

Thereafter, on November 22, 2022, the Court issued a Scheduling Order. Doc. 529. According to the Scheduling Order, the United States was required to disclose its expert witnesses and their reports by April 3, 2023, and the Defendants were required to do the same by April 17, 2023. *Id*. at 1. A *Daubert* motions deadline was set for May 1, 2023. *Id*. at 2.

On April 3, 2023, the United States filed a Second Supplemental Notice of Intention to Offer Expert Testimony, and while this third filing was very similar to the first two filings, there were some notable differences, particularly regarding Ms. Smikle's proposed testimony. Doc. 706. This third notice of her testimony stated in pertinent part:

> The United States previously provided notice that it intended to call Gloria Smikle, a nurse practitioner who was one of John Doe's medical providers, to testify about medical treatment she provided John Doe prior to his death, but the United States does not intend to elicit expert opinions from Ms. Smikle. Docs. 127, 267. Ms. Smikle will testify about John Doe's medical diagnosis and treatment history. She will also testify that John Doe suffered from a seizure disorder, that his medical conditions required continuing medical treatment, [and] that he required daily prescription medication. Copies of John Doe's medical records were previously disclosed as bates numbers 24,621-26,185.

Doc. 706 at ¶ 5.

On May 15, 2023, the Defendants filed the instant Motion. Doc. 754. They are seeking to exclude Ms. Smikle's testimony in its entirety, or, in the alternative, for the Court to conduct a *Daubert* hearing. *Id*.

2

The Defendants' Motion is untimely, and the proposed testimony of Ms. Smikle is proper lay testimony. Therefore, the United States respectfully requests that the Motion be denied.

## II. LEGAL ARGUMENT

A. The motion to exclude Ms. Smikle's testimony is untimely.

The Scheduling Order in this case includes May 1, 2023, as the "Daubert motions deadline." Doc. 529 at 2. Despite having been on notice of Ms. Smikle's proposed testimony since July 2019, the Defendants did not comply with this deadline, nor did they seek the Court's permission to extend this deadline; rather, they filed their objection to Ms. Smikle's testimony two weeks late. *See* Doc. 754.

The Defendants have shown an ability to challenge these long-noticed expert witnesses well before the Scheduling Order's deadline to do so. Dr. Phillips and Ms. Smikle were both named in each of the three Notices of Intention to Offer Expert Testimony filed by the United States, and in October 2022 the Defendants objected to and moved for the exclusion of the proposed expert testimony of Dr. Phillips. *See* Docs. 127, 267, 467, and 706. Regarding the similar effort to exclude Ms. Smikle's testimony here, there is no reason why the Defendants could not have timely objected to Ms. Smikle's testimony by the deadline, particularly when they were able to object to Dr. Phillips's testimony seven months ago.

The Defendants have had ample time to object to Ms. Smikle's proposed testimony, especially considering they were put on notice of her testimony nearly four years ago. They did not object by the May 1, 2023 deadline, nor did they seek an extension. Thus, their motion to exclude her testimony is untimely and should be denied.

B. <u>Ms. Smikle's proposed testimony is proper lay testimony and should not be excluded</u>.

The United States' Notices of Intention to Offer Expert Testimony and John Doe's medical records have identified Ms. Smikle as one of the medical providers who treated John Doe when he was alive, but the Defendants complain that her proposed testimony "would constitute expert opinion" because it would "elicit diagnoses and medical treatment regiments that John Doe purportedly required." Doc. 754 at 4. They claim the "government relies on conclusory diagnoses and assertions about John Doe's medical needs" and that an insufficient foundation has been laid for her to offer any opinions. *Id*. In making these arguments, the Defendants ignore the fact that the law permits treating physicians and medical providers to testify as lay witnesses.

The lay testimony of a medical provider is governed by Federal Rule of Evidence 701. Prior to 2000, lay testimony was subject to two restrictions: (1) it had to be rationally based on the perception of the witness, and (2) it had to be helpful to a clear understanding the witness's testimony or the determination of a fact in issue. Fed. R. Evid. 701 (1997).

