IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

       Plaintiff,

v.                                                                  No. 1:18-CR-02945-WJ

SIRAJ IBN WAHHAJ,

       Defendant.

### DEFENDANTS' REPLY TO UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OR LIMIT TESTIMONY OF GOVERNMENT'S WITNESS

Defendants, by and through their respective counsel of record, hereby file the following Reply in support of their Motion to Exclude or Limit the Testimony of the Government's Witness, Stephen "Randy" Watt ("Watt" herein) [Doc 742].

### ARGUMENT

Defendants have addressed the matter of the United States' proposed testimony of Watt largely in the context of its relation to alleged terrorist activity by the Defendants. Indeed, the Government notes in its Response that Watt has specialized knowledge in the field of "terrorist training and tactics," and that his opinions will be helpful to demonstrate the alleged "terroristic purpose or usefulness of Defendants' tactics." Doc 764, at 9-10. In this same Response, however, the Government clearly states that it does not need to prove that the Defendants' conduct has any nexus to the definition of "terrorism" and that nothing in its § 2339A charge requires proof of terrorism. [Doc. 764 at 10, 11 and 13].

It is hard to square the contention that, while terrorism is irrelevant to the United States' case, the United States' expert witness should be permitted to provide his opinions replete with references to the Defendants as a terrorist group and ends with the specific conclusion that

1


Defendants are a "'home-grown terrorist group" whose activities are consistent with terrorist doctrines, practices, and goals." [Doc. 742-2 at 6-8] The proposed testimony is such that it would be reasonable to conclude that Watt is holding himself out, to a large extent, as a "terrorism expert". In essence, what the Government is stating is that it intends to present evidence that Defendants are terrorists, despite the fact that such testimony is unnecessary and therefore irrelevant. It is elementary, of course, that evidence that is not relevant (such as that proffered by the Government here via Mr. Watt's testimony) is not admissible. Fed. R. Evid. 402. Consequently, as a threshold matter, all proposed testimony from Watt related to terrorism must be excluded.

Moreover, Watt, is unqualified to provide any of his opinions and has no reliable basis for them. Furthermore, his opinions have no probative value, improperly invade the province of the jury, and are highly prejudicial. Thus, admission of the proposed testimony set forth in Watt's report is improper and admitting these opinions would violate Rules 402, 403, 702, 703 and/or 704 of the Federal Rules of Evidence.

**I.   Watt is not qualified to provide his proposed opinions, and his opinions are not reliable.**

In addition to the irrelevancy of the proposed testimony, based on the Government's own arguments and the prior findings of this Court that the Government does not need to prove that the Defendants were "terrorists" and/or that their training tactics and procedures met some definition of "terrorists" [Doc. 764 at 13], and contrary to the Government's assertions, Watt is also not even qualified to offer expert testimony regarding the "domestic terrorism" in which he alleges the Defendants were engaged. The conclusions announced in Watt's report, which presumably would be the basis for his proposed "expert" testimony, consist of only his own speculation about the purposes of the Defendants in building their remote, off-the-grid redoubt in far Northern New

Mexico and their intent in possession, use and training with firearms. Watt should be precluded from presenting this prejudicial speculation to the jury.

In this case, Watt's report provides a perfect example of an expert overreaching to assist the party who retained him and struggling to provide any testimony that he believes will help that party prevail at trial. He claims to have the requisite knowledge and training to allow him to provide expert testimony regarding Defendants' individual and collective states of mind and intentions despite his complete lack of any psychological education or training. Based on nothing more than conjecture, he opines that Defendants were preparing for, and specifically intended to, "attack[] members of corrupt institutions who did not recognize Leveille's prophet status and convert to Islam" [Doc. 764 at 2] and that Defendants are a homegrown terrorist group who intended to inflict death and fear on innocent victims in the near future." [Doc. 742-2 at 8] He also purports to have the knowledge and ability to provide expert testimony as to Defendants' intentions and purposes regarding pretty much every aspect of their rural life, including everything from the layout of their home (both inside and out) and its contents to their activities. *Id.* at 6-8. He asserts no support for any of these conclusions.

Furthermore, the reliability of Watt's proposed testimony has not, and cannot, be established by the Government, much less tested by the Defendants. In its Response, the Government simply summarily asserts that Watt's opinions are reliable based on "his vast knowledge and experience in studying, training, leading, teaching others, and employing in real-world situations firearms training, urban combat tactics, military construction tactics, and both counter-terrorism and law-enforcement actions against small armed groups or cells." [Doc. 764 at 12] The Government fails, however, to explain how any of this alleged knowledge and experience is: a) relevant; or b) how Watt's firearms and tactical training renders his opinions regarding the

3

purposes, intents, and mindsets of the Defendants in this case. More troubling, the United States doesn't even attempt to assert any articulable basis for these conclusions beyond Watt's own speculation.

