IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cr. No. 18-CR-2945 WJ |
| ) | |
| JANY LEVEILLE, ET AL, ) | |
| ) | |
| Defendants. ) | |

## UNITED STATES' OBJECTIONS TO SPECIFIC QUESTIONS WITHIN DEFENDANTS' SPECIAL JURY QUESTIONNAIRE

The United States of America respectfully submits its objections to specific questions within the Defendants' proposed special jury questionnaire. *See* Doc. 815, Exhibit 1. The United States objects to many of the questions in the Defendants' proposed special questionnaire because they are inappropriate narrative building questions that take factual liberties which would be inappropriate even for voir dire, let alone for a Court-provided jury questionnaire.

As stated in the United States' Response to the Court's Order Regarding Jury Selection Plan and For Special Jury Questionnaires (Doc. 818), the United States' position is that the Court's standard questionnaire is sufficient for this case, particularly given that this is not a death penalty case, the events underlying the charges occurred approximately five years ago, and the District of New Mexico is accustomed to serious criminal cases that include egregious facts and publicity. However, if the Court is inclined to modify the standard questionnaire or to utilize a special questionnaire, the United States does not oppose the Court including the questions numbered 1, 2, 3, 5, 6, 8, 9(a), 10, 13, 14, 15, 16, 17, 18, 19, 24, 30, 32, 33, and 56 in the

1

Defendants' proposed special jury questionnaire.[1]   The United States' specific objections to the remaining questions are as follows.

### A.     Background Information

1.     <u>Question 4</u>:   The Court's standard questionnaire does not ask prospective jurors to provide their race and ethnicity.   The United States objects to the extent this question inappropriately introduces race, which should not be a consideration when determining if a person can be a fair and impartial juror.   As the website for the United States Courts states with regard to juror selection, "Those qualified are randomly chosen to be summoned to appear for jury duty.   This selection process helps to make sure that jurors represent a cross section of the community, without regard to race, gender, national origin, age, or political affiliation."   *See* [https://www.uscourts.gov/services-forms/jury-service/learn-about-jury-service#:~:text=Those%20qualified%20are%20randomly%20chosen,%2C%20age%2C%20or%20political%20affiliation](https://www.uscourts.gov/services-forms/jury-service/learn-about-jury-service#:~:text=Those%20qualified%20are%20randomly%20chosen,%2C%20age%2C%20or%20political%20affiliation).

2.     <u>Question 7</u>:   While the United States does not object to asking the venire about prior employment, it objects to asking the jurors which prior job was "your favorite," as this question is irrelevant to this case and will not help discern which of the prospective jurors will be

---

[1] In the Unopposed Motion for Special Jury Questionnaire and Enlarged Jury Panel, counsel for Defendant Subhanah Wahhaj wrote, "Ms. Brawley further indicates that the government is not opposed to the general idea of a supplemental questionnaire and does not object to many of the proposed questions."   Doc. 815 at 1.   Only part of this sentence is correct.   As stated herein and in its other filing (Doc. 818), the United States does not believe a special jury questionnaire is necessary but is not opposed to the Court sending a special questionnaire asking the innocuous questions proposed by the Defendants, if the Court finds it would be beneficial.   However, undersigned counsel did not state the United States does not object to many of the proposed questions, but rather stated, "We do not agree with many of your proposed questions."   *See* Email, attached hereto as Exhibit 1.

fair and impartial.

      3.      <u>Question 9(b)</u>:    Whether or not a person with military service served in "active combat" and, if so, which conflict, will not advance the goal of identifying whether that person can be fair and impartial.   In addition, the term itself is unclear and confusing, as "active combat" could be taken to mean anything ranging from receiving hazardous duty pay, to imminent danger pay, to having served "outside the wire," to having actually been in contact with the enemy.   The vagueness of this question exacerbates its unhelpfulness in a court-issued jury questionnaire.

      4.      <u>Questions 11</u>:    The Court's standard questionnaire asks for a spouse's occupation, and this is sufficient.   There is no need to ask a spouse's place of employment and highest level of education, as it has little relation to a prospective juror's ability to be fair and impartial.

      5.      <u>Question 12</u>:    It is not necessary or helpful to ask the prospective jurors to provide the age, gender, and occupation of their children, as well as whether or not the children live at home and for how much of the time.   Information about children is only relevant if the situation is such that a prospective juror is a caretaker and serving on the jury would cause a hardship, and the standard questionnaire specifically asks if there are any additional matters touching on the ability to serve as a juror that should be brought to the Court's attention. Moreover, the Defendants' proposed Questions 13 and 14 ask if there are any personal, family, or professional obligations that may seriously interfere with the ability to focus and concentrate. *See* Doc. 815-1 at 3.   These questions sufficiently cover familial situations, and there is no need to include Question 12.

