IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                  Case No. 1:18-cr-2945-WJ

JANY LEVEILLE,
SIRAJ IBN WAHHAJ,
HUJRAH WAHHAJ,
SUBHANAH WAHHAJ, and
LUCAS MORTON,

    Defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS FOR SPEEDY TRIAL VIOALTIONS

**THIS MATTER** is before the Court on Defendant Subhanah Wahhaj's Motion to Dismiss Based on a Violation of Her Constitutional Right to a Speedy Trial (Doc. 603), and Defendant Siraj Wahhaj's Motion to Dismiss Superseding Indictment for Violation of his Constitutional Right to a Speedy Trial (Doc. 634). The Court twice denied Defendant Siraj Wahhaj's motions to dismiss on the same grounds in August of 2020 and February of 2022, holding that the Government did not violate his Sixth Amendment right to a speedy trial under the *Barker v. Wingo* framework. Since then, Defendants have requested further delays in this case and consented to a firm trial setting in September 2023. Having reviewed the pleadings and the applicable law, the Court yet again concludes the Government did not violate Defendants' Sixth Amendment right to a speedy trial. Defendants' Motions are therefore **DENIED**.

## BACKGROUND

The Government arrested Siraj Wahhaj, Subhannah Wahhaj, ("Defendants"), and their three co-Defendants on August 5, 2018, and charged them by criminal complaint with conspiracy, unlawful possession of a firearm by an alien, and aiding and abetting. Doc. 1. Defendants were subsequently indicted by a federal grand jury in September 2018 and again by superseding indictment in March 2019. Docs. 24, 84. Defendants are currently indicted on seven counts: (1) Conspiracy to Provide Material Support to Terrorists in violation of 18 U.S.C. § 2339A; (2) Providing Material Support to Terrorists in violation of 18 U.S.C. §§ 2339A & 2; (3) Conspiracy to Murder an Officer or Employee of the United States in violation of 18 U.S.C. § 1117; (4) Conspiracy to Commit an Offense Against the United States in violation of 18 U.S.C. § 371; (5) Possessing a Firearm While Unlawfully in the United States in violation of 18 U.S.C. §§ 922(g)(5) & 2; (6) Conspiracy to Commit Kidnapping in violation of 18 U.S.C. § 1201(c); and (7) Kidnapping in violation of 18 U.S.C. §§ 1201(a) & 2.[1] Considering the breadth of the multiple conspiracy charges against Defendants in the Superseding Indictment combined with the magnitude of discovery and potential evidence, the Court on October 2, 2018, granted an unopposed motion and entered an unopposed order designating this case as complex. Doc. 49.

Following the Superseding Indictment, Defendants Leveille, Morton, Hujrah Wahhaj and Subhannah Wahhaj filed motions to determine their competency. Shortly thereafter, all Defendants—including Siraj Wahhaj, whose competence has never been in question—filed an unopposed motion to stay the proceedings pending resolution of the competency issues, which the

---

[1] Defendant Subhannah Wahhaj is not charged in count Count Three. Doc. 85 at 6. Defendant Siraj Wahhaj was not charged in Counts Six and Seven because he is the biological father and parent of John Doe, and thus cannot be charged with kidnapping under 18 U.S.C. § 1201(a). Doc. 85 at 1-9; *see also* 18 U.S.C. § 1201(a) ("Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, *except in the case of a minor by the parent thereof . . . .*") (emphasis added).

Court granted on February 18, 2020. Doc. 192. The Court declared Defendants Subhannah Wahhaj, Hujrah Wahhaj, and Jany Leveille competent between May 2021 and January 2022. Docs. 309, 311, 387. In October 2022, after a commitment to the Bureau of Prisons for competency restoration and a subsequent competency hearing, the Court found Lucas Morton—the last remaining Defendant with pending competency proceedings—competent to stand trial. Doc. 461. Eleven days later, the Court lifted the stay of proceedings, having issued competency determinations for all Defendants. Doc. 464.v

