IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL NO. 18-2945 WJ |
| | ) | |
| vs. | ) | |
| | ) | |
| JANY LEVEILLE, ET AL, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>UNITED STATES' REQUESTED JURY INSTRUCTIONS</u>

Pursuant Fed. R. Crim. P. 30, the United States respectfully requests that the Court include the following in its instructions to the jury.  The United States further requests permission to submit such additional instructions as may become appropriate during trial.

1. 10th Cir. Crim. Pattern Jury Instr. 1.01 - Preliminary Instructions Before Trial

2. 10th Cir. Crim. Pattern Jury Instr. 1.02 - Note-Taking by Jurors

3. 10th Cir. Crim. Pattern Jury Instr. 1.03 - Introduction to Final Instructions

4. 10th Cir. Crim. Pattern Jury Instr. 1.04 - Duty to Follow Instructions

5. 10th Cir. Crim. Pattern Jury Instr. 1.05 - Presumption of Innocence - Burden of Proof - Reasonable Doubt

6. 10th Cir. Crim. Pattern Jury Instr. 1.06 - Evidence Defined

7. 10th Cir. Crim. Pattern Jury Instr. 1.07 – Evidence - Direct and Circumstantial - Inferences

8. 10th Cir. Crim. Pattern Jury Instr. 1.08 - Credibility of Witnesses

9. 10th Cir. Crim. Pattern Jury Instr. 1.08.1 - Non-Testifying Defendant (if applicable)

10. 10th Cir. Crim. Pattern Jury Instr. 1.17 - Expert Witness

11. 10th Cir. Crim. Pattern Jury Instr. 1.18 - On or About

12. 10th Cir. Crim. Pattern Jury Instr. 1.19 - Caution - Consider Only Crime Charged

13. 10th Cir. Crim. Pattern Jury Instr. 1.20 - Caution - Punishment

14. 10th Cir. Crim. Pattern Jury Instr. 1.22 – Multiple Defendants - Multiple Counts

15. 10th Cir. Crim. Pattern Jury Instr. 1.23 – Duty to Deliberate - Verdict Form

16. 10th Cir. Crim. Pattern Jury Instr. 1.24 – Unanimity of Theory

17. 10th Cir. Crim. Pattern Jury Instr. 1.31 – Actual or Constructive Possession

18. 10th Cir. Crim. Pattern Jury Instr. 1.34 – Insanity

19. 10th Cir. Crim. Pattern Jury Instr. 1.37 – Knowingly—Deliberate Ignorance

20. 10th Cir. Crim. Pattern Jury Instr. 1.39 – Interstate and Foreign Commerce—Defined 18 U.S.C. § 10

21. 10th Cir. Crim. Pattern Jury Instr. 1.41 – Summaries and Charts

22. 10th Cir. Crim. Pattern Jury Instr. 1.44 – Communication with the Court

23. 11th Cir. Pattern Crim. Jury Instr. O91.1 – Conspiracy to Provide Material (Count 1)

24. 11th Cir. Pattern Crim. Jury Instr. O91.1 – Providing  Material Support (Count 2)

25. 18 U.S.C. § 1117 (Count 3)

26. 10th Cir. Crim. Pattern Jury Instr. 2.19 – Conspiracy (Count 4)

27. 10th Cir. Crim. Pattern Jury Instr. 2.44 – Possessing a Firearm While Unlawfully in the United States (Count 5)

28. 8th Cir. Model Crim. Jury Instr. 6.18.1201 (2021) (modified); 7th Cir. Crim. Pattern Jury Instr. 18 U.S.C. § 1201(a)(1) (modified); 9th Cir. Pattern Criminal Jury Instruction 17.1 (modified) – Conspiracy to Commit Kidnapping (Count 6).

29. 8th Cir. Model Crim. Jury Instr. 6.18.1201 (2021) (modified); 7th Cir. Crim. Pattern Jury Instr. 18 U.S.C. § 1201(a)(1) (modified); 9th Cir. Pattern Criminal Jury Instruction 17.1 (modified) – Kidnapping (Count 7)

30. 10th Cir. Crim. Pattern Jury Instr. 2.06 – Aid and Abet, 18 U.S.C. § 2(a)

Respectfully submitted:

ALEXANDER M.M. UBALLEZ
United States Attorney

/s/ *Filed electronically*
KIMBERLY A. BRAWLEY
TAVO HALL
Assistant United States Attorneys
PO Box 607
Albuquerque, NM 87103
(505) 346-7274

*/s/ Electronically filed*
GEORGE C. KRAEHE
Trial Attorney
Counterterrorism Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC  20530

I HEREBY CERTIFY that I filed the foregoing pleading electronically through the CM/ECF system which caused the opposing party of record to be served by electronic means, as reflected on the Notice of Electronic Filing. A copy of these instructions were also mailed to Defendants Siraj Ibn Wahhaj and Lucas Morton.

*/s/ Filed electronically*
Kimberly A. Brawley
Assistant United States Attorney

## UNITED STATES' REQUESTED INSTRUCTION NO. 1

Members of the Jury:

At the end of the trial, I will give you detailed guidance on the law and on how you will go about reaching your decision. But now I simply want to generally explain how the trial will proceed.

This criminal case has been brought by the United States government. I will sometimes refer to the United States as the prosecution. The United States is represented by Trial Attorney George Kraehe and Assistant United States Attorneys Tavo Hall and Kimberly Brawley.  Jany Leveille is represented by her lawyers, Aric Elsenheimer and Angelica Hall.  Siraj Ibn Wahhaj is representing himself but has stand-by counsel, Thomas Clark.  Hujrah Wahhaj is represented by her lawyers, Donald Kochersberger and Marshall Ray.  Subhanah Wahhaj is represented by her lawyers, Ryan Villa and Justine Fox-Young.  Lucas Morton is representing himself but has stand-by counsel, Joseph Shattuck.

The indictment charges the defendants with seven different counts, as follows:  Count 1, conspiracy to provide material support to terrorists; Count 2, providing material support to terrorists; Count 3, conspiracy to murder an officer or employee of the United States; Count 4, conspiracy to commit an offense against the United States; Count 5, possessing a firearm while unlawfully in the United States and aiding and abetting the unlawful possession of a firearm; Count 6, conspiracy to commit kidnapping; and Count 7, kidnapping.

The indictment is simply the description of the charges made by the United States against the defendants; it is not evidence of guilt or anything else.  The defendants pleaded not guilty and are presumed innocent. They may not be found guilty by you unless all twelve of you unanimously find that the United States has proved his guilt beyond a reasonable doubt. There

are multiple defendants in this case and you will have to give separate consideration to the case against each defendant as each is entitled to individual consideration.

The first step in the trial will be the opening statements. The United States in its opening statement will tell you about the evidence that it intends to put before you. Just as the indictment is not evidence, neither is the opening statement. Its purpose is only to help you understand what the evidence will be. It is a road map to show you what is ahead.

After the United States' opening statement, the defendant's attorney may make an opening statement.

Evidence will be presented from which you will have to determine the facts. The evidence will consist of the testimony of the witnesses, documents and other things received into the record as exhibits, and any facts about which the lawyers agree or to which they stipulate.

The United States will offer its evidence. After the United States' evidence, the defendants' lawyers, Mr. Wahhaj, and Mr. Morton may present evidence, but none of the defendants is required to do so. I remind you that the defendants are presumed innocent, and it is the United States that must prove the defendant's guilt beyond a reasonable doubt. If the defendants submit evidence, the United States may introduce rebuttal evidence.

At times during the trial, a lawyer may make an objection to a question asked by another lawyer, or to an answer by a witness. This simply means the lawyer is requesting that I make a decision on a particular rule of law. Do not draw any conclusion from such objections or from my rulings on the objections. If I sustain an objection to a question, the witness may not answer it. Do not attempt to guess what answer might have been given if I had allowed the answer. If I overrule the objection, treat the answer as any other. If I tell you not to consider a particular statement, you may not refer to that statement in your later deliberations. Similarly, if I tell you

to consider a particular piece of evidence for a specific purpose, you may consider it only for that purpose.

During the course of the trial, I may have to interrupt the proceedings to confer with the attorneys about the rules of law that should apply. Sometimes we will talk briefly at the bench. But some of these conferences will take more time so I will excuse you from the courtroom. I will try to avoid such interruptions whenever possible, but please be patient even if the trial seems to be moving slowly because conferences often actually save time in the end.

You are to consider all the evidence received in this trial. It will be up to you to decide what evidence to believe and how much of any witness's testimony to accept or reject.

After you have heard all the evidence on both sides, the United States and the defense will each be given time for their final arguments.

The final part of the trial occurs when I instruct you on the rules of law that you are to use in reaching your verdict.

During the course of the trial, I may ask a question of a witness. If I do, that does not indicate I have any opinion about the facts in the case but am only trying to bring out facts that you may consider.

[Insert Instruction 1.02 here if material on note-taking by juror is desired.]

[Insert discussion of the elements of the offense here if they are to be set out for the jury in the preliminary instruction.]

Ordinarily, the attorneys will develop all the relevant evidence that will be necessary for you to reach your verdict.  However, in rare situations, a juror may believe a question is critical to reaching a decision on a necessary element of the case.  In that exceptional circumstance, you may write out a question and provide it to the courtroom deputy while the witness is on the

stand.  I will then consider that question with the lawyers.  If it is determined to be a proper and necessary question, I will ask it.  If I do not ask it, you should recognize that I have determined it is not a legally appropriate question and not worry about why it was not asked or what the answer would have been.

During the course of the trial, you should not talk with any witness or with the defendants or with any of the lawyers at all. In addition, during the course of the trial you should not talk about the trial with anyone else. Do not discuss the case with anyone or provide any information about the trial to anyone outside the courtroom until the verdict is received. Do not use the internet or any other form of electronic communication to provide any information. Simply put, do not communicate with anyone about the trial until your verdict is received. Also, you should not discuss this case among yourselves until I have instructed you on the law and you have gone to the jury room to make your decision at the end of the trial. It is important that you wait until all the evidence is received and you have heard my instructions on the controlling rules of law before you deliberate among yourselves. Let me add that during the course of the trial you will receive all the evidence you properly may consider to decide the case. Because of this, you should not attempt to gather any information or do any research on your own. Do not attempt to visit any places mentioned in the case, either actually or on the internet, and do not in any other way try to learn about the case outside the courtroom.

The court reporter is making stenographic notes of everything that is said. This is basically to assist any appeals. However, a typewritten copy of the testimony will not be available for your use during deliberations. On the other hand, any exhibits will be available to you during your deliberations.

Now that the trial has begun, you must not hear or read about it in the media. The reason

for this is that your decision in this case must be made solely on the evidence presented at the trial.

With that introduction, Mr. Kraehe, you may present the opening statement for the United States.

10th Cir. Crim. Pattern Jury Instr. 1.01 (2021) (PRELIMINARY INSTRUCTIONS BEFORE TRIAL) (modified)

## UNITED STATES' REQUESTED INSTRUCTION NO. 2

If you would like to take notes during the trial, you may. On the other hand, you are not required to take notes.

If you do decide to take notes, be careful not to get so involved in note taking that you become distracted, and remember that your notes will not necessarily reflect exactly what was said, so your notes should be used only as memory aids. Therefore, you should not give your notes precedence over your independent recollection of the evidence. You should also not be unduly influenced by the notes of other jurors. If you do take notes, leave them in the jury room at night and do not discuss the contents of your notes until you begin deliberations.

10th Cir. Crim. Pattern Jury Instr. 1.02 (2021) (NOTE-TAKING BY JURORS (ALTERNATIVE B))

**UNITED STATES' REQUESTED INSTRUCTION NO. 3**

Members of the Jury:

In any jury trial there are, in effect, two judges. I am one of the judges, you are the other. I am the judge of the law. You, as jurors, are the judges of the facts. I presided over the trial and decided what evidence was proper for your consideration. It is also my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdict.

In explaining the rules of law that you must follow, first, I will give you some general instructions which apply in every criminal case – for example, instructions about burden of proof and insights that may help you to judge the believability of witnesses. Then I will give you some specific rules of law that apply to this particular case and, finally, I will explain the procedures you should follow in your deliberations, and the possible verdicts you may return. These instructions will be given to you for use in the jury room, so you need not take notes.

10th Cir. Crim. Pattern Jury Instr. 1.03 (2021) (INTRODUCTION TO FINAL INSTRUCTIONS)

### UNITED STATES' REQUESTED INSTRUCTION NO. 4

You, as jurors, are the judges of the facts. But in determining what actually happened – that is, in reaching your decision as to the facts – it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences. However, you should not read into these instructions, or anything else I may have said or done, any suggestion as to what your verdict should be. That is entirely up to you.

It is also your duty to base your verdict solely upon the evidence, without prejudice or sympathy. That was the promise you made and the oath you took.

10th Cir. Crim. Pattern Jury Instr. 1.04 (2021) (DUTY TO FOLLOW INSTRUCTIONS)

## UNITED STATES' REQUESTED INSTRUCTION NO. 5

The United States has the burden of proving each defendant guilty beyond a reasonable doubt.  The law does not require the defendants to prove their innocence or produce any evidence at all.  The United States has the burden of proving each defendant guilty beyond a reasonable doubt, and if it fails to do so, you must find that defendant or defendants not guilty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendants' guilt. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. It is only required that the United States' proof exclude any "reasonable doubt" concerning the defendants' guilt. A reasonable doubt is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case. If, based on your consideration of the evidence, you are firmly convinced that some or all of the defendants are guilty of the crimes charged, you must find the defendants for whom are firmly convinced guilty. If, on the other hand, you think there is a real possibility that some or all of the defendants are not guilty, you must give the defendants for whom you think there is a real possibility that they are not guilty the benefit of the doubt and find them not guilty.

10th Cir. Crim. Pattern Jury Instr. 1.05 (2021) (PRESUMPTION OF INNOCENCE—BURDEN OF PROOF—REASONABLE DOUBT) (modified)

## UNITED STATES' REQUESTED INSTRUCTION NO. 6

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

During the trial, I did not let you hear the answers to some of the questions that the lawyers asked. I also ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

10th Cir. Crim. Pattern Jury Instr. 1.06 (2021) (EVIDENCE—DEFINED)

## UNITED STATES' REQUESTED INSTRUCTION NO. 7

There are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of facts that point to the existence or non-existence of certain other facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence. The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience. An inference is a conclusion that reason and common sense may lead you to draw from facts that have been proved.

By permitting such reasonable inferences, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in this case.

10th Cir. Crim. Pattern Jury Instr. 1.07 (2021) (EVIDENCE—DIRECT AND CIRCUMSTANTIAL—INFERENCES)

## UNITED STATES' REQUESTED INSTRUCTION NO. 8

I remind you that it is your job to decide whether the United States has proved the guilt of the defendant beyond a reasonable doubt. In doing so, you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses [including the defendant], who testified in this case. You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was. In making that decision, I suggest that you ask yourself a few questions: Did the witness impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome in this case? Did the witness have any relationship with either the United States or the defense? Did the witness seem to have a good memory? Did the witness clearly see or hear the things about which he/she testified? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you should keep in mind that innocent mis-recollection – like failure of recollection – is not uncommon.

[The testimony of the defendant(s) should be weighed and his/her credibility evaluated in the same way as that of any other witness.]

[The defendant(s) did not testify and I remind you that you cannot consider his/her decision not to testify as evidence of guilt. I want you to clearly understand, please, that the

Constitution of the United States grants to a defendant the right to remain silent. That means the right not to testify or call any witnesses. That is a constitutional right in this country, it is very carefully guarded, and you should understand that no presumption of guilt may be raised and no inference of any kind may be drawn from the fact that a defendant does not take the witness stand and testify or call any witnesses.]

In reaching a conclusion on a particular point, or ultimately in reaching a verdict in this case, do not make any decisions simply because there were more witnesses on one side than on the other.

10th Cir. Crim. Pattern Jury Instr. 1.08 (2021) (CREDIBILITY OF WITNESSES)

## UNITED STATES' REQUESTED INSTRUCTION NO. 9

The defendant(s) did not testify and I remind you that you cannot consider his/her decision not to testify as evidence of guilt. You must understand that the Constitution of the United States grants to a defendant the right to remain silent. That means the right not to testify. That is a constitutional right in this country. It is very carefully guarded, and you must not presume or infer guilt from the fact that a defendant does not take the witness stand and testify or call any witnesses.

10th Cir. Crim. Pattern Jury Instr. 1.08.1 (2021) (NON-TESTIFYING DEFENDANT)

## UNITED STATES REQUESTED INSTRUCTION NO. 10

During the trial, you heard the testimony of a number of expert witnesses.

James L. Barlow, Jr. is a Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Firearms Enforcement Officer who testified about his examination and testing of the firearms, ammunition, and firearms accessories that were seized in the course of the investigation of this case.  He also testified about the interstate nexus for the firearms and ammunition.

You heard the testimony of Randy Watt, who testified about firearms and tactics training that the defendants and others were engaged in on the property in Amalia, New Mexico.  Mr. Watt testified about the design, construction, purposes, and use of the living and training areas on the property, to include the dwellings, barriers, and tunnels; whether and to what extent the training was consistent with defensive or offensive purposes; whether and to what extent the defendants' and others' firearms and tactical training activities on the property was consistent with known terrorist tactics, techniques, and procedures; the sources and significance of writings of the defendants, including handwritten notes entitled "Phases of a Terrorist Attack"; and general armed group, law enforcement and military tactical knowledge and doctrine generally and as applied to the facts of this case.

John P. Phillips, M.D., is a pediatric neurologist who testified about medical treatment that was provided to John Doe[1] prior to his death, including John Doe's medical diagnosis and treatment history.  Dr. Phillips also testified that John Doe suffered from a seizure disorder, that his medical conditions required continuing medical treatment, that he required daily prescription medication, and that death was a foreseeable and likely eventual outcome in the event John Doe did not receive his required treatment and prescription medication.  Dr. Phillips testified about

---

[1] The United States intends for the final jury instructions to include John Doe's real name.

physical and emotional stressors that could aggravate John Doe's medical conditions and the possible causes of John Doe's death based on descriptions of his death by witnesses.

Former FBI Special Agent Brian A. Nishida testified about processing and forensic examination of the electronic devices and media that were seized or collected in connection with investigation of defendants.  He testified about the data extracted from these electronic devices and media, including, among other things, the means by which this data was extracted and preserved.

[Include any defense expert witnesses who are permitted to testify.]

In some cases, such as this one, scientific, technical, or other specialized knowledge may assist the jury in understanding the evidence or in determining a fact in issue. A witness who has knowledge, skill, experience, training or education may testify and state an opinion concerning such matters.

You are not required to accept such an opinion. You should consider opinion testimony just as you consider other testimony in this trial. Give opinion testimony as much weight as you think it deserves, considering the education and experience of the witness, the soundness of the reasons given for the opinion, and other evidence in the trial.

10th Cir. Crim. Pattern Jury Instr. 1.17 (2021) (EXPERT WITNESS) (modified)

**UNITED STATES' REQUESTED INSTRUCTION NO. 11**

You will note that the indictment charges that the crimes were committed from in or about October 2017 through in or about August 2018. The United States must prove beyond a reasonable doubt that the defendants committed each crime reasonably near those dates.

10th Cir. Crim. Pattern Jury Instr. 1.18 (2021) (ON OR ABOUT) (modified)

## UNITED STATES' REQUESTED INSTRUCTION NO. 12

You are here to decide whether the United States has proved beyond a reasonable doubt that the defendants are guilty of the crimes charged. The defendants are not on trial for any act, conduct, or crime not charged in the indictment.

It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for the crime charged. The fact that another person *also* may be guilty is no defense to a criminal charge.

The question of the possible guilt of others should not enter your thinking as you decide whether the defendants have been proved guilty of the crime charged.

10th Cir. Crim. Pattern Jury Instr. 1.19 (2021) (CAUTION—CONSIDER ONLY CRIME CHARGED)

## UNITED STATES' REQUESTED INSTRUCTION NO. 13

If you find the defendant guilty, it will be my duty to decide what the punishment will be.

You should not discuss or consider the possible punishment in any way while deciding your

verdict.

10th Cir. Crim. Pattern Jury Instr. 1.20 (2021) (CAUTION—PUNISHMENT (Non-Capital Cases))

**UNITED STATES' REQUESTED INSTRUCTION NO. 14**

A separate crime is charged against one or more of the defendants in each count of the indictment. You must separately consider the evidence against the defendant on each count and return a separate verdict for each count.

Your verdict as to any one count, whether it is guilty or not guilty, should not influence your verdict as to any other defendants or counts.

10th Cir. Crim. Pattern Jury Instr. 1.22 (2021) (MULTIPLE DEFENDANTS – MULTIPLE COUNTS) (modified)

## UNITED STATES' REQUESTED INSTRUCTION NO. 15

In a moment, you will be escorted to the jury room and each of you will be provided with a copy of the instructions I have just read. Any exhibits admitted into evidence will also be placed in the jury room for your review.

When you go to the jury room, you should first select a foreperson who will help guide your deliberations and will speak for you here in the courtroom. The second thing you should do is review the instructions. Not only will your deliberations be more productive if you understand the legal principles upon which your verdict must be based, but for your verdict to be valid, you must follow the instructions throughout your deliberations. Remember, you are the judges of the facts, but you are bound by your oath to follow the law stated in the instructions.

To reach a verdict, whether it is guilty or not guilty, all of you must agree. Your verdict must be unanimous on each count of the indictment. Your deliberations will be secret. You will never have to explain your verdict to anyone.

You must consult with one another and deliberate in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to re-examine your own opinions and change your mind if you are convinced that you were wrong. But do not give up your honest beliefs solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times, you are judges – judges of the facts. You must decide whether the United States has proved the defendant guilty beyond a reasonable doubt.

A form of verdict has been prepared for your convenience.

The foreperson will write the unanimous answer of the jury in the spaces provided for

each count of the indictment and for each defendant, either guilty or not guilty. At the conclusion of your deliberations, the foreperson should date and sign the verdict.

If you need to communicate with me during your deliberations, the foreperson should write the message and give it to the Court Security Officer. I will either reply in writing or bring you back into the court to respond to your message. Under no circumstances should you reveal to me the numerical division of the jury.

10th Cir. Crim. Pattern Jury Instr. 1.23 (2021) (DUTY TO DELIBERATE—VERDICT FORM) (modified)

## UNITED STATES' REQUESTED INSTRUCTION NO. 16[2]

Your verdict must be unanimous.  Counts 3 and 4 of the indictment accuse the defendants of committing the following acts:

1.      In or about December 2017, in the State of Georgia, **SIRAJ IBN WAHHAJ** provided at least ten firearms to his coconspirators.

2.      In or about December 2017, in the State of Georgia, **HUJRAH WAHHAJ** provided at least one firearm to her coconspirators.

3.      In or about December 2017, **JANY LEVEILLE**, **SIRAJ IBN WAHHAJ**, **HUJRAH WAHHAJ**, and **SUBHANAH WAHHAJ** traveled with others from the State of Georgia to the State of Alabama in vehicles owned by **JANY LEVEILLE** and others, while armed with firearms and ammunition.

4.      In or about December 2017, **JANY LEVEILLE**, **SIRAJ IBN WAHHAJ**, **HUJRAH WAHHAJ**, **SUBHANAH WAHHAJ**, and **LUCAS MORTON** traveled with others from the State of Alabama to the State of New Mexico in a vehicle owned by **LUCAS MORTON**, while armed with firearms and ammunition.

5.      In or between December 2017 and August 2018, in the District of New Mexico, **SUBHANAH WAHHAJ** provided financial support to her coconspirators.

6.      In or between December 2017 and August 2018, in the District of New Mexico, **JANY LEVEILLE**, **SIRAJ IBN WAHHAJ**, **HUJRAH WAHHAJ**, **SUBHANAH WAHHAJ**, and **LUCAS MORTON** built and maintained a training compound comprised of materials such as a wooden frame, a trailer, plastic tarps, and tire walls and barriers.

7.      In or between December 2017 and August 2018, in the District of New Mexico,

---

[2] This instruction should follow the substantive instructions regarding Counts 3 and 4 as it pertains to those charges.

**JANY LEVEILLE**, **SIRAJ IBN WAHHAJ**, **HUJRAH WAHHAJ**, **SUBHANAH WAHHAJ**, and **LUCAS MORTON** stored firearms and ammunition on the training compound.

8.      In or between December 2017 and August 2018, in the District of New Mexico, **SIRAJ IBN WAHHAJ** and **LUCAS MORTON** built a firing range on the training compound.

9.      In or between December 2017 and August 2018, in the District of New Mexico, **SIRAJ IBN WAHHAJ** and **LUCAS MORTON** dug an underground tunnel leading away from the training compound.

10.      In or between December 2017 and August 2018, in the District of New Mexico, **JANY LEVEILLE** possessed and shot a firearm on the training compound's firing range.

11.      In or between December 2017 and August 2018, in the District of New Mexico, **SIRAJ IBN WAHHAJ** possessed and shot a firearm on the training compound's firing range.

12.      In or between December 2017 and August 2018, in the District of New Mexico, **HUJRAH WAHHAJ** possessed and shot a firearm on the training compound's firing range.

13.      In or between December 2017 and August 2018, in the District of New Mexico, **SUBHANAH WAHHAJ** possessed and shot a firearm on the training compound's firing range.

14.      In or between December 2017 and August 2018, in the District of New Mexico, **LUCAS MORTON** possessed and shot a firearm on the training compound's firing range.

15.      In or about December 2017, in the District of Georgia, **JANY LEVEILLE** and **LUCAS MORTON** solicited one of **SIRAJ IBN WAHHAJ's** relatives to join the occupants of the training compound in the State of New Mexico, to bring money and firearms, and to die as a martyr.

16.      In or between December 2017 and August 2018, in the District of New Mexico, **SIRAJ IBN WAHHAJ** and **LUCAS MORTON** trained persons, including other members of

the training compound, in using firearms and performing tactical maneuvers.

17.     In or between December 2017 and August 2018, in the District of New Mexico and elsewhere, **JANY LEVEILLE** and **SIRAJ IBN WAHHAJ** instructed persons, including other occupants of the training compound, to be prepared to engage in jihad, to die as martyrs, and to engage in violent acts, including killing Federal Bureau of Investigation employees, government officials, and military personnel.

The United States does not have to prove all of these different acts for you to return a guilty verdict on any of these counts.

But in order for you to return a guilty verdict as to either Count 3 and/or Count 4 for each defendant, all twelve of you must agree upon which of the listed acts, if any, the defendants committed and that the defendants committed at least one of the acts listed.

10th Cir. Crim. Pattern Jury Instr. 1.24 (2021) (UNANIMITY OF THEORY) (modified)

## UNITED STATES' REQUESTED INSTRUCTION NO. 17

A person who, although not in actual possession, knowingly has the power and intent at a given time to exercise dominion or control over an object, either directly or through another person or persons, is then in constructive possession of it.

More than one person can be in possession of an object if each knows of its presence and has the power and intent to control it.

In the situation where the object is found in a place (such as a room) occupied by more than one person, you may not infer power and intent to exercise control over the object based solely on joint occupancy.  Mere control over the place in which the object is found is not sufficient to establish constructive possession.  Instead, in this situation, the United States must prove some connection between the particular defendant and the object demonstrating the power and intent to exercise control over the object.

10th Cir. Crim. Pattern Jury Instr. 1.31 (2021) (ACTUAL OR CONSTRUCTIVE POSSESSION) (modified)

## UNITED STATES' REQUESTED INSTRUCTION NO. 18

If you conclude that the United States has proved beyond a reasonable doubt that Jany Leveille committed the crime charged, you must then consider whether she should be found "not guilty by reason of insanity."  Under the law, a person is not criminally liable for his or her conduct while insane.  Insanity is therefore a defense to the crime charged.  Ms. Leveille has presented evidence of insanity at the time she committed the crimes charged.

For you to return a verdict of not guilty by reason of insanity, Ms. Leveille must prove (1) that she suffered from a severe mental disease or defect when she committed the crimes; *and* (2) that, as a result of this mental disease or defect, she was not able to understand what she was doing or to understand that it was wrong.

Insanity may be temporary or permanent.  You may consider evidence of Ms. Leveille's mental condition before, during, and after the crime, in deciding whether she was legally insane at the time of the crime.

Unlike other aspects of a criminal trial, Ms. Leveille has the burden of proving an insanity defense. She does not have to prove insanity beyond a reasonable doubt, however, but only by clear and convincing evidence. Clear and convincing evidence is evidence that makes it highly probable that the defendant was insane. You should render a verdict of "not guilty by reason of insanity" if you find, by clear and convincing evidence, that Ms. Leveille was insane when she committed the crime charged.

Although Ms. Leveille has raised the issue of insanity, the United States still has the burden of proving all of the essential elements of the offense charged beyond a reasonable doubt. Remember that there are three possible verdicts in this case:  guilty, not guilty, and not guilty only by reason of insanity.

The other defendants have not raised an insanity defense and are not entitled to argue to you that they may have been suffering from a mental disease or defect that negates their guilt of the charged offenses.  Thus, you should only consider mental health evidence as to Ms. Leveille's insanity defense.

10th Cir. Crim. Pattern Jury Instr. 1.34 (2021) (INSANITY) (modified)

## UNITED STATES' REQUESTED INSTRUCTION NO. 19

When the word "knowingly" is used in these instructions, it means that the act was done voluntarily and intentionally, and not because of mistake or accident.  Although knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact.  Knowledge can be inferred if the defendant was aware of a high probability of the existence of [the fact in question], unless the defendant did not actually believe [the fact in question].

10th Cir. Crim. Pattern Jury Instr. 1.37 (2021) (KNOWINGLY—DELIBERATE IGNORANCE) (modified)

**UNITED STATES' REQUESTED INSTRUCTION NO. 20**

Interstate commerce means commerce or travel between one state, territory or possession of the United States and another state, territory or possession of the United States, including the District of Columbia.  Commerce includes travel, trade, transportation, and communication.

Foreign commerce means commerce between any part of the United States (including its territorial waters), and any other country (including its territorial waters).

10th Cir. Crim. Pattern Jury Instr. 1.39 (2021) (INTERSTATE AND FOREIGN COMMERCE—DEFINED 18 U.S.C. § 10)

**UNITED STATES' REQUESTED INSTRUCTION NO. 21**

Certain charts and summaries have been shown to you to help explain the evidence in this case. Their only purpose is to help explain the evidence. These charts and summaries are not evidence or proof of any facts.

10th Cir. Crim. Pattern Jury Instr. 1.41 (2021) (SUMMARIES AND CHARTS)

**UNITED STATES' REQUESTED INSTRUCTION NO. 22**

If you want to communicate with me at any time during your deliberations, please write

down your message or question and give it to [the court room deputy] [my law clerk], who will

bring it to my attention. I will respond as promptly as possible, either in writing or by having you

return to the courtroom so that I can address you orally. I caution you, however, that with any

message or question you might send, you should not tell me any details of your deliberations or

indicate how many of you are voting in a particular way on any issue.

Let me remind you again that nothing I have said in these instructions, nor anything I

have said or done during the trial, was meant to suggest to you what I think your decision should

be. That is your exclusive responsibility.


10th Cir. Crim. Pattern Jury Instr. 1.44 (2021) (COMMUNICATION WITH THE COURT)
(modified)

**UNITED STATES' REQUESTED INSTRUCTION NO. 23 (Count 1)**

The defendants are charged in Count 1 with conspiring to violate 18 U.S.C. § 2339A. This law makes it a crime to conspire to provide material support or resources, knowing or intending that they are to be used to prepare for, or to carry out, certain other statutory crimes— here, a violation of 18 U.S.C. § 1114, which prohibits the killing and attempted killing of officers or employees of the United States.

To find the defendants guilty of this crime, you must be convinced that the United States has proved each of the following beyond a reasonable doubt:

*First*:   the defendants entered into a conspiracy, which I will define for you below;

*Second*: the objective of the conspiracy was to provide material support or resources [to persons described in the indictment]; and

*Third*:   the defendants did so knowing or in tending that the material support or resources were to be used to prepare for, or to carry out, a violation of 18 U.S.C. § 1114, which prohibits the killing or attempted killing of officers or employees of the United States while those persons are engaged in or on account of the performance of official duties.

A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose.  It is a kind of "partnership in criminal purposes" in which each member becomes the agent or partner of every other member.  The evidence may show that some of the persons involved in the alleged conspiracy are not on trial.  This does not matter.  There is no requirement that all members of a conspiracy be charged or tried together in one proceeding.

The term "material support or resources" means any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (one or

more individuals who may be or include oneself), and transportation.  Medicine or religious materials are not included.

The United States does not need to prove that a violation of 18 U.S.C. § 1114 occurred in order to satisfy the elements of this crime.  The United States also does not need to prove that the Defendants' material support to prepare for, or to carry out, a violation of § 1114 was done for the purpose of constituting "terrorism," or that the Defendants were "terrorists."  For you to find the Defendants guilty of this charge, the United States need only prove that the Defendants knew and intended their material support to be in preparation for or to carry out the killing or attempted killing of officers or employees of the United States.

11th Cir. Crim. Pattern Jury Instr. O91.1 (2020) (modified); *see also* 18 U.S.C. § 2339A; *United States v. Hassoun*, 476 F.3d 1181, 1188 (11th Cir. 2007); *United States v. Hassan*, 742 F.3d 104, 111-12 (4th Cir. 2014); *United States v. Khan*, 309 F. Supp. 2d 789, 821 (E.D. Va. Mar. 4, 2004); *United States v. Abu Khatallah*, 151 F. Supp. 3d 116, 138-41 (D.D.C. 2015).  *See also* 10th Cir. Crim. Pattern Jur Instr. 2.87 (2021) (CONTROLLED SUBSTANCES—CONSPIRACY) (modified).

**UNITED STATES' REQUESTED INSTRUCTION NO. 24 (Count 2)**

The defendants are charged in Count 2 with violating 18 U.S.C. § 2339A.  This law makes it a crime to provide material support or resources, knowing or intending that they are to be used to prepare for, or to carry out, certain other statutory crimes—here, a violation of 18 U.S.C. § 1114, which prohibits the killing and attempted killing of officers or employees of the United States.

To find the defendants guilty of this crime, you must be convinced that the United States has proved each of the following beyond a reasonable doubt:

*First*:   the defendants provided material support or resources [to persons described in the indictment]; and

*Second*: the defendants did so knowing or intending that the material support or resources were to be used to prepare for, or to carry out, a violation of 18 U.S.C. § 1114, which prohibits the killing or attempted killing of officers or employees of the United States while that person is engaged in or on account of the performance of official duties.

The term "material support or resources" means any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (one or more individuals who may be or include oneself), and transportation.  Medicine or religious materials are not included.

The United States does not need to prove that a violation of 18 U.S.C. § 1114 occurred in order to satisfy the elements of this crime.  The United States also does not need to prove that the Defendants' material support to prepare for, or to carry out, a violation of § 1114 was done for the purpose of constituting "terrorism," or that the Defendants were "terrorists."  For you to find

the Defendants guilty of this charge, the United States need only prove that the Defendants knew and intended their material support to be in preparation for or to carry out the killing or attempted killing of officers or employees of the United States.

11th Cir. Crim. Pattern Jury Instr. O91.1 (2020) (modified); *see also* 18 U.S.C. § 2339A; *United States v. Hassoun*, 476 F.3d 1181, 1188 (11th Cir. 2007); *United States v. Hassan*, 742 F.3d 104, 111-12 (4th Cir. 2014); *United States v. Khan*, 309 F. Supp. 2d 789, 821 (E.D. Va. Mar. 4, 2004). *United States v. Abu Khatallah*, 151 F. Supp. 3d 116, 138-41 (D.D.C. 2015).

**UNITED STATES' REQUESTED INSTRUCTION NO. 25 (Count 3)**

Defendants Jany Leveille, Siraj Ibn Wahhaj, and Lucas Morton are charged in Count 3 with conspiring to murder an officer or employee of the United States, in violation of 18 U.S.C. § 1117.

This law makes it a crime to conspire to kill or attempt to kill any officer of employee of the United States or of any agency in any branch of the United States Government while such officer or employee is engaged in or on account of the performance of official duties.

To find the defendants guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*:  the defendants entered into a conspiracy;

*Second*:  the object of the conspiracy was to kill or attempt to kill officers and employees of the United States government (here, Federal Bureau of Investigation employees, government officials, and military personnel), on account of—or while such officers and employees were engaged in—the performance of their official duties; and

*Third*:  at least one overt act was committed in furtherance of the conspiracy.


18 U.S.C. § 1117; *United States v. Hassan*, 742 F.3d 104, 113 (4th Cir. 2014).

**UNITED STATES' REQUESTED INSTRUCTION NO. 26 (Count 4)**

The defendant is charged in Count 4 with a violation of 18 U.S.C. § 371.

This law makes it a crime to conspire to commit an offense against the United States.

To find the defendants guilty of this crime, you must be convinced that the United States has proved each of the following beyond a reasonable doubt:

*First*: the defendants agreed with at least one other person to violate the law;

*Second*: one of the conspirators engaged in at least one overt act furthering the conspiracy's objective;

*Third*: the defendants knew the essential objective of the conspiracy;

*Fourth*: the defendants knowingly and voluntarily participated in the conspiracy; and

*Fifth*:  there was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

10th Cir. Crim. Pattern Jury Instr. 2.19 (2021) (CONSPIRACY)

**UNITED STATES' REQUESTED INSTRUCTION NO. 27 (Count 5)**

The defendants are charged in Count 5 with a violation of 18 U.S.C. sections 922(g)(5) and 2.

This law makes it a crime for any person who is unlawfully in the United States to knowingly possess any firearm or ammunition, in or affecting interstate or foreign commerce.

To find the defendant guilty of this crime you must be convinced that the United States has proved each of the following beyond a reasonable doubt:

*First*:  Jany Leveille knowing possessed a firearm or ammunition;

*Second*:  at the time of the possession, Ms. Leveille was illegally or unlawfully in the United States;

*Third*:  Ms. Leveille knew she was illegally or unlawfully in the United States; and

*Fourth*:  before Ms. Leveille possessed the firearm or ammunition, the firearm or ammunition moved at some time in interstate or foreign commerce.

10th Cir. Crim. Pattern Jury Instr. 2.44 (2021) (POSSESSING A FIREARM WHILE UNLAWFULLY IN THE UNITED STATES) (modified)

**UNITED STATES' REQUESTED INSTRUCTION NO. 28 (Count 6)**

Defendants Jany Leveille, Hujrah Wahhaj, Subhanah Wahhah, and Lucas Morton are charged in Count 6 with a violation of 18 U.S.C. section 1201(c), conspiracy to commit kidnapping.

In order for you to find the defendants guilty of this charge, the United States must prove each of the following elements beyond a reasonable doubt:

*First*:   the defendants entered into a conspiracy; and

*Second*:  the object of the conspiracy was to seize, confine, inveigle, decoy, kidnap, abduct, carry away, or hold John Doe, who had not attained the age of 18 years, without his consent, and to transport him in interstate commerce.

 "Interstate commerce" means commerce or travel between one state and another state. The United States must prove that the defendants crossed a state line while intentionally transporting John Doe.

The United States does not have to prove that the defendants knew they were crossing a state line, only that they did.[3]

The government is not required to prove that the defendants kidnapped John Doe for reward or ransom, or for any other purpose.[4]

---

[3] *See United States v. Hattaway*, 740 F.2d 1419, 1427 (7th Cir. 1984) (interstate transportation requirement for Mann Act violation "is an element of federal jurisdiction and not part of the knowledge requirement for a Mann Act conviction") (citing *United States v. Bankston*, 603 F.2d 528, 532 (5th Cir. 1979) (a conviction under 18 U.S.C. § 1201 "does not require that an offender know that he is crossing state lines [with victim]")).

[4] *See United States v. Healy*, 376 U.S. 75, 81 (1964) (noting that 1934 amendment to §1201(a) "was intended to make clear that a nonpecuniary motive did not preclude prosecution under the statute . . . . The wording certainly suggests no distinction based on the ultimate purpose of a kidnaping"); *Gawne v. United States*, 409 F.2d 1399, 1403 (9th Cir. 1969) ("[I]n light of the language and legislative history of the 1934 amendment a purpose to obtain pecuniary benefit [is] no longer required . . . [and] an illegal purpose need not be shown") (internal quotations and

The government has alleged that the death of a person resulted from this offense, a fact that it must also prove beyond a reasonable doubt.  If you conclude that the government has proven beyond a reasonable doubt that death resulted, you should make a finding to that effect and note it on the verdict form.  If you find the elements of the crime beyond a reasonable doubt but not the resulting death, you should also note that on the verdict form.

8th Cir. Model Crim. Jury Instr. 6.18.1201 (2021) (modified); 7th Cir. Crim. Pattern Jury Instr. 18 U.S.C. § 1201(a)(1) (modified); 9th Cir. Pattern Criminal Jury Instruction 17.1 (modified).

---

citations omitted).  *Cf. United States v. Bradshaw*, 690 F.2d 704, 708 (9th Cir. 1982) ("Although it is true that motive need not be proved under 18 U.S.C. § 1201, it is far from irrelevant.  Motive is evidence of the commission of any crime."); Moreover, "purpose
is not an element of the offense of kidnapping and need not be charged or proven to support a conviction." *United States v. Atchison*, 524 F.2d 367, 371 (7th Cir. 1975).

**UNITED STATES' REQUESTED INSTRUCTION NO. 29 (Count 7)**

Defendants Jany Leveille, Hujrah Wahhaj, Subhanah Wahhah, and Lucas Morton are charged in Count 7 with a violation of 18 U.S.C. sections 1201(a) and 2, kidnapping and aiding and abetting kidnapping.

In order for you to find the defendants guilty of this charge, the government must prove each of the following elements beyond a reasonable doubt:

*First*:   the defendants unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, carried away, or held John Doe without his consent;

*Second*:  the defendants kidnapped John Doe for some purpose or benefit;

*Third*:  the defendants voluntarily and intentionally transported John Doe while he was seized, confined, kept, or detained;

*Fourth*:  the transportation was in interstate commerce; and

*Fifth*:  death resulted from the kidnapping.

"Interstate commerce" means commerce or travel between one state and another state. The United States must prove that the defendants crossed a state line while intentionally transporting John Doe.

The United States does not have to prove that the defendants knew they were crossing a state line, only that they did.

The government is not required to prove that the defendants kidnapped John Doe for reward or ransom, or for any other purpose.[5]

---

[5] *See United States v. Healy*, 376 U.S. 75, 81 (1964) (noting that 1934 amendment to §1201(a) "was intended to make clear that a nonpecuniary motive did not preclude prosecution under the statute . . . . The wording certainly suggests no distinction based on the ultimate purpose of a kidnaping"); *Gawne v. United States*, 409 F.2d 1399, 1403 (9th Cir. 1969) ("[I]n light of the language and legislative history of the 1934 amendment a purpose to obtain pecuniary benefit [is] no longer required . . . [and] an illegal purpose need not be shown") (internal quotations and

In evaluating the first element, if you determine that John Doe was of such an age or mental state as to have been incapable of giving his consent to having been seized, confined, decoyed, abducted, carried away or held, then you must determine that John Doe's having been seized, confined, decoyed, abducted, carried away or held was against his mother's consent.[6]

To "inveigle" a person means to lure, or entice, or lead the person astray by false representations or promises, or other deceitful means.[7]

---

citations omitted). *Cf. United States v. Bradshaw*, 690 F.2d 704, 708 (9th Cir. 1982) ("Although it is true that motive need not be proved under 18 U.S.C. § 1201, it is far from irrelevant.  Motive is evidence of the commission of any crime."); Moreover, "purpose is not an element of the offense of kidnapping and need not be charged or proven to support a conviction." *United States v. Atchison*, 524 F.2d 367, 371 (7th Cir. 1975).

[6] With regard to the unlawfulness of the acts set forth in the first element of this instruction, in Georgia, where John Doe was living with his mother as his primary caretaker at the time he was taken, "lawful custody" includes "custody in the natural parents." Georgia Code Ann. § 16-5-45(a)(3).  In Georgia, a person further "commits the offense of interstate interference with custody when without lawful authority to do so the person knowingly or recklessly takes or entices any minor … away from the individual who has lawful custody of such minor … and in doing so … removes such minor … from this state." Georgia Code Ann. § 16-5-45(c)(2).  *See also* Georgia Code Ann. § 16-5-45(b)(1)(A) ("A person commits the offense of interference with custody when without lawful authority to do so, the person … [k]nowingly or recklessly takes or entices any child away from the individual who has lawful custody of such child."  Parents are also not immune from prosecution under these provisions.  Instead, Georgia law contemplates the prosecution of a parent who takes his or her own child in order to prevent the other parent from exercising lawful custody.  *See, e.g. Arnold v. State*, 628 S.E.2d 605 (Ga. App. 2006) (sufficient evidence to uphold defendant's conviction for interference with custody where he had an altercation with the mother of his child, hit the mother, grabbed the child, and tried to leave); *State v. Evans*, 442 S.E.2d 287 (Ga. App. 1994) (statute applies when parent lawfully removes child from state, but unlawfully retains custody out of state); *Scott v. State*, 400 S.E.2d 677 (Ga. App. 1990) (discussing sufficiency of evidence to support a parental kidnapping); *Vistein v. Henson*, 746 Fed. App'x 937 (11th Cir. 2018) (in case where mother and father living in Georgia had joint custody of child, mother could be arrested for unlawfully retaining child out of state in violation of father's custody rights).

[7] 10th Cir. Crim. Pattern Instr. 2.55 (2021).

A willful intent to confine the victim means that the defendants intended to do the things they did, which were proscribed by law.  It does not mean that the defendants acted to confine John Doe knowing such confinement was against the law.[8]

A willful intent to confine the victim means that the defendants intended to do the things they did, which were proscribed by law.  It does not mean that the defendants acted to confine John Doe knowing such confinement was against the law.[9] [10]

The government has alleged that the death of a person resulted from this offense, a fact that it must also prove beyond a reasonable doubt.  If you conclude that the government has proven beyond a reasonable doubt that death resulted, you should make a finding to that effect and note it on the verdict form.  If you find the elements of the crime beyond a reasonable doubt but not the resulting death, you should also note that on the verdict form.

8th Cir. Model Crim. Jury Instr. 6.18.1201 (2021) (modified); 7th Cir. Crim. Pattern Jury Instr. 18 U.S.C. § 1201(a)(1) (modified); 9th Cir. Pattern Criminal Jury Instruction 17.1 (modified). [11]

---

[8] *United States v. Jackson*, 248 F.3d 1028, 1031 (10th Cir. 2001) (quoting *Chatwin*, 326 U.S. at 460).

[9] "The act of holding a kidnapped person . . . necessarily implies an unlawful physical or mental restraint for an appreciable period against the person's will and with a willful intent so to confine the victim.  If the victim is of such an age or mental state as to be incapable of having a recognizable will, the confinement then must be against the will of the parents or legal guardian of the victim." *Chatwin v. United States*, 326 U.S. 455, 460 (1946).  The "involuntariness of seizure and detention . . . is the very essence of the crime of kidnaping." *Id.* at 464; *see also United States v. Eason*, 854 F.3d 922 (7th Cir. 2017).

[10] *United States v. Jackson*, 248 F.3d 1028, 1031 (10th Cir. 2001) (quoting *Chatwin*, 326 U.S. at 460).

[11] This instruction is not modeled after 10th Cir. Crim. Pattern Jury Instr. 2.55 (Kidnapping), in part, because that instruction does not track controlling Tenth Circuit precedent. "[B]ased on a 'plain language' analysis . . . the [federal] kidnapping statute requires only general intent." *United States v. Jackson*, 248 F.3d 1028, 1031 (10th Cir. 2001). A "'willful intent to confine the victim' means that the perpetrator intended to do the things he did, which were proscribed by law." *Id.* (quoting *Chatwin*, 326 U.S. at 460). "It *does not* mean that [the perpetrator] acted to confine his victim or victims knowing such confinement was against the law." *Id.* (emphasis

added). Yet in contradiction to *Jackson*, the first element of 10th Cir. Crim. Pattern Jury Instr. 2.55, incorrectly instructs that the defendant must have "knowingly act[ed] contrary to law."

In fact, the federal kidnapping statute was amended in 1972 to remove the word "knowingly" from the statute entirely, and in § 1201(a)(1) cases, instead insert the word "willfully" only before the jurisdictional provision that the government prove that the victim was "willfully transported in interstate or foreign commerce." *See e.g., United States v. Sneezer*, 983 F.2d 920, 922 (9th Cir. 1992). Thus, the Tenth Circuit's decision in *Jackson*, the 1972 amendment of the kidnapping statue, the structure of the statute, and the plain language of the statute, all support only placing a willfulness requirement squarely on the transportation provision of the statute. Indeed, the pattern jury instructions for kidnapping in the Seventh, Eighth and Ninth circuits mirror this aspect of the statute's structure.

The interstate transportation provision of the statute, of course,  is simply the jurisdictional hook for the offense in §1201(a)(1), just as the location and status of the victim are jurisdictional hooks for §1201 (a)(2)-(5).  Otherwise the "essence" of kidnapping is the same across all five subsections (*i.e.*, regardless of how jurisdiction is satisfied).  And the "essence" language is described by the Supreme Court in the *Chatwin* case and used by most of the circuits with § 1201 pattern instructions.

The Comment to 10th Cir. Pattern Jury Instruction 2.55 appears to rely on *United States v. Walker*, 137 F.3d 1217, 1220 (10th Cir. 1998) as support for the notion in the first element of that instruction that the defendant must have "knowingly act[ed] contrary to law." It is true that in upholding the sufficiency of the evidence to support a kidnapping conviction, the Tenth Circuit in *Walker* noted that there was no circuit case outlining the essential elements of kidnapping, so it instead observed that among other circuits, "it is generally agreed the elements of [a kidnapping] crime include (1) transportation in interstate commerce (2) of an unconsenting person who is (3) held for ransom, reward, or otherwise, (4) with such acts being done knowingly and willfully." 137 F.2d at 1220. Because the issue was never raised in *Walker*, however, there was no discussion about the effect of the 1972 amendment of the statute on the structure of the statute, or whether kidnapping was a general or specific intent crime.

Importantly, there is also no language in *Walker* that actually says that the defendant must have "knowingly act[ed] contrary to law." Rather, *Walker* simply noted, without analysis, that "*such acts*" of transporting an unconsenting person in interstate commerce and holding them for ransom, reward or otherwise must be done knowingly and willfully. Thus, there does not seem to be any basis for extrapolating the first element of 10th Cir. Pattern Jury Instruction 2.55 from the language in the *Walker* case. Indeed, the way the language is worded in *Walker*, it can even be argued that the only act modified by the words "knowingly and willfully" in the case is the act of transporting someone, with the remaining features described by the *Walker* court merely being circumstances or external conditions of the crime that must exist in order for the defendant to be guilty of the offense. In the case of kidnapping, for example, those circumstances would be that the person was "unconsenting," that the transport was in interstate commerce, and that the person was being held for ransom, reward, or otherwise.

There are also no statutory grounds for applying "knowingly and willfully" to every element of a kidnapping offense, which as discussed above, is recognized in other circuits, such as the Seventh, Eighth and Ninth circuits.   Indeed, after the 1972 amendment of the statute, the only

---

sense in which the concept of knowledge or willfulness would apply to every element of a
kidnapping crime might be the sense in which the Supreme Court in *Chatwin* used the word
"willful," merely as a shorthand for a general intent to hold a person against their will. *See e.g.*,
*Chatwin*, 326 U.S. at 460 ("The act of holding a kidnaped person for a proscribed purpose
necessarily implies an unlawful physical or mental restraint against the person's will and with a
willful intent so as to confine the victim.")   In fact, in *Jackson*, three years after *Walker* was
decided, the Tenth Circuit first analyzed whether the first part of the kidnapping statute (§
1201(a)) required the government to prove a specific or general intent, as distinct  from the
jurisdictional provisions of the statute (§ 1201(a)(1)–(5)). At that point, the Tenth Circuit made
clear that no specific "willful" intent is required in terms of violating or acting contrary to the
law.  Rather, the *Jackson* Court explained: a "'willful intent to confine the victim' means that the
perpetrator intended to do the things he did, which were proscribed by law."  248 F.3d at 1031
(quoting *Chatwin*, 326 U.S. at 460). "It does not mean that [the perpetrator] acted to confine his
victim or victims knowing such confinement was against the law."  *Id*. (emphasis added). In
*Gabaldon*, the Tenth Circuit then recognized that *Jackson* had effectively clarified that the
language in *Walker* that "the acts constituting kidnapping be done 'knowingly and willfully' only
applied "to the statutory language criminalizing interstate transportation of a kidnapped person.
18 U.S.C. § 1201(a)(1)," which again is a citation *only* to the jurisdictional provision of the
statute. For all of the above reasons, there thus simply appears to be no legal support for the 10th
Cir. Pattern Jury Instruction 2.55 requirement in the first element of that instruction that the
defendant must have "knowingly act[ed] contrary to law."

**UNITED STATES' REQUESTED INSTRUCTION NO. 30 (Counts 2, 5, 7)**

Counts 2, 5, and 7 of the indictment also charge a violation of 18 U.S.C. § 2, which provides that: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

This law makes it a crime to intentionally help someone else commit a crime.  To find the defendants guilty of this crime, you must be convinced that the United States has proved each of the following beyond a reasonable doubt:

*First*: every element of the charged crime [as outlined in the instructions pertaining to Counts 2, 5, and 7] was committed by someone other than one or more of the defendants, and

*Second*: the defendants intentionally associated himself or herself in some way with the crime and intentionally participated in it as he or she would in something he or she wished to bring about.  This means that the United States must prove that the defendants consciously shared the other person's knowledge of the underlying criminal act and intended to help him.

The defendants need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting.  But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

10th Cir. Crim. Pattern Jury Instr. 2.06 (2021) (AID AND ABET, 18 U.S.C. § 2(a)) (modified)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CRIMINAL NO. 18-2945 WJ |
| | ) | |
| JANY LEVEILLE, ET AL, | ) | |
| | ) | |
| Defendant. | ) | |

# **V E R D I C T**

## **COUNT 1**

WE, THE JURY, find the defendant, **JANY LEVEILLE**, _____

(Guilty or Not Guilty)

of Conspiracy to Provide Material Support, as charged in Count 1 of the Indictment.

WE, THE JURY, find the defendant, **SIRAJ IBN WAHHAJ**, _____

(Guilty or Not Guilty)

of Conspiracy to Provide Material Support, as charged in Count 1 of the Indictment.

WE, THE JURY, find the defendant, **HUJRAH WAHHAJ**, _____

(Guilty or Not Guilty)

of Conspiracy to Provide Material Support, as charged in Count 1 of the Indictment.

WE, THE JURY, find the defendant, **SUBHANAH WAHHAJ**, _____

(Guilty or Not Guilty)

of Conspiracy to Provide Material Support, as charged in Count 1 of the Indictment.

WE, THE JURY, find the defendant, **LUCAS MORTON**, _____

(Guilty or Not Guilty)

of Conspiracy to Provide Material Support, as charged in Count 1 of the Indictment.

## COUNT 2

WE, THE JURY, find the defendant, **JANY LEVEILLE**, _____
(Guilty or Not Guilty)

of Providing Material Support, as charged in Count 2 of the Indictment.

WE, THE JURY, find the defendant, **SIRAJ IBN WAHHAJ**, _____
(Guilty or Not Guilty)

of Providing Material Support, as charged in Count 2 of the Indictment.

WE, THE JURY, find the defendant, **HUJRAH WAHHAJ**, _____
(Guilty or Not Guilty)

of Providing Material Support, as charged in Count 2 of the Indictment.

WE, THE JURY, find the defendant, **SUBHANAH WAHHAJ**, _____
(Guilty or Not Guilty)

of Providing Material Support, as charged in Count 2 of the Indictment.

WE, THE JURY, find the defendant, **LUCAS MORTON**, _____
(Guilty or Not Guilty)

of Providing Material Support, as charged in Count 2 of the Indictment.

## COUNT 3

*In order to find the defendants guilty of Conspiracy to Murder an Officer or Employee of the United States, you must determine whether the government has proven beyond a reasonable doubt that at least one of the defendants committed at least one of the following alleged acts in furtherance of the conspiracy. As for each defendant and each alleged act, if the jury is unanimous that the government proved beyond a reasonable doubt that the defendant committed the act, the jury foreperson shall write "true" in the blank next to the alleged act. If the jury cannot agree that the government proved the alleged act, do not fill in the blank next to the alleged act.*

WE, THE JURY, find the defendant, **JANY LEVEILLE**, _____
(Guilty or Not Guilty)

of Conspiracy to Murder an Officer or Employee of the United States, as charged in Count 3 of the Indictment.

_____ In or about December 2017, **JANY LEVEILLE** traveled with others from the State of Georgia to the State of Alabama in vehicles owned by **JANY LEVEILLE** and others, while armed with firearms and ammunition.

_____ In or about December 2017, **JANY LEVEILLE** traveled with others from the State of Alabama to the State of New Mexico in a vehicle owned by **LUCAS MORTON**, while armed with firearms and ammunition.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **JANY LEVEILLE** built and maintained a training compound comprised of materials such as a wooden frame, a trailer, plastic tarps, and tire walls and barriers.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **JANY LEVEILLE** stored firearms and ammunition on the training compound.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **JANY LEVEILLE** possessed and shot a firearm on the training compound's firing range.

_____ In or about December 2017, in the District of Georgia, **JANY LEVEILLE** solicited one of **SIRAJ IBN WAHHAJ's** relatives to join the occupants of the training compound in the State of New Mexico, to bring money and firearms, and to die as a martyr.

_____ In or between December 2017 and August 2018, in the District of New Mexico and elsewhere, **JANY LEVEILLE** instructed persons, including other occupants of the training compound, to be prepared to engage in jihad, to die as martyrs, and to engage in violent acts, including killing Federal Bureau of Investigation employees, government officials, and military personnel.

WE, THE JURY, find the defendant, **SIRAJ IBN WAHHAJ**, _____

(Guilty or Not Guilty)

of Conspiracy to Murder an Officer or Employee of the United States, as charged in Count 3 of

the Indictment.

_____ In or about December 2017, in the State of Georgia, **SIRAJ IBN WAHHAJ** provided at least ten firearms to his coconspirators.

_____ In or about December 2017, **SIRAJ IBN WAHHAJ** traveled with others from the State of Georgia to the State of Alabama in vehicles owned by **JANY LEVEILLE** and others, while armed with firearms and ammunition.

_____ In or about December 2017, **SIRAJ IBN WAHHAJ** traveled with others from the State of Alabama to the State of New Mexico in a vehicle owned by **LUCAS MORTON**, while armed with firearms and ammunition.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **SIRAJ IBN WAHHAJ** built and maintained a training compound comprised of materials such as a wooden frame, a trailer, plastic tarps, and tire walls and barriers.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **SIRAJ IBN WAHHAJ** stored firearms and ammunition on the training compound.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **SIRAJ IBN WAHHAJ** built a firing range on the training compound.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **SIRAJ IBN WAHHAJ** dug an underground tunnel leading away from the training compound.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **SIRAJ IBN WAHHAJ** possessed and shot a firearm on the training compound's firing range.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **SIRAJ IBN WAHHAJ** trained persons, including other members of the training compound, in using firearms and performing tactical maneuvers.

_____ In or between December 2017 and August 2018, in the District of New Mexico and elsewhere, **SIRAJ IBN WAHHAJ** instructed persons, including other occupants of the training compound, to be prepared to engage in jihad, to die as martyrs, and to engage in violent acts, including killing Federal Bureau of Investigation employees, government officials, and military personnel.

WE, THE JURY, find the defendant, **LUCAS MORTON**, _____

(Guilty or Not Guilty)

54

of Conspiracy to Murder an Officer or Employee of the United States, as charged in Count 3 of

the Indictment.

_____ In or about December 2017, **LUCAS MORTON** traveled with others from the State of Alabama to the State of New Mexico in a vehicle owned by **LUCAS MORTON**, while armed with firearms and ammunition.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **LUCAS MORTON** built and maintained a training compound comprised of materials such as a wooden frame, a trailer, plastic tarps, and tire walls and barriers.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **LUCAS MORTON** stored firearms and ammunition on the training compound.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **LUCAS MORTON** built a firing range on the training compound.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **LUCAS MORTON** dug an underground tunnel leading away from the training compound.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **LUCAS MORTON** possessed and shot a firearm on the training compound's firing range.

_____ In or about December 2017, in the District of Georgia, **LUCAS MORTON** solicited one of **SIRAJ IBN WAHHAJ's** relatives to join the occupants of the training compound in the State of New Mexico, to bring money and firearms, and to die as a martyr.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **LUCAS MORTON** trained persons, including other members of the training compound, in using firearms and performing tactical maneuvers.

## COUNT 4

*In order to find the defendants guilty of Conspiracy to Commit an Offense Against the United States, you must determine whether the government has proven beyond a reasonable doubt that at least one of the defendants committed at least one of the following alleged acts in*

55

*furtherance of the conspiracy. As for each defendant and each alleged act, if the jury is unanimous that the government proved beyond a reasonable doubt that the defendant committed the act, the jury foreperson shall write "true" in the blank next to the alleged act. If the jury cannot agree that the government proved the alleged act, do not fill in the blank next to the alleged act.*

WE, THE JURY, find the defendant, **JANY LEVEILLE**, _____

(Guilty or Not Guilty)

of Conspiracy to Commit an Offense Against the United States, as charged in Count 4 of the

Indictment.

_____   In or about December 2017, **JANY LEVEILLE** traveled with others from the State of Georgia to the State of Alabama in vehicles owned by **JANY LEVEILLE** and others, while armed with firearms and ammunition.

_____   In or about December 2017, **JANY LEVEILLE** traveled with others from the State of Alabama to the State of New Mexico in a vehicle owned by **LUCAS MORTON**, while armed with firearms and ammunition.

_____   In or between December 2017 and August 2018, in the District of New Mexico, **JANY LEVEILLE** built and maintained a training compound comprised of materials such as a wooden frame, a trailer, plastic tarps, and tire walls and barriers.

_____   In or between December 2017 and August 2018, in the District of New Mexico, **JANY LEVEILLE** stored firearms and ammunition on the training compound.

_____   In or between December 2017 and August 2018, in the District of New Mexico, **JANY LEVEILLE** possessed and shot a firearm on the training compound's firing range.

_____   In or about December 2017, in the District of Georgia, **JANY LEVEILLE** solicited one of **SIRAJ IBN WAHHAJ's** relatives to join the occupants of the training compound in the State of New Mexico, to bring money and firearms, and to die as a martyr.

_____   In or between December 2017 and August 2018, in the District of New Mexico and elsewhere, **JANY LEVEILLE** instructed persons, including other occupants of the training compound, to be prepared to engage in jihad, to die as martyrs, and to engage in

violent acts, including killing Federal Bureau of Investigation employees, government officials, and military personnel.

WE, THE JURY, find the defendant, **SIRAJ IBN WAHHAJ**, _____

(Guilty or Not Guilty)

of Conspiracy to Commit an Offense Against the United States, as charged in Count 4 of the Indictment.

_____ In or about December 2017, in the State of Georgia, **SIRAJ IBN WAHHAJ** provided at least ten firearms to his coconspirators.

_____ In or about December 2017, **SIRAJ IBN WAHHAJ** traveled with others from the State of Georgia to the State of Alabama in vehicles owned by **JANY LEVEILLE** and others, while armed with firearms and ammunition.

_____ In or about December 2017, **SIRAJ IBN WAHHAJ** traveled with others from the State of Alabama to the State of New Mexico in a vehicle owned by **LUCAS MORTON**, while armed with firearms and ammunition.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **SIRAJ IBN WAHHAJ** built and maintained a training compound comprised of materials such as a wooden frame, a trailer, plastic tarps, and tire walls and barriers.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **SIRAJ IBN WAHHAJ** stored firearms and ammunition on the training compound.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **SIRAJ IBN WAHHAJ** built a firing range on the training compound.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **SIRAJ IBN WAHHAJ** dug an underground tunnel leading away from the training compound.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **SIRAJ IBN WAHHAJ** possessed and shot a firearm on the training compound's firing range.

_____     In or between December 2017 and August 2018, in the District of New Mexico, **SIRAJ IBN WAHHAJ** trained persons, including other members of the training compound, in using firearms and performing tactical maneuvers.

_____     In or between December 2017 and August 2018, in the District of New Mexico and elsewhere, **SIRAJ IBN WAHHAJ** instructed persons, including other occupants of the training compound, to be prepared to engage in jihad, to die as martyrs, and to engage in violent acts, including killing Federal Bureau of Investigation employees, government officials, and military personnel.

WE, THE JURY, find the defendant, **HUJRAH WAHHAJ**, _____

(Guilty or Not Guilty)

of Conspiracy to Commit an Offense Against the United States, as charged in Count 4 of the

Indictment.

_____     In or about December 2017, in the State of Georgia, **HUJRAH WAHHAJ** provided at least one firearm to her coconspirators.

_____     In or about December 2017, **HUJRAH WAHHAJ** traveled with others from the State of Georgia to the State of Alabama in vehicles owned by **JANY LEVEILLE** and others, while armed with firearms and ammunition.

_____     In or about December 2017, **HUJRAH WAHHAJ** traveled with others from the State of Alabama to the State of New Mexico in a vehicle owned by **LUCAS MORTON**, while armed with firearms and ammunition.

_____     In or between December 2017 and August 2018, in the District of New Mexico, **HUJRAH WAHHAJ** built and maintained a training compound comprised of materials such as a wooden frame, a trailer, plastic tarps, and tire walls and barriers.

_____     In or between December 2017 and August 2018, in the District of New Mexico, **HUJRAH WAHHAJ** stored firearms and ammunition on the training compound.

_____     In or between December 2017 and August 2018, in the District of New Mexico, **HUJRAH WAHHAJ** possessed and shot a firearm on the training compound's firing range.

WE, THE JURY, find the defendant, **SUBHANAH WAHHAJ**, _____

(Guilty or Not Guilty)

of Conspiracy to Commit an Offense Against the United States, as charged in Count 4 of the

Indictment.

_____ In or about December 2017, **SUBHANAH WAHHAJ** traveled with others from the State of Georgia to the State of Alabama in vehicles owned by **JANY LEVEILLE** and others, while armed with firearms and ammunition.

_____ In or about December 2017, **SUBHANAH WAHHAJ** traveled with others from the State of Alabama to the State of New Mexico in a vehicle owned by **LUCAS MORTON**, while armed with firearms and ammunition.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **SUBHANAH WAHHAJ** provided financial support to her coconspirators.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **SUBHANAH WAHHAJ** built and maintained a training compound comprised of materials such as a wooden frame, a trailer, plastic tarps, and tire walls and barriers.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **SUBHANAH WAHHAJ** stored firearms and ammunition on the training compound.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **SUBHANAH WAHHAJ** possessed and shot a firearm on the training compound's firing range.

WE, THE JURY, find the defendant, **LUCAS MORTON**, _____
(Guilty or Not Guilty)

of Conspiracy to Commit an Offense Against the United States, as charged in Count 4 of the

Indictment.

_____ In or about December 2017, **LUCAS MORTON** traveled with others from the State of Alabama to the State of New Mexico in a vehicle owned by **LUCAS MORTON**, while armed with firearms and ammunition.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **LUCAS MORTON** built and maintained a training compound comprised of materials such as a wooden frame, a trailer, plastic tarps, and tire walls and barriers.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **LUCAS MORTON** stored firearms and ammunition on the training compound.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **LUCAS MORTON** built a firing range on the training compound.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **LUCAS MORTON** dug an underground tunnel leading away from the training compound.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **LUCAS MORTON** possessed and shot a firearm on the training compound's firing range.

_____ In or about December 2017, in the District of Georgia, **LUCAS MORTON** solicited one of **SIRAJ IBN WAHHAJ's** relatives to join the occupants of the training compound in the State of New Mexico, to bring money and firearms, and to die as a martyr.

_____ In or between December 2017 and August 2018, in the District of New Mexico, **LUCAS MORTON** trained persons, including other members of the training compound, in using firearms and performing tactical maneuvers.

## **COUNT 5**

WE, THE JURY, find the defendant, **JANY LEVEILLE**, _____

(Guilty or Not Guilty)

of Possessing a Firearm While Unlawfully in the United States, as charged in Count 5 of the

Indictment.

WE, THE JURY, find the defendant, **SIRAJ IBN WAHHAJ**, _____

(Guilty or Not Guilty)

of Possessing a Firearm While Unlawfully in the United States, as charged in Count 5 of the

Indictment.

WE, THE JURY, find the defendant, **HUJRAH WAHHAJ**, _____

(Guilty or Not Guilty)

of Possessing a Firearm While Unlawfully in the United States, as charged in Count 5 of the

Indictment.

WE, THE JURY, find the defendant, **SUBHANAH WAHHAJ**, _____

(Guilty or Not Guilty)

of Possessing a Firearm While Unlawfully in the United States, as charged in Count 5 of the

Indictment.

WE, THE JURY, find the defendant, **LUCAS MORTON**, _____

(Guilty or Not Guilty)

of Possessing a Firearm While Unlawfully in the United States, as charged in Count 5 of the

Indictment.

## **COUNT 6**

WE, THE JURY, find the defendant, **JANY LEVEILLE**, _____

(Guilty or Not Guilty)

of Conspiracy to Commit Kidnapping, as charged in Count 6 of the Indictment.

WE, THE JURY, find the defendant, **HUJRAH WAHHAJ**, _____

(Guilty or Not Guilty)

of Conspiracy to Commit Kidnapping, as charged in Count 6 of the Indictment.

WE, THE JURY, find the defendant, **SUBHANAH WAHHAJ**, _____

(Guilty or Not Guilty)

of Conspiracy to Commit Kidnapping, as charged in Count 6 of the Indictment.

WE, THE JURY, find the defendant, **LUCAS MORTON**, _____

(Guilty or Not Guilty)

of Conspiracy to Commit Kidnapping, as charged in Count 6 of the Indictment.

*If you find any of the defendants guilty of Conspiracy to Commit Kidnapping, you must determine whether the government has proven beyond a reasonable doubt whether John Doe had attained the age of 18 years and whether the kidnapping resulted in John Doe's death. As for each defendant, if the jury is unanimous that the government proved beyond a reasonable doubt that any of the defendants committed the act of Conspiracy to Commit Kidnapping, the jury foreperson shall write "yes" or "no" in the blank next to the following questions. If the jury cannot agree on the answers to these questions, do not fill in the blank next to the follow-up questions.*

John Doe had not attained the age of 18 years.   _____

The kidnapping resulted in John Doe's death.   _____

## COUNT 7

WE, THE JURY, find the defendant, **JANY LEVEILLE**, _____
(Guilty or Not Guilty)

of Kidnapping, as charged in Count 7 of the Indictment.


WE, THE JURY, find the defendant, **HUJRAH WAHHAJ**, _____
(Guilty or Not Guilty)

of Kidnapping, as charged in Count 7 of the Indictment.

WE, THE JURY, find the defendant, **SUBHANAH WAHHAJ**, _____
(Guilty or Not Guilty)

of Kidnapping, as charged in Count 7 of the Indictment.

WE, THE JURY, find the defendant, **LUCAS MORTON**, _____
(Guilty or Not Guilty)

of Kidnapping, as charged in Count 7 of the Indictment.

*If you find any of the defendants guilty of Kidnapping, you must determine whether the government has proven beyond a reasonable doubt whether John Doe had attained the age of 18 years and whether the kidnapping resulted in John Doe's death. As for each defendant, if the jury is unanimous that the government proved beyond a reasonable doubt that any of the defendants committed the act of Kidnapping, the jury foreperson shall write "yes" or "no" in the blank next to the following questions. If the jury cannot agree on the answers to these questions, do not fill in the blank next to the follow-up questions.*

John Doe had not attained the age of 18 years.   _____

The kidnapping resulted in John Doe's death. _____

      Dated this _____ day of October, 2023.

                                            _____

                                            FOREPERSON