# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                     Case No. 1:18-cr-2945-WJ

JANY LEVEILLE,
SIRAJ IBN WAHHAJ,
HUJRAH WAHHAJ,
SUBHANAH WAHHAJ, and
LUCAS MORTON,

      Defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO SEVER TRIAL

**THIS MATTER** is before the Court on Defendant Siraj Wahhaj, Subhanah Wahhaj, and Hujrah Wahhaj's separately filed Motions to Sever their trial from that of their codefendants (Docs. 598, 609, 635). Also before the Court is Defendant Subhanah Wahhaj's Motion for Severance of Count Three for Trial (Doc. 608), and Siraj Wahhaj's Motion to Bifurcate and Sever Counts 6 and 7 for Trial (Doc. 648), which raise overlapping legal issues. Having reviewed the parties' briefing and the applicable law, the Court concludes Defendants failed to meet their heavy burden to rebut the strong presumption of joint trial in a complex conspiracy case such as the one at bar. Moreover, the unimaginable logistics and inefficiency of holding multiple trials on the same evidence heavily outweighs the minimal risk of prejudice to Defendants. As such, Defendants' Motions are **DENIED**.

## BACKGROUND

Defendants are charged with seven counts arising from a terrorism investigation between October 2017 and August 2018: (1) Conspiracy to Provide Material Support to Terrorists in violation of 18 U.S.C. § 2339A; (2) Providing Material Support to Terrorists in violation of 18 U.S.C. §§ 2339A & 2; (3) Conspiracy to Murder an Officer or Employee of the United States in violation of 18 U.S.C. § 1117; (4) Conspiracy to Commit an Offense Against the United States in violation of 18 U.S.C. § 371; (5) Possessing a Firearm While Unlawfully in the United States in violation of 18 U.S.C. §§ 922(g)(5) & 2; (6) Conspiracy to Commit Kidnapping in violation of 18 U.S.C. § 1201(c); and (7) Kidnapping in violation of 18 U.S.C. §§ 1201(a) & 2.[1] Doc. 85.

The United States alleges the following facts based on information contained in discovery and anticipated witness testimony. Underlying the conspiracies, the United States alleges Jany Leveille claimed to receive messages and directions from God, and that Leveille issued orders and directives to her codefendants who considered her to be a "prophet delivering Allah's messages." Doc. 663 at 4-5. It is further alleged that Leveille directed Defendant Siraj Wahhaj to kidnap minor A.G., Siraj Wahhaj's son from a prior marriage, from A.G.'s biological mother. *Id.* at 5-6. Leveille allegedly believed A.G. was her own son, "stolen through [A.G.'s mother's] black magic." *Id.* at 6. A.G. was born with Hypoxic Ischemic Encephalopathy resulting in cerebral palsy and epilepsy. *Id.* at 2. He required "heightened care and medication to prevent seizures." *Id.* All five Defendants were allegedly involved in transporting A.G. and Defendants' other children from Georgia to rural

---

[1] Defendants Subhannah and Hurjrah Wahhaj are not charged in count Count Three. Doc. 85 at 6. Defendant Siraj Wahhaj was not charged in Counts Six and Seven because he is the biological father and parent of John Doe, and thus cannot be charged with kidnapping under 18 U.S.C. § 1201(a). Doc. 85 at 1-9; *see also* 18 U.S.C. § 1201(a) ("Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, *except in the case of a minor by the parent thereof* . . . .") (emphasis added).

Taos County, New Mexico along with "handguns, rifles, tactical gear, and several hundred rounds of ammunition." *Id.*

Once in New Mexico, Defendants built and lived on "a compound that included dirt-filled berms constructed from rubber tires, a system of underground tunnels and caves, and a firing range and tactical training area." *Id.* at 8. It is alleged that Leveille and Siraj Wahhaj performed demanding prayer rituals on the children and exorcisms on A.G. at the compound. During one exorcism performed by Siraj Wahhaj, A.G. allegedly "choked and white slime came out of his mouth, and then [A.G.'s] heart stopped and [he] died." *Id.* at 8. The United States alleges that all five Defendants "denied having ever seen [A.G.] since they moved to New Mexico and gave other false and misleading accounts of [his] whereabouts." *Id.*

After A.G.'s death, it is alleged that "Leveille told the group that, as Isa, [A.G.] would direct the group to corrupt institutions, including FBI, military, and United States Government offices, to confront them with their interpretation of Islam and Leveille's status as a prophet."[2] *Id.* at 9. It is further alleged that Defendants Siraj Wahhaj and Lucas Morton planned to "shoot or kill" anyone who "rejected Allah or did not do whatever the group and Isa told them to do." *Id.* Siraj Wahhaj and some of the children "referred to this plan as jihad." *Id.* Defendants, led by Siraj Wahhaj, conducted firearms and tactical training in anticipation of carrying out such attacks. A witness for the United States alleges she saw "Leveille, Subhanah, and Hujrah train with a gun once and each fire a gun at least once on the compound." *Id.* at 10. Another witness alleges the group intended to "go to war" after A.G. woke up. *Id.*

---

[2] According to the United States, "Isa" is the Islamic name for Jesus, and Jany Leveille preicted A.G. would rise as Jesus on Easter and "direct jihad to be waged by the Defendants and some of their children." Doc. 663 at 9, n. 1.

In sum, the factual narrative of the events charged in the indictment involves all five Defendants performing acts that form the basis for multiple conspiracies, with significant overlap between the evidence necessary to prove each charge.

## LEGAL STANDARD FOR JOINDER AND SEVERANCE

The Federal Rules of Criminal Procedure allow for joinder of offenses and defendants in a single indictment. Rule 8(a) allows for the joinder of multiple *offenses* when they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Rule 8(b) provides that multiple *defendants* may be charged together "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Rule 8 is to be construed broadly "to allow liberal joinder to enhance the efficiency of the judicial system." *United States v. Johnson*, 130 F.3d 1420, 1427 (10th Cir. 1997). To that end, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials play a vital role in the criminal justice system. They promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (internal quotations and citations omitted). More specifically, a "single trial is ideal when the government plans to recite a single factual history, put on a single array of evidence, and call a single group of witnesses." *United States v. Margheim*, 770 F.3d 1312, 1319 (10th Cir. 2014).

However, defendants may move for severance if they can show a joint trial would prejudice their defense: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). To prevail on a severance motion, a "defendant must bear a

4

heavy burden of showing real prejudice to his case." *United States v. McConnell*, 749 F.2d 1441, 1444 (10th Cir. 1978) (citation omitted). The United States Supreme Court advises that "a district court should grant severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Even if a defendant can show prejudice, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539. Critically, the trial court must "weigh the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration." *United States v. Peterson*, 611 F.2d 1313, 1331 (10th Cir. 1979).

## DISCUSSION

Defendants raise three primary arguments across all five Motions to Sever: (1) joinder of Counts Six and Seven in the indictment was improper; (2) Defendants would be prejudiced by a joint trial including Counts Six and Seven; and (3) Defendants Subhanah and Hujrah Wahhaj would be prejudiced by a joint trial and a trial including Count Three. The Court addresses each argument in turn and concludes each is without merit.

### I.       Joinder of Counts Six and Seven is proper under Rule 8(a).

Defendants argue the Court "does not have discretion to allow joinder" of Counts Six and Seven (Conspiracy to Commit Kidnapping and Kidnapping) under Rule 8(a) because "they are of an entirely different character, are not based on the same alleged acts, and are not part of a common scheme or plan" with Counts One through Five. Doc. 648 at 8-11. Defendants maintain that the kidnapping—including transportation of A.G. from Georgia, the alleged exorcisms performed on A.G., and A.G.'s medical complications—was "part of an entirely separate scheme" that is "totally

factually unrelated and unconnected" to Defendants' terrorism charges to the point that "[n]one of the evidence is cross-admissible to prove the other counts." *Id.* at 10. Defendants' argument is unsupported and without merit.

Under Rule 8(a), offenses may be joined if they are: (1) "of the same or similar character"; or (2) "based on the same act or transaction or on two or more acts or transactions connected together"; or (3) constitute "parts of a common scheme or plan." *United States v. Ortner*, No. 21-5075, 2023 WL 382932, at *4 (10th Cir. 2023) (citing Fed. R. Crim. P. 8(a)). Rule 8 is to be liberally construed in favor of joinder. *Johnson*, 130 F.3d at 1427. Joinder of Counts Six and Seven in the instant case is proper under the second and third bases. Not only are Counts Six and Seven related, the United States alleges that A.G.'s kidnapping "constitutes the very heart" of Defendants' alleged conspiracies in Counts One through Three:

> "[t]he evidence establishes that [A.G.'s] kidnapping . . . was motivated by Leveille's assertion that [A.G.] was her biological child, that [A.G.] was possessed by demons, that Leveille was Mary mother of Jesus and that [A.G.] was Jesus … that Defendant's material support was motivated by [A.G.'s] death and Leveille's assertion that [A.G.] would be resurrected and lead them in jihad, to include the murder of federal employees and others".

Doc. 676 at 14. Under the United States' anticipated trial theory, evidence of A.G.'s kidnapping is thoroughly intertwined with evidence of Defendants' conspiracy to provide material support to terrorism, conspiracy to murder, and firearms charges. A.G.'s kidnapping is both an "act . . . connected together" and "part of a common scheme or plan" with the other charges in the indictment. Fed. R. Cim. P. 8(a). *See also Ortner*, 2023 WL 382932 at *4 (affirming joinder of sexual abuse offense and possession of parts of a golden eagle offense where eagle feathers were "arguably related to and part of" the defendant's tactic to gain trust of victims). Defendants do not refute the United States' theory or offer an alternative theory that disentangles the kidnapping and conspiracy offenses. As such, joinder of Counts Six and Seven is proper under Rule 8(a).

II.     **Severance of Defendant Siraj Wahhaj and Counts Six and Seven is not warranted.**

Defendants Subhanah Wahhaj, Siraj Wahhaj, Hujrah Wahhaj, and Lucas Morton move to Sever Counts Six and Seven from the joint trial pursuant to Rule 14(a). Additionally, Siraj Wahhaj moves to sever his trial from that of his codefendants on the same grounds. Defendants make three arguments that they would be prejudiced by a joint trial. First, they argue the jury will improperly cumulate evidence of the kidnapping offenses in Counts Six and Seven and apply it to the other offenses in Counts One through Five. Doc. 648 at 12. Second, they contend the inflammatory nature of the kidnapping charges will lead the jury to impute "guilt by association" for the terrorism offenses. *Id.* at 12-13. Third, they argue joinder inhibits their ability to put on a complete defense through testimony of their codefendants. *Id.* at 15-17. None of Defendants arguments demonstrate prejudice or warrant severance.

First, Defendants contend that the jury will improperly apply evidence related to A.G.'s kidnapping to "other separate crimes" charged in the indictment. Doc. 648 at 12. Defendants cite to *United States v. Jahani*, No. 11-cr-302, 2014 WL 6680422 (D. Colo. Nov. 25 2014) for the proposition that numerous counts and evidence may increase the risk that the jury cumulates evidence. However, in contrast to the seven counts at issue here, *Jahani* involved a 65-count indictment for healthcare fraud, money laundering, and controlled substances offenses that created an "unmanageable and excessively delayed criminal proceeding." 2014 WL 6680422 at *7. Defendants' unsupported speculation that the jury may improperly attribute evidence falls well short of their "burden of clearly showing prejudice." *United States v. Troutman*, 814 F.2d 1428, 1447 (10th Cir. 1987). The Court anticipates that much of the evidence supporting the kidnapping charges will be relevant to the other charges given the centrality of A.G.'s alleged kidnapping to the United States' anticipated trial theory on Defendants' terrorism conspiracy. Any theoretical

prejudice resulting from evidence that is not cross-admissible may be cured by limiting instructions, if necessary. It is well established that juries, when properly instructed, can and do successfully adhere to limiting instructions even in complex cases. *See United States v. Herrera*, 51 F.4th 1226, 1274 (10th Cir. 2022) (citing *United States v. Blankenship*, 382 F.3d 1110, 1123 (11th Cir. 2004) ("In general, the strong presumption is that jurors are able to compartmentalize evidence by respecting limiting instructions specifying the defendants against whom the evidence may be considered.").

Defendants next argue that the emotional nature of the kidnapping offense and its associated evidence will prejudice Defendants as the jury deliberates on other counts. Defendants contend that no juror will be able to "avoid weighing the highly charged evidence of the events leading up to A.G.'s tragic death," which risks a finding of "guilt by association" on the other five counts. The Court reiterates that it has not yet ruled on the admissibility of any evidence. All admitted evidence is subject to exclusion if its probative value is substantially outweighed by the risk of unfair prejudice. Fed. R. Evid. 403. However, Defendants, except for Siraj Wahhaj, are charged with the conduct that caused A.G.'s death. Emotional evidence is unavoidable in a trial involving the death of a child. Defendants' speculation about the jury's reaction is insufficient to show "real prejudice to [their] case." *McConnell*, 749 F.2d at 1444. To the extent that there is admissible, emotionally charged evidence relating to A.G.'s kidnapping that is not also relevant to Counts One through Five, limiting instructions would again be sufficient to cure any risk of prejudice to Defendants. *Zafiro*, 506 U.S. at 539.

Lastly, Defendants argue joinder of Counts Six and Seven inhibits their constitutional right to present a complete defense because they will be precluded from compelling their codefendants to testify in their defense. The Tenth Circuit has identified several relevant factors to consider

when evaluating such an argument: "1) the likelihood that the co-defendant would in fact testify at the movant's severed trial and waive his Fifth Amendment privilege; 2) the significance of the testimony in relation to the defendant's theory of defense; 3) the exculpatory nature and effect of such testimony; 4) the likelihood that the co-defendant's testimony would be impeached; 5) the extent of prejudice caused by the absence of the testimony; 6) the effect of a severance on judicial administration and economy; 7) the timeliness of the motion." *McConnell* 749 F.2d at 1445. In this case Defendants have made no showing that their codefendants would testify in a severed trial by affidavit or otherwise. Nor have they identified what their codefendants would convey in their testimony. As such, the Court does not have enough information to even evaluate factors three through five. Finally, the risk of prejudice is "greatly outweighed by the expense and administrative inconvenience of conducting [multiple] lengthy trials involving numerous witnesses rather than one consolidated trial." *Id.* at 1446 (affirming denial of severance even where defendant made a sufficient showing that codefendant would provide exculpatory testimony at a separate trial).

For these reasons, Defendants failed to meet their heavy burden to show actual prejudice resulting from a joint trial including Counts Six and Seven. For the same reasons, Defendant Siraj Wahhaj failed to show prejudice warranting severance of his trial from that of his codefendants.

### III.    Severance of Defendants Hujrah Wahhaj, Subhannah Wahhaj, and Count Three is not warranted.

Defendants Subhanah and Hujrah Wahhaj move to sever their trials from those of their codefendants pursuant to Rule 14(a) and, in the alternative, to sever Count Three (Conspiracy to Murder an Officer or Employee of the United States) from the joint trial. Both Defendants make the same argument in support of severing their trials: first, a joint trial would be prejudicial because three categories of evidence—Jany Leveille's diary, a document entitled "Phases of a Terrorist

Attack," and evidence that Siraj Wahhaj attending shooting training in Georgia—would be inadmissible against them in a separate trial; and second, they would be forced to pursue mutually antagonistic defenses. Defendants Subhanah and Hurjah Wahhaj also move to sever Count Three, in which they are not charged, from the joint trial on grounds that the jury may improperly apply evidence supporting Count Three as evidence against them on other counts. Because Defendants raise nearly identical arguments in each motion and the same legal standard applies, the Court will again address them together.

First, the Court turns to Defendants' argument that they will be prejudiced by the admission of specific evidence at the joint trial that would otherwise be inadmissible if their cases were severed. The admission of evidence "that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone" may support severance under Rule 14. *Zafiro*, 506 U.S. at 539. "Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice." *Id.* Defendants argue they will be prejudiced by the introduction of portions of Defendant Jany Leveille's diary, Defendant Lucas Morton's alleged "Phases of a Terrorist Attack" document, and evidence that Defendant Sirah Wahhaj attended firearms training classes in Georgia. Defendants maintain that none of this evidence would be admissible against them in severed individual trials, so the joint trial is unduly prejudicial.

The Court rejects Defendants argument that severance is required to cure the risk of prejudice from the potential introduction of the above-stated evidence. The Court reiterates it has not yet ruled on the admissibility of any evidence to which Defendants object. Moreover, the United States maintains that all three are admissible against Subhanah and Hurjah Wahhaj. Doc. 663 at 20. Defendants were "intimately involved" in appointing Jany Leveille as "the prophet

leader of their group" and knew about their codefendants tactical training and the purposes behind it. *Id.* at 18. The United States even notes there is evidence that Subhanah and Hurjah Wahhaj "helped write or edit" portions of Leveille's diary. *Id.* at 20. The "Phases of a Terrorist Attack" document was allegedly found on a computer used by Subhanah and Hujrah Wahhaj. *Id.* at 21. Thus, the Court cannot conclude that the disputed evidence will be admitted at a joint trial nor that it would be inadmissible in severed trials. Defendants bear the "heavy burden of showing real prejudice to [their] case," and their speculation that certain spill over evidence against their codefendants may prejudice them is insufficient to justify severance. *McConnell*, 749 F.2d at 1445. Even if the Court later concludes the disputed evidence is only admissible against Subhanah and Hurjah Wahhaj's codefendants, "less drastic measures, such as limiting instructions" would be sufficient to cure the risk of prejudice. *Zafiro*, 506 U.S. at 534.

Second, the Court addresses Defendant Subhanah and Hurjah Wahhaj's argument that they would be incentivized to pursue mutually antagonistic defenses against their codefendants. Defendants contend they will likely blame codefendant Siraj Wahhaj for "lawfully taking his child out of Georgia and failing to care for him which led to his death," because they are charged in relation to kidnapping A.G. and Siraj is not. Doc. 598 at 5-6; Doc. 609 at 6. When confronted with mutually antagonistic defenses as the basis for a motion for severance, the Court engages in a three-step inquiry: (1) "determine whether the defenses presented are so antagonistic that they are mutually exclusive"; (2) determine whether the defendant has shown "a serious risk that a joint trial would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence"; and (3) if the first two factors are met, weigh "the prejudice to a particular defendant caused by joinder against the obviously important considerations of

economy and expedition in judicial administration." *Pursley*, 474 F.3d at 765 (internal quotations and citations omitted).

Defendants' mutually antagonistic defenses argument does not warrant severance. Defendants' mere incentive to blame codefendant Siraj Wahhaj for kidnapping A.G. is not, by itself, antagonistic to another codefendant's defense. Defendants make no mention of Siraj Wahhaj's anticipated defense. Even if Siraj Wahhaj blamed the kidnapping on Subhanah and Hurjah Wahhaj, the mutual antagonism "amounts to no more than finger pointing," which is not so contradictory as to be mutually exclusive under Tenth Circuit law. *United States v. Linn*, 31 F.3d 987, 992 (10th Cir. 1994); *see also United States v. Esch*, 832 F.2d 531, 538 (10th Cir. 1987) ("[t]he conflict between co-defendant defenses must be so intense that there is a danger the jury will unjustifiably infer from the conflict alone that both defendants are guilty") (citation omitted). Moreover, Defendants failed to identify a specific trial right or explain how the purported conflict would prevent the jury from making a reliable judgment about their guilt.

Third, the Court turns to Defendants' remaining arguments in support of severing Count Three from the joint trial. Defendants make two additional arguments: (1) "the extremely limited evidence in support of [Count Three] is not cross-admissible to prove the other counts"; and (2) Subhanah and Hurah Wahhaj have "markedly different degrees of culpability," thereby increasing the risk of prejudice. Doc. 608 at 8-9. Both arguments are entirely speculative and do not accord with the United States' anticipated evidence at trial. The United States contends that Subhanah and Hujrah Wahhaj were intimately involved in the kidnapping of A.G. and had knowledge of and supported their codefendants' firearms and tactical training. Doc. 663 at 17-18. The United States further contends that the underlying facts supporting the conspiracies in Counts One through Three are "inextricably intertwined," the only difference being that Subhannah and Hujrah Wahhaj are

not charged with "the end goal of the jihad training" in Count Three. *Id.* at 18. Defendants'
speculative allegations again fall well short of their "burden of clearly showing prejudice would
result from a joint trial." *Troutman*, 814 F.2d at 1447.

For these reasons, the Court concludes that Defendants Subhannah and Hujrah Wahhaj
have not met their "heavy burden" to show that severance of their trials or severance of Count
Three from the joint trial is appropriate in this case.

**IV.    Judicial economy concerns heavily outweigh any risk of prejudice to Defendants.**

Having established Defendants failed to show prejudice, the Court turns to weighing the
"obviously important considerations of economy and expedition in judicial administration."
*Peterson*, 611 F.2d at 1331. As the Court has noted in prior orders, this trial will involve a set of
operative facts common to all Defendants. All five Defendants are alleged to have traveled together
from the state of Georgia, where the charged conspiracies allegedly began, to their compound in
Taos County, New Mexico where they lived together until the time of their arrests. Doc. 85 at 2-
7. As far as the Court can tell, Defendants were in close proximity of one another for the duration
of the relevant conduct. Severing this complex conspiracy case into separate trials for one or more
Defendants on the eve of trial would involve unimaginable logistics and would place an
insuperable burden on the Court and the United States. The inefficiency of severance is magnified
by the fact that there are five Defendants, each charged with five or more counts, each requiring
proof of nearly identical facts at trial. Holding one or more additional trials on the exact same
evidence would be extraordinarily wasteful. Given that Defendants failed to demonstrate prejudice
and that concerns of judicial economy weigh heavily in favor of joint trial, the Court concludes
severance is entirely unjustified. *See United States v. Gray*, 173 F.Supp.2d 1, 6 (D.D.C. 2001)
("When interests of judicial economy are weighed, the charges and defendants are linked by an

alleged overarching conspiracy, and there is no finding of prejudice, concerns of judicial economy will mandate a joint trial.").

## CONCLUSION

For the reasons stated above, Defendants' Motions to Sever and Bifurcate the Joint Trial (Docs. 598, 608, 609, 635, and 648) are hereby **DENIED**.

**IT IS SO ORDERED**

CHIEF UNITED STATES DISTRICT JUDGE