IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                    Case No. 1:18-cr-2945-WJ

JANY LEVEILLE,
SIRAJ IBN WAHHAJ,
HUJRAH WAHHAJ,
SUBHANAH WAHHAJ, and
LUCAS MORTON,

    Defendants.

## MEMORANDUM OPINION AND ORDER LIMITING THE SCOPE OF STEVEN R. WATT AND JOOST JANSSEN'S EXPERT TESTIMONY

**THIS MATTER** is before the Court on Defendants' Motion to Exclude or Limit the Expert Testimony of Steven Watt (Doc. 742) and the United States' Motion to Exclude the Expert Testimony of Joost Janssen (Doc. 760). Each party moves under Rule 702 to exclude the other's expert witness on military tactics, weapons, and counter-terrorism. Both parties argue the other's expert is unqualified and lacks a reliable basis for his testimony. The United States further argues Joost Janssen's opinions that Defendants did not form a terrorist organization and did not communicate with known terrorists are irrelevant because they do not relate to the elements of the charged offenses. The Court held a *Daubert* hearing for both witnesses and heard arguments from counsel on July 25 and 26, 2023. Having reviewed the parties' briefing, arguments, and the applicable law, the Court concludes: (1) both Steven R. Watt and Joost Janssen are qualified to testify; (2) their proposed testimony is reliable; and (3) both witnesses proposed testimony as to whether Defendants formed a "homegrown terrorist group" or were "Jihadi terrorists" is irrelevant

1

and inadmissible. Accordingly, the United States' and Defendants' Motions are **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Defendants are charged with seven counts arising from their conduct between October 2017 and August 2018: (1) Conspiracy to Provide Material Support to Terrorists in violation of 18 U.S.C. § 2339A; (2) Providing Material Support to Terrorists in violation of 18 U.S.C. §§ 2339A & 2; (3) Conspiracy to Murder an Officer or Employee of the United States in violation of 18 U.S.C. § 1117; (4) Conspiracy to Commit an Offense Against the United States in violation of 18 U.S.C. § 371; (5) Possessing a Firearm While Unlawfully in the United States in violation of 18 U.S.C. §§ 922(g)(5) & 2; (6) Conspiracy to Commit Kidnapping in violation of 18 U.S.C. § 1201(c); and (7) Kidnapping in violation of 18 U.S.C. §§ 1201(a) & 2.[1] Doc. 85.

On April 3, 2023, the United States submitted notice of expert witness Steven R. Watt. Doc. 706. Watt is a retired United States Army special operations commander and the retired Chief of Police of Ogden, Utah. Doc. 706-2 at 1. The United States intends for Watt to testify about Defendants' "firearms and tactics training," the "design, construction, purposes, and use" of Defendants' property, and "the sources and significance" of select writings of Defendants. Doc. 706 at 2. Based on Watt's experience conducting counter-terrorism operations in the Army including multiple combat deployments in Iraq and his firearms and tactical experience in law enforcement, Watt is expected to opine that: (1) Defendants are a "home-grown terrorist group who were preparing to utilize terrorism-related tactics, techniques and procedures, to coerce

---

[1] Defendants Subhanah and Hurjrah Wahhaj are not charged in count Count Three. Doc. 85 at 6. Defendant Siraj Wahhaj was not charged in Counts Six and Seven because he is the biological father of John Doe. Doc. 85 at 1-9; *see also* 18 U.S.C. § 1201(a) ("Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, *except in the case of a minor by the parent thereof* . . . .") (emphasis added).

persons to accept their ideology or forfeit their lives"; (2) Defendants' compound was "constructed for the purpose of defending against persons or law enforcement agencies"; and (3) the type of tactical training Defendants conducted was offensive in nature and consistent with known terrorist doctrine. Doc. 742-2 at 6.

To counter Watt's proposed testimony, Defendant Subhannah Wahhaj submitted notice of expert witness Joost Janssen on April 17, 2023. Doc. 723. Janssen is a retired enlisted United States Navy SEAL and retired CIA Global Response Staff operator with eighteen combat deployments. *Id.* Janssen is expected to rebut the opinions of Watt. Specifically, he intends to testify that: (1) Defendants did not form a terrorist organization as evidenced by the United States Department of Homeland Security's eight signs of terrorism; (2) Defendants' property was consistent with local earth ship style construction, not a terror training camp; and (3) Defendants' tactical training "although dynamic, was defensive in nature." Doc. 760-1 at 3-8. Janssen also proposes to testify that Defendants "did not, at any time, have communications with any known terrorists or terrorist organizations." *Id.* at 2.

In May 2023, Defendants and the United States filed the instant Motions to Exclude each other's expert witness. Each party raises two of the same arguments and one that is unique to each witness. Defendants argue that Watt is unqualified to testify about "home-grown" terrorism, his opinions are not based on an articulated methodology with supporting facts or data, and his testimony invades the province of the jury by opining on a mental state element.[2] On the other hand, the United States argues Janssen is not qualified to testify about domestic terrorism, his

---

[2] Defendants contend Watt's testimony that Defendants intended to plan an "offensive terroristic event," rather than lawfully constructing their home and engaging in lawful firearms training, is "explaining Defendants' intent and state of mind" in violation of Rule 704(b). Doc. 742 at 9. This argument is entirely without merit. Rule 704(b) only prohibits a "narrow range of opinions," such as those that "expressly state" a defendant demonstrated the required mens rea. *United States v. Richard*, 969 F.2d 849, 855 (10th Cir. 1992) (citation omitted). Watt's proposed testimony does not even approach directly concluding Defendants exhibited a mens rea element.

opinion is not based on "meaningful data, methodology, or analysis," and his opinion that Defendants do not meet the criteria to be identified as a terrorist group is irrelevant to the crimes charged. Doc. 760 at 11-12. Because Watt and Janssen are counter experts in the same field and the parties raise objections applicable to both witnesses, the Court will address both Motions together.

## DISCUSSION

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the United States Supreme Court explained that Federal Rule of Evidence 702 assigns to the district court a gatekeeping role to ensure that an expert's scientific testimony "both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597 (1993). First, the Court must determine whether the expert is qualified by "knowledge, skill, experience, training or education" to render an opinion. Fed. R. Evid. 702. Second, the Court must determine whether the expert's opinions are reliably applied to the facts of the case. The proponent of expert testimony has the burden to show by a preponderance of the evidence that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under Rule 702, relevancy remains a "touchstone[] of the admissibility of expert testimony." *Daubert*, 509 U.S. at 599. In particular, Rule 702(a) "goes primarily to relevance" because "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* at 591 (internal quotation and citations omitted). The Court will address in turn whether Watt and Janssen are qualified, whether their opinions are reliable, and to what extent their proposed opinions are relevant.

**I.      Steven R. Watt and Joost Janssen are qualified to provide expert testimony.**

Rule 702 requires that all experts be qualified "by knowledge, skill, experience, training, or education" to testify in the form of an opinion. Fed. R. Evid. 702. An expert is "required to possess such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (internal quotation omitted). To qualify Watt and Janssen as experts, the Court must determine they have "sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case." *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156 (1999).

The Court finds Steven R. Watt qualified to render his proposed expert opinion in this case. Watt's proposed opinion testimony is based on decades of training, education, and experience in firearms, military tactics, and high-level counter-terrorism operations. Watt had a 34-year Army career, the majority of which he spent as a special forces officer in the 19th Special Forces Group. Doc. 742-2 at 1. He deployed to Uzbekistan and Afghanistan in 2001, and again to Afghanistan in 2002 to conduct operations against Al Qaeda. Id. In 2006, Watt deployed to Iraq as the Counter-Terrorism Advisor to the Iraqi National Command Center. Id. In 2010, Watt completed his master's thesis at the U.S. Army War College, entitled "Can the U.S. defeat Al Qaeda." Later in 2010, Watt deployed to Iraq as Strategic Plans Chief for the Joint Forces Special Operations Component Command-Iraq, where he was responsible for long-term counter terrorism planning. When Watt retired from the Army, he held the rank of Colonel. Watt also had a decades-long career in law enforcement, culminating in his service as Police Chief of Ogden, Utah. He also served as a firearms instructor, defensive tactics instructor, and commander of the Ogden SWAT team. Watt's testimony will assist the jury in evaluating evidence related to Defendants' tactical

and firearms training, the structure and functionality of Defendants' compound and firing range, the weapons and tactical equipment recovered from Defendants' property, and the "Phases of a Terrorist Attack" document.

The Court similarly finds Joost Janssen qualified to testify under Rule 702. Janssen has served thirteen years in the Navy, including five years as an operator with SEAL Team 5 and three years as a Basic Underwater Demolition/SEAL Training instructor. Janssen also served as a firearms instructor. He rose to the rank of Chief Petty Officer in the Navy. After retiring from the military, Janssen worked as a CIA Global Response Staff operator. He deployed 18 times between 1995 and 2014, including operations in Iraq, Afghanistan, Yemen, Libya, Egypt, and the West Bank. Most recently, Janssen conducted counter-terrorism operations against the Haqqani terrorist network in Iraq and Al Qaeda in Yemen. Doc. 810-1. Janssen testified that his overseas operations involved reviewing intelligence gathered against a wide variety of terrorist groups and determining whether those groups were a sufficient threat to pursue further operations. As such, Janssen is qualified to testify, and his testimony will assist the jury in evaluating the same categories of evidence as Watt. Although Janssen lacks the domestic law enforcement experience that Watt has, the Court finds that Janssen's overseas counter-terrorism experience has sufficient overlap with domestic terror investigations so as to qualify him as an expert in this case; however, based on Jenssen's lack of domestic law enforcement experience, he is not qualified to offer opinion testimony on law enforcement tactics, training, practices, or procedures.

For these reasons, the Court finds Watt and Janssen are qualified by "knowledge, skill, experience, training, [and] education" to provide expert opinion testimony in this case within the areas of their expertise but subject to the limitations imposed by the Court. Fed. R. Evid. 702.

**II.    The testimony of Watt and Janssen is reliable.**

Both parties argue that the other's expert opinion is not based on sufficient facts, data, or methodology to establish its reliability. An expert's opinion must "reflect[] a reliable application of [reliable] principles and methods to the facts of the case." Fed. R. Evid. 702(c)-(d). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether the particular expert testimony is reliable." *Kumho Tire Co.*, 526 U.S. at 152. This is particularly true when an expert is testifying as to an "experience-based" opinion because the factors articulated in *Daubert* may not be relevant to those types of experts. *Id.* The Court's objective is to "make certain, that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

The Court finds that Watt and Janssen's proposed testimony is reliably based upon their significant experience in the fields relevant to their opinions. Both experts intend to testify as counter-experts about the same categories of evidence: firearms and weapons, offensive and defensive military tactics, and the construction of military and terror compounds. As outlined in the previous section, Watt and Janssen are highly experienced in each of the relevant fields. Watt testified as to his experience teaching firearms training courses and leading the Ogden SWAT team, as well as his education, training, and deployments as an Army special forces counter-terror officer. Similarly, Janssen is highly trained and experienced as a Navy SEAL operator and firearms instructor with eighteen overseas terrorism interdiction deployments. Both experts were provided with and reviewed significant portions of discovery in this case before formulating their opinions. Because Watt and Janssen's opinions are based upon their "training, experience, and knowledge,"

rather than scientific tests or experiments, so the Court is afforded "considerable leeway" in determining whether their testimony is reliable under Rule 702. *Kumho Tire Co.*, 526 U.S. at 152. In accordance with *Kumho Tire Co.*, the Court concludes both witnesses reliably applied their relevant experience to the facts of the case.

### III. The Court will limit the scope of Watt and Janssen's testimony to issues relevant to the offenses charged.

The United States moves to exclude or limit Janssen's testimony on grounds that Defendants' status as "terrorists" is not relevant to any elements of the charged offenses and should be excluded under Federal Rules of Evidence 702, 401, and 403. In particular, the United States takes issue with the following conclusions by Janssen: (1) "Defendants did not form a homegrown, or any other form of terrorist organization"; (2) "Defendants did not at, any time, have communications with any known terrorists or terrorist organizations"; and (3) Defendants "do not meet the criteria to be identified as a terrorist group." Doc. 760 at 10. Defendants' aptly respond that the United States made terrorism an issue in this case through the proposed testimony of Watt. In his expert report and at his *Daubert* hearing, Watt went beyond opining on the construction of Defendants' compound and their tactical training to reach his ultimate conclusion that "Jany Leveille and associates are a 'home-grown' terrorist group who were preparing to utilize terrorism-related tactics, techniques, and procedures . . . to coerce persons to accept their ideology or forfeit their lives." Doc. 742-2 at 6. Because Janssen serves as a rebuttal expert to Watt, the Court will consider the applicability of the United States' relevance and Rule 403 objections as applied to both witnesses.

All evidence admitted at trial must be relevant. "Rule 401 defines relevant evidence as having 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Old Chief v.*

8

*United States*, 519 U.S. 172, 177 (1997) (quoting Fed. R. Evid. 401). In the criminal context, relevant evidence "tends to make a necessary element of an offense more or less probable." *United States v. Davis*, 636 F.3d 1281, 1298 (10th Cir. 2011) (citing Fed. R. Evid. 401). Moreover, in the context of expert testimony, the proponent must show the proposed testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The United States argues Defendants' identification as a "terrorist group" is not relevant under Rule 401 and will not assist the jury in determining a fact at issue under Rule 702(a).

The Court finds that Watt's and Janssen's proposed testimony exceeds the scope of what is relevant to the offenses charged. Therefore, the Court limits both witnesses from opining on whether or not Defendants may be classified as "terrorists." None of the offenses charged in the Superseding Indictment require that the United States prove Defendants were "Jihadis" or "terrorists." *See* Doc. 85. Even Counts One and Two, Providing Material Support to Terrorists in violation of 18 U.S.C. § 2339A and conspiracy to do the same, do not include any element related to "terrorism." *See United States v. Hassan*, 742 F.3d 104, 111-12 (4th Cir. 2014) (stating elements of 18 U.S.C. § 2339A: (1) that Defendants entered into a conspiracy; (2) that the objective of the conspiracy was to provide material support or resources; and (3) that Defendants then knew and intended that the provision of such material support or resources would be used in preparation for, or in carrying out, a violation of [18 U.S.C. § 1114 (attempt to kill an officer or employee of the United States)]). The United States elected not to charge Defendants under the adjacent statute, 18 U.S.C. § 2339B, which would have required proving they provided material support to a designated "foreign terrorist organization." None of the remaining five counts in the indictment include any element related to terrorism. Defendants' classification as "terrorists" is simply not probative of "any fact that is of consequence to the determination of the action." Fed. R. Evid. 401.

Watt and Janssen may provide their opinions as to Defendants' firearms training, tactical training, and compound structure. Such testimony is particularly probative of the third element of Defendants' § 2339A charge. However, Watt and Janssen are limited, in accordance with Rule 401, from going one step further and issuing an ultimate opinion as to whether Defendants are or are not "terrorists."[3]

As a second ground for limiting the scope of Watt and Janssen's testimony, the Court finds that testimony classifying Defendants as "terrorists" violates Rule 403 because it is highly likely to confuse the issues and mislead the jury. Such testimony has little, if any, probative value as to the required elements of Defendants' charges. Further, the issue of whether Defendants may be properly labelled "home-grown terrorists" or "Jihadi terrorists" is a compelling issue likely to occupy the attention of the jury. It is therefore likely to shift the jury's attention away from determining Defendants' guilt or innocence of the charged offenses to the irrelevant inquiry into whether Defendants' actions and worldviews align with those of recognized "terrorists." Such a tangent is not just inefficient and unnecessary, it risks the jury conflating Defendants' status as "terrorists" with the legal elements of the charged offenses. If Watt's and Janssen's testimony is not limited, there is a discernable risk that the issue will sidetrack the trial, and that the jury might convict or acquit Defendants for reasons unrelated to whether their actions satisfied the elements of the offenses charged. Accordingly, the Court concludes the probative value of Watt and Janssen's proposed testimony regarding whether Defendants are classified as "terrorists" is

---

[3] The Court's order limiting Watt from concluding that Defendants "are a home-grown terrorist group" will necessarily limit the scope of Janssen's rebuttal testimony. Most, if not all of Janssen's analysis regarding DHS's eight signs of terrorism will not be relevant. This includes Janssen's proposed testimony that Defendants did not "have communications with any known terrorists" or "raise money or other resources for the purpose of terrorism." Doc. 760-1 at 2.

"substantially outweighed by its tendency to confuse the issues in this case." *Amawi*, 695 F.3d at 480.

The Court finds particularly persuasive on these issues the published opinion of the United States Court of Appeals for the Sixth Circuit affirming the district court's exclusion of similar expert testimony in an analogous case. In *United States v. Amawi*, the Sixth Circuit considered an appeal following convictions at trial of three codefendants charged with conspiracy to kill and maim persons outside the United States and conspiracy to provide material support to terrorists in violation of 18 U.S.C. § 2339A. 695 F.3d 457, 464 (6th Cir. 2012).[4] The Amani Defendants' convictions stemmed from a conspiracy to distribute jihadist training videos to potential recruits overseas. The defendants sought to offer two expert witnesses: one to testify "about the history of Islam, jihad, and the rise of modern-day jihadist social movements"; and a second to testify "about politics and cultural norms in the Middle East." *Id.* at 480. The district court excluded both witnesses, concluding that their testimony was irrelevant and likely to confuse the issues: "just as this case is not about 'Terrorism' writ large, it is not about Islam or jihadist movements generally." *Id.* The Sixth Circuit affirmed, noting that "[n]one of the charges in the indictment were of "terrorism" or related to any Islamist jihadist movement." *Id.* As in *Amawi*, the instant case does not require that the United States prove Defendants practiced "home-grown terrorism" or "Jihadi terrorism." Nor would Janssen's expert opinion that Defendants' do not meet criteria for classification as "terrorist" negate any required elements of the charged offenses. The Court therefore concludes that Rule 403 also requires limiting Watt and Janssen's proposed expert testimony.

---

[4] The Court notes that *Amawi* is one of few authorities on the precise situation Defendants face—proceeding to trial on a § 2339A charge without being simultaneously charged under § 2339B. Thus, as in this case, "terrorism" was not an element at trial. The Court therefore finds the Sixth Circuit's affirmance of the district court's decision to limit expert testimony regarding terrorism to be highly persuasive.

**CONCLUSION**

For the reasons stated in this opinion, the Court finds that:

- Steven R. Watt and Joost Janssen are qualified by "knowledge, skill, experience, training, [and] education" to provide expert opinion testimony in this case. Fed. R. Evid. 702.

- Watt's and Janssen's proposed testimony is reliably based upon their significant experience in the fields relevant to their opinions, including tactical and firearms training, the structure and functionality of military compounds and firing ranges, weapons and tactical equipment, and executive protection and counter-terror training. Their testimony is also reliably applied to the facts of the case in accordance with *Kuhmo Tire Co.*, 526 U.S. 137.

- Federal Rules of Evidence 702(a), 401, 402, and 403 require limiting the scope of Watt and Janssen's testimony so that they do not opine as to whether Defendants can be classified or labeled as "home-grown terrorists," "Jihadi terrorists," or "terrorists" of any kind.

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE