**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA

        Plaintiff,

v.                                                              **No. 1:18-CR-02945-WJ**

JANY LEVEILLE, et al.,

        Defendant.

**DEFENDANTS' RESPONSE TO UNITED STATES'
<u>OBJECTIONS TO DEFENDANTS' JOINT EXHIBIT LIST</u>**

Defendants, by and through their respective counsel of record, hereby file the following

Response to the United States' Objections to Defendants' Joint Exhibit List. [Doc 900].

<u>**Introduction**</u>

In its Objections, the United States seeks the exclusion of eleven (11) of Defendants' trial

exhibits based on various reasons, most of which include alleged irrelevance and the United States'

claim that the Defendants are improperly attempting to establish their innocence through the

absence of criminal conduct or through evidence of their good character. The United States,

however, largely misconstrues the nature and purpose of the Defendants' exhibits and also fails to

take into consideration the nature of the charges against them. Nonetheless, many of the United

States' objections regarding the surveillance video and photographs can likely be resolved through

stipulation with the United States as explained herein.

I.      **Exhibits A, B, C, and F—Drone Video and Still Photographs Depicting Defendants'
      Home and Land in Amalia, Photos Depicting Defendants' Home and Land in Amalia
      Prior to Bulldozing, Photos Depicting Defendants' Home and Land After Bulldozing,
      and Defendants' Family Videos from Amalia**

The United States objects to the admission of Exhibits A, B, C, and F based on its claim

that these exhibits are irrelevant and on its assumption that they are either "being offered to show

instances of good conduct or an absence of criminal conduct" or as "character evidence offered to prove the general good character of the Defendants" and therefore should be excluded under Fed. R. Evid. 401, 402, 403, and 404. [Doc. 900 at 1-2]

First, each of these exhibits is directly relevant to the defense of the charges in this case. Video and photographs of Defendants' home and land in Amalia show its location and the nature of the structure(s) they erected (including the interior), as well as the condition of the land when they arrived there. This evidence will be offered to explain how and why Defendants built their home as they did, which is particularly relevant, and indeed necessary, given that the United States intends to argue that the home and land was constructed to function as a terrorist compound.  *See* Doc 910. "Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Based on the United States' claims with respect to Defendants' land and home in Amalia, these exhibits are clearly relevant. Moreover, any statements that may be contained within the Defendants' family videos would clearly not be offered for the truth of the matters stated therein, and therefore the videos are not excludable under Fed. R. Evid. 801 or 802.

The United States' argument that these exhibits should be excluded because they are being offered to show instances of good conduct or the general good character of the Defendants is also misplaced. The photographs and video should be permitted because they demonstrate that Defendant's use of their home was inconsistent with the United States' allegations that Defendant built the home as a terrorist compound, not to prove their "general good character" or to attempt to argue that they are innocent based on their absence of criminal acts on specific occasions.  *See* *United States v. Hayes*, 219 Fed. Appx. 114, 117 (3d Cir. 2007) (finding the district court erred by

refusing to admit evidence offered by the defendant when "it was offered to show that his actions were inconsistent with conspiring to fabricate test results. The evidence, if accepted by the jury, could well have raised a reasonable doubt about whether [defendant] was part of the charged conspiracy.").

Lastly, although the United States claims that this evidence should be excluded under Rule 403, it does not provide any explanation or argument in support of this assertion. As explained above, the evidence is patently relevant to Defendants' defense. Moreover, the United States has not identified any alleged prejudice that might be caused by the admission of any of these exhibits. Indeed, it is hard to imagine what could be allegedly prejudicial about visual depictions of the United States' main evidence against the Defendants, the nature of the home the constructed. "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1274 (10th Cir. 2000). Here, there is no basis to find that the probative force of these exhibits is even minimally, much less substantially, outweighed by their prejudicial value. Further, the "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." *Peshlakai v. Ruiz*, 39 F. Supp. 3d 1264, 1320 (D.N.M. Aug. 8, 2014). The Court could also minimize any potential jury confusion, if any is shown to exist, by offering a limiting instruction. The Court should therefore overrule the United States' objections to Exhibits A, B, C, and F.

## II.   Exhibits G, K, and L—Photographs of Beecher Street and Iris Homes, Rule 1006 Summary Chart Regarding Government Surveillance, and Surveillance Notes

The United States objects to the admission of Exhibits G, K, and L on the same bases as its objections to Exhibits A, B, C, and F. The United States objects to Exhibits K and L on the additional asserted basis that these two exhibits contain inadmissible hearsay. [Doc. 900 at 2-3]

Defendants disagree with these objections for similar reasons as those explained above in Section I. If, however, the United States is willing to stipulate that it will not elicit testimony or present any other evidence based on, or regarding, its terrorism investigation and surveillance of Defendants' that occurred prior to moving their residence to Amalia, New Mexico, Defendants are willing to agree not to seek admission of Exhibits G, K, and L. Or, if the Court excludes this evidence, Defendants will not seek to admit these exhibits.

The government's claimed evidence of a terrorism conspiracy shows that if there was a conspiracy, it did not begin until Defendants came to New Mexico. This is consistent with the evidence the Court heard at the *James* and *Daubert* hearings that the terrorism conspiracy did not begin until A.G. died and Ms. Leveille then prophesied that he would be resurrected and would instruct them to attack corrupt institutions, including the FBI. Thus, evidence preceding this alleged plan should be excluded. This includes the evidence of a tip from a shooting range owner in Georgia about Mr. Wahhaj's gun training. In other words, the Court should exclude any evidence of a terrorism investigation that took place in Georgia, that is, before any kidnapping investigation began. If this evidence is excluded, then Defendants do not need to admit these exhibits, Should the Government open the door, however, Defendants should be permitted to utilize these exhibits as planned. Moreover, should a witness refer to any investigation not related to the kidnapping of A.G. or the surveillance of Defendants prior to moving to New Mexico, the Government and/or the Court should object or admonish the witness.[1]

## III.     Exhibit J—Recording of Clara Mendiola

Defendants agree to withdraw Exhibit J.

---

[1] The Defendants should not be placed in the position of having to object to this kind of improper testimony, since they will ironically be perceived as concealing information from the jury, when the Defendants actually prefer the evidence be admitted.

## IV.     Exhibit M—Purchase and Court Documents Regarding Ownership Swap of Lots 28 and 29 in Costilla Meadows

The United States objects to the admission of Exhibit M based on its assertion that the exhibit is irrelevant and, even if it does have any relevance, its probative value substantially outweighs the danger of confusing the issues and misleading the jury. [Doc. 900 at 3-4] Evidence that there was, in fact, a "land swap" agreement between Morton and the Badgers is relevant to show that Defendants were unaware of their mistaken identification of Mr. Morton's parcel (by demonstrating that he legitimately owned the parcel immediately adjacent to the Badgers' plot) and were permitted to occupy the Badgers' land in Costilla Meadows in exchange for Mr. Morton's land.  While the Court's ultimate conclusion that the Defendants were not properly occupying the land at the time of the search warrant, it is nonetheless also true that they did properly occupy the land for most of the time they were living there.  Without evidence of the attempted land swap and the circumstances around that attempt, the jury could be led to mistakenly believe that Defendants attempted to steal the Badger's land or that they were utterly indifferent to this situation for almost a year (which would unnecessarily and unfairly reflect negatively on Defendants before the jury). Accordingly, and assuming the United States is going to introduce evidence regarding the legal status of the land, Exhibit M must be admitted to provide the complete picture of these events.  If, however, the United States is willing to stipulate that it will not elicit testimony or present any other evidence that Defendants built on land that was owned by other individuals, Defendants are willing to agree to withdraw Exhibit M.

## V.     Exhibit P—Rule 1006 Summary Chart Regarding Defendants' Financial Transactions

Defendants agree to withdraw Exhibit P.

**VI.      Exhibit Q—Documentation of the Marriage of Jany Leveille and Siraj Ibn Wahhaj**

The United States objects to the admission of Exhibit Q because it claims that the evidence is false, irrelevant, and has a high risk of confusing the issues and misleading the jury. [Doc. 900 at 4]. Evidence of the religious marriage between Siraj Ibn Wahhaj and Jany Leveille, although perhaps not legally binding, is relevant because it demonstrates that they believed they were married and that they held themselves out to the world as husband and wife, which caused the other Defendants to accept Ms. Leveille as Mr. Wahhaj's wife.  Given the extensive evidence that Ms. Leveille was in large part leading the other Defendants' involvement in the allegedly illegal conduct, the fact that she was their brother's wife[2] (at least in the religious sense, which was most important to them), and not a woman with some lesser status in the family, is an important detail to explain Defendants' conduct.  The jury should know that, at least as far as Defendants were concerned, Ms. Leveille was not simply Mr. Wahhaj's "girlfriend" (or worse, "mistress"), but his wife.  While the legalities related to the marriages of Mr. Wahhaj (to Ms. Leveille, and to Ms. Ramzi before her) are admittedly irrelevant, the fact that the marriage between Mr. Wahhaj and Ms. Leveille occurred, and the extent to which that marriage was accepted by the Defendants, are undoubtedly relevant.

And, although the United States asserts that the evidence of this marriage has "an extremely high risk of confusing the issues and misleading the jury," it does not provide any explanation or argument in support of this assertion. Jurors are routinely presented with complex and complicated information that often involves areas completely unfamiliar to a juror or requiring expert testimony to understand. The jury will have no problem understanding the nature of the relationship between Ms. Leveille and Mr. Wahhaj. Further, the "exclusion of evidence under Rule 403 that is otherwise

---

[2] Or brother-in-law's wife, in the case of Lucas Morton.

admissible under the other rules is an extraordinary remedy and should be used sparingly." *Peshlakai v. Ruiz*, 39 F. Supp. 3d 1264, 1320 (D.N.M. Aug. 8, 2014). If the prejudice lies in the legal status of the marriage, there is certainly no reason that evidence needs to be presented to the jury, and Defendants have no intention of doing so. The Court could also minimize any potential jury confusion, is such is convincingly articulated by the United States, by offering a limiting instruction. Accordingly, the Court should overrule the United States' objection to Exhibit Q.

### Conclusion

Defendants are willing to unconditionally withdraw Exhibits J and P. Defendants are also willing to withdraw Exhibits G, K., L, and M on the condition that the United States is willing to stipulate that it will not introduce, or refer to, the terrorism investigation or surveillance identified in those exhibits. The Court should, however, permit Defendants to introduce Exhibits A, B, C, F, and Q because they are relevant and offered for a proper purpose. Moreover, these exhibits have sufficient probative value, are not prejudicial, and will not serve to confuse the jury. On these bases, Defendants respectfully request that this Court overrule the United States' Objections to Defendants' Exhibits in accordance with the terms described above.

Respectfully Submitted:

*/s/ Donald F. Kochersberger III*
Donald F. Kochersberger III
BUSINESS LAW SOUTHWEST LLC
6801 Jefferson St. NE, Suite 210
Albuquerque, NM 87109
(505) 848-8581
Donald@BusinessLawSW.com

/s/ Marshall J. Ray
Marshall J. Ray
Law Offices of Marshall J. Ray, LLC
514 Marble Ave, NW
Albuquerque, NM 87111
(505) 312-2748
mray@mraylaw.com

*Attorneys for Defendant Hujrah Wahhaj*

-and-

/s/ Ryan J. Villa
Ryan J. Villa
The Law Office of Ryan J. Villa
5501 Eagle Rock Ave NW Ste. C2
Albuquerque, NM 87113
(505) 639-5709
ryan@rjvlawfirm.com

/s/ Justine Fox-Young
Justine Fox-Young
Justine Fox-Young, PC
5501 Eagle Rock Ave NE Ste C2
Albuquerque, NM 87113
(505) 796-8268
justine@foxyounglaw.com

*Attorneys for Defendant Subhanah Wahhaj*

-and-

/s/ Siraj Ibn Wahhaj
Siraj Ibn Wahhaj
Cibola County Correctional Center
2000 Cibola Lp.
Milan, NM 87021
(505) 285-4900

*Pro Se Defendant*

-and-

*/s/ Lucas Morton*       
Lucas Morton
Cibola County Correctional Center
2000 Cibola Lp.
Milan, NM 87021
(505) 285-4900

*Pro Se Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 14th day of August 2023, I filed the foregoing electronically through the CM/ECF system, which caused all counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

*/s/ Donald F. Kochersberger III*    
Donald F. Kochersberger III