*United States v. Leveille*, et al, 18-CR-2945 WJ – *James* Hearing Exhibits[1]

| Exh. | Doc. | Description | Statements | Stated Reasons for Admissibility |
|------|------|-------------|-----------|----------------------------------|
| 1 | 156 | 8/21/18 Farroll Transcript (All possible hearsay statements made within charged timeframe (Oct. 2017 – August 2018). | • Jamella said Siraj (also referred to as Ibn) accused her and Hakima of practicing black magic.<br>• Siraj and Hujrah traveled to London to learn exorcisms. Jany said she received messages from God and directed the activities of others.<br>• Jany said JD 1 would resurrect on Easter. Jany and the others said not to talk about JD 1 ever being at the compound because they would "all go to jail."<br>• Jany told boys they were responsible for washing JD 1's body.<br>• Jany said JD 1 would come to life as Isa, "make miracles so people can believe," and if they didn't believe, they would have to be killed. Siraj would shoot corrupt institutions (banks, police, FBI, schools military) if they didn't believe.<br>• Siraj wanted to be in an army, train an army, used word jihad (fighting in name of God). | These out-of-court statements by the Defendants are relevant to the Defendants' conspiracies and to the facts and circumstances surrounding JD 1's abduction, the reasons for this abduction, the establishment of the compound, the Defendants' world view as articulated by Jany and others, and the Defendants' plans and preparations for jihad.<br><br>The statements confirm that the children heard the Defendants talk and knew the Defendants' motivations and plans. The statements are also further proof that the group cohesively worked together and that the Defendants conspired together to work toward their objectives, and they demonstrate the Defendants' frame of mind and the reasons they took the actions they did. In other words, the statements are significant because of the fact that they were made, or were verbal acts, or are non-assertions demonstrating the existence, scope, and make-up of the conspiracies. As such, the United States maintains that the statements |

---

[1] John Doe 1 is referred to as "JD 1" throughout this document.

| | | | | are not hearsay because the statements are not being offered for the truth of the matter asserted and/or because the statements are co-conspirator statements.<br><br>Finally, to the extent the additional statements are about the children's familiarity with Jany's book, these statements further confirm that Jany's writings are admissible coconspirator statements, as described in the United States' first notice.  The children's statements make clear that everyone at the compound was familiar with Jany's writings and that the book was central to the ongoing conspiracies. |
|---|---|---|---|---|
| 1a<br><br>1b<br><br><br>1c<br><br><br>1d | 781 | 8/7/18 Farroll 302<br><br>8/7/18 Farroll Transcript<br><br>8/9/18 Farroll Transcript<br><br>8/21/18 Farroll Transcript (All possible hearsay statements made within charged timeframe (Oct | • Farroll said that everyone at the compound had a role.  Jany was the messenger, Siraj was supposed to "take care of" non-believers, and Farroll was supposed to help Siraj and protect Jany.  Hujrah would be a supervisor and was supposed to talk to the non-believers, Morton would be a mentor to the little boys and teenagers, and Subhanah was assigned to help with children, cooking, and cleaning.<br>• Jany made decisions and led the group, Siraj listened to her, and "everyone was taking care of everybody."<br>• Jany said they were waiting for JD 1 to tell them what to do, and he was going to instruct them on what corrupt institutions they needed to get rid of, those corrupt institutions being teachers, military, law | See 1 above. |

| | | 2017 – August 2018). | enforcement, financial institutions, and large companies. <br> •     Siraj would talk about shooting non-believers, and Siraj would say "two" as a code word if there was danger. <br> •     Siraj would talk about "SWAT stuff" and tell stories about how he had to kill people. <br> •     Siraj also advised it was better to shoot someone at night and that he did not like law enforcement. <br> •     Siraj would talk about jihad while they lived at the compound, and he instructed that jihad is "when you fight for love, for God . . . fighting for your family" and then you die forever and go to heaven. <br> •     Farroll said Jany told him Morton wanted to die for jihad, and he said Siraj wanted to train an army to fight for jihad. <br> •     The group thought the FBI was watching them. <br> •     Yusef "Von" Leveille (Von) also told the group that the FBI was watching them and knew what was happening at the compound.  Jany said Von shared the group's beliefs. <br> •     When the police did arrive at the compound on 8/3/18, Siraj told Farroll and others to "load up." Farroll followed the instruction and then put down the firearm on his own, and Jany told Siraj to put down his firearm. <br> •     Siraj said he would shoot the police in the night if they came to the compound because he could use the excuse that he didn't know who they were. <br> •     Siraj believed law enforcement officers were crooked and he did not like them. | |

| | | | | |
|---|---|---|---|---|
| | | | • Farroll knew Jany wrote three books, and he read some of the first book.<br>• He also knew she spoke with her brother Von to "tell him what's going on."<br>• Farroll was shown a notebook with notes he said he did not understand, except for the phrase "dry run," and he thought Siraj wrote the notes.<br>• Hujrah was also going to go with Jany, Farroll, Isa, and Siraj Wahhaj to present Isa and Jany as the messenger because Hujrah is a good talker.<br>• Hujrah, Subhanah, and Jany all shot a gun at least once at the compound in Amalia.  Jany used the AR-15. | |
| 2 | 156 | Jamil Transcript (All possible hearsay statements made within charged timeframe (Oct 2017 – August 2018). | • Jany claimed that she became pregnant at the same time Hakima became pregnant with JD 1; Jany's pregnancy soon failed.<br>• In December 2017, in Georgia, Jany formed the belief that Hakima became pregnant only by engaging in "black magic" that resulted in Jany's baby being transferred from Jany into Hakima's womb.<br>• Jany understood Hakima to be barren and claimed that JD 1 was her child.<br>• Jany claimed that JD 1 was born dead but through "black magic" Hakima caused demons to enter JD 1's body.<br>• These demons caused JD 1 to move such that he appeared to be alive.<br>• Jany claimed that she received messages and directions from God.<br>• Jany received these messages in Georgia and after she left Georgia in December 2017 en route to NM. | See 1 above. |

- Jany explained that Jamil, Siraj, Subhanah, Hujrah, Morton, Farroll, and others also received messages from God but that Jany alone was able to translate them.
- Jany explained that the messages came from God to the Archangel Gabriel and that the Archangel Gabriel communicated them to Jany who then communicated the messages to other members of the group.
- These messages sometimes took the form of orders and directives.
- Jany recorded these messages, including in journals that she kept with her.
- In Nov or Dec 2017, Jany directed Siraj to take JD 1 and bring him to her.
- During this period, Jany also "ordered" Siraj to "recite the Quran on JD 1."
- Jany stated to the effect that she "didn't want to take him JD 1 . . . ."
- Hakima called every day to have JD 1 returned and that Jany planned to have JD 1 returned, but each day God told her to keep JD 1 one more day.
- Jany asked God whether she could return JD 1 and God said "no."
- Jany stated that, "The Quran told her to keep him for a little bit … that's when she found out he was her son." Jamil stated that Jany claimed to have received messages from God that JD 1 was her child.
- During this period, Jany also asked JD 1 whether she was his mother, and he indicated she was. Around this time "We was (sic) ordered [to leave Georgia and] to go to NM." Jany together with her children and Siraj took JD 1 in her vehicle and drove

| | | | from Georgia to NM in December 2017.  Jany explained that she wanted to take JD 1 to Alabama and later to NM to perform an exorcism on him and to cast the demons from his body.<br>•     Jany said she received messages from God and directed activities of others.<br>•     Jany told boys they were responsible for washing JD 1's body.<br>•     Jany said they would go to the world and change it, make miracles, and people who did not believe would be killed by Siraj and Farroll. | |
|---|---|---|---|---|
| 2a<br><br>2b | 781 | 8/10/18 Jamil Transcript<br><br>8/21/18 Jamil Transcript (All possible hearsay statements made within charged timeframe (Oct 2017 – August 2018). | •     Jamil also spoke of the Defendants' various roles.  He said Jany and JD 1 were messengers, and Jany communicated the messages and was in charge of the three books she wrote.  Hujrah was a supervisor with advertising duties who would have more responsibilities once JD 1 resurrected, and Subhanah was supposed to teach people how to maintain their homes.  Morton was a tutor for the children, and both Siraj, who was revealed to be Moses, and Farroll were charged with stopping the corrupt institutions. Jamil was supposed to be a scholar and teach the Islamic religion and would also be responsible for advertising.<br>•     Jamil said the "whole point" of training and going to NM was to share their message with the world.  Once the group was in NM, Jany learned of and shared the plan that JD 1 would return as Jesus.<br>•     Jany told everyone that the Quran told her that people who did not believe their message would have to be killed.<br>•     Hujrah, Subhanah, and Morton all believed Jany's prophecies. | See 1 above. |

| | | | • Morton wanted the privilege of dying as a shahid, or a martyr, because he would go to paradise upon his death.<br>• Siraj and Morton said banks owned by Jewish people were corrupt institutions.<br>• Jamil read Jany's book, which she wrote while they were in NM and said he knew everything in the book because it was a book of their story and it told of their experiences.<br>• Jany said God would not leave them hungry, and he said, "that's when you all came and now I'm not hungry." | |
|---|---|---|---|---|
| 3 | 156 | 8/22/18 Jane Doe 1 Transcript (All possible hearsay statements made within charged timeframe (Oct 2017 – August 2018). | *In Doc. 156, this exhibit is mistakenly referenced as Exhibit 4, and Jane Doe 1 is mistakenly referenced as Hujrah's child, but she is Morton's and Subhanah's daughter. Some statements attributed to her in Doc. 156 were made by Jane Doe 3 and are clarified herein.*<br>• She was subjected to the exorcism ritual similar to what was done to JD 1, and it hurt.<br>• Everyone at the compound practiced shooting guns for when there was an emergency.<br>• The men practiced the most, along with the older male children, but Jany, Subhanah, and Hujrah all each held and shot a gun in Amalia at least once.<br>• The reason the family went to Amalia was because the police was looking for them trying to find JD 1.<br>• Jany said JD 1 was supposed to come back to life as a prophet and wake up some people and they were all then going to save the world.<br>• If the police came to Amalia, the plan was to shoot the police. | See 1 above. |

| | | | | |
|---|---|---|---|---|
| | | | • Subhanah's job in Amalia was to wash the dishes and cook everyday.<br>• All of the other Defendants listed to everything that Jany said.<br>• Jany had JD 1 first as her child, but then Hakima took him. | |
| 4 | 156 | Jany's Book (All statements entirely within charged timeframe). | *Mistakenly referenced in Doc. 156 as Exh. 5*<br>• A book consisting of three parts, written by Jany, that describe religious beliefs, Jany's prophetic status, principles and daily rules for group (diet, hygiene, sex).<br>• Recounts offense conduct (belief she was JD 1's mother; when she decided to keep JD 1; JD 1's death; involvement and actions of others); punishments for those who don't share same world view. | Jany's book is evidence of the purpose, manner and means, and overt acts in furtherance of Defendants' conspiracies. The book is itself evidence of an agreement among the co-conspirators.<br><br>The book is also a set of statements made during the course of the conspiracy, and the statements are in furtherance of the conspiracy. Everyone at the compound, including most of the children who were old enough at the time to understand, was familiar with Jany's book. The book informs and communicates to others the objectives, purpose, manner, and means of the conspiracies. It provides the conspiracies' whats, hows, and whys. The book furthers the charged conspiracies by offering comfort, justification, and encouragement to the coconspirators in their ongoing kidnapping, firearms possessing, and material support and killing of federal officers conspiracies. The book is aimed at |

cementing Jany's status as a prophet or chosen one who speaks with God, and the rest of the group as the righteous ones, the people of the cave, who will bear witness to the resurrection of Isa and the cleansing of the world from the wicked and the non-believers.  The book also provided clear rules for the group, as the righteous ones, to follow, and warned against deviations and threatened punishments.  The book was written by Jany, but was edited by Subhanah and Hujrah, who had both published books themselves in the past.  Coconspirator Von Yusuf Leveille also knew of the importance of the books and its purpose, followed its rules, and referred to the conspiracies for which it furthered as similar to the story of Nuah. In short, the book is one of the centerpieces of the charged conspiracies as to all Defendants.

That said, the book is not offered for the truth of every statement within it, but for the significance of the fact that the statements within it that were made.  Therefore, the statements throughout the book are not hearsay and are admissible evidence against all Defendants.

| 5 | 156 | Jany's Writings (All statements entirely within charged timeframe). | *Mistakenly referenced as Exh. 6 in Doc. 156.* Directed others in all manner of things (chores, dress, discipline of kids, sex, Siraj to beat kids with belt, etc.) Referred to the purpose of Subhanah's chastisement from Jany as related to "the jihad" and states she is waiting for Allah's judgment and Subhanah can wait too, until Isa comes. Refers to her providing messages from Allah as similar to Noah trying to convince his people to follow Allah. | Jany's other writings are evidence of the purpose, manner and means, and overt acts in furtherance of Defendants' conspiracies. The writings are themselves evidence of an agreement among the co-conspirators. The writings further evince the roles in the conspiracies, that there were rules within how the conspirators must act, including in preparation for the goal of the conspiracies, including the return of the kidnapped JD 1 as Isa. These statements furthered the conspiracy by providing rules and discipline for the conspirators, and encouragement and motivation for the continued material support and kidnapping of JD 1 for the ultimate goals. The writings are not offered for the truth, but for the significance of the fact that the statements within them were made. Therefore, they are not hearsay and are admissible evidence of the conspiracies against all Defendants. |
| 6 | 156 | Letter to Muhammed (Statements made in December 2017) | *Mistakenly referenced as Exh. 7 in Doc. 156.* The letter states in part: "Allah says also he forgives you for how you plotted with the other . . . [Hakima] because you didn't know and He and I also forgive you for thinking I was doing | The letter to Muhammad is evidence of the existence of the conspiracies, including that by December 2017 the Defendants' sought to recruit additional members to bring their |

| | | | | |
|---|---|---|---|---|
| | | | magic . . . . Allah says He will protect you always, so follow, until He makes you a martyr as you wanted and the only way is by joining the righteous [us].  You will meet Isa also here in about 4 months in sha Alla.  So hurry, do NOT drag your feet, leave whatever we told you to leave and follow what brother Luqman is telling you.  Take all your money out the bank and bring your guns . . . ." | guns and die as a martyr with them, the righteous people.  It also evinces the members and roles of the conspiracies, with Morton delivering the letter at Jany's request to Siraj's brother.  The letter is not offered for the truth, but for the significance of the fact that the statements within it were made.  Therefore, it is not hearsay and is admissible evidence of the conspiracies against all Defendants.<br><br>Even if it was hearsay, it was made by a coconspirator during the course of and in furtherance of the conspiracies, as evidenced by Lucas Morton's delivery of it and his refusals at the same time to respond to local law enforcement questioning about where JD 1 was located. |
| 7-15 | 156 | Chats, MMS, and SMS (Statements made prior to October 2017 will not be used; rest are non-hearsay evidence of conspiracy and were made during charged | *Exhibit numbers referenced in Doc. 156 might be incorrect.*<br>• During the first week of December 2017, Siraj's family and others made numerous social media communications pleading for the return of JD 1 and advertised his disappearance on public platforms.  These communications stressed that JD 1 was in danger without his mother and daily medication.  Defendants' cellular telephone and social media communications indicate these communication were received and were | The exibits demonstrate the existence of the conspiracies, the scope, the operations of the coconspirators, and the participants, including that Yusuf is an unindicted coconspirator.<br><br>Categorically, the pertinent text messages recovered from the sources detailed above are comprised of comments, questions, requests, |

| | | timeframe or after). | either ignored or alternatively characterized as "lies." (App., Ex. 11 at 2.)<br><br>• 12/5/17: Cameron Jackson sent Siraj a SMS message. Mr. Jackson identified himself as being from the Georgia Department of Family and Children's Services. He stated, "We received a concern concerning your child and are looking to meet with you and see the child if possible." (App., Ex. 10 at 3.)<br><br>• 12/22/17: Atlanta television station WSB-TV ran a story about JD 1's disappearance under the headline, "Police searching for missing 3-year-old, father." On April 25, 2018, Jany's brother, Yusuf "Von" Saber (who lives in Haiti), reported this story to Jany. Von stated, "they know yall were going to New Mexico." Jany's response in context to this communication is relevant. (App., Ex. 14.)<br><br>• 1/5/18: Subhanah received a text message from a friend, which reported: "Subhanah everyone is looking for you guys. You dad put up a post yesterday asking anyone who knows about you and you siblings, spouses and children whereabouts to contact authorities." (App., Ex. 9.)<br><br>• 2/15/18: Jany texted her brother Von, stating, among other things, "He [Allah] will throw fear into the heart of the shayateen [demons] who will want to say no n will smite their necks n their fingers . . . . He will kill the kaffir [infidels] in the people u will ask for permission because they do that only to oppose Allah and I. And Allah is severe in punishment. They will taste it n will have the torment of the Fire." (App., Ex. 14.)<br><br>• 2/15/18: Jany texted her brother Von, stating, "Ibn just washed Isa." Von responded, "still same?" | directives, agreements and other verbal acts evidence of the conspiracies.<br><br>Irrespective of the external truth of any factual assertions, such text messages are themselves evidence of the conspiracy, while others provide needed context and background.<br><br>When offered for purposes other than proof of the truth of the matters asserted—if any—the text messages are not hearsay under Rule 801(c)(2).<br><br>The vast majority of these text messages is relevant in some way to the Defendants' conspiracies, even if on their face they appear mundane and common-place. For example, text messages between the Defendants regarding their travels from GA to NM seem innocent at first glance, but may be relevant to establish who was driving, where the Defendants were located, who JD 1 was traveling with, and other details that establish the manner and means and overt acts of each of the Defendants at a particular moment.<br><br>There are also a considerable number of communications that address the |

Jany replied, "He is getting whiter skin."  Von wrote back, "more nice."  Jany wrote, "He was kokobe [mentally disabled] and only 3.  He will speak like a grown man.  He will make miracles.  N he will no longer be kokobe."  Von wrote, "he was kokobe . . . ah like some old Isa story . . ."  Jany wrote back, "Rire [LOL].  U killing me rofl [rolling on the floor laughing].  That is one big sign.  He will walk and talk n no longer kokobe.  He will raise dead n kill shayateens.  He will talk as a grown man."  (App., Ex. 14.)

- 2/18/18: Jany texted her brother Von, stating, "I was chosen. I am the ot[h]her Maryam [Mary] mother of Jesus coming back.  He coming back as a child like the last one n will grow up.  He will raise dead while a child likr mom n dad."  (App., Ex. 14.)

- Members of the group understood that the FBI was pursuing them.  In or about April 2018, Subhanah wrote in her journal, "Why hasn't the FBI found us yet?"  On July 19, 2018, Jany sent her brother a MMS message stating, "We even have snitch neighbors." (App., Ex. 12.)

- Social media communications between Jany and her brother, Von (who resides in Haiti), indicate that Jany and Ibn continued even until late July 2018 to wash and view [JD 1's] body.  On July 20, 2018, Von sent Jany a chat message asking, "How was [JD 11's] bath?"  (App., Ex. 14.)

- 7/21/18: he asked again, "How is [JD 1]?"  Jany responded, "Dunno . . . he [Ibn?] forgot to chk."  (App., Ex. 14.)

- 7/22/18: Morton sent a message stating, "Always remember the feds are on the phone n tried to

topic of food: which kinds of food to purchase, where to purchase it, how to prepare it, how to pay for it.  These statements may appear mundane on their face, but upon closer inspection is central to the operation and organization of the conspiracy, as well as to the conspirators' motivations and actions, particularly as they ran out of food and resources, started reaching out to family and friends for help, and began to understand that soon they would be apprehended by law enforcement.

Nonetheless, as they were running out of food the Defendants' conspiracies continued to exist while they tried to hang on long enough to allow JD 1 to resurrect to complete their conspiracies, and otherwise to maintain JD 1's concealment, even after the first TCSO search warrant on August 3, when the three female Defendants were not arrested until JD 1's body was found on August 6, 2018.

It would be impracticable and unnecessary to introduce all of these communications into evidence at trial.  Nonetheless, a generous swath of these communications is necessary

stop our water once. I think they may even mess up food bank." On July 28, 2018, Morton sent an MSM message stating, "Last time the feds contacted the tire guy who wanted to take a tour over here because they can hear calls." (App., Ex. 14.)

- 7/22/18: Von asked again, "How is [JD 1]?" Jany responds, "Don't know. Ibn stikk in tunnel since morning." On the same day, Von asks, "[JD 1] good?" Jany responds, "He is not out of tunnel yet." On July 22, 2018, Von asks, "How did ibn find [JD 1]?" Von adds, "U should check . . . rire [LOL]." Jany responds, "That hole is too small . . . They crawl in their stomach to get in . . . That's y they don't chi often . . . We have the tunnel n we have a little small hole on the left we put him . . . Away from our food etc." (App., Ex. 14.)
- 7/25/18: Von texts again, "And how is [JD 1]?" Jany responds, "He never chked. Oh well . . . Fet [JD 1] le 6 iA [Feast (or birthday) of [JD 1] the 6th in sha'allah [God willing]] Aout [August] . . . Li tap gen 4 le 6 Aout. [He is here 4-6 August.]" Von responds, "The date our father returned to Allah." (App., Ex. 14.)
- Jany writes her brother on 7/26/18, "This is like really walking dead movie." She writes, "Not that long . . . Its 26th today . . . He said he [JD 1] didn't alter a bit." Von writes, "2 weeks . . . Alter?" Jany writes, "Meaning that he is not turning to dust . . . since December." Von writes, "Usually takes 8 weeks." Jany writes, "Its a miracle Von." Von asks, "With skin or no skin?" Jany writes, "They said we could not have made up any of this. He has ski[m] . . . skin . . . Alllll his skin . . . No skin gone . . . His muscles r there." Von writes, "Rire [LOL] . . . Who said his muscles

to convey the full picture of what the Defendants were doing and thinking at various stages of the conspiracies from early December 2017 through August 2018.

From the thousands of pages of communications, the United States offers 90 pages that reflect necessary areas of relevance, including (1) JD 1's abduction and Defendants' indifference to his mother's frantic efforts to have him returned; (2) JD 1's death; (3) Jany's claim to prophetic status and her position of authority among the Defendants; (4) the Defendants' belief in JD 1's resurrection and the maintenance of his body; (5) the operations of the compound and the training conducted there; (6) the Defendants' belief that law enforcement, including the FBI, was monitoring or looking for them; (7) the compound's dwindling resources and food supply; and (8) the Defendants' belief of JD 1's imminent return in early August 2018.

All of these statements in these exhibits are categorically not hearsay, as they are not assertions offered for their own truth, but are depictions of

| | | | were missing?"  Jany replies, "He onlys looks ugly . . . Miracle."  (App., Ex. 14.) | the relevant context and operations of the conspiracies. |
|---|---|---|---|---|
| | | | • 7/31/18: Subhanah sent a message stating, "Alhamdullillah! [Thanks be to God!]  Verrrrrry soon, very soon Allah is going to declare the truth!! Subhanalla [Glory to God!], it's nothing you could ever guess sis! . . . Your heart will be so relieved . . . . You will be flooded with tears . . . If you think Allah was powerful before, sis, wait until Allah reveal the truth!" (App., Ex. 9.) | |
| | | | • 7/28/18: Jany writes Von, "We had all types of bad smells here . . . [JD 1] after 3 months . . . Then bucket of doodoo and pi . . . We were dying."  Von responds, "[JD 1] stopped after 3 months?"  Jany writes, "Didn't for first 3 . . . Another miracle."  (App., Ex. 14.) | |
| | | | • 8/2/18: Jany texted her brother, "7 more days." (App., Ex. 14.) | |
| | | | • 8/2/18: Jany texted her brother Von, "We r hiding cause they [Ibn's family] called FBI."  (App., Ex. 14.) | |
| | | | • 8/4/18: Jany texted Von, "IA [in sha'allah [God willing]] [JD 1] comes on Monday n it's all over . . . I think Monday may be the day iA."  (App., Ex. 14.) | |
| 16 | 156 | Siraj Wahhaj and Jany Leveille Statements on Alabama Lapel (Statements made on or about 12/13/17). | *Mistakenly says Exhibit 17 in Doc. 156.* 12/13/17:  Siraj told the Alabama State Trooper that he was traveling from Georgia to NM to go camping. There were nine people in the vehicle at the time of the accident; two adults and seven juveniles.  Siraj stated that the vehicle involved in the crash was owned by Jany.  Jany told the Alabama State Trooper that they | These statements are not offered for truth of matter asserted.  Their significance is only from the fact that they were made, not any assertion in them being true.  They are in furtherance of the conspiracies, and they are evidence of the conspiracies. |

| | | | were traveling from GA to NM to see land owned by Siraj's brother-in-law | They are not hearsay and are admissible against all Defendants. |
|---|---|---|---|---|
| 16a | 781 | Alabama Lapel – Siraj's Statements (Statements made on or about 12/13/17). | •     Additional statements by Siraj from the MVA, including false or misleading statements by Siraj about his employer, his cell phone number, his address, and the purpose of the Defendants' middle-of-the-night crash enroute to New Mexico (to go camping). <br> •     Siraj also made statements to the effect of being adamant not to leave his totaled vehicle, that his two teenage sons were not allowed to sit in officer's car to stay warm while waiting in the very cold winter night, that he was very concerned about the several firearms, ammunition, and body armor in the car while always remaining close to these items, and that he became upset when he was not allowed to take the weapons out of the car when the wrecker came to tow it. | These statements demonstrate the Defendants' world view with regard to law enforcement and were made in furtherance of the kidnapping as well as material support and murder of federal officer conspiracies by seeking to conceal the nature of the Defendants' concealment of JD 1 and transportation of him and the weapons to New Mexico.  As with other such statements, these statements are also non-hearsay verbal acts that evince the existence of the conspiracies and Siraj's participation and role in them, and would be offered by the United States not for their truth, but for the fact that they were made. |
| 16b | 781 | Alabama Lapel – Jany's Statements (Statements made on or about 12/13/17). | •     Jany made several statements about the nature and purpose of the Defendants' crash on the way to NM to Trooper Earnhardt at the hospital. <br> •     Jany's statements were inconsistent or conflicted with Siraj's statements on the same subjects, and are included in Trooper Earnhardt's lapel camera recording as well as his written report. | Jany's statements are admissible as non-hearsay both because they are coconspirator statements made in furtherance of the overlapping conspiracies (by stating that they lived in Georgia, not Alabama, and were traveling to NM to see Siraj's brother-in-law, but in vague and misleading terms so as to conceal JD 1's missing status and Siraj's wanted |

| | | | | status), and because the statements would not be offered by the United States for the truth of their assertions.<br><br>Rather, it is Jany's inconsistency and confliction with Siraj's statements that demonstrate the existence of the Defendants' kidnapping, material support, and attacking of federal officers conspiracies and their knowing participation on those conspiracies.<br><br>These statements are not offered for truth of matter asserted. Their significance is only from the fact that they were made, not any assertion in them being true. They are in furtherance of the conspiracies, and they are evidence of the conspiracies. They are not hearsay and are admissible against all Defendants. |
|---|---|---|---|---|
| 17 | 781 | Alabama Motor Vehicle Accident Reports (Statements made on or about 12/13/17). | See 16(a) and (b) above. | See 16(a) and (b) above. |
| 18 | 781 | Shooting Videos (All statements entirely within | •     Defendants engaged in firearms training on their homemade firing range at the compound. This training primarily involved Siraj coaching Morton, Farroll, and Jamil in firearms use, room clearing, rapid | In an abundance of caution, the United States provides notice here that it intends to use these videos, and the statements made in them, to prove |

| | | | | |
|---|---|---|---|---|
| | | charged timeframe). | reloads, drive by shootings, and other tactics, although the other Defendants and at least some of the girls also trained.  Some of these training sessions were recorded.<br>• In these recordings, Siraj and either Morton or Farroll make various statements, such as encouragement or instruction, that related to the trainings and tactical maneuvers and could arguably be deemed in furtherance of the material support and murder of federal employee conspiracies. | the existence and purpose of these conspiracies.  These videos and the statements made by the coconspirators in them are not assertions and will not be offered for their truth.  As such, they are admissible non-hearsay verbal acts indicative of the conspiracies' existence and purposes. |
| 19 | 781 | Facebook – Subhanah and Morton (Statements made prior to October 2017 will not be used; rest are non-hearsay evidence of conspiracy and were made during charged timeframe). | • Beginning shortly after JD 1's abduction, Subhanah repeatedly fended off concerned messages about JD 1's safety, telling others to "be patient," that they would all "soon understand" and to stop trying to reach or contact the Defendants about JD 1.<br>• In early Jan. 2018, at least two weeks after JD 1 had died in her presence at the compound in New Mexico, Subhanah posted several statements in response to messages seeking help finding the Defendants and JD 1, including calling concerns that they were missing "lies" and "deception."  Subhanah repeatedly stated that everyone in the Defendants' group was fine, that there was no need to worry, and that Allah would bring the truth to everyone soon.<br>• Finally, Subhanah and Morton (using Subhanah's Facebook account) made efforts at the end of July 2018 to obtain food and provisions for the Defendants without alerting the authorities to their location and urging that all will be revealed soon are still evidenced in her messages to a friend, this ultimately led to the TCSO's execution of the 8/3/18, search warrant at the compound, were also in | All of these statements, whether made by Subhanah or Morton or both, and similar statements, are admissible either as coconspirator statements in furtherance of the charged conspiracies, or as non-hearsay evidence of the existence and purpose of the conspiracies.<br><br>Primarily, the truth of the statements is irrelevant, as the significance of the statements is that they were made. Categorically, these statements are not hearsay and should be admitted as verbal acts and descriptive statements showing the continued existence of the conspiracies through and beyond August 3, 2018. Even if considered hearsay, the Defendants' continued concealment of the still-missing JD 1 and their whereabouts was during and in |

| | | | furtherance of the conspiracy and are admissible against all Defendants. <br>• This includes telling Morton's father not to feel sad about what was going on, and that everything coming up would happen in Allah's timing and for his reasons. <br>• This includes foreshadowing statements made by Morton to Morton's sister that the Defendants were "going through a major test from God to prepare to face the nation and their issues." | furtherance of the charged conspiracies. <br><br> Statements urging others to not worry about the dead and missing JD 1 being concealed by her and her coconspirators, and urging patience until the Defendants' plans of violent attacks on non-believers and corrupt institutions were revealed to the world, continued by Subhanah through June 2018, including telling Morton's father to not feel sad about what was going on, and that everything would happen in Allah's timing and for his reasons. <br><br> In seeking to further the conspiracies to kidnap JD 1 and conceal him from law enforcement and family members, as well as to foreshadow the coming revelation of JD 1's resurrection and divine status and the killing of those who disbelieved and those of corrupt institutions, including the FBI and military, that the Defendants were preparing for, Subhanah made several statements intending to disabuse others' notion that anything bad had happened to JD 1, even after he had died at the hands of the Defendants. The statements would satisfy the co-conspirator |

| | | | | exception to the hearsay rule even if they were hearsay as an initial matter, which they are not.<br><br>In addition, these statements are evidence of the Defendants' state of mind and evidence of the conspiracy's objectives. |
|---|---|---|---|---|
| 20 | 781 | Siraj Writings (Unknown date of creation, but likely within Defendants' time in Amalia, and not hearsay anyway). | • Notebooks written by Siraj contained handwritten entries that include several pages describing the phases of a terrorist attack, as well as another page of notes stating "the more you sweat in training, the less you bleed in war," and various pressure-weights needed to break different bones in the body. | These statements are relevant to, and corroborate, the Defendants' firearms training, the structure of their compound, and their plans to "go to war," as some witnesses from the compound put it, after JD 1 was resurrected and the truth would be revealed to the outside world. These writings further prove the existence and purpose of the charged conspiracies. The statements are not assertions and will not be offered for their truth.<br><br>As such, they are admissible non-hearsay verbal acts indicative of the conspiracies' existence and purposes. Even if hearsay, the statements were made in furtherance of the 2339A and 1117 conspiracies and would be admissible against all Defendants. |
| 21 | 781 | NYCPD Wahhaj Online Activity | • Early December 2017, without warning or notice to JD 1's caregiving mother Hakima, or to | This out-of-court statement is relevant to the charged conspiracies |

| (Statement made December 5, 2017). | anyone else, the Defendants hurriedly left Georgia to move to empty land in Tuskegee, Alabama, owned by Siraj.<br>•   12/5/17: Hujrah stated to her daughter's teacher that her daughter would not be returning to school due to a family emergency. | by demonstrating Hujrah's knowing and willing participation in the kidnapping of JD 1 and her knowledge and participation in the nascent conspiracy surrounding JD 1's status at the center of the Defendants' conspiracies to provide material support for their planned attacks on officers and employees of the United States and to kidnap JD 1.<br><br>The statement demonstrates that Hujrah had no plan to return to Atlanta, that she intended to leave with JD 1, to conceal him and to aid in concealing him, and to participate in the Defendants' agreement in continuing to take and conceal JD 1 as the Defendants transported JD 1 across state lines to AL and then NM, in line with Siraj's stated intention to never return JD 1 to his caregiving mother.  The statement is corroborated by other witness statements that Hujrah traveled with Siraj to the UK the month before and had also formed beliefs about black magic and the need to take JD 1 away from his mother, who was part of those doing the black magic.<br><br>This statement is a non-hearsay verbal act that evinces the existence |

| | | | | of the conspiracy and Hujrah's participation and role in it, and would be offered by the United States not for its truth, but for the significance of the fact that it was made. |
|---|---|---|---|---|
| 22 | 781 | Subhanah and Lucas - Statements to Family (All statements within charged timeframe (Nov or Dec 2017, after JD 1's abduction)). | • Subhanah and Morton also made statements or omissions indicative of the existence of the charged conspiracies and in furtherance of those conspiracies.<br><br>• Nov. or Dec. 2017: after JD 1 had been abducted from Hakima, Morton's sister Jessica spoke to Morton over the phone. Jessica mentioned all of the concerns about the missing JD 1 and heard Subhanah yell in the background that statements about JD 1's abduction were lies and that Jessica and Nina (Morton's mother) should not believe them.<br><br>• This is consistent with other evidence that, throughout the ongoing conspiracies, Morton and Subhanah maintained the perception by Morton's family that they were not with the other Defendants and were not involved in the missing JD 1, and put forth the narrative that they had merely moved to New Mexico as a family to pursue living off the grid in an earthship. Even through the end of July, when the two Defendants reached out to Morton's family for food assistance, they continued to maintain this perception, and after their arrests Morton would not talk about what was really going on at the compound. This is evidenced by Nina and Jessica's statements that they did not know anything about JD1 being with them in New Mexico | Primarily, the truth of the statements is not significant; the fact that they were made is significant, making the statements non-hearsay statements evincing the existence of the conspiracies and implicating all of the Defendants.<br><br>These statements and omissions are assertions intended to obfuscate and direct attention away from the Defendants' ongoing conspiracies in order to allow those conspiracies to come to fruition. Moreover, it is further evidence of concealment.<br><br>As such, they were made in furtherance of the conspiracies, and are admissible against all of the Defendants as non-hearsay.<br><br>Even if hearsay, the statements were made in furtherance of the charged conspiracies and would be admissible against all Defendants because they were made during the course of and |

| | | | | in furtherance of the conspiracies by a coconspirator. |
|---|---|---|---|---|
| 23 | 781 | Lucas Morton Statements to CCPD Detectives Stubbs and Porter (Made December 31, 2017). | • 12/31/17: Morton appeared in the Atlanta area to personally recruit another person to join the Defendants' conspiracies of the ongoing kidnapping of JD 1 and the material support for armed attacks to be carried out upon JD 1's resurrection. <br>• In addition to the letter, Morton made several statements to Muhammad and to law enforcement in furtherance of the overlapping conspiracies or evincing the existence of the Defendants' conspiracies. <br>• Statements include falsely claiming to the Georgia detectives investigating JD 1's abduction (who rushed to speak to Morton when they learned he was in Georgia) that he did not know where Siraj and JD 1 were, and that he did not remember where he drove all of the Defendants after he picked them up in Alabama after the crash. <br>• Morton also refused to provide an address or phone numbers to the Georgia detectives and stated "Ok" when told that he would be held accountable for concealing Siraj and JD 1's location or for assisting in the abduction of JD 1. | Primarily, the truth of the statements is not significant, indeed, the statements are false. Rather, the fact that they were made is significant, making the statements non-hearsay statements evincing the existence of the conspiracies and implicating all of the Defendants. <br><br>These statements and omissions are assertions intended to obfuscate and direct attention away from the Defendants' ongoing conspiracies in order to allow those conspiracies to succeed or come to fruition. <br><br>The statements were made on the occasion of the Defendants actively trying to recruit another coconspirator to join them in their conspiracies with a letter describing in detail the intended purposes and intent of the conspiracies. <br><br>The non-hearsay statements were made in furtherance of the conspiracies, and are admissible against all of the Defendants. |

| | | | | Even if hearsay, the statements were made in furtherance of the charged conspiracies and would be admissible against all Defendants because they were made during the course of and in furtherance of the conspiracies by a coconspirator. |
|---|---|---|---|---|
| 24 | 781 | Siraj Wahhaj Statements of Kidnapping (All statements within charged timeframe, beginning with abduction of JD 1). | • Siraj told Hakima and Jamella that JD 1 had the devil inside of him and that he wanted to have the "shaytans," "jins," or the devil removed from him.<br>• When Siraj told Hakima that he was going to take JD 1 to the park on or about November 30, 2017, he stated that he would bring JD 1 right back.<br>• However, Siraj never returned JD 1 to Hakima and Siraj told Hakima that he would not be giving JD 1 back.<br>• He also told Muhammad that he had attempted to perform exorcisms on JD 1 and that he intended to move to Tuskegee, Alabama, a couple of weeks prior to his abduction of JD 1. | These statements by Siraj demonstrate the existence of the Defendants' plan and agreement to abduct JD 1, for the purpose of keeping and concealing him in order to perform exorcisms and keep JD 1 away from his custodial parent, and to abscond across state lines with him.<br><br>Most of the statements are not offered for their truth. For example, that Siraj was going to take JD 1 to the park, or that JD 1 actually had the devil or jinns inside of him. These are verbal acts evidence and are therefore indicative of the kidnapping conspiracy and one of its purposes, and are not hearsay.<br><br>To the extent that any statements may be offered for their truth, such as whether Siraj did perform exorcisms on JD 1 as he stated to his brother Muhammad, the statement is still |

admissible as it was made by a coconspirator during the conspiracy, and it is in furtherance of the conspiracy because it provides moral justification and explanation as to why the conspirators had kidnapped JD 1 and would not be bringing him back.

The fact that Siraj cannot be charged with his role in the conspiracy to kidnap JD 1 does not erase his participation in the conspiracy.  Like any other unindicted coconspirator, his statements made in furtherance of the conspiracy are not hearsay.  *See Adkins*, 842 F.2d at 213 ("Rule 801(d)(2)(E) … says nothing about whether the co-conspirator has been indicted, and, for the rule to be applicable, it makes no difference.")

The statement by Siraj Wahhaj intending to move to Alabama is a classic statement of then-existing mental condition and intent, and is excepted from the hearsay exclusionary rule under Rule 803(3). However, the statement is also non-hearsay as to the other Defendants, as it is offered to show the existence of the Defendants' plan to carry JD 1 across state lines before they did it.

| | | | | The significance in the statement is that it was made, not that it is true as stated, and therefore is admissible non-hearsay. |
|---|---|---|---|---|
| 25 | 781 | Yusef "Von" Leveille Statements (All statements made to declarant during charged timeframe, though declarant repeated them after conspiracies ended; non-hearsay anyway). | • Von considered himself part of the Defendants' group. He referred to the group as "we," and told witnesses that he spoke with Jany just about every day and that he desired to join them in New Mexico but could not due to his location in Haiti.<br>• Much of this is corroborated by the messaging and Facebook activity between Jany and Yusuf, as previously provided in Exhibits 7-15.<br>• Von also provided material and financial support to the group, including sending items for the Defendants to use, such as a propane grill.<br>• Von was a follower of Jany's supposed prophet status and encouraged Jany's leadership and guidance of the Defendants in their ongoing conspiracies.<br>• After the Defendants were arrested, Von made several statements about his involvement with the Defendants' conspiracies to witnesses through Facebook from his home in Haiti.<br>• In addition, Von's statements on Facebook that, as a member of the conspiracy, he had read Jany's book or testament, and that Subhanah and Hujrah had helped Jany edit the book, is relevant to establish that Jany's book is not a personal "journal," but rather a religious testament and guiding text for the Defendants' entire group, meant to further the Defendants' conspiracies by providing justification, supplication, encouragement, rules, and a higher sense of purpose. | Von is an unindicted coconspirator. As such, his statements in furtherance of the conspiracies are also admissible under Fed. R. Evid. 801(d)(2)(E). *Adkins*, 842 F.2d at 213 ("Rule 801(d)(2)(E) … says nothing about whether the co-conspirator has been indicted, and, for the rule to be applicable, it makes no difference."); *McManaman*, 606 F.2d at 926–27. Many of the statements in Exhibit 25 are evidence of Yusuf's membership in the conspiracy to kidnap and conceal JD 1 and to provide material support for the group's plans once JD 1 was resurrected. As such, these statements are offered for the non-hearsay purpose of establishing his status as an unindicted coconspirator.<br><br>Von's statements are almost entirely offered for the non-hearsay purpose of the significance of their being made as describing the existence, scope, purpose, and make-up of the conspiracies. |

Von's statements further establish that Jany's book was part of the Defendants' conspiracy in that it sought to build up their status as a chosen group, Jany's status as a prophet, and JD 1's status as Isa, all in furtherance of the Defendants' overlapping conspiracies.

These statements are similar to statements by several children witnesses that they too were aware of the book and had read it or had it read to them by one of the Defendants, and statements by Lucas Morton that he had read the book and followed its dictates. Thus, within all of this context, Jany's testamentary book is a non-hearsay statement by a coconspirator, admissible against all of the Defendants. Von's statements helping to prove the book's nature and purpose, therefore, are also admissible, either as coconspirator statements or as non-hearsay evidence of the existence of the conspiracies.

The statement that Hujrah and Subhanah helped Jany edit her books is evidence of previous coconspirator statements from the Defendants to Yusuf during the course of the

| | | | | conspiracy, and evidence the purpose of Jany's book as a centerpiece in the Defendants' conspiracies. Thus, the evidence is non-hearsay both because it is not offered for the truth of the statement, but also because it would be a coconspirator statement made in the course of and in furtherance of the conspiracies. |
|---|---|---|---|---|
| 25a | 850 | Anas White Screenshots (All statements made to declarant during charged timeframe, though declarant repeated them after conspiracies ended; non-hearsay anyway). | • Von uses the term "we" and "us" to describe the Defendants and himself as a group. ("We all agreed on that" in response to a question of whether Jany Leveille was receiving word from Allah); (referring to the Defendants and himself as "all 6 of us"). <br> • Von also describes some of the roles each person had within the conspiracy (Subhanah's role was "to cook and clean everyday" "until the end,"; Jany's was to teach the group from the Quran, ("she.was.really our Qur'an teacher [*sic*]); and Hujrah's was to stay with and keep JD 1's dead body with her in her room at the compound until the group moved it into one of the tunnels underneath the compound). <br> • Von states, "My sister tells me everything and I mean no secrets." He shares that Siraj and Hujrah went to London just prior to the kidnapping of JD 1, and learned from a Shaikh that several black magic spells had been cast upon them both by people they later decided were Hakima and Jamella. He shares personal knowledge of the kidnapping of JD 1 as it was unfolding, including minute details of the Defendants' car crash in AL. He states "And just listen to why Ibn took [JD 1]" before describing details of Siraj's acts to | Corroborates conspiracy and Von as an unindicted coconspirator. <br><br> The statements show a deep, intimate knowledge by Von of events going on at the compound and his own support for them. <br><br> Perhaps most tellingly, he shares his knowledge of the Defendants' intent in their ongoing conspiracies. <br><br> The statements are not offered for their truth, and are categorically not hearsay. They are offered for the significance that they were made and that Von had all of the described knowledge of the conspiracies, including the other Defendants' world views and their roles in the conspiracies. As such, the statements are not hearsay and are admissible evidence against all Defendants. |

| | | | carry away JD 1 after he "managed to.get the mother out. [*sic*]"<br>•     "**They knew they were going to get arrested. They knew this would be world wide**. They knew that's how they will be known. They knew ppl would reject. They knew they would be in it by themselves."<br>•     Importantly, Von describes that "everyone" in the Defendants' group asked JD 1 whether his "mommy doing.something to u that you don't like, [*sic*]" whether someone was doing "magic" to him, and "more" questions like that, and that JD 1, who could not walk or talk, purportedly answered all of their questions by "shaking his head yes or no." This not only indicates one of the purposes of the kidnapping conspiracy (to take JD 1 away from his caregiving mother), but also that all of the Defendants had knowledge of this purpose of their carrying away and concealing of JD 1 from his caregiving mother. In other words, it describes the existence of the conspiracy charged in Count 6.<br>•     Von states that Defendant Jany called him "right away" after JD 1 died during one of the exorcisms the Defendants performed on him, and stated that "'Everyone is ok' with JD 1's death because he died during the exorcism, "So no one got sad."<br>•     Later, Von recounts discussions of the material support and killing federal officer conspiracies charged in Counts 1 and 3, stating that they would "discuss the way we think it will happen. It would actually happen differently then what we would discuss. Like example They would get caught or raid. Ibn would die. And [JD 1] wake and revive him." Even after the Defendants' arrests, Yusuf states that he still believes | Even if one statement, as noticed could be deemed offered for its truth and potentially hearsay, it is admissible as a coconspirator statement under (801(d)(2)(E)). The statement by Jany to her brother about no one being sad when JD 1 died during an exorcism was intended to comfort and encourage Von to remain in the conspiracies. As such, it was in furtherance and during the course of the conspiracies and is not hearsay. |

| | | | "something will go down" along the lines of the Defendants' plans for attacks on non-believers and corrupt institutions, and states "I keep advising on Facebook for ppl to read surat 71.  Nuah." | |
|---|---|---|---|---|
| | | | • Jany's statement to Von that "Everyone is ok. Because we know he [JD 1] died while ibn was reciting… So no one got sad" was made in the course of the kidnapping and material support conspiracies from one conspirator to another, and was made to further the conspiracies by encouraging the conspirators to continue and to view JD 1's death as a good thing that allow JD 1 to resurrect as his true self. This in turn allowed the Defendants to continue with their concealment of the kidnapped JD 1 and to continue their material support in preparation for attacks on federal officers and employees. | |
| 26 | 781 | Jany CYFD Interview (Statements made August 3, 2018). | 8/3/18: Jany, who was not under arrest at the time, was interviewed at  CYFD and asked when she last saw JD 1. She initially stated she last saw him with his mother at the prior years' Eid celebration, but then she abruptly stopped talking and stated, "No, that was not the last time," and refused to elaborate further. | When these statements were made, the whereabouts of JD 1 were still unknown to everyone but the Defendants and the children living at the compound. The statements are relevant to the Defendants' conspiracies and to the fact that the Defendants were trying to continue their conspiracies by hiding the abduction and death of JD 1 and in order for his expected resurrection to take place. The statements are admissible as non-hearsay because the statements are |

offered for the fact that they were made, and they were made in furtherance of the conspiracies with the intention of hiding the kidnapping and death of JD 1 and advancing the conspiratorial objectives of awaiting the resurrection of JD 1 in order to learn from him which corrupt institutions to target.  The statements are not offered for their truth, as the statements are deliberate false statements.

These admissions are offered to show consciousness of guilt and the Defendant's attempts to protect themselves and further the objectives of the conspiracy by not answering with any detail.  This is particularly true with regard to Jany's false statement that she last saw JD 1 at the prior year's Eid celebration.

No confrontation issue exists as to these statements because they are non-testimonial.  Rather, the questions from law enforcement are aimed at finding the missing JD 1.  Even if they were testimonial, the hearer of the statements will testify at trial and will satisfy the confrontation piece.  Otherwise, the statements are

| | | | | admissible non-hearsay or as non-verbal admissions. |
|---|---|---|---|---|
| 27a | 781 | Lucas Morton Statements in Sgt. Rael Report (Statements made August 3, 2018). | •      Officers advised Morton there was an arrest warrant for Siraj.<br>•      Morton said the warrant had nothing to do with him and that if he and the other Defendants got hurt, it would be the officers' fault.<br>•      He also said, "You guys think you are above the law, you guys are all going to get hurt, big time, I promise you." | See 26 above.  Also, all of these statements including about officers going to get hurt "big time" evidence the existence of the conspiracy to kill federal officers and all of the above referenced statements by the defendants about shooting law enforcement officers if they came to the compound.  The significance is the making of the statement, not its truth. |
| 27b | 781 | Lucas MortonStatements to OSI SA Torres (Statements made August 3, 2018). | Morton also told the officers that God had provided for them, watched over them, and was "calling the shots." Morton said he followed orders; if God asked him to not say anything, then "the best bet" was to not say anything; and that "some people think good is bad and some people think bad is good." | See 26 and 27a above. |
| 27c | 781 | Lucas Morton Statements to OSI SA Garcia (Statements made August 3, 2018). | Morton spoke of his beliefs about being spiritual, being a prophet, and about God and Jesus, and said the officers worked "against God" because they worked for the government. | See 26 and 27a above. |
| 27d | 781 | Lapel video – Lucas Morton statements to TCSO/OSI (Statements made August 3, 2018). | Morton spoke of his beliefs about being spiritual, being a prophet, and about God and Jesus, and said the officers worked against God because they worked for the government. | See 26 and 27a above. |

| 28 | 781 | ~~Morton Letter to BOP Dr. (Statements made post-arrest, but admissible as party opponent against Morton, and non-hearsay existence of conspiracy evidence as to other Defendants).~~ | • ~~Morton wrote a letter that describes the Defendants' world view, and the letter was given to the doctors who evaluated him for competency.~~<br>• ~~The letter identifies some of the Defendants' beliefs, including the belief that Jany was an end of times messenger.~~<br>• ~~It also describes the events that preceded the Defendants moving to NM in Dec. 2017, certain events that occurred while they lived at the compound (such as Morton trying to recruit others to join the group), and their eventual arrests.~~ | ~~Letter is further evidence of the existence of the Defendants' conspiracies.~~<br>~~Provides insight into the Defendants' motivations to conspire to kidnap and conceal JD 1, provide material support to terrorists, murder officers or employees of the United States, and help Jany illegally possess firearms.~~<br><br>~~The letter would not be offered to assert the truth of the matters asserted therein, and it is properly admissible as non-hearsay evidence pursuant to Rules 801(d)(2)(A) and (E) and as further evidence of the existence of conspiracies that allow other statements identified in this notice and the previous notice to be admitted as coconspirator statements.~~ |
| 29a | 781 | Hujrah, Subhanah, Jany Statments to TCSO (Statements made between August 3 and August 6, 2018). | • Jany, Hujrah, and Subhanah provided their names and the names of their children, but they would not share any information about JD 1's whereabouts.<br>• When questioned about JD 1, the women said, "He is not my son and I am not allowed to talk about him," although they did nod their heads when asked if JD 1 had been at the compound. The women also told officers, "You do not understand that we cannot talk about him," and they said they "were all of one" and had been warned not to talk to other men or law enforcement about JD 1. | See 26 and 27a above.<br><br>Also, the women's acts of nodding their heads to communicate JD 1 had been at the compound are also admissible as non-verbal admissions. |

| 29b | 781 | Siraj, Hujrah and Subhanah Wahhaj, and Jany Leveille Statements in Hogrefe Supplemental Report (Statements made between August 3 and August 6, 2018). | • Siraj refused to give officers his name or the names of anyone at the compound, and he refused to answer questions about JD 1's whereabouts.<br>• Jany, Hujrah, and Subhanah provided their names and the names of their children, but they would not share any information about JD 1's whereabouts.<br>• When questioned about JD 1, the women said, "He is not my son and I am not allowed to talk about him," although they did nod their heads when asked if JD 1 had been at the compound.<br>• The women also told officers, "You do not understand that we cannot talk about him," and they said they "were all of one" and had been warned not to talk to other men or law enforcement about JD 1. | See 26 and 27a above. |
| --- | --- | --- | --- | --- |
| 30 | 781 | Lucas and FARROLL Stmnts to OSI Cappelli (Statements made August 3, 2018). | • Morton also told the officers that God had provided for them, watched over them, and was "calling the shots."<br>• Farroll lied about his identity and said his name was Muhammed.   He estimated he last saw JD 1 two weeks earlier and said that JD 1 was safe.  After telling officers he and his brother were forced to dig the 100-foot tunnel, he was asked about JD 1 again, and Farroll did not say anything but instead changed the subject. | See 26 and 27a above.  Like the other false statements by the Defendants, Farroll's statements are also significant for their having been made and their demonstrable falseness (still, at that point, aimed at furthering the Defendants' conspiracies, as the Defendants had instructed the children to do).  Even the statements about the tunnel are not offered for their truth, but rather for the contrast with Farroll's refusal to say more about what was in the tunnel or where JD 1 was.  Thus, the statements are not offered for their truth and are therefore admissible non-hearsay. |

| 31 | 781 | 8/22/18 Jane Doe 2  Transcript (All possible hearsay statements made within charged timeframe (Oct 2017 – August 2018). | • Jane Doe 2 (Siraj and Jany's daughter) recalled Jany told the family they had to leave Georgia after Jany read the Quran.  They had to leave because they had bad neighbors who were using black magic to try to hurt and kill them. <br> • Before leaving Georgia, Siraj took JD 1 from Hakima while she was in the shower.  Siraj was glad God helped him take JD 1 from Hakima because he and others believed JD 1 was really Jany's son, but Hakima stole JD 1 from Jany's "stomach" by using black magic. <br> • It was after Siraj took JD 1 that Jany said they had to leave Georgia. <br> • The group first went to Alabama, but Jany said it was a curse to be there and Hakima was still doing magic on them. <br> • Jany told Siraj to recite on JD 1,  who died because he had "a lot of stuff inside of him." <br> • Jane Doe 2's understanding was that Siraj recited on JD 1 everyday as God instructed, but the boy died because Jany said God told Jamella Jihad to kill him. <br> • Jany said it was a test, but JD 1 would wake up again, and when he did, he would be Jesus. <br> • Jany said JD 1 would perform miracles, such as waking people from the dead, and then the group living at the compound would "go to the whole world" and "tell people a lot of good things." <br> • Jany said people would believe and bow to JD 1 because they would actually see him and the miracles. <br> • Jany said the police could not take JD 1 because they do not know the real story and because all of the Defendants would go to jail. | These out-of-court statements by defendants are relevant to the defendants' conspiracies and to the facts and circumstances surrounding JD 1's abduction, the reasons for this abduction, the establishment of the compound, the defendants' world view as articulated by Jany and others, and the defendants' plans and preparations for jihad. <br><br> The statements confirm that the children heard the Defendants talk and knew the Defendants' motivations and plans.  The statements are also further proof that the group cohesively worked together and that the Defendants conspired together to work toward their objectives, and they demonstrate the Defendants' frame of mind and the reasons they took the actions they did.  In other words, the statements are significant because of the fact that they were made, or were verbal acts, or are non-assertions demonstrating the existence, scope, and make-up of the conspiracies. As such, the United States maintains that the statements are not hearsay because the statements are not being offered for the truth of the matter asserted and/or |

| | | | •     Jane Doe 2 was also aware that the group was training for an expected war.  The group was training to shoot "bad people," who were supposed to die.<br>•     Jany predicted Morton would die in the war, and he and one of Jane Doe 2's brothers said they wanted to die in the war.<br>•     The group also spoke about how FBI was after them and how they would escape if police came.<br>•     The hole in the tunnel was built so they could escape into the world, which they would need to do if the police came and tried to take JD 1.<br>•     Jane Doe 2 said Siraj would sometimes be silly and tell jokes, and he said they would fight the police, that they could kill the police, and that he would use guns. | because the statements are co-conspirator statements. |
|---|---|---|---|---|
| 32 | 781 | 8/22/18 Jane Doe 3 Transcript (All possible hearsay statements made within charged timeframe (Oct 2017 – August 2018). | •     Jane Doe 3 (Hujrah's daughter) told agents the group had to leave Atlanta because someone was trying to kill them and that Jany read the Quran and advised they had to go to NM, the only safe place for them.<br>•     She heard JD 1 receive exorcisms and said he did not receive medicine because it was not helping and was making him sicker.  She asked about JD 1 the day after he died and was told, "It's no need for you to worry about it."  One of the women said she did not know JD 1 would die but that they "need[ed] to get all the jinns out."<br>•     The group thought JD 1 would be himself afterwards and that he was supposed to come back as Isa, or Jesus.<br>•     Jany said people, including people in Atlanta, were spreading a lie, but when JD 1 came back to life, they were supposed to tell others the truth. | See 1 above. |

| | | | | |
|---|---|---|---|---|
| | | | • The adults, particularly Morton and Jany, told them to not talk about what happened to Abdul Ghani.<br>• Morton used the code words "one" and "two" to signify whether or not there was danger, but Jane Doe could not remember which number meant danger and which meant no danger.<br>• The Defendants said they had to go to war and that Siraj "said that he really wanted to go to war."<br>• Jany spoke of the plan and said, "[I]t's better for them to start shooting" and that "it's better they start practicing cause . . . God will definitely help ya in the war."<br>• None of the girls or women would be fighting in the war, although Jany suggested they train with knives, but Siraj, Morton, and John Doe 2 would fight in the war.<br>• The Defendants and children talked about shooting police, and although Jane Doe 3 did not know the specifics of the plan, she knew the plan was to shoot police. When officers arrived in August 2018, the Defendants were going to shoot the police, but they did not.<br>• Jane Doe 3 was familiar with Jany's book that was written on the computer, and she said Jamil read the book to "them" and that she herself read the entire book.<br>• Although she initially did not think her mother, Hujrah, ever read the book, she recalled that Hujrah helped with the book. | |
| 33 | 816 | NMSP Dashcam Audio of Lucas | • Morton states to NMSP Officer Donis that he was entitled to live on the property because a court hearing was resolved in his favor. | Statements were made to further the charged overlapping conspiracies by misleading law enforcement about |

| | | Morton statements (All possible hearsay statements made within charged timeframe (Oct 2017 – August 2018). | • When asked how he came to live on the property, Morton stated he inherited it from his creator.<br>• Further, Morton made statements intending to convey to Officer Donis that he lived on the land with only his wife and children, and omitted any mention of Siraj Wahhaj, Jany Wahhaj, Hujrah Wahhaj, their several children, or JD 1. | who was on the land and whether they were properly on the land.<br><br>This in turn allowed the Defendants to continue with their concealment of the kidnapped JD 1 and to continue their material support in preparation for attacks on federal officers and employees.<br><br>Statements are non-hearsay admissions by a party-opponent as to Morton and are admissible against the other Defendants because they are not hearsay, as they will not be offered for the truth of the matter asserted.<br><br>Rather, the statements will be admitted for the purpose of showing that they were made and that they were intended to deceive Officer Donis to further the conspiracies. |
| 34 | 816 | NMSP Lapel of Lucas Morton statements (All possible hearsay statements made within charged timeframe (Oct 2017 – August 2018). | Same as 33 above. | See 33 above. |