IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cr. No. 18-2945 WJ |
| | ) | |
| JANY LEVEILLE, et al, | ) | |
| | ) | |
| Defendants. | ) | |

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT OBJECTIONS TO THE UNITED STATES' EXHIBITS

NOW COMES the United States and files its Response in Opposition to Defendants' Joint Objections to the United States' Exhibits (Doc. 895) (hereinafter "Defendants' Objections") and in support thereof would show as follows.

### I.      BACKGROUND

On March 13, 2019, the Grand Jury returned a seven-count superseding indictment against all five Defendants, alleging violations of 18 U.S.C. §§ 371 (Conspiracy to Commit an Offense Against the United States), 922(g)(5) (Possession of Firearms by a Person Unlawfully in the United States), 1117 (Conspiracy to Murder an Officer or Employee of the United States), 1201 (Kidnapping), 2339A (Providing Material Support to Terrorists), and 2339A (Conspiracy to Provide Material Support to Terrorists).   (Doc. 85.)   Subhanah and Hujrah Wahhaj are charged with all but Count 3 in the superseding indictment; Siraj Wahhaj is charged in all but Counts 6 and 7.   The conspiracy counts allege common facts, namely, among other things, that the Defendants sought to accomplish their conspiracies by gathering firearms and ammunition; by transporting personnel, firearms, and ammunition across state lines; by constructing and maintaining a training

compound; by storing firearms and ammunition in the training compound; and by constructing and maintaining a firing range and engaging in firearms and tactical training with other members of the compound.   (Doc. 85 at 2-3.)   The co-conspirators also are alleged to have committed a number of overt acts in furtherance of their conspiracies over a period of over one year.   Their alleged crimes took place across the country, taking them from Georgia to Alabama and from there to New Mexico, where they were ultimately apprehended.   The facts of this case are unusually complex, spawning discovery that is both varied and voluminous.   The discovery from which the body of exhibits is drawn includes:

a.   Numerous cell phone "dumps," each of which includes hundreds if not thousands of text messages, SMS messages, and other message formats, hundreds of photographs, videos, audio recordings, and tens of thousands of other digital records;

b.   Numerous social media accounts, including, but not limited to, Facebook, Google, and WhatsApp accounts, which include tens of thousands of records in various electronic formats;

c.   At least three computers which contain numerous documents, photographs, videos, audio recordings, and other digital records numbering in the thousands;

d.   Numerous handwritten journals; and

e.   Thousands of other documents related to law enforcement, financial, medical, judicial, and other matters relevant to the charged offenses.

Over the course of this lengthy prosecution, the Government has culled through these hundreds of thousands of records and other evidentiary items to arrive at an admissible core that represents the best evidence necessary to prove the offenses.   This effort, still ongoing, is

memorialized in the United States' Exhibit List.   (Doc. 860.)   Without question, this effort will continue up until and even during trial.   All of these exhibits have been made available to Defendants who have had months, if not years, to examine both the bulk of the admissible materials, but also the more specific items identified in the United States' Exhibit List.   There should be no doubt at this late stage of the prosecution as to what the evidence is.

Notwithstanding the foregoing, the Defense now lodges several broad objections to certain categories of exhibits.   Defendants categorize their objections as to: "1) exhibits for which the description is too vague, based on the volume of items contained within the exhibit or the lack of specific identifiers; 2) exhibits which are objectionable based on prior Motion(s) filed with the Court; 3) exhibits for which relevance is questionable; 4) digital exhibits that cannot be evaluated; and/or 5) exhibits for which proper foundation has not yet been demonstrated, and/or exhibits to which other objections apply, but which cannot be assessed without additional foundational information."   Defendants' Objections (Doc. 895) at 1.

The United States responds to these objections below and would show that they are premature and without merit.

## II.      ARGUMENTS AND AUTHORITIES

### A.   Relevance of the United States' Exhibits

All evidence that is relevant is admissible, and any evidence that is not relevant is not admissible. *See* Fed. R. Evid. 402.   The standard for relevance is very liberal.   *See United States v. Leonard*, 439 F.3d 648, 651 (10th Cir. 2006)("Rule 401 is a liberal standard.")(citing *United States v. McVeigh*, 153 F.3d 1166, 1190 (10th Cir. 1998)).   The evidence need have only "any tendency to make the existence of any fact that is of consequence to the determination of

the action more probable or less probable than it would be without the evidence."   Fed. R. Evid.

401.   *See United States v. Leonard*, 439 F.3d at 651.   "[A] fact is 'of consequence' when its

existence would provide the factfinder with a basis for making some inference, or chain of

inferences, about an issue that is necessary to a verdict," but it need only to have "any tendency"

to do so.   *United States v. Jordan*, 485 F.3d 1214, 1218 (10th Cir. 2007).   *See United States v.

Leonard*, 439 F.3d at 651.   Ultimately, the trial judge is the gatekeeper under the Rules of

Evidence.   *United States v. Jordan*, 485 F.3d at 1218.

Without contesting their relevance in any specific way, Defendants object to Exhibits 45,

48-58, 71, 72, 77, 80, 86-95, 97, and 100-109 on grounds of vagueness.   Specifically,

Defendants assert that these exhibits "contain too many items" and that Defendants therefore

"are unable to properly consider the admissibility of these items without the United States'

identifying the specific items that will be used as an Exhibit at trial."   Defendants' Objections

(Doc. 895) at 2.   As examples, Defendants point to Exhibit 71, TCSO and OSI photographs,

which number almost a thousand photographs, including photographs of writings.   Defendants'

Objections (Doc. 895) at 2.   They also object on grounds that they are unable to identify certain

exhibits having no Bates Number references, such as Exhibit 51, described as "three composition

notebooks," and Exhibit 58, described as "papers."   Defendants' Objections (Doc. 895) at 2.

By and large, the materials the United States designated as exhibits are identified by

reference to specific Bates numbers; these exhibits can be found quite easily simply by locating

the referenced Bates numbers.   In the context of Defendants' objections on grounds of

vagueness, such exhibits include Exhibits 71, 72, 77, 80, 86, 97, and 100-109.   United States'

Exhibit List (Doc. 860).   Some of these exhibits include only a few pages, some include

hundreds or even more.   Nonetheless, these exhibits are clearly and unambiguously identified.

While it may be cumbersome and time-consuming to examine these materials, there is no

question as to what they are.   It should also be evident on their face that they are relevant in

some form or fashion to the charged offenses.   For example, Defendants object to Exhibit 80,

John Doe's medical records, which number approximately 1,500 individual records.   These

records are relevant on their face for any number of obvious reasons, including because they

were provided to an expert who will be called to testify about John Doe's death.   These records

are voluminous, but they are clearly, unambiguously identified, and they are plainly relevant.

The same could be said about Exhibit 77 (Photographs – Weapons) and all of two pages of

Exhibit 86 (Regional Computer Forensic Laboratory Report).   To the extent that Defendants

question these exhibits' relevance, they make no argument as to why this may be the case.

Other exhibits are not identified by Bates number but rather are described according to

their apparent nature or characteristics.   Such exhibits include exhibits 45 (a small purse),

exhibits 48-58, comprising various writings, journals, and notebooks, and exhibits 86-95, which

comprise cell phone dumps.   The United States believes that the descriptions it provides for

each of these exhibits is sufficient to identify what each exhibit is, and these exhibits are

primarily in physical evidence.   Nonetheless, the United States has been working to arrange for

the Defense to view these items again, and it can confer with Defendants as soon as reasonably

practicable to specifically point out what these exhibits are and where to find them.   Other

exhibits in this group are obviously designated for purposes of establishing the authenticity and

reliability of other evidence.   For instance, the United States does not intend the jury to consider

all the information contained in the phone dumps, even though all of it arguably is relevant.

Rather, the United States would offer the phone dump in evidence only as necessary to establish the fact of the phone dump and the means by which the information contained in the phone dump was collected, managed, and maintained, all fact necessary to establish chain of custody.

Finally, there are a number of exhibits that encompass a body of evidence which by rights the United States could offer the jury en masse—Exhibit 71, photographs of the compound, for instance, made at or near the time of the events in question.   These exhibits are, again, clearly relevant and admissible.   Exhibits 72 and 97 also fall into this category.   While this evidence is admissible, the United States has no desire to overwhelm the jury and the Court in the admission of the entirety of these exhibits.   It therefore expects to select representative samples from these exhibits to offer into the record and in the meantime will amend its exhibit list to reflect the narrower scope of these exhibits.[1]

### B.   Matters Subject to Evaluation under *United States v. James*, 590 F.2d 575 (5th Cir. 1979)

Defendants also incorporate into their objections to United States' exhibits arguments they have made under *James*.   These objections reference Exhibits 46-47, 52-60, 96-99, and 112, as well as possibly Exhibits 48-51 and 100-110.   The United States concedes that exhibits, or parts thereof, that the Court concludes are not admissible as co-conspirator statements may be subject to being stricken, unless the United States can introduce them on other grounds or for

---

[1] In its discussion of its objection on grounds of vagueness, Defendants shoehorn in an unrelated objection. Namely, Defendants object to unspecified photographic and video exhibits that depict the residences and the compound made in the course of the execution of search warrants on grounds that the "objects being documented" are not "substantially the same condition as when the [alleged] crimes were committed."   *Quoting Gallego v. United States*, 276 F.2d 914, 917 (9th Cir. 1960).   The United States contests this characterization of the photographic and video evidence and would show that the photographs were made at or near the events in question. In any event, Defendants' objection on these grounds go to the weight of the evidence, not its admissibility, and is premature and best left to time of trial.

purposes other than as co-conspirator statements.   The United States incorporates herein the arguments it made in response to the Defendants' objections under *James* and reserves the right to assert admissibility of the exhibits on all appropriate grounds, notwithstanding the outcome of the *James* hearing.

### C.   Defendants' Objections for Lack of Obvious Relevance Are Without Merit and Are Premature

Defendants object to a category of evidence on grounds that their relevance is "dubious, at best."   Defendants' Objections (Doc. 895) at 3.   In this category Defendants put Exhibits 24-27, 44-45, 61, 65-67, 74-76, 78-79, and 85.   The United States' response to this objection is that the evidence *is* obviously relevant--admittedly, some exhibits more than others.   In any event, objections to these exhibits are premature and should await trial when only in the fullness of witness examination the relevance of the exhibits will be made apparent for all appropriate reasons.   Still, it is not difficult to see in advance why these exhibits are at least minimally relevant.

As Defendants point out, "exhibits must be relevant, at a minimum."   Defendants' Objections (Doc. 895) at 3.   The standard for "minimum," however, is very liberal and is a barrier easily overcome.   *Leonard*, 439 F.3d at 651 (standard for relevance is very liberal).   The standard does not require a party to show that certain evidence is obviously relevant.   Taking the exhibits to which Defendants object, one by one, it is very easy to establish the necessary minimally liberal threshold of relevance.   Exhibit 24 is a black tactical vest, and it is relevant, at the very least, as probative of Defendants' intent to conspire to provide material support for purposes of carrying out a violation of 18 U.S.C. § 2339A.   Indeed, the black tactical vest in itself constitutes material support—it is the very material supporting the predicate offense.   The

same analysis applies to establish the relevance of Exhibit 25, a green tactical vest; Exhibit 27, safety equipment to include vests, facemasks, goggles, and ear protectors; and Exhibit 44, a DVD showing how to make an assault rifle untraceable.   Exhibit 45, a purse, is relevant because it was used to conceal some other admissible evidence, e.g., a cell phone.   Exhibits 52 through 60, which include Defendants' writings, including Siraj Wahhaj's writings and his handwritten "phases of a terrorist attack," are relevant as probative of Defendants' knowledge, intent, and overall state of mind.   Exhibit 61, Georgia court documents and orders, including documents and orders reflecting the ongoing Georgia criminal investigation of Defendants and requiring the immediate surrender of Abdul-Ghani Wahhaj, are relevant, among other reasons, to show the unlawfulness of Abdul-Ghani's taking and detention by Defendants.   Exhibit 65, the Taos County Sheriff's Office lapel video, is relevant, among other reasons, because it records the law enforcement raid on the compound and the Defendants' conduct and statements at the time.   A similar analysis applies to Exhibit 66, New Mexico State Police lapel and audio recordings of an encounter with Lucas Morton.   Exhibit 67, photographs of the Alabama residence, are relevant at a minimum as a comparison with the New Mexico compound, especially as relates to use of tires as a building material, potentially debunking Defendants' contention that use of these materials was consistent with Earthship construction.   Exhibits 74-76 are photographs of the compound, persons, and activities relevant to the charged offenses.   Exhibits 78 and 79 are maps and diagrams of the compound site and relevant to show its layout, construction, and purposes. Exhibit 85 is Jany Leveille's immigration A-file; it shows that she was not legally in the United States at the time of the charged offenses, an element of one of the charged offenses.

Granted, while the relevance of some of the exhibits summarized above is glaringly

obvious, e.g., tactical vests and the A file, the relevance of other exhibits may not be so apparent.

For example, on the face of it, it may not be clear what it is about Exhibit 26, ten hard hats, that

is probative of an issue to be submitted to the trier of fact.   Nonetheless, at a minimum, the

United States should have the opportunity at trial to flesh out the relevance of the hard hats,

perhaps by showing that it was safety gear worn by children digging tunnels and "spider holes"

or used for some other reason indicative of Defendants' criminal purposes.   The United States

should have the opportunity at trial to establish the relevance of each of the exhibits and a chance

to offer these exhibits to the jury for all appropriate purposes.   Defendants' objections on

grounds of relevance are therefore premature.

### D.  Relevance of Voluminous Digital Records and Electronic Devices

Defendants object to Exhibits 86-95 and 100-109, which they describe as "huge

collections of digital data obtained from electronic devices and/or third-party provider

repositories."   Defendants' Objections (Doc. 895) at 4.   For good measure, Defendants include

the electronic devices themselves, Exhibits 28-43, from which the information contained in

Exhibits 86-95 and 100-109 likely was obtained, into this objection.   The objection itself is that

"[t]here is simply no likelihood that all of these items are going to be admitted at trial, or that

they would be relevant to the matters at issue if they were admitted."   Defendants' Objections

(Doc. 895) at 4.   This is not a proper objection.   Applying the liberal standard of relevance

discussed above, it is not difficult to show how all these exhibits are relevant.   Without

belaboring the issue, some of the exhibits, specifically Exhibits 28-43 are admissible, at the very

least, to establish the chain of custody of the relevant information contained on them.   Exhibits

86-95 are relevant for similar reasons, but also because of the content contained therein.
Exhibits 100-109 are relevant in terms of establishing Defendants' location, their
communications, the frequency of their communications, who they communicated with, and the
content of their communications.   All of this evidence will be introduced through competent
witnesses having the knowledge, experience, and ability necessary to summarize this information
in a format useful for a juror.   Whatever the case, Defendants' objections should await trial and
are premature at this juncture.

### E.  General Objections to Foundation, Authenticity, and Admissibility Are Premature

Defendants lodge a final, all-encompassing, grab-bag of objections to all the exhibits on
grounds that "there has been insufficient foundation laid to demonstrate their provenance,
authenticity, accuracy, and admissibility generally" and they "wish to preserve all objections that
they may have," including relevance, hearsay, cumulative evidence, waste of time, tending to
cause confusion, misleading, unfairly prejudicial, or subject to any number of conceivable
privileges.   Defendants' Objections (Doc. 895) at 4-5.   As they concede, Defendants can raise
these objections at "such time as the requisite admissibility determination can be made."
Defendants' Objections (Doc. 895) at 4-5.   "Such time," of course, means at trial, not now.   All
these objections are premature, and Defendants have done nothing to establish their applicability
at this time.

### III.    CONCLUSION

In sum, Defendants have failed to show that the United States' exhibits are not relevant or
inadmissible for any other reason.   The United States stands ready and willing to offer
Defendants any clarification necessary to facilitate identification and examination of the noticed

Exhibits and will endeavor, to the extent possible, to narrow the scope of the evidence in the interests of judicial economy.   However, Defendants have established no reason why their objections to the United States' exhibits should be sustained at this time.   Defendants' objections should therefore be overruled.

Respectfully submitted,

ALEXANDER M. M. UBALLEZ
United States Attorney


*Electronically Signed*
KIMBERLY A. BRAWLEY
TAVO HALL
Assistant United States Attorney
Post Office Box 607
Albuquerque, New Mexico 87102
(505) 346-7274

GEORGE C. KRAEHE
Trial Attorney
Counterterrorism Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC   20530


CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2023, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon defense counsel. A hard copy will be mailed to Defendants Siraj Wahhaj and Lucas Morton at their addresses of record.

*Electronically Signed*
Kimberly A. Brawley
Assistant United States Attorney