IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                   No. 1:18-cr-02945-WJ

JANY LEVEILLE, et al,

      Defendants.

### DEFENDANTS' CLOSING ARGUMENTS IN SUPPORT OF EXCLUSION OF CERTAIN PROFFERED *JAMES* STATEMENTS

Defendants, Jany Leveille, Siraj Wahhaj, Lucas Morton, Subhanah Wahhaj, and Hujrah Wahhaj, through their respective counsel of record, respectfully move the Court to exclude some of the United States proposed co-conspirator statements on Sixth Amendment grounds and/or because they do not qualify as non-hearsay pursuant to Federal Rule of Evidence 801(d)(2)(E). In further support, Defendants incorporate the arguments made in their Responses, Docs. 819 and 836, and further argue as follows:

1.  On March 13, 2019, a grand jury returned a 7-count Superseding Indictment, *see* Doc. 85, charging all five Defendants in the following conspiracies:

    a.  Conspiracy to Provide Material Support to Terrorists ("The Terrorism Conspiracy");

    b.  Conspiracy to Commit an Offense Against the United States ("The Firearm Conspiracy"); and

    c.  Conspiracy to Commit Kidnapping ("The Kidnapping Conspiracy")

2.  Defendants Leveille, Siraj Wahhaj, and Lucas Morton were also charged in Count 3 with Conspiracy to Murder an Officer or Employee of the United States.

*Id.*

3. All four conspiracies are alleged to have occurred sometime between October 2017 and August 2018, although the United States' case agent has been evasive regarding when the kidnapping conspiracy began.

4. On February 3, 2023, Defendant Subhanah Wahhaj filed a Motion for Production of Alleged Co-Conspirator Statements and for Pre-trial Hearing on Their Admissibility. Doc. 606.

5. In several separate filings, the United States has submitted proposed co-conspirator statements, which it alleges were made in furtherance of the four conspiracies. S*ee* Notices [Docs. 156, 157, 782, 816 and 850], and at the *James* hearing on July 19, 2023.

6. On June 25, 2023, Subhanah Wahhaj, joined by the other Defendants, filed a Response in Opposition to the Government's Sealed Supplemental Briefing Regarding Co-Conspirator Statements (Doc. 819)

7. On July 7, 2023, Hujrah Wahhaj, also joined by the other Defendants, filed Objections to the Government's Briefing (Doc. 836).

8. At the *James* hearing, the Government narrowed the universe of statements it seeks to admit as "co-conspirator statements" to those listed on pages eight to 24 of its summary exhibit, proffered at the *James* hearing as Exhibit 35.

## I.    Introduction

It is clear, based upon Agent Taylor's testimony at the *James* hearing, that many of the proffered "co-conspirator statements" do not qualify as non-hearsay pursuant to Federal Rule of Evidence 801(d)(2)(E) or are otherwise inadmissible, in many cases because their admission would violate Defendants' Sixth Amendment rights. As the Court

has noted, the Government has the burden to provide "some evidence independent from the alleged co-conspirator statements linking the Defendants to the conspiracy or conspiracies charged" Transcript of 7/19/23 James Hearing ("Transcript") at 7:4-7. And in determining whether a conspiracy exists, the district court is free to look at all evidence, including the putative hearsay statement. *See Bourjaily v. United States*, 483 U.S. 171, 175-80 (1987).

The Government misconstrues the requirement to affirmatively demonstrate that those statements, "offered [at the James hearing] as proof of the existence of the conspiracy, the purpose, and the members of the conspiracy" are definitionally "non-hearsay statements, or evidence of the existence of the conspiracy" to contend that the independent evidence of each conspiracy is also, without exception, admissible at trial. *Id.* at 7:12-20; Ex. 35 (stating throughout that statements are admissible as "non-hearsay evidence of conspiracy." The Government's position is contrary to law.

This assertion by the United States, however, if credited, would function as an end-run around the Rules of Evidence. Rule 801(d)(2)(E) sets forth a mechanism for admitting certain statements which would otherwise be excludable hearsay. The predicates for admissibility of those statements is not a subject of dispute. And while the United States receives a certain amount of leeway in what it proffers to prove the existence, personnel, and scope of a conspiracy in order to meet its burden under James, it still must independently establish the admissibility of such evidence under the Rules of Evidence at trial. The United States' proposed approach would permit prosecutors to allege conspiracies and then use those alleged conspiracies as a vehicle to admit otherwise inadmissible evidence at trial. The Court should require that every piece of evidence presented at trial be admissible under the Rules of Evidence.

Defendants do not offer argument here (but also do not wave their objections) in response to the Government's many stated bases for admissibility apart from the arguments that the proffered statements are co-conspirator statements. The United States submits that many items of evidence and statements discussed in the course of the James litigation are admissible under other theories which should be addressed separately.

Rule 801(d)(2)(E) contains four possible bases for objection, all of which are addressed below: (1) that the declarant was not a co-conspirator, (2) that the party against whom the statement was offered was not a co-conspirator, (3) that the statement was not made in the course of the conspiracy, and (4) that the statement was not in furtherance of the conspiracy. *See, e.g., United States v. Burton*, 126 F.3d 666, 673 (5th Cir. 1997).

Defendants respectfully request that the Court reserve ruling, until it can ascertain the context at trial, as to whether any of the proffered statements are in fact inadmissible as non-hearsay or pursuant to hearsay exceptions other than the one reserved for co-conspirator statements.

This brief addresses the admissibility of the proffered co-conspirator statements contained in the Government's summary exhibit, Doc. 929-1, which is a narrower group of statements than what the Government proffered prior to the *James* hearing and detailed in briefing. *See* 929-1; Transcript at 7:14-21; 101:5-14 (explaining that pages 8-23 and 30-34 of Exhibit 35 are highlighted in blue to indicate that they are not being offered as co-conspirator statements but instead for other purposes including to prove the existence and contours of the conspiracies).

In anticipation of the *James* hearing, the Court ordered the Government to supplement its proffered co-conspirator statements and to file a document including: "(i)

The content of each alleged co-conspirator statement; (ii) When the statement was made, the identity of the co-conspirator who made it, and the identity of the person or persons to whom the statement was made; (iii) Argument, with citations to evidence and authority, concerning whether the statement was made during the course of the conspiracy; (iv) Argument, with citations to evidence and authority, addressing whether the statement was made in furtherance of the conspiracy; (v) Argument, with citations to evidence and authority, concerning whether the alleged conspiracy existed; (vi) Argument, with citations to evidence and authority, addressing whether Defendant and the declarants were members of the alleged conspiracy . . . ."  *See* Doc. 750 at 2-3.

In response, the Government did not follow the Court's explicit order but instead filed additional notices listing broad categories of information (witness statements including statements of defendants' children, videos and writings of Siraj Wahhaj and Lucas Morton, Defendants' alleged social media communications, and various recorded and unrecorded communications.) *See* Doc. 781; Doc. 929-1.  The Government went on to argue that the statements are admissible at trial for any number of reasons, either because "they are not subject to the hearsay rule, are admissions by party opponents, are co-conspirator statements, and/or are verbal acts evincing the existence of a conspiracy," *id.* at 15, leaving the defense and the Court to guess which particular statements the Government might later assert are co-conspirator statements, and otherwise, which one of a litany of other evidentiary bases the Court should rely on to properly admit them. *See* Doc 929-1 (listing numerous stated reasons for admissibility).

The Government asks the Court to rule that the below *categories* of statements are co-conspirator statements, although it has not indicated either in briefing or at the *James* hearing, exactly which statements it posits were made, by which declarants, at what times

and in furtherance of which conspiracies. The Government does not excerpt particular statements with regard to which the defense and the Court could then properly consider the evidentiary basis for admission as co-conspirator statements but instead offers whole transcripts of witness statements and whole volumes/texts (Jany Leveille's alleged book for instance). Given the state of the Government's submission, the Court lacks the detail and structure it requires to make specific findings as to when each conspiracy began and ended (if it finds there was in fact a conspiracy in each case), whether each of the Defendants was a part of each conspiracy, and precisely which statements were made in furtherance of which conspiracies at which times. Given the Government's failure to provide the requisite detail, Defendants respectfully request that the Court decline to admit any of the proffered statements as co-conspirator statements. *See Bourjaily*, 483 U.S. at 175 ("Before admitting a co-conspirator's statement over an objection that it does not qualify under [the Rule], a court must be satisfied that the statement actually falls within the definition of the Rule. There must be evidence that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made "during the course and in furtherance of the conspiracy.")

The below list of exhibits includes the defense arguments against admission pursuant to Federal Rule of Evidence 801(d)(2)(E), each of which is explored in further detail in the body of this brief. Generally speaking, with respect to each category of statements, the Court has no basis to admit statements as co-conspirator statements in furtherance of the "Kidnapping Conspiracy" or "Firearm Conspiracy," because neither existed. The Court also has no basis to admit statements as co-conspirator statements in furtherance of the "Terrorism Conspiracy" because the object of that conspiracy could only be achieved upon the resurrection of AG, making it impossible to achieve.

Additionally, any proffered *James* statements not made by Subhanah Wahhaj are inadmissible against her because the Government has not met its burden to show that she was a member of any conspiracy.  Similarly, Hujrah Wahhaj contends that proffered James statements not made by her are not admissible against her for the same reasons.

- **8/18 Farroll Louis-Jacques Transcripts – Govt exhibits 1, 1a-d (_See_ Doc. 929-1 at 1-4)**

  o Inadmissible pursuant to 801(d)(2)(E) because the Government has failed to meet its burden to prove the child's statements are not testimonial and that they are made based on personal knowledge of the Defendants' alleged co-conspirator statements.  The interviews of Farroll, Jamil, and Jane Does 1, 2, and 3, all present an insurmountable double hearsay problem for the United States.  Even if any part of those interviews contained admissible *James* statements, the interviews, in their entirety, are testimonial out of court statements which are basic hearsay with no applicable exception and excludable pursuant to the Confrontation Clause of the Sixth Amendment.

  o Inadmissible to the extent they include mere narratives and idle chatter.

  o Inadmissible because the Government has not demonstrated that the statements were made after the relevant conspiracies began.

- **Jamil Louis-Jacques Transcript – Govt exhibits 2, 2a-b (_See_ Doc. 929-1 at 4-7)**

  o Inadmissible pursuant to 801(d)(2)(E) because the Government has failed to meet its burden to prove the child's statements are not testimonial and that they are made based on personal knowledge of the Defendants' alleged co-conspirator statements.

- o Inadmissible to the extent they include mere narratives and idle chatter.

- o Inadmissible because the Government has not demonstrated that the statements were made during the duration of the relevant conspiracies.

- **Jane Doe 1 Transcript – Govt exhibit 3 (<u>See Doc. 929-1 at 7-8</u>)**

  - o Inadmissible pursuant to 801(d)(2)(E) because the Government has failed to meet its burden to prove the child's statements are not testimonial and that they are made based on personal knowledge of the Defendants' alleged co-conspirator statements.

  - o Inadmissible to the extent they include mere narratives and idle chatter.

  - o Inadmissible because the Government has not demonstrated that the statements were made during the duration of the relevant conspiracies.

- **"Jany's Book and Writings" – Govt Exhibits 4 and 5 (*See* Doc. 929-1 at 8-10)[1]**

  - o Inadmissible to the extent the writings include mere narratives and idle chatter, including, for example, the group's rules regarding diet, hygiene and sex.  Wholesale admission of Jany's books is out of bounds for various reasons, not the least being Rule 403.  Many of the writings focus on spiritual beliefs and practices and cannot be said to contain or convey plans of any kind.

  - o Inadmissible because the Government has not demonstrated that the statements were made during the duration of the relevant conspiracies.

---

[1] These pages are highlighted in blue, indicating per the Government's explanation at the hearing that the contents are not offered as co-conspirator statements; however, the text states "[t]he book is also a set of statements made during the course of the conspiracy, and the statements are in furtherance of the conspiracy," so, out of an abundance of caution, the defense also argues against the admission of the contents as co-conspirator statements.

- **Letter to Muhammed – Govt Exhibit 6 (_See_ Doc. 929-1 at 10-11)[2]**

  o Inadmissible as co-conspirator statements because the author of the letter is unknown and it was delivered to Muhammed Wahhaj, who the Government does not even allege was a co-conspirator.

- **Siraj Wahhaj Statements of Kidnapping – Govt Exhibit 24 (_See_ Doc. 929-1 at 24-25)**

  o Inadmissible as co-conspirator statements because Mr. Wahhaj cannot legally be an unindicted co-conspirator.

  o Inadmissible because the statements were not made to alleged co-conspirators and in almost every case cannot have been thought to advance the Kidnapping Conspiracy. For instance, Mr. Wahhaj's alleged statements to the child's mother that the child had the devil inside of him and to Muhammad that he had attempted to perform exorcisms on the child cannot be seen to have aided the Kidnapping Conspiracy.

- **Yusef "Von" Leveille Statements and Anas White Screenshots (of messages with Yusef) – Govt Exhibit 25 (_See_ Doc. 929-1 at 26-30)**

  o Inadmissible to the extent the writings include mere narratives and idle chatter.

  o Inadmissible because the Government has not demonstrated that the statements were made during the duration of the relevant conspiracies and the Government concedes that Yusuf made the vast majority of statements after the conspiracies had ended.

---

[2] These pages are also highlighted in blue; however, the text states "[the letter] was made by a coconspirator during the course of and in furtherance of the conspiracies," so, out of an abundance of caution, the defense also argues against the admission of the contents as co-conspirator statements.

- **8/18 Jane Doe 2 Transcript – Govt Exhibit 31 (_See_ Doc. 929-1 at 34-35)**

  o Inadmissible pursuant to 801(d)(2)(E) because the Government has failed to meet its burden to prove the child's statements are not testimonial and that they are made based on personal knowledge of the Defendants' alleged co-conspirator statements.

  o Inadmissible to the extent they include mere narratives and idle chatter.

  o Inadmissible because the Government has not demonstrated that the statements were made during the duration of the relevant conspiracies.

- **8/18 Jane Doe 3 Transcript – Govt Exhibit 32 (_See_ Doc. 929-1 at 35-37)**

  o Inadmissible pursuant to 801(d)(2)(E) because the Government has failed to meet its burden to prove the child's statements are not testimonial and that they are made based on personal knowledge of the Defendants' alleged co-conspirator statements.

  o Inadmissible to the extent they include mere narratives and idle chatter.

  o Inadmissible because the Government has not demonstrated that the statements were made during the duration of the relevant conspiracies.

## II. The Court Should Exclude the Statements That Constitute Inadmissible Testimonial Hearsay

As was true prior to the _James_ hearing, and as Defendants have briefed, _see, e.g._, docs. 819 and 836, the Government has failed to demonstrate that a number of the proffered statements 1) were made in the course and scope of any one of the alleged conspiracies, or rather before or after; 2) were in fact witnessed by individuals who actually had personal knowledge of the statements and did not actually hear them through a third party, making them statements hearsay within hearsay, and 3) were made in

furtherance of any of the four separate conspiracies alleged. *See* Amended Motion for Production of Alleged Co-Conspirator Statements, at 1-2 [Doc. 606] (discussing the different conspiracies].

The Confrontation Clause promises that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, the Supreme Court held that under the Confrontation Clause, "[t]estimonial statements of witnesses absent from trial [are admissible] only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." 541 U.S. 36, 59 (2004). "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution prescribes: confrontation." *Crawford*, 541 U.S. at 68–69; *See also Davis v. Washington*, 547 U.S. 813, 822, 830 (2006) (further describing that the difference is between a statement as to "what happened," which is testimonial, rather than a statement about "what is happening," which is nontestimonial).

The Tenth Circuit has further clarified the testimonial versus nontestimonial distinction, indicating that a statement "is testimonial if a reasonable person in the position of the declarant would objectively foresee that the primary purpose of the statement was for use in the investigation or prosecution of a crime" or put a slightly different way, "if a reasonable person in the position of the declarant would objectively foresee that the primary purpose of the statement was for use in the investigation or prosecution of a crime." *United States v. Smalls*, 605 F.3d 765, 778 (10th Cir. 2010).

In essence, the testimony at the *James* hearing clearly demonstrated what Defendants have previously argued in the briefing, that, with respect to many of the statements, the Government either intends to put on evidence of Defendants' childrens'

witness statements through law enforcement, which would blatantly violate the confrontation clause, or to call the children at trial, in which case it hasn't clearly demonstrated that the children learned of the statements directly from Defendants. Even after the James hearing, perhaps because the Government only called Agent Taylor, the Government cannot demonstrate the source or reliability of the statements that would be elicited through Defendants' children, and it remains unclear whether the children have any personal knowledge of the alleged statements of co-conspirators. The Court should therefore deny the Government's attempt to introduce any and all of the statements contained in Exhibits 1, 1a-d, 2 because the Government has altogether failed to meet its burden to prove that they are *not* testimonial and that they are otherwise admissible pursuant to a hearsay exception. *See, e.g.*, *United States v. Jackson*, 636 F.3d 687 (5th Cir. 2010)(holding that it constituted a violation of the Confrontation Clause to allow the introduction of a co-conspirator's drug ledgers that implicated the defendant under the Business Records exception to the hearsay rule and as a co-conspirator statement where a DEA agent's testimony did not satisfactorily authenticate the records, or establish the necessary foundation that these records were kept in the regular course of business or that they were prepared during the course of the conspiracy.); *Burns v. Bd. of Cnty. Com'rs of Jackson Cnty.*, 330 F.3d 1275, 1284 n. 5 (10th Cir. 2003) ("Hearsay within hearsay is admissible only 'if each part of the combined statements conforms with an exception to the hearsay rule.'") (quoting Fed.R.Evid. 805).

Because the statements of the children, Farroll and Jamil Louis-Jacques and Jane Does 1, 2 and 3 are all comprised of statements which are inadmissible as testimonial hearsay as they were all taken by law enforcement in furtherance of the Government's investigation of terrorism charges against Defendants, after Defendants had been taken

into custody, and because the Government has not shown that they are subject to any hearsay exception, they should be excluded.

### III.   Any and All Co-Conspirator Statements Allegedly Made In Furtherance of the Kidnapping Conspiracy Are Inadmissible

#### A. Defendant Siraj Wahhaj Cannot Legally Be an Unindicted Coconspirator

The federal kidnapping statute at 18 U.S.C. § 1201 applies to "whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, *except in the case of a minor by the parent thereof . . .*" § 1201(a)(emphasis added). The federal kidnapping statute, therefore, specifically excludes from the violation of the statute the taking, even unlawfully, of a child by the child's parent. A parent taking his child from one state and driving into another state, no matter how unlawful, expressly does not constitute a violation of the federal kidnapping statute. *Id.*

It is well-established that a conspiracy consists of "an agreement among the defendants to do something which the law prohibits." *United States v. Hedgepeth*, 418 F.3d 411, 420 (4th Cir. 2005). Mr. Wahhaj cannot be charged with a violation of the federal kidnapping statute under the express language of that statute. *See United States v. Chatwin,* 326 U.S. 455, 460 (1946) ("The act of holding a kidnapped person for a proscribed purpose necessarily implies an unlawful physical or mental restraint for an appreciable period against the person's will and with willful intent so to confine the victim. If the victim is of such an age and mental state as to be incapable of having a recognizable will, the confinement then must be *against the will of the parents or legal guardian of the victim*.") *(emphasis added); United States v. Boettcher*, 780 F.2d 435, 436-37 (4th Cir. 1985)*(*Immunity under federal kidnapping statute in favor of a parent

kidnapping his or her own minor child extends to aiding and abetting by the parent in such kidnapping or in his or her participation in conspiracy to kidnap the child); *Salinas v. United States*, 522 U.S. 52, 65 (1997) (noting a well-established principle for conspiracy that "a conspirator must intend to further an endeavor which, if completed, would *satisfy all of the elements of a substantive criminal offense*" (emphasis added)); *United States v. Collazo*, 984 F.3d 1308, 1318 (9th Cir. 2021) (noting that "[t]he Supreme Court has established that 'in order to sustain a judgment of conviction on a charge of conspiracy to violate a federal statute, the Government must prove at least the degree of criminal intent necessary for the substantive offense itself.'")(citing *United States v. Feola*, 420 U.S. 671, 686 (1975)); *See also United States v. Miselis*, 972 F.3d 518, 529 (4th Cir. 2020) (Holding that one cannot conspire to commit a statutory violation where the statute itself is unconstitutional "because the object of an agreement can't be unlawful if the statute defining it is unconstitutional, it follows that no prosecution for conspiracy to commit that offense will lie.")(internal quotation marks and citation omitted).

In *Boettcher*, the Fourth Circuit Court of Appeals carefully and correctly analyzed the plain language and legislative history of the federal kidnapping statute (18 U.S.C. § 1201(a) (1983), concluding that "[t]he obvious purpose of such restricted scope for that crime ("for reward or ransom") was to eliminate from the statute's coverage the kidnaping, conspiracy to kidnap or aiding and abetting in the kidnaping by a parent of his or her child." *Boettcher*, 780 F.2d at 436. Defendants respectfully request that the Court adopt this analysis and conclude that, as the statute dictates, under these circumstances, Mr. Wahhaj cannot be indicted for the charge of kidnapping and thus cannot be an "unindicted co-conspirator" to the alleged crime of kidnapping under these circumstances.

To be sure, there are cases where an individual who cannot be held liable under a given federal statute still may be capable of conspiring to violate the statute. *See, e.g., United States v. Hoskins*, 902 F.3d 69, 98 (2d Cir. 2018)(holding that the district court erred in concluding the defendant was incapable of conspiring to violate the Foreign Corrupt Practices Act because, although he was never in the United States and was not in the category of persons directly covered by the statute, the government intended to prove that he acted as an agent of a domestic concern liable as a principle for the substantive FCPA counts); *Salinas v. United States*, 522 U.S. 52, 64 (1997) (The defendant "may be liable for conspiracy even though he was incapable of committing the substantive offense.") In *Hoskins*, the Second Circuit Court of Appeals examined the legislative history of the FCPA and concluded that there was "no affirmative legislative policy to leave [the defendant's] conduct unpunished" and that holding him liable for the conspiracy would not require an improper extraterritorial application of the FCPA. *Id.*  The same cannot be said of the federal kidnapping statute, which clearly embodies an affirmative legislative policy to exempt parents from prosecution. *See, e.g., Gooch v. United States*, 297 U.S. 124, 126-127, 129 (1936) (explaining and construing the Dyer Amendment, which created the parental exception); *United States v. Sheek*, 990 F.2d 150 (4th Cir. 1993)(holding that, that the protections of 18 U.S.C. § 1201, by the letter of the law, extended even to biological parents whose rights had been formally and definitively terminated); *United States v. Gregg-Warren*, 2019 WL 3431156 *2 (S.D. Tex. July 30, 2019) (the Violent Crime Control and Law Enforcement Act of 1994 was enacted to amend the. definition of the word "parent" within the statute to "not include a person whose parental rights . . . have been terminated by a final court order). Notably, the statute's

legislative history and clear and express intent to exempt parents is reflected in two different places in the Department of Justice's own Manual:

> The kidnapping offense generally does not apply to matters involving the taking a minor by a parent, except for 18 U.S.C. § 1204, international parental kidnapping. . .Under § 1201, the term "parent" does not include those persons whose parental rights with respect to the victim child have been terminated by a final court order.

DEP'T OF JUST. MANUAL RESOURCE MANUAL Title 9 Number 1034; *See also* DEP'T OF JUST. MANUAL RESOURCE MANUAL Title 9 Number 1961.

Given that the only type of "parents" to whom the exemption does not apply are those who have definitively and finally lost their parental rights, and given that it is undisputed that Mr. Wahhaj had custody of AG at the time that he allegedly left Georgia with him and that his parental rights had not been terminated, he is unquestionably exempt from liability, including inchoate liability, under the statute and therefore cannot, by definition, have made any co-conspirator statements in support of the Kidnapping Conspiracy.

### B.   It Would Be Contrary to Law to Admit Any Co-Conspirator Statements Alleged to Have Been Made In Furtherance of the "Kidnapping Conspiracy"

The Court should also exclude any co-conspirator statements, including those made by declarants other than Siraj Wahhaj, alleged to have been made in furtherance of the Kidnapping Conspiracy because Defendants are not lawfully charged with conspiracy to commit kidnapping under federal law. The federal kidnapping statute excludes the taking of a minor by his parent. 18 U.S.C. § 1201(a) ("Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof . . . .") (emphasis

added). Because of the parental exception, Mr. Wahhaj, John Doe's father, was not charged—or even mentioned—in Counts 6 or 7 of the Superseding Indictment.

Mr. Wahhaj therefore cannot be charged with kidnapping, and because Mr. Wahhaj participated in and assented to the taking of AG from Georgia to New Mexico, the other Defendants cannot lawfully be charged with kidnapping or conspiracy to commit kidnapping under federal law either. *See* Doc. 469 at 6. As already briefed, it is undisputed that Mr. Wahhaj is AG's father and that he accompanied Defendants and the child from Georgia to New Mexico. *See* Doc. 739 at 4. As is apparent from the testimony at the James hearing and the Government's admission in briefing the issue, Mr. Wahhaj voluntarily consented to the taking of the child. *See* Transcript at 31:13-14 ("Ibn took the boy away from his mother"); 126:2-10.

As a result, the Court should also decline to admit as co-conspirator statements any statements by individuals other than Siraj Wahhaj that could be construed as in support of a Kidnapping Conspiracy. This includes the writings of Defendant Leveille, the statements of Yusuf Von Leveille to Defendant Leveille and Anas White. *See* Doc. 929-1 at 8-10 (Arguing that "[Ms. Leveille's writings] furthered the conspiracy by providing rules and discipline for the conspirators, and encouragement and motivation for the continued material support and kidnapping of JD 1 for the ultimate goals."); *Id.* at 26 (Describing the conversations between Yusuf and Jany and his retelling of those conversations after the Defendants were arrested).

### IV. It Would Be Contrary to Law to Admit Any Co-Conspirator Statements Alleged to Have Been Made In Furtherance of the "Terrorism Conspiracy"

The Government's proffered evidence of a Terrorism Conspiracy dates to no earlier than the Defendants arrival in Amalia, New Mexico. The evidence the Court heard at the

*James* and *Daubert* hearings was entirely consistent on this point, that the terrorism conspiracy did not even arguably begin until after AG died and Ms. Leveille subsequently prophesied that he would be resurrected and would instruct Defendants to attack corrupt institutions. See Transcript at 117:19-22 (Agent Taylor concedes that there is no evidence that there was any planned confrontation with law enforcement before the child's death); Id. at 130:17-131:13 (Agent Taylor confirms that the Government has no evidence of any activity that constituted material support to terrorism before Defendants arrived in Amalia, New Mexico). Thus, any and all purported co-conspirator statements in furtherance of the Terrorism Conspiracy preceding Ms. Leveille's alleged prophesy should be excluded.

Digging further into the alleged Terrorism Conspiracy, it's apparent that the purported object of the conspiracy, to attack corrupt institutions and personnel, would not and could not ever be achieved because Defendants had allegedly agreed to take such action only in the event that AG was resurrected and instructed them to do so. To the extent that Defendants had a shared belief in AG's resurrection and the events that might follow, it really was not an agreement to take action but rather an apocalyptic religious belief regarding things to come. It is therefore as if the conspiracy terminated before it ever began, meaning no statements can be said to have been in furtherance of Defendants' agreement. *See, e.g., United States v. Deleon* 287 F.Supp. 3d 1187, 1252, 1255 (D.N.M. 2018)(stating that "Rule 801(d)(2)(E) does not apply to statements made after a conspiracy's object is accomplished *or becomes impossible*" and holding that statements made a year after a murder were not co-conspirator statements "because it is impossible to further a terminated conspiracy")(emphasis added).

As a result, the Court should decline to admit as co-conspirator statements any proffered statements by the children offered as statements in furtherance of the Terrorism Conspiracy, which should also be excluded on Confrontation Clause grounds. *See supra* Section II. As well, the Court should decline to admit as co-conspirator statements the proffered statements of Yusuf Von Leveille, Jany Leveille and others pertaining to same.

## V. It Would Be Error to Admit Any Co-Conspirator Statements in Furtherance of the Firearm Conspiracy

As Agent Taylor testified at the *James* hearing, the Government has no evidence whatsoever that Ms. Leveille's co-defendants were aware of her immigration status at any point during the course of the charged conduct. See Transcript at 150:12-19 (Agent Taylor conceded that the Government had no evidence Subhanah Wahhaj knew that Ms. Leveille as not legally in the United States, either when Defendants were in Alabama or New Mexico). As a result, the Government cannot show that Defendants knowingly and voluntarily agreed to violate the law in providing firearms to Ms. Leveille despite the fact that she was illegally or unlawfully in the United States. *See, e.g., United States v. Small*, 423 F.3d 1164, 1182-83 (10th Cir. 2005). *See also United States v. Arroyo*, 805 F.2d 589 (5th Cir. 1986)(After the government failed to prove up its conspiracy, the trial judge granted a new trial after concluding that no instruction could cure the error of admitting the co-conspirator's statements.)

## VI. Numerous Other Proffered Statements Do Not Qualify as Co-Conspirator Statements But are Rather "Mere Narratives" or "Idle Chatter"

"No talismanic formula exists for ascertaining whether a particular statement was intended by the declarant to further the conspiracy and is therefore admissible in *1253 accordance with the agency theory of conspiracy." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993). The Tenth Circuit has, however, offered some guideposts for district

courts. First, "mere narratives between coconspirators or narrative declarations of past events" are not, generally, in furtherance of a conspiracy. *United States v. Roberts*, 14 F.3d 502, 514-15 (10th Cir. 1993). Additionally, "statements of future intent that set transactions integral to the conspiracy in motion and maintain the information flow among coconspirators" are usually in furtherance of the conspiracy. *Id*. at 515. Statements made to induce enlistment or further participation in the group's activities . . . to prompt further action on the part of conspirators . . .  or] to keep coconspirators abreast of an ongoing conspiracy's activities satisfy the "in furtherance" of requirement. *Id.*

The Government proffers a number of statements, including those of five of Defendants' children, that were allegedly made by certain Defendants to the children. There is no evidence that these statements were made to induce participation in any of the conspiracies – rather, they constitute narratives and chatter among family members. *See, e.g., United States v. Maliszewski*, 161 F.3d 992 (D.C. Cir. 1998)(Certain statements that were offered under Rule 801(d)(2)(E) were not shown to have been made in furtherance of the conspiracy, but amounted to nothing more than idle chatter between a husband and wife.)

To the extent that the Court declines to find that these statements, if reliable, are not mere narratives or idle chatter, they are by definition not co-conspirator statements because they were made to the children, who were not co-conspirators. *See United States v. Al-Moayad*, 545 F.3d 139 (2d Cir. 2008)(The defendant was charged with providing material support to a terrorist organization. The government introduced an application form for another person to enroll in a terrorist training camp and the form indicated that the defendant had sponsored the applicant. The government offered the form under Rule 801(d)(2)(E); however, there was insufficient information that the defendant was in a

conspiracy with the applicant (or even knew him) or that the defendant was in a conspiracy that involved enrolling the applicant in the terrorist training camp.)*; United States v. El-Zoubi*, 993 F.2d 442 (5th Cir. 1993)(statement by co-conspirator charged with arson to a neighbor in the shopping center that he was sick of it all and was going to burn the shop down was not in furtherance of the conspiracy because the neighbor was not a part of the conspiracy); *United States v. Weaver*, 507 F.3d 178, 185–186 (3d Cir. 2007)("A declarant's statement explaining the current status of the conspiracy is 'in furtherance' of that conspiracy only if the addressee is also a co-conspirator."); *United States v. McConnell*, 988 F.2d 530 (5th Cir. 1993)(To the extent that the Government fails to prove that statements were made in furtherance of a conspiracy, either because there is no explanation as to the context of the statement or as to how it actually furthered the conspiracy, the admission of those statements would constitute reversible error.).

The same analysis applies to the letter that the Government alleges Defendant Morton delivered to Muhammed. The letter itself was unsigned and the Government does not allege that Muhammed was engaged in any conspiracy, leaving little to no explanation as to how the existence of the letter would further any illegal end. Quite simply, it did not.

## VII.   The Government Has Not Demonstrated That Subhanah Wahhaj and Hujrah Wahhaj Were Members of Any of the Conspiracies

Critically, fatal to the United States' case against Subhanah and Hujrah is that the Government offered no substantial evidence that the sisters were a part of any of the alleged conspiracies. The record is generally bereft of evidence that either Subhanah or Hujrah Wahhaj were engaged in activities other than traveling with their families, caring for their children and otherwise subsisting in a very hostile and difficult environment in Amalia. In fact, Agent Taylor testified that there was evidence that Subhanah Wahhaj

attempted to leave the residence and that she was forced to cook and clean as punishment. *See* Transcript at 144:2-15.

With respect to the alleged kidnapping conspiracy, as discussed above, each Defendant would have to have conspired to unlawfully seize, confine, inveigle, decoy, kidnap, abduct, or carry away. Contrary to any viable theory of a conspiracy to kidnap, Agent Taylor expressly refused to identify when a conspiracy to kidnapped was formed. As noted above, he admitted at the *James* hearing, however, that, nothing indicating a legal impediment to Siraj Wahhaj's custody of AG existed until after the date that the Government contends AG died. With no termination of parental rights at issue, and with no notice to Hujrah and Subhanah of any lack of parental rights, a conspiracy to kidnap is impossible.

The evidence is clear that Hujrah and Subhanah were not members of the Terrorism Conspiracy, should the Court find that such a conspiracy ever formed. What the United States has offered is a theory that they were essentially housekeepers on Amalia. Their engagement in routine household tasks can hardly sustain a charge of materially supporting terrorism.

Finally, the conspiracy related to firearm possession by Jany Laveille is dead on arrival because, as described above, the United States declined to put on any evidence that anyone, let alone Hujrah or Subhanah, knew anything about Jany Laveille's immigration status.

Given the paucity of evidence that either Subhanah or Hujrah were participants in any of the three conspiracies in which they are charged, Defendants respectfully request that the Court find no co-conspirator statements are admissible against them. See, e.g., *United States v. Tellier*, 83 F.3d 578, 580 (2d Cir. 1996)(where one witness's hearsay

22

statement was the only evidence of a defendant's participation in a marijuana conspiracy and there was no independent corroborative evidence of such participation, the proffered statement was inadmissible)

WHEREFORE, Defendants respectfully request that the Court deny the Government's request for a pre-trial ruling that the proffered James statements are admissible pursuant to Rule 801(d)(2)(E) and, to the extent that the Court rules that any of the statements are admissible, Defendants respectfully request that the Court instruct the jury that the statements are not admissible against Subhanah and Hujrah Wahhaj.

Respectfully submitted,

*/s/ Ryan J. Villa*
Ryan J. Villa
5501 Eagle Rock Ave NE, Suite C2
Albuquerque, NM 87113
(505) 639-5709
ryan@rjvlawfirm.com

&

*/s/ Justine Fox-Young*
Justine Fox-Young
Justine Fox-Young, PC
5501 Eagle Rock Ave NE Ste C2
Albuquerque, NM 87113
(505) 796-8268
justine@foxyounglaw.com

*Attorneys for Defendant Subhanah Wahhaj*

&

Donald F. Kochersberger III
6801 Jefferson St NW Suite 210
Albuquerque, NM 87109-4390
(505) 848-8581
Donald@BusinessLawSW.com

&

*/s/ Marshall J. Ray*
Marshall J. Ray
Law Offices of Marshall J. Ray, LLC
514 Marble Ave, NW
Albuquerque, NM 87111
(505) 312-2748
mray@mraylaw.com

*Attorneys for Defendant Hujrah Wahhaj*

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2023, I filed the foregoing electronically through the CM/ECF system, which caused counsel for the United States to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Justine Fox-Young*
JUSTINE FOX-YOUNG