IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                       No.18-cr-002945-WJ

HUJRAH WAHHAJ,

        Defendant.

## DEFENDANTS' RESPONSE TO THE UNITED STATES' MOTION *IN LIMINE* TO EXCLUDE DEFENSE ARGUMENTS AND EVIDENCE

**COMES NOW** Defendant Hujrah Wahhaj, by and through her legal counsel, Marshall Ray and Donald F. Kochersberger III, and hereby respectfully submits this Response to the United States' Motion *In Limine*.. Defendants Subhanah Wahhaj, Siraj Ibn Wahhaj, and Lucas Morton, join this Response. The United States has asked the Court to exclude various categories of evidence and to admit some other items that are irrelevant and violate the principles of Rule 403. The Defendants will address each category of evidence raised in the Omnibus Motion in turn.

### ARGUMENT

**1. Defendants Agree that Evidence Regarding Allegations of Conspiracies Generally Should not be Admitted.**

The United States posits that Defendants will attempt to put on evidence that the United States and other governmental and law enforcement agencies conspired to frame Defendants or illegally prosecute them because of their race and religion, and those same agencies allowed John Doe 1 to be hurt because they wanted to hang back and wait to develop evidence to support terrorism charges against one or more defendants. *See* Doc. 897 at 2-5. The government therefore requests an order preventing argument and evidence about these topics, including about selective prosecution.

Defendants state that they have preserved their arguments related to these issues in

pretrial motions and other filings. They did not bring selective prosecution motions because the evidence had not yet developed to carry a challenging party's burden regarding selective prosecution. If such evidence comes to light, Defendants reserve the right to raise selective prosecution through a motion or other appropriate means.

### 2. Some Evidence Regarding Defendants' Non-Criminal Activities Will Be Relevant at Trial.

Although Defendants concede that evidence of the surveillance footage in Georgia, and any activities captured therein, is not relevant given the Court's prior rulings, it does not follow that all evidence as to Defendants' daily activities, to include prayer and parenting young children while Defendants lived in Amalia is irrelevant and inadmissible. To the contrary, the evidence of exactly what the Defendants were doing while the Government claims they were engaged in material support to terrorism, kidnapping, gun possession and various conspiracies is not character evidence but is highly relevant and directly pertinent to the elements of those crimes. With respect to the terrorism conspiracy, for example, the Government has alleged that Hujrah Wahhaj and Subhanah Wahhaj each contributed material support in that they had roles as essentially property manager and housekeeper, respectively, meaning that they are in actuality charged with "ceaseless criminal conduct" with respect to their activities in Amalia. *See United States v. Scarpa*, 913 F.2d 993, 1011 (2d Cir. 1990); James Hearing Transcript at 69:23-70:2 ("Subhanah Wahhaj's role [in the terrorism conspiracy] was to take care of the household, cook and clean. Hujrah's was to take care of the compound when the group left with Isa . . . .")

The Government's chosen authorities do not in fact stand for the proposition that a defendant may not introduce any evidence of "instances of good conduct or [the] absence of criminal conduct" because it "is not relevant to the determination of the Defendants' guilt of the charged offenses and therefore should be excluded." Motion at 6.

Instead, *Scarpa* merely upheld the district court's exclusion of evidence (by way of testimony or stipulation) regarding the content of tape recordings, that the Second Circuit had previously found were not discoverable based upon the Government's representation that they contained no exculpatory material. *Scarpa*, 913 F.2d at 1010-1011. That the Government's Rule 16 or *Brady* obligations may not require production of certain materials has no bearing on the admissibility of materials that tend to negate guilt and that were in fact produced in discovery or are otherwise in the possession of the defense. Nor is the evidence at issue "prior good act" evidence as in *United States v. Al Kassar*, 660 F.3d 108, 123 (2d Cir. 2014).

Instead, the evidence of Defendants' daily activities, which will come in through witness testimony and video evidence, tends to negate Defendants' guilt insofar as it supports the defenses that the object of the terrorism conspiracy was impossible to achieve and that Defendants made no efforts to contribute material support as charged. Furthermore, it is intrinsic to the crimes charged in that it will provide the jury with critical context and background regarding the circumstances of the Defendants' alleged criminal activity. *See, e.g.*, *United States v. Parker*, 553 F.3d 1309, 1314 (10th Cir. 2009) ("[I]ntrinsic evidence is directly connected to the factual circumstances of the crime and provides contextual or background information to the jury." (internal quotation marks omitted)). This evidence is inextricably intertwined with the evidence of the charged conduct and is an "integral and natural part" of Defendants' respective "accounts of the circumstances surrounding the offense[s]" in this case. *United States v. Johnson*, 42 F.3d 1312, 1316 (10th Cir. 1994) (internal quotation marks omitted); *see also United States v. Zuni*, 2006 WL 4109664 (D.N.M. July 7, 2006)(Browning, J.)(Finding that uncharged acts taking place on the same day as the alleged crimes were admissible because they "ma[d]e

3

the charged offenses understandable by describing the context in which they arose" and explaining that without the evidence "the jury would be confronted with evidence that Zuni kidnapped and raped the alleged victim on federal land, without any idea why the two happened to be there and why one member of this relationship would take such action against the other member.")

### 3. Evidence Regarding the Lawfulness of Siraj Wahhaj's Travel to New Mexico with His Son, and the Other Defendants' Knowledge or Lack Thereof about Mr. Wahhaj's Legal Right to Keep His Son Is Relevant and Must be Admitted.

The United States contends that it must prove merely that the Defendants charged with kidnapping intended to physically take AG to be liable for kidnapping. This argument is untenable for several reasons. This Court aptly noted in its Memorandum Opinion and Order Denying Defendants' Motion to Dismiss that, "Defendants raise thorny and novel questions; however, these questions are not yet appropriate for the Court to consider given the disputed nature of the underlying facts." Doc. 739 at 3. The Court identified multiple specific factual disputes that precluded a decision on the Motion to Dismiss the kidnapping charge, including:

- Whether Siraj Ibn Wahhaj consented to bringing his son AG to New Mexico
- Whether AG consented to going with Defendants
- Whether Siraj Ibn Wahhaj and Jany LaVeille were married; and
- Whether Jany Laveille could be considered a surrogate parent to AG.

Doc. 739 at 4.

There is no question that the legality of Siraj's custody of AG is a central question. If his parental rights were not terminated or if he was not otherwise legally precluded from having his child with him, the Defendants' cannot have participated in kidnapping the

4

child.  The Court would be depriving Defendants of a fair trial if it precluded them from offering evidence regarding Siraj Wahhaj's parental status and the other Defendants' knowledge of the same.

The United States' argument that the only intent requirement relates to the physical act of taking AG is facially absurd and makes a mockery of the grave nature of the charge of kidnapping in this case, which carries a mandatory life sentence.  The United States does not cite a single case that supports the notion that individuals who travel with a father and son could be held liable for kidnapping if it turns out, contrary to their knowledge and understanding, that the father did not have the mother's consent to be travelling with the child.  This is particularly problematic under the facts of this case, in which:

- Siraj Wahhaj is undisputedly AG's father;

- The United States has no proof that there was any legal impediment to Siraj's custodial or parental rights with respect to AG during the relevant time periods; and

- AG was a severely disabled toddler who did not have the capability of expressing consent, on his own, to being with one person or another.

The United States' legal treatise on whether kidnapping is a "specific" or "general" intent crime is therefore unhelpful and misleading.  The Supreme Court has noted:

> The act of holding a kidnapped person for a proscribed purpose necessarily implies an unlawful physical or mental restraint for an appreciable period against the person's will and with willful intent so to confine the victim. If the victim is of such an age and mental state as to be incapable of having a recognizable will, the confinement then must be against the will of the parents or legal guardian of the victim.

*United States v. Chatwin*, 326 U.S. 455, 460 (1946) (emphasis added).  The current wording of the federal kidnapping statute does not substantively alter this analysis.  In discussing the immunity for parents, Section 1201(h) of Title 18 states: "As used in this section, the term 'parent' does not include a person whose parental rights with respect to

5

the victim of an offense under this section have been terminated by a final court order." Thus, the legal status of a parental relationship is relevant by the terms of the federal kidnapping statute, and, by extension, co-Defendants' knowledge of that legal status is relevant.

In the face of these clear legal principles and common sense, the government proclaims: "The kidnapping and conspiracy to commit kidnapping charges do not include any specific intent on the part of the Defendants above and beyond what is required for the actus reus of the crime," other than potentially the jurisdictional element related to crossing state lines. Doc. 897 at 10.

Any order preventing Defendants from putting evidence on regarding their knowledge and state of mind regarding such legal status would deprive Defendants of a fair trial.

4. **Defendants Should be Permitted to Adduce Evidence Regarding the Impact of Jany Laveille's Belief System and Teachings.**

The Government argues that Defendants should not be permitted to introduce evidence that they were "brainwashed by" or otherwise drawn into the belief system of Jany Leveille or any "cult leader." To exclude this evidence would be to improperly and unconstitutionally limit Defendants' rights to put on a complete defense. Both the Fifth and Sixth Amendments to the United States Constitution protect a defendant's right to a meaningful opportunity to present a complete defense, which is essential to a fair trial. *See Crane v. Kentucky,* 476 U.S. 683, 690 (1986); *Holmes v. South Carolina,* 547 U.S. 319, 324 (2006). The Fifth and Sixth Amendments afford every defendant the right to testify and to call witnesses in his favor, *see Rock v. Arkansas,* 483 U.S. 44, 49–52 (1987), and "concomitantly provide a criminal defendant the right to present a defense by compelling the attendance, and presenting the testimony, of his own witnesses," *United States v.*

*Serrano, 406 F.3d 1208,* 1215 (10th Cir. 2005). *See also Washington v. Texas,* 388 U.S. 14, 19 (1967) (holding the right to present witnesses and establish a defense is "a fundamental element of due process of law"). "The Supreme Court's broad reading of the Sixth Amendment's Compulsory Process Clause, establish[es], at a minimum, that criminal defendants have the right to . . . put before a jury evidence that might influence the determination of guilt." *Serrano,* 406 F.3d at 1215 (internal citation and quotation marks omitted).

The evidence concerning Ms. Leveille's own mental condition and the effect she had on Defendants, both in the form of expert testimony as to Ms. Leveille's insanity which has been properly noticed in accordance with the Court's pretrial deadlines, and fact witness testimony, is a critical component of the defense that Ms. Leveille's co-defendants were essentially following a mentally ill person in the pursuit of an impossible end. Evidence of Ms. Leveille's mental condition and its effect on the other Defendants helps to prove that the object of the terrorism conspiracy was a figment of her imagination and that it would not and could not be completed in the absence of the resurrection of AG. The exclusion of evidence of Ms. Leveille's psychological condition and the effect she had on the other Defendants would improperly and unconstitutionally limit various defenses in this case.

**5. The United States Request for a Generalized Ban on Inadmissible Hearsay and for Rulings Stating Rote Legal Principles Is Unhelpful and Does not Merit a Pretrial Ruling.**

The United States asks for a pretrial ruling "excluding any out-of-court statement offered for the truth of the matter asserted, without a valid hearsay exception. Similarly, the United States asks for rulings precluding the introduction of evidence and arguments concerning "Inappropriate Legal Standards or Requirements", "Pre-trial Rulings," "Plea

Negotiations," "Offers to Stipulate," "Defense Exhibits," and "Reference to Potential Penalties."

There is no reason for an order articulating evidence truisms without reference to specific proffers of evidence and specific objections to those proffers. The Court can rule on specific proffers when they are presented and with more information to guide an appropriate ruling.

**6. The United States Misrepresents the *McVeigh* Decision.**

The Government apparently has serious doubts about the quality of the investigation conducted in this case. Thus, it asks the Court to adopt the proposition that, "[o]rdinarily, a trial court should not allow a defendant to offer evidence about the quality of the pretrial investigation." Doc. 897, at 24. The authority upon which the Government relies, *United States v. McVeigh*, 153 F.3d 1156 (10th Cir. 1999), does not pronounce such a broad general prohibition regarding evidence of flaws in an investigation. The Defendant in *McVeigh*—one of the individuals responsible for the Oklahoma City bombing--sought to introduce evidence at trial that authorities failed to thoroughly investigate other suspects, including a group referred to as the "Elohim City" group. *See United States v. McVeigh*, 153 at 1192. The Tenth Circuit found Timothy McVeigh's arguments to be factually and legally flawed. First, evidence showed that authorities actively investigated other suspects. Moreover, alleged weakness of authorities' investigation into other suspect was not relevant to McVeigh's defenses. *See id*. at 1192. In rejecting McVeigh's claims, the Tenth Circuit expounded:

> Admittedly, the quality or bias of a criminal investigation occasionally may affect the reliability of particular evidence in a trial, and hence, the facts surrounding the government's investigation may become relevant. *See Lowenfield v. Phelps*, 817 F.2d 285, 291–92 (5th Cir.1987) (holding that it was a reasonable trial strategy to attempt to argue that "sloppy police work" tainted the chain of custody for certain guns seized by police and "set the

> stage for an argument that others were implicated in the murders"), aff'd on other grounds, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). However, in McVeigh's case, he failed to establish the requisite connection between the allegedly "shoddy" and "slanted" investigation and any evidence introduced at trial. There was no trial evidence whose reliability would have been undercut had McVeigh been able to prove his contentions about the Elohim City investigation.

*United States v. McVeigh*, 153 F.3d at 1192.  In other words, the Tenth Circuit did not articulate any specialized rule regarding evidence of "shoddy" investigations.  The relevance standards articulated in Rule 401, as always, control.  *See* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  As the Tenth Circuit recognized in *McVeigh*, a reasonable trial strategy would include argument that a sloppy police investigation tainted physical evidence taken from the scene, thereby weakening the Government's case in chief.

The holding in *McVeigh* is thus much more limited than what the United States represents.  The Tenth Circuit in *McVeigh* simply held that it was not an abuse of discretion to exclude FBI and ATF reports which would have allegedly shown a shoddy investigation into McVeigh's proposed alternative suspect, because the reports did not show that. *Id*. For further support of a "general rule" that a defendant cannot attack the quality of an investigation the government cites to *United States v. Veal*, 23 F.3d 985, 989 (6th Cir. 1994). However, *Veal* did not create such a rule. Instead, like *McVeigh*, it simply held that exclusion of the specific evidence sought to be admitted by the defendant was not an abuse of discretion under the specific circumstances of that case. 23 F.3d at 989.

Rather than create the rule the government claims, the Tenth Circuit observed in *McVeigh*: "[a]dmittedly, the quality or bias of a criminal investigation occasionally may affect the reliability of particular evidence in a trial, and hence, the facts surrounding the

9

government's investment may become relevant." 153 F.3d at 1192. This is not the "narrow" exception to the made up rule the government advances, but instead the general rule that such evidence is admissible when it is relevant. To be sure, the defense can properly examine shoddy police work where it calls into question Defendants' innocence, undermines the credibility of government witnesses, or otherwise undermines the government's case. This Court can evaluate evidence and argument related to this topics on a case-by-case basis just as the courts in *McVeigh* and *Veal* did. There is no general rule in the law as the government represents. To be sure, as in *McVeigh* and *Veal*, there may be a specific part of an investigation that is simply not relevant to the defense, but the government points to no specific information like this in its Motion. This is simply just a stock argument with no specificity and no legal basis. Accordingly, the Motion should be denied.

Accordingly, the Defendant should not be precluded from offering evidence and argument regarding failures in the police investigation to the extent that such failures are relevant to issues in the case against her.

### 7. Whether Siraj Wahhaj and Jany Leveille Considered Themselves Married Under Islamic Law is Material and Relevant.

As discussed above, Siraj Wahhaj's status and the father of AG is undisputed and is relevant to the charges and defenses for kidnapping and conspiracy to commit kidnapping. Similarly, it is, at a minimum, intrinsic evidence without which a confusing gap will persist, that Siraj Wahhaj and Jany Leveille considered themselves husband and wife under Islamic law and lived accordingly. It would be improper to exclude this evidence.

### 8. The United States Seeks Admission of Two Categories of Evidence that Are Irrelevant and Unfairly Prejudicial.

The United States requests the admission of evidence of a local tip to the FBI regarding firearms instruction by Siraj Wahhaj in Georgia, evidence of ruqya's being performed on other children, and references to CYFD and foster parent interactions with the children.  Each of these proffered items is irrelevant and violates Rule 403 balancing.

"Evidence is relevant if . . . (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  The Federal Rules of Evidence further provide: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.  "[T]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *United States v. Caraway*, 453 F.3d 1290, 1301 (10th Cir. 2008) (quoting Fed. R. Evid. 403 advisory committee note). "Evidence may be unfairly prejudicial if it would likely provoke an emotional response from the jury or would otherwise tend to adversely affect the jury's attitude toward a particular matter." *United States v. Shirley*, 214 F. Supp. 3d 1124, 1144 (D.N.M. 2016)

A tip regarding Siraj Wahhaj giving firearms training in Georgia is 404(b) evidence in disguise, yet does nothing to lend support to a relevant non-propensity proposition.  There is no contention that any training offered in Georgia was unlawful.  Thus, the hope of the United States is to cast lawful activity as something sinister and, in some way not explained, connected to what happened in New Mexico, during the time period relevant to

11

this case. Rule 403 precludes the admission of such evidence, designed as it is to inflame prejudice without informing any matter of evidentiary value.

The same problem applies to the proposed evidence of ruqyas allegedly performed on other children. There is no need for such evidence to provide "contextual," information, as the government contends. If it becomes appropriate for the United States to present any evidence of what a ruqya is, then expanding evidence to the application of ruqyas to other children will not help in providing any context. Rather, the intent is, again, to inflame the passions of the jury by presenting an alien and unfamiliar spiritual practice to jurors and, as propensity evidence, to cause jurors to presume, unfairly, that ruqyas were performed on AG if they were performed on the other children. Yet evidence of propensity is not admissible, except within the strictures of Fed. R. Evid. 404(b). Pursuant to Rule 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rather, evidence of other crimes, wrongs, or acts may only be admitted if it is relevant to "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b).

The United States Court of Appeals for the Tenth Circuit has consistently applied a four-part test to evaluation the admissibility of evidence of so-called other acts:

> To determine whether Rule 404(b) evidence was properly admitted we look to [a] four-part test . . . : (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

*United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000)(citing *United States v.*

*Roberts*, 185 F.3d 1125 (10th Cir. 1999)). *See United States v. Higgins*, 282 F.3d 1261, 1274 (10th Cir. 2002); *United States v. Hardwell*, 80 F.3d 1471, 1488 (10th Cir. 1996)(citing *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)).  "[T]he proponent [of 404(b) evidence] must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the bad act." *United States v. Morley*, 199 F.3d 129, 133 (3d Cir.1999) (alterations omitted). The Tenth Circuit has instructed that district courts must "identify specifically the permissible purpose for which such evidence is offered and the inferences to be drawn therefrom." *United States v. Youts*, 229 F.3d 1312, 1317 (10th Cir.2000) (citing United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir.1985)).  There is no articulable, permissible, non-propensity purpose for admitting evidence of ruqyas.

It cannot be stressed enough that the existence of ruqyas is, on the whole, completely irrelevant to the issues at trial.  It does not pertain to any element or defense related to kidnapping, conspiracy to kidnap, providing material support to terrorism, conspiring to commit crimes against the United States, or any other charge.  It is simply an opportunity for the United States to pain the Defendants as strange and outlandish.  This is not appropriate evidence.

Finally, the Government's request to admit references to CYFD and Foster Parent interactions with the children serves no legitimate evidentiary purpose and runs afoul of Rule 403.  This information is not "intrinsic" or necessary for context.  It hints at governmental intervention in the parental rights of the parties, which would suggest to the Jury unfitness on the Defendants' part as parents or caretakers of their children.  Such evidence is not relevant to any matter at issue in the trial and serves only to prejudice the Jury.

13

## CONCLUSION

In large part, the United States' Omnibus Motion In Limine is without merit and should be denied, except for those areas, as discussed above, that appropriately limit the scope of what is presented at trial.  s

         Respectfully submitted,

         Donald F. Kochersberger III
         6801 Jefferson St NW Suite 210
         Albuquerque, NM 87109-4390
         (505) 848-8581
         Donald@BusinessLawSW.com

         */s/ Marshall J. Ray*
         Marshall J. Ray
         Law Offices of Marshall J. Ray, LLC
         514 Marble Ave, NW
         Albuquerque, NM 87111
         (505) 312-2748
         mray@mraylaw.com

         *Attorneys for Defendant Hujrah Wahhaj*

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2023 I filed the foregoing electronically through the CM/ECF system, which caused all parties of record and/or counsel for the parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

         */s/ Marshall J. Ray*
         MARSHALL J. RAY