IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,      )
                               )
              Plaintiff,       )
                               )
       vs.                     )        Cr. No. 18-2945 WJ
                               )
JANY LEVEILLE, ET AL,          )
                               )
              Defendants.      )

## UNITED STATES' REPLY TO DEFENDANTS' RESPONSE TO THE UNITED STATES' OMNIBUS MOTION IN LIMINE

The United States respectfully provides this reply to the Defendants' response to the United States' Omnibus Motion in Limine (Doc. 897).  The Defendants do not address or do not oppose several aspects of the United States' Motion.  *See, e.g.*, Doc. 938 at 1, 7-8.  Therefore, the United States will not address those subjects which the Defendants do not oppose or have conceded by not responding, and will address in this reply only the subjects which the Defendants have directly opposed or expressed some disagreement with.

### A.  Evidence of the Defendants' "Non-Criminal Activities"

The Defendants concede that "evidence of the surveillance footage in Georgia" is not relevant.  Doc. 938 at 2.  Therefore, this evidence, to include any depiction of the Defendants not engaging in criminal conduct, is inadmissible.

However, the Defendants do contend that "evidence" such as prayers and "parenting young children" at the compound in Amalia is "highly relevant and directly pertinent" to the charged offenses.  *Id.*  The Defendants claim that they are "in actuality charged with 'ceaseless criminal conduct' because they had identified roles in the material support conspiracy."  *Id.* (quoting *United States v. Scarpa*, 913 F.2d 993, 1011 (2d Cir. 1990)).  The Defendants bootstrap this argument into

a purported defense that "the object of the terrorism conspiracy was impossible to achieve." *Id.* at 3.

These arguments fail for a number of reasons.  First, that the Defendants prayed or provided "parenting" to the children at the compound is neither directly pertinent nor relevant to any of the charges.  Rather, it is another version of the same argument that the Defendants concede they have lost—namely, that depictions of the Defendants not committing crimes is relevant and exculpatory to the charged crimes committed on other occasions or through other acts.

Just because an offense can continue for an extended period of time does not mean every instance of non-criminal behavior during that time is "highly relevant and directly pertinent."  Nor does it mean that any charge for a conspiracy or other offense that continues for an extended time is a charge of "ceaseless criminal conduct."  If that were the case, all evidence of any defendant acting innocently, to include daily life activities such as parenting children and praying, would be admissible evidence to rebut all but the most short-lived or immediately accomplished conspiracies and offenses.[1]  Surely, persons charged with all manner of frauds, scams, tax evasions, and related conspiracies also pray, parent their children, do community service, donate to charities, and engage in other myriad acts that are "innocent" and even commendable.  That does not make such evidence relevant for purposes of rebutting their charged offenses, and every long-running offense or conspiracy is not akin to "ceaseless criminal conduct."

---

[1] Indeed, the *Scarpa* case, which rejected the relevance (and therefore the admissibility) of non-criminal conversations absent charges of "ceaseless criminal conduct," involved an indictment charging RICO conspiracies and a "continuing criminal enterprise" spanning nearly three years. *See* 913 F.2d at 997.  Nonetheless, the Second Circuit twice emphasized that such evidence was not relevant and that the years-long charged offenses were not ceaseless criminal conduct subject to rebuttal by evidence of other non-criminal conduct.  *Id.* at 1010–11; *United States v. Scarpa*, 987 F.2d 63, 70 (2d Cir. 1990).

Indeed, the examples provided by the United States in its Motion all involved "good" conduct much more tailored to the offenses in those cases; yet courts still excluded (and appellate courts upheld the exclusion of) evidence of the "innocuous" or "innocent" conduct. *See, e.g.*, *United States v. Al Kassar*, 660 F.3d 108, 123 (2d Cir. 2014) (affirming exclusion of "prior good act" evidence where defendants charged with terrorism offenses sought to introduce evidence of their non-criminal contacts with Spanish intelligence officials); *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000) (upholding exclusion "on relevancy grounds" of "evidence of innocent travel [to Jamaica]" proffered "to rebut the government's allegation that [the defendant] had been involved in other cocaine importations from Jamaica"); *United States v. Walker*, 191 F.3d 326, 336 (2d Cir. 1999) (affirming, in case involving fraudulent asylum applications, exclusion of evidence that defendant had "prepared other, non-fraudulent applications" because that evidence "was simply irrelevant to whether the applications charged as false statements were fraudulent").

Here, the Defendants assert that the fact that they prayed sometimes, or that they parented their children in some fashion, is "highly relevant and directly pertinent" to the charges, as though they could not and would not have done so if they had also provided material support to a plan to kill or attempt to kill federal officers or to continue with JOHN DOE's ongoing kidnapping. Doc. 938 at 2. This is not proper evidence, as this Court has previously recognized. *United States v. Real*, 2018 U.S. Dist. LEXIS 106675, *4–5 (D.N.M. June 25, 2018) (Johnson, C.J.) (citing *United States v. Ellisor*, 522 F.3d 1255, 1270 (11th Cir. 2008) (explaining evidence of good conduct is not admissible to negate criminal intent). Evidence of daily activities, such as praying and parenting, is neither inconsistent with nor undermines or rebuts the Defendants' intent to commit the charged offenses or membership in the charged conspiracies. Thus, evidence of irrelevant

"innocent conduct" by the Defendants on occasions at their compound in Amalia is not admissible for the purpose of rebutting the charged offenses.

Second, the Defendants' argument that evidence of non-criminal activity is relevant to "negate the Defendants' guilt" by supporting their "defenses that the object of the terrorism conspiracy was impossible to achieve and that the Defendants made no efforts to contribute material support" is dead on arrival. Doc. 938 at 3. First, it is not undisputed that the object of the conspiracy was impossible to achieve. As the evidence will show, the Defendants controlled and often adjusted the prophetic narrative underlying their conspiracy to accommodate real-life events and the conspiracy's activities. In this context, the Defendants could simply declare that JOHN DOE was resurrected (perhaps as Subhanah Wahhaj's soon-to-be-born child), even if his literal resurrection were impossible.

Regardless, it is well settled that a claim that the object of a conspiracy is or was impossible is not a defense to a conspiracy charge. *United States v. Jordan*, 467 F. App'x. 782, 784 (10th Cir. 2012) ("That the crime agreed upon was in fact impossible to commit is no defense to the crime of conspiracy." (quoting *United States v. Corson*, 579 F.3d 804, 810 (7th Cir. 2009))); *United States v. Rodriguez*, 360 F.3d 949, 957 (9th Cir. 2004) ("Impossibility is not a defense to the conspiracy charge."). Similarly, it is illogical to argue that evidence of irrelevant innocent conduct such as praying or parenting children somehow equates to proof that the Defendants "made no efforts to contribute material support." For the reasons discussed above, evidence of non-criminal conduct on one occasion has no bearing on whether any Defendant contributed material support during the same general time period. Thus, this aspect of the Defendants' argument fails on basic relevancy grounds and because there is a genuine dispute of fact regarding impossibility.

4

Finally, the Defendants argue that the mundane aspects of their behavior in their near nine-month occupation of the compound in Amalia are intrinsic to the crimes charged and provide contextual or background information. Doc. 938 at 3. This may be true. But it also proves the United States' argument for exclusion of the evidence for any substantive purpose. Evidence of the Defendants' intermittent "innocuous" activities may be admissible to provide context if they happened at the same time or alongside participation in the charged conspiracies. But they remain irrelevant to any element of the charged offenses or legally cognizable defense. In other words, the Defendants' claim is that "the very irrelevance of [this evidence] makes [it] relevant," which cannot be true. *Scarpa*, 913 F.2d at 1010. Thus, while these acts may be referred to or presented to the jury as part of some legally cognizable defense, they may not be presented as substantive evidence to prove that the Defendants did not commit the charged offenses, and the Court should issue an order preventing the argument of this evidence as such.

### B. Defendants' State of Mind and Mistaken Beliefs about Kidnapping Offenses

The Defendants' response to the United States' motion to exclude evidence and argument suggesting the Defendants' mistaken beliefs about the law and their state of mind negate their guilt breaks down into two aspects. First, the Defendants limit their opposition to "evidence regarding Siraj Wahhaj's parental status and the other Defendants' knowledge of the same." Doc. 938 at 5; *see also id.* at 6 (arguing the relevance of "the legal status of a parental relationship" and "co-Defendants' knowledge of the same"). To be clear, Siraj Wahhaj's parental status (and the other Defendants' knowledge of that status) are not in issue, and the United States' motion does not seek to prevent the Defendants from presenting these two facts. In fact, the United States itself will be presenting evidence of those facts. Thus, to the extent that the Defendants' opposition to the United States' motion is limited to claiming the ability to present those two facts—which it seems

5

to be—there is no dispute, and the United States' motion to exclude the Defendants' state of mind and mistaken beliefs about the kidnapping offenses should otherwise be granted.  That is, the Defendants should be precluded from arguing to the jury that those two facts somehow negate their guilt as to the kidnapping offenses because their mental state and view of the law is irrelevant and carries substantial risk of misleading and confusing the jury.

Second, the Defendants misstate what facts are actually material to the kidnapping charges in an effort to argue that they must be allowed to point to Siraj Wahhaj's biological parentage as part of a fair trial or to make a defense, with the vague insinuation that they intend to argue that these two facts negate the unlawfulness of their taking and concealing of JOHN DOE from his mother.  Doc. 938 at 4-5.  The Defendants' skirting of the real issue (presenting a mistake-of-law defense to the jury), plus their sole focus on the mere existence of these two facts, indicates that the Defendants are aware of the impropriety of directly arguing to the jury that these facts translate into a legal impact on their guilt.

To be clear, the idea that the Defendants (other than Siraj Wahhaj) cannot be guilty of kidnapping because they knew Siraj Wahhaj was JOHN DOE's father has zero legal support, and the Defendants have unsurprisingly never identified any.  On the other hand, although not a common factual scenario, what case law there is supports the common-sense conclusion that persons who conspire and join with a biological parent to unlawfully take, confine, and conceal a child are still liable for prosecution for those offenses—regardless of whether they knew one of their coconspirators was a biological parent.[2]

---

[2] *See United States v. Sheek*, 990 F.2d 150 (4th Cir. 1993), and its unreported companion case, *United States v. Sheek*, 40 F.3d 1245 (4th Cir. 1994) (explaining that, where a biological mother conspired with child's step-father to kidnap her children, the step-father could be prosecuted for kidnapping even though mother could not); *Miller v. United States*, 123 F.2d 715, 716-18 (8th Cir. 1941), *rev'd on other grounds*, 317 U.S. 192 (1942) (strictly construing parental exception

Moreover, the plain language of the statute leads to the same conclusion. 18 U.S.C. § 1201(a) states that "*whoever* unlawfully seizes . . . any person, except in the case of a minor by the parent thereof . . . shall be punished by imprisonment for any term of years . . ." (emphasis added). The conspiracy section of the statute then simply states that if "two or more persons conspire to violate this act . . . each shall be punished . . . ." *Id.* § 1201(c). Thus, the statute merely states that anyone and everyone who does the things listed commits kidnapping, while only a parent of a kidnapped child cannot be "punished." But the other Defendants are not "a parent"; they are the "whoever" and the "persons" referred to as the offenders. Nowhere does the statute suggest that any other persons cannot be punished for kidnapping. Rather, the statute clearly contemplates prosecution of such other persons, to include other family members, for participating in kidnapping of a child. *See* 18 U.S.C. § 1201(g) (listing immediate family members exempt from the mandatory minimum 20-year sentence for kidnapping a child, thus contemplating their prosecution and punishment without the mandatory minimum); *cf.* Doc. 929 at 3-14 (analyzing why Siraj Wahhaj is an unindicted coconspirator in kidnapping conspiracy charge).

Similarly, and unsurprisingly, a plethora of state statutes make clear that the Defendants— to include Siraj Wahhaj—were acting unlawfully when they absconded across (multiple) state lines with JOHN DOE and concealed his location and death, irrespective of Siraj Wahhaj's biological parenthood or the Defendants' knowledge of the same. For example, the Defendants'

---

to uphold federal kidnapping conviction of step-father who conspired with child's mother to kidnap mother's child); *United States v. Jackson*, 2010 U.S. Dist. LEXIS 138613 at *5 (E.D. Tenn. Nov. 10, 2010) (rejecting claim that biological father was "entitled" to take his infant child away from the mother, and stating that father's immunity from kidnapping charges did not negate non-parent aidor and abbettor's criminal liability for kidnapping when father and girlfriend stole and absconded with infant child); *cf. United States v. Boettcher*, 780 F. 2d 435, 437 (4th Cir. 1985) (referencing potential prosecution of two co-conspirators, despite applying the parental exemption under section 1201(a) to a parent who conspired to kidnap her child in violation of section 1201(c)).

knowing absconding with and permanent concealment of JOHN DOE before and after his death was in part to avoid and frustrate law enforcement investigations into JOHN DOE's health and wellbeing, as well as lawful child custody proceedings.  The Defendants' knowing taking, confining, and concealing of JOHN DOE was in violation of, or sought to impede, Georgia and New Mexico laws, including, among others, laws that prohibit interference with a parent's custodial rights and laws criminalizing child abuse and neglect.  *See, e.g.*, GA Code §§ 16-5-45; 16-5-40; 19-9-3; 16-5-70; 16-10-31; 16-10-24; N.M.S.A. § 30-4-4.

The Defendants want to argue that they did not know they were violating the law because they did not know it was a crime (or, in reality, several crimes across state and federal jurisdictions) to permanently steal JOHN DOE away from his mother and abscond with him across state lines to evade any and all law enforcement intervention or legal process to enforce his mother's right of custody.  Of course, it is bedrock criminal law that ignorance of the law is no defense.  *See United States v. Games-Perez*, 667 F.3d 1136, 1142 (10th Cir. 2012) (stating defendant's lack of knowledge of the "legal consequences" of his actions is "simply ignorance of the law, which . . . has never excused disobeyance of a law" (citing *United States v. Capps*, 77 F.3d 350, 353 (10th Cir. 1996) (explaining "ignorance of the law—'I thought the law applied differently than it does'" is "no defense to criminal prosecution"))).  This is the crux of the United States' motion in limine to prevent such a defense.

The analysis of the mens rea requirement for 18 U.S.C. § 1201(a) in the United States' motion demonstrates that, as a general intent crime, the only mens rea that matters for purposes of the offense of kidnapping is that the Defendants intended to do the things that they did, i.e., take away JOHN DOE against the will and consent of his mother and abscond with him across state lines for some purpose.  There is no requirement for the United States to prove the Defendants

knew the law (or laws) and knew they were breaking it (or them). If the Defendants wish to argue that they believed they had JOHN DOE's mother's consent to take him away from her and to hide out in New Mexico for eight months, they can do so, as that is a factual question for the jury. But the Defendants should be limited to this type of factual argument only.

Any suggestion that Siraj Wahhaj's mere status as JOHN DOE's father negates all criminal liability for all of the Defendants is (a) an improper, prejudicial, misleading, and confusing argument, and (b) a legal argument based on a misunderstanding or ignorance of the law that is not part of the jury's function to consider. If the jury finds the Defendants did all of the acts to meet all of the elements of the kidnapping charges, then they are guilty of kidnapping. That is the factual determination for the jury. Any argument that the Defendants "thought the law applied differently than it does" is not a valid defense. Such an argument would only serve to confuse and mislead the jury.

In sum, the Defendants contend that they should be allowed to present evidence and argument that they did not know it was wrong to steal a little boy away from the person they all knew was the boy's sole caregiver and custodian, to cross state lines with him, to withhold his life-saving medication, and to conceal him from law enforcement, court process, and desperate family members—to include the boy's mother and custodian—all because Siraj Wahhaj was the boy's biological father. To quote the Defendants, such a position itself is "facially absurd and makes a mockery of the grave nature of the charge of kidnapping," Doc. 938 at 5, and such a legal argument should be precluded from presentation to the jury.

## C. Mental Health and Coercion Evidence

The Defendants' response to the United States' motion to exclude any implied coercion or duress defenses based on "brainwashing" or cult-related behavior consists of a non-responsive

boilerplate argument that they should be allowed to make such a defense as part of the broad right to a "complete defense."  Doc. 938 at 6-7.  The Defendants then lay out the specific argument they intend to make: that they were "essentially following a mentally ill person in the pursuit of an impossible end."  *Id.* at 7.  As articulated in the United States' motion to exclude just such an argument, following or believing a "mentally ill person" is not a defense to any element of any charged offense.  And, as provided above, "an impossible end" is not a valid defense to a conspiracy charge (not to mention that the kidnapping was very much successfully completed).  Further, contrary to the Defendants' reliance on the Fifth and Sixth Amendment to generally put on witnesses and evidence, those same rights and constitutional provisions were also in place (and were no impediment) in all of the case law cited by the United States in its motion to exclude such a mental health/coercion defense—cases which the Defense does not grapple with at all.

Finally, since the filing of the United States' motion Jany Leveille has pleaded guilty; her insanity defense will not be presented at trial.  Thus, to the extent that the Defendants intended to piggy-back on the only properly noticed insanity defense in this case, that is off the table.  As such, it is now even more clear that any argument by the Defendants that they were brainwashed or coerced into doing the things they are charged with, or were running away (with JOHN DOE) from imaginary assassins, amount to nothing more than implied coercion, necessity, or excusal defenses based on mental health evidence—defenses that are expressly excluded by statute (18 U.S.C. § 17(a)), rule (Fed. R. Evid. 401-403), and binding case law (*e.g., United States v. Dixon*, 901 F.3d 1170, 1175-76 (10th Cir. 2018); *United States v. Brown*, 326 F.3d 1143, 1147 (10th Cir. 2003)).

Because the injection of psychological evidence here would not negate any specific intent in the charged offenses, and would instead insert a "'dangerously confusing theory of defense more akin to justification and excuse,'" the Court should issue an order precluding this type of argument

by the Defendants.  *Brown*, 326 F.3d at 1147 (quoting *United States v. Cameron*, 907 F.3d 1051, 1067 (11th Cir. 1990)).

### D.   Quality of Law Enforcement Investigations

Other than quibbling with the meaning of the decision in *United States v. McVeigh*, 153 F.3d 1166, 1192 (10th Cir. 1998), the Defendants appear to concede that they may not put "the government on trial" by suggesting that the investigation in this case did or did not take certain steps.  Given the high potential that the Defendants will perseverate on the investigations by and communication among the Clayton County Police Department, the Taos County Sheriff's Office, and the FBI (and possibly other government agencies) regarding their search for JOHN DOE and execution of search warrants, the Court should grant the United States' motion on this subject.

### E.   Claims of Marriage Between Siraj Wahhaj and Jany Leveille

The Defendants again appear to concede that claims that Siraj Wahhaj and Jany Leveille were legally married should be excluded.  Nor do the Defendants dispute that they were, in fact, *not* legally married.  By implication, any legal consequence of a marriage between the two is inapplicable and inadmissible under Rules 401, 402, and 403, and any marital privilege under Rule 501 does not exist.  Finally, as described above and in the United States' Omnibus Motion, even if Jany Leveille and Siraj Wahhaj were legally married, this would not change the legal or factual conclusions that the Defendants kidnaped and conspired to kidnap JOHN DOE, and would not affect the factual determination of whether Jany Leveille had the kind of relationship with JOHN DOE that would entitle her to parental immunity under the kidnapping statute.  Accordingly, the Court should also grant the United States' motion on this subject.

### F.   United States' Motion to Admit Evidence

The Defendants argue that all three aspects of what the United States identified as *res gestae* evidence in its Motion are "irrelevant and unfairly prejudicial." Doc. 938 at 10. The Defendants' arguments fail in all aspects. The United States does not intend to offer evidence of Siraj Wahhaj's firearms training in Georgia as standalone evidence of character. If the United States offers this evidence, it will be merely to explain why the FBI knew who Siraj Wahhaj was and had an open investigation on him at the time the Defendants absconded with JOHN DOE. The evidence is inextricably intertwined with the rest of the evidentiary narrative, at the very least because it explains why law enforcement was hesitant to enter the Defendants' compound in New Mexico and why, when they did, they did so with a special response team of approximately a dozen officers. The truth, or legality, of Siraj Wahhaj's firearms training in Georgia is irrelevant. This evidence would be introduced merely to explain the origins of the FBI's investigation and information they communicated to TCSO. The explanation of the origins of the investigation is relevant and probative to the rest of the story, and is not substantially outweighed by unfair prejudice. As such, it is admissible *res gestae* evidence.

Regarding the ruqyah videos, it should go without saying that ruqyah is not a commonly known or understood practice. Even if it were a somewhat known topic, there would be considerable probative value in understanding the way that the Defendants subjected their children to ruqyah because it was during one of these ruqyah sessions that JOHN DOE died. These videos also demonstrate that Defendants had the knowledge and ability to perform ruqyah, at least as they understand it, and did so in the relevant temporal context. The Defendants' statement that "it cannot be stressed enough that the existence of ruqyas [sic] is, on the whole, completely irrelevant to the issues at trial" is bewildering. Doc. 938 at 13. Ruqyah practice is one of the core reasons the Defendants kidnapped JOHN DOE and stole him away to New Mexico—so they could

12

continue the practice on him to "rid" him of the demons purportedly causing his disabilities. Videos of ruqyah being performed at or near the time of the events in question are also relevant to the extent that they explain the circumstances surrounding Abdul-Ghani's death. The evidence will show that JOHN DOE died during a ruqyah session, and the United States intends to show the ruqyah video to a medical expert who can assess the extent to which such a procedure might have impacted JOHN DOE's health and well-being and increased the likelihood of him suffering a seizure and dying. All of this is clearly relevant to showing that JOHN DOE's kidnapping resulted in his death. There are thus many obvious reasons this evidence is relevant and probative, and many obvious questions a juror would have about ruqyah as performed by the Defendants. Videos showing it being performed on the Defendants' other children will answer many of those questions.

Moreover, it is hard to imagine why the Defendants would claim such videos to be prejudicial or evidence of other crimes, wrongs, or bad acts, when they considered the rituals as positive and healing exercises. Indeed, they conducted the ruqyah sessions on several children, to include JOHN DOE, as well as each other. A Rule 404(b) analysis therefore has no place in the admissibility of the ruqyah videos. The United States will not offer all of the videos demonstrating such ruqyah sessions, but only a sample so that the jury understands what other witnesses will describe as "reciting" or ruqyah on JOHN DOE. To the extent that the Defendants claim the videos are prejudicial due to most people's unfamiliarity with ruqyah, that unfamiliarity is the point of the United States showing the videos; it is not a ground for claiming unfair and substantial prejudice. Thus, the ruqyah videos are admissible *res gestae* evidence.

Finally, the United States is not "requesting to admit" references to CYFD and Foster Parent interactions" to "suggest to the Jury unfitness on the Defendants' part as parents or caretakers of their children," as the Defendants assert. Doc. 938 at 13. Indeed, the United States

has already stipulated with the Defendants to refrain from introducing argument or evidence about the legal proceedings related to child abuse and the termination of the Defendants' parental rights. *See* Doc. 906.  Rather, the United States merely seeks a ruling that such references to CYFD's and foster parents' existence and involvement in the aftermath of the Defendants' arrests, when they inevitably come up as part of the evidentiary narrative, are indeed intrinsic and necessary preliminaries to the crimes charged.  It is simply impossible to bridge the factual narrative of the charged offenses without noting how certain things were discovered or where people were, including the children, when the Defendants were arrested and charges were investigated.  This is the very definition of "inextricably intertwined," and any such references should be permitted as intrinsic evidence.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

*/s/ Electronically filed*
KIMBERLY A. BRAWLEY and
TAVO HALL
Assistant United States Attorneys
P.O. Box 607
Albuquerque, NM 87102
(505) 346-7274

GEORGE C. KRAEHE
Trial Attorney
Counterterrorism Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

I HEREBY CERTIFY that I electronically filed
the foregoing with the Clerk of the Court
using the CM/ECF system which will send
notification to counsel for the Defendants. A
copy was also mailed to Defendants Siraj Wahhaj and
Lucas Morton.

*Filed Electronically*
TAVO HALL
Assistant United States Attorney