IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                              No. 18-CR-2945-WJ

JANY LEVEILLE,
SIRAJ IBN WAHHAJ,
HUJRAH WAHHAJ,
SUBHANAH WAHHAJ, and
LUCAS MORTON,

Defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION IN LIMINE

**THIS MATTER** is before the Court on Defendants' Motion in Limine to Prevent Use of the Term "Compound" (**Doc. 899**). The United States filed a response in opposition (**Doc. 926**). Upon review of the parties' pleadings and the applicable law, the Court finds the Defendants' motion is without merit. Accordingly, Defendants' motion is hereby **DENIED**.

### BACKGROUND

The United States initiated their case against Defendants by criminal complaint on August 31, 2018. **Doc. 1**. Defendants[1] are currently indicted on seven counts: (1) Conspiracy to Provide Material Support to Terrorists in violation of 18 U.S.C. § 2339A; (2) Providing Material Support to Terrorists in violation of 18 U.S.C. §§ 2339A & 2; (3) Conspiracy to Murder an Officer or Employee of the United States in violation of 18 U.S.C. § 1117; (4) Conspiracy to Commit an

---

[1] Defendants Hujrah Wahhaj and Subhanah Wahhaj are not charged in Count 3 and Defendant Siraj ibn Wahhaj is not charged in Counts 6 or 7.

Offense Against the United States in violation of 18 U.S.C. § 371; (5) Possessing a Firearm While Unlawfully in the United States in violation of 18 U.S.C. §§ 922(g)(5) & 2; (6) Conspiracy to Commit Kidnapping in violation of 18 U.S.C. § 1201(c); and (7) Kidnapping in violation of 18 U.S.C. §§ 1201(a) & 2. **Doc. 85**.

The Defendants are alleged to have kidnapped a minor child, JOHN DOE, from Georgia and transported him to New Mexico where he died. *Id.* at 7–9. The Superseding Indictment (**Doc. 85**) also alleges that the Defendants built and maintained a "training compound comprised of materials such as a wooden frame, a trailer, plastic tarps, and tire walls and barriers." *Id*. at 4. The land Defendants occupied also had a firing range and underground tunnels. *Id*. The alleged purpose of this fortified structure was to prepare for attacks on federal government officials and institutions. *Id.* at 2–5. The search warrant recovered eleven firearms, a bullet-proof vest, approximately five-hundred rounds of ammunition, and twelve high-capacity magazines. *Id.* at 9–10.

Defendants object to the use of the term "compound" because it is "inherently loaded and evocative" and "implies militarism and aggression." **Doc. 899 at 1–2**. The Government contends the term "compound" is relevant, not unduly prejudicial, and that the use of any other term is misleading. **Doc. 926 at 2–5**.

### APPLICABLE LAW

Any evidence admitted at trial must be relevant. Relevant evidence is that which tends to "make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401; *see Old Chief v. United States*, 519 U.S. 172, 177 (1997) ("Rule 401 defines relevant evidence as having 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'"). "To be relevant, evidence need only tend

2

to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency. Relevant evidence is not confined to that which directly establishes an element of the crime." *United States v. Riego*, No. 21-596, 2022 U.S. Dist. LEXIS 165986, at *3 (D.N.M. Sept. 13, 2022) (quoting *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997)).

Of course, a district court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, or needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403. Evidence is unfairly prejudicial if it "makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *United States v. Roberts*, 88 F.3d 872, 880 (10th Cir. 1996) (quoting *United States v. Johnson*, 820 F.2d 1065, 1069 (9th Cir. 1987)). "The trial court has broad discretion to determine whether or not prejudice inherent in otherwise relevant evidence outweighs its probative value." *United States v. Youts*, 299 F.3d 1312, 1319 (10th Cir. 2000) (citing *United States v. Esch*, 832 F.2d 531, 535 (10th Cir. 1987)). Evidence is not unfairly prejudicial "simply because it is detrimental to a party's case." *United States v. Magleby*, 241 F.3d 1306, 1315 (10th Cir. 2001) (citing *United States v. Martinez*, 938 F.2d 1078, 1082 (10th Cir. 1991)).

The Tenth Circuit has repeatedly stated excluding evidence under Rule 403 is "an extraordinary remedy and should be used sparingly." *Wheeler v. John Deere Co.*, 862 F.2d 1404, 1408 (10th Cir. 1988); *see also United States v. Otuonye*, 995 F.3d 1191, 1206 (10th Cir. 2021) (same); *K-B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1155 (10th Cir. 1985) (same). Thus, before excluding relevant evidence, the trial court must find that the evidence has "an undue

tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Stump v. Gates*, 211 F.3d 527, 538 (10th Cir. 2000) (quoting Fed. R. Evid. 403 advisory comm. n).

## DISCUSSION

### I. The term "compound" is relevant in this case

The Superseding Indictment (**Doc. 85**) avers that the Defendants constructed, maintained, and trained on a compound. The Government's pleading explains the fact the Defendants occupied a compound is probative of their intent to conceal JOHN DOE, conduct firearms training, and mount an attack against the United States. **Doc. 926 at 2–3; Doc. 85**.

Defendants argue, in the alternative, that the phrase "compound" has no legitimate evidentiary value or that the probative value is substantially outweighed by unfair prejudice. **Doc. 899 at 1–3**.

The Defendants occupied Lot 28 of the Costilla Meadows Subdivision ("Lot 28") in Taos County, New Mexico, until August 2018 when the Taos County Sheriff's Office executed a search warrant. Lot 28 is an approximately 9-acre parcel of land—land which the Defendants modified by: burying a camper trailer, constructing multiple tented rooms, and then surrounding the structure with an exterior barrier wall. **Doc. 85 at 4; Doc. 926 at 4**. Defendants also built a firing range and underground tunnels on Lot 28. **Doc. 926 at 4**. Given the walled-in nature of the buildings in which the Defendants lived, the Court finds the term "compound" is relevant, informative, and probative.

### II. Use of "compound" is not unduly prejudicial

Defendants' primary contention is that using the word "compound" will evoke animus from the jury. **Doc. 899 at 2**. Specifically, Defendants assert that use of the word "compound" is

4

unfairly prejudicial because it will "likely provoke an emotional response from the jury or would otherwise tend to adversely affect the jury's attitude toward a particular matter." *United States v. Shirley*, 214 F. Supp. 3d 1124, 1144 (D.N.M. 2016). The United States' view is that the term "compound" is not prejudicial at all—let alone unduly prejudicial. **Doc. 926 at 3**.

Using the word "compound" is dissimilar from the oft-sought ruling that prohibits the Government from referring to an alleged victim as "victim" during the trial. *See United States v. Holt*, No. 21- 205, 2022 U.S. Dist. LEXIS 122681, at *3 (E.D. Okla. July 11, 2022) ("[T]he parties shall acknowledge Defendant's presumption of innocence by using the term 'alleged victim' and shall instruct their witnesses to do the same."). Unlike referring to an "alleged victim" as "victim," there is nothing intrinsic in the word "compound" that undermines the Defendants' presumption of innocence (nor is the term inherently conclusory). In proving this point, the Government cites to Merriam-Webster's online dictionary wherein it describes a compound as "a fenced or walled-in area containing a group of buildings and especially residences." **Doc. 926 at 3–4**; *Compound*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/compound (last visited Aug. 29, 2023). As examples, Merriam-Webster offers both "a prison compound" and "an embassy compound."

The Court finds the term "compound" is relevant, probative, and not substantially outweighed by a danger of unfair prejudice. The configuration, structure, and design of the compound has a tendency to make the Defendants' alleged criminal plan more probable. To the extent the Defendants wish to use other terms—they are certainly free to do so. But, as explained below, the Court will not be prohibiting the Government from using their word of choice.

**III. The plain meaning of "compound" is more accurate than the alternatives**

Defendants claim the word "compound" is "undefined but unquestionably negative." **Doc.**

**899 at 3**. In this vein, they propose the Government use more "neutral, non-suggestive term[s]" such as property, residence, or home. *Id*. The Court disagrees with the assertion that "compound" is undefined and negative. A search through the pages of any dictionary provides an answer to the question, "What is compound"? As explained *ad nauseam* below, the answer is uncomplicated: It simply means an enclosed building. *See, e.g.*, Merriam-Webster's Collegiate Dictionary 236 (10th ed. 1999) (defining a compound as "a fenced or walled-in area containing a group of buildings and especially residences"); Webster's New World Dictionary, Third College Edition 286 (1988) (defining a compound as "an enclosed space with a building or group of buildings within it"); The American Heritage Dictionary 379 (4th ed. 2006) (defining a compound as "a building or buildings, especially a residence or group of residences, set off and enclosed by a barrier"). Perhaps most illustrative in demonstrating the lack of negativity associated with the term "compound" is the Oxford English Dictionary's example from an 1860's book: "There we saw many pretty thatched cottages standing in little compounds, or yards, hedged round with a kind of prickly fence." 3 Oxford English Dictionary 629 (2d ed. 1989) (citing 1 Mary Martha Sherwood, *The Lady of the Manor* 79 (1860)).

Assuming the term "compound" has the potential for a negative association, the Court is unable to find a word that more accurately describes Lot 28 and the structural additions made to the real property. As the Government explains, the word compound is "no more suggestive" than the Defendants' proposed alternatives of property, residence, or home. **Doc. 932 at 4; Doc. 899 at 3**. To this end, the Court is "mak[ing] a special effort" to assure this message is delivered. *See Dusenbery v. United States*, 534 U.S. 161, 170 (2002) (referencing the movie "Saving Private Ryan").

Lot 28 was not the Defendants' "property." **Doc. 778**. A survey of all readily available

6

dictionaries confirms that "property" is something "owned" or "possessed."[2] Black's Law Dictionary defines "property" as "[a]ny external thing over which the rights of possession, use, and enjoyment are exercised." *Property*, BLACK'S LAW DICTIONARY (11th ed. 2019). The Defendants were neither owners nor legal possessors of Lot 28. The land was not the Defendants' property by ordinary usage of the word, let alone the legal definition. As such, this alternative term is unsuitable to order the Government to use in the stead of the term compound.

The term "residence" is particularly nebulous. A "residence" refers[3] to a house, building, or dwelling. A "house" refers to a "home, dwelling, or residence." *House*, BLACK'S LAW DICTIONARY (11th ed. 2019). Black's Law Dictionary does not have an entry for "building," so instead the Court relies on its ordinary meaning. As such, a "building" is defined as a "roofed and walled structure built for permanent use." Merriam-Webster's Collegiate Dictionary 150 (10th ed. 2002); Webster's Third New Int'l Dictionary 292 (1971) (defining a building as "any roofed and walled structure constructed for permanent use"). Furthermore, a "dwelling" is defined as "a shelter (such as a house) in which people live." *Dwelling*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/compound (last visited Aug. 29, 2023). At the same time, Black's Law Dictionary cross-references "residence" to the term "domicile."[4] *Residence*, BLACK'S LAW DICTIONARY (11th ed. 2019). Needless to say, this largely circular definition

---

[2] *See, e.g.*, Merriam-Webster's Collegiate Dictionary 935 (10th ed. 1999) (defining property as "something owned or possessed; a piece of real estate"); Webster's New World Dictionary, Third College Edition 1078 (1988) (defining property as "the right to possess, use, and dispose of something; ownership" as well as "a specific piece of land or real estate"); The American Heritage Dictionary 1405 (4th ed. 2006) (defining property as "something owned" and "something tangible or intangible to which its owner has legal title").

[3] *See, e.g.*, Merriam-Webster's Collegiate Dictionary 996 (10th ed. 1999) (defining a residence as "a building used as a home: DWELLING"); Webster's New World Dictionary, Third College Edition 1142 (1988) (defining a residence as "dwelling place; abode; especially a house"); The American Heritage Dictionary 1483 (4th ed. 2006) (same).

[4] The second sense of the term "domicile" is defined as "[t]he residence of a person or corporation for legal purposes." *Domicile*, BLACK'S LAW DICTIONARY (11th ed. 2019). *See also* R.H. Graveson, *Conflict of Laws* 185 (7th ed. 1974) ("Domicile is a conception of law employed for the purpose of establishing a connection for certain legal purposes between an individual and . . . territory . . . .").

7

provides little clarity. Nevertheless, the Court is able to conclude that the Defendants did not live in a "roofed and walled structure built for permanent use," nor did they live in a house in the typical sense of the word. Accordingly, the Court will not order the Government to use "residence" as an alternative to "compound."

For much the same reasons, use of the word "home" is not an accurate descriptor of Lot 28. Obviously, "the concept of 'home' is also multifaceted." *Monasky v. Taglieri*, 140 S. Ct. 719, 734 (2020) (Alito, J., concurring). The words "home" and "house" are extremely similar; and both evoke the image of a building with a roof, walls, floors, and permanent attachments. As applied here, this word is inaccurate. Referring to Lot 28 as the Defendants' "home" carries with it the undertones of Fourth Amendment[5] protections—arguments this Court already decided. **Doc. 778**. The Court also notes that despite the Defendants' claim that "compound" is a loaded word; several definitions of "home" have menacing connotations. *See* Merriam-Webster's Collegiate Dictionary 554 (10th ed. 1999) (defining a home as a "base of operations"); The American Heritage Dictionary 839 (4th ed. 2006) (defining home as "a headquarters; a home base").

In this case, the Defendants were living on the wrong plot of land. As such, Lot 28 was not (nor could it be) their property, residence, or home. Furthermore, none of these alternate words more accurately describe a walled-in encampment with underground tunnels and a firing range. Quite simply, Lot 28 was the very definition of a compound—insofar as it contained multiple structures (the box truck and tented enclosure) surrounded by a wall. Use of this term is not unduly prejudicial to Defendants. *See* Fed. R. Evid. 403.

---

[5] The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, *houses*, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV (emphasis added); *see also Kyllo v. United States*, 533 U.S. 27, 31 (2001) (explaining freedom in one's "*own home*" are "the very core" of Fourth Amendment jurisprudence) (emphasis added); *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (explaining the Fourth Amendment protects *homeowners*) (emphasis added).

At bottom, the Court is not persuaded that the term "compound" has a negative connotation—nor can it find any sources indicating inexorable linkage with terrorism, separatism, militarism, or aggression. Describing Lot 28 as a compound "adds context and dimension" to the Government's case and the danger of unfair prejudice (if any) is not substantially outweighed by the term's probative value so as to "affect adversely the jury's attitude" toward the Defendants. *Gonzalez*, 110 F.3d at 941; *United States v. Cellicion*, 848 F. App'x 362, 366 (10th Cir. 2021) (unpublished opinion) (quoting *United States v. Merritt*, 961 F.3d 1105, 1115 (10th Cir. 2020)). The word is innocuous and not unfairly prejudicial. Accordingly, the Court will not exclude it.

## CONCLUSION

For the foregoing reasons, the Court concludes use of the term "compound" is relevant and probative. Defendants failed to establish how employing this term is unfairly prejudicial under Rule 403. The Defendants' Motion (**Doc. 899**) is therefore **DENIED**.

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE