**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

———————————

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                No. 18-CR-2945-WJ

JANY LEVEILLE,
SIRAJ IBN WAHHAJ,
HUJRAH WAHHAJ,
SUBHANAH WAHHAJ, and
LUCAS MORTON,

Defendants.


**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART THE UNITED STATES' OMNIBUS MOTION IN LIMINE TO EXCLUDE
DEFENSE ARGUMENTS AND EVIDENCE**


    **THIS MATTER** is before the Court on United States' Omnibus Motion in Limine to Exclude

Defense Arguments and Evidence (**Doc. 897**). The Defendants filed a response in opposition (**Doc.

938**), to which the United States filed a reply (**Doc. 943**), and the Defendants thereinafter filed a

surreply (**Doc. 964**). Having considered the written arguments of counsel as well as the applicable

law, the Court finds the Government's motion is well-taken in part and, therefore, is **GRANTED

IN PART** and **DENIED IN PART**.

## PROCEDURAL BACKGROUND

    The United States initiated their case against Defendants by criminal complaint on August

31, 2018. **Doc. 1**. Defendants were indicted by a federal grand jury in September 2018 and again

by superseding indictment in March 2019. **Docs. 25, 85**. Defendants[1] are currently indicted on

---

[1] Defendants Hujrah Wahhaj and Subhanah Wahhaj are not charged in Count 3 and Defendant Siraj ibn Wahhaj is
not charged in Counts 6 or 7.

seven counts: (1) Conspiracy to Provide Material Support to Terrorists; (2) Providing Material Support to Terrorists (3) Conspiracy to Murder an Officer or Employee of the United States; (4) Conspiracy to Commit an Offense Against the United States; (5) Possessing a Firearm While Unlawfully in the United States; (6) Conspiracy to Commit Kidnapping; and (7) Kidnapping in violation of 18 U.S.C. §§ 2339A, 2339A & 2, 1117, 371, 922(g)(5) & 2, 1201(c), and 1201(a) & 2, respectively. **Doc. 85**.

In order to properly set the stage for the analysis below, the Court must first recount the details of the numerous filings in this case. To date, there are over nine-hundred docket entries— including approximately one-hundred pretrial defense motions. Resulting from the barrage of opposed motions, the Court has issued several dozen memoranda opinions and orders. Of particular importance here are the Court's prior rulings on the motions to dismiss, suppress, sever, and exclude expert testimony[2]. **Docs. 543, 570, 710, 778, 873, 912**.

## APPLICABLE LAW

The Government filed an Omnibus Motion in Limine to Exclude (**Doc. 897**) various arguments or evidence by Defendants at trial. In each instance, the Government contends the excludable evidence or arguments are irrelevant under Rules 401–403.

Any evidence sought to be admitted at trial must be relevant. Relevant evidence is that which tends to "make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401; *see Old Chief v. United States*,

---

[2] MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS – MISSING ELEMENT (**Doc. 543**); MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS INDICTMENT FOR OUTRAGEOUS GOVERNMENT CONDUCT (**Doc. 570**); MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO SUPPRESS INVOLUNTARY STATEMENTS (**Doc. 710**); MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO SUPRESS EVIDENCE FOR LACK OF STANDING (**Doc. 778**); MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO SEVER TRIAL (**Doc. 873**); and MEMORANDUM OPINION AND ORDER GRANTING UNITED STATES' MOTION TO EXCLUDE THE TESTIMONY OF DR. SHUKI COHEN (**Doc. 912**).

519 U.S. 172, 177 (1997). "To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency. Relevant evidence is not confined to that which directly establishes an element of the crime." *United States v. Riego*, No. 21-596, 2022 U.S. Dist. LEXIS 165986, at *3 (D.N.M. Sept. 13, 2022) (quoting *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997)).

A district court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, or needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403. "The trial court has broad discretion to determine whether or not prejudice inherent in otherwise relevant evidence outweighs its probative value." *United States v. Youts*, 299 F.3d 1312, 1319 (10th Cir. 2000) (citing *United States v. Esch*, 832 F.2d 531, 535 (10th Cir. 1987)).

Furthermore, a district court has broad discretion to determine whether evidence is relevant—and to exclude irrelevant evidence. *Ryan v. Dep't of the Air Force*, 511 F. App'x 687, 692 (10th Cir. 2013); *see also United States v. Mann*, 884 F.2d 532, 537 (10th Cir. 1989). A district judge enjoys broad discretion with respect to the presentation of proof and the handling of evidentiary questions. *See, e.g.*, Fed. R. Evid. 104(a) ("[t]he court must decide any preliminary question about whether . . . evidence is admissible."); Fed. R. Evid. 611(a) (empowering district courts to exercise "reasonable control" over mode and presentation of evidence).

## DISCUSSION

### I. Government's Motion to Exclude Various Defense Evidence and Defense Argument

The Government's Omnibus Motion in Limine to Exclude (**Doc. 897**) contains fifteen specific requests for rulings prohibiting Defense arguments or evidence. Four specific arguments the Government seeks to exclude were unopposed. **Doc. 897 at ¶¶ 1–2, 13, 15; Doc. 938**. As

such, the Court **GRANTS** these Government requests. *See infra* ¶ I.A.1–3. Additionally, as the Defendants point out, several of the requests simply ask for compliance with the Federal Rules of Evidence or Federal Rules of Criminal Procedure. These combined requests for adherence to the rules are **DENIED** without prejudice as unripe. *See infra* ¶ I.B.1–6. The Court now addresses each request to exclude in turn.

## A. Unopposed exclusion of arguments and evidence

Portions of the United States' pleading are unopposed. Having reviewed the parties' briefing and the applicable law, the Court finds these parts of the Government's motion are well-taken and should be **GRANTED**.

## 1. Allegations of Government misconduct, conspiracies, or selective prosecution

The Government requests an order preventing argument and evidence about allegations of conspiracies, governmental misconduct, or selective prosecution. **Doc. 897 at 2–5**. Defendants agree that evidence regarding allegations of government conspiracies and selective prosecution should not be admitted at this time. **Doc. 938 at 1–2**. These would-be arguments are not relevant to any fact of consequence and fail the balancing test under Rule 403. *See United States v. Capehart*, No. 18-2426, 2020 U.S. Dist. LEXIS 245304, at *10 (D.N.M. Dec. 31, 2020) (citing *United States v. Henthorn*, 864 F.3d 1241, 1249 (10th Cir. 2017)); *see also* Fed. R. Evid. 401–403. Of note, the Court already rejected similar arguments in the Defendants' motion to dismiss. *See* **Doc. 570** (denying motion to dismiss for outrageous government conduct). At the same time, the Court acknowledges the Defendants have preserved these issues for future decision by higher courts. **Docs. 476, 525, 938**; *see United States v. Mejia-Alarcon*, 995 F.2d 982, 986–87 (10th Cir. 1993); *see also* Fed. R. Evid. 103(a); Fed. R. Crim. P. 12(b)(3)(A)(iv).

The Court therefore **GRANTS** the Government's unopposed motion to exclude

Defendants from alleging conspiracy theories of government misconduct or selective prosecution.

**2. Reference to potential sentences, penalties, or punishment**

The Government argues that any reference to potential penalties, sentences, or punishment should be excluded at trial. **Doc. 897 at 35–37**; *see United States v. Dodge*, No. 16-1697, 2018 U.S. Dist. LEXIS 114510, at *5 (D.N.M. July 9, 2018) (citing *Shannon v. United States*, 512 U.S. 573, 579 (1994)). Defendants only oppose this requested relief insofar as such a ruling reciting a "rote legal principle[]" would be unhelpful. **Doc. 938 at 7–8**.

The United States' argument is well-taken. "[T]he jury's role is to determine guilt or innocence, not to engage in sentencing." *United States v. Clay*, No. 22-1841, 2023 U.S. Dist. LEXIS 73771, at *4 (D.N.M. Apr. 25, 2023) (citing *United States v. Greer*, 620 F.2d 1383, 1384–85 (10th Cir. 1980)). The Court **GRANTS** the Government motion to exclude such evidence or argument.

**3. Information known only to the Defendants**

The United States seeks to prohibit "Defendants and their counsel from, while the jury is present, introducing any evidence, making any statement, or asking any questions regarding any information or facts which could only otherwise come to the jury's attention through the sworn testimony of the Defendants." **Doc. 897 at 34**. The United States' concern appears to be that one codefendant might render an impermissible hearsay statement at trial. Defendants do not address this part of the Government's motion, but ultimately argue "[t]here is no reason for an order articulating evidence truisms without reference to specific proffers of evidence and specific objections to those proffers." **Doc. 938 at 8**. The Court will, of course, apply the rules of evidence—including the Rule Against Hearsay—at trial.

Nevertheless, "[i]n opening statements, counsel may reference and summarize the evidence

that counsel, in good faith, believes will be presented at trial, including information to which a client may testify." *Clay*, 2023 U.S. Dist. LEXIS 73771, at *4. Of course, the United States may raise hearsay objections at trial if, and when, appropriate. *See United States v. Calderon*, No. 22-113, 2022 U.S. Dist. LEXIS 222585, at *2 (D.N.M. Dec. 9, 2022). In this respect, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to exclude information known only to the Defendants.

## B. Hearsay statements, inappropriate legal standards, pretrial rulings, plea negotiations, offers to stipulate, and Defense exhibits

The Government asks the Court for a pretrial ruling to exclude hearsay, inappropriate legal standards, pretrial rulings, plea negotiations, offers to stipulate, and Defense exhibits. **Doc. 897 at 22–23, 27–31, 33–34, 35**. Defendants oppose these parts of the motion because such orders would be unhelpful and unnecessary. **Doc. 938 at 7–8**.

The Court acknowledges the Government's request to exclude hearsay, inappropriate legal standards, pretrial rulings, plea negotiations, offers to stipulate, and exhibits are firmly rooted in both the Rules of Evidence and the Rules of Criminal Procedure. Given the lack of specificity, such motions to exclude are premature—and the Court anticipates all parties will follow the rules of evidence, controlling case law, and Court's prior rulings.

As detailed below, the Court **DENIES** without prejudice, as unripe, the requests to categorically exclude these categories of evidence or argument. The Court reserves ruling as to specific issues that may arise during trial. As such, the parties can (and should) raise specific objections to specific evidence or argument that fall within these categories at trial.

### 1. Hearsay statements

The United States' motion contains no specific hearsay statements—instead requesting the Court "exclude any out-of-court statement, offered for the truth of the matter asserted, without a

valid hearsay exception." **Doc. 897 at 22**. The Government is essentially asking the Court to make broad rulings on very general disputes. Because the Court declines to issue an advisory opinion to a nonspecific standing hearsay objection, this part of United States' motion is **DENIED** without prejudice. Counsel may object throughout trial as necessary and appropriate.

**2. Inappropriate legal standards**

The Government asks the Court to prohibit the Defendants from "arguing or improperly stating the law in front of the jury." **Doc. 897 at 27**. The Government's concern is not yet ripe— as it pertains to arguments that *may* happen. *See Texas v. United States*, 523 U.S. 296, 300 (1998) (explaining a matter is "not ripe for adjudication if it rests upon contingent future events that may not occur . . . ."). The Court will instruct the jury on the meaning of relevant legal terms, statutes, elements, and definitions. If the Defendants or counsel provide the jury an inconsistent or incorrect definition—something that the Court considers highly unlikely—then the Court will take up the matter in a bench conference. The Court **DENIES** this part of the United States' motion to exclude, with leave to renew should the issue arise.

**3. Pretrial rulings**

In citing to Federal Rules of Evidence 401–403, the United States moves to "preclude the Defendants and their counsel from, while the jury is present, introducing any evidence, making any statement, or asking any questions regarding the contents of, or rulings on, any motions filed by either the Defendants or the Government prior to trial." **Doc. 897 at 30**. When a trial judge has made a ruling without equivocation, "the parties are entitled to 'treat the ruling as the law of the case' and to rely on it." *Mejia-Alarcon*, 995 F.2d at 986 (quoting *Cook v. Hoppin*, 783 F.2d 684, 691 n.2 (7th Cir. 1986)). The Court is confident the parties will abide by its rulings. Therefore, this part of the motion is **DENIED** without prejudice.

If, during the course of trial, any party believes a pretrial ruling has been violated, then counsel should object and seek to approach.

### 4. Plea negotiations

Citing the same rules, the Government seeks to preclude the Defendants and their counsel from "introducing any evidence, making any statement, or asking any questions regarding the occurrence and/or substance of any plea negotiations." **Doc. 897 at 33**.

As a general matter, both the Federal Rules of Evidence and Rules of Criminal Procedure bar the admissibility of plea negotiations. Fed. R. Evid. 401–403, 410; Fed. R. Crim. P. 11(f); *see United States v. Pena*, No. 20-1903, 2022 U.S. Dist. LEXIS 67219, at *3 (D.N.M. Apr. 12, 2022). As such, there is no need for the Court to preclude evidence or arguments that the Defendants cannot legitimately raise. The Court **DENIES** without prejudice this portion of the Government's motion (again allowing for specific objections at trial).

### 5. Offers to stipulate

The United States also seeks to preclude the Defendants and their counsel from "introducing any evidence, making any statement, or asking any questions regarding the Defendants volunteering, offering, or in any manner agreeing to stipulate to certain facts unless some agreement between all parties with approval of the Court has been arranged concerning a stipulation." **Doc. 897 at 34**; *see United States v. Schene*, 543 F.3d 627, 643 (10th Cir. 2008) (holding United States is entitled to prove its case as it sees fit). Rulings excluding[3] the admission of offers to stipulate are common. Here, however, the Government's motion contains no specifics or particulars—instead acknowledging the issue "may be moot." **Doc. 897 at 34**.

---

[3] *See e.g.*, *United States v. Todacheene*, No. 20-1325, 2021 U.S. Dist. LEXIS 87873 (D.N.M. May 6, 2021); *United States v. Johnson*, No. 18-2665, 2020 U.S. Dist. LEXIS 119630 (D.N.M. Jan. 24, 2020); *United States v. Carmona*, No. 18-10064, 2019 U.S. Dist. LEXIS 16031 (D. Kan. Jan. 31, 2019).

At this time, the Court **DENIES** the Government motion to exclude references to offers to stipulate without prejudice to renewal of the request should a specific issue arise at trial.

**6. Defense exhibits**

The United States seeks to preclude Defendants and their counsel from "introducing any evidence, making any statement, or asking any questions regarding defense exhibits that have not previously been supplied to counsel for the United States." **Doc. 897 at 35**.

At this point, a lack of defense exhibits could mean either: (1) that no defense exhibits will be introduced, or (2) that there has been a failure to abide by the discovery order. Given the lack of specifics in the pleading, the United States' motion on this point is **DENIED** without prejudice as unripe.

The Court reminds the parties of their reciprocal discovery obligations pursuant to Federal Rule of Criminal Procedure 16(d)(2) and will reconsider this ruling, if necessary, during the course of trial.

**C. Evidence of Defendants' absence of criminal conduct or "good conduct"**

The Government contends that because the "Defendants are not charged with 'ceaseless criminal conduct,'" any evidence of noncriminal or "good" conduct is irrelevant. As such, the Government requests an order preventing Defendants from offering evidence of their good conduct or absence of criminal conduct. **Doc. 897 at 6–9**. Defendants concede that the evidence of surveillance footage in Georgia is not relevant; however, they argue that "daily activities, to include prayer and parenting young children" is relevant and admissible. **Doc. 938 at 2–4**.

Here, the Defendants are not charged with "ceaseless" criminal activity, but rather with overlapping conspiracies revolving around the kidnapping of JOHN DOE and their "prepar[ation] for attacks on government military and other institutions" between October 2017

and August 2018. **Doc. 85 at 2–4; Doc. 897 at 6–9; Doc. 943 at 1–4**. Evidence that the Defendants prayed or parented children is not relevant to any of the charges. *United States v. Jianyu Huang*, No. 12-1246, 2014 U.S. Dist. LEXIS 204913, at *2–3 (D.N.M. June 26, 2014) ("[E]vidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant." (quoting *United States v. Dobbs*, 506 F.2d 445, 447 (5th Cir. 1975)). Simply because the Superseding Indictment (**Doc. 85**) alleges long-running offenses does not mean the Defendants engaged in "ceaseless criminal conduct." *See United States v. Scarpa*, 987 F.2d 63, 70 (2d Cir. 1990) (rejecting the relevance and admissibility of noncriminal conversations wherein the indictment charged a years-long RICO conspiracy). It is well established that evidence of a Defendant's noncriminal conduct is generally irrelevant. *Jianyu Huang*, 2014 U.S. Dist. LEXIS 204913, at *2 (citing *Dobbs*, 506 F.2d at 447); *United States v. Estrada*, 969 F.3d 1245, 1273 (11th Cir. 2020); *United States v. Daulton*, 266 F. App'x 381, 386 (6th Cir. 2008); 1A Wigmore on Evidence § 56.1 (Tillers Rev. 1983). Accordingly, evidence of the Defendants' mundane, noncriminal conduct is irrelevant here.

Defendants contend the evidence of their daily activities "intrinsic to the crimes charged." **Doc. 938 at 3**. In furtherance of this point, they explain the evidence will provide the jury with "critical context and background" information. *Id*. While acknowledging circumstances exist wherein intrinsic evidence is necessary to connect the factual circumstances of the crime or provides context to the jury, evidence of the Defendants' daily routines is not "intrinsic" of the crimes charged.

Intrinsic evidence is that which is "directly connected to the factual circumstances of the crime." *United States v. Murry*, 31 F.4th 1274, 1290–91 (10th Cir. 2022). Intrinsic evidence is admissible subject to Rule 403 balancing. *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011). By comparison, extrinsic evidence is that which "is extraneous and not intimately connected

or blended with the factual circumstances of the charged offense." *Murry*, 31 F.4th at 1291. Defendants' proffered evidence regarding daily activities is not intrinsic to the charged offenses—as it neither undermines nor rebuts the Defendants' intent to commit the charged offenses.

Defendants' assertion that such evidence "tends to negate [their] guilt insofar as it supports the defenses that the object of the terrorism conspiracy was impossible to achieve," is meritless. **Doc. 938 at 3**. It is well settled that impossibility is not a defense to conspiracy charges. *See United States v. Roberts*, 14 F.3d 502, 511 (10th Cir. 1993) (criminalizing the agreement of the conspiracy irrespective of if "the illegal act does not materialize"); *United States v. Jordan*, 467 F. App'x. 782, 784 (10th Cir. 2012) ("That the crime agreed upon was in fact impossible to commit is no defense to the crime of conspiracy.") (first quoting *United States v. Corson*, 579 F.3d 804, 810 (7th Cir. 2009); then citing *United States v. Rodriguez*, 360 F.3d 949, 957 (9th Cir. 2004)).

In this case, specific instances of praying or parenting are not relevant or admissible. *See* Fed. R. Evid. 404(a), 404(b), 405(b). Such evidence is not so "inextricably intertwined" with the charged conduct that it is an "integral and natural part" of Defendants' case. *United States v. Johnson*, 42 F.3d 1312, 1316 (10th Cir. 1994). Likewise, Defendants' traits of religious piety and parenthood are not pertinent to the charges. *See* Fed. R. Evid. 404(a), 405(a). Absence of criminal conduct on specific occasions is not exculpatory (or relevant). *See United States v. Real*, No. 17-2955, 2018 U.S. Dist. LEXIS 106675, at *4 (D.N.M. June 25, 2018).

Instead, the Court finds such evidence would constitute impermissible character evidence. *See generally* Fed. R. Evid. 404–405. Evidence of good conduct (or a lack of criminal conduct) is generally "not admissible to negate criminal intent." *United States v. Ellisor*, 522 F.3d 1255, 1270 (11th Cir. 2008); *Government of Virgin Islands v. Grant*, 775 F.2d 508, 512 (3d Cir. 1985) ("[T]estimony as to the lack of prior bad acts is, in essence, testimony as to multiple instances of

good conduct, and its admission would appear to violate a strict reading of Rule 405(a).”). As posited, it appears Defendants hope to explain they were not continually engaged in criminal conduct because they had to pray and take care of the kids. Such evidence is run-of-the-mill inadmissible character evidence. *See United States v. Neighbors*, 23 F.3d 306, 310 (10th Cir. 1994). Defendants’ character is not an essential element of the charges—and the Tenth Circuit has continually emphasized that such evidence may be used only when character is in issue in a “strict sense.” *Perrin v. Anderson*, 784 F.2d 1040, 1045 (10th Cir. 1986). Character is not deemed essential unless “proof, or failure of proof, or the character trait by itself actually satif[ies] an element of the charge, claim, or defense.” *United States v. Herder*, 59 F. App’x 257, 264 (10th Cir. 2003) (quoting *United States v. Keiser*, 57 F.3d 847, 856 (9th Cir. 1995)). When, as here, character evidence would be used to circumstantially create an inference that a Defendant acted in conformity with his or her character, then Rule 405 only allows proof by reputation and opinion *if* the character trait is pertinent to the charges. Evidence regarding Defendants’ daily routine involving religious adherence and parenthood are not pertinent to the charges.

In sum, specific instances of Defendants’ “good conduct” (that is: praying and parenting), are inadmissible and irrelevant during Defendants’ case-in-chief. The Government’s motion to exclude is **GRANTED**. If the Government opens the door to this evidence, however, the Defendants may seek to introduce evidence on this subject after they raise the issue outside the presence of the jury.

### D. Defendants’ state of mind and mistaken beliefs

The United States seeks to prohibit Defendants from discussing their “claims of mistaken beliefs or state of mind about the legality of” kidnapping JOHN DOE. **Doc. 897 at 9**. Defendants argue that preventing testimony regarding Siraj ibn Wahhaj’s consent to take JOHN DOE, JOHN

DOE's consent, or their knowledge thereof would result in an unfair trial. **Doc. 938 at 4–5**.

Counts 6 and 7 of the Superseding Indictment (**Doc. 85**) charge Defendants Jany Leveille, Hujrah Wahhaj, Subhanah Wahhaj, and Lucas Morton with conspiring to kidnap and kidnapping JOHN DOE. The federal kidnapping statute excludes the taking of a minor by his parent in its proscribed conduct. 18 U.S.C. § 1201(a) ("Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, *except in the case of a minor by the parent thereof* . . . .") (emphasis added). The Tenth Circuit has boiled down the elements of the kidnapping offense to "(1) transportation in interstate commerce (2) of an unconsenting person who is (3) held for ransom, reward, or otherwise, (4) with such acts being done knowingly and willfully." *United States v. Walker*, 137 F.3d 1217, 1220 (10th Cir. 1998). Because of the parental exception, Siraj ibn Wahhaj, JOHN DOE's father, was not charged—or even mentioned—in Counts 6 or 7 of the Superseding Indictment.

At bottom, Defendants argue that because Siraj ibn Wahhaj cannot be charged with kidnapping, and because he participated in and assented to the taking of John Doe from Georgia to New Mexico, then the other Defendants cannot—as a matter of law—be charged with kidnapping either. **Doc. 938 at 4–6; 964**. This is a similar argument the Court addressed (**Doc. 543**) in response to Defendants' motion to dismiss (**Doc. 468**).

Two overarching principles guide the Court's analysis here: (1) is this a specific or general intent crime? and (2) is the parental exception an element or an affirmative defense?

## 1. Kidnapping is a general intent crime

The essence of the crime of kidnapping only requires general intent. *See United States v. Jackson*, 248 F.3d 1028, 1031 (10th Cir. 2001) ("Based on a 'plain language' analysis, the district court was correct in concluding the kidnapping statute requires only general intent.").

The *Jackson* Court cites to two cases explaining that a defendant need only hold or confine the victim; without actual knowledge that holding and confining the victim was against the law. *See United States v. Sneezer*, 983 F.2d 920, 922 (9th Cir. 1992); *see also United States v. Blocker*, 32 M.J. 281, 283–84 (C.M.A. 1991). In this case, the Defendants need not have intended to violate the law to commit the crime of kidnapping, but instead must have intended to do the act proscribed—that is: take, hold, or conceal JOHN DOE. *See United States v. Eason*, 854 F.3d 922, 925 (7th Cir. 2017) (determining the children were "held" because they lived in the defendant's house, in her custody, under her control, unable to leave). It is not a defense for the Defendants to say they did not know that the law prohibited taking, holding, and concealing JOHN DOE. *See Rehaif v. United States*, 139 S. Ct. 2191, 2198 (2019) (explaining ignorance of or mistake of law is not a defense to a criminal charge unless it undermines the defendant's mental state).

With respect to Count 6, the specific intent required for finding the existence of a conspiracy is merely "the intent to advance or further the unlawful object of the conspiracy." *United States v. Blair*, 54 F.3d 639, 642 (10th Cir. 1995). For Count 7, the specific intent aspect only requires proof of transportation across state lines. *See Jackson*, 248 F.3d at 1031; Use Note, 10th Cir. Crim. Pattern Jury Instr. 2.55 (2021) (KIDNAPPING); *United States v. Bankston*, 603 F.2d 528, 532 (5th Cir. 1979) (explaining that a conviction under Section 1201 "does not require that an offender know he was crossing state lines [with the victim]").

Title 18 U.S. Code Section 1201 makes it unlawful to seize, confine, inveigle, decoy, kidnap, abduct, or carry away and hold a person who is willfully transported in interstate commerce. 18 U.S.C. § 1201(a)(1). The specific intent argument holds no water. Defendants will not be deprived of a fair trial if they are precluded from offering evidence regarding their

14

knowledge of Siraj ibn Wahhaj's parental status. **Doc. 938 at 5–6**. In fact, the United States does not oppose Defendants from presenting evidence as to Siraj ibn Wahhaj's parental status or the Defendants' knowledge of his parental status. **Doc. 943 at 5**.

Argument from the Defendants that they were unaware they violated the law is no defense. *See United states v. Games-Perez*, 667 F.3d 1136, 1142 (10th Cir. 2012) (explaining a defendant's lack of knowledge of the "legal consequences" of his actions is "simply ignorance of the law, which . . . has never excused disobeyance of a law" (citing *United States v. Capps*, 77 F.3d 350, 353 (10th Cir. 1996)). Arguing "I thought the law applied differently than it does" is not a defense to prosecution. *Capps*, 77 F.3d at 353; *see also United States v. Rampton*, 762 F.3d 1152, 1157 (10th Cir. 2014) (citing *Cheek v. United States*, 498 U.S. 192, 199 (1991)).

"[A]n honest mistake of fact negates criminal intent, when a defendant's acts would be lawful if the acts were as he supposed them to be." *United States v. Cook*, 967 F.2d 431, 433 (10th Cir. 1992) (quoting *United States v. Barker*, 546 F.2d 940, 946 (D.C. Cir. 1976)). For a mistake of fact defense to be relevant, the Defendants must demonstrate it undermines their criminal intent. *Id*. Because kidnapping is a general intent crime (with the exception of the jurisdictional element regarding transportation across state lines), the fact the Defendants intended to travel with Siraj ibn Wahhaj does not operate as an excuse. Unless Defendants did not know JOHN DOE was being transported[4] across state lines, then there is no mistake of fact

---

[4] Even this argument is attacking the specific intent to transport JOHN DOE is tenuous—as "willfully" in Section 1201(a) does not necessarily require specific intent. *Jackson*, 248 F.3d at 1031 n.2. Furthermore, there is a long line of cases in the Tenth Circuit explaining a defendant's knowledge of the jurisdictional element is not required. *See e.g.*, *United States v. Speir*, 564 F.2d 934 (10th Cir. 1997) (rejecting the need to prove intent for the "jurisdictional facts" of an offense); *United States v. Montoya*, 716 F.2d 1340 (10th Cir. 1983) (rejecting the argument that ignorance of federal jurisdiction negates the requisite mens rea); *United States v. Balano*, 618 F.2d 624, 630 (10th Cir. 1979) ("We do not require the government to prove the defendant's knowledge of jurisdictional elements."); *United States v. Newson*, 531 F.2d 979, 982 (10th Cir. 1976) (holding knowledge of jurisdictional element not required); *see also United States v. Feola*, 420 U.S. 671, 685 ("The concept of criminal intent does not extend so far as to require that the actor understand not only the nature of his act but also its consequence for the choice of a judicial forum.").

15

that is a relevant defense to the elements of kidnapping. The obvious flaw in this mistake of fact argument is that knowledge of "lawfulness" or "unlawful[ness]" of the Defendants' actions are immaterial to the kidnapping charges. **Doc. 964 at 7**.

Defendants may very well have believed they had Siraj ibn Wahhaj's permission to take JOHN DOE, but this mistake of fact or mistake of law is not relevant.

## 2. The parental exception is an affirmative defense

"[T]he parent" of JOHN DOE is not charged in Count 6 or 7. Therefore, the Defendants charged with conspiracy to commit kidnapping and kidnapping cannot insulate themselves with the parental exception. Quite obviously, the crux of a conspiracy requires that "a conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense." *Salinas v. United States*, 522 U.S. 52, 65 (1997). Contrary to Defendants' assertions, parenthood is not an element of the crime of kidnapping, but rather an affirmative defense—one which they cannot assert themselves as non-parents. *See United States v. Torres*, 2023 U.S. Dist. LEXIS 49068, at *10–12 (D.N.M. Mar. 22, 2023) (citing *United States v. Rodriguez*, 739 F.3d 481 (10th Cir. 2013)). This Court has previously concluded the parental exception is an affirmative defense because it can be omitted from the kidnapping statute "without doing violence to the definition of the offense," and there is no "discernible legislative intent to the contrary." *Rodriguez*, 739 F.3d at 488. Likewise, the Tenth Circuit's Pattern Jury Instruction does not include the parental exception as an element of the crime. *See* 10th Cir. Crim. Pattern Jury Instr. 2.55.

Because Section 1201 does not assign the Government the burden of proving the nonexistence of parenthood, it is presumed that Congress intended to preserve the common-law rule that affirmative defenses are for the Defendants to prove. *See Dixon v. United States*, 548 U.S.

16

1, 13–14 (2006)); *see also* 4 W. Blackstone, Commentaries on the Laws of England 201 (1769). Since Jany Leveille, Hujrah Wahhaj, Subhanah Wahhaj, and Lucas Morton are not "the parent" of JOHN DOE—they were able to embark upon an endeavor that satisfied all the elements of the substantive offense. *Salinas*, 522 U.S. at 65. An exclusion built into a statute involves an affirmative defense rather than an element of the government's case. *See United States v. Basnett*, 735 F.3d 1255, 1257 (10th Cir. 2013).

A brief overview of kidnapping cases involving non-parents is informative here. In *Boettcher*, the Fourth Circuit did not foreclose the possibility that "hired" help to kidnap a child at the mother's behest could be prosecuted for kidnapping—indicating coconspirators are not able to aver themselves of the parental exception even when accompanied (or directed) to take the action by a parent. *United States v. Boettcher*, 780 F.2d 435, 437 (4th Cir. 1985). The Fourth Circuit's handling of the related *Sheek* cases further demonstrates who can cloak themselves in the parental exception. In these cases, the courts dismissed the kidnapping charges levied against the biological mother but affirmed the conspiracy and kidnapping charges against the non-parent stepfather. *Compare United States v. Sheek*, No. 93-5717, 1994 U.S. App. LEXIS 30509 (4th Cir. 1994) (unpublished table decision) (affirming a non-parent's conviction for kidnapping), *with United States v. Sheek*, 990 F.2d 150, 153 (4th Cir. 1993) (affirming the dismissal of the mother's indictment for kidnapping). Likewise, the Eighth Circuit also "strictly construed" the kidnapping statute when it refused to apply the parental exception to a stepfather. *Miller v. United States*, 123 F.2d 715, 718 (8th Cir. 1941).

Ultimately, the Defendants bear the burden of proof to establish the affirmative defense of the parental exception. *See Smith v. United States*, 568 U.S. 106, 110 (2013) (shifting the burden of an affirmative defense to the defendant is permissible when the defense does not negate an

element of the crime) (first citing *In re Winship*, 397 U.S. 358, 364 (1970); then citing *Patterson v. New York*, 432 U.S. 197, 210 (1977); and then citing *Martin v. Ohio*, 480 U.S. 228, 237 (1987) (Powell, J., dissenting)). A plain reading of Section 1201 makes clear that Congress only excludes parents—and only those whose parental rights are intact—from federal criminal sanctions. *United States v. Mobley*, 971 F.3d 1187, 1203 (10th Cir. 2020) ("[T]he plain language and legislative history of § 1201 shows Congress's intent to exclude parents from federal criminal sanctions for kidnapping and for threatening to kidnap their children."). The Defendants' argument for expanding the affirmative defense based on "except in the case of a minor by the parent thereof" proves too much. 18 U.S.C. § 1201(a).

Again, the Court repeats that arguing "I thought the law applied differently than it does" is not a defense to prosecution. *Capps*, 77 F.3d at 353. General intent only requires "that the defendant possessed knowledge with respect to the *actus reus* of the crime." *United States v. Taylor*, 454 F.3d 1075, 1081 (10th Cir. 2006) (quoting *Carter v. United States*, 530 U.S. 255, 268 (2000)). The Government need not prove the Defendants here had a specific and purposeful intent to break the law—so testimony about their mistaken beliefs is inconsequential.

The Government's motion to exclude arguments and evidence regarding the Defendants' state of mind and mistaken beliefs is **GRANTED**.

**E. "Brainwashing," coercion, and mental health**

The Government seeks to preclude Defendants from arguing they were "brainwashed," tricked, or part of a cult. **Doc. 897 at 14–22**. Defendants assert they should be allowed to present evidence regarding Jany Leveille's "mental condition and its effect on the other Defendants" pursuant to their right to provide a "complete defense." **Doc. 938 at 6–7**.

As the point of departure, a Defendant has no absolute right to present the defenses of

coercion, duress, or necessity at trial. *See United States v. Portillo-Vega*, 478 F.3d 1194, 1200–01 (10th Cir. 2007). A trial court exercises gate-keeping responsibilities when allowing or precluding affirmative defenses. *United States v. Al-Rekabi*, 454 F.3d 1113, 1125 (10th Cir. 2006). Unless a Defendant carries the burden on all the elements of an affirmative defense—the instruction should be denied. *Portillo-Vega*, 478 F.3d at 1199 (citing *United States v. Bailey*, 444 U.S. 394, 417 (1980)); *United States v. Butler*, 485 F.3d 569, 571–72 (10th Cir. 2007).

The Tenth Circuit uses "the terms duress, necessity, and justification interchangeably." *Butler*, 485 F.3d at 572, n.1 (citing *United States v. Leahy*, 473 F.3d 401, 406 (3d Cir. 2007)); *see also* 10th Cir. Crim. Pattern Jury Instr. 1.36 (2021) (COERCION OR DURESS)[5]. Both coercion and duress are affirmative defenses that are based on objective reasonableness. *See Dixon*, 548 U.S. at 17; *see also Dixon*, 901 F.3d at 1181. As such, the Defendants' "subjective beliefs are not controlling. *Dixon*, 901 F.3d at 1181.

Even when taken in the light most favorable to them, the Defendants' argument that they were "following a mentally ill person in the pursuit of an impossible end" is improper—as it cannot satisfy the elements of the defense. *Al-Rekabi*, 454 F.3d at 1121 (citing *United States v. Scull*, 321 F.3d 1270, 1275 (10th Cir. 2003)). Because Defendants' proffer is not able to "meet a minimum standard as to each element," there is no reason to allow such evidence. *Butler*, 485 F.3d at 572.

Defendants have not explained how evidence of alleged "brainwashing" negates intent—leading the Court to believe they plan to "present a dangerously confusing theory of defense more akin to justification or excuse." *United States v. Brown*, 326 F.3d 1143, 1147 (10th Cir. 2003)

---

[5] The elements of a coercion or duress defense are as follows:
1. the defendant was under an unlawful and present, imminent and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury to himself [or a family member, or others];
2. the defendant had no reasonable, legal alternative to violating the law, that he had no chance both to refuse to do the criminal act and also to avoid the threatened harm; and
3. a direct causal relationship could have been reasonably anticipated between engaging in the criminal action and avoiding the threatened harm.

(quoting *United States v. Cameron*, 907 F.2d 1051, 1067 (11th Cir. 1990)). These illusory "brainwashing" allegations are pie in the sky—and do not reflect the "rare" case where such mental health evidence should be admitted. *United States v. Worrell*, 313 F.3d 867, 874 (4th Cir. 2002); *see also* 18 U.S.C. § 17(a).

The Court will not allow arguments under the guise of duress or coercion that is impermissible mental health evidence. *See* Fed. R. Evid. 403. To allow this evidence would present an "inherent danger" of distracting the jury. *United States v. Martinez*, 923 F.3d 806, 815 (10th Cir. 2019); *see also Clark v. Arizona*, 548 U.S. 735, 776 (2006) ("Evidence of mental disease . . . can easily mislead."). To this end, the United States argues admitting such evidence would violate Rule 403. **Doc. 897 at 21**. The Court agrees. The probative value, if any, of the brainwashing claim is substantially outweighed by its tendency to confuse the issues and mislead the jury. *See* Fed. R. Evid. 403.

The Court also shares concerns that evidence of brainwashing and cult-type behavior would encourage jury nullification. *See, e.g.*, *United States v. Gorham*, 523 F.2d 1088, 1097–98 (D.C. Cir. 1975) (affirming trial court's refusal to admit evidence bearing no legal relation to the charges but which might encourage a "conscience verdict" of acquittal); *United States v. Lucero*, 895 F. Supp. 1421, 1426 (D. Kan. 1995) ("[D]efendants are not entitled to present evidence which is irrelevant for any purpose other than to provoke the finder of fact to disregard the law.").

The Government's motion to preclude the Defendants from introducing evidence about being brainwashed, coerced, or otherwise tricked is **GRANTED**.

**F. The quality of the law enforcement investigations**

The quality of a law enforcement investigation may "occasionally" affect the reliability of evidence at trial. *United States v. McVeigh*, 153 F.3d 1166, 1192 (10th Cir. 1998); *see also*

*Lowenfield v. Phelps*, 817 F.2d 285, 291–95 (5th Cir. 1987) (holding it was a reasonable trial strategy to argue "sloppy police work" to undermine the chain of custody); *United States v. Veal*, 23 F.3d 985, 989 (6th Cir. 1994) (upholding the district court's refusal to allow a defendant to show that the government's investigation was "sloppy" because "the jury would not be called upon to determine whether the government's investigation had been good or bad").

Accordingly, the facts surrounding the investigation "may become relevant *only* when they would affect the reliability" of particular evidence. *United States v. Charley*, No. 19-940, 2020 U.S. Dist. LEXIS 49093, at *32 (D.N.M. Mar. 20, 2020) (quoting *McVeigh*, 153 F.3d at 1192) (emphasis added). Absent a showing that "a particular piece of evidence, the quality of the government's witnesses, or the weight to be given [to] evidence produced by the investigation" are not reliable—such evidence is irrelevant. *United States v. Romero*, No. 21-559, 2023 U.S. Dist. LEXIS 38586, at *6 (D.N.M. Mar. 8, 2023).

Although there are occasions in which the quality of an investigation may become relevant, such evidence could also easily "cross the line into irrelevant evidence that could divert the jury's focus away from the trial issues." *Id*. As such, the Court **RESERVES RULING** until Defendants set forth an evidentiary foundation establishing a nexus between the reliability of a specific piece of evidence and the quality of the government's investigation.

This ruling does not prevent the parties from making objections at trial to specific questions or evidence that pertain to the quality of the investigation; nor does it prevent Defendants from attacking or impeaching the Government's evidence.

## G. Claims that Siraj ibn Wahhaj and Jany Leveille were married

Marriage forms the basis for an expansive list of governmental rights, benefits, and responsibilities, including: "taxation; inheritance and property rights; rules of intestate succession;

spousal privilege in the law of evidence; hospital access; medical decision making authority; adoption rights; the rights and benefits of survivors; birth and death certificates; professional ethics rules; campaign finance restrictions; workers' compensation benefits; health insurance; and child custody, support, and visitation rules." *Obergefell v. Hodges*, 576 U.S. 644, 670 (2015). That being said, such benefits require a *valid* marriage under state law. *Id*.

Here, the Court will not admit testimony claiming that Siraj ibn Wahhaj and Jany Leveille were married—nor will it permit testimony regarding Siraj ibn Wahhaj's belief that he divorced Hakima Ramzi. **Doc. 938 at 10**. A valid legal marriage requires some state governmental licensure or approval. *See United States v. Windsor*, 570 U.S. 744, 766 (2013) (regulating domestic relations is "an area that has long been regarded as a virtually exclusive province of the States") (quoting *Sosna v. Iowa*, 419 U.S. 393, 404 (1975)).[6] States control and regulate marriage—not the Federal Government. *See Windsor*, 570 U.S. at 766; *Reynolds v. United States*, 98 U.S. 145, 165 (1878) (explaining that although marriage is "a sacred obligation" it is "regulated by law"). Islamic law does not control the validity of a marriage in the United States. *See* Nathan B. Oman, *How to Judge Shari'a Contracts: A Guide to Islamic Marriage Agreements in American Courts*, 2011 Utah L. Rev. 287, 300–23 (2011).

Much the same, a valid divorce also requires state legal process. *See Boddie v. Connecticut*, 401 U.S. 371, 376 (1971) ("[W]e are unaware of any jurisdiction where private citizens may covenant for or dissolve marriages without state approval."). American courts have not recognized the unilateral Islamic law talaq[7] divorce. *See* Oman, *supra*, at 313 ("American courts have

---

[6] *See also* Jessica Pacwa, *Marriage and Divorce*, 24 Geo. J. Gender & L. 671 (2023) ("Though many see marriage as private, religious, and sacred, marriage is a legal relationship regulated by the state."); *Felder v. WMATA*, 174 F. Supp. 3d 524, 531 (D.D.C. 2016) ("[E]ach state has a significant governmental interest in regulation the legal rights of its married couples . . . .").

[7] Under traditional Islamic law, a "talaq" divorce allows a husband to unilaterally divorce his wife through oral or written pronouncement. *Mohammed S. v. Abeir E.*, No. 1980, 2023 Alas. LEXIS 81, at *4 n.4 (Alaska 2023).

uniformly refused to recognize such opportunistic talaqs, holding that to do so would violate state and federal constitutional provisions of equal protection and due process.").[8] Thus, despite the fact Siraj ibn Wahhaj told Hakima Ramzi "I divorce you," in December 2017, this declaration was void of legal effect.[9]

There is no evidence to suggest that the purported marriage between Siraj ibn Wahhaj and Jany Leveille was legally recognized by any state; nor is there any evidence to suggest Siraj ibn Wahhaj's marriage to Hakima Ramzi was legally dissolved. **Docs. 897, 938**. Such testimony has little, if any, probative value as to the required elements of Defendants' charges. Moreover, this evidence would obviously confuse the issues and mislead the jury—resulting in a "trial within a trial" on Siraj ibn Wahhaj's marital status. *See United States v. Beltran-Garcia*, 338 F. App'x 765, 771 (10th Cir. 2009); Fed. R. Evid. 403.

The Court therefore **GRANTS** this portion of the Government's motion to exclude.

## II. Motion to Admit *Res Gestae* Evidence

In addition to the fifteen-part motion to exclude evidence, the Government also seeks pretrial rulings on the admissibility of two pieces of background *res gestae* evidence.

The Tenth Circuit approves of using *res gestae* evidence when it "encompasses conduct 'inextricably intertwined with the charged crime such that a witness's testimony would have been confusing and incomplete without mention of the prior act.'" *United States v. Piette*, 45 F.4th 1142, 1155 (10th Cir. 2022) (quoting *United States v. Ford*, 613 F.3d 1263, 1267 (10th Cir. 2010) (quoting *Johnson*, 42 F.3d at 1316)); *see also United States v. Kimball*, 73 F.3d 269, 272 (10th Cir.

---

[8] *See, e.g.*, *Aleem v. Aleem*, 947 A.2d 489, 502 (Md. 2008) (holding that the recognition of talaq would violate the Maryland equal rights amendment); *Banu v. Saheb*, No. 287403, 2009 Mich. App. LEXIS 733, at *3–4 (Mich. Ct. App. 2009) (holding that recognition of talaq is violative of due process and contrary to public policy); *Seth v. Seth*, 694 S.W.2d 459, 463 (Tex. Ct. App. 1985) (holding that recognition of talak would be contrary to justice).

[9] *See Eberly v. Optimum Nutrition, Inc.*, 562 F. Supp. 2d 956, 961 n.2 (N.D. Ohio 2008) (explaining that "declaring a legal relationship . . . is not legally effective") (citing *The Office: Money* NBC television broadcast Oct. 18, 2007 (discussing how Michael Scott yelling "I DECLARE BANKRUPTCY!" was legally ineffective)).

1995) (permitting *res gestae* "when it provides the context for the crime, is necessary to a full presentation of the case, or is appropriate in order to complete the story of the crime on trial"). Such evidence is admissible when it will help the trier of fact to understand the charged offenses "by describing the context in which they arose." *United States v. Folse*, 163 F. Supp. 3d 898, 915 (D.N.M. 2015) (first citing *United States v. Ganadonegro*, No. 09-312, 2011 U.S. Dist. LEXIS 101548, at *13 (D.N.M. Aug. 30, 2011); then citing *United States v. Zuni*, No. 05-2369, 2006 U.S. Dist. LEXIS 95621, at *16 (D.N.M. July 7, 2006)). *Res gestae*, or intrinsic evidence, refers to "other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *United States v. Sangiovanni*, No. 10-3239, 2013 U.S. Dist. LEXIS 55103, at *10 (D.N.M. Mar. 20, 2013) (quoting *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)); *see also McVeigh*, 153 F.3d at 1203 (same). *Res gestae* evidence is subject to Rule 403 balancing and will be admissible so long as it has a proper probative value. *See Irving*, 665 F.3d at 1215 (Hartz, J., concurring). Moreover, for such evidence to be admissible, it must have "a causal, temporal, or spatial connected with the charged offense." *United States v. Alqahtani*, No. 20-82, 2020 U.S. Dist. LEXIS 234370, at *3 (D.N.M. Dec. 14, 2020) (quoting *Sangiovanni*, 2013 U.S. Dist. LEXIS 55103, at *10).

### A. Evidence of Siraj ibn Wahhaj's firearms training in Georgia

The United States seeks a pretrial ruling on the admissibility of evidence that Siraj ibn Wahhaj was under investigation by the FBI for extensive firearms training in Georgia. **Doc. 897 at 37–38**. The Defendants' object on the basis that such evidence is either Rule 404(b) in disguise or fails Rule 403 balancing. **Doc. 938 at 11–13**.

The Court agrees with the Government that this evidence is directly connected to the factual circumstances of the crimes in this case. First, Siraj ibn Wahhaj's extensive firearms training will help the jury understand how he was able to conduct firearms training for others at

the compound. And second, the investigation helps explain why Siraj ibn Wahhaj disliked the FBI.

Under these circumstances, evidence of the local tip to the FBI regarding Siraj ibn Wahhaj's firearms training is inextricably intertwined with proper evidence of the Defendants' alleged conspiracies and its admission is necessary for the Government to be able to give a full picture of the charged offenses. Defendants' objections are **overruled**.

### B. Evidence of ruqyah[10] being performed on other children

The United States also seeks a pretrial ruling on the admissibility of evidence that "other children at the compound were . . . subject to ruqyah" like JOHN DOE. **Doc. 897 at 38–39**. The Defendants' renewed their objection on the basis that such evidence is inadmissible under Rule 404(b) or Rule 403. **Doc. 938 at 11–13**.

Here, evidence of ruqyah being performed on the other children has a causal and temporal connection with the charged offenses. *Alqahtani*, 2020 U.S. Dist. LEXIS 234370, at *3. Such evidence is "inextricably intertwined with the charged crime[s]" while also making witness testimony both more complete and less confusing. *Piette*, 45 F.4th at 1155. Further, these events are critical in completing the story for the jury and are "necessary preliminaries to the crimes charged." *Irving*, 665 F.3d at 1212. Evidence of the ruqyah being performed (as well as the children's references to these experiences) will help the trier of fact to understand the charged offenses by "by describing the context in which they arose." *Folse*, 163 F. Supp. 3d at 915.

Under these circumstances, evidence that other children had ruqyah performed on them and thereafter told others about these experiences is inextricably intertwined with kidnapping charges. Such evidence necessary for the Government to be able to explain the necessary

---

[10] This Court heard testimony during the *James* hearing that explained "ruqyah" or "ruqya" is an Islamic cleansing ritual practice intended to remove black magic, "jinns," or "shaytans" from an individual (similar to a Catholic exorcism). **Doc. 878 (*James* Transcript) at 17:10–18:5.**

preliminaries of the charged offenses. Defendants' objections are **overruled**.

The Court makes explicit this ruling on admissible *res gestae* evidence does not undermine the previous Orders (**Docs. 710, 906**) regarding either the hearsay evidence of the children's interview or the "alleged child abuse" that was ruled inadmissible as direct evidence during the Government's case-in-chief.

## CONCLUSION

In sum, the Court finds and concludes that arguments and evidence concerning: (1) allegations of Government misconduct, conspiracies, or selective prosecution; (2) references to potential sentences, penalties, or punishment; (3) information known only to the Defendants[11]; (4) specific instances of Defendants' "good conduct" or absence of criminal conduct; (5) Defendants' state of mind and mistaken beliefs; (6) mental health, "brainwashing," and coercion; and (7) claims that Jany Leveille and Siraj ibn Wahhaj were married are inadmissible under Rules 401–403 and will be excluded.

The Court also finds the Government's generalized motion to exclude hearsay statements, inappropriate legal standards, pretrial rulings, plea negotiations, offers to stipulate, and Defense exhibits are unripe.

The Court also **RESERVES RULING** on the motion to exclude evidence and arguments on the quality of the law enforcement investigations.

Finally, the Court finds and concludes the evidence of Siraj ibn Wahhaj's firearms training and FBI investigation in Georgia as well as performance of ruqyah on the children are admissible as *res gestae*.

For the reasons herein stated, the United States' Omnibus Motion to Exclude Defense

---

[11] *See supra* ¶ I.A.3 (allowing such good faith proffers in opening statements).

Arguments and Evidence (**Doc. 897**) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

_____

CHIEF UNITED STATES DISTRICT JUDGE