IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cr. No. 18-CR-2945-WJ |
| | ) | |
| SIRAJ IBN WAHHAJ, | ) | |
| HUJRAH WAHHAJ, | ) | |
| SUBHANAH WAHHAJ, and | ) | |
| LUCAS MORTON, | ) | |
| | | |
| Defendants. | | |

**UNITED STATES' OBJECTIONS TO DEFENDANT SUBHANAH WAHHAJ'S
PROPOSED JURY INSTRUCTIONS**

The United States of America respectfully submits this response to the Court's order on

October 6, 2023, for objections to the Court's proposed jury instructions.    The United States has

one small objection to the Court's proposed jury instructions.    In addition, the United States

requests the addition of one instruction to the conspiracy courts, and the editing or clarification

of language in a handful of instructions.    The specific requests are detailed as follows:

1.       Proposed Jury Instructions 11 and 12:    The United States objects to the phrase at

the end of the paragraph in proposed instructions 11 and 12 beginning with "In the second

element . . ." where the instruction states that, if the jury determines that Abdul Ghani was of

such an age or mental state as to have been incapable of giving his consent . . . "you must

deterimine if [Abdul Ghani's] having been seized, confined, decoyed, abducted, carried away, or

held was against ***his parent's*** consent."    Doc. 983 at 21, 23.

The United States objects to the words "his parent's" in this context, and respectfully

requests that they be changed to "against his ***mother's*** consent" or, as an alternative, "against *a*

parent's consent."    As currently written, the instruction may be confusing or misleading to the

jury in that it could be read to suggest that a single parent's consent, such as Siraj Wahhaj's

consent in this case, is enough to completely extinguish the other parent's lack of consent—here,

Hakima Ramzi—merely by acting as a coconspirator in the seizing, confining, decoying,

abducting, carrying away, and holding of Abdul Ghani by the Defendants.    Such a reading

would be contrary to the law generally, as well as to the law of the case.

The Court has heard argument on this issue multiple times from the parties, and the

United States will not re-hash all of those arguments again here.    Rather, the United States notes

that the Court has made multiple rulings on this issue that have made clear that (1) Defendant

Siraj Ibn Wahhaj's biological fatherhood is an affirmative defense to the kidnapping charges

which does not and cannot transfer to the other Defendants (Doc. 962 at 19–20; Doc. 969 at 16–

18); (2) that Defendant Siraj Wahhaj is an unindicted coconspirator in the conspiracy to commit

kidnapping charged in Count 4 (Doc. 962 at 19–20); (3) that, other than possibly the

transportation across state lines element, the kidnapping offense charged in Count 5 is a general

intent crime (Doc. 969 at 13–16); and (4) arguments and evidence elicited to support arguments

that the Defendants were "unaware they violated the law" or that they "thought the law applied

differently than it does" are not relevant and may not be presented to the jury (Doc. 969 at 13–

16).

As is relevant to the Court's proposed jury instruction, the word "unlawfully" in the

elements of Counts 4 and 5 means the seizing, abducting, carrying away, holding, etc., was

against the consent of the victim, which is the essence of the crime of kidnapping.   *United*

2

*States v. Chatwin*, 326 U.S. 455, 464 (1946).    Where a victim is incapable of expressing a

recognizable will, then the victim's parents' will comes into question.    However, there is no

authority to suggest, and the Defendants have never cited any, that one parent can singlehandedly

extinguish the will or consent of another parent by participating in a kidnapping and a conspiracy

to kidnap a child away from the other parent.    In fact, as the Court has already ruled, the law

demostrates the opposite.    *See* Doc. 969 at 17 (describing cases where coconspirators have been

or are assumed to be liable for kidnapping conspiracy where a parent is one of the conspirators).[1]

Moreover, the Defendants' argument in their Rule 29 motion that the Georgia pick-up

orders and arrest warrant for Siraj Wahhaj were issued after the Defendants fled to New Mexico

with Abdul Ghani somehow alters the unlawfulness (i.e., the lack of consent by Abdul Ghani or

his mother to his carrying away and holding) is erroneous, dangerously misleading to the jury,

and should be precluded by the Court from being presented to the jury.[2]

---

[1] To the extent that there is any question as to whether Hakima Ramzi had legal rights to the custody of Abdul Ghani that were violated by the Defendants' carrying away and holding of Abdul Ghani across state lines, the United States asks that the Court take judicial notice of GA Code §§ 16-5-45 (Interference with Custody); 16-5-40 (Kidnapping); 16-5-70 (Cruelty to children); 16-10-31 (Concealing the death of another person); 16-10-24 (Obstructing or Hindering Law Enforcement Officers); and 19-9-3 (Establishment and Review of Child Custody and Visitation), as well as NMSA §§ 30-4-4 (Custodial interference) and 30-6-4 (Obstruction of reporting or investigation of child abuse or neglect).

[2] The evidence in this case has shown that the Defendants willfully fled with Abdul Ghani across state lines in a rush, leaving behind most of their belongings and not even allowing the other children to bring more than a few sets of clothes, all within hours or a day after realizing Hakima Ramzi and Muhammad Wahhaj had involved the police and were going to go to court.   It is a reasonable inference for the jury to find that the Defendants fled to Alabama and then to New Mexico specifically in order to avoid law enforcement and judicial process in the Defendants' creation of what they have claimed was a (unilateral and unprovoked) "custody dispute." Regardless, it is entirely immaterial to any element of the kidnapping offenses whether the Georgia pick-up orders for Abdul Ghani and arrest warrant for Siraj Wahhaj were in place before the Defendants fled Georgia or whether they specifically knew about the documents.   The pick-

In order to be consistent with the law and the law of the case, and to avoid confusion by the jury in applying the instruction to the evidence in this case, the United States respectfully requests that the Court's proposed instructions numbered 11 and 12 be modified to state that, if the jury determines Abdul Ghani was incapable of giving his consent to his carrying away and being held across state lines, the jury must determine whether Abdul Ghani's having been seized, confined, decoyed, abducted, carried away, or held was "against his mother's consent" or was "against a parent's consent."

  2.  <u>Request to Provide Conspiracy Definition in Instruction 9 in Corresponding</u>
<u>Definitions in Instructions 7 and 11</u>:

As proposed, the Court's instructions on the conspiracy offenses (Counts 1, 3, and 4) are slightly inconsistent.   Specifically, the Court's proposed instruction for Count 3 (Instruction 9) includes three additional sentences defining and instructing the jury on what constitutes a conspiracy.   These three sentences state:

> The evidence need not show that the members entered into an express or formal agreement. Nor does the law require proof that the members agreed on all the details. But the evidence must show that the members of the alleged conspiracy came to a mutual understanding to try to accomplish a common and unlawful plan.

---

up orders and warrant are merely corroborating evidence of what the Defendants well knew from the time they carried away and held Abdul Ghani across state lines: that their carrying away and holding of Abdul Ghani across state lines was against Hakima Ramzi's will and consent.   In any event, it is a well-established principle of law that deliberate ignorance, willful blindness, or conscious efforts to avoid enlightenment of a fact is no defense.   *United States v. Ochoa-Fabian*, 935 F.2d 1139, 1141–42 (10th Cir. 1991).   Thus, even if the Defendants' actual knowledge of the Georgia pick-up orders and arrest warrants were material facts, which they are not, the Defendants' deliberate avoidance of those facts by fleeing from Georgia to Alabama to New Mexico (to include hiding in "the hole" for 3-4 months at the compound in New Mexico) once they became aware of the involvement of the police and Hakima Ramzi's intent to go to court further demonstrates guilty knowledge on the part of every Defendant.

Doc. 983 at 16.   These sentences not included in the proposed instructions for Counts 1 and 4 (Instructions 7 and 11).   The United States respectfully requests that this language be included in the Court's conspiracy definition or explanation in the instructions on Counts 1 and 4 (Instructions 7 and 11).

3.      Addition of Instruction on Immateriality of Timing of Joining a Conspiracy to Instructions on Counts 1, 3, and 4 (Instructions 7, 9, and 11):

Evidence in this case has raised the question of when and where certain Defendants may have joined the charged conspiracies.   For example, witnesses have testified that Lucas Morton and Subhanah Wahhaj were in Georgia and at Hujrah Wahhaj's house after Siraj Wahhaj and Jany Leveille had taken Abdul Ghani from his mother and had come to stay there, that all of the adults had a meeting away from the children, that all of the adults were aware of the police officer having come to Hujrah's house that day, and that this was when Lucas Morton and Subhanah Wahhaj became believers and followers of Jany Leveille and joined the conspiracies. *See* Daily Transcript at 346; 508–09; 555–56; 708–710.   However, the Defendants have questioned witnesses and made arguments insinuating that Lucas Morton and Subhanah Wahhaj were not in Georgia around the time Abdul Ghani was taken, and only joined the rest of the group in Alabama before leaving with Abdul Ghani together to New Mexico.

Further, the Defendants have argued and elicited evidence that the group's plans and preparations to kill federal officers or employees were "ridiculous and fantastical," and therefore, apparently, innocent.   *See, e.g.*, Tr. at 671.   This is despite the Court's *in limine* ruling that such arguments are irrelevant, misleading, and prejudicial, as "impossibility is not a defense to conspiracy charges" (Doc. 969 at 11) and any argument that the Defendants "were 'following a

5

mentally ill person in the pursuit of an impossible end' is improper—as it cannot satisfy the

elements of [a coercion or justification] defense" (Doc. 969 at 19) (citations omitted).   The

Court should enforce its *in limine* rulings and the Defendants should not be allowed to make such

arguments to the jury.

The United States therefore respectfully requests that the Court include in its conspiracy

instruction to all three of the conspiracy charges (Counts 1, 3, and 4) language reflecting the law

that the timing of coconspirators' entries or joining a conspiracy does not alter a later-joining

coconspirator's criminal liability for the conspiracy's ongoing acts and that impossibility is not a

defense to a conspiracy charge.   Specifically, the United States requests that the Court instruct

the jury:

> A defendant may join an ongoing conspiracy during its progress and become
> criminally liable for all acts done in furtherance of the scheme.   A person may
> belong to a conspiracy for a brief period of time or play a minor role.   On the
> other hand, proof is not sufficient if it merely shows that the defendant knew
> about the existence of the conspiracy or was associated with members of the
> conspiracy.   Rather, the evidence must show the defendant knowingly joined the
> conspiracy with the intent to advance its purposes.   Finally, you are instructed
> that impossibility is not a defense to a conspiracy charge, and the United States
> does not need to prove that the underlying object of a conspiracy did or would
> have happened.   This is because the offense is the agreement between
> conspirators, not the successful carrying out of the agreement's goals.

*See United States v . Coleman*, 7 F.3d 1500, 1503 (10th Cir. 1993); *United States v.*

*Andrews*, 585 F.2d 961, 964 (10th Cir. 1978) (*cert denied* 469 U.S. 1188 (1985)); *United States*

*v. Gamble*, 541 F.2d 873, 877 (10th Cir. 1976); *United States v. Roberts*, 14 F.3d 502, 511 (10th

Cir. 1993); *United States v. Jordan*, 467 F. App'x. 782, 784 (10th Cir. 2012); Tenth Circuit

Pattern Instruction 2.87.

4.      Minor Grammatical Changes to Instructions 11, 12:

For the sake of clarity, the United States respectfully requests that the name "Abdul Ghani Wahhaj" be used in place of JOHN DOE at the time that the Court actually gives its instructions to the jury.

The United States also notes that the instruction included in Proposed Instructions 11 and 12 that describes the consent of the victim may need to be re-worded so as to not confuse the jury.   As written the instruction states "In evaluating this element, if you determine if JOHN DOE was of such an age or mental state as to have been incapable of giving his consent to having been seized, confined, decoyed, abducted, carried away or held.   If not, then you must determine if JOHN DOE's having been seized, confined, decoyed, abducted, carried away or held was against his parent's consent."   Doc. 983 at 21, 23

The United States respectfully requests that the second and third sentences be re-worded to state "In evaluating this element, **you must first determine whether Abdul Ghani was of such an age or mental state as to have been capable of giving his consent to having been seized, confined, decoyed, abducted, carried away, or held.**   ~~If you determine if JOHN DOE was of such an age or mental state as to have been incapable of giving his consent to having been seized, confined, decoyed, abducted, carried away or held~~.   If **you determine that Abdul Ghani was** not **capable**, then you must determine if JOHN DOE's having been seized, confined, decoyed, abducted, carried away or held was against his mother's consent."[3]

WHEREFORE, the United States respectfully requests that the Court grant the United States objections to these instructions.

---

[3] See above regarding the United State's objection to the phrase "his parent's" consent.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

*/S/ Electronically filed*
KIMBERLY A. BRAWLEY and
TAVO HALL
Assistant United States Attorneys
P.O. Box 607
Albuquerque, NM   87103
(505) 346-7274

*/s/ Electronically filed*
GEORGE C. KRAEHE and
JESSICA JOYCE
Trial Attorneys
Counterterrorism Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC   20530

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to defense counsel, and separate copies have been mailed to Defendants Siraj Wahhaj and Lucas Morton.

*/S/ Electronically filed*
TAVO HALL
Assistant United States Attorney

8