**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

v. **Case No.: 1:18-cr-02945-WJ**

SIRAJ IBN WAHHAJ,
LUCAS MORTON,
HUJRAH WAHHJ, and
SUBHANAH WAHHAJ,

Defendants.

**MOTION FOR JUDGMENT OF ACQUITTAL ON COUNTS 1, 2, AND 3 PURSUANT TO FED. R. CRIM. P. 29**

Defendants Hujrah Wahhaj, through counsel, Donald F. Kochersberger III and Marshall Ray, and Subhanah Wahhaj, through counsel, The Law Office of Ryan J. Villa, by Ryan J. Villa, and Justine Fox-Young, PC, move the Court for a Judgment of Acquittal on Counts 1, 2, and 3 of the Superseding Indictment. Defendant incorporate by reference their prior relevant pleadings, as well as their oral arguments presented to the Court during the trial of this matter. The Government opposes this motion. In support of this motion, Defendants state as follows:

## INTRODUCTION

It has been established as a constitutional imperative that the government bears the burden to prove every element of a criminal charge beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 362 (1970). This requirement, applied through the rules of evidence consistent with that standard, "are historically grounded rights of our system, developed to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property." *Id.* (quoting *Davis v. United States*, 160 U.S. 469, 488 (1895)).

Although the jury's decision is afforded great deference, "the evidence, when viewed in its entirety, must generate more than a mere suspicion of guilt, and where such evidence is equally consistent with both guilt and innocence the conviction cannot be sustained." *United States v. Weidner*, 437 F.3d 1023, 1032 (10th Cir. 2006)(quoting *United States v. Fox*, 902 F.2d 1508, 1513-14 (10th Cir. 1990)). In reaching a conviction, juries have "wide latitude to determine factual issues and to draw reasonable inferences from circumstantial evidence," but inferences are reasonable only when "with experience serving as the touchstone[,] . . . there is a reasonable probability that the conclusion flows from the facts in evidence." *United States v. Summers*, 414 F.3d 1287, 1295 (10th Cir. 2005) (internal citation omitted). Where an inference relates to an ultimate conclusion underpinning criminal liability, "a jury may draw [the] inference only where that inference can be made beyond a reasonable doubt." *Id.* at 1295 n.4 (quoting *United States v. Rahseparian*, 231 F.3d 1257, 1264 (10th Cir. 2000)). The court's duty is to "determine whether the evidence, if believed, would establish each element of the crime." *United States v. Vallos*, 238 F.3d 1242, 1247 (10th Cir. 2001) (quoting *United States v. Evans*, 42 F.3d 586, 589 (10th Cir. 1994)).

In this case, the evidence presented by the Government in its case-in-chief, even if believed, cannot establish proof of each of the necessary elements of the charges alleged against Defendants in Counts 1, 2, and 3 of the Superseding Indictment, much less that they have been proven beyond a reasonable doubt. And, even there were such evidence, Defendants' conviction under the circumstances of this case would violate their rights to practice their religion in violation of the First Amendment. As such, the Court should enter Judgment of Acquittal on the Kidnapping-related charges contained in Counts 1, 2, and 3.

**<u>EVIDENCE INTRODUCED BY GOVERNMENT IN ITS CASE-IN-CHIEF</u>**

The following facts relevant to this Motion were introduced by the Government in its Case-in-Chief during the trial of this matter.

A. By the time of the alleged criminal conduct, the Defendants believed in a religious ideology the consisted of:

   a. A basic foundation of religious beliefs grounded in the Islamic faith.

   b. A unique religious belief that Jany Leveille was a prophet, and that she was able to directly discern messages from God by reading passages in the Quran.

   c. A unique religious belief Jany Leveille channeled God's directions and intentions to the Defendants.

   d. Defendants accepting these directions and intentions as coming directly from God.

B. Prior to December 24, 2017, the Defendants held the following additional religious beliefs:

   a. A religious belief that Hakima Ramzi, who was pregnant with AG, had used black magic to steal AG from Jany Leveille's womb and transplant him into Hakima Ramzi.

   b. A religious belief that AG was not born alive.

   c. A religious belief that AG was instead inhabited by Jinn (or spirits) that animated his body.

   d. A religious belief that AG's apparent disabilities were caused by these Jinn.

   e. A religious belief that these Jinn could be forcefully expelled from AG's body by performing a religious ritual called Ruquya.

C. On, or about, December 24, 2018, AG died.

D. Starting immediately after AG's death, Jany Leveille informed the Defendants of additional information from God that caused the Defendants to hold the following additional religious beliefs:

   a. A religious belief that AG would be resurrected.

   b. A religious belief that, once resurrected, AG would actually be Jesus Christ.

c. A religious belief that AG would provide the Defendants with direction on fulfilling his will as Jesus Christ.

d. A religious belief that AG would desire to rid the world of corruption.

e. A religious belief that AG would perform miracles to demonstrate his provenance as Jesus Christ.

f. A religious belief that AG would demand that people engaged in corrupt behavior repent and cease their corrupt behavior.

g. A religious belief that AG would expect the Defendants to assume specific roles in service of this mission on Earth as Jesus Christ ("JC" herein).

h. Specifically:

    i. Jany Leveille would continue as a prophet who would relay AG/JC's intentions and directions to others.

    ii. Lucas Morton would assume a position as a legal scholar to assist with spreading AG/JC's intentions and directions to others.

    iii. Siraj Wahhaj would be given the responsibility of carrying out any punishments ordered by AG/JC.

    iv. Subhannah Wahhaj, along with Hujrah Wahhaj, would be tasked with the responsibility of maintaining the Earthly residence of AG/JC and his disciples.

    v. Subhannah Wahhaj would have the additional duty to spread AG/JC's directions to others regarding the maintenance of their families and households.

    vi. Hujrah Wahhaj would have the additional duty of serving as a public relations officer for AG/JC.

i. A religious belief that AG/JC would expect Defendants to be prepared to fulfil each of these roles.

j. A religious belief that AG/JC may expect Defendants, Lucas Morton and Siraj Wahhaj, along with Jany Leveille's teenage sons, as part of their role, to enforce AG/JC's edicts against non-believers and/or others opposed to AG's role as Jesus Christ.

k. A religious belief that enforcement of AG/JC's will against non-believers and/or others opposed to AG's role as Jesus Christ, could require attack and/or killing of those people.

l. A religious belief that the corrupt non-believers and and/or others opposed to AG's role as Jesus Christ may include federal employees.

E. All of the conduct that the United States claims to comprise the offense conduct related to Counts 1, 2, and 3, was:

a. Otherwise legal conduct, such as:

i. Constructing a defensive compound to protect AG and the Defendants from persecution, including armed attack, from non-believers and/or others opposed to AG's role as Jesus Christ.

ii. Caring for each other while awaiting the resurrection of AG to assume his role as Jesus Christ.

iii. Construction of a firing range where Defendants, Lucas Morton and Siraj Wahhaj, along with Jany Leveille's teenage sons, could train to be prepared to fulfil any directions of AG/JC.

iv. Defendants, Lucas Morton and Siraj Wahhaj, along with Jany Leveille's teenage sons, actually training on the aforementioned firing range.

F. The alleged offense conduct was all entirely contingent on:

a. The resurrection of AG as Jesus Christ.

b. AG/JC issuing edicts that include repentance and ceasing of all corrupt activities.

c. Federal employees refusing to repent and cease their corrupt activities.

d. Instruction from AG/JC to Defendants, Lucas Morton and Siraj Wahhaj, along with Jany Leveille's teenage sons, that they enforce this edict with violence, including killing of any disobedient federal employees.

**ARGUMENT**

The First Amendment protects sincerely held beliefs that are "rooted in religion." *Thomas v. Review Bd. of the Indiana Employment Sec. Div.*, 450 U.S. 707, 713 (1981). The Supreme Court has further held that those "[r]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Id.* at 714. Under the Religious Freedom Restoration Act ("RFRA"), neither the state nor the federal government can substantially burden a person's exercise of religion, even through rules of general applicability, unless the government shows the burden furthers a compelling governmental interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000bb-1; *see id.* § 2000bb-3. "Exercise of religion" means the exercise of religion under the First Amendment. *Id.* §2000bb-2(4).

Of course, when the exercise of one's religion conflicts with other laws, there are limits and a balancing test to be applied. The United States Supreme Court held that the right to free exercise of religion does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes), nor does a generally applicable criminal prohibition on a particular form of conduct that substantially burdens a religious practice have to be justified by

a "compelling governmental interest." *Employment Div., Dep't of Human Resources of Or., v. Smith*, 494 U.S. 872 (1990); *United States v. Meyers*, 95 F.3d 1475, 1480-1481 (10th Cir. 1996).

However, none of the Defendants' conduct at issue in this case is, in itself, criminal. Usually, in cases of criminal statutes violating the First Amendment, people assert privilege to engage in conduct that itself is illegal. See e.g., *United States v. Meyers*, 95 F.3d 1475, 1479 (10th Cir. 1996) (conspiracy to possess with intent to distribute and to distribute marijuana in violation of 21 U.S.C.S. § 846); *United States v. Wilson*, 154 F.3d 658, 660 (7th Cir. 1998) (violation of the Freedom of Access to Clinic Entrances Act of 1994 (FACE), 18 U.S.C.S. § 248); *United States v. King*, Case No. 98-00016 JP (violation of 18 U.S.C. §§ 1153, 2241(c), 2242(1), and 2246(2)). In these cases, the basis of the Defendants' arguments was not that they denied that they had committed the charged crimes, but rather that they should not be held responsible for those crimes, because the laws prohibiting those crimes conflicted with their religious beliefs. *See id.*

Here, however, all of the actions that Defendants took were otherwise legal. What the Government alleges renders it illegal is merely the intent for which they engaged in that conduct. Specifically, the Government has alleged that their actions were taken to support the attacking federal employees. The evidence, however, does not support this allegation. Instead, it is abundantly clear that Defendants were only motivated by sincerely-held religious beliefs that:

- AG would come back as Jesus;
- Once Jesus Christ was back, he would perform miracles;
- AG/JC would also seek to rid the world of corruption;
- AG/JC was expected to order that those that did not refrain from corrupt activities may be punished, including death;
- Those people may be associated with the United States government (as well as other institutions); and

- AG/JC would enlist the Defendants' aid when he returned.

Like their beliefs, Defendants' actions were equally clearly taken for the sole purpose of complying with these religious beliefs. There was no motive apart from the Defendants' sincerely-held religious beliefs to engage in any of the conduct the Government alleges to be the offense conduct. Specifically, the Defendants surmised that among the corrupt people, some may be employees of the government. They did not seek exclusively those targets, however, and did not target any specific governmental official. The Defendants also discerned that they should generally prepare to assist AG/JC when he returned, and it was that preparation that formed the sole motivation for all of the subsequent actions the Defendants took, including:

- Leaving Georgia for Alabama because their religious beliefs told them to do so;
- Traveling to New Mexico because their religious beliefs told them to do so;
- Erecting and keeping the compound in New Mexico because their religious beliefs told them to do so; and,
- Preparing to assist AG/JC because their religious beliefs told them to do so.
- Literally, every action taken by Defendants was initiated because Jany Leveille claimed that God had commanded that each of these actions be taken, and the Defendants religious beliefs required them to comply.

Under the RFRA, there are three threshold requirements to state a prima facie free exercise claim. Governmental action violates the Act whent (1) substantially burden, (2) a religious belief rather than a philosophy or way of life, (3) which belief is sincerely held by the plaintiff. *Id. United States v. Meyers*, 95 F.3d 1475, 1482 (10th Cir. 1996) (internal citations omitted). The government must accommodate the exercise of actual religious convictions. *Id.* Here, the Government's actions have substantially burdened Defendants by accusing them of providing material support to

terrorists by plotting to murder an officer or employee of the United States based entirely on purely legal activities undertaken by Defendants that were unmistakably prompted only by their sincerely-held religious beliefs.

The evidence here is clear and unequivocal that the Defendants were motivated *by nothing other than their religious beliefs*. Based on the evidence presented by the Government, it is also clear that no reasonable juror could conclude otherwise. This is particularly true given the high standard of proof beyond a reasonable doubt. In reality, however, the Government would not be able to establish that Defendants were motivated by any other reason, even under any lesser burden of proof. The proof that they acted solely as a result of their religious beliefs is overwhelming to the point it would be difficult to articulate any other plausible reason for their actions.

**CONCLUSION**

Although the Government has alleged that Defendants engaged in conduct in preparation for attacking federal employees, it has presented no evidence of anything other than legal conduct on the part of the Defendants, all of which was performed entirely as an exercise of Defendants' religion (and therefore protected by the First Amendment and Religious Freedom Restoration Act). Further, the Government has also failed to produce evidence sufficient to establish, beyond a reasonable doubt, that Defendants agreed to, or did, provide material support to terrorists or conspire to murder an officer or employee of the United States. Rather, the only evidence presented thus far establishes that all of the conduct of the Defendants that the United States claims is criminal consists solely of legal conduct, in which they each engaged only to pursue their sincerely-held religious beliefs, and which is protected by the First Amendment Consequently, the Court must enter a Judgment of Acquittal on Counts 1, 2 and 3.

Respectfully submitted,

*/s/ Donald F. Kochersberger III*
Donald F. Kochersberger III
BUSINESS LAW SOUTHWEST LLC
6801 Jefferson St. NE, Suite 210
Albuquerque, NM 87109
(505) 848-8581
Donald@BusinessLawSW.com

/*s/ Marshall J. Ray*
Marshall J. Ray
Law Offices of Marshall J. Ray, LLC
514 Marble Ave, NW
Albuquerque, NM 87111
(505) 312-2748
mray@mraylaw.com

*Attorneys for Defendant Hujrah Wahhaj*

-and-

/s/ *Ryan J. Villa*
Ryan J. Villa
The Law Office of Ryan J. Villa
5501 Eagle Rock Ave NW Ste. C2
Albuquerque, NM 87113
(505) 639-5709
ryan@rjvlawfirm.com

*/s/ Justine Fox-Young*
Justine Fox-Young
Justine Fox-Young, PC
5501 Eagle Rock Ave NE Ste C2
Albuquerque, NM 87113
(505) 796-8268
justine@foxyounglaw.com

*Attorneys for Defendant Subhanah Wahhaj*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 9th day of October 2023, I filed the foregoing electronically through the CM/ECF system, which caused all counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

*/s/ Donald F. Kochersberger III*
Donald F. Kochersberger III