**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

v. **Case No.: 1:18-cr-02945-WJ**

SIRAJ IBN WAHHAJ,
LUCAS MORTON,
HUJRAH WAHHJ, and
SUBHANAH WAHHAJ,

Defendants.

**MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO FED. R. CRIM. P. 29**

Defendants Hujrah Wahhaj, through counsel, Donald F. Kochersberger III and Marshall Ray, Subhanah Wahhaj, through counsel, The Law Office of Ryan J. Villa, by Ryan J. Villa, and Justine Fox-Young, PC, by Justine Fox-Young, and Lucas Morton, *pro se*, move the Court for a Judgment of Acquittal on Counts 4 and 5 of the Superseding Indictment. Defendants incorporate by reference herein the facts and arguments previously advanced in Defendants' Joint Motion to Dismiss – Missing Element [Doc. 468]; Defendants' Reply to the Government's Response to the Joint Motion to Dismiss Counts Six and Seven – Missing Element (Doc. 485) [Doc. 541]; Defendants' Joint Motion to Dismiss – No Predicate Crime for Conspiracy to Kidnap [Doc. 469]; Reply to the Government's Response to Defendants' Joint Motion to Dismiss – No Predicate Crime for Conspiracy to Kidnap [Doc. 487]; Defendants' Response to the United States' Motion in Limine to Exclude Defense Arguments and Evidence [Doc. 938]; and Defendants' Surreply to the United States' Motion in Limine to Exclude Defense Arguments and Evidence [Doc. 964]. The Government opposes this motion. In support of this motion, Defendants state as follows:

**INTRODUCTION**

It has been established as a constitutional imperative that the government bears the burden to prove every element of a criminal charge beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 362 (1970). This requirement, applied through the rules of evidence consistent with that standard, "are historically grounded rights of our system, developed to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property." *Id.* (quoting *Davis v. United States*, 160 U.S. 469, 488 (1895)).

Although a jury's decision is afforded great deference, "the evidence, when viewed in its entirety, must generate more than a mere suspicion of guilt, and *where such evidence is equally consistent with both guilt and innocence the conviction cannot be sustained*." *United States v. Weidner*, 437 F.3d 1023, 1032 (10th Cir. 2006) (quoting *United States v. Fox*, 902 F.2d 1508, 1513-14 (10th Cir. 1990)) (emphasis added). In reaching a conviction, juries have "wide latitude to determine factual issues and to draw reasonable inferences from circumstantial evidence," but inferences are reasonable only when "with experience serving as the touchstone[,] . . . there is a reasonable probability that the conclusion flows from the facts in evidence." *United States v. Summers*, 414 F.3d 1287, 1295 (10th Cir. 2005) (internal citation omitted). Where an inference relates to an ultimate conclusion underpinning criminal liability, "a jury may draw [the] inference only where that inference can be made beyond a reasonable doubt." *Id.* at 1295 n.4 (quoting *United States v. Rahseparian*, 231 F.3d 1257, 1264 (10th Cir. 2000)). The Court's duty is to "determine whether the evidence, if believed, would establish each element of the crime." *United States v. Vallos*, 238 F.3d 1242, 1247 (10th Cir. 2001)(quoting *United States v. Evans*, 42 F.3d 586, 589 (10th Cir. 1994)).

In this case, the evidence presented by the Government in its case-in-chief, even if believed, cannot establish proof of each of the necessary elements of the charges alleged against Defendants

in Counts 4 and 5 of the Superseding Indictment, much less that they have been proven beyond a reasonable doubt. As such, the Court should enter Judgment of Acquittal on the Kidnapping-related charges contained in Counts 4 and 5. In addition to failing to prove the substantive elements of kidnapping, there is also no evidence that AG's death was a foreseeable result of any actions taken by Subhanah Wahhaj ("Subhanah" herein), Hujrah Wahhaj ("Hujrah" herein), and/or Lucas Morton ("Lucas" herein).

**<u>EVIDENCE INTRODUCED BY GOVERNMENT IN ITS CASE-IN-CHIEF</u>**

The following facts relevant to this Motion were introduced by the Government in its Case-in-Chief during the trial of this matter.

A. Siraj Wahhaj ("Siraj" herein) alone took AG from his mother (Hakima Ramzi) on or about December 1, 2017.

B. Siraj told Ms. Ramzi that he was taking AG to the park and never returned.

C. Siraj returned to his home, after which, his family, which included Jany Leveille ("Jany" herein), Jany's children, Farrol and Jamil, Siraj and Jany's children, and Abdul Ghani packed to leave their house.

D. Siraj and his family then travelled to Hujrah's apartment on the same day.

E. On December 1, 2017, Hakima Ramzi, along with Muhammad Wahhaj (the brother of Siraj, Hujrah, and Subhanah), caused the police to accompany them to Hujrah's apartment.

F. They met with Siraj and were able to view AG, but Siraj refused to allow them to take AG from his custody.

G. Subhanah and Hujrah were not present at that time.

H. The police explained that they were unable to take custody of AG because he was with his biological father, who had equal rights to custody, and there was no court order changing that status.

I. A "family meeting" was held in the evening the same day.

   a. Evidence shows Hujrah was there for the meeting.

   b. The Evidence did not establish that Subhanah and/or Lucas were there for the meeting.

J. The family group departed Georgia for Alabama the same night or perhaps the following day (either December 3, 2017 or December 4, 2017)

   a. Siraj, Jany and their children travelled in Siraj's vehicle.

   b. Hujrah and her daughter travelled in Hujrah's vehicle.

   c. The Evidence is inconsistent regarding whether Lucas and/or Subhanah travelled to Alabama or were already in Alabama.

K. The family stayed in Alabama for 8-10 days.

L. The family decided they did not like Alabama and determined to head to New Mexico, where Lucas owned some vacant land.

M. The family left Alabama and departed for New Mexico on December 12, 2017.

N. Siraj, Jany, and their children were involved in a traffic accident in the early morning hours of December 13, 2017.

   a. Siraj's vehicle was totaled in the accident.

      i. Some of the occupants went to the hospital.

      ii. Siraj, AG, and one of the boys remained at the scene of the wreck.

   b. Ultimately, Siraj's disabled vehicle was towed to a gas station.

   c. Lucas met Siraj at the gas station, and they removed items from Siraj's totaled vehicle and moved them to Lucas' box truck.

   d. There is no dispute that Subhanah and Hujrah were never seen during any of these events in Alabama.

O. Siraj's family members were released from the hospital within hours, and the family resumed the trip to New Mexico in the box truck pulling a camper trailer, while Hujrah continued to drive her vehicle.

P. Hujrah's vehicle was abandoned somewhere along the way to New Mexico.

Q. Everyone was then driven in the box truck, or the trailer it was pulling, for the rest of drive to New Mexico.

R. The family arrived in New Mexico no later than December 16, 2017.

S. Orders were issued from the Court in Clayton County, Georgia on December 18, 2017.

   a. One Order (the "Order" herein) directed the pickup of AG, and a separate Order authorized the arrest of Siraj, with each order including various findings that were largely identical.

   b. There is no evidence that any Defendant (or anyone else in New Mexico) was served with, or was otherwise aware of, this Order until the time of AG's death, which occurred on, or about, December 24, 2017 (see below).

   c. Importantly, this is the **very first circumstance making it unlawful for Siraj to possess his son, AG**.

T. Siraj performed Ruqya on AG daily throughout the brief time he was alive in New Mexico.

   a. Ruqya is a religious ritual similar to an exorcism, which consisted of Siraj:

      i. Holding AG;

      ii. Reciting the Quran;

      iii. Sometimes for as long as 4 hours;

      iv. While AG often cried and fussed.

   b. On, or about, December 24, 2017, AG died of causes unproven and while Siraj was performing Ruqya.

c. Subhanah, Hujrah, and Lucas never performed Ruqya on AG, nor did they make any decisions about AG's medical care.

d. Subhanah, Hujrah, and Lucas were not present in the room where AG died.

U. At all relevant times after AG left Georgia:

a. Siraj and Jany alone cared for AG.

b. Siraj and Jany had all of their children with them, including AG.

c. Subhanah and Hujrah were mere passengers while in the same vehicle as AG.

d. Siraj was AG's biological father;

e. Siraj was legally married to AG's biological mother, Hakima Ramzi;

i. In Georgia, both parents have equal parental rights if they are married. Ga. Code Ann. § 19-7-2 (It is the joint and several duty of each parent to provide for the maintenance, protection, and education of his or her child until the child reaches the age of majority, dies, marries, or becomes emancipated, whichever first occurs, except as otherwise authorized and ordered pursuant to subsection (e) of Code Section 19-6-15 and except to the extent that the duty of the parents is otherwise or further defined by court order.)

V. There is no evidence that the Defendants had any plans to travel anywhere after their arrival in New Mexico.

i. Moreover, once the Order had been issued, there was no plan involving travel with AG over state lines.

ii. There is also absolutely no evidence AG traveled over state lines after issuance of the Order.

W. There is no evidence that Hujrah, Subhanah, and/or Lucas ever had sole possession of AG during any time during the travel from Georgia to New Mexico or after the family's arrival in New Mexico.

X. There is no evidence that Hujrah, Subhanah, and/or Lucas, did anything to aid Siraj in his possession of AG during the travel from Georgia to New Mexico or after the family's arrival in New Mexico.

Y. There is no evidence that there was any circumstance prior to December 18, 2017, that would render it unlawful for Siraj to have possession of his biological son, AG.

   a. It is elementary that, since it was not unlawful for Siraj to have possession AG, it was not unlawful for Lucas, Subhanah, and/or Hujrah to travel or live with Siraj and AG.

Z. There is no evidence that there was ever any express plan for Lucas, Subhanah and/or Hujrah to participate in kidnapping of AG.

AA. There is no evidence that there was any knowledge on the part of Lucas, Subhanah and/or Hujrah that Siraj would refuse to return AG to Georgia if ordered by a court to do so (or that he would otherwise refuse to abide any lawful orders).

BB. There is no evidence that Lucas, Subhanah and/or Hujrah had any authority or ability to remove AG from Siraj's custody.

CC. There is no evidence that Lucas, Subhanah and/or Hujrah anticipated or derived any benefit from AG being with them for the trip to New Mexico.

DD. There is no evidence that that there was any goal on the part of Lucas, Subhanah and/or Hujrah, associated with having AG with them for the trip to New Mexico.

EE. There is insufficient evidence to determine beyond a reasonable doubt that AG's death was attributable to being in Siraj's custody after December 3, 2017.

a. The United States' expert witness, Dr. John P. Phillips, testified that:

i. AG had a seizure disorder caused by Hypoxic Ischemic Encephalopathy;

ii. AG was supposed to take medicine to control his seizures;

iii. There is no indication that he took his medicine while in the custody of Siraj;

iv. AG's respirations *could* be affected during a ruqya;

v. High emotional stress *can* make it more likely to have a seizure;

vi. Not taking medicine *could* lead to more serious seizures; and

vii. Uncontrolled seizures *could* lead to death.

b. This expert testimony is, as a matter of law, not sufficient to support the Defendants' alleged kidnapping being the proximate cause the death beyond a reasonable doubt.

c. No evidence exists to indicated AG's death was foreseeable to Hujrah, Subhanah, and/or Lucas.

**ARGUMENT**

**A. COUNT 4 – CONSPIRACY TO COMMIT KIDNAPPING**

**1. Before Leaving Georgia**

The Government presented evidence in its case-in-chief that Defendants agreed to leave Georgia on or about December 3, 2017, and that Defendants left Georgia on or about December 3 or 4, 2017. The Government also presented evidence that Defendants arrived in New Mexico no later than December 16, 2017. The Court Order did not issue from the Court in Clayton County, Georgia, however, until December 18, 2017. Importantly, this was the very first circumstance making it unlawful for Siraj to possess his son, AG. Moreover, the Government produced absolutely no evidence whatsoever that any Defendant or anyone else in New Mexico was served

with, or was otherwise aware of, this Order at any time relevant to the kidnapping charges in this case.

As stated in the Court's Proposed Jury Instruction No. 11, "[a] conspiracy is an agreement between two or more persons to accomplish an unlawful purpose." [Doc. 983 at 21] Thus, in order for the Defendants to be guilty of conspiracy to commit kidnapping, they would have had to conspire to take/hold AG at a time it was unlawful to do so. Here, however, the possession and transportation of AG by his father was completely lawful until December 18, 2017, when the Clayton County court issued its Order prohibiting Siraj Wahaj from maintaining custody of his son. And, Defendants were never aware of the Order prior to AG's death.

Defendants would have had to have been aware that the court issued the Order at the time of any alleged conspiracy, or they would not be agreeing to accomplish an *unlawful* purpose, as is required. Even if Defendants agreed to seize, confine, or carry away the child at some point prior to leaving Georgia (and there is no evidence they did), there would be nothing illegal about taking AG, accompanied by his father and with his permission, because the Order had not yet been issued. Thus, there could be no conspiracy to *unlawfully* transport the child over state lines, only to *lawfully* do so. This does not amount to a conspiracy to commit kidnapping. *United States v. McInnis*, 601 F.2d 1319, 1326 (5th Cir. 1979) ("The lawful transportation of any person across state lines, of course, does not amount to kidnapping. The kidnapping statute thus fits into a common statutory model for federal offenses that premise federal jurisdiction on the offender's unlawful exercise of control over a person or object *followed by* the interstate transportation of that person or object.") (emphasis added); *United States v. Hughes*, 716 F.2d 234, 238 (4th Cir. 1983) (without some unlawful exercise of control over the victim *prior to the interstate transportation*, no jurisdiction existed under 18 U.S.C. § 1201(a)) (emphasis added).

The Government failed to produce evidence sufficient to establish, beyond a reasonable doubt, that Defendants agreed to, or did, *unlawfully* transport AG in interstate commerce. There being no evidence of unlawfulness, there can simply be no federal crime of kidnapping. Without such evidence of the unlawful exercise of control over a kidnapped person followed by interstate transportation of that person, there can be no kidnapping, because there would be no federal jurisdiction. Defendants could not have conspired to take or hold the child for an unlawful purpose (as explained is required in Jury Instruction No. 11) since they had no reason to suspect that transporting him or holding him was in any manner unlawful. Without any evidence of an agreement to accomplish the unlawful purpose of kidnapping, there can be no criminal conspiracy.

To the extent that the Court finds that there is evidence that there was a conspiracy (merely an agreement, really, since there was no illegal objective) to transport the child in interstate commerce, any such conspiracy necessarily ended when Defendants arrived in New Mexico and set up a domicile, because at that point the object of the conspiracy (or agreement) had been achieved. *United States v. Silverstein*, 737 F.2d 864, 867 (10th Cir. 1984) ("Generally, … a conspiracy terminates when its central criminal purposes have been attained.").

**2. After arriving in New Mexico**

Again, the Government produced absolutely no evidence that any Defendant or anyone else in New Mexico was served with, or was otherwise aware of, the Order regarding Siraj Wahhaj's custody of AG at any time relevant to the kidnapping charges in this case. More importantly, once Defendants arrived in New Mexico, any subsequent conspiracy was not subject to federal jurisdiction for kidnapping, unless they were planning to additionally cross state lines *after* it was unlawful. There was, however, no evidence of any additional plans to transport AG anywhere, much less plans to cross state lines, while he was alive and after Defendants arrived in New Mexico. "[A]lthough the offense of kidnapping is complete by the unwilling confinement,

by any of the enumerated means, of an individual who is held for ransom, reward, or otherwise, federal jurisdiction over that offense attaches only upon an 'interstate transporting of the kidnapped person.' The legislative history is clear that the 1972 amendments, in expanding jurisdiction, did not alter the established requirement that the criminal activity precede the interstate movement." *United States v. Hughes*, 716 F.2d 234, 238 (4th Cir. 1983).

Moreover, the Defendants' mere holding of AG in New Mexico cannot constitute federal kidnapping, because there was no further transportation in interstate commerce, which is a necessary element of Section 1201(a), without which there is no federal jurisdiction. *Id*. Similarly, there can be no conspiracy to commit federal kidnapping based on Defendants' holding of AG in New Mexico, because there is no evidence of any agreement to thereafter transport the child in interstate commerce. And, of course, once AG passed away, he could not be kidnapped, so any events occurring after December 24, 2017, are also wholly irrelevant to the kidnapping charge. *United States v. Davis*, 19 F.3d 166, 169 (5th Cir. 1994) ("It is true that under § 1201(a) the defendants must abduct a live person who then moves in interstate commerce. Federal kidnapping does not cover transportation of a corpse across state lines.")

**3. Aiding and Abetting**

With no evidence of kidnapping, there can be no aiding and abetting of a kidnapping, (because one did not occur). *See* Court's Proposed Jury Instruction No. 14. Moreover, even if there was support for the kidnapping charge, Defendants would have to have aided in its commission to be guilty of aiding and abetting, but there is no evidence that they did anything more than go along for the ride to New Mexico and coexist with Siraj Wahhaj, who was in lawful possession of AG throughout the trip, and their family members, and there is likewise no proof that each Defendant shared the others' knowledge of the alleged underlying criminal act and intended to help the other. Here, there was no possible knowledge of any underlying criminal act

since no one was aware that the court had issued the Order at any relevant time. Consequently, even it had been unlawful for Siraj to transport AG from Georgia to New Mexico, there was still no evidence that the Defendants aided Siraj in any material way.

Moreover, after arriving in New Mexico, Defendants did nothing to provide aid prior to AG's death on December 24, 2023. Although the Government argues that Defendants' mere presence and lawful acts to care for their own nuclear families (which may have incidentally benefitted Siraj Wahhaj's nuclear family) aided Siraj Wahhaj's ability to continue to hold AG, Defendants' mere presence is not enough. *See* Court's Proposed Jury Instruction No. 14 (mere presence at the scene of a crime is not sufficient). [Doc. 983 at 27] Rather, aiding and abetting requires that Defendants intentionally participated in acts for the purpose of accomplishing something unlawful that they wished to bring about. *Id.* It also requires proof that each Defendant shared the others' knowledge of the underlying criminal act and intended to help the other. *Id.* It is not enough for a defendant to be present at the scene of a crime, or even that he knows that a crime is being committed; rather, the defendant must share the principal's desire to achieve the objective of the crime and engage in some affirmative act tailored to manifest that objective. *See United States v. King*, 936 F.2d 477, 481-82 (10th Cir. 1991). As discussed herein, however, there was no possible knowledge whatsoever of any underlying criminal act since no one was aware that the court had issued the Order. Further, even if there had been something unlawful about Siraj Wahhaj's custody of his son, the actions that Defendants took to simply begin to establish their life in New Mexico were not actions in any way tailored to achieve the objective of holding and transporting AG across state lines. And, once in New Mexico, their actions instead manifested an obvious intention to stay right where they were in Amalia, New Mexico.

Because the Government failed to present evidence sufficient to establish beyond a reasonable doubt that Defendants ever conspired to kidnap AG in violation of 18 U.S.C. §1201(c), the Court should enter Judgment of Acquittal as to Count 4 of the Superseding Indictment.

**B. COUNT 5 – KIDNAPPING RESULTING IN DEATH AND AIDING AND ABETTING KIDNAPPING (AND LESSER INCLUDED KIDNAPPING)**

Once again, the very first circumstance making it unlawful for Siraj Wahhaj to possess his son, AG, occurred when the Order issued from the Court in Clayton County, Georgia on December 18, 2017. And there is absolutely no evidence that any Defendant or anyone else in New Mexico was served with, or was otherwise aware of, this Order at any time relevant to the kidnapping charges in this case. More importantly than the failure of notice[1], the Defendants had already arrived in New Mexico with AG on or before December 16, 2017, at least two (2) full days prior to the issuance or existence of the only Order that rendered Siraj Wahhaj's possession or transport of AG unlawful.

Given that Defendants had no knowledge of the Order (which had not yet issued), and the Georgia police had already refused to take AG from Siraj Wahhaj (based on his status as his biological parent), Defendants could have only reasonably assumed that AG was lawfully with his father, and therefore no reason existed for the kidnapping which would be of some benefit to them, as is required. *See United States v. Healy*, 376 U.S. 75 (1964) (it is necessary that the kidnappers had some reason for the kidnapping which, to them, would be of some benefit); *see also* Doc. 983 at 23. In an earlier Order, this Court found that the purpose or benefit to Defendants was

[1] The Court previously ruled that Defendants' knowledge of unlawfulness is irrelevant – a ruling for the record, that the Defendants continue to contest, particularly in this circumstance where the unlawfulness is established by an individual judge issuing an order making it so, and not by operation of some law of general application, knowledge of which may properly be imputed to all citizens.

alleged by the Government to be concealment[2]. [Doc. 543 at 4] Defendants acknowledge that Courts have found that the benefit required under the kidnapping statute can be broadly construed, and often includes prevention of detection and aiding escape. *United States v. Sarracino*, 131 F.3d 943, 947 (10th Cir. 1997); *United States v. Gabaldon*, 389 F.3d 1090, 1096 (10th Cir. 2004). If there is no awareness of an illegal action, however, as is the case here, there can be no reason for Defendants to have believed that they needed to prevent detection or that they had anything to escape until after they had already arrived in New Mexico. Accordingly, there is no evidence to support the required element that Defendants kidnapped AG for some personal purpose or benefit to themselves.

And, even if the Defendants did not have to possess actual knowledge that the court had issued the Order, the Order would need at the very least to *have, in fact, been issued*, otherwise there can simply be no unlawful taking. The Court's jury instructions containing the elements of kidnapping (and aiding and abetting kidnapping) each require a jury to find beyond a reasonable doubt that Defendants *unlawfully* seized, held, and transported the child. That simply did not happen here.

Perhaps most importantly, in order to be guilty of kidnapping, Defendants would have had to, at the very least, cross state lines with AG at a time when doing so was unlawful. *See United States v. Hughes*, 716 F.2d 234, 238 (4th Cir. 1983) (without some unlawful exercise of control over the victim prior to the interstate transportation, no jurisdiction existed under 18 U.S.C. § 1201(a)). This, of course, never happened, since the Order that rendered Siraj Wahhaj's possession of his son unlawful was not issued until after Defendants had already arrived in New Mexico. Moreover, during the time frame after the issuance of the Order and prior to AG's death, the

---

[2] Of course, Defendants reiterate their opposition to this conclusion, as described in the incorporated pleadings.

Defendants never again transported (or even planned to transport) AG across any state lines (or anywhere for that matter). Accordingly, the Court should enter Judgment of Acquittal on Count 5.

### C. THE DEATH OF AG WAS NOT FORSEEABLE TO SUBHANAH WAHHAJ, HUJRAH WAHHAJ, AND LUCAS MORTON

The evidence demonstrated that AG passed away while Siraj Wahhaj performed ruqya on AG in the bedroom in the camper where he and Jany Leveille stayed in New Mexico. There is no evidence that Subhanah Wahhaj, Hujrah Wahhaj, or Lucas Morton, participated in the ruqya in any manner. To be guilty of kidnapping resulting in death, the Government must prove that AG's death was a foreseeable to Subhanah Wahhaj, Hujrah Wahhaj, and Lucas Morton, as the result of kidnapping. *See* Court's Jury Instruction Nos. 11 and 12 [Doc. 983]; Defendants' Joint Proposed Supplemental Jury Instructions, Nos. 1 and 2 [Doc. 974]. Even assuming there was a kidnapping (and there was not, as described above), nothing in the evidence demonstrated that AG's death was foreseeable to Subhanah Wahhaj, Hujrah Wahhaj, or Lucas Morton. Accordingly, the Court should enter Judgment of Acquittal on the element of "resulting in death" charged in Counts 4 and 5.

## CONCLUSION

This Court has made clear that ignorance of the law does not constitute a defense to the kidnapping charges against Defendants. Here, however, Defendants are not arguing ignorance of the law. Rather, Defendants are arguing ignorance of the fact that there existed any circumstance making it unlawful for Siraj Wahhaj to have possession of AG at any time her was alive; and, more importantly that there was no court order that had been issued (or other circumstance rendering possession of AG unlawful), or was in effect, at any time that: 1) Defendants actually crossed state lines with AG or at any time they conspired/agreed to seize or transport him in interstate commerce; or 2) before, at, or during any time that they held him and transported him in interstate commerce, or made any agreement to do so.

At any time prior to there being a court order in place, there could simply be no unlawful taking or holding in connection with the transportation or care of AG. Absent an order to the contrary, as his father, Siraj Wahhaj had the parental authority to transport his son. Without any unlawful taking, there can be no kidnapping, because it is an essential element of kidnapping. The Government's evidence showed that, by the time the court order had been entered, Defendants: 1) had already arrived in New Mexico; 2) had no plans or agreement to further transport AG in interstate commerce; and 3) indeed did not further transport him in interstate commerce prior to his death.

The Government failed to produce evidence sufficient to establish, beyond a reasonable doubt, that Defendants agreed to, or did, unlawfully transport AG in interstate commerce. There being no evidence of unlawfulness prior to (or at the same time of) transportation, there can simply be no kidnapping as a matter of law. Without such evidence of unlawful exercise of control of a kidnapped person followed by interstate transportation of that person, there can be no kidnapping, because there would be no federal jurisdiction. Moreover, without such evidence of an agreement to accomplish the unlawful purpose of kidnapping, there can be no criminal conspiracy. And, without any kidnapping, there can be no aiding and abetting of kidnapping. There is also no evidence that AG's death was a foreseeable result of the kidnapping with respect to Subhanah Wahhaj, Hujrah Wahhaj, and Lucas Morton. Accordingly, the Court must enter Judgment of Acquittal on Counts 4 and 5.

Respectfully submitted,

*<u>/s/ Donald F. Kochersberger III</u>*
Donald F. Kochersberger III
BUSINESS LAW SOUTHWEST
6801 Jefferson St. NE, Suite 210
Albuquerque, NM 87109
(505) 848-8581
Donald@BusinessLawSW.com

/s/ *Marshall J. Ray*
Marshall J. Ray
Law Offices of Marshall J. Ray, LLC
514 Marble Ave, NW
Albuquerque, NM 87111
(505) 312-2748
mray@mraylaw.com

*Attorneys for Defendant Hujrah Wahhaj*

-and-

/s/ *Ryan J. Villa*
Ryan J. Villa
The Law Office of Ryan J. Villa
5501 Eagle Rock Ave NW Ste. C2
Albuquerque, NM 87113
(505) 639-5709
ryan@rjvlawfirm.com

/s/ *Justine Fox-Young*
Justine Fox-Young
Justine Fox-Young, PC
5501 Eagle Rock Ave NE Ste C2
Albuquerque, NM 87113
(505) 796-8268
justine@foxyounglaw.com

*Attorneys for Defendant Subhanah Wahhaj*

-and-

/s/ *Lucas Morton*
Lucas Morton
Cibola County Correctional Center
2000 Cibola Lp.
Milan, NM 87021
(505) 285-4900

*Pro Se Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 9th day of October 2023, I filed the foregoing electronically through the CM/ECF system, which caused all counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

*/s/ Donald F. Kochersberger III*
Donald F. Kochersberger III