**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

v.                              **Case No.: 1:18-cr-02945-WJ**

SIRAJ IBN WAHHAJ,
LUCAS MORTON,
HUJRAH WAHHJ, and
SUBHANAH WAHHAJ,

      Defendants.

**<u>DEFENDANTS HUJRAH WAHHAJ AND SUBHANAH WAHHAJ'S
POST-TRIAL MOTION FOR JUDGMENT OF ACQUITTAL
PURSUANT TO FED. R. CRIM. P. 29(c)</u>**

Defendants Hujrah Wahhaj, through counsel, Donald F. Kochersberger III and Marshall
Ray, and Subhanah Wahhaj, through counsel, The Law Office of Ryan J. Villa, by Ryan J. Villa,
and Justine Fox-Young, PC, by Justine Fox-Young, move the Court for a Judgment of Acquittal
on Counts 4 and 5 of the Superseding Indictment. Defendants incorporate by reference herein the
facts and arguments previously advanced in Defendants' Joint Motion to Dismiss – Missing
Element [Doc. 468]; Defendants' Reply to the Government's Response to the Joint Motion to
Dismiss Counts Six and Seven – Missing Element (Doc.  485) [Doc. 541]; Defendants' Joint
Motion to Dismiss – No Predicate Crime for Conspiracy to Kidnap [Doc. 469]; Reply to the
Government's Response to Defendants' Joint Motion to Dismiss – No Predicate Crime for
Conspiracy to Kidnap [Doc. 487]; Defendants' Response to the United States' Motion in Limine
to Exclude Defense Arguments and Evidence [Doc. 938]; Defendants' Surreply to the United
States' Motion in Limine to Exclude Defense Arguments and Evidence [Doc. 964]; and Motion
for Judgment of Acquittal Pursuant to Fed. R. Crim. P. 29 [Doc 998]. Defendants also incorporate
all oral arguments made during trial after the close of the Government's case-in-chief, as well as

at the close of the evidence. The Government opposes this motion. In support of this motion, Defendants state as follows:

## INTRODUCTION

It has been established as a constitutional imperative that the government bears the burden to prove every element of a criminal charge beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 362 (1970). This requirement, applied through the rules of evidence consistent with that standard, "are historically grounded rights of our system, developed to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property." *Id.* (quoting *Davis v. United States*, 160 U.S. 469, 488 (1895)).

Although a jury's decision is afforded great deference, "the evidence, when viewed in its entirety, must generate more than a mere suspicion of guilt, and *where such evidence is equally consistent with both guilt and innocence the conviction cannot be sustained*." *United States v. Weidner*, 437 F.3d 1023, 1032 (10th Cir. 2006) (quoting *United States v. Fox*, 902 F.2d 1508, 1513-14 (10th Cir. 1990)) (emphasis added). In reaching a conviction, juries have "wide latitude to determine factual issues and to draw reasonable inferences from circumstantial evidence," but inferences are reasonable only when "with experience serving as the touchstone[,] . . . there is a reasonable probability that the conclusion flows from the facts in evidence." *United States v. Summers*, 414 F.3d 1287, 1295 (10th Cir. 2005) (internal citation omitted). Where an inference relates to an ultimate conclusion underpinning criminal liability, "a jury may draw [the] inference only where that inference can be made beyond a reasonable doubt." *Id.* at 1295 n.4 (quoting *United States v. Rahseparian*, 231 F.3d 1257, 1264 (10th Cir. 2000)). The Court's duty is to "determine whether the evidence, if believed, would establish each element of the crime." *United States v. Vallos*, 238 F.3d 1242, 1247 (10th Cir. 2001) (quoting *United States v. Evans*, 42 F.3d 586, 589 (10th Cir. 1994)).

In this case, the evidence presented at trial, even if believed, cannot establish proof of each of the necessary elements of the charges alleged against Defendants in Counts 4 and 5 of the Superseding Indictment, much less that they have been proven beyond a reasonable doubt. As such, the Court should enter Judgment of Acquittal on the Kidnapping-related charges contained in Counts 4 and 5. In addition to failing to prove the substantive elements of kidnapping, there is also no evidence that AG's death was a foreseeable result of any actions taken by Subhanah Wahhaj ("Subhanah" herein) and/or Hujrah Wahhaj ("Hujrah" herein).

## <u>EVIDENCE INTRODUCED AT TRIAL</u>

The following facts relevant to this Motion were introduced by the Government in its Case-in-Chief during the trial of this matter.

A.  Siraj Wahhaj ("Siraj" herein) alone took AG from his mother (Hakima Ramzi) on or about December 1, 2017.

B.  Siraj told Ms. Ramzi that he was taking AG to the park and never returned.

C.  Siraj returned to his home, after which, his family, which included Jany Leveille ("Jany" herein), Jany's children, Farrol and Jamil, Siraj and Jany's children, and AG packed to leave their house.

D.  Siraj and his family then travelled to Hujrah's apartment on the same day.

E.  On December 1, 2017, Hakima Ramzi, along with Muhammad Wahhaj (the brother of Siraj, Hujrah, and Subhanah), caused the police to accompany them to Hujrah's apartment.

F.  They met with Siraj and were able to view AG, but Siraj refused to allow them to take AG from his custody.

G.  Subhanah and Hujrah were not present at that time.

H. The police explained that they were unable to take custody of AG because he was with his biological father, who had equal rights to custody, and there was no court order changing that status.

I. A "family meeting" was held in the evening the same day.

   a. Some Evidence shows Hujrah was there for the meeting, while other evidence disputed this notion.

   b. Evidence did not establish that Subhanah was there for the meeting.

J. The family group departed Georgia for Alabama the same night or perhaps the following day (either December 3, 2017, or December 4, 2017)

   a. Siraj, Jany and their children travelled in Siraj's vehicle.

   b. Hujrah and her daughter travelled in Hujrah's vehicle.

   c. The evidence is inconsistent regarding whether Subhanah travelled to Alabama with the family or was already in Alabama at the time of this trip.

K. The family stayed in Alabama for 8-10 days.

L. The family decided they did not like Alabama and determined to head to New Mexico, where Subhanah's husband, Co-Defendant Lucas Morton ("Lucas" herein), owned some vacant land.

M. The family left Alabama and departed for New Mexico on December 12, 2017.

N. Siraj, Jany, and their children were involved in a traffic accident in the early morning hours of December 13, 2017.

   a. Siraj's vehicle was totaled in the accident.

      i. Some of the occupants went to the hospital.

      ii. Siraj, AG, and one of the boys remained at the scene of the wreck.

   b. Ultimately, Siraj's disabled vehicle was towed to a gas station.

    c.  Lucas met Siraj at the gas station, and they removed items from Siraj's totaled vehicle and moved them to Lucas' box truck.

    d.  There is no dispute that Subhanah and Hujrah were never seen during any of these events in Alabama.

O.  Siraj's family members were released from the hospital within hours, and the family resumed the trip to New Mexico in the box truck pulling a camper trailer, while Hujrah continued to drive her vehicle.

P.  Hujrah's vehicle was abandoned somewhere along the way to New Mexico.

Q.  Everyone was then driven in the box truck, or the trailer it was pulling, for the rest of drive to New Mexico.

R.  The family arrived in New Mexico no later than December 16, 2017.

S.  Orders were issued from the Court in Clayton County, Georgia on December 18, 2017.

    a.  One order (the "Order" herein) directed the pickup of AG, and a separate order authorized the arrest of Siraj, with each order including various findings that were largely identical.

    b.  There is no evidence that any Defendant (or anyone else in New Mexico) was served with, or was otherwise aware of, this Order until the time of AG's death, which occurred on, or about, December 24, 2017 (see below).

    c.  Importantly, this is the **very first circumstance making it unlawful for Siraj to possess his son, AG**.

T.  Siraj, alone, performed "Ruqya" on AG daily throughout the brief time he was alive in New Mexico.

    a.  Ruqya is a religious ritual similar to an exorcism, which consisted of Siraj:

        i.  Holding AG;

     ii.     Reciting the Quran;

     iii.     Sometimes for as long as 4 hours;

     iv.     While AG often cried and fussed.

    b.    On, or about, December 24, 2017, AG died of unknown causes and while Siraj was performing Ruqya.

    c.    Subhanah and Hujrah, never performed Ruqya on AG, nor did they make any decisions about AG's medical care.

    d.    Subhanah and Hujrah, were not present in the room where AG died.

U.  At all relevant times after AG left Georgia:

    a.    Siraj and Jany alone cared for AG.

    b.    Siraj and Jany had all of their children with them, including AG.

    c.    Subhanah and Hujrah were mere passengers while in the same vehicle as AG.

    d.    Siraj was AG's biological father;

    e.    Siraj was legally married to AG's biological mother, Hakima Ramzi;

       i.     In Georgia, both parents have equal parental rights if they are married. Ga. Code Ann. § 19-7-2 (It is the joint and several duty of each parent to provide for the maintenance, protection, and education of his or her child until the child reaches the age of majority, dies, marries, or becomes emancipated, whichever first occurs, except as otherwise authorized and ordered pursuant to subsection (e) of Code Section 19-6-15 and except to the extent that the duty of the parents is otherwise or further defined by court order.)

V.  There is no evidence that the Defendants had any plans to travel anywhere after their arrival in New Mexico.

6

      i.    Moreover, once the Order had been issued, there was no evidence of any plan involving travel with AG over state lines.

      ii.    There is also absolutely no evidence AG traveled over state lines after issuance of the Order.

W. There is no evidence that Hujrah or Subhanah ever had sole possession of AG during any time during the travel from Georgia to New Mexico or after the family's arrival in New Mexico.

X. There is no evidence that Hujrah or Subhanah did anything to aid Siraj in his possession of AG during the travel from Georgia to New Mexico or after the family's arrival in New Mexico.

Y. There is no evidence that there was any circumstance prior to December 18, 2017, that would render it unlawful for Siraj to have possession of his biological son, AG.

      a.    It is elementary that, since it was not unlawful for Siraj to have possession AG, it was not unlawful for Subhanah, and/or Hujrah to travel or live with Siraj and AG.

Z. There is no evidence that there was ever any express plan for Subhanah and/or Hujrah to participate in the taking of AG from his mother.

AA.    There is no evidence that there was any knowledge on the part of Subhanah and/or Hujrah that Siraj would refuse to return AG to Georgia if ordered by a court to do so (or that he would otherwise refuse to abide any lawful orders).

BB.    There is no evidence that Subhanah and/or Hujrah had any authority or ability to remove AG from Siraj's custody.

CC.    There is no evidence that Subhanah and/or Hujrah anticipated or derived any benefit from AG being with them for the trip to New Mexico.

DD.     There is no evidence that that there was any goal on the part of Subhanah and/or Hujrah, associated with having AG with them for the trip to New Mexico.

EE.There is insufficient evidence to determine beyond a reasonable doubt that AG's death was attributable to being in Siraj's custody after December 3, 2017.

    a.  The United States' expert witness, Dr. John P. Phillips, testified that:

        i.    AG had a seizure disorder caused by Hypoxic Ischemic Encephalopathy;

        ii.    AG was supposed to take medicine to control his seizures;

        iii.    There is no indication that he took his medicine while in the custody of Siraj;

        iv.    AG's respirations *could* be affected during a Ruqya;

        v.    High emotional stress *can* make it more likely to have a seizure;

        vi.    Not taking medicine *could* lead to more serious seizures; and

        vii.    Uncontrolled seizures *could* lead to death.

    b.  The medical examiner was unable to make any determination of the cause of AG's death.

    c.  This expert testimony is, as a matter of law, not sufficient to support the Defendants' alleged kidnapping being the proximate cause the death beyond a reasonable doubt.

    d.  No evidence exists to indicated AG's death was foreseeable to Hujrah and/or Subhanah.

## ARGUMENT

### A.    COUNT 4 – CONSPIRACY TO COMMIT KIDNAPPING

#### 1.    The Court's Instruction

As stated in the Court's Proposed Jury Instruction No. 11, "[a] conspiracy is an agreement between two or more persons to accomplish an unlawful purpose." [Doc. 983 at 21] Moreover, the instruction states "In the second element, to unlawfully kidnap a person means to hold, keep, detain, and confine the person against that person's will. Involuntariness or coercion in connection with the victim's detention is an essential part of the offense." *Id.* (emphasis added). The proposed instruction then proceeds to eliminate the requirement of unlawfulness by instructing that, in the case of a small child, one biological parent's objection to a Defendant's possession of the child establishes the unlawfulness element, as a matter of law. This statement has no basis in law and is a completely unworkable standard for a situation where two married biological parents have a dispute regarding the custody of the child (as is the case here). Succinctly, Siraj Wahhaj desired sole possession of his son, AG, while AG's mother simultaneously wanted the opposite, and there is simply no law that resolves this conundrum, short of a court order. Accordingly, the possession and transportation of AG by his father was completely lawful until December 18, 2017, when the Clayton County court issued its Order prohibiting Siraj Wahaj from maintaining custody of his son. As a result, the jury should have been instructed that Siraj Wahhaj had lawful possession of AG at all times prior to the issuance of the December 18, 2017, pickup order.

In Georgia, both parents have equal parental rights if they are married. Ga. Code Ann. § 19-7-2 (It is the joint and several duty of each parent to provide for the maintenance, protection, and education of his or her child until the child reaches the age of majority, dies, marries, or becomes emancipated, whichever first occurs, except as otherwise authorized and ordered pursuant to subsection (e) of Code Section 19-6-15 and except to the extent that the duty of the parents is

otherwise or further defined by court order).  Further, with respect to Georgia's criminal law, kidnapping similarly requires lack of lawful authority to hold the alleged victim as an element of the offense.  Ga. Code Ann. § 16-5-40 (A person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will).  There is simply no law that supports the proposition that one parent has superior rights to possession of their child with respect to the other parent, unless/until a court has established otherwise.

The Court's instruction set up an irreconcilable conflict when it sought to address possessing the child when it was against his parents' consent.  The Court compounded the error by instructing the jury that Defendants had unlawfully kidnapped AG if he was with his father "against HAKIMA RAMZI's consent."  In this case, it is clear that any possession of AG by the Defendants, no matter how tenuous or temporary, was in no manner "against his parent's consent" – so long as the parent you consider is the child's father, Siraj Wahhaj.  On the other hand, it is equally clear that the child's mother, Hakima Ramzi, did not consent to any Defendants' possession of the child.  Reducing the jury's consideration to simply AG's mother's consent was improper.

Nonetheless, even with this instruction, the jury was presented with no evidence that Hujrah and/or Subhanah had an agreement with Siraj to "hold, keep, detain, and confine" AG.  The best the United States could muster was a suspicion that they agreed, based solely on having communicated with Siraj, their brother, around the time he took AG and their actions in accompanying Siraj and his son on the trip to New Mexico.  This mere suspicion is insufficient to establish an agreement beyond a reasonable doubt.

Further, the crime of conspiracy is not established by mere agreement.  As Defendants' proposed jury instruction on the alleged conspiracy to kidnap count indicated, the United States

should also have been required to prove that the each Defendant participated in the offense conduct.  *See* Doc 974.  Indeed, as the Court properly recognized with the conspiracy to murder an officer or employee of the United States count (Count 3), the United States was required to prove the performance of at least one overt act to further the conspiracy.  *See* Doc 1001, at pg. 16. The Court nonetheless overruled Defendants' requested instruction on conspiracy to commit kidnapping and replaced this requirement with simply requiring that the United States prove that each Defendant "knowingly joined the conspiracy with the intent to advance its purposes."[1]  *See* Doc 1001, at pg. 21.

This omission is particularly relevant here because the Defendants did not engage in acts to further the alleged conspiracy.  Instead, all actions taken to "hold, keep, detain, and confine" AG were performed by his biological father, Siraj.  Siraj was not charged with kidnapping for the obvious reason that he had an absolute defense to actions because he was AG's biological father, and no alternative custody relationship was ever lawfully established to override his equal right to custody of AG.  With Siraj essentially immune from prosecution, and Hujrah and/or Subhanah taking no actions to aid him in his possession of AG, there is no evidence to establish the Defendants' guilt for Count 4.

Moreover, Defendants' knowledge of some unlawfulness with respect to Siraj' possession of AG was never presented, nor did the Court require such knowledge within the jury instructions. The Court instead improperly limited the crime to strict liability for Defendants upon Hakima Ramzi's objection to Siraj's possession of his son, regardless of whether the Defendants had any

---

[1] While the Defendants were nonetheless acquitted of the conspiracy charges alleged in Count 1, the Court's instruction for this Count was similarly afflicted by the missing requirement that the Government prove performance of at least one overt act in furtherance of the conspiracy.

knowledge of this objection.  Establishing such a strict liability scheme was erroneous and in violation of the Constitution's Due Process clause.

Here, Defendants assert that the proper burden was for the United States prove that Defendants were aware that the court issued the Order at the time of any alleged conspiracy, or they would not be agreeing to accomplish an *unlawful* purpose, as is required.

Even if Defendants agreed to seize, confine, or carry away the child at some point prior to leaving Georgia (and there is no evidence they did), there would be nothing illegal about taking AG, accompanied by his father and with his permission, because the Order had not yet been issued. Thus, there could be no conspiracy to *unlawfully* transport the child over state lines, only to *lawfully* do so. This does not amount to a conspiracy to commit kidnapping. *United States v. McInnis*, 601 F.2d 1319, 1326 (5th Cir. 1979) ("The lawful transportation of any person across state lines, of course, does not amount to kidnapping. The kidnapping statute thus fits into a common statutory model for federal offenses that premise federal jurisdiction on the offender's unlawful exercise of control over a person or object *followed by* the interstate transportation of that person or object.") (emphasis added); *United States v. Hughes*, 716 F.2d 234, 238 (4th Cir. 1983) (without some unlawful exercise of control over the victim *prior to the interstate transportation*, no jurisdiction existed under 18 U.S.C. § 1201(a)) (emphasis added).

Given the Court's ruling that the unlawfulness was established by Hakima Ramzi's objection to Siraj's custody of his son, the United States should have nonetheless at least been held to the burden of proving that the Defendants were aware of this fact during the time of the conspiracy.  This requirement was entirely omitted from the jury's consideration.  Moreover, the evidence did not demonstrate this knowledge beyond a reasonable doubt with respect to the Defendants.  Without any evidence of an agreement to accomplish the unlawful purpose of kidnapping, there can be no criminal conspiracy.

Finally, to the extent that the Court finds that there is evidence that there was a conspiracy (merely an agreement, really, since there was no illegal objective) to transport the child in interstate commerce, any such conspiracy necessarily ended when Defendants arrived in New Mexico and set up a domicile, because at that point the object of the conspiracy (or agreement) had been achieved. *United States v. Silverstein*, 737 F.2d 864, 867 (10th Cir. 1984) ("Generally, … a conspiracy terminates when its central criminal purposes have been attained."). Accordingly, any knowledge gained by Defendants after their arrival in New Mexico was, as a matter of law, irrelevant to the conspiracy to kidnap charges, since only the knowledge Defendants had at the time of the transportation could form the basis of federal jurisdiction.

### 2. After arriving in New Mexico

Again, the Government produced absolutely no evidence that any Defendant or anyone else in New Mexico was served with, or was otherwise aware of, the Order regarding Siraj Wahhaj's custody of AG at any time relevant to the kidnapping charges in this case. More importantly, once Defendants arrived in New Mexico, any subsequent conspiracy was not subject to federal jurisdiction for kidnapping, unless they were planning to additionally cross state lines *after* it was unlawful.[2] There was, however, no evidence of any additional plans to transport AG anywhere, much less plans to cross state lines, while he was alive and after Defendants arrived in New Mexico. "[A]lthough the offense of kidnapping is complete by the unwilling confinement, by any of the enumerated means, of an individual who is held for ransom, reward, or otherwise, federal jurisdiction over that offense attaches only upon an 'interstate transporting of the kidnapped person.' The legislative history is clear that the 1972 amendments, in expanding jurisdiction, did

---

[2] Similarly, there was insufficient evidence to prove, beyond a reasonable doubt, that Defendants were aware of Hakima Ramzi's objection to Siraj's possession of his biological son prior to arrival in New Mexico.

not alter the established requirement that the criminal activity precede the interstate movement." *United States v. Hughes*, 716 F.2d 234, 238 (4th Cir. 1983).

Moreover, the Defendants' mere holding of AG in New Mexico cannot constitute federal kidnapping, because there was no further transportation in interstate commerce, which is a necessary element of Section 1201(a), without which there is no federal jurisdiction. *Id*. Similarly, there can be no conspiracy to commit federal kidnapping based on Defendants' holding of AG in New Mexico, because there is no evidence of any agreement to thereafter transport the child in interstate commerce. And, of course, once AG passed away, he could not be kidnapped, so any events occurring after December 24, 2017, are also wholly irrelevant to the kidnapping charge. *United States v. Davis*, 19 F.3d 166, 169 (5th Cir. 1994) ("It is true that under § 1201(a) the defendants must abduct a live person who then moves in interstate commerce. Federal kidnapping does not cover transportation of a corpse across state lines.").

### 3. Aiding and Abetting

With no evidence of kidnapping, there can be no aiding and abetting of a kidnapping, (because one did not occur). *See* Doc 1001, at pg. 26. Moreover, even if there was support for the kidnapping charge, Defendants would have to have aided in its commission to be guilty of aiding and abetting, but there is no evidence that they did anything more than go along for the ride to New Mexico and coexist with Siraj Wahhaj, who was in lawful possession of AG throughout the trip, and their family members, and there is likewise no proof that each Defendant shared the others' knowledge of the alleged underlying criminal act and intended to help the other. Consequently, even it had been unlawful for Siraj to transport AG from Georgia to New Mexico, there was still no evidence that the Defendants aided Siraj in any material way.

Moreover, after arriving in New Mexico, Defendants did nothing to provide aid prior to AG's death on December 24, 2023. Although the Government argues that Defendants' mere

presence and lawful acts to care for their own nuclear families (which may have incidentally benefitted Siraj Wahhaj's nuclear family) aided Siraj Wahhaj's ability to continue to hold AG, Defendants' mere presence is not enough. *See* Doc 1001, at pg. 21 (mere presence at the scene of a crime is not sufficient). Rather, aiding and abetting requires that Defendants intentionally participated in acts for the purpose of accomplishing something unlawful that they wished to bring about. *Id.* It also requires proof that each Defendant shared the others' knowledge of the underlying criminal act and intended to help the other. *Id.* It is not enough each Defendant to be present at the scene of a crime, or even that he knows that a crime is being committed; rather, each Defendant must share the principal's desire to achieve the objective of the crime and engage in some affirmative act tailored to manifest that objective. *See United States v. King*, 936 F.2d 477, 481-82 (10th Cir. 1991). As discussed herein, however, there was no possible knowledge whatsoever of any underlying criminal act.  Further, even if there had been something unlawful about Siraj's custody of his son, the actions that Defendants took to simply begin to establish their life in New Mexico were not actions in any way tailored to achieve the objective of holding and transporting AG across state lines.  And, once in New Mexico, their actions instead manifested an obvious intention to stay right where they were in Amalia, New Mexico.

Because the Government failed to present evidence sufficient to establish beyond a reasonable doubt that Defendants ever conspired to kidnap AG in violation of 18 U.S.C. §1201(c), the Court should enter Judgment of Acquittal as to Count 4 of the Superseding Indictment.

## B.   COUNT 5 – KIDNAPPING RESULTING IN DEATH AND AIDING AND ABETTING KIDNAPPING (AND LESSER INCLUDED KIDNAPPING)

Once again, Defendants assert that the very first circumstance making it unlawful for Siraj Wahhaj to possess his son, AG, occurred when the Order issued from the Court in Clayton County, Georgia on December 18, 2017. And there is absolutely no evidence that any Defendant or anyone

else in New Mexico was served with, or was otherwise aware of, this Order at any time relevant to the kidnapping charges in this case. More importantly than the failure of notice,[3] the Defendants had already arrived in New Mexico with AG on or before December 16, 2017, at least two (2) full days prior to the issuance or existence of the only Order that rendered Siraj Wahhaj's possession or transport of AG unlawful.

Given that Defendants had no knowledge of the Order (which had not yet issued) or that Hakima Ramzi's desire to have her son made it unlawful for Siraj to have him (as the Court ruled), and the Georgia police's refusal to take AG from Siraj Wahhaj (based on the officers' belief that his status as the biological parent made it lawful for Siraj to have custody of his son), Defendants could have only reasonably assumed that AG was lawfully with his father, and therefore no reason existed for the kidnapping which would be of some benefit to them, as is required. *See United States v. Healy*, 376 U.S. 75 (1964) (it is necessary that the kidnappers had some reason for the kidnapping which, to them, would be of some benefit); *see also* Doc. 983 at 23. In an earlier Order, this Court found that the purpose or benefit to Defendants was alleged by the Government to be concealment.[4] [Doc. 543 at 4] Defendants acknowledge that Courts have found that the benefit required under the kidnapping statute can be broadly construed, and often includes prevention of detection and aiding escape. *United States v. Sarracino*, 131 F.3d 943, 947 (10th Cir. 1997); *United States v. Gabaldon*, 389 F.3d 1090, 1096 (10th Cir. 2004). If there is no awareness of an illegal action, however, as is the case here, there can be no reason for Defendants

---

[3] The Court previously ruled that Defendants' knowledge of unlawfulness is irrelevant – a ruling for the record, that the Defendants continue to contest, particularly in this circumstance where the unlawfulness is established by an individual judge issuing an order making it so or, as the Court ruled, Hakima Ramzi's desire that she have custody of her son, and not by operation of some law of general application, knowledge of which may properly be imputed to all citizens.

[4] Of course, Defendants reiterate their opposition to this conclusion, as described in the incorporated pleadings.

to have believed that they needed to prevent detection or that they had anything to escape until after they had already arrived in New Mexico. Accordingly, there is no evidence to support the required element that Defendants kidnapped AG for some personal purpose or benefit to themselves or anyone else.

And, even if the Defendants did not have to possess actual knowledge that the court had issued the Order, the Order would need at the very least to *have, in fact, been issued*, otherwise there can simply be no unlawful taking. The Court's jury instructions containing the elements of kidnapping (and aiding and abetting kidnapping) each require a jury to find beyond a reasonable doubt that Defendants *unlawfully* seized, held, and transported the child. That simply did not happen here.

Perhaps most importantly, in order to be guilty of kidnapping, Defendants would have had to, at the very least, cross state lines with AG at a time when doing so was unlawful. *See United States v. Hughes*, 716 F.2d 234, 238 (4th Cir. 1983) (without some unlawful exercise of control over the victim prior to the interstate transportation, no jurisdiction existed under 18 U.S.C. § 1201(a)). This, of course, never happened, since the Order that rendered Siraj Wahhaj's possession of his son unlawful was not issued until after Defendants had already arrived in New Mexico. Moreover, during the time frame after the issuance of the Order and prior to AG's death, the Defendants never again transported (or even planned to transport) AG across any state lines (or anywhere for that matter). Accordingly, the Court should enter Judgment of Acquittal on Count 5.

## C. THE DEATH OF AG WAS NOT FORESEEABLE TO SUBHANAH WAHHAJ AND HUJRAH WAHHAJ

The evidence demonstrated that AG passed away while Siraj Wahhaj performed Ruqya on AG in the bedroom in the camper where he and Jany Leveille stayed in New Mexico. There is no evidence that Subhanah Wahhaj or Hujrah Wahhaj participated in the Ruqya in any manner. More

importantly, there is no evidence Subhanah or Hujrah could have foreseen AG would die during the Ruqya. To be guilty of kidnapping resulting in death, the Government must prove that AG's death was foreseeable to Subhanah Wahhaj and Hujrah Wahhaj, as the result of kidnapping. *See* Court's Jury Instruction Nos. 11 and 12 [Doc. 983]; Defendants' Joint Proposed Supplemental Jury Instructions, Nos. 1 and 2 [Doc. 974]. Even assuming there was a kidnapping (and there was not, as described above), nothing in the evidence demonstrated that AG's death was foreseeable to Subhanah Wahhaj or Hujrah Wahhaj.  Instead, the evidence revealed that each Defendant's knowledge of Ruqya consisted entirely of positive events wherein no harm happened to any participant at any time.  Further, with respect to AG's care generally, the evidence demonstrated that Defendant's limited experience with AG's medical care showed his medical condition to be entirely manageable and in no manner life threatening.  Finally, with respect to AG's alleged need for medication, there was no evidence demonstrating that either Defendant knew anything more than AG at times required medication and at other times did not require medication.  Certainly, there was no evidence to prove beyond a reasonable doubt that either Defendant was aware that AG's life would be in danger in the event that he did not receive medication, as the Government contends to be the cause of AG's death. To the extent Siraj may have intentionally killed AG, there was no evidence Subhanah or Hujrah had any reason to believe he would do this.

In addition, the evidence at trial was insufficient to establish beyond a reasonable doubt that AG's cause of death was attributable to any circumstance created by the travel to New Mexico. Indeed, the best the United States could muster was its expert opining that he had every reason to expect that, given proper future care, AG would have lived beyond the age of his ultimate death. First, there is no reason to assume that proper future care would have necessarily been provided. The evidence at trial established that, prior to the trip to New Mexico, AG was not always provided with medications and was subjected to Ruqya.  Similarly, the evidence demonstrated that, even

with reasonably compliant care, AG suffered life threatening seizures beyond the expectation of his medical providers.  Finally, the medical examiner was not able to determine the cause of death, much less the manner in which that cause came to be.  In sum, the evidence at trial was at best only sufficient to establish that AG may have had a better chance of survival had he not traveled to New Mexico.  This quanta of evidence is insufficient, as a matter of law, to prove beyond a reasonable doubt that AG's death was proximately caused the travel to New Mexico.

Accordingly, the Court should enter Judgment of Acquittal on the element of "resulting in death" charged in Counts 4 and 5.

## <u>CONCLUSION</u>

This Court has made clear that ignorance of the law does not constitute a defense to the kidnapping charges against Defendants. Here, however, Defendants are not arguing ignorance of the law. Rather, Defendants are arguing ignorance of the fact that there existed any circumstance making it unlawful for Siraj to have possession of AG at any time her was alive; and, more importantly that there was no court order that had been issued (or other circumstance rendering Siraj's possession of AG unlawful), or was in effect, at any time that: 1) Defendants actually crossed state lines with AG or at any time they conspired/agreed to seize or transport him in interstate commerce; or  2) before, at, or during any time that Siraj held him and transported him in interstate commerce, or made any agreement to do so.

At any time prior to there being a court order in place, there could simply be no unlawful taking or holding in connection with the transportation or care of AG. Absent an order to the contrary, as his father, Siraj Wahhaj had the parental authority to transport his son. Without any unlawful taking, there can be no kidnapping, because it is an essential element of kidnapping. The Government's evidence showed that, by the time the court order had been entered, Defendants: 1) had already arrived in New Mexico; 2) had no plans or agreement to further transport AG in

interstate commerce; and 3) indeed did not further transport him in interstate commerce prior to his death.

The Government failed to produce evidence sufficient to establish, beyond a reasonable doubt, that Defendants agreed to, or did, unlawfully transport AG in interstate commerce. There being no evidence of unlawfulness prior to (or at the same time of) transportation, there can simply be no kidnapping as a matter of law. Without such evidence of unlawful exercise of control of a kidnapped person followed by interstate transportation of that person, there can be no kidnapping, because there would be no federal jurisdiction. Moreover, without such evidence of an agreement to knowingly accomplish the unlawful purpose of kidnapping, there can be no criminal conspiracy. And, without any kidnapping, there can be no aiding and abetting of kidnapping.

Finally, there is also no evidence that AG's death was a foreseeable result of the kidnapping with respect to Subhanah Wahhaj and Hujrah Wahhaj. This is true not only because the Defendants knowledge of AG's condition and treatment did not provide Defendants with a basis to know that his travel to New Mexico could be life-threatening, but also because the actual cause of AG's was not even sufficiently proven.

Accordingly, the Court must enter Judgment of Acquittal on Counts 4 and 5.


Respectfully submitted,

*/s/ Donald F. Kochersberger III*
Donald F. Kochersberger III
BUSINESS LAW SOUTHWEST
6801 Jefferson St. NE, Suite 210
Albuquerque, NM 87109
(505) 848-8581
Donald@BusinessLawSW.com

/s/ Marshall J. Ray
Marshall J. Ray
Law Offices of Marshall J. Ray, LLC
514 Marble Ave, NW
Albuquerque, NM 87111
(505) 312-2748
mray@mraylaw.com

*Attorneys for Defendant Hujrah Wahhaj*

-and-

/s/ Ryan J. Villa
Ryan J. Villa
The Law Office of Ryan J. Villa
5501 Eagle Rock Ave NW Ste. C2
Albuquerque, NM 87113
(505) 639-5709
ryan@rjvlawfirm.com

/s/ Justine Fox-Young
Justine Fox-Young
Justine Fox-Young, PC
5501 Eagle Rock Ave NE Ste C2
Albuquerque, NM 87113
(505) 796-8268
justine@foxyounglaw.com

*Attorneys for Defendant Subhanah Wahhaj*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 28th day of November 2023, I filed the foregoing electronically through the CM/ECF system, which caused all counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

/s/ Donald F. Kochersberger III
Donald F. Kochersberger III