When this version of Rule 701 was in effect, the Tenth Circuit had two opportunities to rule on the admissibility of treating physicians who testified as lay witnesses and held in both cases the testimony was properly admitted. In *Weese v. Schukman*, 98 F.3d 542, 550 (10th Cir. 1996), the Tenth Circuit held that a treating physician could, as a lay witness, testify about his opinions as the standard of care and causation. In *Davoll v. Webb*, 194 F.3d 1116, 1138-39 (10th Cir. 1999), the Tenth Circuit stated a treating physician "should be given 'loose reign to state what are truly facts, even if they are expert facts'" and held that the treating physician's opinion testimony that a patient suffered from psychological stress was proper lay testimony. The Court explained, "A treating physician, even when testifying as a lay witness, may state 'expert' facts to the jury in order to explain his testimony." *Id*. at 1138. The Court did not take issue with the fact that the

4

treating physician explained to the jury "various medical terminology and drew a diagram explaining [the patient's] injury [because] those actions . . . clarified his testimony on his treatment of [the patient] and did not constitute opinion testimony." *Id*.

In December 2000, Rule 701 was amended to add another criterion for lay witnesses, and since that time the rule has required that lay witness testimony not be based on "scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701 (2000). The rule now reads:

> Opinion Testimony by Lay Witnesses
> If witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a)  rationally based on the witness's perception;
> (b)  helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c)  not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.[1]

The amendment to Rule 701 has precluded treating physicians from offering opinions about standard of care and sometimes about causation, but it has not precluded them from testifying about their observations of patients, the treatment they provided to patients, and the reasons for providing such treatment. *See, e.g.*, *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214-15 (10th Cir. 2011) (internal citations omitted) (precluding treating physician's opinion testimony as to causation); *Witherspoon v. Navajo Ref. Co., L.P.*, CIV 03-1160 BB/LAM, 2005 WL 5988650, at *2 (D.N.M. June 28, 2005) (Black, J.) (holding physician who treated the plaintiffs in a toxic tort case could testify as a lay witness to "observations and treatment developed while actually treating Plaintiffs" but not about "any causation opinions drawn"); *United States v.*

---

[1] Rule 701 was again amended in 2011, but the 2011 changes were only stylistic.

*Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) (physician's testimony about the cause of an injury was a "hypothesis" and therefore not lay testimony); *Derrick v. Standard Nutrition Company*, 2019 WL 2717150, at *9 (D.N.M. 2019) (Brack, J.) (allowing a veterinarian to provide lay testimony about his personal observations of horses and that he ruled out rattlesnake bites or evidence of locally-growing toxins as what harmed the horses, but not allowing him to testify about his diagnosis of monensin toxicity because the specific effects of monensin on horses is outside the realm of a layperson).

> As this Court recognized many years after the Rule 701 amendment went into effect:
>
> A treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party . . . . A treating physician, even when testifying as a lay witness, may state "expert" facts to the jury in order to explain his testimony. . . . . However, a treating physician cannot provide expert testimony regarding any opinion he formed based upon information learned outside of, and not related to, a patient's treatment.

*Munoz v. FCA US LLC*, CV 17-881 WJ/SCY (D.N.M. 2020) 2020 WL 4500603, *1-2 (citing *Davoll*, 194 F.3d at 1138, and *Farris v. Intel Corp.*, 493 F.Supp. 2d 1174, 1180 (D.N.M. 2007). Hence, a treating physician may testify about his or her opinions based on personal knowledge "of the examination, diagnosis and/or treatment of the patient, without regard to whether the doctor may have expressed that particular opinion in any of the patient's medical records." *Munoz*, 2020 WL 4500603, *4 (quoting *Sellers v. Butler*, No. CIV.A. 02-3055-DJW, 2006 WL 2714274, at *4 (D. Kan. Sept. 22, 2006)).

This Court stated, "Because doctors may need to determine the cause of an injury in order to treat it, determining causation may be an integral part of 'treating' a patient." *Id*. at *5 (quoting *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 870 (6th Cir. 2007), *as amended on denial of reh'g and reh'g en banc* (July 2, 2007 ) ("It is within the normal range of duties for a health care provider to develop opinions regarding causation and prognosis during the ordinary course of examination

6

. . . .") (internal citation omitted); also citing *Shapardon v. West Beach Estates*, 172 F.R.D. 415, (D. Haw. 1997) (treating physicians commonly consider the cause of any medical condition presented in a patient, the diagnosis, the prognosis and the extent of disability, if any, caused by the condition or injury); *Baker v. Taco Bell Corp.*, 163 F.R.D. 348, 349 (D. Colo. 1995) (opinions of treating physicians as to the cause of an injury or degree of future injury based on an examination of the patient "are a necessary part of the treatment of the patient.")). However, any testimony about the possible causes and nature of an injury must be derived from the treating physician's personal treatment of the patient and is "confined to the purposes of deciding course of treatment." *Munoz*, 2020 WL 4500603, *5 (citing *Duran v. Home Depot USA, Inc.*, No. CV 13-608 WJ/SCY, 2014 WL 12601509, at *2 (D.N.M. Aug. 13, 2014); *McCloughan v. City of Springfield*, 208 F.R.D. at 242 ("doctors do not operate in a vacuum . . . Thus, the [c]ourt believes causation, diagnosis, and prognosis would be based on the treating physician's personal knowledge. . . .").

Ms. Smikle is a nurse practitioner rather than a physician, but that makes no difference when applying the legal principles that allow treating physicians to testify as lay witnesses. She, like the treating physicians involved in the aforementioned cases, is the person who actually provided medical care to John Doe, the deceased toddler whose medical and physical conditions are relevant facts at issue in this case.

As one of John Doe's treating providers, Ms. Smikle may properly testify as a lay witness and inform the jury of the treatment she provided to John Doe, the medical purpose of that treatment, as well as her observations of John Doe. To the extent she testifies about his diagnosis, such testimony is proper because John Doe's diagnosis is what informed her treatment decisions. Ms. Smikle's proposed testimony, as stated in the United States' Second Supplemental Notice of Intention to Offer Expert Testimony, is pared down in scope from what was anticipated in the

United States' earlier filed notices of expert testimony, and her testimony is proper within the confines of Rule 701 because it is based on her own perceptions, it is helpful to the jury in determining facts in issue, and it is not based on scientific, technical, or other specialized knowledge that falls within the realm of Rule 702.

In sum, Ms. Smikle's proposed testimony is admissible under Rule 701 and Tenth Circuit case law. She will be testifying as a lay witness, and thus her qualifications are not an issue. *See Munoz*, 2020 WL 4500603, *8. As such, there is no need for the Court to conduct a *Daubert* hearing, and the Defendants' Motion should be denied.[2]

### III.   CONCLUSION

Wherefore, the United States respectfully requests that the Defendants' Joint Motion to Exclude Expert Testimony or in the Alternative for *Daubert* Hearing be denied because it was not timely filed and Ms. Smikle's testimony is proper lay testimony. There is no need for the Court to conduct a *Daubert* hearing.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

*Electronically Filed*
KIMBERLY A. BRAWLEY
TAVO HALL
Assistant United States Attorneys
P.O. Box 607
Albuquerque, NM 87102
(505) 346-7274

---

[2] To the extent that the Court determines, either now or at trial, that Ms. Smikle's testimony would be characterized as expert opinion evidence, Ms. Smikle's expertise and qualifications to describe her treatment of John Doe, his medical conditions, and the purpose of medications she prescribed him are self-evident from the fact that she is the actual provider who treated John Doe and whose name appears on many of his medical records. Thus, although she is a lay witness in this case, a *Daubert* hearing is not necessary to determine that Ms. Smikle is also qualified to provide expert opinions on the subject of John Doe's medical conditions and his treatment.

Certificate of Service

I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon defense counsel.  A copy of this pleading is also being mailed to Defendant Lucas Morton.

*Electronically Filed*
Kimberly A. Brawley
Assistant United States Attorney