"[W]here [expert] testimony's factual basis, data, principles, methods, or their application are called sufficiently into question…the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co.*, 526 U.S. 137. Here, even if Watt has gained familiarity with terrorist tactics and training in other settings through his prior experience and training, it is unclear how that could possibly enable him to provide a reliable expert opinion to the jury that Defendants "are a homegrown terrorist group who intended to inflict death and fear on innocent victims in the near future, once Jany decided it was to occur" or that they were preparing to utilize terrorism-related tactics, techniques, and procedures (TTPs) to coerce persons to accept their ideology or forfeit their lives." [Doc. 742-2 at 8, 6] There is simply no reliable support for these conclusions other than Watt's own conjecture or speculation. As such, his opinions are unreliable and should be excluded.

**II.     Watt's opinions are not helpful and will invade the province of the jury.**

Rule 702 requires that proposed evidence or testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "Relevant expert testimony must logically advance a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (citations and internal quotations omitted).

> Once reliability is established, however, it is still within the district court's discretion to determine whether expert testimony will be helpful to the trier of fact. In making that determination, the court should consider, among other factors, the testimony's relevance, the jurors' common knowledge and experience, and whether the expert's testimony may usurp the jury's primary role as the evaluator of evidence.

*Ram v. N.M. Dep't of Env't*, No. CIV 05-1083, 2006 WL 4079623, at *10 (Dec. 15, 2006) (Browning, J.) (citing *United States v. Rodriguez–Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006)). Here, where the Government asserts that it does not need to provide proof of Defendants' conduct possessing any nexus to terrorism (and that it seemingly has no intention of undertaking any attempt to do so), it is unclear what material aspect of this case can be advanced by Watt's testimony that concludes with the opinion that the Defendants are terrorists and/or had terroristic intentions.

Beyond the alleged nexus to terrorism upon which Watt opines, the Government further claims that his testimony will also "be helpful for the trier of fact to understand when determining whether the Defendants' provided material support to a conspiracy to murder officers or employees of the United States", [Doc. 764 at 11] However, "material support" is specifically defined, with examples, in the statute and corresponding instruction.

> the term 'material support or resources' means any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials

18 U.S.C. § 2339A(b)(1). It is therefore unclear how Watt's testimony could possibly be necessary or even helpful to jurors in determining whether any potential evidence of property, training, and weapons fall within a definition containing the words property, training, and weapons, all of which fall squarely within the knowledge of an average juror.

In this case, conclusory testimony that the Defendants "are a home-grown terrorist group" does not assist the trier of fact to understand the evidence and does not logically advance a material aspect of the case.  Additionally, Watt's dubious "expert" testimony regarding the Defendants' intentions—based primarily on evidence of Defendants efforts to train themselves and the layout

5

of their residence—would not only usurp the jury's primary role as factfinder but also disregards jurors' ability to evaluate the evidence using their own common knowledge and experience. To the extent Watt proposes to provide an explanation of any video and other evidence that will be presented by the Government, the jury is surely capable of reviewing and weighing that evidence themselves.

Similarly, expert testimony otherwise admissible under *Daubert* is inadmissible under Rule 704 if it is an opinion "about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b). Even if an expert's opinion embraces an ultimate issue other than the defendant's mental state or condition (and is therefore admissible under Rule 704(a)[1]), "an expert may not state legal conclusions drawn by applying the law to the facts." *A.E. by and Through Evans v. Indep. Sch. Dist. No. 25, of Adair Cnty., Okla.*, 936 F.2d 472, 476 (10th Cir. 1991). "Pursuant to rule 704, it is the task of the courts 'to distinguish [helpful] opinion testimony that embraces an ultimate fact from [unhelpful] opinion testimony that states a legal conclusion.'" *Rodella*, No. CR 14-2783 JB, 2014 WL 6634310, at *13 (quoting *United States v. Perkins*, 470 F.3d 150, 158 (4th Cir. 2006)). Here, Watt's opinion contains numerous instances of his expert conclusion that Defendants collectively shared terrorist purposes, and that they planned and intended to execute some sort of assault on "innocent victims." [Doc. 742-2 at 6-8] His testimony regarding Defendants' intent constitutes both an unsupported opinion on their mental states and a legal conclusion regarding their intent, and therefore must be excluded.

**III.   Watt's proposed testimony should be excluded pursuant to Rule 403.**

---

[1] Fed R. Evid. 704(a) states that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Subsection (b) is an exception to this general rule.

Even if the Court were to find that Watt's proposed expert testimony is both relevant and reliable, it must still consider whether the testimony is admissible under Fed. R. Evid. 403. "Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice." *United States v. Rodella*, No. CR 14-2783 JB, 2014 WL 6634310, at *12 (D.N.M. Nov. 19, 2014) (Browning, J.). Again, as explained above, the Government itself states that it does not need to prove that Defendants were terrorists. [Doc. 764 at 10-11, 13]. Yet, Watt's opinion is brimming with references to Defendants' supposed terrorist tactics and his main take-away conclusion is that Defendants are a home-grown terrorist group. [Doc. 742-2 at 6-8] Given the Government's position that whether Defendants were definitionally terrorists is wholly irrelevant to its effort to prove the charges in this case, so too is Watt's testimony, and it therefore has no real probative value.

"Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury, or if the evidence otherwise tends to adversely affect the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *Rodella*, No. CR 14-2783 JB, 2014 WL 6634310, at *13. For instance, Watt's allegation of similarity between the type of training in which the Defendants participated to "known terrorist doctrine" and "numerous AQ and other terrorists group training" is very likely to adversely affect the jury's attitude towards Defendants as it suggests they are not merely criminal defendants (entitled to the presumption of innocence) but terrorist enemies of the United States who intend to hurt and kill anyone who does not share the same belief system as them. Not only are such comparisons wholly unsupported and irrelevant under Rule 401, they are also undeniably highly prejudicial.

Watt's unqualified and speculative opinions regarding the intents and purposes of the Defendants in this case as well as his conclusion that they are indeed "terrorists" provide minimal, if any, probative value, yet they are highly prejudicial. Based on the low probative value of Watt's proffered testimony as compared with this high potential for unfair prejudice, Watt's testimony should be excluded under Rule 403.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an Order to exclude the testimony of Steven Watt, the United States' proposed "police tactics, combat dynamics, and firearms expert." Watt's testimony must be excluded, or at a minimum, limited. If not excluded in its entirety, Defendants therefore request that this Court require the Government to meet its burden of establishing that each portion of Watt's proposed expert testimony has a sufficient objective basis, is supported by the facts of this case, possesses an appropriate level of relevance, and is not unfairly prejudicial, such each it is admissible under the Federal Rules of Evidence.

Respectfully Submitted:

*/s/ Donald F. Kochersberger III*
Donald F. Kochersberger III
BUSINESS LAW SOUTHWEST LLC
6801 Jefferson St. NE, Suite 210
Albuquerque, NM 87109
(505) 848-8581
Donald@BusinessLawSW.com

*/s/ Marshall J. Ray*
Marshall J. Ray
Law Offices of Marshall J. Ray, LLC
514 Marble Ave, NW
Albuquerque, NM 87111
(505) 312-2748
mray@mraylaw.com

*Attorneys for Defendant Hujrah Wahhaj*

-and-

/s/ *Ryan J. Villa*
Ryan J. Villa
The Law Office of Ryan J. Villa
5501 Eagle Rock Ave NW Ste. C2
Albuquerque, NM 87113
(505) 639-5709
ryan@rjvlawfirm.com

/s/ *Justine Fox-Young*
Justine Fox-Young
Justine Fox-Young, PC
5501 Eagle Rock Ave NE Ste C2
Albuquerque, NM 87113
(505) 796-8268
justine@foxyounglaw.com

*Attorneys for Defendant Subhanah Wahhaj*

-and-

/s/ *Thomas Clark*
432 Galisteo Street
Santa Fe, NM 87501
(505) 796-8268
tmclark@cjplawsf.com

*Stand-by Attorney for Defendant Siraj Ibn Wahhaj*

-and-

/s/ *Aric Elsenheimer*
Aric Elsenheimer, AFPD
Angelica Hall, AFPD
Federal Public Defender
111 Lomas NW, Ste 501
(505) 346-2489
aric_elsenheimer@fd.org
angelica_hall@fd.org

*Attorneys for Defendant Jany Leveille*

-and-

9

>*/s/ Lucas Morton*
>Lucas Morton
>Cibola County Correctional Center
>2000 Cibola Lp.
>Milan, NM 87021
>(505) 285-4900
>
>*Pro Se Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2023, a copy of the foregoing document was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

>*/s/ Donald F. Kochersberger*
>Donald F. Kochersberger III