**B.     Publicity and Media Section**

6.    <u>Questions 20 through 23</u>:   The description under the heading "Publicity and Media," which precedes Questions 20 through 24, purports to summarize the allegations in the indictment.  The United States objects to any purported description of the case in a court-issued jury questionnaire.  The questionnaire's purpose is primarily to ensure that persons in the venire are qualified to serve on a jury, and secondarily to provide the Court and parties information about the jury pool so that voir dire can be more efficient.  Neither of these purposes is served by planting an idea about the nature of the case in prospective jurors' minds, which would seemingly invite them to search for and read about the case on the Internet, among other inappropriate effects on the potential jurors.  The standard questionnaire does not describe charges, and no description of the case should be included in any special questionnaire sent from the Court.

7.    Even if the Court determines a special questionnaire is warranted, and then determines that a summarization or description of the case should be included, the one proposed by the Defendants includes the statement that the Defendants "are Muslim."  There is no reference in the indictment to the fact that the Defendants are Muslim.  Any description of the Defendants' religion or race should not be included in any purported summary of the allegations.  Such a description may raise the false suggestion that the Defendants were targeted for indictment because of their religion (or race) when this is not true and when the Defendants' religious beliefs are not an element of any of the charged crimes.

8.    Moreover, the United States objects to naming the Defendants in the questionnaire and to asking, at this stage in the proceedings, what opinions the venire has formed

about the Defendants.   At least some of the venire would be tempted to seek media articles about this case, thus tainting them.   If the Court is inclined to ask questions about publicity and media, the United States requests that the questions be more generic and not case specific.

      **C.**      **Children and Families Section**

      9.      <u>Question 25 through 27</u>:   These questions are objectionable because they mischaracterize the facts and clearly risk planting (and are designed to plant) ideas into the minds of the venire that are irrelevant, unbalanced, confusing, unfair, and misleading, especially when coming from the Court.   The evidence will establish that Defendant Siraj Ibn Wahhaj (Siraj) and Hakima Ramzi (Hakima), the wife to whom he was legally married, were the parents of John Doe, and Hakima was John Doe's primary caretaker and the person who attended to his medical needs.   The evidence will further show that courts did not become involved in any custody arrangements involving John Doe, but rather courts only became involved after John Doe was kidnapped by Siraj and his co-defendants.   Neither Siraj nor Hakima had "sole custody" over John Doe, and neither had their custodial rights or visitation with John Doe "terminated or limited."   There was never a custody dispute between Siraj and Hakima prior to the kidnapping, let alone any custody order or custody determination by any court other than the Georgia court order requiring Siraj to return John Doe to Hakima's custody after John Doe was kidnapped.   Questions 25 through 27 are designed to raise the unfair and false inference that this case involves a custody dispute, that Siraj was somehow a victim in this child custody dispute, and that he somehow had the right to simply take his special needs child from Hakima, when there are no such court orders and the subsequent pick-up order issued by the State of Georgia confirms the illegal, unauthorized, and inappropriate interference with Hakima's rights

as John Doe's mother.

10.     Question 28:   This question suggests that there was interaction between Siraj and Hakima that was highly contentious or difficult, and it infers that this was due to causes from both parents.   This again mischaracterizes the evidence, which is that only one parent–Siraj— was in the wrong as far as the law was concerned.   Again, there is no evidence that Siraj and Hakima were in a "highly contentious or difficult situation involving custody" of John Doe, and this question is irrelevant, unbalanced, confusing, unfair and misleading.   Only one parent (Siraj) deprived the other parent (Hakima) entirely of her parental rights by removing the child from her and never returning.   Even if a "highly contentious or difficult situation involving custody of a child" did exist between Siraj and Hakima, which no evidence suggests it did, there is nothing about that situation that would justify the actions that Siraj took in the eyes of the law, and nothing about that situation that would justify the Court asking prospective jurors if they would be sympathetic to "highly contentious" child custody battles in determining if they are qualified to sit on the jury.

11.     Question 29:   This question is aimed at inappropriately, and without legal basis, providing a defense for the Defendants charged with kidnapping, and the question is misplaced. None of the Defendants are charged with failing to give advice or giving faulty advice to Siraj.  They are charged with conspiring to and aiding and abetting him in carrying out and concealing the kidnapping of John Doe.   The question has no bearing on whether the recipient of the questionnaire is qualified to sit on the jury.

D.     **Courts and Community Section**

12.     Question 31:   This question is unbalanced and, if it is asked at all, it should be

6

changed (as indicated by the italicized words) to ask, "Do you believe that the testimony of sworn law enforcement officers should be given more *or less* importance than that of other witnesses *as a* result of their status?" If a person answers that he/she weighs the testimony of a law enforcement officer with more or less importance, that is concerning enough without having to ask why that is the case. However, this is a question that may be asked on voir dire and should not be included in a questionnaire sent from the Court to the prospective jurors to determine whether they are qualified in the first place.

13. Question 34: While the United States may not object to asking the prospective jurors whether they own firearms, how many firearms, and what type of firearms, as proposed in Question 34(a) at voir dire, it does object to asking these questions in the Court-issued questionnaire. There is no answer to these questions that would help determine whether the recipient is qualified to sit on a jury, and the question risks inflaming or misleading the recipient about the purpose of the questionnaire. Further, the United States objects to the same questions with regard to the venire's family members, even at voir dire. Whether or not a person's family members own firearms is irrelevant and sheds no light on whether a prospective juror can be fair and impartial.

14. The United States objects to Question 34(b) because the prospective reasons for gun ownership included in the questionnaire are irrelevant and the proposed options exclude criminal conduct and the nefarious reasons that the United States intends to prove the Defendants possessed firearms.

15. Similarly, the United States objects to Question 34(c) because the frequency with which gun owners practice shooting is irrelevant and hence unnecessary to ask, especially in a

Court-provided questionnaire. Even at voir dire, the question is geared towards defense narrative building and has no bearing on a juror's ability to be fair and impartial.

16. <u>Question 35</u>: The United States objects to the characterization of a "serious crime such as kidnapping and terrorism." The word "serious" should be omitted, and, as argued in other filings, this is not a terrorism case, but rather a kidnapping and material support case. If any question along these lines is included by the Court in its questionnaire, the United States recommends that the venire instead be advised that charges in an indictment are merely an accusation and then asked if they could be fair and impartial and if they could make a decision based on the evidence rather than based solely on the nature of the charges. However, the United States requests that this be handled at voir dire and entirely excluded from any questionnaire sent in the mail.

17. <u>Questions 36 and 37</u>: These questions are misleading, speculative, and confusing. The jurors will be instructed on their duties and responsibilities during trial, but these questions are designed to encourage prospective jurors to speculate upon ways that they should act beyond their prescribed duties and to assume that the government charges and convicts innocent people. The questions are not appropriate at voir dire, let alone in a Court-provided questionnaire, which would suggest the Court believes innocent people are prosecuted and convicted before it on a regular basis.

**E.    Society and Religion Section**

18. <u>Questions 38 through 41</u>: The venire should not be asked to identify their religious affiliation or religious practices, if any, in order to qualify to sit on the jury, and the question of a juror's religious affiliation or practices simply is not relevant. *See SFF-TIR, LLC*

8

*v. Stephenson*, 262 F.Supp. 3d 1238, 1258-59 (N.D. Okla. Aug. 8, 2017) (Browning, J.) ("Permitting the Defendants to question jurors on religious topics or to receive information about their religious practices in the responses to Juror Question No. 24—i.e., whether they 'regularly attend church or another religious institution,' and, '[i]f so, what is the name of your religious institution'—raises the same concerns that the Court noted in *United States v. Sandoval* about what the Court would do with the solicited information, and whether it would be used to sit or exclude jurors because of their religious beliefs or because of where they attend worship, which '[t]he Court should be careful not' to allow.") (quoting *United States v. Sandoval*, 2006 WL 1304955, at *4-5 (D.N.M. February 1, 2006) (Browning, J.).   People of faith as well as people who are not religious should not be targeted as prospective jurors who cannot be fair or reasonable as jurors.   The only relevant question is whether a juror can fairly hear the evidence concerning the defendants regardless of the juror's own religious beliefs or practices, or lack thereof.   Questions 40 and 41, which focus on whether any of the jurors are Christians and the beliefs, thoughts, and feelings about Christianity, are inappropriate, and these questions have no place in voir dire, let alone in a Court-issued juror questionnaire.   It is curious that, of all the world religions, the Defendants chose to focus on Christianity, especially when there is no evidence involving Christians versus Muslims in this case.

      19.    <u>Questions 42 and 43</u>:   None of these questions are appropriate for a Court-sanctioned questionnaire, and they should be excluded.   The United States recognizes that, because the Defendants practice some version of Islam, it may be appropriate to ask some questions regarding concerns about prospective jurors being prejudiced against Muslims at voir dire, but the questions should be limited in quantity and should avoid placing unfair emphasis on

this issue, particularly given that there are no references to the Defendants' religion in the indictment, and their religious beliefs are not elements of any of the charged crimes. Instead, the questions should be asked in terms of whether the prospective jurors can fairly sit in a case involving Defendants who identify as Muslim. For example, in *Sandoval*, the Court rejected the proposed questions about religion and instead asked the prospective jurors, "Do you have any idea, notion, belief, attitude, or opinion, based on religion, background, ideology, or otherwise, that would prevent you from being fair and impartial in a case involving a defendant who practices Native American religions?" 2006 WL 1304955, at *5. If the Court is inclined to ask questions about religion, the United States requests that a question more akin to what was asked in *Sandoval* be presented to the venire.

20. <u>Questions 44 and 45</u>: As with the previous questions, these questions are wholly inappropriate for a Court-issued jury questionnaire. Unlike the previous questions, these questions are not even appropriate for voir dire. These questions are misleading and offensive. While it may be true that people with extremist religious views that include violence may be more apt to be involved in terrorism-related crimes than people without extremist religious views, none of the Defendants are charged with "terrorism." Moreover, these questions do not describe the overwhelming majority of Muslims, who would never be involved in activities related to terrorism, and the questions suggest that Muslims are more likely to be involved in terrorism. There is no evidence that, because the Defendants are Muslim, they engaged in the charged criminal acts, and indeed the evidence will establish that their actions were very different from and not condoned by their family, who are also Muslim.

21. Question 45 is also objectionable because it again tries to compare Islam with

Christianity, and there is no evidence of Christians versus Muslims in this case. These questions are narrative building and highly prejudicial to the United States' right to a fair and impartial jury.

22.     <u>Questions 46 and 47</u>:   These questions should be excluded from any juror questionnaire, as they are highly fact specific to this case and have no bearing on the Court's determination of a juror's qualification to possibly sit as a juror.   Even at voir dire, these questions risk both confusing and misleading the prospective jurors because there will be no evidence presented at trial that Siraj had any lawful right to kidnap his child over the objections of Hakima and to deprive John Doe of the life-saving medicine that was needed.   Moreover, the evidence is that John Doe always received the medical care and treatment he needed up until he was kidnapped by the Defendants.

23.     <u>Questions 48 through 53</u>:   As with previous questions, these questions are inappropriate for a juror questionnaire.   They are also inappropriate narrative building questions even at voir dire, as they do not go to a juror's ability to be fair and impartial.   This series of questions unduly emphasizes the notion of a cult somehow excusing the behavior of one or more of the Defendants when that does not appear to be a valid defense to any of the charges in the indictment, and when none of the Defendants, except Jany Leveille, has raised a mental health defense; the Defendants should not be permitted to backdoor a defense about being brainwashed and submissive to a cult leader when they have not properly raised such a defense.   Prospective jurors should not be encouraged to speculate about what they think a "cult" is, whether membership in a cult should be a crime, or whether the government should decide which groups are cults.   None of that is part of the evidence in this case and none of it will go to the guilt or

evidence of any of the Defendants.  It would also be very confusing and misleading for prospective jurors to be asked to speculate about people who become involved in cults as either leaders or as followers and about "brainwashing," particularly when there may not be any admissible evidence about "cults" or "brainwashing" presented at trial.

### F.    Other Life Experience and Knowledge Section

24. <u>Questions 54, 55, 57, and 58</u>:   As drafted, the United States objects to these questions based on relevance and form.   If these questions are included in a questionnaire at all, which the United States requests they not be, these questions should be asked in terms of whether the prospective jurors can fairly sit in a case involving a child suffering from seizures who was not provided medication and involving one Defendant who was mentally ill, for example, but the venire should not be asked to provide detailed answers to questions about their personal experiences.

25. The United States also objects to the Defendants' description of "earthships" and requests, if any questions about "earthships" are asked, that the prospective jurors instead be asked if they are familiar with them and, if so, how they are familiar with them.   At most, these are questions are for voir dire, not a jury questionnaire, and even then they are clearly geared toward narrative building and implanting defense-themed views of the case before the jury has heard any evidence in the case.

26. <u>Question 59</u>:   This question is irrelevant, and there is no need to delve into the social media habits of all the prospective jurors.

27. <u>Question 60</u>: The inclusion of the words "even slightly" invites the jurors to respond in the affirmative.

28. <u>Question 61</u>: The Defendants did not attach a list of names and organizations.

WHEREFORE, the United States respectfully requests that the questions in the Defendants' proposed special jury questionnaire to which it has objected not be presented to the venire.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

*/S/ Electronically filed*
KIMBERLY A. BRAWLEY and
TAVO HALL
Assistant United States Attorneys
P.O. Box 607
Albuquerque, NM   87103
(505) 346-7274

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to defense counsel, and separate copies have been mailed to Defendants Siraj Wahhaj and Lucas Morton.

*/S/ Electronically filed*
KIMBERLY A. BRAWLEY
Assistant United States Attorney