Immediately after making competency determinations, the Court held a joint scheduling conference for the purpose of setting an agreed-upon trial date. The Government estimated it would be ready for trial in the fall of 2023. Doc. 463 at 1. Counsel for all Defendants agreed that fall of 2023 or later was appropriate. Doc. 463 at 2. On November 22, 2022, the Court issued a scheduling order setting the case for trial on September 25, 2023. Doc. 529. The Court cited the complexity of Defendants' several pending motions to suppress and dismiss, Classified Information Procedures Act ("CIPA") issues, as well as anticipated additional pretrial motions. *Id.*

Since the scheduling order was entered in November 2022, there have been nearly three-hundred docket entries in this case. In February 2023, the Government extended a global plea offer to all five Defendants, contingent upon each Defendant pleading guilty. Doc. 615 at 12-13. The Court held *Lafler-Frye* hearings for all five Defendants before the Government withdrew its plea offer. Doc. 649. Furthermore, the Court has resolved Defendants' two motions to suppress evidence, one of which required a full-day evidentiary hearing and two rounds of supplemental briefing. The Court has also held hearings on Defendants' multiple requests to change counsel and proceed pro se. In totality, since the trial date was set, the Court has issued twelve Memorandum

Opinions and Orders resolving Defendants' various motions, including seven full or partial motions to dismiss the superseding indictment.

Prior to Defendants' instant Motions, the Court considered and rejected two similar motions to dismiss on speedy trial grounds filed by Defendant Siraj Wahhaj. First, in August 2020, the Court found that the initial delay in the case was reasonable given the "enormous amounts of discovery" and the "complexity of case preparation" required to try a multi-defendant, multi-count conspiracy case. Doc. 250 at 8-10. Second, in February 2022, the Court found that the COVID-19 pandemic, the competency evaluation process, and Defendants' several changes in counsel justified further delay. Doc. 388 at 6. Applying the framework set forth by the Untied States Supreme Court in *Barker v. Wingo*, the Court decidedly held in each instance that Defendant's Sixth Amendment right to a speedy trial was not violated. Now, sixteen months later, the Court again concludes Defendants' Sixth Amendment rights have not been violated.

## DISCUSSION

The Sixth Amendment to the U.S. Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. To determine whether a trial delay violates a defendant's Sixth Amendment speedy trial right, federal courts must balance four factors: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) whether the delay prejudiced the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Neither factor is determinative or necessary, but all four must be considered when determining whether a violation has occurred. *United States v. Seltzer*, 595 F.3d 1170, 1176 (10th Cir. 2010). Upon consideration of all four factors, the Court concludes Defendants' rights to a speedy trial were not violated.

I. **Length of Delay**

This factor requires a two-step analysis. First, the Court must determine as a threshold matter whether the delay exceeds one year; if so, the Court may proceed with conducting a full-fledged *Barker* analysis. *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006). "The length of delay is measured from the time at which the speedy trial right attaches: the earlier of either arrest or indictment." *Id*. Both Defendants were arrested and indicted more than fifty-seven months ago, so the delay is "presumptively prejudicial." *Id*. The Court thus turns to the second inquiry, considering "the extent to which the delay exceeds the bare minimum for judicial examination of the claim . . . based on the simplicity or complexity of the federal charge." *United States v. Nixon*, 919 F.3d 1265, 1270 (10th Cir. 2019).

The Court finds that the length of the delay weighs in Defendants' favor but that it is reasonable for a conspiracy case of this complexity and magnitude. Doc. 388 at 5. Even a lengthy delay may be reasonable when the nature of the charges is complicated or complex. *Seltzer*, 595 F.3d at 1177; *see also Barker*, 407 U.S. at 531 ("the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge"). This case requires administering a joint trial for five co-Defendants indicted on seven counts, including three separate conspiracy charges. Doc. 85 at 1. Defendants stipulated to this case's complexity and acknowledged there are "over 100,000" pages of discovery as well as "numerous audio and video files" to review. Doc. 49; Doc. 68. Furthermore, "[t]he need for the parties and the court to comply with CIPA [makes] this case more complicated than an ordinary prosecution." *United States v. Muhtorov*, 20 F.4th 558, 639 (10th Cir. 2021). This case has suffered further delays due to four Defendants' competency proceedings, the COVID-19 pandemic, plea negotiations, Defendants' numerous changes in counsel and requests to proceed pro se, and a barrage of pretrial defense

motions. There are over eight-hundred docket entries. The fifty-seven-month delay, although lengthy, is reasonable in light of the complex nature of the case.

The Court finds that the length of the delay weighs in Defendants' favor and that it is reasonable given the case's complexity.

## II.     Reason for the Delay

Under this factor, "the court must assess the reasons offered by the government for not bringing the defendant to trial in a timely fashion." *United States v. Margheim*, 770 F.3d 1312, 1326 (2014). Whether or not a delay is justifiable depends on the Government's blameworthiness in delaying trial:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531; *United States v. Batie*, 433 F.3d 1287, 1291 (10th Cir. 2006). The Government asserts that the most recent delay in this case is attributable to Defendants' pretrial motions, continuance requests, request for competency proceedings, and their need for sufficient time to review "voluminous and complex discovery." Doc. 626. The Government notes Defendants moved for competency evaluations and requested a stay through September 2020. Those proceedings were not fully resolved until October 2022, at which time the Court lifted the stay and set the current trial date in September 2023. The Government argues Defendants further delayed trial by filing "nearly two-dozen motions, mostly seeking dismissal of charges or the indictment" since the stay was lifted. Doc. 656 at 16.

For ease of analysis the Court will separately address the time before and after February 2022, when the Court last ruled Defendant Siraj Wahhaj's right to a speedy was not violated. The

Court has already explained the valid reasons justifying the delay up to February 2022 in two prior orders. First, in August 2020, the Court concluded that the initial twenty-three-month delay was justified by the complexity of discovery and Defendants' own motions to determine all five Defendants' competency and their joint request to stay the proceedings. Doc. 250 at 8-10. Second, in February 2022, the Court cited three primary reasons justifying the then forty-one month delay: (1) the ongoing threat of the COVID-19 pandemic, which required suspending all jury trials in the District of New Mexico and imposing social distancing requirements that precluded trying a five-defendant conspiracy trial, and cannot be attributed to Defendants or the Government; (2) Defendants' ongoing competency evaluations, which Defendants requested and in which the Government was minimally involved; (3) Siraj Wahhaj's several changes in counsel, which was not attributable to Defendants or the Government.[2] Doc. 388 at 5-10. The Court concluded that the reasons for the delay up until February 2022 weighed "strongly in favor of the Government." Doc. 388 at 10.

The continued delay between February 2022 and the anticipated trial date in September 2023 can similarly be attributed to three primary causes: (1) Defendants' ongoing competency proceedings through October 2022, at which point the Court lifted the stay and set the case for trial; (2) Hujrah Wahhaj and Siraj Wahhaj's changes in counsel and motions to proceed pro se; and (3) pretrial practice, such as efforts to negotiate a global plea agreement and Defendants' seven motions to dismiss and two complex motions to suppress evidence. The Court finds that none of these reasons are "deliberate attempt[s] to delay the trial in order to hamper the defense." *Barker*, 407 U.S. at 531. In fact, almost all of the delay is "attributable to the [Defendants]" and does "not

---

[2] The Court notes that Hujrah Wahhaj has similarly been appointed six different Criminal Justice Act attorneys since the inception of this case.

weight against the government." *United States v. Hicks*, 779 F.3d 1163, 1168 (10th Cir. 2015). The Court addresses each cause of the delay in turn.

First, the Court reiterates that the delay resulting from Defendants' joint request for a stay in the proceedings while Defendants underwent competency evaluations, per their own motions, cannot be attributed to the Government. Four of the five Defendants in the case—including Hujrah Wahhaj—moved for forensic evaluations and Court orders to determine their competency to stand trial. Doc. 189 at 1-2. In February 2020, while Defendants were at varying stages in the evaluation process, counsel for all five Defendants jointly requested a Court order staying the case "while the pending competence issues involving four clients are resolved." *Id.* at 1. Defendant Morton's competency proceedings were the last to be resolved. Defendant Morton was initially declared incompetent but was restored to competency after a 120-day restoration period and a second evaluation received by the Court on October 15, 2021. Doc. 461 at 7. However, Defendant Morton requested a third evaluation, which was not completed until April 27, 2022. Doc. 409 at 1. The additional seven-month delay in Defendant Morton's competency determination—and thereby the Court's order lifting the jointly requested stay—can only be attributed to Defendants.[3] The Court again finds that the Government has had minimal control over Defendants' competency evaluations, and that the process is more comparable to a "missing witness"—a factor the Supreme Court has decided "serve[s] to justify appropriate delay"—rather than "negligence" or "overcrowding courts," reasons which "rest with the government." *Barker*, 407 U.S. at 531.

---

[3] Defendant Hujrah Wahhaj argues her attorney requested her second competency evaluation against her wishes, so the delay should be attributed to the Government. However, Defendant's own citation makes clear "[i]t will be an exceptional case where, as here, a delay caused by a defense attorney counts against the government." *United States v. Tigano*, 880 F.3d 602, 616 (2d. Cir. 2018) (discussing attorney's attempts to coerce client into accepting a plea). Defendant Hurjah Wahhaj makes no claim that she did not consent to the joint request for a stay, which is the true reason for the delay through October 2022.

Second, Defendants Hujrah Wahhaj and Siraj Wahhaj have continued to request that the Court appoint new Criminal Justice Act counsel and have each moved to proceed pro se. Hujrah Wahhaj and Siraj Wahhaj have each had a total of six different attorneys appointed to represent them since this case's inception. Since the Court's last Order in February 2022, the Court appointed Marshall Ray to represent Hujraj Wahhaj after Theresa Duncan requested to withdraw due to a complete breakdown in communications. Doc. 414 at 1. The Court also appointed Marc Robert to represent Siraj Wahhaj after Erlinda Johnson withdrew due to a family emergency. Doc. 511 at 3. Even after the Court appointed new counsel, both Defendants moved to proceed pro se on the eve of trial. The Court held separate hearings on each motion and issued a written order denying Hujrah Wahhaj's request. The Court authorized Siraj Wahhaj to proceed pro se while retaining Thomas Clark as stand-by counsel, so as not to further delay the proceedings. Changes of counsel in a complex multi-defendant criminal conspiracy case such as the case at bar inevitably result in some delay as new lawyers require time to become familiar with the nuances of the case. Although Erlinda Johnson's withdrawal cannot be attributed to Defendants, the remaining three motions to change counsel were the result of an untenable attorney-client relationships caused by Defendants' distrust of counsel. Both Defendants accused their lawyers of professional misconduct and Hurjah Wahhaj went so far as to file a complaint with the New Mexico Supreme Court. Doc. 414 at 4; Doc. 682 at 1-2; Doc. 745 at 8-14. Defendants have been unable to maintain a cordial attorney-client relationship even after the Court appointed six separate Criminal Justice Act attorneys for each Defendant. The Court therefore attributes this delay to Defendants.[4]

---

[4] In its prior Order, the Court found that Defendant Siraj Wahhaj's several changes in counsel were a neutral factor in the *Barker* analysis. Doc. 388 at 9. At that time, two of his attorneys—Zachary Ives and Shammara Henderson—had withdrawn in anticipation of accepting judicial appointments to the New Mexico Court of Appeals. *Id.* By contrast, Defendants' most recent requests to change counsel can be attributed to their own conduct.

Lastly, Defendants have filed approximately two-dozen motions in preparation for trial since the Court lifted the stay and imposed trial scheduling order and have repeatedly requested extensions of deadlines. Defendants have collectively filed six motions to dismiss the indictment or specific counts in the indictment since the trial date was set. *See* Docs. 547, 555, 595, 599, 603, 634. Further, Defendants have filed six motions to sever the joint trial and bifurcate specific counts. *See* Docs. 598, 609, 609, 635, 648, 686. Defendants have also requested multiple extensions of their deadline to file pretrial motions and Fed. R. Crim. P. 12.2 notices. Moreover, Defendants filed two joint motions to suppress evidence, one of which required a full-day evidentiary hearing and two rounds of supplemental briefing. Delays caused by Defendants' own motions—such as "moving to suppress evidence, [and] requesting that the district court extend filing deadlines"— do not weight against the government for speedy trial purposes. *Muhtorov*, 20 F.4th 558, 640 (10th Cir. 2021).

For these reasons, the Court finds that the "reason for delay" factor weighs strongly in favor of the Government. *Hicks*, 779 F.3d at 1168 (holding reason for delay weighed against defendant who "filed more than forty unique motions, including several requesting that the district court extend filing deadlines," changed counsel several times, and requested a delay in the proceedings).

### III.   Assertion of Right

In evaluating this factor, the Court must ask "whether the defendant's behavior during the course of litigation evinces a desire to go to trial with dispatch." *Batie*, 433 F.3d at 1291. In so doing, the Court weighs the "frequency" and "force" of the assertions. *Barker*, 407 U.S. at 529. "The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id*. at 531–32. However, "if the defendant fails to demand a speedy trial, moves for many continuances, or otherwise indicates that

he is not pursuing a swift resolution of his case, this factor weighs heavily against [him]." *United States v. Gould*, 672 F.3d 930, 938–39 (10th Cir. 2012).

Both Defendants have asserted a desire to proceed to trial by filing written notices with the Court. Defendant Siraj Wahhaj first asserted his right to a speedy trial by written notice approximately two and a half years into the case. Doc. 298. He has since filed eight more notices and two motions to dismiss on speedy trial grounds. Defendant Subhannah Wahhaj first asserted her speedy trial right in April 2022, over three and a half years after this case's inception. Doc. 404. She filed three total notices before the instant Motion to Dismiss. Docs. 446, 474. These assertions are "entitled to strong evidentiary weight" in assessing whether Defendants are being deprived of their right. *Barker*, 407 U.S. at 532. On this basis, the Court previously found that Siraj Wahhaj's assertion of his right five times within eighteen months "evince[d] a desire to go to trial with dispatch." Doc. 388 at 10.

Although Defendants both filed "frequent" assertions of their right, the Court finds that the "force" of their assertions was not particularly strong. *Barker*, 407 U.S. at 529. The Court first notes that neither Defendant promptly asserted their speedy trial right. Moreover, under *Barker*, the Court may attach less weight to "a purely pro forma objection." *Id.* Both Defendants asserted their speedy trial right in the same manner—by filing three or four one-paragraph, nearly identical notices with the Court every two or three months prior to filing a motion to dismiss on speedy trial grounds. Each of Defendants' notices contain the same language: that Defendants are "asserting [their] right to a Speedy Trial," they have been in continuous custody, and they are competent to stand trial. Docs. 298, 404.[5] These notices strike the Court as more in line with the pro forma

---

[5] Defendant Subhannah Wahhaj's last notice has additional language stating she objected to the fall 2023 trial setting. Doc. 474. However, her counsel agreed a fall 2023 setting was appropriate at the Court's scheduling conference given the number of pretrial motions Defendants intended on jointly filing. Doc. 554 at 9-10.

11

assertions rejected by the Tenth Circuit in *United States v. Black* than legitimate attempts to speed the case along to trial, particularly when considered in light of Defendants' other filings. 830 F.3d 1099, 1121 (10th Cir. 2016).

Assertions of speedy trial rights "must be viewed in light of [Defendants'] other conduct," and Defendants' joint agreement to stay the case as well as their many motions to dismiss and suppress evidence do not evince a desire to go to trial with dispatch. *United States v. Loud Hawk*, 474 U.S. 302, 314-15 (1986). As discussed, Defendants jointly filed a request to stay the case pending competency determinations for all Defendants. Immediately after declaring Defendants competent, the Court held a joint scheduling in which counsel for all Defendants agreed to a fall 2023 trial date. Doc. 554 at 9-10. Counsel for Subhannah Wahhaj stated he did not want "to go any later than that because of the speedy trial issues," but agreed Fall 2023 was appropriate given there were "a lot of motions to litigate." *Id.* As noted, Defendants then collectively filed six motions to dismiss, six motions to sever, and two motions to suppress evidence. Because Defendants' conduct is at odds with their speedy trial assertions, the assertion of right factor does not support their position. *Loud Hawk*, 474 U.S. at 315 (third *Barker* factor did not support defendants who made "repetitive and unsuccessful motions" while also filing speedy trial assertions).

For these reasons, the Court finds that the "assertion of right" factor does not favor Defendants.

### IV. Prejudice

Finally, Defendants must make a particularized showing of prejudice. *Ray*, 390 F.3d at 1264. Under this prong, courts analyze three main interests: (1) preventing oppressive pretrial incarceration, (2) minimizing concern and anxiety to the defendant, and (3) most importantly,

limiting the possibility that the defense will be impaired. *United States v. Gomez*, 67 F.3d 1515, 1522 (10th Cir. 1995). Defendants only argue the first two factors. "The burden of showing all types of prejudice lies with the individual claiming the violation and the mere possibility of prejudice is not sufficient to support the position that speedy trial rights are violated." *Jackson v. Ray*, 390 F.3d 1254, 1264 (10th Cir. 2004).

As a threshold matter, the Court finds that the delay in this case is not "extreme," so Defendants are not relieved of their burden to show particularized prejudice. Defendants cite *Jackson v. Ray* for the proposition that the near fifty-seven moth delay in this case is "extreme." Doc. 603 at 11; Doc. 634 at 10. In *Jackson*, the Tenth Circuit rejected the defendant's argument that a four and one-third-year delay relieved him of the need to show particularized prejudice. 390 F.3d at 1263-64. The Tenth Circuit relied upon "clearly established Supreme Court law" stating that the presumption of prejudice only applies when the government's negligence causes a six-year delay. *Id.* There has not been a six-year delay in this case, nor was delay the result of the Government's negligence.

Turning to Defendants' prejudice arguments, Defendants argue the length of the detention combined with the threat of COVID-19 created "oppressive pretrial incarceration" and exacerbated Defendants anxieties and concerns. Defendant Subhannah Wahhaj notes she contracted COVID-19 while incarcerated "and became extremely ill." Doc. 603 at 11. Both Defendants cite generalized concerns that COVID-19 infection rate is higher in prisons, and it puts them "at risk of a variety of resulting complications." Doc. 603 at 11; Doc. 634 at 10. Defendants do not attempt to cite the COVID-19 infection rate at their specific pretrial facilities, nor do they assert any preexisting conditions that might contribute to complications from COVID-19. Finally, Defendants state their inability to contact family members has heightened their anxieties and

13

concerns. While these assertions may well be true, they do not support "particularized" findings of prejudice. Virtually all defendants awaiting trial in detention experience what Defendants claim to have suffered.

Critically, Defendants do not argue their defense at trial has been impaired by the delay. Defendants point to no missing evidence or unavailable witnesses resulting from the delay. Defendants failed to show their defense has "been hindered in the sense envisioned by the *Barker* analysis." *United States v. Toombs*, 574 F.3d 1262, 1275 (10th Cir. 2009) (no prejudice existed where, even assuming the first two interests were shown, the defendant did not show his defense was hindered).

For these reasons, the Court finds Defendants have not suffered particularized prejudice and thus, this factor weighs in the Government's favor.

## CONCLUSION

Overall, the *Barker* factors weigh strongly in the Government's favor. First, the length of delay (fifty-seven months) weighs in Defendant's favor. However, as the Court previously noted, longer delays have not given rise to Sixth Amendment speedy trial violations. *See* Doc. 388 at 13; *Muhtorov*; 20 F.4th at 660 (six-and-a-half-year delay); *United States v. Blanco*, 861 F.2d 773, 777–80 (2d Cir. 1988) (ten-year delay). Second, the principal reasons for the delay—the ongoing COVID-19 pandemic, Defendants' competency evaluations, and Defendants receiving new counsel and moving to proceed pro se, Defendants' many pretrial motions, as well as the complexity of the case and the volume of discovery—weigh strongly in the Government's favor. Third, Defendants' assertions of their speedy trial right, though frequent, are at odds with their conduct in consenting to a prolonged stay and filing nearly two dozen pretrial motions, and thus do not weigh in their favor. Fourth, Defendants have not suffered any particularized prejudice,

weighing the final factor in the Government's favor. On balance, the Court finds there has been no violation of Defendants' Sixth Amendment right to a speedy trial.

      **THEREFORE, IT IS SO ORDERED** that the Defendants' Motions to Dismiss (Docs. 603, 634) are hereby **DENIED**.

 

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE